IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

AMERICAN FEDERATION OF
   TEACHERS, et al.,

       Plaintiffs-Appellees,

       v.

SCOTT BESSENT, et al.,

       Defendants-Appellants.

No. 25-1282

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

      Plaintiffs' response only highlights the need for a stay. Plaintiffs do not dispute that they voluntarily provided their personal information to the federal government with the knowledge that it could be used by agency employees, other federal government employees, and non-governmental third parties to develop and improve information systems and to investigate fraud, waste, and abuse. Plaintiffs likewise do not contest that agency employees and others performing those functions have regular access to their records and need such access to do their work.

      Those concessions defeat the district court's preliminary injunction at every turn. They undermine any claim that plaintiffs suffered a cognizable

injury when certain agency employees (those affiliated with the U.S. DOGE Service) were granted access to databases to undertake the very work that others already perform and that plaintiffs understood could be performed using their records. They also highlight that plaintiffs' challenge is, at root, a challenge to a routine operational decision of the kind not subject to superintendence by a court. And they defeat any argument that the DOGE team employees do not need access to the information systems and records to do their work.

Plaintiffs' response thus confirms that the gravamen of their Privacy Act challenge is not about whether the agencies can provide their employees access to these agency-controlled systems and records—which the Privacy Act expressly allows—but instead about their objection to the policy priorities reflected in the President's USDS Executive Order. That policy objection provides no basis for an injunction barring agency employees from implementing the important initiatives set forth in the Order. The injunction should be stayed.

# ARGUMENT

## I. The Government Is Likely to Succeed on the Merits.

### A. Plaintiffs have not established standing.

Plaintiffs fail to satisfy their burden to establish that they have suffered a cognizable injury-in-fact. *See Chambers Med. Techs. of S.C., Inc. v. Bryant*, 52 F.3d 1252, 1265 (4th Cir. 1995) ("The party seeking to establish standing carries the burden of demonstrating these elements."). Plaintiffs do not dispute that they voluntarily provided their information to the government on the understanding that agency employees and others could routinely access that information to perform the very tasks the DOGE team members seek to undertake. Nor do plaintiffs dispute that other agency employees regularly access the records contained in the databases to perform the type of work the DOGE team members will carry out. And plaintiffs provide no basis for concluding that the DOGE team employees—who are subject to the same confidentiality requirements as those other employees—will unlawfully disclose or otherwise misuse plaintiffs' information. Plaintiffs' asserted injury thus boils down to a claim that they would prefer one set of agency employees to have access to

3

their records over another and are being denied that preference. That is not a cognizable Article III injury.[1]

In arguing to the contrary, plaintiffs rely primarily on this Court's decision in *Garey v. James S. Farrin*, 35 F.4th 917 (4th Cir. 2022), and contend that the provision of database access to DOGE team employees intrudes upon their privacy in a manner similar to the harm underlying the common law tort of "invasion upon seclusion." Opp. 6-9. Plaintiffs' arguments on that score should be rejected for numerous reasons. First, the facts of *Garey* are readily distinguishable. Unlike here, the defendants in *Garey* were private third parties who obtained plaintiffs' records from the government and then used that information for an unlawful purpose. Those facts bear no resemblance to the routine use of information by employees of an agency to whom plaintiffs voluntarily provided their data

---

[1] Plaintiffs suggest in a footnote that they have sufficiently alleged a "concrete" harm in the form of some marginal, indeterminate increased risk of identity theft. Op. 11 n.3. That alleged injury is neither concrete nor imminent. But in any event, the district court did not address that basis for standing and this Court should "decline to resolve it in the first instance." *Pierce v. North Carolina State Bd. of Elections*, 97 F.4th 194, 211 n.6 (4th Cir. 2024).

on the understanding that it could be regularly accessed by such employees.

Moreover, plaintiffs are wrong that the Court in *Garey* held that merely obtaining information from a database alone qualifies as an intrusion upon a plaintiff's seclusion. This Court in *Garey* summarized its understanding of the kind of injury undergirding invasion upon seclusion as sounding in "the right of the plaintiff … to be let alone." *Id.* at 922. That summation only makes sense if, in addition to obtaining or looking at data contained in a government system, the plaintiff also alleges some kind of intrusion that disrupts plaintiffs' seclusion. That requirement was obviously met in *Garey*, where the core of the plaintiffs' complaint was that the defendants had obtained their addresses from the government and then used that information to send solicitations to the plaintiffs' homes. *See id.* at 920.

This Court's more recent decision in *O'Leary* clarifies this Court's understanding of the kind of injury involved in invasion upon seclusion. Plaintiffs offer no response to this Court's clear statement in *O'Leary* that "[i]t's the unwanted intrusion into the home that marks intrusion upon seclusion." 60 F.4th 240, 246 (4th Cir. 2023). Instead, plaintiffs repeat the

5

same error as the district court, distinguishing *O'Leary* on the basis that the volume of private information allegedly at issue in this case is larger than that in *O'Leary*.  Opp. 9; *see* Mem. Op. 22-23.  But it is the nature of the harm, not the number of records involved, that matters.  And as in *O'Leary*—but unlike in *Garey*—plaintiffs have not "pleaded anything that closely relates to" an "unwanted intrusion into the home."  *O'Leary*, 60 F.4th at 246.

Plaintiffs' understanding of *Garey* is also incompatible with *TransUnion*.  While the Supreme Court in *TransUnion* noted that injuries analogous to those underlying the tort of intrusion upon seclusion *could* serve as a basis for standing, the case it cited—*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020)—dealt with the receipt of unwanted text messages sent to the plaintiffs' personal cell phones, *i.e.*, actual intrusion into the peace and tranquility of the plaintiffs' use of their personal property materially similar to that at issue in *Garey*.  *See Gadelhak*, 950 F.3d at 462; accord *Parks v. Internal Revenue Service*, 618 F.2d 677, 679, 681 & n.1 (10th Cir. 1980) (injury where defendants used plaintiffs' personal information to call their homes to pressure them to purchase U.S. Savings Bonds).  Plaintiffs' understanding of the law—whereby any plaintiff

6

alleging unlawful access to personal information is sufficient to confer standing—would transform any alleged unauthorized internal use, review, or maintenance of private data into an actionable injury, an outcome inconsistent with the careful standard the Supreme Court articulated in *TransUnion*.

Finally, plaintiffs only underscore the weakness of their case by relying on the illustrations provided in the Restatement (Second) of Torts. Opp. 10. The Restatement explains that the kind of "invasion" at issue must be "a physical intrusion," listening in on private conversations, peering into private spaces, or "some other form of investigation or examination into his private concerns." Restatement (Second) of Torts § 652B cmt. b. In this last category, the Restatement gives examples such as opening private mail, searching a plaintiff's personal safe or wallet, examining private bank accounts, or unlawfully compelling inspection of private documents. Consistent with the Restatement's characterization of these as "other form[s] of investigation or examination" comparable to "physical intrusion," wiretaps, or peering into someone's home, each of these examples involve unwarranted access to property or accounts that belong to the plaintiff and are under the plaintiff's control.

7

Plaintiffs' assertion that the allegations here "match" those examples "to a tee," Opp. 10, does not withstand scrutiny. Nothing like an unlawful rummaging through plaintiffs' wallet or safe deposit box is present here. Far from being something tantamount to plaintiffs' "virtual filing cabinets," these are government systems operated, controlled, and maintained by the agencies containing records that plaintiffs submitted on the understanding that they could be retained and used by the government for the very purposes that DOGE team employees intend to use them. *See* Mot. 13. Nor would any individual plaintiff be aware if and when a DOGE team member (or any other agency employee) accessed their particular information. Whatever harm plaintiffs can claim in allegedly unlawful review of those records by government employees bears no relationship—let alone a close one—to the kind of harm underlying invasion upon seclusion.

**B. Plaintiffs have not identified final agency action.**

As the government explained in its motion, an agency's decision to grant certain employees access to certain agency databases is not final agency action subject to APA review. Mot. 15-18. Aside from other litigation brought against DOGE teams at other agencies, neither plaintiffs

8

nor the district court have identified any APA case in which a court has found such a work-a-day operational decision to qualify as agency action that can be superintended by a court. It is therefore unsurprising that the administrative record in this case does not contain extensive material documenting the agencies' decisions to grant database access to DOGE team members. Given that engineers working to improve a data system have an obvious need to access that system and that agency employees performing similar work already have such access, the decision to grant DOGE team members access was not one that required an exhaustive internal analysis.

The district court's assertion that the agencies' internal human resources and staffing decisions amount to a "policy of granting DOGE affiliates access to agency records," Mem. Op. 30, Opp. 11, does not transform those "day-to-day operations" into reviewable agency action. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 899 (1990). To the contrary, the district court's assertion only reveals that the real "agency action" with which plaintiffs evidently disagree is the President's decision to direct the hiring of "DOGE affiliates" in every agency and the related policy

9

objectives underlying that directive. *See* Exec. Order No. 14,158, §§ 3(a), 4, 90 Fed. Reg. 8441.

## C. There is no Violation of the Privacy Act

Plaintiffs' reply only underscores the novel nature of the district court's Privacy Act analysis. Plaintiffs acknowledge (as they must) that the Privacy Act expressly allows agency employees to access agency systems when they have "a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). But plaintiffs repeat the district court's insistence that the government was required to submit some unspecified quantum of evidence establishing with some unknown level of detail *why* various agency employees needed general access to intra-agency government systems. *See* Opp. 17-20. It is notable that, in doing so, they discuss (Opp. 18) only a single case in that section of their opposition—*Parks v. Internal Revenue Service*, 618 F.2d 677 (10th Cir. 1980). That is understandable: *Parks* is also the only case the district court discussed where a court found an agency failed adequately to explain its employee's need to access an agency system in the performance of the employee's duties. *See* Mem. Op. 43-44.

But a review of that nearly 50-year-old out-of-circuit decision reveals how inapposite it is. There, the plaintiffs—employees of the IRS—

complained that "nonsupervisory personnel" at IRS had been given access to their personnel files in order to call them at home "for the purpose of soliciting their purchase of U.S. Savings Bonds." 618 F.2d at 679-680. The plaintiffs' information was included in a list of "recalcitran[t]" employees who had not yet purchased those bonds and was put together for the sole purpose of pressuring employees to purchase bonds. *Id.* In finding the plaintiffs had stated a claim, the Tenth Circuit relied on the fact that, in passing the Privacy Act, "Congress expressly held out" this kind of "internal blacklisting" of federal employees who do not "participate[] in savings bond drives or charity campaigns … as an example of information not needed in the performance of federal employees' regular duties." *Id.* 681 & n.1. Against that backdrop, the court in *Parks* held that the IRS's reliance on a general Executive Order to encourage the voluntary purchase of savings bonds did not itself "license the defendants to violate the Privacy Act" and therefore was "not … ground for justifying the dismissal of plaintiffs' complaint." *Id.*

Even putting aside the vastly different facts in *Parks*, nothing in *Parks* supports the district court's assertion of roving authority to carefully parse an agency's stated reasons for allowing its employees to access internal

agency systems and records, particularly where the justification for that access is unremarkable and inoffensive. The justifications for the access granted here—modernizing and increasing the efficiency of government systems, including by rooting out fraud and abuse—are plainly legitimate purposes and establish the DOGE team members' need for access to the systems, a need that is evidenced by the fact that other agency employees use plaintiffs records for those purposes as a routine part of their official duties. Plaintiffs do not seriously suggest otherwise. Nor are those objectives the kinds of things that Congress has expressly flagged as uses of "information not needed in the performance of federal employees' regular duties." *Parks*, 618 F.2d at 681 & n.1.

The district court's analysis of the Privacy Act's "need to know" exception is a novel outlier that grafts new, poorly defined evidentiary requirements onto a statutory exception that has been in effect—and evidently effective, given the scant case law evaluating the exceptions—for more than 50 years. This Court should reject that novel approach.

As for the separate justification offered in district court—that the challenged system access is authorized as a routine use because it will be used by DOGE team employees to identify and correct fraud and abuse in

the relevant agency programs—plaintiffs' principally assert that there is no "evidence" that government employees need to be granted access to systems in order to assess evidence of fraud in those systems. Opp. 20. For starters, plaintiffs' contention is undermined by the very fact that the various System of Record Notices identify the investigation of fraud and waste as a routine use of the records in the relevant databases. *See* Mot. 24-25. And it is easy to comprehend why employees investigating potentially improper payments would need access to detailed payment records. Moreover, as discussed, the suggestion that agencies must prepare a detailed explanation every time they allow an employee to access a system for a self-evident routine use is supported by no case law and far afield from what other courts have required in assessing need in the Privacy Act context.

## II. The Remaining Factors Favor a Stay.

The remaining factors—irreparable harm, the balance of harms, and the public interest—likewise favor the requested stay. Unsurprisingly, plaintiffs' arguments on each of those factors merely restate their arguments on the merits. *See* Opp. 20-22. And plaintiffs do not seriously contest that, if the government is likely to succeed on the merits of its

appeal for any reason, the remaining stay factors are also met. The district court's injunction thwarts the government's implementation of a vital Presidential initiative. Conversely, plaintiffs experience no harm, let alone irreparable harm, from the mere fact that DOGE team members, like other agency employees, have access to databases containing plaintiffs' personal information. The balance of the equities and the public interest thus strongly favor allowing the important work of the DOGE team employees to proceed.

## CONCLUSION

For the foregoing reasons, this Court should stay the district court's preliminary injunction.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
GERARD SINZDAK
JACK STARCHER
 *s/ Jack Starcher*
(202) 514-8877
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Room 7515*
  *Washington, DC 20530*

MARCH 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion satisfies the type-volume requirements set out in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,586 words. This motion was prepared using Microsoft Word in Book Antiqua, 14-point font, a proportionally spaced typeface.

*s/ Jack Starcher*
Jack Starcher

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*
Jack Starcher
