No. 25-1282

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

───────────────

AMERICAN FEDERATION OF TEACHERS, et al.,

Plaintiffs-Appellees,

v.

SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, et al.,

Defendants-Appellants.

───────────────

On Appeal from the United States District Court
for the District of Maryland

───────────────

**JOINT APPENDIX – VOLUME I (JA1-JA578)**

───────────────

JOHN L. SCHWAB
WENDY Q. XIAO
LIAM GENNARI
  *Munger, Tolles & Olson LLP*
  *350 South Grand Avenue, 50th Floor*
  *Los Angeles, California 90071*
  *(213) 683-9100*


XIAONAN APRIL HU
ANDRA LIM
  *Munger, Tolles & Olson LLP*
  *601 Massachusetts Avenue NW*
  *Suite 500E*
  *Washington, DC 20001*
  *(202) 220-1100*

*Counsel for Plaintiffs*

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
GERARD SINZDAK
JACK STARCHER
JACOB CHRISTENSEN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-8877*

*Counsel for Defendants*

*(additional counsel listed on inside cover)*

CARSON SCOTT
ROMAN LEAL
  *Munger, Tolles & Olson LLP*
  *560 Mission Street, 27th Floor*
  *San Francisco, California 94105-2907*
  *(415) 512-4000*

MARK HANNA
DAVID RODWIN
  *Murphy Anderson PLLC*
  *1401 K Street NW*
  *Suite 300*
  *Washington, DC 20005*
  *(202) 223-2620*

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

Docket Report................................................................JA1

Amended Complaint (Dkt. No. 13)............................................JA27

Declarations in Support of Plaintiffs' Motion for Temporary
    Restraining Order (Dkt. No. 14-3 to 14-12)......................................JA69

Transcript of Hearing on Motion for Temporary Restraining Order
    (Dkt. No. 37) ................................................................JA100

Memorandum Opinion and Order Granting Temporary Retraining
    Order (Dkt. No. 38) ........................................................JA217

Notice of Filing of Administrative Records (Dkt. No. 51) .....................JA250

    Administrative Record (OPM) (Dkt. No. 51-1) .............................JA253

    Administrative Record (Treasury) (Dkt. No. 51-2)........................JA331

    Administrative Record (Education) (Dkt. No. 51-3).....................JA546

Notice of Supplement to OPM's Administrative
    Record (Dkt. No. 64) ........................................................JA579

Memorandum Opinion Granting Preliminary
    Injunction (Dkt. No. 68)....................................................JA656

Order Granting Preliminary Injunction (Dkt. No. 69)...........................JA724

Notice of Appeal (Dkt. No. 70) ...............................................JA727

Transcript of Hearing on Motion for Preliminary Injunction (Dkt. No.
    71) ........................................................................JA730

Order Denying Stay (Dkt. No. 77)..............................................JA803

# U.S. District Court
## District of Maryland (Greenbelt)
## CIVIL DOCKET FOR CASE #: 8:25-cv-00430-DLB

American Federation of Teachers et al v. Bessent et al

Assigned to: Judge Deborah L. Boardman

Case in other court: Fourth Circuit Court of Appeals, 25-01282

Cause: 05:551 Administrative Procedures Act

Date Filed: 02/10/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**American Federation of Teachers**          represented by     **David J Rodwin**
Murphy Anderson PLLC
1401 K St. NW
Ste 300
Washington, DC 20005
202-531-7767
Email: drodwin@murphypllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Hanna**
Murphy Anderson PLLC
1401 K St NW Ste 300
Washington, DC 20005
12022232620
Fax: 12022969600
Email: mhanna@murphypllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carson J. Scott**
Munger, Tolles & Olson LLP
560 Mission Street
Ste 27th Floor
San Francisco, CA 94105
415-512-4000
Email: carson.scott@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel James McNeil**
American Federation of Teachers
DC
555 New Jersey Avenue, NW
Washington
Washington, DC 20001
202-879-4439
Email: dmcneil@aft.org
*ATTORNEY TO BE NOTICED*

JA1

**Jane Bentrott**
Protect Democracy Project
2020 Pennsylvania Ave NW Ste 163
Washington, DC 20006
2028433092
Fax: 2027693176
Email: jane.bentrott@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
Protect Democracy Project
510 Meadowmont Vill. Cir. No. 328
Chapel Hill, NC 27517
2025794582
Fax: 2027693176
Email: jess.marsden@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
Munger, Tolles & Olson LLP
355 S. Grand Ave.
Los Angeles, CA 90071
213-683-9216
Email: john.schwab@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
Protect Democracy
2020 Pennsylvania Avenue NW
Ste 163
Washington, DC 20006
202-424-9906
Fax: 929-777-8428
Email: kristy.parker@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
Democracy and Rule of Law Clinic
Harvard Law School
1525 Massachusetts Avenue
Cambridge, MA 02138
6179981877
Fax: 6174965156
Email: lschwartztol@law.harvard.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
Munger Tolles & Olson LLP
350 S. Grand Ave Fl 50

JA2

Los Angeles, CA 90071-3426
2136839137
Fax: 2136834991
Email: liam.gennari@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
Munger Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
415-512-4023
Email: roman.leal@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
Munger Tolles & Olson LLP
350 S. Grand Avenue Floor 50
Los Angeles, CA 90071-3426
2136834991
Fax: 2136834991
Email: wendy.xiao@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
Munger, Tolles & Olson LLP
601 Massachusetts Ave. NW
Ste 500e
Washington, DC 20001
202-220-1123
Email: april.hu@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**International Association of Machinists
and Aerospace Workers**

represented by **David J Rodwin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Hanna**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carson J. Scott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane Bentrott**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **National Active and Retired Federal Employees** | represented by | **David J Rodwin** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Mark Hanna** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

JA4

**Carson J. Scott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane Bentrott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**National Federation of Federal
Employees**                    represented by    **David J Rodwin**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*

JA5

*ATTORNEY TO BE NOTICED*

**Mark Hanna**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carson J. Scott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane Bentrott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donald Martinez**                    represented by    **David J Rodwin**
*c/o Murphy Anderson PLLC*                               (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Mark Hanna**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Carson J. Scott**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jane Bentrott**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jessica A. Marsden**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **John L. Schwab**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Kristy Parker**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Laurence M. Schwartztol**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Liam Gennari**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Victor Roman Leal**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

JA7

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jason Cain**                    represented by    **David J Rodwin**
*c/o Murphy Anderson PLLC*                         (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Mark Hanna**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carson J. Scott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane Bentrott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*

JA8

*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Clifford Grambo**<br>*c/o Murphy Anderson PLLC* | represented by | **David J Rodwin**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Mark Hanna**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carson J. Scott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane Bentrott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thomas Fant**                          represented by   **David J Rodwin**
*c/o Murphy Anderson PLLC*                                (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mark Hanna**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Carson J. Scott**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jane Bentrott**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jessica A. Marsden**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **John L. Schwab**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Kristy Parker**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

JA10

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Purdy**                    represented by **David J Rodwin**
*c/o Murphy Anderson PLLC*                              (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Mark Hanna**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carson J. Scott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane Bentrott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
(See above for address)

JA11

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kristofer Goldsmith**                    represented by    **David J Rodwin**
*c/o Murphy Anderson PLLC*                                  (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mark Hanna**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Carson J. Scott**
                                                            (See above for address)
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jane Bentrott**
                                                            (See above for address)
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

JA12

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**International Federation of Professional and Technical Engineers**

represented by **Mark Hanna**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carson J. Scott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jane Bentrott**
(See above for address)
*PRO HAC VICE*

JA13

*ATTORNEY TO BE NOTICED*

**Jessica A. Marsden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John L. Schwab**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Liam Gennari**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victor Roman Leal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Qiuyu Xiao**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiaonan April Hu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David J Rodwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Scott Bessent**
*in his official capacity as Secretary of the
Treasury*

represented by **Bradley Philip Humphreys**
United States Department of Justice
1100 L St. NW
Washington, DC 20005

JA14

2023050878
Fax: 2026168470
Email: bradley.humphreys@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
DOJ-Civ
Poc Agostinho, Jean
1100 L St., N.W.
8142
Washington, DC 20530
202-307-0340
Email: elizabeth.shapiro@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariana Wright Arnold**
DOJ-USAO
U.S. Attorney's Office - District of
Maryland
36 S. Charles Street
Ste 4th Floor
Baltimore, MD 21201
410-209-4813
Fax: 410-962-9947
Email: ariana.arnold@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
DOJ-Civ
Civil Division, Office of the Assistant
Attorney General
950 Pennsylvania Ave. NW
Washington, DC 20530
202-307-6482
Email: emily.hall@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of the Treasury**            represented by   **Bradley Philip Humphreys**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariana Wright Arnold**
(See above for address)
*ATTORNEY TO BE NOTICED*

JA15

**Emily Margaret Hall**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Charles Ezell**
*in his official capacity as the Acting Director of the Office of Personnel Management*

represented by **Bradley Philip Humphreys**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariana Wright Arnold**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Denise Carter**
*in her official capacity as the Acting Secretary of Education*

represented by **Bradley Philip Humphreys**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariana Wright Arnold**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Unites States Office of Personnel Management**

represented by **Bradley Philip Humphreys**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariana Wright Arnold**

JA16

(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Education**          represented by     **Bradley Philip Humphreys**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth J. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariana Wright Arnold**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/10/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number AMDDC-11775871.), filed by Christopher Purdy, Kristofer Goldsmith, National Active and Retired Federal Employees, Thomas Fant, American Federation of Teachers, International Association of Machinists and Aerospace Workers, National Federation of Federal Employees, Jason Cain, Clifford Grambo, Donald Martinez. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons)(Rodwin, David) (Entered: 02/10/2025) |
| 02/11/2025 | 2 | Summons Issued 60 days as to Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management, U.S. Attorney and U.S. Attorney General(bas, Deputy Clerk) (Entered: 02/11/2025) |
| 02/11/2025 | | Case Reassigned to Judge Deborah L. Boardman. Judge Deborah K. Chasanow no longer assigned to the case. (jf3s, Deputy Clerk) (Entered: 02/11/2025) |
| 02/12/2025 | 3 | MOTION to Appear Pro Hac Vice for John L. Schwab (Filing fee $100, receipt number AMDDC-11780001.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 4 | MOTION to Appear Pro Hac Vice for Xiaonan April Hu (Filing fee $100, receipt number AMDDC-11780072.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, |

JA17

| | | National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
|---|---|---|
| 02/12/2025 | 5 | MOTION to Appear Pro Hac Vice for Victor Roman Leal (Filing fee $100, receipt number AMDDC-11780084.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 6 | MOTION to Appear Pro Hac Vice for Carson J. Scott (Filing fee $100, receipt number AMDDC-11780219.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 7 | MOTION to Appear Pro Hac Vice for Kristy Parker (Filing fee $100, receipt number AMDDC-11780235.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 8 | MOTION to Appear Pro Hac Vice for Shalini Goel Agarwal (Filing fee $100, receipt number AMDDC-11780243.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 9 | MOTION to Appear Pro Hac Vice for Daniel J. McNeil (Filing fee $100, receipt number AMDDC-11780258.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 10 | MOTION to Appear Pro Hac Vice for Jessica A. Marsden (Filing fee $100, receipt number AMDDC-11780283.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 11 | MOTION to Appear Pro Hac Vice for Laurence M. Schwartztol (Filing fee $100, receipt number AMDDC-11780289.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 12 | MOTION to Appear Pro Hac Vice for Jane Bentrott (Filing fee $100, receipt number AMDDC-11780375.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, Donald Martinez, National Active and Retired Federal Employees, |

JA18

|  |  | National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 02/12/2025) |
|---|---|---|
| 02/12/2025 | 13 | AMENDED COMPLAINT against All Defendants, filed by National Active and Retired Federal Employees, Thomas Fant, American Federation of Teachers, Jason Cain, Donald Martinez, Christopher Purdy, Kristofer Goldsmith, International Association of Machinists and Aerospace Workers, Clifford Grambo, National Federation of Federal Employees, International Federation of Professional and Technical Engineers. (Attachments: # 1 Exhibit A - Redlined Amended Complaint)(Rodwin, David) (Entered: 02/12/2025) |
| 02/12/2025 | 14 | MOTION for Temporary Restraining Order by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit)(Rodwin, David) (Entered: 02/12/2025) |
| 02/13/2025 | 15 | PAPERLESS ORDER granting 3 Motion to Appear Pro Hac Vice on behalf of John L. Schwab. Directing attorney John L. Schwab to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |
| 02/13/2025 | 16 | PAPERLESS ORDER granting 4 Motion to Appear Pro Hac Vice on behalf of Xiaonan April Hu. Directing attorney Xiaonan April Hu to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) Modified on 2/13/2025 (mh4s). (Entered: 02/13/2025) |
| 02/13/2025 | 17 | PAPERLESS ORDER granting 5 Motion to Appear Pro Hac Vice on behalf of Victor Roman Leal. Directing attorney Victor Roman Leal to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |
| 02/13/2025 | 18 | PAPERLESS ORDER granting 6 Motion to Appear Pro Hac Vice on behalf of Carson J. Scott. Directing attorney Carson J. Scott to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |
| 02/13/2025 | 19 | PAPERLESS ORDER granting 7 Motion to Appear Pro Hac Vice on behalf of Kristy Parker. Directing attorney Kristy Parker to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |
| 02/13/2025 | 20 | QC NOTICE: 8 Motion to Appear Pro Hac Vice, filed by Christopher Purdy, Kristofer Goldsmith, Thomas Fant, International Association of Machinists and Aerospace Workers, National Federation of Federal Employees, American Federation of Teachers, National Active and Retired Federal Employees, Donald Martinez, Clifford Grambo, Jason Cain needs to be modified. See attachment for details and corrective actions needed regarding missing or incomplete information. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |

JA19

| 02/13/2025 | 21 | PAPERLESS ORDER granting 10 Motion to Appear Pro Hac Vice on behalf of Jessica A. Marsden. Directing attorney Jessica A. Marsden to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |
| --- | --- | --- |
| 02/13/2025 | 22 | PAPERLESS ORDER granting 11 Motion to Appear Pro Hac Vice on behalf of Laurence M. Schwartztol. Directing attorney Laurence M. Schwartztol to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |
| 02/13/2025 | 23 | CORRECTED MOTION to Appear Pro Hac Vice for Shalini Goel Agarwal by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy. The fee has already been paid.(Rodwin, David) (Entered: 02/13/2025) |
| 02/13/2025 | 24 | PAPERLESS ORDER granting 12 Motion to Appear Pro Hac Vice on behalf of Jane Bentrott. Directing attorney Jane Bentrott to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 2/13/2025. (mh4s, Deputy Clerk) (Entered: 02/13/2025) |
| 02/14/2025 | 25 | PAPERLESS ORDER scheduling a hearing on 14 motion for a temporary restraining order for Wednesday, February 19, 2025 at 10 a.m. in the Greenbelt Courthouse. The defendants' opposition is due Monday, February 17 at 12 p.m. The plaintiffs' reply is due Tuesday, February 18 at 12 p.m. Signed by Judge Deborah L. Boardman on 2/14/2025. (rs10, Chambers) (Entered: 02/14/2025) |
| 02/14/2025 | 26 | NOTICE of Appearance by Ariana Wright Arnold on behalf of All Defendants (Arnold, Ariana) (Entered: 02/14/2025) |
| 02/14/2025 | | Telephone Conference held on 2/14/2025 before Judge Deborah L. Boardman. (rc2s, Deputy Clerk) (Entered: 02/18/2025) |
| 02/17/2025 | 27 | RESPONSE in Opposition re 14 MOTION for Temporary Restraining Order filed by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management. (Attachments: # 1 Exhibit 1 - Krause Declaration, # 2 Exhibit 2 - Robinson Declaration, # 3 Exhibit 3 - Gioeli Declaration, # 4 Exhibit 4 - Wenzler Declaration, # 5 Exhibit 5 - Ramada Declaration, # 6 Exhibit 6 - Supplemental Ramada Declaration, # 7 Exhibit 7 - Flagg Declaration, # 8 Exhibit 8 - Hogan Declaration, # 9 Text of Proposed Order)(Arnold, Ariana) (Entered: 02/17/2025) |
| 02/18/2025 | 28 | REPLY to Response to Motion re 14 MOTION for Temporary Restraining Order filed by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy. (Attachments: # 1 Exhibit - Declaration of Xiaonan April Hu, # 2 Exhibit - Attachments to Declaration of Xiaonan April Hu)(Rodwin, David) (Entered: 02/18/2025) |
| 02/18/2025 | 29 | NOTICE by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management *of Recent Decision* (Attachments: # 1 Attachment Memorandum Opinion and |

|  |  | Order, University of California Student Association v. Carter, et al., Civil Action No. 25-354 (RDM), ECF #20, (D.D.C. February 17, 2025))(Arnold, Ariana) (Entered: 02/18/2025) |
|---|---|---|
| 02/19/2025 | 30 | NOTICE of Appearance by Emily Margaret Hall on behalf of All Defendants (Hall, Emily) (Entered: 02/19/2025) |
| 02/19/2025 | 31 | NOTICE of Appearance by Elizabeth J. Shapiro on behalf of All Defendants (Shapiro, Elizabeth) (Entered: 02/19/2025) |
| 02/19/2025 | 32 | Motion Hearing held on 2/19/2025 re 14 MOTION for Temporary Restraining Order before Judge Deborah L. Boardman.(Court Reporter: Patricia Klepp - 4A) (hcs, Deputy Clerk) (Entered: 02/19/2025) |
| 02/19/2025 | 33 | Correspondence re: Treating TRO Motion as Motion for Preliminary Injunction (Attachments: # 1 Attachment Hogan Declaration Filed 2.19.2025)(Hall, Emily) (Entered: 02/19/2025) |
| 02/20/2025 | 34 | NOTICE of Appearance by Daniel James McNeil on behalf of American Federation of Teachers (McNeil, Daniel) (Entered: 02/20/2025) |
| 02/21/2025 | 35 | Correspondence re: Treasury Employees (Attachments: # 1 Attachment 1 - York Declaration, # 2 Attachment 2 - Order)(Hall, Emily) (Entered: 02/21/2025) |
| 02/21/2025 | 36 | Correspondence re: Recent Decisions (Attachments: # 1 Attachment EDVA Decision, # 2 Attachment SDNY Decision)(Hall, Emily) (Entered: 02/21/2025) |
| 02/23/2025 | 37 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 2/19/25, before Judge Deborah L. Boardman. Court Reporter/Transcriber Patricia Klepp, Telephone number 3013443228. Total number of pages filed: 117. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 3/17/2025. Redacted Transcript Deadline set for 3/26/2025. Release of Transcript Restriction set for 5/27/2025. (Entered: 02/23/2025) |
| 02/24/2025 | 38 | MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER. Signed by Judge Deborah L. Boardman on 2/24/2025. (kns, Deputy Clerk) (Entered: 02/24/2025) |
| 02/24/2025 | 39 | Local Rule 103.3 Disclosure Statement by American Federation of Teachers (Rodwin, David) (Entered: 02/24/2025) |
| 02/24/2025 | 40 | Local Rule 103.3 Disclosure Statement by International Association of Machinists and Aerospace Workers (Rodwin, David) (Entered: 02/24/2025) |
| 02/24/2025 | 41 | Local Rule 103.3 Disclosure Statement by National Active and Retired Federal Employees (Rodwin, David) (Entered: 02/24/2025) |
| 02/24/2025 | 42 | Local Rule 103.3 Disclosure Statement by National Federation of Federal Employees (Rodwin, David) (Entered: 02/24/2025) |
| 02/24/2025 | 43 | Local Rule 103.3 Disclosure Statement by International Federation of Professional and Technical Engineers (Rodwin, David) (Entered: 02/24/2025) |
| 02/25/2025 | 44 | Status Report Submitted *Jointly with Defendants* by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy (Hu, Xiaonan) (Entered: 02/25/2025) |

| 02/26/2025 | 45 | Status Conference held on 2/26/2025 before Judge Deborah L. Boardman.(Court Reporter: FTR - 2C) (hcs, Deputy Clerk) (Entered: 02/26/2025) |
|---|---|---|
| 02/26/2025 | 46 | PAPERLESS ORDER directing the government to produce the administrative record by 5 p.m. on March 7, 2025. The plaintiffs' motion for a preliminary injunction is due by 5 p.m. on March 10, 2025; the government's opposition is due by 5 p.m. on March 13, 2025; and the plaintiffs' reply is due by 5 p.m. on March 14, 2025. Plaintiffs shall notify the Court by midnight on March 8, 2025 if they seek limited discovery, and the government shall respond by midnight on March 9, 2025. The Court will hold a preliminary injunction hearing on March 17, 2025 at 10:30 a.m. in the Greenbelt Courthouse. The plaintiffs shall indicate in their briefing whether they believe witness testimony will be necessary at the hearing and, if so, whose testimony will be necessary and why. Signed by Judge Deborah L. Boardman on 2/26/2025. (lmys, Chambers) (Entered: 02/26/2025) |
| 02/27/2025 | 47 | NOTICE of Appearance by Bradley Philip Humphreys on behalf of All Defendants (Humphreys, Bradley) (Entered: 02/27/2025) |
| 03/03/2025 | | Check Received on 03/03/2025 from Murphy Anderson PLLC. Check Number: 10147. Amount: $10.000.00. (bas, Deputy Clerk) (Entered: 03/03/2025) |
| 03/04/2025 | 48 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 2/26/2025, Status Conference before Judge Deborah L. Boardman. Court Reporter/Transcriber Patricia G. Mitchell, 410-962-3858, trish_mitchell@mdd.uscourts.gov. Total number of pages filed: 23. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 3/25/2025. Redacted Transcript Deadline set for 4/4/2025. Release of Transcript Restriction set for 6/2/2025. (Entered: 03/04/2025) |
| 03/04/2025 | 49 | Correspondence re: TRO (Attachments: # 1 Exhibit A)(Hu, Xiaonan) (Entered: 03/04/2025) |
| 03/06/2025 | 50 | PAPERLESS ORDER: For good cause, the Court extends 38 the Temporary Restraining Order ("TRO") imposed on February 24, 2025 at 8:00 a.m. until March 17, 2025 at 5:00 p.m., or until such time as the Court rules on the forthcoming preliminary injunction motion--whichever is earlier. The TRO is currently set to expire on March 10, 2025 at 8:00 a.m. This extension will protect the status quo and prevent the irreparable harm identified in 38 while the defendants produce the administrative record, the parties brief the preliminary injunction motion, and the Court holds a hearing on the preliminary injunction motion. The Court may, if there is good cause, extend the TRO for an additional period, but not beyond March 24, 2025 at 8:00 a.m. Signed by Judge Deborah L. Boardman on 3/6/2025. (rs10, Chambers) (Entered: 03/06/2025) |
| 03/07/2025 | 51 | NOTICE by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management *of Filing of Administrative Records* (Attachments: # 1 Exhibit Administrative Record of the Office of Personnel Management, # 2 Exhibit Administrative Record of the U.S. Department of the Treasury, # 3 Exhibit Administrative Record of the U.S. Department of Education)(Humphreys, Bradley) (Entered: 03/07/2025) |
| 03/07/2025 | 52 | Joint MOTION for Protective Order by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management (Attachments: # 1 Exhibit Stipulated Protective Order) (Humphreys, Bradley) (Entered: 03/07/2025) |
| 03/08/2025 | 53 | MOTION for Discovery by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and |

| | | |
|---|---|---|
| | | Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion for Extra-Record Discovery, # 2 Appendix of Xiaonan April Hu, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Text of Proposed Order)(Hu, Xiaonan) (Entered: 03/08/2025) |
| 03/09/2025 | 54 | RESPONSE in Opposition re 53 MOTION for Discovery filed by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management.(Humphreys, Bradley) (Entered: 03/09/2025) |
| 03/10/2025 | 55 | STIPULATED PROTECTIVE ORDER. Signed by Judge Deborah L. Boardman on 3/10/2025. (ybs, Deputy Clerk) (Entered: 03/10/2025) |
| 03/10/2025 | 56 | MOTION to Appear Pro Hac Vice for Wendy Qiuyu Xiao (Filing fee $100, receipt number AMDDC-11831589.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 03/10/2025) |
| 03/10/2025 | 57 | MOTION to Appear Pro Hac Vice for Liam Gennari (Filing fee $100, receipt number AMDDC-11831598.) by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy(Rodwin, David) (Entered: 03/10/2025) |
| 03/10/2025 | 58 | NOTICE by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management re 51 Notice (Other), *of Errata* (Attachments: # 1 Exhibit, # 2 Exhibit) (Humphreys, Bradley) (Entered: 03/10/2025) |
| 03/10/2025 | 59 | MOTION for Preliminary Injunction by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, # 2 Affidavit of Xiaonan April Hu, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Text of Proposed Order)(Hu, Xiaonan) (Entered: 03/10/2025) |
| 03/12/2025 | 60 | PAPERLESS ORDER granting 56 Motion to Appear Pro Hac Vice on behalf of Wendy Qiuyu Xiao. Directing attorney Wendy Qiuyu Xiao to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 3/12/2025. (mh4s, Deputy Clerk) (Entered: 03/12/2025) |
| 03/12/2025 | 61 | PAPERLESS ORDER granting 57 Motion to Appear Pro Hac Vice on behalf of Liam Gennari. Directing attorney Liam Gennari to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 3/12/2025. (mh4s, Deputy Clerk) (Entered: 03/12/2025) |

| 03/13/2025 | 62 | RESPONSE in Opposition re 59 MOTION for Preliminary Injunction filed by United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management. (Attachments: # 1 Affidavit Matteson Decl., # 2 Affidavit Wenzler Decl.)(Humphreys, Bradley) (Entered: 03/13/2025) |
| --- | --- | --- |
| 03/14/2025 | 63 | REPLY to Response to Motion re 59 MOTION for Preliminary Injunction filed by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy. (Attachments: # 1 Declaration of Xiaonan April Hu, # 2 Exhibit A, # 3 Exhibit B)(Hu, Xiaonan) (Entered: 03/14/2025) |
| 03/15/2025 | 64 | NOTICE by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management *of Filing of Supplement to the OPM Administrative Record and of Materials Filed in Alliance for Retired Americans v. Bessent, No. 25-cv-313 (D.D.C.)* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Humphreys, Bradley) (Entered: 03/15/2025) |
| 03/17/2025 | 65 | Motion Hearing held on 3/17/2025 re 59 MOTION for Preliminary Injunction before Judge Deborah L. Boardman.(Court Reporter: Patricia Klepp - 4A) (bus, Deputy Clerk) (Entered: 03/17/2025) |
| 03/17/2025 | 66 | PAPERLESS ORDER For the reasons stated on the record today, for good cause, the Court extends 38 the Temporary Restraining Order ("TRO") imposed on February 24, 2025 at 8:00 a.m. until March 24, 2025 at 8:00 a.m., or until such time as the Court rules on 59 the plaintiffs' preliminary injunction motion--whichever is earlier. Signed by Judge Deborah L. Boardman on 3/17/2025. (rs10, Chambers) (Entered: 03/17/2025) |
| 03/23/2025 | 67 | FILED IN ERROR: NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 3/17/25, before Judge Deborah L.Boardman. Court Reporter/Transcriber Patricia Klepp, Telephone number 3013443228. Total number of pages filed: 87. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 4/14/2025. Redacted Transcript Deadline set for 4/23/2025. Release of Transcript Restriction set for 6/23/2025. Modified on 3/24/2025 (pk4). (Entered: 03/23/2025) |
| 03/24/2025 | 68 | MEMORANDUM OPINION. Signed by Judge Deborah L. Boardman on 3/24/2025. (kns, Deputy Clerk) (Entered: 03/24/2025) |
| 03/24/2025 | 69 | ORDER granting 59 Motion for Preliminary Injunction and denying without prejudice 53 Motion for Extra-Record Discovery; Status Report due by 5:00 p.m. on March 31, 2025. Signed by Judge Deborah L. Boardman on 3/24/2025. (kns, Deputy Clerk) (Entered: 03/24/2025) |
| 03/24/2025 | 70 | NOTICE OF APPEAL as to 68 Memorandum Opinion, 69 Order on Motion for Discovery, Order on Motion for Preliminary Injunction by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management. (Humphreys, Bradley) (Entered: 03/24/2025) |
| 03/24/2025 | 71 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 3/17/25, before Judge Deborah L. Boardman. Court Reporter/Transcriber Patricia Klepp, Telephone number 3013443228. Total number of pages filed: 87. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 4/14/2025. Redacted Transcript |

JA24

| | | Deadline set for 4/24/2025. Release of Transcript Restriction set for 6/23/2025. (Entered: 03/24/2025) |
|---|---|---|
| 03/24/2025 | 72 | MOTION to Stay *Pending Appeal* by Scott Bessent, Denise Carter, Charles Ezell (Attachments: # 1 Text of Proposed Order)(Shapiro, Elizabeth) (Entered: 03/24/2025) |
| 03/24/2025 | 73 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 70 Notice of Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices.(slss, Deputy Clerk) (Entered: 03/24/2025) |
| 03/24/2025 | 74 | USCA Case Number 25-1282 for 70 Notice of Appeal, filed by United States Department of the Treasury, Unites States Office of Personnel Management, Scott Bessent, Charles Ezell, United States Department of Education, Denise Carter - Case Manager - Rachel Phillips. (slss, Deputy Clerk) (Entered: 03/24/2025) |
| 03/24/2025 | 75 | RESPONSE in Opposition re 72 MOTION to Stay *Pending Appeal* filed by American Federation of Teachers, Jason Cain, Thomas Fant, Kristofer Goldsmith, Clifford Grambo, International Association of Machinists and Aerospace Workers, International Federation of Professional and Technical Engineers, Donald Martinez, National Active and Retired Federal Employees, National Federation of Federal Employees, Christopher Purdy.(Hu, Xiaonan) (Entered: 03/24/2025) |
| 03/26/2025 | 76 | PAPERLESS ORDER informing the government that if it intends to file a reply to the plaintiffs' opposition to 72 motion to stay, the reply is due by Thursday, March 27 at 5:00 p.m. Signed by Judge Deborah L. Boardman on 3/26/2025. (rs10, Chambers) (Entered: 03/26/2025) |
| 03/28/2025 | 77 | ORDER Denying 72 Motion to Stay the Preliminary Injunction. Signed by Judge Deborah L. Boardman on 3/28/2025. (bas, Deputy Clerk) (Entered: 03/28/2025) |
| 03/31/2025 | 78 | STATUS REPORT *(Joint)* by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management(Humphreys, Bradley) (Entered: 03/31/2025) |
| 04/01/2025 | 79 | PAPERLESS ORDER directing the parties to file a status report after the Fourth Circuit resolves the government's motion to stay the preliminary injunction. Signed by Judge Deborah L. Boardman on 4/1/2025. (rs10, Chambers) (Entered: 04/01/2025) |
| 04/07/2025 | 80 | ORDER of USCA Court Denying initial hearing en banc and Granting appellants' motion to stay pending appeal as to 70 Notice of Appeal, filed by United States Department of the Treasury, Unites States Office of Personnel Management, Scott Bessent, Charles Ezell, United States Department of Education, Denise Carter. (slss, Deputy Clerk) (Entered: 04/08/2025) |
| 04/08/2025 | 81 | STATUS REPORT *(Joint)* by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management (Attachments: # 1 Exhibit)(Humphreys, Bradley) (Entered: 04/08/2025) |
| 04/08/2025 | 82 | Consent MOTION for Extension of Time to File Answer *or Otherwise Respond to Plaintiffs' Amended Complaint* by Scott Bessent, Denise Carter, Charles Ezell, United States Department of Education, United States Department of the Treasury, Unites States Office of Personnel Management (Attachments: # 1 Text of Proposed Order)(Humphreys, Bradley) (Entered: 04/08/2025) |
| 04/09/2025 | 83 | PAPERLESS ORDER granting 82 Motion for Extension of Time to Answer. The defendants shall file their response to the plaintiffs' amended complaint within 30 days of |

the Fourth Circuit's decision on the defendants' appeal of this Court's preliminary injunction. Signed by Judge Deborah L. Boardman on 4/9/2025. (lmys, Chambers) (Entered: 04/09/2025)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/12/2025 07:28:43 | | | |
| **PACER Login:** | bhumphreys83212 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:25-cv-00430-DLB |
| **Billable Pages:** | 28 | **Cost:** | 2.80 |

JA26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

AMERICAN FEDERATION OF
TEACHERS,
     555 New Jersey Ave. N.W.
     Washington, DC 2000,

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS,
     9000 Machinists Place
     Upper Marlboro, MD 20772,

INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS,
     513 C St. NE
     Washington, DC 20002,

NATIONAL ACTIVE AND RETIRED
FEDERAL EMPLOYEES ASSOCIATION,
     606 N Washington St.
     Alexandria, VA 22314,

NATIONAL FEDERATION OF FEDERAL
EMPLOYEES,
     225 New York Ave., NW, Suite 450
     Washington, DC 20005,

DONALD MARTINEZ,
     c/o Murphy Anderson PLLC
     1401 K St. NW
     Washington, D.C. 20005,

JASON CAIN,
     c/o Murphy Anderson PLLC
     1401 K St. NW
     Washington, D.C. 20005,

CLIFFORD GRAMBO,
     c/o Murphy Anderson PLLC
     1401 K St. NW
     Washington, D.C. 20005,

THOMAS FANT,
     c/o Murphy Anderson PLLC
     1401 K St. NW
     Washington, D.C. 20005,

CHRISTOPHER PURDY,

Case No. 8:25-cv-00430

1

JA27

> c/o Murphy Anderson PLLC
> 1401 K St. NW
> Washington, D.C. 20005, and

KRISTOFER GOLDSMITH
> c/o Murphy Anderson PLLC
> 1401 K St. NW
> Washington, D.C. 20005,

> *Plaintiffs*,

vs.

SCOTT BESSENT, in his official capacity as
Secretary of the Treasury,
> 1500 Pennsylvania Ave. NW
> Washington, D.C. 20220,

The UNITED STATES DEPARTMENT OF
THE TREASURY,
> 1500 Pennsylvania Ave. NW
> Washington D.C. 20220,

CHARLES EZELL, in his official capacity as
the Acting Director of the Office of Personnel
Management,
> 1900 E St. NW
> Washington, D.C. 20415,

The UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT,
> 1900 E St. NW
> Washington, D.C. 20415,

DENISE L. CARTER, in her official capacity
as the Acting Secretary of Education, and
> 400 Maryland Ave., SW
> Washington, D.C. 20202,

The UNITED STATES DEPARTMENT OF
EDUCATION,
> 400 Maryland Ave., SW
> Washington, D.C. 20202,

> *Defendants*.

## **AMENDED COMPLAINT**

1.      Americans who interact with the U.S. Government routinely entrust federal

agencies with sensitive personal information: Social Security numbers, home addresses, financial

records, and more. The government has codified its promise to treat their information with care in the requirements of the Privacy Act. Today, Defendants are permitting Elon Musk and a cadre of loyalists imported from his private companies to help themselves to the personal information of millions of Americans, in violation of those legal requirements. Plaintiffs in this case seek immediate relief to stop the Defendants from further unlawful disclosures and halt the serious harms that flow from the exposure and dissemination of sensitive personal information.

2. On January 20, 2025, President Trump issued an executive order refashioning the United States Digital Services as the "U.S. DOGE Service," ostensibly to promote government efficiency. It has been widely reported that the DOGE effort is led by the world's richest man, Elon Musk, and a small team of DOGE representatives that he directs, including at least one 19-year-old who had previously leaked proprietary information.

3. The White House has revealed little about the members of the DOGE and their qualifications, training, or background. It is similarly unclear whether and to what extent the members of the DOGE have been subject to the same rigorous background checks that federal employees who have access to some of the government's most sensitive and closely guarded data systems undergo. Notwithstanding this, Defendants have provided representatives of the DOGE with access to these systems, which includes Social Security numbers, bank account numbers, dates and places of birth, and other extraordinarily sensitive records of millions of Americans.

4. Steamrolling into sensitive government record systems threatens to upend how these critical systems are maintained and compromises the safety and security of personal identifying information for Americans all across the country. It also violates federal law.

5. Collecting and securely maintaining sensitive personal information allows the federal government to provide crucial services—from managing Social Security and veterans' disability payments, to supporting Americans pursuing higher education and helping them access health care.

6. The Privacy Act balances the government's legitimate need for information about individual Americans with the imperative to mitigate the risks inherent in collecting personal

information at scale. "Enacted in the wake of the Watergate and the Counterintelligence Program ("COINTELPRO") scandals involving illegal surveillance on opposition political parties and individuals deemed to be 'subversive,' the Privacy Act sought to restore trust in government and to address what at the time was seen as an existential threat to American democracy." Off. of Privacy & Civ. Liberties, *Overview of the Privacy Act of 1974: 2020 Edition*, at 1. The statute carefully regulates the circumstances in which agency records about individuals can be shared. Disclosures beyond what the statute authorizes are unlawful.

7.      Defendants' mass disclosure of personal information flies in the face of that legal framework and tramples on the individual privacy rights and interests protected by the Privacy Act. It also threatens real people, including individual Plaintiffs and members of the Plaintiff Organizations (collectively, "Plaintiffs"), by exposing them to the risk of identity theft, harassment, intimidation, and embarrassment.

8.      For example, Defendants Treasury Department and Secretary of Treasury Bessent have improperly disclosed to DOGE representatives the contents of the Federal Disbursement System, which is the government's mechanism for sending payments it owes to individual Americans (as well as other payees). That system contains records relating to every American who receives (among other things) a tax refund, social security benefit, veterans pay, or a federal salary. To facilitate these payments, the system maintains highly sensitive information about millions of Americans, including Social Security numbers, dates of birth, bank account information, and home addresses.

9.      Similarly, Defendants Department of Education and Acting Secretary of Education Denise L. Carter have improperly disclosed information maintained in the National Student Loan Data System. That system contains information on almost 43 million borrowers and their families necessary to manage federal student loan programs. This includes sensitive personal information such as Social Security numbers, bank records, tax returns, home addresses, employment data, documentation of marital status, mortgage statements, bank records, tax returns, child support, investments, family financial status and records, dependent-care cost,

death, divorce, job loss, immigration status, and demographic data about student-borrowers—
and, often, also for their parents, spouses, or other family members.

10.      Defendants U.S. Office of Personnel Management and its Acting Director Charles
Ezell have improperly disclosed information in multiple sensitive record systems. Those records
contain information about the 2.3 million federal employees, as well as millions of other former
federal employees and job applicants. These files contain exceedingly sensitive personal
information: in addition to Social Security numbers, contact information, and demographic
information, they contain highly sensitive employment information.

11.      All of these agencies have valid purposes for maintaining these record systems.
But that does not mean that Elon Musk or other DOGE representatives may have unlimited
access to them. The Privacy Act requires each of these agencies to provide access to records only
as part of the agencies' routine work to advance the legitimate purposes for which the records are
maintained in the first place, or with the express written consent of the individual whose data is
being sought.

12.      Representatives of the DOGE, however, do not believe themselves constrained by
those legitimate purposes or by the individual record-holders' consent. They have accessed
Defendants' data systems and the sensitive information contained within to "shut[] down"
payments and in the case of the Education Department, the agency itself.[1]

13.      The risks to Americans whose sensitive information is improperly disclosed are
very real. Failing to handle these records according to established safeguards increases the risks
that external actors may access them. The personal data contained in these systems could readily
facilitate identity theft and other economic crimes, with potentially devastating consequences for
the victims.

14.      These disclosures have directly harmed Plaintiffs.  Plaintiffs include veterans who
receive benefit payments as provided by law, current and former federal employees whose

---

[1] Elon Musk (@elonmusk), X (Feb. 2, 2025, 3:14 AM), https://x.com/elonmusk/status/1885964969335808217; Elon
Musk (@elonmusk), X (Feb. 3, 2025, 8:30 PM), https://x.com/elonmusk/status/1886633448078475593.

confidential employment files reside in the Office of Personnel Management's ("OPM") system, and teachers, first responders, and health care workers whose pathway to careers in public service included relying on student loans to fund their own educations. As to all of them, their personal data has been improperly disclosed to DOGE representatives in a manner completely divorced from the legitimate purposes for which it was maintained and in violation of their privacy rights. Plaintiffs are anxious about the implications of this government-facilitated breach of their personal information and uncertain about how their data is being used or who it will be shared with and whether it will be weaponized against them. They are concerned that the breach may well result in serious personal, social, and economic harm, from being targeted for harassment and threats to doxxing, swatting, and identity theft.

15.    The Administrative Procedure Act authorizes persons whose information has been unlawfully disclosed in violation of the Privacy Act to seek injunctive relief. *Doe v. Chao*, 435 F.3d 492, 505 n.17 (4th Cir. 2006). Accordingly, Plaintiffs ask this Court to restore the privacy they are entitled to under federal law by preventing further unauthorized and improper disclosures and ensuring that improper disclosures to DOGE representatives stop immediately.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(C) because Defendants are officers and agencies of the United States, no real property is at issue in this case, and one or more Plaintiffs are residents of this District.

## PARTIES

18.    Plaintiff **American Federation of Teachers ("AFT")** is a national labor organization headquartered in Washington, D.C., representing over 1.8 million members who are employed as pre-K through 12th-grade teachers, early childhood educators, paraprofessionals, and other school-related personnel; higher education faculty and professional staff; federal, state, and local government employees; and nurses and other healthcare professionals. For over a

decade the AFT has been fighting to help teachers and nurses burdened by student debt receive Public Service Loan Forgiveness. The national union has hosted hundreds of student debt clinics for tens of thousands of its members. As part of those clinics, the AFT has helped its members apply for the Public Service Loan Forgiveness Program, which is administered by the Department of Education. AFT members have records housed within OPM and Department of Education record systems and receive payments of various kinds from the United States Treasury. AFT also advocates for the ethical use of artificial intelligence and enforcement of government regulations that protect its members' personal data.[2]

19.    Plaintiff **National Active and Retired Federal Employees Association ("NARFE")** is a nonprofit organization founded in 1921, incorporated in the District of Columbia, and headquartered in Alexandria, Virginia, with a membership of approximately 128,000 current and former federal employees as well as spousal annuitants. NARFE's mission is to promote the general welfare of current federal civilian employees and federal retirees and their survivors, to advise and assist them with respect to their federal benefits, to represent their interests before appropriate authorities, and to support legislation and regulations beneficial to such employees and retirees and to oppose those detrimental to their interests. NARFE's members have records housed within OPM and Department of Education record systems and receive payments of various kinds from the United States Treasury. NARFE's advocacy efforts include calling on federal agencies to take reasonable steps to protect the privacy of NARFE members' digital information.[3]

20.    Plaintiff **International Association of Machinists and Aerospace Workers ("IAM")** is an international labor organization and unincorporated membership organization headquartered in Upper Marlboro, Maryland.  IAM is one the largest and most diverse labor unions in North America with nearly 600,000 active and retired members. Among IAM's

---

[2] *See, e.g.*, *The Future of Public Work: Artificial Intelligence, Algorithms & Data Protection in a Digital Age*, Am. Fed'n Tchrs. (July 17, 2022), https://www.aft.org/resolution/future-public-work-artificial-intelligence-algorithms-and-data-protection.
[3] *See, e.g.*, *Updates on OPM Cybersecurity Incident*, Nat'l Active & Retired Fed. Emps. Ass'n (Jan. 10, 2019), https://www.narfe.org/blog/2019/01/10/updates-on-opm-cybersecurity-incident.

affiliate organizations is the National Federation of Federal Employees ("NFFE"), which is a national labor organization and unincorporated membership organization headquartered in Washington, D.C. Together, IAM and NFFE represent more than 100,000 federal workers, approximately 13,000 of whom are dues-paying members, from agencies across the federal government. IAM and NFFE also represent many veterans and veterans' groups, advocate on their behalf, and assist them in receiving their benefits, among other services. IAM and NFFE members have records housed within OPM and Department of Education record systems and receive payments of various kinds from the United States Treasury. IAM and NFFE advocacy efforts include assisting their members in seeking redress for federal agencies' unlawful disclosures of members' sensitive data.[4]

21.     Plaintiff **International Federation of Professional and Technical Engineers ("IFPTE")** is an international labor organization headquartered in Washington, D.C., that represents approximately 34,000 federal employees, 7,000 of which are dues-paying members. The majority of federal employees represented by IFPTE work at the Department of Defense, primarily shipyards. Other represented members include nuclear submarine engineers, scientists and researchers at NASA, Administrative Law Judges at the Social Security Administration, and nuclear engineers at the Tennessee Valley Authority, as well as employees of the Environmental Protection Agency. IFPTE comprises many members who are veterans and represents and advocates for veterans and veterans' groups. IFPTE members have records housed within OPM and Department of Education record systems and receive payments of various kinds from the United States Treasury. IFPTE advocacy efforts include calling on federal legislators and agencies to implement policies that protect IFPTE members' privacy interests.[5]

22.     Plaintiff **Jason Cain** is a resident of North Carolina and currently works as an instructor of political science. He served for 10 years in the U.S. Army, as Sergeant First Class in

---

[4] *See, e.g., Privacy Rights*, Nat'l Fed'n Fed. Emps., https://nffe.org/members-center/privacy-rights.
[5] *See, e.g.*, Letter from Paul Shearon, Pres., Int'l Fed'n Prof. Tech. Engs., to Diane Feinstein, U.S. Senator (June 14, 2021), https://www.ifpte.org/s/IFPTE_NASA_MAP_Feinstein_letter _June142021_FINAL.pdf.

the U.S. Army Special Operations Command and the 82nd Airborne and had a Top Secret security clearance. He receives financial benefits from the federal government, including VA disability benefits. He previously received GI bill benefits, student loans, and a VA home loan from the federal government. As a result of his military service, employment in the civil service, and financial benefits, federal government agencies, including Defendants OPM and the Departments of Education and Treasury, have sensitive personal information about him in their record systems. When his VA account was previously hacked, and his disability and education benefits diverted to criminal enterprises, Plaintiff Cain experienced the fear and helplessness of having his personal information compromised. He is anxious about repeating this experience based on this unauthorized access to his personal information. He is outraged that such a grave breach of his privacy took place, given the extreme caution with which he was required to handle sensitive information during his service in the military and at the VA.

23.     Plaintiff **Kristofer Goldsmith** is a resident of New York and currently works as the head of a nonprofit organization combating domestic extremists. He is a military veteran of the U.S. Army, was deployed to Iraq in 2005, and left the Army as a Sergeant. He receives financial benefits from the federal government, including VA disability benefits. He has also previously received student loans from the federal government. As a result of his military service and financial benefits, federal government agencies, including Defendants Departments of Education and Treasury, have sensitive personal information about him in their record systems. Plaintiff Goldsmith is deeply concerned that his personal information is compromised, and may be exploited by domestic extremist organizations to harass, intimidate, and harm him and his family. These concerns are even more acute in light of the presidential pardons of many domestic extremists, with Musk's apparent support.

24.     Plaintiff **Clifford** "**Buzz**" **Grambo** is a resident of Maryland and is currently retired. He is a military veteran who served in the U.S. Navy for 20 years, retiring as Chief Petty Officer. He receives financial benefits from the federal government, including VA disability benefits and a military pension. Because of these financial benefits from his military service,

federal government agencies, including Defendant Treasury, have sensitive personal information about him in their record systems. Plaintiff Grambo believes that the unauthorized access to his and others' personal information poses a national security risk.

25.     Plaintiff **Thomas Fant** is a resident of Massachusetts and is currently retired. He is a military veteran of the U.S. Coast Guard, from which he was medically discharged. He receives financial benefits from the federal government, including VA disability benefits. Because of these financial benefits from his military service, federal government agencies, including Defendant Treasury, have sensitive personal information about him in their record systems. Plaintiff Fant is apprehensive and anxious that the unauthorized access to his and others' personal information will enable third parties affiliated with DOGE representatives to profit at the expense of him and other Americans.

26.     Plaintiff **Donald Martinez** is a resident of Colorado and currently works as a rancher. He is a military veteran of the U.S. Army, and had two deployments to Iraq as a Field Artillery Officer with a Top Secret/Sensitive Compartmented Information security clearance. During his service, he sustained a traumatic brain injury and was medically retired. He receives financial benefits from the federal government, including veterans' benefits, Social Security Disability Insurance/Medicare, Combat Related Special Compensation, and a VA home loan. Apart from his military service, Plaintiff Martinez also worked for the Federal Emergency Management Agency. And he received student loans from the federal government. As a result of his military service, employment in the civil service, and financial benefits, federal government agencies, including Defendants OPM and Departments of Education and Treasury, have sensitive personal information about him in their record systems. Especially because of his previous military service in a geographically sensitive area and involvement in high-level negotiations because of which he received death threats from terrorists, Plaintiff Martinez is worried that unauthorized access and disclosure of his personal information held within the federal government will compromise his personal safety and security.

27.    Plaintiff **Christopher Purdy** is a resident of Georgia and currently works as the head of a nonprofit organization. He served for eight years in the Army National Guard, where he was deployed to Iraq in 2011. He receives financial benefits from the federal government, including VA disability benefits. He previously also received a VA home loan and student loans from the federal government. As a result of his military service and financial benefits, federal government agencies, including Defendants Departments of Education and Treasury, have sensitive personal information about him in their record systems. Plaintiff Purdy is distressed that the breach of his personal information by unauthorized parties makes it more vulnerable to being released to the public, which could cause him severe economic harm. He is also very worried that Musk and DOGE may use their unauthorized access to his personal information to stop his VA disability payments, a major source of income in his household.

28.    Defendant the **United States Department of the Treasury** ("Treasury") is an agency of the United States.

29.    Defendant **Scott Bessent** is sued in his official capacity as the Secretary of the Treasury.

30.    Defendant the **Office of Personnel Management** is an agency of the United States.

31.    Defendant **Charles Ezell** is the Acting Director of the Office of Personnel Management ("OPM") and is sued in his official capacity.

32.    Defendant **United States Department of Education** is an agency of the United States.

33.    Defendant **Denise Carter** is the Acting Secretary of Education and is sued in her official capacity.

## FACTUAL ALLEGATIONS

**Establishment of DOGE**

34.    On January 20th, 2025, President Trump signed an executive order replacing the United States Digital Services with the "United States DOGE Service," which serves as the

parent agency for the new "U.S. DOGE Service Temporary Organization."[6] The order called for DOGE to "implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity."[7]

35.    Even before the inauguration, President Trump announced that Elon Musk would lead the DOGE effort.  It has been publicly reported that Musk directly leads and supervises activities of DOGE and its team.[8]  According to the White House, Musk now serves as a Special Government Employee.[9]

36.    The order establishing DOGE also provided for "DOGE teams" of at least four employees, which can include Special Government Employees, to be embedded within Federal agencies. Special Government Employee is a temporary employment status typically used for outside advisors, experts or consultants appointed to work on a short-term basis within the federal government. They are exempt from some federal ethics rules.

37.    DOGE representatives within the government are a combination of friends and former employees of Musk and his companies and a cadre of young adult software engineers, including college students and at least one teenager, whose identities the White House and DOGE have sought to conceal.[10]

**The Privacy Act's Prohibitions on Disclosure of Records Without Express Written Consent**

38.    "The Privacy Act directs agencies to establish safeguards to protect individuals against the disclosure of confidential records 'which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.'" *F.A.A. v. Cooper*, 566 U.S. 284, 294-95 (2012) (quoting 5 U.S.C. § 552a(e)(1)). It

---

[6] Madeleine Ngo & Theodore Schleifer, *How Trump's Department of Government Efficiency Will Work*, N.Y. Times (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/us/politics/doge-government-efficiency-trump-musk.html
[7] Executive Order, *Establishing and Implementing The President's "Department of Government Efficiency"* The White House (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/establishing-and-implementing-the-presidents-department-of-government-efficiency.
[8] Bobby Allyn & Shannon Bond, *Elon Musk Is Barreling into Government With DOGE, Raising Unusual Legal Questions*, NPR (Feb. 3, 2025), https://www.npr.org/2025/02/03/nx-s1-5285539/doge-musk-usaid-trump.
[9] Kaitlan Collins & Tierney Sneed, *Elon Musk Is Serving as a 'Special Government Employee,' White House Says*, CNN (Feb. 3, 2025), https://www.cnn.com/2025/02/03/politics/musk-government-employee/index.html.
[10] Theodore Schleifer et al., *Young Aides Emerge as Enforcers in Musk's Broadside Against Government,* N.Y. Times (Feb. 7, 2025), https://www.nytimes.com/2025/02/07/us/politics/musk-doge-aides.html.

does that by providing a legal framework for how the government handles sensitive records about Americans in a manner that protects their significant privacy rights.

39.     The Privacy Act states, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency" without consent of the individual whose information is in the record, subject to twelve statutory exceptions.[11]

40.     Under the Privacy Act, a system of records is "a group of any records under the control of an agency from which information is retrieved by the name of the individual or … other identifying particular assigned to the individual."[12]

41.     A record is "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph."[13]

42.     Office of Management and Budget ("OMB") guidelines state that disclosure under the Privacy Act "may be either the transfer of a record or the granting of access to a record."[14] Disclosure can be written, oral, electronic, or a mechanical transfer between computers of record content.[15]

43.     The Privacy Act specifies when individual information maintained in an agency record system may be disclosed. It does not prohibit disclosures to employees of the maintaining agency "who have a need for the record in the performance of their duties."[16]

44.     Similarly, the Privacy Act does not prohibit disclosures made for a "routine use," defined as "the use of such record for a purpose which is compatible with the purpose for which

---

[11] 5 U.S.C. § 552a(b).
[12] 5 U.S.C. § 552a(5).
[13] 5 U.S.C. § 552a(a)(4).
[14] OMB Guidelines, 40 Fed. Reg. 28,948, 28,953 (July 9, 1975).
[15] *Id*.
[16] 5 U.S.C. § 552a(b)(1).

it was collected."[17] Agencies must publish a Statement of Record Notice ("SORN") identifying all possible routine uses of a system of records.[18]

45.     Additionally, the Privacy Act mandates that "Each agency that maintains a system of rec-ords shall . . . establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained[.]"[19]

**The Treasury Department's Federal Disbursement Services**

46.     The Federal Disbursement Services ("FDS"), which is housed within the Treasury Department's Bureau of the Fiscal Service (the "Fiscal Service"), provides critical payment services for hundreds of federal agencies, allowing them to disburse payments such as Social Security benefits, federal income tax refunds, and veterans' pay, on which more than 70 million Americans rely.[20]

47.     In fiscal year 2024, FDS disbursed more than 1.27 billion payments, valued at more than $5.45 trillion.[21]

48.     The payment systems that make up FDS contain extensive amounts of sensitive, personally identifiable information ("PII"). This includes name, Social Security number, date and location of birth, physical address, telephone number, and financial institution information, among many other pieces of PII.[22] Within the payment systems, there is PII for tens of millions of individuals, if not more.[23]

---

[17] 5 U.S.C. § 552a(a)(7).
[18] *Id.*
[19] 5 U.S.C. § 552a(e)(10).
[20] *See* U.S. Dep't Treasury, *Federal Disbursement Services (FDS)*, (last modified Oct. 15, 2024), https://fiscal.treasury.gov/fds/;  *Monthly Statistical Snapshot, December 2024*, Social Security Administration (Jan. 2025), https://www.ssa.gov/policy/docs/quickfacts/stat_snapshot/.
[21] *Id.*
[22] U.S. Dep't Treasury, Notice of a Modified System of Records. 85 Fed. Reg. 11,776, 11,778 (Feb. 27, 2020).
[23] U.S. Dep't Treasury, *Privacy and Civil Liberties Impact Assessment: Payment Automation Manager* (Jul. 11, 2019), https://www.fiscal.treasury.gov/files/pia/pampclia.pdf.

49.     Historically, "only a small group of career employees" has operated the payment systems.[24] It is "extremely unusual" for "anyone connected to political appointees" to request or gain access to the payment systems.[25] Payment system access is strictly limited to "[o]nly employees whose official duties require access."[26]

50.     The Fiscal Service does not play a discretionary role in providing payment services. Rather, when federal agencies provide the Fiscal Service with a payment voucher to disburse money to a recipient and the Fiscal Service verifies that the voucher has been completed properly, payment systems within Fiscal Service issue the disbursement without exercising independent judgment.[27] Stated differently, the Fiscal Service's routine use of the FDS is limited to issuing disbursements requested by various federal agencies.

**DOGE's Repeated Efforts to Improperly Access the Federal Disbursement Services**

51.     For months, individuals affiliated with the initiative that would later become DOGE have worked to gain access to the Federal Disbursement System.[28] Indeed, soon after the November 2024 election, they asked for access to the system in an effort to have the Treasury Department serve as a "chokepoint" on payments.[29]

52.     David A. Lebryk, a senior career civil servant at Treasury, denied all of DOGE's requests for access to the sensitive personal data stored on the FDS. On January 24, 2025, DOGE-related officials asked Lebryk, at the time Acting Secretary of the Treasury, to "immediately shut off all USAID payments using [Treasury's] ultra-sensitive payment processing system."[30] Lebryk refused to do so on the grounds that stopping payments other

---

[24] Jacqueline Alemany et al., *Senior U.S. Official Exits After Rift with Musk Allies over Payment System*, WASH. POST (Jan. 31, 2025), https://www.washingtonpost.com/business/2025/01/31/elon-musk-treasury-department-payment-systems.
[25] *Id.*
[26] 85 Fed. Reg. 11,776, 11,778.
[27] *See* 31 U.S.C. § 3325(a).
[28] Jacqueline Alemany et al., *Senior U.S. Official Exits After Rift with Musk Allies over Payment System*, WASH. POST (Jan. 31, 2025), https://www.washingtonpost.com/business/2025/01/31/elon-musk-treasury-department-payment-systems.
[29] Katelyn Polantz, Phil Mattingly & Tierney Sneed, *How an Arcane Treasury Department Office Became Ground Zero In The War Over Federal Spending*, CNN (Feb. 1, 2025), https://www.cnn.com/2025/01/31/politics/doge-treasury-department-federal-spending.
[30] *Id.*

federal agencies have requested is not within the Treasury's purview or part of its practice.[31]
Lebryk was subsequently placed on administrative leave and later announced his retirement.[32]

53.     On or before January 31, 2025, and following Lebryk's placement on administrative leave, at least two people affiliated with DOGE gained access to the Federal Disbursement System.[33] They included Tom Krause, the CEO of Cloud Software Group, and Marko Elez, a 25-year-old DOGE staffer and Elon Musk deputy.[34] The government has claimed that both Krause and Elez were appointed as Special Government Employees in the Treasury Department.

54.     The day after Krause and Elez gained access to the payment systems, Musk posted on X that DOGE representatives "discovered" that "payment approval officers at Treasury were instructed always to approve payments, even to known fraudulent or terrorist groups."[35]

55.     On February 2, 2025, Musk posted on X that "[c]areer Treasury officials are breaking the law every hour … by approving payments that are fraudulent" and this had to "stop NOW!"[36] The same day, Musk replied to a post on X criticizing funding to specific religiously affiliated non-profit organizations and stated that "[t]he @DOGE team is rapidly shutting down these illegal payments."[37]

56.     On February 3, 2025, White House Press Secretary Karoline Leavitt said DOGE staff had been granted read-only access to the Treasury payments system.[38] A letter from the Treasury Department to members of Congress on February 4, 2025 reiterated that Treasury staff

---

[31] *Id.*

[32] Andrew Duehren et al., *Treasury Official Quits After Resisting Musk's Requests on Payments*, N.Y. TIMES (Jan. 31, 2025), https://www.nytimes.com/2025/01/31/us/politics/david-lebryk-treasury-resigns-musk.html.

[33] Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. TIMES (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html.

[34] Tobias Burns, *DOGE Staffer Who Accessed Treasury Department Payment Systems Resigns after Racist Posts Exposed*, THE HILL (Feb. 6, 2025), https://thehill.com/business/5131442-elon-musk-deputy-resign.

[35] Elon Musk (@elonmusk), X (Feb. 1, 2025, 1:52 AM), https://x.com/elonmusk/status/1885582076247771229.

[36] Elon Musk (@elonmusk), X (Feb. 2, 2025, 2:27 PM), https://x.com/elonmusk/status/1886134485822922785.

[37] Elon Musk (@elonmusk), X (Feb. 2, 2025, 3:14 AM), https://x.com/elonmusk/status/1885964969335808217.

[38] Jonathan Swan et al., *Inside Musk's Aggressive Incursion Into the Federal Government*, N.Y. TIMES (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/us/politics/musk-federal-government.html.

working with Krause would have read-only access to the coded data of the payment systems.[39]
The letter further stated that this was the type of access provided to individuals reviewing
Treasury systems, such as auditors.

57.    On February 4, 2025, WIRED reported that, contrary to Leavitt's and Treasury's
representations, Elez possessed read *and* write access to Treasury Department payment
systems.[40] Elez's administrative-level privileges reportedly included the ability to write code on
the Payment Automation Manager (PAM) and Secure Payment System (SPS) at the Bureau of
the Fiscal Service (BFS). WIRED reported that "[t]ypically, those admin privileges could give
someone the power to . . . change user permissions, and delete or modify critical files."

**Defendants' Disclosure of Information in the FDS to DOGE Officials Violates the Privacy
Act**

*Payment Systems Within the FDS Are a System of Records*

58.    Multiple payment systems within FDS are systems of records, as certified by the
Chief Privacy Officer of the Fiscal Service.[41] The Fiscal Service has published a Systems of
Records Notice (SORN) for these payment systems.[42]

59.    The information in specific payment systems within FDS, including the Secure
Payment System, the Invoice Processing Platform, and the Automated Standard Application for
Payments, among others, is retrieved by an "identifying particular" assigned to an individual.[43]

60.    The payment systems maintained within FDS contain extensive personally
identifiable information about individuals, including but not limited to Social Security numbers,
sensitive financial information, and addresses.[44]

---

[39] U.S. Dep't Treasury, *Treasury Department Letter to Members of Congress Regarding Payment Systems* (Feb. 4, 2025), https://home.treasury.gov/news/press-releases/sb0009.
[40] Vittoria Elliott et al., *A 25-Year-Old With Elon Musk Ties Has Direct Access to the Federal Payment System*, WIRED (Feb. 4, 2025), https://www.wired.com/story/elon-musk-associate-bfs-federal-payment-system/
[41] *See, e.g.*, *Privacy and Civil Liberties Impact Assessment: Secure Payment System*, U.S. Dep't Treasury (Mar. 22, 2021), https://www.fiscal.treasury.gov/files/pia/spspclia.pdf.
[42] 85 Fed. Reg. 11,776.
[43] See, e.g., *Privacy and Civil Liberties Impact Assessment: Secure Payment System*, U.S. Dep't Treasury (Mar. 22, 2021), https://www.fiscal.treasury.gov/files/pia/spspclia.pdf.
[44] 85 Fed. Reg. 11,776.

*Providing DOGE Representatives with Direct Access to the FDS is a "Disclosure"*
*Under the Privacy Act*

61.     Representatives of DOGE were granted access to payment systems within FDS
and the records and data therein on January 31, 2025.[45] That access qualifies as a disclosure
under the Privacy Act.

62.     None of the individual Plaintiffs, and on information and belief, none of the
members of the Plaintiff Organizations requested disclosure or provided express written consent
to the disclosure of their records and information to DOGE representatives.

*DOGE Representatives Do Not Require Access to the FDS in the Performance of Their*
*Duties*

63.      The New York Times recently reported that "Musk allies who have been granted
access to the payment system were made Treasury employees."[46]

64.     The Privacy Act's exception for disclosures to employees who need the record "in
the performance of their duties" does not apply. Even if Krause and Elez were Treasury
employees at the time Defendants provided them with access to the FDS, Musk's stated purpose
for that access, which is to stop "approving" all payments,[47] is incompatible with any legitimate
duties of the Department of the Treasury with respect to the FDS.

65.     The Treasury Department maintains the relevant record systems so that it may, in
a non-discretionary manner, send out payments approved by other federal agencies.[48] Consistent
with the Treasury Department's limited role in the payment disbursement process, FDS's
payment systems are designed to "facilitate" payments from federal government entities to their
recipients.[49] Stated differently, the payment systems contained within the FDS serve as

---

[45] Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times, (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html.
[46] *Id.*
[47] Elon Musk (@elonmusk), X (Feb. 2, 2025, 2:27 PM), https://x.com/elonmusk/status/1886134485822922785.
[48] *See* 31 U.S.C. § 3325(a); U.S. Dep't Treasury, *Treasury Department Letter to Members of Congress Regarding Payment Systems* (Feb. 4, 2025), https://home.treasury.gov/news/press-releases/sb0009 ("To be clear, the agency responsible for making the payment always drives the payment process.").
[49] 85 Fed. Reg. 11,776, 11,778.

processing centers that enact disbursement requests received from agencies; they are not independent centers of review.[50]

*Defendants' Disclosures of FDS Information to DOGE Representatives is Not a "Routine Use" of the Protected Information*

66.     The Privacy Act's "routine use" exception also does not apply. The SORN for payments systems within FDS lists 19 possible routine uses, none of which apply to DOGE staffers' access to FDS.[51]

67.     For example, representatives of DOGE are not accessing FDS records on behalf of the banking industry, an investigative agency, an agency responsible for law enforcement, a court, a foreign government, a congressional office, a union, a third party during the course of an investigation, a federal creditor agency, a state, debt collectors, or representatives of the National Archives and Records Administration.[52]

68.     Representatives of DOGE also are not responding to a suspected or confirmed "breach of the system of records,"[53] or "ensuring the efficient administration" of "payment processing services."[54]

69.     Rather, representatives of DOGE intend to change the purpose of payment systems within FDS to "scrutinize[]" payments and "pause" those they deem "improper," rather than disburse payments in a non-discretionary manner.[55] Consistent with this, Musk has indicated that DOGE officials are looking to control, and potentially cut off, disbursements from the Bureau of the Fiscal Service.[56] This is not a routine use listed in the SORN that would authorize Defendants' disclosure of sensitive personal and financial data to DOGE

---

[50] U.S. Dep't Treasury, *Privacy and Civil Liberties Impact Assessment: Secure Payment System* (Mar. 22, 2021), https://www.fiscal.treasury.gov/files/pia/spspclia.pdf.
[51] 85 Fed. Reg. 11,776, 11,778.
[52] *See id.*
[53] *Id.*
[54] *Id.*
[55] Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. TIMES (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html. ; Elon Musk (@elonmusk), X (Feb. 3, 2025, 11:43 AM), https://x.com/elonmusk/status/1886455404713943058.
[56] Elon Musk (@elonmusk), X (Feb. 2, 2025, 3:14 AM), https://x.com/elonmusk/status/1885964969335808217.

Representatives.[57] Nor could it be, given the Treasury's practice and policies regarding use of the FDS to fulfill its duty to disburse payments approved by other agencies.

70.    None of the other statutory exceptions for disclosure of personal information set forth in the Privacy Act applies or would have applied to authorize Defendants Bessell's and the Treasury's decision to disclose the sensitive information and data contained within the FDS to DOGE representatives.

**U.S. Office of Personnel Management Federal Work Force Files**

71.    OPM serves as the "chief human resources agency and personnel policy manager for the Federal Government."[58]

72.    As part of its workforce management responsibilities, OPM maintains systems that are responsible for "government-wide personnel management activities," such as tracking human resource and payroll data, operating centralized application and hiring systems for federal government jobs, and managing health benefits for more than 8 million federal civilian employees and other eligible individuals.[59]

73.    The systems that OPM operates and maintains contain extensive amounts of sensitive PII. This includes name, Social Security number, employment history, address, telephone number, demographic information, and disability status, among many other pieces of PII.[60] Within the OPM systems, there is PII for tens of millions of individuals, if not more,

---

[57] 85 Fed. Reg. 11,776.

[58] *About Us*, U.S. Off. Personnel Mgmt., https://www.opm.gov/about-us.

[59] *Privacy Impact Statement for Health Insurance Data Warehouse*, U.S. Off. Personnel Mgmt. (July 2, 2021), https://www.opm.gov/information-management/privacy-policy/privacy-policy/hidw-pia.pdf [hereinafter *HIDW PIA*]; *Privacy Impact Assessment for USAJOBS*, U.S. Off. Personnel Mgmt. (July 8, 2020), https://web.archive.org/web/20241228071153/https://www.opm.gov/information-management/privacy-policy/privacy-policy/usajobs-pia.pdf; *Privacy Impact Statement for Enterprise Human Resources Integration Data Warehouse*, U.S. Off. Personnel Mgmt. (July 11, 2019), https://www.opm.gov/information-management/privacy-policy/privacy-policy/ehridw.pdf.

[60] *Privacy Impact Assessment Summaries*, U.S. Off. Personnel Mgmt., https://www.opm.gov/information-management/privacy-policy/#url=PIAs.

including current and former federal employees and applicants to jobs at more than 500 federal agencies.[61]

74.    It has been reported that access to these OPM systems is generally held only by "senior career employees" at OPM.[62]    Some subsets of records in OPM systems are subject to even stricter access restrictions, such as those in the Health Insurance Data Warehouse, which are generally confined to "a limited number of well-trained [health insurance] analysts."[63]

**DOGE's Efforts to Improperly Access OPM Systems**

75.    Shortly after the inauguration of President Trump, civil servants within OPM received instructions to provide access to the sensitive OPM systems to DOGE representatives.[64]

76.    On information and belief, DOGE representatives have gained sweeping access to highly sensitive record systems within the last few weeks. The *Washington Post* reported on February 6:

> At least six DOGE agents were given broad access to all personnel systems at the OPM on the afternoon of Jan. 20, the day of Trump's inauguration, according to two agency officials. Three more gained access about a week later, they said.
>
> The data that the DOGE team can access includes a massive trove of personal information for millions of federal employees, included in systems called Enterprise Human Resources Integration and Electronic Official Personnel Folder. It also includes personal information for anyone who applied to a federal job through the site USAJobs, the people said. Last year alone, the people said, there were 24.5 million such applicants.

---

[61] U.S. Gov. Accountability Off., *USAJOBS Website: OPM Has Taken Actions to Assess & Enhance the User Experience* (Oct. 2020), https://www.gao.gov/assets/gao-21-31.pdf#:~:text=approximately%2017.5%20million%20job%20applications%20were%20started,applicants%20are%20deemed%20qualified%20and%20which%20are; *HIDW PIA, supra* note 59.

[62] Tim Reid, *Exclusive: Musk Aides Lock Workers Out of OPM Computer Systems*, Reuters (Feb. 2, 2025), https://www.reuters.com/world/us/musk-aides-lock-government-workers-out-computer-systems-us-agency-sources-say-2025-01-31; *see, e.g.*, *HIDW PIA, supra* note 59, at 9 (noting that "only a limited number of well-trained [health-insurance] analysts have access to the information in the [Health Insurance Data Warehouse system]."); *Privacy Impact Assessment for the Payment Processing Automation Initiative*, U.S. Off. Personnel Mgmt. at 8 (June 3, 2020), https://www.opm.gov/information-management/privacy-policy/privacy-policy/ppai-olbp.pdf (noting "access controls that limit access to only those with a need to know and only with access appropriate to their roles and responsibilities").

[63] *HIDW PIA, supra* note 59.

[64] Caleb Ecarma & Judd Legum, *Musk Associates Given Unfettered Access to Private Data of Government Employees*, Popular Info. (Feb. 3, 2025), https://popular.info/p/musk-associates-given-unfettered.

The two OPM officials said the level of access granted to DOGE agents means they could copy the Social Security number, phone numbers and personnel files for millions of federal employees.[65]

77.    The access instructions specified that DOGE representatives should have "admin user" access that allowed them to "code read and write permissions," in essence allowing these officials to "make updates to anything that they want."[66]

78.    Defendants OPM and Acting Director Ezell provided DOGE representatives, including a recent high school graduate, with access to these sensitive systems and databases, including USAJOBS, the Enterprise Human Resources Integration Data Warehouse ("EHRI DW"), USA Staffing, USA Performance, and the Health Insurance Data Warehouse ("HIDW"), and the personally identifiable information contained within.[67]

79.    In late January, career officials who have long had access to these systems had their permissions "revoked."[68]

80.    DOGE representatives at OPM have since used their access to examine job description data and "remove" specific government employees.[69] On February 8, 2025, the Washington Post reported that access to EHRI DW and the Electronic Official Personnel Folder was revoked for "some" DOGE agents.[70]

**Defendants' Disclosure of Information in OPM Systems to DOGE Representatives Violates the Privacy Act**

*OPM Systems Contain Systems of Records*

---

[65] Isaac Stanley-Becker et al., *Musk's DOGE Agents Access Sensitive Personnel Data, Alarming Security Officials*, Wash. Post (Feb. 6, 2025), https://www.washingtonpost.com/national-security/2025/02/06/elon-musk-doge-access-personnel-data-opm-security.

[66] Ecarma & Legum, *supra* note 64.

[67] *Id.*

[68] Tim Reid, *Exclusive: Musk Aides Lock Workers Out of OPM Computer Systems*, Reuters (Feb. 2, 2025), https://www.reuters.com/world/us/musk-aides-lock-government-workers-out-computer-systems-us-agency-sources-say-2025-01-31.

[69] Ecarma & Legum, *supra* note 64.

[70] Isaac Stanley-Becker and Hannah Natanson, *Some DOGE agents removed from sensitive personnel systems after security fears*, Washington Post (Feb. 8, 2025), https://www.washingtonpost.com/nation/2025/02/08/doge-opm-musk/.

81.     The systems to which DOGE-related officials have access within OPM, including USAJOBS, EHRI DW, USA Staffing, USA Performance, and HI DW (collectively, "OPM Systems"), are systems of records, as certified by the Chief Privacy Officer of OPM.[71] OPM has published a SORN for these record systems.[72]

82.     The information in the OPM Systems is retrieved by "an identifying particular" assigned to an individual.[73]

83.     The systems within OPM contain extensive personally identifiable information about individuals, including but not limited to Social Security number, employment history, and addresses.[74]

*Providing DOGE Representatives with Direct Access to Specific OPM Systems is a Disclosure Under the Privacy Act*

84.     Representatives of DOGE were granted access to personnel- and benefit-related systems within OPM and the records therein on or before January 31, 2025.[75] That access qualifies as a disclosure under the Privacy Act.

85.     DOGE representatives within OPM have "'review[ed] position description level data,'" an act that would involve information retrieval from systems within OPM.[76]

86.     Disclosure can be written, oral, electronic, or a mechanical transfer between computers of record content.[77]

87.     None of the individual Plaintiffs, and on information and belief, none of the members of the Plaintiff Organizations requested disclosure or provided express written consent

---

[71] *Privacy Policy*, U.S. Off. Personnel Mgmt., https://www.opm.gov/information-management/privacy-policy/#url=PIAs
[72] *System of Records Notices (SORN)*, U.S. Off. Personnel Mgmt., https://www.opm.gov/information-management/privacy-policy/#url=SORNs.
[73] *OPM SORN GOVT-2 Employee Performance File System Records*, U.S. Off. Personnel Mgmt., https://www.opm.gov/information-management/privacy-policy/sorn/opm-sorn-govt-2-employee-performance-file-system-records.pdf.
[74] *See, e.g.*, *HIDW PIA, supra* note 59.
[75] *See* Tim Reid, *Exclusive: Musk Aides Lock Workers Out of OPM Computer Systems*, REUTERS (Feb. 2, 2025), https://www.reuters.com/world/us/musk-aides-lock-government-workers-out-computer-systems-us-agency-sources-say-2025-01-31.
[76] Ecarma & Legum, *supra* note 64.
[77] OMB Guidelines, 40 Fed. Reg. 28,948, 28,953 (July 9, 1975).

to the disclosure of their records and information to DOGE representatives. As such, Defendants'
continued and ongoing disclosure of their records to DOGE representatives constitutes a
violation of the Privacy Act, for which no exception applies.

*DOGE Representatives Do Not Require Access to the FDS in the Performance of Their
Duties*

88.    It has been reported that the DOGE representatives who have been provided by
Defendants with access to the OPM systems are "political appointees" at OPM.[78] However, it has
also been reported that DOGE representatives "have received official government credentials,
including official email addresses, at multiple agencies."[79] For example, some DOGE
representatives in the Department of Education's internal address book "also have GSA or OPM
email addresses," seemingly holding themselves out as employees of multiple agencies at the
same time, while ultimately serving DOGE's mission.

89.    The Privacy Act's exception for disclosures to employees who need the record "in
the performance of their duties" does not apply to the disclosures here. On information and
belief, DOGE's purpose for accessing that data is to significantly "restructur[e]" the government
by "push[ing]" out employees.[80]

*Defendants' Disclosures of Specific OPM Systems to DOGE Officials Is Not a "Routine
Use" of the Protected Information*

90.    The Privacy Act's "routine use" exception also does not apply. The SORNs for
specific systems within OPM, namely USAJOBS, EHRI DW, USA Staffing, USA Performance,
and HI DW, list 114 overlapping possible routine uses, none of which apply here.[81]

---

[78] Ecarma & Legum, *supra* note 64.
[79] Washington Post Staff, *Elon Musk's DOGE Has Swept into 15 Federal Agencies. Here's What to Know.*, WASH.
POST (Feb. 8, 2025), https://www.washingtonpost.com/business/2025/02/04/elon-musk-government-legal-doge.
[80] *Id.*; Reuters, *Musk's DOGE agents access sensitive government personnel data, Washington Post reports* (Feb. 6,
2025), *available at* https://www.reuters.com/world/us/musks-doge-agents-access-sensitive-opm-personnel-data-
washington-post-reports-2025-02-06/.
[81] *See* Privacy Act of 1974: Update and Amend System of Records, 79 Fed. Reg. 16834 (March 26, 2014); *OPM
GOVT-2 Applicant Race, Sex National Origin, & Disability Status Records*, U.S. Off. Personnel Mgmt.,
https://www.opm.gov/information-management/privacy-policy/sorn/opm-sorn-govt-7-applicant-race-sex-national-
origin-and-disability-status-records.pdf; Privacy Act of 1974: Update Existing System of Records, 77 Fed. Reg.

91.     For example, representatives of DOGE are not accessing OPM records on behalf of a training facility, educational institution, foreign government official, agency adjudicating benefit claims, agency choosing to honor employees, labor organization official, the Merit Systems Protection Board, or the Equal Employment Opportunity Commission, among others.[82]

92.     Rather, on information and belief, representatives of DOGE intend to misuse OPM's systems to indiscriminately remove individuals from their positions en masse.[83] This is not a routine use listed in the SORNs.[84]

93.     None of the other statutory exceptions for disclosure of personal information set forth in the Privacy Act applies or would have applied to authorize Defendants' decision to disclose the sensitive information and data contained within the FDS to DOGE representatives.

**Department of Education Student Loan System**s

94.     The Department of Education (ED) is responsible for managing the federal student loan system through its Federal Student Aid (FSA) office. ED maintains several systems of record that support operation of the federal student loan system.

*National Student Loan Data System*

95.     The National Student Loan Data System (NSLDS) is a comprehensive national database for the Federal financial aid program. "As the central database for Title IV student financial aid, NSLDS stores information about loans, grants, students, borrowers, lenders, guaranty agencies . . . , schools, and servicers. It provides detailed information on individuals

---

73694 (Dec. 11, 2012); *OPM GOVT-6 Personnel Research & Test Validation Records*, U.S. Off. Personnel Mgmt., https://www.opm.gov/information-management/privacy-policy/sorn/opm-sorn-govt-6-personnel-research-and-test-validation-records.pdf; *OPM SORN GOVT-2 Employee Performance File System Records*, U.S. Off. Personnel Mgmt., https://www.opm.gov/information-management/privacy-policy/sorn/opm-sorn-govt-2-employee-performance-file-system-records.pdf; Privacy Act of 1974; System of Records, 89 Fed. Reg. 72902 (Sep. 6, 2024).
[82] 77 Fed. Reg. 73694.
[83] Ecarma & Legum, *supra* note 64.
[84] U.S. Off. Personnel Mgmt., *System of Records Notices (SORN)*, https://www.opm.gov/information-management/privacy-policy/#url=SORNs.

pertaining to their Title IV loans and grants during all stages of their aid life cycle, from approval through disbursement, repayment, default, and closure."[85]

96.    The NSLDS contains sensitive PII about the tens of millions of Americans who apply for or receive Federal student aid, including Social Security Number, name, date of birth, address, phone number, email address, and driver's license information, as well as demographic data about the borrower.[86]

97.    Personal data about a borrower's parents or co-signers is also contained in the NSLDS. Among other things, it contains "information on the parent(s) of a dependent recipient, including name, date of birth, SSN, marital status, email address, highest level of schooling completed, and income and asset information."[87]

*Common Origination and Disbursement System*

98.    The Common Origination and Disbursement System (CODS) processes information relating to determining eligibility for federal student aid.[88]

99.    The CODS includes records about aid applicants and recipients and their parents and spouses, including Social Security number, name, date of birth, mailing address, email address, driver's license, and telephone number, and demographic information.[89]

*FUTURE Act System*

100.    The FUTURE Act System (FAS) is used to determine eligibility for, or repayment obligations under, various income-driven repayment plans for federal student loans.[90]

101.    FAS contains information about aid applicants, including last name, date of birth, Social Security number and/or Tax Identification Number. It also includes similar information

---

[85] *See* U.S. Dep't of Educ., *Privacy Impact Assessment for the National Student Loan Data System (NLDS-New)* at 4-5 (May 19, 2022), https://www.ed.gov/sites/ed/files/notices/pia/pia-nslds-new.pdf. The records on the NSLDS "legacy" system were transferred to a revamped NSLDS-New system in October 2022. *Id.*
[86] U.S. Dep't of Educ., Notice of a Modified System of Records ("NSLDS SORN"), 87 Fed. Reg. 57,873, 57,878.
[87] *Id.* at 57,879.
[88] U.S. Dep't of Educ., *Privacy Impact Assessment for the Common Origination & Disbursement System* (Sept. 29, 2023), https://www.ed.gov/sites/ed/files/notices/pia/fsa-pia-cod.pdf.
[89] U.S. Dep't of Educ., Notice of a Modified System of Records ("CODS SORN"), 88 Fed. Reg. 41,942, 41,947 (June 28, 2023).
[90] U.S. Dep't of Educ., *Privacy Impact Assessment for the Federal Tax Information Module* (June 4, 2024), https://www.ed.gov/sites/ed/files/notices/pia/pia-ftim.pdf.

about parents of dependent applicants and spouses of independent applicants, plus spousal income and asset information and parental income and asset information.[91]

*Financial Management System*

102.    The Financial Management System ("FMS") interfaces with other Federal Student Aid systems and consolidates and centralizes all Federal Student Aid accounting and financial data into one system. FMS contains personally identifying information about individual borrowers who are entitled to a refund of an overpayment or discharge, or both. The system includes a borrower's Social Security number, name and address, amount of overpayment to be refunded and name of the loan holder.[92]

**DOGE's Efforts to Improperly Access ED's Systems**

103.    According to a report in the Washington Post, "roughly 20 people with Elon Musk's 'Department of Government Efficiency,' known as DOGE, have begun working inside the Education Department, looking to cut spending and staff."[93] The Washington Post has also written, "DOGE staffers have gained access to multiple sensitive internal systems, including a financial aid dataset that contains the personal information for millions of students enrolled in the federal student aid program."[94] The access has "deeply alarmed" career staff.[95] On information and belief, the systems accessed include NSLDS, COGS, FAS and/or FMS.

104.    It has been publicly reported that DOGE representatives "fed sensitive data from across the Education Department into artificial intelligence software to probe the agency's programs and spending."[96] The Washington Post has reported that "[t]he DOGE team plans to

---

[91] U.S. Dep't of Educ., Notice of a New System of Records ("FAS SORN"), 88 Fed. Reg. 42,220, 42,222 (June 29, 2023).
[92] U.S. Dep't of Educ., Notice of a New System of Records ("FMS SORN"), 73 Fed. Reg. 177, 177 (Jan. 2, 2008).
[93] Laura Meckler et al., *Trump Preps Order to Dismantle Education Dept. as DOGE Probes Data*, Wash. Post (Feb. 3, 2025), https://www.washingtonpost.com/education/2025/02/03/trump-education-department-dismantling-executive-order-draft.
[94] *Id.*
[95] Jeff Stein et al., *U.S. Government Officials Privately Warn Musk's Blitz Appears Illegal*, Wash. Post (Feb. 4, 2025), https://www.washingtonpost.com/business/2025/02/04/elon-musk-government-legal-doge.
[96] Hannah Natanson et al., *Elon Musk's DOGE Is Feeding Sensitive Federal Data into AI to Target Cuts*, Wash. Post (Feb. 6, 2025), https://www.washingtonpost.com/nation/2025/02/06/elon-musk-doge-ai-department-education.

replicate this process across many departments and agencies, accessing the back-end software at different parts of the government and then using AI technology to extract and sift through information about spending on employees and programs."

**Defendants' Disclosure of Information in ED's Systems to DOGE Officials Violates the Privacy Act**

*The ED Systems are Systems of Record*

105.    NLSDS, COGS, FAS, and FMS (collectively, the "ED Systems") are each a system of records, and ED has published a SORN describing each system's purposes and uses.[97]

106.    The information in each of the ED Systems is retrieved by the name of the individual or other "identifying particular" assigned to an individual.[98]

107.    ED's systems contain extensive personally identifiable information about individuals, including but not limited to Social Security number, sensitive financial information, and address.

*Providing DOGE Representatives with Direct Access to ED Systems is a "Disclosure" Under the Privacy Act*

108.    On information and belief, Defendants Acting Secretary of Education Denise Carter and the Department of Education granted representatives of DOGE access to ED Systems on or before February 3, 2025. That access qualifies as a disclosure under the Privacy Act.

109.    None of the individual Plaintiffs, and on information and belief, none of the members of the Plaintiff Organizations requested disclosure or provided express written consent to the disclosure of their records and information to DOGE representatives.

*"Feeding" ED Systems Data to Unvetted AI Tools Is Likewise a "Disclosure" Under the Privacy Act*

110.    Public reporting has revealed that DOGE has begun "feeding" ED data into artificial intelligence tools, including "data with personally identifiable information for people

---

[97] *See* NSLDS SORN, CODS SORN, FAS SORN, FMS SORN.
[98] NLDS SORN, 87 Fed. Reg. 57,873, 57,881; CODS SORN, 88 Fed. Reg. 41,942, 41,950; FAS SORN, 88 Fed. Reg. 42,220, 42,225; FMS SORN, 73 Fed. Reg. 177, 179.

who manage grants, as well as sensitive internal financial data."[99] Reporting also indicates that DOGE plans to use artificial intelligence programs to analyze data retrieved from additional agency systems.[100] The AI tools DOGE is using to analyze agency data are reportedly hosted on cloud-based computers that are located outside of federal-government facilities.[101]

111.    Feeding ED Systems data into DOGE's AI tools constitutes additional unauthorized disclosures of data to the pur-based computers and operators of those systems.[102]

*DOGE Representatives Do Not Require Access to ED Systems in the Performance of their Duties*

112.    The Privacy Act carves out an exception for disclosures without prior written consent to "officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."

113.    The Privacy Act's exception for disclosures to employees who need the record "in the performance of their duties" does not apply.

114.    Disclosure of data housed in any of the ED Systems to DOGE representatives is not necessary for the performance of the duties of ED employees or officials.

115.    The data stored on ED Systems is collected and maintained to enable administration of the student loan system under Title IV of the Higher Education Act.[103]

116.    DOGE and its representatives' access to ED Systems has a very different purpose: Musk has boasted online that DOGE is advancing President Trump's aim to "end[] the federal Department of Education."[104] Musk's claim comes after President Trump "repeatedly vowed to shutter the federal agency" on the campaign trail and announced after taking office that he

---

[99] *See Natanson*, *supra* n.102.
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] NLDS SORN, 87 Fed. Reg.  57,873, 57,877-78; CODS SORN, 88 Fed. Reg.  41,942, 41,945-46; FMS SORN, 73 Fed. Reg, 177, 178; FAS SORN, 88 Fed. Reg. 42,220, 42,221-22.
[104] Elon Musk (@elonmusk), X (Feb. 3, 2025, 8:30 PM), https://x.com/elonmusk/status/1886633448078475593; *see also* Meckler et al., *supra* note 92 (noting that DOGE access "is a prelude to a more dramatic effort to make good on one of Trump's campaign promises: eliminating the Education Department altogether").

expects his nominee for Secretary of Education to "put herself out of a job."[105] On February 7, 2025, after DOGE officials had gained access to ED systems, Musk claimed that the department "doesn't exist."[106]

*Defendants' Disclosures of ED Systems Information to DOGE Officials is Not a "Routine Use" of the Protected Information*

117.    The Privacy Act's "routine use" exception also does not apply.

118.    The SORN for NSLDS lists 14 routine uses, none of which apply here.

119.    The routine uses for NSLDS generally fall into several broad categories: uses related to administration of the loan program; disclosures to enable enforcement by agencies "charged with the responsibility of investigating or prosecuting" specific violations; litigation or alternative disputes resolution procedures; disclosures required under the Freedom of Information Act or Privacy Act; contract-related disclosures; employment- or benefit-related matters; employee grievance proceedings; labor organization disclosure; disclosures to the Justice Department or OMB; disclosures in the course of responding to a data breach; disclosures in assisting another agency responding to a data breach; and disclosures to the National Archives and Records Administration.[107]

120.    None of the routine uses listed by the NSLDS SORN contemplate data access for the purpose of dismantling the Department of Education.

121.    None of the routine uses listed by the NSLDS SORN contemplate "feeding" data into artificial intelligence systems, and certainly not for the purpose of dismantling the Department of Education.

122.    As alleged above, DOGE officials are accessing the ED Systems for purposes of destroying ED, not for any of the purposes identified in the NSLDS SORN.

---

[105] Zachary Schermele, *President Trump Says He Wants His Education Secretary to 'Put Herself out of a Job'*, USA TODAY (Feb. 4, 2025), https://www.usatoday.com/story/news/education/2025/02/04/trump-education-department-mcmahon/78220522007.
[106] Elon Musk (@elonmusk), X (Feb. 7, 2025, 5:34 PM), https://x.com/elonmusk/status/1888038615780909178.
[107] NLDS SORN, 87 Fed. Reg. 57,873, 57,879-81.

123.    The SORN for CODS lists 15 routine uses, none of which apply here. The routine uses for CODS are similar to those for NSLDS.[108]

124.    As alleged above, DOGE officials are accessing the ED Systems for purposes of destroying ED, not for any of the purposes identified in the CODS SORN.

125.    The SORN for FAS lists 15 routine uses, none of which apply here. The routine uses for FAS are similar to those for NSLDS and CODS.[109]

126.    As alleged above, DOGE officials are accessing the ED Systems for purposes of destroying ED, not for any of the purposes identified in the FAS SORN.

127.    The SORN for FMS lists 10 routine uses, none of which apply here. The routine uses for FAS are similar to those for NSLDS, CODS, and FAS.[110]

128.    As alleged above, DOGE officials are accessing the ED Systems for purposes of destroying ED, not for any of the purposes identified in the FMS SORN.

129.    The use of the records contained in ED Systems to dismantle ED is incompatible with any legitimate duties of the Department and with the purpose for which the records were collected and maintained.

130.    None of the other statutory exceptions for disclosure of personal information set forth in the Privacy Act applies or would have applied to authorize Defendants' decision to disclose the sensitive information and data contained within the ED to DOGE representatives.

**Defendants' Disclosure of Protected Data to DOGE Employees Is Unprecedented**

131.    Defendants and DOGE have turned the data systems that enable the government to function into a weapon to dismantle the government from the inside. Indeed, Mr. Musk exults the non-routine nature of DOGE. In response to a post on X that said "DOGE is speedrunning government reform--$4B/day cuts could start THIS weekend. Bureaucracy never saw it

---

[108] CODS SORN, 88 Fed. Reg. 41,942, 41,948-50.
[109] FAS SORN, 88 Fed. Reg. 42,220, 42,223-25.
[110] FMS SORN, 93 Fed. Reg. 177, 178-79.

coming[,]" Musk seemed to agree, explaining: "Very few in the bureaucracy actually work the weekend, so it's like the opposing team just leaves the field for 2 days!"[111]

132.    As DOGE's intrusion into Plaintiffs' sensitive data is unprecedented, Defendants' disclosures cannot constitute "routine use" authorized by the Privacy Act.[112] When these systems are used for routine purposes, access is usually very restricted.[113] For instance, "the aggregate information contained in the OPM databases is so sensitive, said a U.S. official, that even White House requests for certain types of data were rebuffed under previous administrations."[114]

133.    Defendants are disclosing protected data to DOGE representatives not to advance their agencies' respective agendas, but to advance the DOGE agendas. Destroying Congressionally-established federal agencies is not a "routine use" of these systems. Identifying entire programs to eliminate is not a "routine use" of these systems. And feeding Americans' PII into private artificial intelligence systems is not a "routine use" of these systems.

**Defendants' Disclosure of Protected Data Has Harmed and Will Continue to Harm Plaintiffs**

134.    President Gerald Ford, who signed the Privacy Act into law, described the Act as codifying this country's long-held commitment to "safeguard personal privacy." Indeed, the Act mandates that the government "protect the right of privacy for every American." Defendants' unauthorized access and disclosure of that information to DOGE representatives violates Plaintiffs' rights under the Privacy Act. It has also exposed Plaintiffs' sensitive information to serious risk.

---

[111] Elon Musk (@elonmusk), X (Feb. 1, 2025 3:37 PM), https://x.com/elonmusk/status/1885789468713476492.
[112] Charlie Warzel & Ian Bogost, *The Government's Computing Experts Say They are Terrified,* The Atlantic (Feb. 7, 2025), https://www.theatlantic.com/technology/archive/2025/02/elon-musk-doge-security/681600/.
[113] *Id.*
[114] Isaac Stanley-Becker et al., *Musk's DOGE Agents Access Sensitive Personnel Date, Alarming Security Officials*, Wash. Post (Feb. 6, 2025), https://www.washingtonpost.com/national-security/2025/02/06/elon-musk-doge-access-personnel-data-opm-security/?utm_campaign=wp_post_most&utm_medium=email&utm_source=newsletter&carta-url=https%3A%2F%2Fs2.washingtonpost.com%2Fcar-ln-tr%2F40f0f54%2F67a4ea66cd86f13ee737dd6e%2F5972aa5bade4e21a84818a4e%2F14%2F60%2F67a4ea66cd86f13ee737dd6e.

135.    Plaintiffs, like many millions of Americans since the Act's passage, rely on the protections enshrined in the Privacy Act to safeguard their sensitive information housed in the systems described in this Complaint. Defendants' actions have run roughshod over those protections. Cyber security experts warn that Defendants' actions pose several extreme risks. "As one administrator for a federal agency with deep knowledge about the government's IT operations told [the *Atlantic*], "'I don't think the public quite understands the level of danger.'"[115]

136.    According to public reporting, a Treasury Department internal threat analysis has designated DOGE to be an "insider threat."[116] The Bureau of Fiscal Service's threat intelligence team recommended "suspending [DOGE's] access immediately and conducting a comprehensive review of all actions they may have taken on these systems."[117] The internal Treasury report went on, "Continued access to any payment systems by DOGE members, even 'read only,' likely poses the single greatest insider threat risk the Bureau of the Fiscal Service has ever faced."[118]

137.    The chaotic[119] and secretive[120] process by which DOGE representatives have gained access to protected data—sometimes without proper vetting or security clearances[121]— increases Plaintiffs' concern about additional risks of unauthorized disclosure. Even "read only" access allows users to copy and transfer Plaintiffs' protected data into other systems—without limitation.[122]

---

[115] Charlie Warzel & Ian Bogost, *The Government's Computing Experts Say They are Terrified,* The Atlantic (Feb. 7, 2025), https://www.theatlantic.com/technology/archive/2025/02/elon-musk-doge-security/681600/.

[116] Vittoria Elliott & Leah Feiger, *A US Treasury Intelligence Analysis Designates DOGE Staff as 'Insider Threat'*, Wired (Feb. 7, 2025), https://www.wired.com/story/treasury-bfs-doge-insider-threat/.

[117] *Id.*

[118] *Id.*

[119] Makena Kelly, *DOGE Staff Had Questions About the 'Resign' Email. Their New HR Chief Dodged Them*, Wired (Feb. 1, 2025), https://www.wired.com/story/doge-hr-elon-musk-resignation-fork-road-leaked-staff-meeting/.

[120] Vittoria Elliott et al., *The US Treasury Claimed DOGE Technologist Didn't Have "Write Access" When He Actually Did*, Wired (Feb. 6, 2025), https://www.wired.com/story/treasury-department-doge-marko-elez-access/.

[121] Nick Schwellenbach, *Elon Musk's DOGE Teams Raise Vetting, Ethic Concerns*, Project on Government Oversight (Feb. 6, 2025), https://www.pogo.org/investigations/elon-musks-doge-teams-raise-vetting-ethics-concerns.

[122] Charlie Warzel & Ian Bogost, *The Government's Computing Experts Say They are Terrified,* The Atlantic (Feb. 7, 2025), https://www.theatlantic.com/technology/archive/2025/02/elon-musk-doge-security/681600/.

138.    At least one DOGE representative has been publicly reported to have been a member of cybercrime communities[123] and was reported to have been previously fired from a cybersecurity firm for leaking company secrets.[124] It has also been widely reported that DOGE representatives are using non-government issued devices to connect to government servers, which significantly increases the risk of hacking.[125]

139.    Exacerbating the risk of additional unauthorized access to Plaintiffs' private records is the planned introduction of the at-issue data into artificial intelligence systems. The security risks associated with AI are well-documented.  President Biden issued an Executive Order on October 30, 2023—which President Trump has since rescinded—identifying the "extraordinary potential" for "peril" associated with use of AI, including but not limited to "fraud, discrimination, bias, and disinformation" and creating risks "to national security."[126] Notwithstanding this, Defendants and DOGE representatives have adopted a "move fast and break things" "AI-first strategy" that has already resulted in the sharing of sensitive Education Department information with AI software with additional AI uses likely to follow.[127]

140.    Defendants' unlawful disclosures of Plaintiffs' data to DOGE representatives has caused Plaintiffs major distress and anxiety, as they do not know who their data has been or will be shared with, whether these disclosures have made them vulnerable to further privacy breaches, and how it may be weaponized against them. They are concerned that as a result of the

---

[123] Brian Krebs, *Teen on Musk's DOGE Team Graduated from 'The Com'*, Krebs on Security (Feb. 7, 2025), https://krebsonsecurity.com/2025/02/teen-on-musks-doge-team-graduated-from-the-com/.

[124] Jason Leopold et al., *Musk's DOGE Teen Was Fired By Cybersecurity Firm for Leaking Company Secrets*, Bloomberg (Feb. 7, 2025), https://www.bloomberg.com/news/articles/2025-02-07/musk-s-doge-teen-was-fired-by-cybersecurity-firm-for-leaking-company-secrets?accessToken=eyJhbGciOiJIUzI1NiIsInR5cCI6IkpXVCJ9.eyJzb3VyY2UiOiJTdWJzY3JpYmVyR2lmdGVkQXJ0aWNsZSIsImlhdCI6MTczODk1NzQyNCwiZXhwIjoxNzM5NTYyMjI0LCJhcnRpcY2xlSWQiOiJTUkJXMTlUMVVNMFcwMCIsImJjb25uZWN0SWQiOiIyQjE3NzFFOTlEODc0QzRDOTY1Njg1RTZBQkJGM0QwRCJ9.vxGv4ncXEbIrUGmUYpTUdxLmCVDwzmEWp-VRWV9otME&leadSource=uverify%20wall.

[125] Cynthia Brumfield, *Musk's DOGE effort could spread malware, expose US systems to threat actors*, CSO (Feb. 4, 2025), https://www.csoonline.com/article/3815925/musks-doge-effort-could-spread-malware-expose-us-systems-to-threat-actors.html.

[126] Exec. Order No. 14,110, 88 Fed.Reg. 75,191 (Nov. 1, 2023).

[127] Victor Tangermann, *Elon Musk's DOGE Training an AI to Analyze Government Spending*, Futurism (Feb. 7, 2025), https://futurism.com/elon-musk-doge-ai-government; Natanson, *supra* n. 103.

unlawful disclosures, they will be subject to harassment, intimidation, and economic and reputational harm. These harms are ongoing and will continue absent judicial intervention.

**Ongoing Litigation**

141.   On February 3, several unions and membership associations sued Defendants Bessent and Department of the Treasury in Federal District Court of the District of Columbia asserting Privacy Act violations based on DOGE access to FDS systems. On February 6, the judge in that case deferred ruling on the plaintiffs' motion for a temporary restraining order on the basis of an agreement among the parties limiting access to FDS records to specific Treasury Department officials, as well as Krause and Elez, "until such time as the Court rules on the Plaintiffs' forthcoming Preliminary Injunction Motion."

142.   On February 7, 2025, the attorneys general of 19 states filed a lawsuit against President Trump and Defendants Bessent and Department of the Treasury in the Southern District of New York challenging the defendants' policy to expand the Bureau of Fiscal Services' access to political appointees and Special Government Employees. The States allege that the policy violates the Privacy Act, APA, separation of powers doctrine, and the Take Care Clause of the United States Constitution.

143.   On February 8, 2025, the judge in that case granted the plaintiffs' motion for a temporary restraining order, restraining the defendants from granting access to any Treasury Department data system containing PII to any political appointee, Special Government Employee, or detailee from another agency, and ordering them to direct any person who has already received such access to immediately destroy any and all copies of material downloaded from Treasury Department systems.

144.   Despite the existence of these other lawsuits, Plaintiffs anticipate additional disclosures of their protected data as DOGE continues its plans to expand its reach within the agencies.

**COUNT I – Violation of APA**

**(Not in accordance with law)**

145.     The APA directs courts to hold unlawful and set aside agency actions that are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

146.     The Privacy Act prohibits Defendants from disclosing records on individuals to any person without the individual's consent except in specified circumstances, none of which are present here. 5 U.S.C. § 552a(b).

147.     Defendants have granted DOGE representatives ongoing access to their systems of records containing sensitive and personal data.

148.     Defendants have disclosed Plaintiffs' records and the records of Plaintiffs' members to DOGE representatives without obtaining their consent.

149.     Defendants have disclosed Plaintiffs' records and the records of Plaintiffs' members to DOGE representatives for uses other than the routine uses specified in the applicable SORNs.

150.     Defendants' actions violate the prohibitions in the Privacy Act and are therefore not in accordance with law.

151.     An individual action against Defendants for damages under the Privacy Act would not cause Defendants to end the unlawful disclosure of Plaintiffs' and their members' records to DOGE Representatives, including future DOGE Representatives. Defendants' action is "final agency action for which there is no other adequate remedy in a court" and is therefore subject to judicial review. 5 U.S.C. §§ 702, 704.

### COUNT II – Violation of APA

### (Arbitrary and capricious)

152.     The APA directs courts to hold unlawful and set aside agency actions that are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

153.     Defendants have failed to consider the consent requirements of the Privacy Act, 5 U.S.C. § 552a(b), and their duty to protect the sensitive data on their systems, 5 U.S.C. §

552a(e)(1); the risks that their disclosures would result in corrupted data; and the security threats that are likely to result from their action.

154.    Defendants failed to engage in reasoned decision-making to grant DOGE representatives sweeping access to their systems of records containing sensitive and personal data for the purposes of advancing the DOGE agenda.

155.    Because Defendants have failed to consider an important aspect of the problem, failed to engage in reasoned decision-making, and offer explanations that run counter to the evidence before them, Defendants' actions are arbitrary and capricious.

156.    An individual action against Defendants for damages under the Privacy Act would not cause Defendants to end the unlawful disclosure of Plaintiffs' and their members' records. Defendants' action is "final agency action for which there is no other adequate remedy in a court" and is therefore subject to judicial review. 5 U.S.C. §§ 702, 704.

## COUNT III – Violation of APA

### (Excess of statutory authority)

157.    The APA directs courts to hold unlawful and set aside agency actions in excess of statutory authority. 5 U.S.C. § 706(2)(C).

158.    Defendants have a non-discretionary duty to protect records on individuals from unauthorized disclosure.

159.    Defendants' action to grant DOGE representatives access to their systems of records containing sensitive and personal data violates that duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a.    Declare that Defendants acted unlawfully in disclosing records protected by the Privacy Act to DOGE representatives.

b.    Enjoin Defendants from continuing to permit such access or otherwise obtain such information.

c.  Enjoin Defendants to ensure that there is no further unauthorized use or dissemination resulting from the unauthorized disclosures.

d.  Enjoin Defendants to retrieve or ensure the destruction of any copies of any records that were unlawfully disclosed.

e.  Enjoin Defendants to ensure that future disclosure of individual records will occur only in accordance with the Privacy Act and the SORNs applicable to the system of records at issue.

f.  Grant any temporary, preliminary, or permanent injunctive relief necessary to protect the privacy of individuals whose information is contained within the system of records.

g.  Award Plaintiffs their costs and attorneys' fees for this action; and

h.  Grant any other relief as this Court deems appropriate.

DATED:  February 12, 2025

By: _____/s/ Mark Hanna_____

Mark Hanna (Fed. Bar No. 16031)
David J. Rodwin (Fed. Bar No. 18615)
MURPHY ANDERSON PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
T: (202) 223-2620 | F: (202) 296-9600
mhanna@murphypllc.com
drodwin@murphypllc.com

Daniel McNeil (*pro hac* pending)
General Counsel
American Federation of Teachers, AFL-CIO
555 New Jersey Ave. NW
Washington, DC 20001
T: (202) 393-6305 | F: (202) 393-6385
dmcneil@aft.org

Kristy Parker (*pro hac* pending)
Jane Bentrott (*pro hac* pending)
Shalini Goel Agarwal (*pro hac* pending)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
202-843-3092
kristy.parker@protectdemocracy.org
jane.bentrott@protectdemocracy.org
shalini.agarwal@protectdemocracy.org

Benjamin L. Berwick (*pro hac* forthcoming)
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Jessica A. Marsden (*pro hac* pending)
PROTECT DEMOCRACY PROJECT
510 Meadowmont Village Circle, No. 328
Chapel Hill, NC 27517
(202) 579-4582
jess.marsden@protectdemocracy.org

Laurence M. Schwartztol (*pro hac* pending)
DEMOCRACY AND RULE OF LAW CLINIC
Harvard Law School
1525 Massachusetts Avenue
Cambridge, MA 02138
(617) 998-1877
lschwartztol@law.harvard.edu

John L. Schwab (*pro hac* pending)
MUNGER, TOLLES & OLSON LLP
350 S Grand Ave 50th Floor
Los Angeles, California 90071
(213) 683-9260
John.Schwab@mto.com

Xiaonan April Hu (*pro hac* pending)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 220-1123
April.Hu@mto.com

Carson Scott (*pro hac* pending)
Roman Leal (*pro hac* pending)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
(415) 512-4000
Carson.Scott@mto.com
Roman.Leal@mto.com

*Attorneys for Plaintiffs*

JA66

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2024, copies of the Amended

Complaint and Redlined Amended Complaint were filed via CM/ECF, emailed to Department of

Justice attorneys involved in other litigation, and sent via overnight delivery to the following:

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Civil Process Clerk
U.S. Attorney's Office for D.C.
601 D Street, NW
Washington, DC 20530

Erek Barron
United States Attorney for the District of Maryland
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201

Scott Bessent
Secretary of the Treasury
1500 Pennsylvania Ave. NW
Washington, DC 20220

Department of the Treasury
1500 Pennsylvania Ave. NW
Washington, DC 20220

Charles Ezell
Acting Director of the Office of Personnel Management
1900 E St. NW
Washington, D.C. 20415

U.S. Office of Personnel Management
1900 E St. NW
Washington, D.C. 20415

Denise Carter
Acting Secretary of Education
400 Maryland Avenue, SW
Washington, D.C. 20202

JA67

U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202


Dated:  February 12, 2025


_/s/ Xiaonan April Hu_
(signed by filer with permission)

Xiaonan April Hu

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, | Case No. 8:25-cv-00430 |
| *Plaintiffs*, | |
| vs. | |
| SCOTT BESSENT, *et al.*, | |
| *Defendants*. | |

## DECLARATION OF JASON CAIN
## IN SUPPORT OF MOTION FOR TRO

I, Jason Cain, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I live in North Carolina and currently work as an instructor of political science at Wake Technical Community College.

3. I am a military veteran. From 2000 to 2010, I served in the U.S. Army, as Sergeant First Class in the U.S. Army Special Operations Command and the 82nd Airborne. In that role, I had a Top Secret security clearance.

4. I currently receive financial benefits from the federal government, including veterans' disability compensation from the Veterans Administration.

5. I have previously received other financial benefits from the federal government, including GI bill benefits and a home loan from the Veterans' Administration and student loans from the Department of Education.

6. I also worked for the federal government from 2012 to 2015 as Director of Intergovernmental Affairs at the Veterans Administration.

7.  As a result of my military service, employment in the civil service, and the financial benefits I receive, federal government agencies, including the Office of Personnel Management, the Department of Education, and the Department of Treasury, have sensitive personal information about me in their record systems.

8.  At the Office of Personnel Management, this information includes my social security number, employment history, address, phone number, demographic information. At the Department of Treasury, this information includes my social security number, date of birth, bank account information, and home address. At the Department of Education, this information includes my social security number, bank records, tax returns, home address, employment data, documentation of marital status, family financial status and records, and demographic data, in addition to similar information for my family members.

9.  I provided this personal information in order to access essential services like employment, disability payments, and funds to help with educational expenses. When I provided the information, I expected that the data would be used to facilitate my access to these services and only for legally authorized purposes. I also expected that the government would zealously safeguard access to that information.

10. I feel that my right to privacy has been violated by the government's choice to disclose information to DOGE representatives, who appear to be using it for purposes that have nothing to do with why I provided the data. I did not request disclosure of my personal information to DOGE representatives or provide written access authorizing such disclosure. My concerns are amplified because, based on news reports, at least some of the DOGE representatives are recent high school graduates or college students with a checkered history on data security. Further, I am concerned about the potential disclosure of my information to AI tools and software.

11. My federal government benefits accounts have been previously hacked. As a result, my disability and education benefits were diverted to criminal enterprises. When that happened, I experienced both fear and helplessness as my funding was inaccessible to me and depleted by third parties.

12. I am anxious about repeating this ordeal, now made more likely by DOGE's recent unauthorized access to my personal information. I am outraged that the federal government facilitated this data breach at all, given the extreme caution with which I was trained to handle sensitive information both during my time in

the military and when I worked at the Veterans Administration. And I am especially galled that my personal information has been transmitted to individuals who appear to have little regard for data privacy.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 11, 2025.

_____/s/*_____
Jason Cain

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

AMERICAN FEDERATION OF
TEACHERS, *et al.*,

       *Plaintiffs*,

vs.

SCOTT BESSENT, *et al.*,

       *Defendants*.

Case No. 8:25-cv-00430

**DECLARATION OF THOMAS FANT
IN SUPPORT OF MOTION FOR TRO**

I, Thomas Fant, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I live in Massachusetts and am currently retired.

3. I am a military veteran. From 1996 to 1998, I served in the U.S. Coast Guard, until I was medically discharged.

4. I currently receive financial benefits from the federal government, including veterans' disability compensation, as well as all of my healthcare, from the Veterans Administration.

5. As a result of my military service and the financial benefits I receive, federal government agencies, including the Department of Treasury, have sensitive personal information about me in their record systems.

6. At the Department of Treasury, this information includes my social security number, date of birth, bank account information, and home address.

7. I provided this personal information in order to access essential services like disability payments. When I provided the information, I expected that the data

JA72

would be used to facilitate my access to these services and only for legally authorized purposes. I also expected that the government would zealously safeguard access to that information.

8.  I feel that my right to privacy has been violated by the government's choice to disclose information to DOGE representatives, who appear to be using it for purposes that have nothing to do with why I provided the data. I did not request disclosure of my personal information to DOGE representatives or provide written access authorizing such disclosure. My concerns are amplified because, based on news reports, at least some of the DOGE representatives are recent high school graduates or college students with a checkered history on data security. Further, I am concerned about the potential disclosure of my information to AI tools and software.

9.  I am alarmed, disturbed, and anxious that the government-facilitated unauthorized access to my personal information, and that of millions of other Americans, will enable third parties affiliated with Elon Musk and the so-called "Department of Government Efficiency" to illegally and corruptly profit at my expense and at the expense of the American people, especially my fellow veterans.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 11, 2025.

_____/s/*_____
Thomas Fant

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

JA73

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, | Case No. 8:25-cv-00430 |
| *Plaintiffs*, | |
| vs. | |
| SCOTT BESSENT, *et al.*, | |
| *Defendants*. | |

**DECLARATION OF KRISTOFER GOLDSMITH**
**IN SUPPORT OF MOTION FOR TRO**

I, Kristofer Goldsmith, declare as follows:

1.  I am over the age of 18 and have personal knowledge of the facts in this declaration.

2.  I live in New York and currently work as the president and CEO of Task Force Butler Institute, whose mission is to combat domestic extremists.

3.  I am a military veteran. From 2004 to 2007, I served in the U.S. Army. I joined as a Forward Observer, deployed to Iraq in 2005, and left as a Sergeant.

4.  I currently receive financial benefits from the federal government, including veterans' disability compensation from the Veterans Administration.

5.  I have previously received other financial benefits from the federal government, including student loans from the Department of Education.

6.  As a result of my military service and the financial benefits I currently and have previously received, federal government agencies, including the Department of Education and the Department of Treasury, have sensitive personal information about me in their record systems.

7.  At the Department of Treasury, this information includes my social security number, date of birth, bank account information, and home address. At the Department of Education, this information includes my social security number,

JA74

bank records, tax returns, home address, employment data, documentation of marital status, family financial status and records, as well as job loss and demographic data, in addition to similar information for my family members.

8. I provided this personal information in order to access essential services like disability payments and funds to help with educational expenses. When I provided the information, I expected that the data would be used to facilitate my access to these services and only for legally authorized purposes. I also expected that the government would zealously safeguard access to that information.

9. I feel that my right to privacy has been violated by the government's choice to disclose information to DOGE representatives, who appear to be using it for purposes that have nothing to do with why I provided the data. I did not request disclosure of my personal information to DOGE representatives or provide written access authorizing such disclosure. My concerns are amplified because, based on news reports, at least some of the DOGE representatives are recent high school graduates or college students with a checkered history on data security. Further, I am concerned about the potential disclosure of my information to AI tools and software.

10. I am deeply concerned that my personal information has been compromised and angry that federal agencies appear to have facilitated this breach of my privacy. I am worried that my personal information, having been exposed to unauthorized individuals, may be exploited by domestic extremist organizations to harass, intimidate, and harm me and my family.

11. My concerns are only heightened by the presidential pardons of many domestic extremists who participated in the January 6 insurrection, and Elon Musk's apparent support of those pardons. Indeed, news reports indicate that DOGE representatives have amplified content from white supremacist Nick Fuentes, been associated with a cybercriminal network that engages in hacking and extortion, and have promoted explicit racial hatred. The reported support by DOGE representatives for entities that I target in my work combating domestic extremism makes it all the more likely that these individuals would leak my personal information to these malicious actors. As a result, I fear those malicious actors will seek to target me using my breached personal information.

12. While I had already taken some proactive measures to protect my personal information and physical security, I have taken additional remedial measures in

response to the government-facilitated breach of my privacy to DOGE representatives. Fearing that my data may have already been released by DOGE to domestic extremists, I am more protective of my physical security. I previously carried a firearm on my person in my home when a neo-Nazi threatened my family. Because of the DOGE breach, as of last week, I am now carrying in my own home again. I also called my local police station earlier this week to alert them that there's an increased risk of an attempted SWATing attack or other security event to try to encourage a measured response. And my wife and I are much more vigilant about checking our security cameras since the breach. She has asked me to cancel my work trips because she is scared of being at our home alone in light of the elevated security risks from the breach.

13. This unlawful data access puts my life and my family at risk. These are not abstract concerns—they're potentially deadly. I have already been targeted by domestic extremist groups in the past. Reports of DOGE representatives' links to white supremacist networks and cybercriminals only make the risk more acute. I feel that the risk of my data being leaked and weaponized against my family has never been higher. The psychological toll of this privacy breach is immense.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 11, 2025.

_____/s/*_____
Kristofer Goldsmith

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

JA76

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

AMERICAN FEDERATION OF
TEACHERS, *et al.*,

      *Plaintiffs*,

    vs.

SCOTT BESSENT, *et al.*,

      *Defendants*.

Case No. 8:25-cv-00430

## DECLARATION OF CLIFFORD "BUZZ" GRAMBO
## IN SUPPORT OF MOTION FOR TRO

I, Clifford "Buzz" Grambo, declare as follows:

1.  I am over the age of 18 and have personal knowledge of the facts in this declaration.

2.  I live in Maryland and am currently retired.

3.  I am a military veteran. I served in the U.S. Navy for 20 years, retiring as Chief Petty Officer.

4.  I currently receive financial benefits from the federal government, including veterans' disability compensation and a military pension, both from the Veterans Administration.

5.  As a result of my military service and the financial benefits I receive, federal government agencies, including the Department of Treasury, have sensitive personal information about me in their record systems.

6.  At the Department of Treasury, this information includes my social security number, date of birth, bank account information, and home address.

7.  I provided this personal information in order to access essential services like disability payments and my military pension. When I provided the information, I expected that the data would be used to facilitate my access to these services

JA77

and only for legally authorized purposes. I also expected that the government would zealously safeguard access to that information.

8.  I feel that my right to privacy has been violated by the government's choice to disclose information to DOGE representatives, who appear to be using it for purposes that have nothing to do with why I provided the data. I did not request disclosure of my personal information to DOGE representatives or provide written access authorizing such disclosure. My concerns are amplified because, based on news reports, at least some of the DOGE representatives are recent high school graduates or college students with a checkered history on data security. Further, I am concerned about the potential disclosure of my information to AI tools and software.

9.  I worry that the unauthorized disclosure of my personal information makes it more likely that I will be targeted for doxxing, identity theft schemes, or other harmful uses of my data.

10. I am also deeply offended by the federal government facilitating this unauthorized disclosure of my personal information. It is a violation of the rule of the law for the government to enable access of my personal information to an unelected so-called "department" head who appears to be a threat to national security and the DOGE representatives who do not seem to have been subjected to an actual background check. This lawlessness by the federal government betrays the democratic values I sought to protect through my military service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 11, 2025.

_____/s/*_____
Clifford "Buzz" Grambo

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

JA78

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

AMERICAN FEDERATION OF
TEACHERS, *et al.*,

       *Plaintiffs*,

   vs.

SCOTT BESSENT, *et al.*,

       *Defendants*.

Case No. 8:25-cv-00430

## DECLARATION OF DONALD MARTINEZ
## IN SUPPORT OF MOTION FOR TRO

I, Donald Martinez, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I live in Colorado and currently work as a chicken and goat rancher.

3. I am a military veteran. I served in the U.S. Army and had two deployments to Iraq as a Field Artillery Officer with a Top Secret/Sensitive Compartmented Information security clearance. During my service, I sustained a traumatic brain injury and was medically retired.

4. I currently receive financial benefits from the federal government, including veterans' disability compensation, combat-related special compensation, and a home loan from the Veterans Administration, as well as social security disability insurance from the Social Security Administration.

5. I have previously received other financial benefits from the federal government, including student loans from the Department of Education and vocational rehabilitation and employment payments from the Veterans Administration.

6. Apart from my military service, I also worked for the Federal Emergency Management Agency as a Presidential Management Fellow.

1

7.  As a result of my military service, employment in the civil service, and the financial benefits I receive, federal government agencies, including the Office of Personnel Management, the Department of Education, and the Department of Treasury, have sensitive personal information about me in their record systems.

8.  At the Office of Personnel Management, this information includes my social security number, employment history, address, phone number, demographic information. At the Department of Treasury, this information includes my social security number, date of birth, bank account information, and home address. At the Department of Education, this information includes my social security number, bank records, tax returns, home address, employment data, documentation of marital status, mortgage statements, child support, investments, family financial status and records, as well as divorce and demographic data, in addition to similar information for my family members.

9.  I provided this personal information in order to access essential services like employment, disability payments, and funds to help with educational expenses. When I provided the information, I expected that the data would be used to facilitate my access to these services and only for legally authorized purposes. I also expected that the government would zealously safeguard access to that information.

10. I feel that my right to privacy has been violated by the government's choice to disclose information to DOGE representatives, who appear to be using it for purposes that have nothing to do with why I provided the data. I did not request disclosure of my personal information to DOGE representatives or provide written access authorizing such disclosure. My concerns are amplified because, based on news reports, at least some of the DOGE representatives are recent high school graduates or college students with a checkered history on data security. Further, I am concerned about the potential disclosure of my information to AI tools and software.

11. Because of my previous military service in a geographically sensitive area and involvement in high-level negotiations, I was targeted by terrorists. Two of my interpreters were kidnapped and tortured, and I received multiple death threats. In light of that experience, I am worried that unauthorized access and disclosure of my personal information held within the federal government will compromise my personal safety and security. I also worry that it will compromise the safety and security of millions of other Americans.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 11, 2025.

_____/s/* _____
Donald Martinez

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

AMERICAN FEDERATION OF
TEACHERS, *et al.*,

        *Plaintiffs*,

    vs.

SCOTT BESSENT, *et al.*,

        *Defendants*.

Case No. 8:25-cv-00430

**DECLARATION OF CHRISTOPHER PURDY
IN SUPPORT OF MOTION FOR TRO**

I, Christopher Purdy, declare as follows:

1.  I am over the age of 18 and have personal knowledge of the facts in this declaration.

2.  I live in Georgia and currently work as the head of The Chamberlain Network, a nonprofit that aims to take a stand against political violence to help safeguard the principle upon which our democracy was built.

3.  I am a military veteran. From 2004 to 2012, I served in the U.S. Army National Guard and was deployed to Iraq in 2011.

4.  I currently receive financial benefits from the federal government, including veterans' disability compensation from the Veterans Administration.

5.  I have previously received other financial benefits from the federal government, including a home loan from the Veterans' Administration and student loans from the Department of Education.

6.  As a result of my military service and the financial benefits I receive, federal government agencies, including the Department of Education, and the Department of Treasury, have sensitive personal information about me in their record systems.

JA82

7. At the Department of Treasury, this information includes my social security number, date of birth, bank account information, and home address. At the Department of Education, this information includes my social security number, bank records, tax returns, home address, employment data, documentation of marital status, mortgage statements, investments, family financial status and records, dependent care costs, as well as job loss and demographic data, in addition to similar information for my family members.

8. I provided this personal information in order to access essential services like disability payments and funds to help with educational expenses. When I provided the information, I expected that the data would be used to facilitate my access to these services and only for legally authorized purposes. I also expected that the government would zealously safeguard access to that information.

9. I feel that my right to privacy has been violated by the government's choice to disclose information to DOGE representatives, who appear to be using it for purposes that have nothing to do with why I provided the data. I did not request disclosure of my personal information to DOGE representatives or provide written access authorizing such disclosure. My concerns are amplified because, based on news reports, at least some of the DOGE representatives are recent high school graduates or college students with a checkered history on data security. Further, I am concerned about the potential disclosure of my information to AI tools and software.

10. I am distressed that the breach of my personal information to unauthorized parties and enabled by the federal government makes that personal information more vulnerable to being released further to the public or to malicious third-party actors. I fear that this would cause me severe economic harm.

11. Further, as I have been reading about cancellations of payments from the federal government, sometimes apparently targeted and sometimes haphazard, I am very worried that Elon Musk and his so-called "Department of Government Efficiency" may use their unauthorized access to my personal information to stop my VA disability payments. This is a major source of stress in my family as these payments are a significant source of our household income.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 11, 2025.

_____/s/*_____
Christopher Purdy

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, | Case No. 8:25-cv-00430 |
| *Plaintiffs*, | |
| vs. | |
| SCOTT BESSENT, *et al.*, | |
| *Defendants*. | |

## **DECLARATION OF SARAH TAMMELLEO**

I, Sarah Tammelleo, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I am the Senior Director of Research and Strategic Initiatives for the American Federation of Teachers. In my role I oversee the national union's Research Strategic Initiatives and Economic issues department which is responsible for AFT's work related to research and economic issues including but not limited to, student debt, consumer issues, wages, healthcare benefits, and retirement security.

3. The American Federation of Teachers is a national labor organization headquartered in Washington, D.C., representing over 1.8 million members who are employed as pre-K through 12th-grade teachers, early childhood educators, paraprofessionals and other school-related personnel; higher education faculty and professional staff; federal, state, and local government employees; and nurses and other healthcare professionals.

4.  For over a decade, AFT has been fighting to help teachers and nurses burdened by student debt receive Public Service Loan Forgiveness ("PSLF") through the Department of Education. The national union has hosted hundreds of student debt clinics for tens of thousands of its members and has helped its members apply for relief through the PSLF program. In addition, AFT assists its members in applying for and securing payment of various federal employment, disability, and retirement benefits. For example, many local affiliates offer clinics and webinars to advise members how to obtain and file for benefits including but not limited to, Medicare and Social Security.

5.  Because part of the process by which member teachers and nurses apply for federal loans, benefits, and employment involves sharing members' personal data, AFT also advocates for the ethical use of artificial intelligence and enforcement of government regulations that protect its members' personal data. Stated differently, as part of AFT's mission and purpose of supporting educators who interface with the federal government, AFT advocates for the protection and safeguarding by various federal agencies and departments of AFT members' personal data. For example, AFT has been working with an external organization to train leaders and members to secure and protect data, and AFT offers cyber insurance through the union's extensive national member benefits program.

6.  I am aware of and can identify individual AFT members who have federal student loan debt, and/or are federal employees, and/or who have records housed within OPM and Department of Education records systems and receive payments from the United States Treasury. Specifically, I am aware of individual members with personally identifiable information contained in the payment systems of Treasury's Federal Disbursement Services; in the federal work files of OPM, including USAJOBS and the Electronic Official Personnel Folder, among others; and in the Department of Education's National Student Loan Data Systems, Common Origination and Disbursement System, FUTURE ACT System, and Financial Management System.

7. I am aware that sensitive information about AFT members is contained in these record systems, including Social Security numbers, bank account numbers, details of personal finances, and personnel information. Improper disclosure of this information increases the risk of access by external actors, doxxing, identity theft, invasion of personal privacy, and financial crimes against AFT members. Introducing sensitive personal data into artificial intelligence systems enhances these risks.

8. I am not aware of any AFT member who has requested or authorized DOGE or its representatives to access their personal data.

9. I am aware of and can identify individual members whose right to privacy has been violated by such disclosures.

10. I am aware of and can identify individual federal employee members who received an email from OPM on their federal agency account with the subject "Fork in the Road," detailing a plan for federal employees to immediately resign their positions.

11. I have personally heard from student loan borrower members who are concerned about the risks to their privacy and data security posed by unvetted and unqualified people associated with DOGE going through their personal and financial data.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 12, 2025

_____/s/*_____
Sarah Tammelleo

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

3

JA87

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

AMERICAN FEDERATION OF
TEACHERS, *et al.*,

      *Plaintiffs*,

  vs.

SCOTT BESSENT, *et al.*,

      *Defendants*.

Case No. 8:25-cv-00430

## DECLARATION OF BRIAN BRYANT

I, Brian Bryant, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I am the International President of the International Association of Machinists and Aerospace Workers ("IAM"). IAM is an international labor organization and unincorporated membership organization headquartered in Upper Marlboro, Maryland. IAM is one the largest and most diverse labor unions in North America with nearly 600,000 active and retired members. Among IAM's affiliate organizations is the National Federation of Federal Employees ("NFFE"), which is a national labor organization and unincorporated membership organization headquartered in Washington, D.C.

3. Together, IAM and NFFE represent more than 100,000 federal workers, approximately 13,000 of whom are dues-paying members, from agencies across the federal government. IAM and NFFE also represent many veterans

1

and veterans' groups, advocate on their behalf, and assist them in receiving their benefits, among other services.

4.  IAM and NFFE represent our federal sector members through negotiating collective bargaining agreements and assisting employees with enforcing them.  We assert contractual and statutory rights on behalf of our federal sector members by filing grievances, unfair labor practice charges, or other complaints through our negotiated grievance procedure or with various federal agencies, including the Federal Labor Relations Authority, the Merit Systems Protection Board, the Office of Special Counsel, and the Federal Labor Relations Authority. IAM and NFFE file litigation on employees' behalf in the courts. We also advocate on Capitol Hill and in the media on issues of importance to federal workers and to veterans.

5.  Both IAM and NFFE have Veterans Committees that advocate on behalf of our members who are veterans. Annually, the IAM sponsors two one-week educational classes. One class teaches our members how to start a Veterans Committee in their community to advocate for their issues in their home state. That class includes a component about what benefits veterans are entitled to receive. The second class focuses on training veteran members on how to assist each other in applying for benefits, while also educating them about the importance of maintaining confidentiality concerning the private records submitted to the government to obtain those benefits.

6.  As part of our missions IAM and NFFE also provide extensive services applying for and securing payment of benefits to our members who are veterans. When veteran members are having difficulty obtaining the benefits they earned, we assist them and their family members in the preparation, presentation, and prosecution of claims of benefits with the Department of Veterans Affairs. Benefits include disability compensation, education, Veterans Readiness & Employment, home loans, life insurance, pensions, health care, and burial benefits. These claims include the most sensitive medical and financial information concerning the veteran, such as social security numbers, healthcare records, bank account information and dates of birth.

7.  Because federal employees and retirees have extensive amounts of personally identifiable information housed in their personnel records, federal payment systems, and student loan records, IAM and NFFE advocacy efforts include assisting their members in seeking redress for federal agencies' unlawful disclosures of members' sensitive data.

8.  For example, we frequently negotiate provisions in our collective bargaining agreements to protect the privacy and accuracy of employees' personnel files by ensuring employees can access, review, and correct errors within their official personnel folders or any other regularly-maintained record or file regarding their employment. Personnel records are often the basis for calculating retirement eligibility or benefits, determining eligibility for career ladder promotions or within-grade increases in pay, assessing whether an employee has vested appeal rights and civil service protections upon completing a probationary period, and placement options in the event of a Reduction-in-Force.

9.  IAM and NFFE negotiate into collective bargaining agreements rights for employees to have personally identifiable information and medical information provided only to federal employees with a business need to know. Employees who request reasonable accommodations in connection with their employment due to a health condition often need to submit medical records through processes the union negotiates to maintain confidentiality to the maximum extent possible. NFFE uses our National Consultation Rights at several agencies to comment on proposed changes to agency policies that impact our members' sensitive data. IAM and NFFE regularly train and educate our members on their rights to maintain confidentiality, the extent of those rights, what the agency is lawfully permitted to solicit and maintain, and how to advocate for themselves in the workplace using union-negotiated procedures. NFFE and IAM file and pursue grievances, or litigation, like this one, when members' privacy rights have been violated.

10. I am aware of and can identify individual IAM and NFFE members who have federal student loan debt, and/or are federal employees, and/or who have records housed within OPM and Department of Education records systems and/or who are veterans whose personally sensitive data is submitted in the effort to receive benefits and receive payments from the United States Treasury. Specifically, I am aware of individual members with personally identifiable information contained in the payment systems of Treasury's Federal Disbursement Services; in the federal work files of OPM, including USAJOBS and the Electronic Official Personnel Folder, among others; and in the Department of Education's National Student Loan Data Systems, Common Origination and Disbursement System, FUTURE ACT System, and Financial Management System.

11. I am aware that sensitive information about IAM and NFFE members is contained in these record systems, including Social Security numbers, bank account numbers, medical records, details of personal finances, and personnel information. Improper disclosure of this information increases the risk of access by external actors, doxxing, identity theft, invasion of personal privacy, and financial crimes against IAM and NFFE members. Introducing sensitive personal data into artificial intelligence systems enhances these risks.

12. I am not aware of any IAM or NFFE member who has requested or authorized DOGE or its representatives to access their personal data.

13. I am aware of and can identify individual members whose right to privacy has been violated by such disclosures.

14. I am aware of and can identify individual federal employee members who received an email from OPM on their federal agency account with the subject "Fork in the Road," detailing a plan for federal employees to immediately resign their positions.

15. We have heard from members who are concerned about risks posed by DOGE and its representatives having access to their personally identifiable information. They are concerned about publication or exporting of their

personally identifiable information, including mail and email addresses, phone numbers, bank information, medical records and Social Security numbers. They fear exposure of their salary history, their job application history, and their disciplinary records. They fear their information could be exported for nefarious purposes, used in retaliation, or altered. Some members have told us that in addition to the identity theft and personal safety risks, they are concerned about the national security risk posed if their information were to make it into the hands of foreign governments like China. Our members have expressed concern that access by DOGE and its representatives to their personally identifiable information has made it possible for unauthorized surveillance and corruption of their home networks and personal devices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 12, 2025

_____/s/*_____
Brian Bryant

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, | Case No. 8:25-cv-00430 |
| *Plaintiffs,* | |
| vs. | |
| SCOTT BESSENT, *et al.*, | |
| *Defendants.* | |

## DECLARATION OF WILLIAM SHACKELFORD

I, William Shackelford, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I am the President of the National Active and Retired Federal Employees Association ("NARFE"). NARFE is a nonprofit organization founded in 1921, incorporated in the District of Columbia, and headquartered in Alexandria, Virginia, with a membership of approximately 128,000 current and former federal employees as well as spousal annuitants.

3. NARFE's mission is to promote the general welfare of current federal civilian employees and federal retirees and their survivors, to advise and assist them with respect to their federal benefits, to represent their interests before appropriate authorities, and to support legislation and regulations beneficial to such employees and retirees and to oppose those detrimental to their interests. As part of this mission, NARFE assists its members in various ways in applying for and securing the payment of federal employment and retirement benefits.

4. Because federal employees and retirees have extensive amounts of personally identifiable information housed in their personnel records, payment systems, and student loan records, it is part of NARFE's mission and purpose to call on federal

agencies to vigorously protect the privacy of NARFE members' digital information.

5. I am aware of and can identify individual NARFE members who have federal student loan debt, and/or are federal employees, and/or who have records housed within OPM and Department of Education records systems and receive payments from the United States Treasury. Specifically, I am aware of individual members with personally identifiable information contained in the payment systems of Treasury's Federal Disbursement Services; in the federal work files of OPM, including USAJOBS and the Electronic Official Personnel Folder, among others; and in the Department of Education's National Student Loan Data Systems, Common Origination and Disbursement System, FUTURE ACT System, and Financial Management System.

6. I am aware that sensitive information about NARFE members is contained in these record systems, including Social Security numbers, bank account numbers, details of personal finances, and personnel information. Improper disclosure of this information increases the risk of access by external actors, doxxing, identity theft, invasion of personal privacy, and financial crimes against NARFE members. Introducing sensitive personal data into artificial intelligence systems enhances these risks.

7. I am not aware of any NARFE member who has requested or authorized DOGE or its representatives to access their personal data.

8. I am aware of and can identify individual members whose right to privacy has been violated by such disclosures.

9. I am aware of and can identify individual federal employee members who received an email from OPM on their federal agency account with the subject "Fork in the Road," detailing a plan for federal employees to immediately resign their positions.

10. Throughout NARFE, our members have expressed that unauthorized access to their personal information by DOGE and its representatives creates a risk of identity theft and financial fraud. Many of our members had high-level security clearance and were involved in sensitive matters while performing their daily duties. As such, they are concerned about political targeting, retribution and legal action being initiated against them. Our members are concerned that the information in the secure federal databases could be compromised and that their annuities and social security benefits would be impacted. Additionally, many of

our members are also veterans of the military and are concerned that healthcare benefits could be affected by delay or cancellation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 12, 2025

_____/s/*_____
William Shackelford

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, <br><br>     *Plaintiffs*, <br><br>   vs. <br><br> SCOTT BESSENT, *et al.*, <br><br>     *Defendants*. | Case No. 8:25-cv-00430 |

## <u>DECLARATION OF MATTHEW S. BIGGS</u>

I, Matthew S. Biggs, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I am the President of the International Federation of Professional and Technical Engineers ("IFPTE"). IFPTE is an international labor organization headquartered in Washington, D.C., that represents approximately 34,000 federal employees in addition to its other public and private sector represented bargaining units. Over 7,000 of these represented federal sector employees are dues-paying members. The majority of federal employees represented by IFPTE work at the Department of Defense, many in the Navy shipyards. Represented employees include nuclear submarine engineers, scientists and researchers at NASA, Administrative Law Judges at the Social Security Administration, and nuclear engineers at the Tennessee Valley Authority, as well as employees of the Environmental Protection Agency. IFPTE comprises many members who are veterans and represents and advocates for veterans and veterans' groups.

3.  As a labor union, IFPTE provides representation, information, and
    legislative advocacy  for individual federal employees and represented  units
    regarding terms and conditions of employment. This includes assistance
    with negotiating pay, healthcare, pensions, security clearances and the
    security revocation process, both at the IFPTE level and by supporting our
    local affiliates. We also provide training to federal sector local affiliates on
    how to bargain contracts regarding pay and benefits. IFPTE has a legislative
    program that includes priorities advocating for pay raises for federal
    employees and protecting federal pensions and healthcare.  IFPTE has
    advocated for at least the last ten years for student loan forgiveness for
    public sector workers, including federal employees.

4.  IFPTE helps its represented federal employees in navigating reasonable
    accommodations, leave under the Family Medical Leave Act and veterans
    preference issues in the workplace, including for the purposes of promotions
    and points for disability. This  requires dealing with personal and medical
    information.

5.  In addition to representation in federal workplaces that directly involves
    federal employee PII, IFPTE trains its federal locals on how to interact with
    OPM when it comes to processing retirement benefits, different types of pay
    schedules, special pay rates, and the like.  Our local affiliates provide this
    same training for their individual members regarding interactions with OMB
    and other Executive Branch agencies.  IFPTE also consistently advocates for
    adequate funding for OPM for processing retirement benefits and
    eliminating the backlog in processing retirement applications. This includes
    advocating against the first Trump administration's efforts to shutter OPM.

6.  Because the services and advocacy IFPTE provides for its federal members
    involves sharing members' personal data with government agencies, and
    because IFPTE's federal employee members have extensive personal data
    stored in federal personnel and payment systems, IFPTE's advocacy efforts
    include calling on federal legislators and agencies to implement policies that
    protect IFPTE members' privacy interests. Specifically, IFPTE advocates to

Congress to invest in software and cybersecurity measures to protect the PII of our represented federal employees. When OPM's data system was breached in 2015 by hackers, IFPTE advocated to Congress to provide credit monitoring and other individual assistance to federal employees.

7. At the local affiliate levels, our locals assist their represented employees in ensuring that the agency employers take steps to protect the PII of their members. As an example, IFPTE-represented Social Security Administrative Law Judges consistently face personal threats because of their jobs, and as such must advocate that their employing agency take every possible measure to protect their PII, including home addresses and other contact information.

8. I am aware of and can identify individual IFPTE members who have federal student loan debt, and/or are federal employees, and/or who have records housed within OPM and Department of Education records systems and receive payments from the United States Treasury. Specifically, I am aware of individual members with personally identifiable information contained in the payment systems of Treasury's Federal Disbursement Services; in the federal work files of OPM, including USAJOBS and the Electronic Official Personnel Folder, among others; and in the Department of Education's National Student Loan Data Systems, Common Origination and Disbursement System, FUTURE ACT System, and Financial Management System.

9. I am aware that sensitive information about IFPTE members is contained in these record systems, including Social Security numbers, bank account numbers, details of personal finances, and personnel information. Improper disclosure of this information increases the risk of access by external actors, doxxing, identity theft, invasion of personal privacy, personal threats to safety, and financial crimes against IFPTE members. Introducing sensitive personal data into artificial intelligence systems enhances these risks.

10. I am not aware of any IFPTE member who has requested or authorized DOGE or its representatives to access their personal data.

11. I am aware of and can identify individual members whose right to privacy has been violated by such disclosures.

12. I am aware of and can identify individual federal employee members who received an email from OPM on their federal agency account with the subject "Fork in the Road," detailing a plan for federal employees to immediately resign their positions.

13. I have personally heard from members from every IFPTE federal sector local across the agencies in which we represent workers who are deeply concerned about the risks to their privacy and data security posed by unvetted and unqualified people associated with DOGE going through their personal and financial data.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 12, 2025

_____ /s/* _____
Matthew S. Biggs

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
2                     SOUTHERN DIVISION
   _____
3                                  )
   AMERICAN FEDERATION OF          )
4  TEACHERS, et al.,               )
                                   )
5                 Plaintiffs,      )
                                   )
6       v.                         )  Case No. 8:25-cv-00430-DLB
                                   )
7  SCOTT BESSENT, et al.,          )
                                   )
8                 Defendants.      )
   _____)
9
                                     Greenbelt, Maryland
10                                   February 19, 2025
                                     10:11 a.m.
11

12                      MOTIONS HEARING
           BEFORE THE HONORABLE DEBORAH L. BOARDMAN
13              United States District Judge

14
                  A P P E A R A N C E S
15
   ON BEHALF OF THE PLAINTIFFS:
16
        MUNGER, TOLLES & OLSON LLP
17      601 Massachusetts Avenue, N.W., Suite 500 E
        Washington, D.C.  20001
18      BY:  XIAONAN APRIL HU, ESQUIRE
             (202) 220-1123
19           april.hu@mto.com

20                      (Continued)

21

22

23                 PATRICIA KLEPP, RMR
                Federal Official Court Reporter
24              6500 Cherrywood Lane, Suite 200
                  Greenbelt, Maryland  20770
25                      (301) 344-3228
```

1                    A P P E A R A N C E S (Cont'd)

2    ON BEHALF OF THE PLAINTIFFS: (Continued)

3         MURPHY ANDERSON PLLC
          1401 K Street, N.W., Suite 300
4         Washington, DC  20005
          BY:  MARK HANNA, ESQUIRE
5              (202) 223-2620
               mhanna@murphypllc.com
6
          PROTECT DEMOCRACY
7         2020 Pennsylvania Avenue, N.W., Suite 163
          Washington, D.C.  20006
8         BY:  KRISTY PARKER, ESQUIRE
               (202) 424-9906
9              kristy.parker@protectdemocracy.org

10   ON BEHALF OF THE DEFENDANTS:

11        UNITED STATES DEPARTMENT OF JUSTICE
          Civil Division, Office of the Assistant Attorney General
12        950 Pennsylvania Avenue, N.W.
          Washington, D.C.  20530
13        BY:  EMILY MARGARET HALL, TRIAL ATTORNEY
               (202) 307-6482
14             emily.hall@usdoj.gov

15        UNITED STATES DEPARTMENT OF JUSTICE
          Civil Division, Federal Programs Branch
16        Poc Agostinho, Jean
          1100 L Street, N.W., Suite 8142
17        Washington, D.C.  20530
          BY:  ELIZABETH J. SHAPIRO, DEPUTY DIRECTOR
18             (202) 307-0340
               elizabeth.shapiro@usdoj.gov
19
          UNITED STATES ATTORNEY'S OFFICE
20        36 S. Charles Street, 4th Floor
          Baltimore, Maryland  21201
21        BY:  ARIANA WRIGHT ARNOLD, ASSISTANT U.S. ATTORNEY
               (410) 209-4813
22             ariana.arnold@usdoj.gov

23   ALSO PRESENT:

24        CHRISTOPHER HEALY, SENIOR ADVISOR TO THE GENERAL COUNSEL,
             DEPARTMENT OF THE TREASURY

25

```
 1                P R O C E E D I N G S

 2        (Call to order of the Court.)

 3              THE COURTROOM DEPUTY:  All rise.  The United States

 4   District Court for the District of Maryland is now in session,

 5   the Honorable Deborah L. Boardman presiding.

 6              THE COURT:  Okay.  Good morning, everyone.  Please be

 7   seated.

 8              Would you call the case.

 9              THE COURTROOM DEPUTY:  Yes, ma'am.

10              The matter now pending before the Court is Civil

11   Action No. DLB-25-0430, American Federation of Teachers, et al.

12   v. Scott Bessent, et al.  We are here today for the purpose of a

13   motions hearing.

14              Counsel, please identify yourselves for the record.

15              MS. HU:  Good morning, Your Honor.

16              Xiaonan April Hu from the Law Firm of Munger, Tolles &

17   Olson, for Plaintiffs, and at counsel table with me are

18   Mark Hanna from Murphy Anderson, and Kristy Parker from

19   Protect Democracy.

20              THE COURT:  Okay.

21              Is her microphone working?

22              THE COURTROOM DEPUTY:  Yes, ma'am.

23              THE COURT:  Okay.

24              All right.  Good morning.

25              MS. HALL:  Good morning, Your Honor.
```

1          My name is Emily Hall, Department of Justice,

2     representing all of the defendants in this case, and I'm joined

3     at counsel table by Elizabeth Shapiro of the Department of

4     Justice, Chris Healy of the Department of the Treasury, and

5     Ariana Arnold with the Department of Justice.

6          THE COURT:  All right.  Good morning to all of you.

7     Please be seated.

8          MS. HU:  Thank you.

9          THE COURT:  Okay.  I'm going to go over all of the

10    procedural background.  I think we all know why we're here, but

11    just for the record, we're here for a hearing on the plaintiffs'

12    motion for a temporary restraining order, which they filed last

13    Wednesday.  The operative pleading is their amended complaint at

14    ECF 13.

15         They raised three claims under the Administrative

16    Procedure Act.  Claim 1 is that by granting members of the

17    Department of Government Efficiency access to the systems and

18    records maintained by three agencies, namely, the Treasury, the

19    Department of Education, and the Office of Personnel Management,

20    OPM, the government acted not in accordance with law -- that's

21    Count I; arbitrary and capriciously, that's Count II; and in

22    excess of statutory authority, that's Count III.

23         So I've reviewed the TRO, its attachments; I've

24    reviewed the opposition, its attachments; and then the

25    plaintiffs filed a reply, which also had attachments; and I

1    looked at the notice of recent decision that the defendants

2    filed last night, Judge Moss' decision in a related case.

3             Okay.  We have a lot of ground to cover today.  I have

4    a lot of questions for both parties.  I think we first -- I'll

5    start with the plaintiffs.

6             Ms. Hu, if you could speak clearly into the

7    microphone, maybe bring it closer to you.  I had a little bit of

8    a hard time hearing you when you introduced yourself.

9             Great.

10            So it's your motion, and I'm happy to hear from you,

11   but I have some questions, all right?

12            MS. HU:  Certainly, Your Honor.

13            THE COURT:  Okay.  Would you like to go to the podium

14   or stand at counsel table?  Wherever you're comfortable.

15            MS. HU:  I think I'm more accustomed to speaking at

16   the podium.

17            THE COURT:  All right, very good.

18            MS. HU:  Good morning, Your Honor.

19            The Privacy Act of 1974 prohibits federal agencies,

20   like Defendants, from disclosing personally identifiable

21   information about Americans without their consent except in

22   specifically enumerated circumstances.  We are here today

23   because Defendants have violated that law and violated

24   Plaintiffs' fundamental right to privacy by providing DOGE

25   representatives and affiliates unfettered access to their data

1  systems without satisfying any of the exceptions set forth in

2  the statute and because urgent relief is needed to prevent

3  irreparable harm.

4          Your Honor, I intend today to start and jump straight

5  into the TRO factors, beginning with likelihood of success on

6  the merits, unless you would prefer that I address standing,

7  which I understand is jurisdictional.

8          THE COURT:  Standing.

9          MS. HU:  Certainly, Your Honor.

10          On the issue of standing, we believe that the question

11  is resolved by the Supreme Court's decision in TransUnion as

12  well as the Fourth Circuit's decision in Garey v. James, which

13  we cite in our reply.  And the essence of the standing argument

14  really comes down to this.  A concrete harm need not be a

15  tangible harm; it can be an intangible harm, and it can be one

16  that Congress codifies in a statute if there's a close analogue

17  at common law.

18          THE COURT:  What's the close analogue at common law

19  that you are relying on?

20          MS. HU:  The close analogue in common law is the

21  invasion of a privacy right, the invasion of your privacy, which

22  both the Supreme Court specifically identified as one of those

23  common law rights in TransUnion and which the Fourth Circuit

24  subsequently identified and relied on in Garey v. James.  And

25  that's at, I believe, page 921 and 922 of the opinion in the

1   Fourth Circuit.

2         We are talking about precisely that right, that right

3   to invasion of privacy, and I think Garey v. James --

4         THE COURT:  Speak a little more slowly, please.

5         MS. HU:  Certainly, Your Honor.

6         THE COURT:  So the invasion of privacy is these

7   departments allowing DOGE people access to personal information

8   that they're not allowed to have access to; is that correct?

9         MS. HU:  That's correct, Your Honor.

10        THE COURT:  So it's not disclosure to the public or

11  someone outside the agency; is that correct?

12        MS. HU:  In this particular case right now, I think

13  there are two aspects of this.  The first is that there's -- our

14  view is, there's certainly access to unauthorized government

15  employees, and then the second piece of this is that we think

16  there is an immediate and imminent risk that that information,

17  because of how unsecure the processes are in place within the

18  government right now, will be disclosed to the public.  So there

19  are two separate harms here, but both flow from that fundamental

20  right to privacy.

21        THE COURT:  So let's put the first harm in the parking

22  lot for a minute and focus on the second harm, which you just

23  identified as this fear that the information might be leaked or

24  mishandled, and there could be a cascade of events like

25  identity theft.

1      Why isn't that theory of harm foreclosed by the

2  Fourth's Circuit's decision in Beck?  Are you familiar with the

3  Beck case?

4      MS. HU:  Yes, Your Honor, we are familiar with the

5  opinion in Back, and I think we would distinguish that case on

6  the grounds that in fact, that issue of whether the injury was

7  too speculative took place at I believe a summary judgment

8  stage.  The parties had gone through extensive discovery, and it

9  had been three years since the complaint had been filed, and

10  there had been no evidence that anyone had access to the laptop,

11  had looked at the information inside the laptop, or that the

12  information had been disseminated outside of the laptop.  So

13  that's the situation in Beck.

14      What we are dealing with here is -- it's been widely

15  reported, Defendants do not dispute that these DOGE individuals

16  and representatives have gained access to Plaintiffs' personally

17  identifiable information through these databases and that they

18  have used that information in I think unsecure ways.  I think we

19  see that from the declaration that was submitted by one of the

20  DOGE employees on behalf of the Department of Education, where

21  he states, One of the six employees who were given this access

22  did not complete basic informational security training or ethics

23  training before gaining access.

24      I think if we would zoom out, here, Your Honor, what

25  we're really dealing with is reams of personally identifiable

1  information, Social Security number, birth date, employment

2  history, financial income, bank account information and pulling

3  that from heavily secured databases within the government system

4  into the hands of these individuals who, on occasion, have been

5  accessing it without governmental --

6          THE COURT:  Speak more slowly, please; we've got the

7  court reporter who's got to take everything down.

8          MS. HU:  My apologies.

9          And what we're talking about here are these

10  DOGE individuals and representatives who, it's been widely

11  reported, have used nongovernmental devices to access that

12  information, in the case of OPM, have brought in a commercial

13  system to put that information onto, and then, Department of

14  Education, to then filter and funnel that information through

15  AI tools, which are of course enabled through Microsoft Azure, a

16  system operator that is not within the government.

17          And so stepping back, what I think we see here is the

18  movement of highly secured information through unsecured means,

19  in unsecured ways, into unsecured spaces by recent high school,

20  recent college graduates, at least one of whom two years ago was

21  fired from a corporate internship because he had leaked

22  proprietary information.  And I think that does create a

23  material increase in risk that Plaintiffs' information will be

24  disclosed wrongly to the public, or to outside actors, or to

25  third parties, and I don't know that Judge Moss' decision

1  addresses that harm, right, I think he views it through the lens

2  of, is there a risk of identity theft, is there a risk of

3  identity fraud.

4          I think setting that question aside, the risk here is

5  also of unlawful disclosure to people outside of the government,

6  and I think that that risk, we've shown, exists, it's real, it's

7  imminent, it's ongoing, because of the dissemination of this

8  information through AI tools, and that creates --

9          THE COURT:  So -- hold on.  I have a couple questions.

10  Where is there evidence that personal private information has

11  been disseminated or inputted into AI?

12          MS. HU:  Certainly, Your Honor.  I think the evidence

13  there is from that Washington Post article we cite in our

14  complaint.  It notes in that article that personally

15  identifiable information associated with the grant, the people

16  who oversee the grants, so these would be employees, I believe,

17  of Education, or individuals who oversee the grants, has been

18  fed into the AI tools.  So that's personal information.  Now,

19  obviously, the government is best positioned to know about

20  whether other personal information has been fed, but that is at

21  least one indication that at least some personal information is

22  being fed into AI.

23          And then I think there this is also the ambiguous

24  language from what I believe is Mr. Gioeli or

25  Ms. Vona Robinson's declaration that says, Mr. Elez, who had

1    access and is a DOGE representative or affiliate, automated a

2    manual payment review process using his access, and I think a

3    reasonable inference from that, based on how open DOGE has been

4    about their desire to use AI, is that some form of AI may have

5    been implemented to automate that process.

6         THE COURT:  Do you need this form of injury?  By "this

7    form of injury," the one you just talked about, which is the

8    material risk of disclosure.  Do you need that in order to get a

9    TRO -- or in order to have standing, I should say?

10        MS. HU:  No, Your Honor, neither for standing nor for

11   a TRO, because we believe that the violation of the fundamental

12   right to privacy that Plaintiffs have come forward here, which

13   is expressly protected by the Privacy Act of 1974, is sufficient

14   to satisfy the Article III requirement of a concrete harm, and

15   it also is sufficient to show irreparable harm because it is a

16   fundamental right.

17        And I think I would direct Your Honor's attention to

18   the Sourcebook for the Privacy Act, which laid bare that what

19   Congress thought it was doing when it enacted the Act was to

20   codify this -- "constitutional," they called it, constitutional

21   right to privacy that flows from the Bill of Rights and the

22   Supreme Court's decisions.  And I think the United States

23   Department of Justice case that we cite in our reply articulates

24   the contours of that privacy right in a way that Judge Moss'

25   opinion did not grapple with, perhaps because it was not

 1    foregrounded the way that we have foregrounded it here.

 2            And the right to privacy I think is properly

 3    understood as the right to control who gets your information and

 4    how widely it's disseminated, and the Privacy Act was intended

 5    to capture that and does, I think, capture that, because it

 6    recognizes that when we interact with the government in any

 7    number of ways -- I apply for a student loan -- I have to give

 8    you my personal information as part of that.  I expect that the

 9    way the government will use my personal information, my

10    Social Security number, my parents' Social Security number, my

11    parents' income, is for that purpose for which it is being

12    collected.

13            THE COURT:  All right, okay.

14            MS. HU:  It's to evaluate my application.

15            THE COURT:  All right.  Let me ask you a question.  If

16    you were bringing an action for damages under the Privacy Act --

17    which I understand you're not, you're bringing an action for

18    injunctive relief through the APA, which Fourth Circuit law

19    allows, but if you were bringing a money damages claim under the

20    Privacy Act, you'd have to allege an adverse effect.  What is

21    the adverse effect you're alleging here?

22            MS. HU:  Well, the adverse effect requirement, we

23    think, is specific to money damages in the Privacy Act context,

24    because you have to show the amount of the -- the financial

25    amount of the harm, right, so for example, a disclosure has

13

1   happened, and you now have to pay some amount of thousands of

2   dollars to fix or resolve a dispute with your credit agency,

3   right, that is an example of something that costs money.

4           Or an example of harm might be the wrongful disclosure

5   of your information to another government agency was used to

6   deny you, you know, 30 percent of your right -- 30 percent of

7   your benefits allotted.  That is a measurable amount which is

8   captured by the adverse effect requirement for monetary damages.

9           Here, of course, we're dealing with a request for

10  injunctive relief, for which the violation of a fundamental

11  right like the right to privacy, which is intangible and not

12  measured by money damages, provides a sufficient basis to award

13  relief, both in the emergency basis we're seeking now but also

14  in the permanent injunction form that we would seek at the end

15  of these proceedings.

16          And I think, Your Honor, I -- part of the decision

17  that Judge Moss issued, which I think is troubling here, is that

18  under that line of reasoning, a plaintiff situated in our

19  plaintiffs' positions could never seek injunctive relief to

20  block the unlawful disclosure of their information.  I think

21  Congress would be very surprised to know this.  I think if you

22  look at the legislative history for the Privacy Act of 1974, it

23  is abundantly clear that the precise evil they thought they were

24  preventing was what is happening here, which is the random

25  dissemination of information well beyond the boundaries of what

1  is carved out for its use.

2          And I think's important, again, to point to what the

3  Privacy Act does.  It starts with a presumption.  It says,

4  Information cannot be disclosed absent written consent by the

5  individual whose records are at issue except in certain

6  delineated circumstances.  So the Act starts with the

7  presumption that you need the consent of the person to look at

8  that information.  I think that goes to the heart of what we say

9  here is the fundamental right to privacy, the right to control

10 who gets your information, under what circumstances, when.  The

11 government strikes that balance by saying, here are some of the

12 exceptions we think that don't require that written express

13 consent.

14          And for the reasons we've discussed in the brief and

15 reasons I'm happy to get into today, we don't think those

16 exceptions are met.

17          THE COURT:  All right.

18          MS. HU:  But I think at the core, this is the

19 irreparable harm.

20          THE COURT:  Okay, I understand.

21          Let's go back to the common law analogue.  You said --

22 I don't know if you gave me a specific one.  As I read some of

23 the cases, it seems to me that at least one common law analogue

24 to a violation of the Privacy Act would be intrusion upon

25 seclusion, which was referenced in TransUnion.  I've looked at

```
 1    the Restatement (Second) of Torts, Section 52(b), and it seems
 2    to me that that might be common law analogue.  Are there any
 3    others, from your perspective?
 4              MS. HU:  Your Honor, I think that that is correct.  I
 5    also think invasion of privacy, which is specifically referenced
 6    in Garey, would also qualify.  That was the analysis in the hook
 7    that the Fourth Circuit used in Garey.
 8              And I think it is also important to remember here that
 9    the Fourth Circuit was clear, we don't look for an exact
10    duplicate, right, we look for a close analogue that captures the
11    essence of that right recognized in common law, and I think both
12    invasion of privacy, intrusion upon seclusion would satisfy
13    that, that standard.
14              THE COURT:  Okay.  Since you mentioned irreparable
15    harm, and it's intertwined, of course, with the standing issue
16    and what the concrete harm is, I did read Judge Moss' opinion.
17    It's your position that the irreparable harm is the ongoing
18    alleged violation of the Privacy Act; is that correct?
19              MS. HU:  I would slightly reframe that, Your Honor; I
20    would say the ongoing harm is the violation of the Privacy Act,
21    which also violates Plaintiffs' privacy rights, fundamental
22    privacy rights.  But yes, that is the -- that is the theory of
23    irreparable harm, or that is one of them.  I think the other is
24    related to the risk of disclosure, the material increase in the
25    risk of disclosure to outside parties, to -- outside the
```

1   government, potentially to bad actors as well.

2          THE COURT:  Okay.  Let's -- let me just clarify.  What

3   is your position on what the final agency action is, here?  The

4   government suggests in its briefing that there has been no final

5   agency action.  What is your position on that?

6          MS. HU:  We disagree with that, Your Honor.  We think

7   the final agency action here is the decision to disclose

8   Plaintiffs' personally identifiable information to

9   DOGE individuals and representatives by granting them access to

10  the data systems that Defendants maintain.  We think that that

11  satisfies the two-prong test that courts adhere to in

12  determining whether or not there has been a final agency action.

13         The first is consummation of a decision-making process

14  by statute.  There were criteria that they had to consider

15  before granting that access, and they determined that an

16  exception was met and decided to grant that access.  So that is

17  a consummation.  It's a final decision.  It's not an interim

18  decision, it's a final one.  They have access now, they continue

19  to have that access absent court intervention.

20         The second prong, of course, is that it determines

21  rights, and we think here, it determines the rights of the

22  plaintiffs.  It also determines Defendants' rights, because it

23  determined that they did not need to ask for our plaintiffs'

24  written consent.  It determined the scope of our plaintiffs'

25  rights, who had a right to provide their consent before having

1  their information disclosed, and the government narrowed that

2  right by determining, in this case, that they did not need to

3  seek that consent.

4       So we think this is clearly final agency action, and

5  I think we cite to cases in the FOIA context, for instance,

6  where the decision to disclose is considered a final agency

7  action.

8       THE COURT:  All right.  Let's talk about the two

9  Privacy Act exceptions that you target in your complaint and

10 that the government relies on.  The first is the need to know

11 exception.  It's Section 55 -- excuse me, 552a(b)(1) of Title 5

12 of the United States Code.

13      What I've read from the government is that the people

14 who have submitted declarations, those are the DOGE people --

15 they include Mr. Krause, Mr. Ramada, Mr. Hogan, from Treasury,

16 Education, and OPM, respectively -- that those people, who are

17 executing the President's directives in Executive Orders, that

18 they need access to all unclassified information in the systems

19 of records in those agencies in order to perform their duties

20 under the Executive Orders.  What is your response to that?

21      MS. HU:  Certainly.  We have several responses,

22 Your Honor.  I'll start, first and foremost, with the fact that

23 this question, why do DOGE individuals need access to

24 Social Security numbers, dates of birth, addresses, was posed

25 directly to President Trump, who obviously authored and signed

1  those Executive Orders that Your Honor just referenced, and he

2  said in response, They don't, they do not need this information,

3  but it's very easy for them to get.  Those were his direct

4  responses when the question was posed to him.  I think we would

5  start there as background for why it seems that this exception

6  is not met.

7          And I would emphasize here, the standard is need to

8  know.  It's not would like to know, would be nice to know; it's

9  need to know.  And courts have rigorously enforced that

10 standard; they've really scrutinized whether there truly is a

11 need to know the information sought to be disclosed.  That is,

12 they have sought to assure themselves, the courts have sought to

13 assure themselves, what are these employees' duties, why do they

14 need this information in order to fulfill their duties?

15         And I think Defendants here have not provided

16 information, even with these declarations, to answer that

17 question in the affirmative, that there is, in fact, a need,

18 because they have not identified with specificity each of the

19 systems that are being accessed, they have not identified who

20 has received that access, they have not identified the specific

21 duties assigned to those individuals who have that access.

22         Instead, they have claimed, in these very broad,

23 sweeping terms, we need access for these DOGE individuals and

24 representatives, because fraud, or because we need to maintain

25 the systems, or because we want to review them for alignment, we

1    want to review the grants in the Education Department for

2    alignment with policy initiatives or policy preferences of

3    senior leadership.

4            And that is not going to cut it.  And I think we know

5    that that's not going to cut it because of decisions like

6    Bigelow v. Department of Defense, where the D.C. Circuit, to

7    analyze this exact question, does this individual need to know,

8    looked and found a regulation that said, this individual needed

9    to know that information.

10           THE COURT:  So I saw that in Bigelow, and I see,

11   for instance, in Mr. Hogan's declaration from -- the

12   Chief Information Officer of OPM, he has identified a regulation

13   or statute that identifies his duties.  The other declarants

14   refer to the Executive Orders as the source of their duties or

15   the description of their duties.  Is that your understanding of

16   what their duties are?

17           I certainly will ask the government, so they can start

18   thinking about their answer ahead of time.

19           MS. HU:  My understanding of the duties they are

20   alleging here or raising here are as set forth in the

21   declarations, which are fraud, waste, abuse -- well, actually,

22   I think that's for Education.  He said waste, abuse, and senior

23   policy priorities.  That's one example of what he said.  He's

24   been reviewing the grants for -- or the system and the

25   information in the data systems for --

1          THE COURT:  What I'm trying to focus on, as you

2     suggested, in Bigelow, the source of the document we're looking

3     to, to determine what the person's duties are.  In that case, it

4     was a statute or a regulation.

5          MS. HU:  Correct.

6          THE COURT:  Here, it seems as if we have to look to

7     the Executive Orders.  Is that your understanding?

8          MS. HU:  I don't think that an Executive Order can

9     define what the duties are if they countermand the will of

10    Congress or what the function of the agency is, but in this

11    case, Your Honor, I don't think that question is squarely

12    presented, because the Executive Orders themselves --

13    for example, the Executive Order that established DOGE, which

14    Defendants rely upon, does not mention waste, fraud, or abuse.

15    None of those terms are in that Executive Order which Defendants

16    are now relying on as the purpose for which they need access.

17          So I think they have cited to the Executive Order.

18    I think we have questions about whether the Executive Order

19    actually supports the demonstrated need, but I think if we look

20    at what Defendants have crystalized the need as, they do not

21    align with the purpose for which that data is collected, which

22    is evident from the privacy impact assessments the government is

23    required to publish online for each of the systems that they

24    maintain.

25          And I'm happy to walk through a few examples of that,

```
 1    Your Honor, unless you have further questions on the
 2    Executive Orders.
 3              THE COURT:  No, let's keep with the need to know
 4    exception.  So ...
 5              MS. HU:  Certainly.
 6              So in the Education Department, for example, there is
 7    a database called CODS, which --
 8          (Reporter requesting clarification.)
 9              MS. HU:  CODS, C-O-D-S, like the fish.
10              So that stands for the Common Origination and
11    Disbursement System.  This system requires a moderate risk
12    security clearance in order to access.  It contains Social
13    Security number, birth dates, mailing addresses, driver's
14    license numbers, telephone numbers, demographic information.
15    And the privacy impact assessment states that among several very
16    specific purposes for which that data is used and maintained, is
17    to determine and validate aid applicants' and recipients'
18    eligibility for and benefits under Title IV, including receiving
19    grants, loans, or scholarships.
20              And so someone who has a need to know this
21    information, that need would be closely tethered to the purpose
22    that this information is kept for which the agency has already
23    described, so that would be an employee of the agency who is
24    reviewing this information to determine if the criteria for
25    eligibility have been satisfied.
```

1          THE COURT:  So I think I'm confused.  To me, what

2    your -- your analysis bleeds into a routine use analysis.  So

3    for need to know, it's whether the person -- so here, the DOGE

4    employee -- has to examine the record in connection with the

5    performance of duties assigned to him in order to perform those

6    duties properly.

7          So first we start with, what are this person's duties,

8    which is why I asked, how do I know what their duties are?  The

9    only source of a duty I have so far is an Executive Order.

10         Then we ask, does this person need access to

11   everything they've been provided access to in order to fulfill

12   those duties.

13         What I heard you saying was just a little bit more

14   closely aligned with routine use, what was the purpose of the

15   collection of the information, and is the use, or the disclosure

16   of it, compatible with that.  So correct me if I'm wrong, but

17   that's what I thought I heard.

18         MS. HU:  Your Honor, I apologize for not being

19   clearer.  I think that's exactly right; the analysis you set

20   forth is the proper way to look at this.  What I was addressing

21   is, if -- why isn't it enough that Defendants have simply

22   invoked broadly waste, or fraud, or abuse?  That was what my

23   argument just now was tailored to.

24         But I think going back to Your Honor's point about the

25   Executive Order and whether that's -- if that sets forth the

1    duties, whether there's a close need for those duties set forth

2    in the Executive Order, and I would say that that's not met

3    here.  The Executive Order specifies maintaining and upgrading

4    IT systems.

5         It is not clear to me at all why DOGE individuals and

6    representatives would need to know all of the personally

7    identifiable information stored within these systems in order to

8    upgrade or maintain them.  I think that is, in fact,

9    demonstrably proven to not be needed because of the declaration

10   of, for example, Mr. Gioeli, who acknowledges that access in the

11   past has been given for audits but that it has not reached the

12   level, or the scope, or the breadth that was given to these

13   DOGE representatives or individuals.

14        And I also, Your Honor, would point to the fact that

15   some of these data systems, as is clear through the privacy

16   impact assessments, can be viewed with all of the personally

17   identifiable information redacted.  So in those systems, what

18   the government will do is, they will replace all of the PII with

19   dummy numbers.  So instead of Social Security numbers, you get

20   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, and that is not something that Defendants have done

21   here in giving these DOGE representatives access.

22        So if we're looking at the --

23        THE COURT:  How do you know that?

24        MS. HU:  How do we know that, I think -- I think the

25   government would have pointed that out to us, if -- I think if

1    it's a strong fact in their favor, I think they would have

2    pointed it out to us, if that was in fact what was happening and

3    that none of Plaintiffs' personally identifiable information

4    could have been disclosed because it's all been redacted, and

5    they have not said that; they have not disputed that Defendants

6    have given access to this information to DOGE individuals and

7    DOGE representatives.

8            THE COURT:  Okay.  Anything else on the need to know

9    exception?

10           MS. HU:  Your Honor, I think just one last point on

11   the Treasury, which I think typifies the problems here.  The

12   need to know that they have asserted has changed over time.

13   With the Executive Order, of course, it locks that into

14   maintaining the systems.

15           Then it was widely reported Treasury -- that

16   DOGE individuals sought access to those Treasury systems to stop

17   payments, which is not something that the Treasury Department

18   can do when other agencies have approved payments.

19           And now, as evidenced through I believe the many

20   declarations submitted, for example, by Mr. Krause, by

21   Mr. Gioeli, by Ms. Robinson, the purpose has now shifted to,

22   we're not trying to stop payments, we're trying to flag improper

23   payments for the State Department.

24           But even if you credit this last explanation as the

25   reason for the access, it would not hold up to the need to know

 1    provision, because by statute, Congress has determined that the

 2    Treasury Department and the disbursing official do not review

 3    payments for impropriety in the ways that are described by

 4    Defendants' declarations.  And I would direct Your Honor's

 5    attention to Section 3325(a)(2) of 31 USC and 3520(a), which set

 6    forth those responsibilities.

 7         So we don't think that Defendants have met the

 8    requirement to show that in support of their duties, or what is

 9    needed for their duties, to accomplish their duties, these

10    DOGE individuals and representatives had to have access to this

11    sweeping breadth of personally identifiable information.

12         THE COURT:  So let's talk about the Treasury

13    Department, and we're still on the need to know exception.  What

14    if the President has directed Mr. Krause -- who is now only a

15    Treasury employee -- what if the President has directed

16    Mr. Krause to look in the -- is it the federal disbursement

17    service?  Is that what it's called?

18         MS. HU:  I think that's correct -- federal

19    disbursement system, I think.

20         THE COURT:  Thank you.

21         MS. HU:  Yes.

22         THE COURT:  Look at that and identify payments that

23    the President, through Mr. Krause, believes are improper, and

24    just -- those are his duties, according to an Executive Order

25    commanded by the President.  What if his response is, in order

1  to fulfill those duties, I need to look at all of this

2  information?  What is your response to that?

3          MS. HU:  I think my response to that, Your Honor,

4  would be that the duty has to be defined by the agency and

5  consistent with their statutory authority as determined by

6  Congress, and in this case, an order from the President, saying,

7  I want you, the head of Treasury, to go into these systems and

8  look for improper payments and flag them, would countermand the

9  statutory setup for that authority, which says, very clearly,

10  that responsibility for reviewing payments for things like

11  impropriety belong within the scope of the agency certifying and

12  approving that payment.

13          What the Treasury officials' responsibilities are

14  under statute are to examine the voucher, if necessary, to

15  determine it is in the proper form, that it was certified and

16  approved by another agency, and computed correctly.  And that is

17  not what -- those are not the facts that we have here.

18          And I would say, Your Honor, that we are not in a

19  situation where the President has ordered anyone within the

20  Treasury to do this, because his Executive Order is quite

21  general -- it says to maintain the systems -- and I don't think

22  there's an Article II question presented here, because that

23  Executive Order expressly states, Provide access to the systems

24  to the maximum extent permitted by the law.  And so I think,

25  here, the amount of access that has been granted is not

1    permitted by the law -- by the Privacy Act.

2         THE COURT:  All right.  I don't want to beat a dead

3    horse, but I'm still trying to understand the duties.  So what I

4    think I just heard you say is that Mr. Krause, his duties are

5    limited to the duties of perhaps a comparable Treasury employee?

6         MS. HU:  No, Your Honor, that's not what I was trying

7    to suggest.  I think Mr. Krause's duties are, given his rank in

8    the government, probably defined somewhere with some

9    specificity, but I don't think he defines it himself with

10   specificity in the declaration, I don't think Defendants have

11   defined it with specificity.

12        But that's not what I was intending to suggest; I was

13   merely suggesting -- or arguing, here, that the scope of his

14   duties can't be to violate or countermand a congressional

15   mandate that dictates the review process for these payments that

16   are being disbursed by the Treasury.

17        But again, I think the Executive Order doesn't

18   actually state that these DOGE individuals or representatives

19   are dispatched to investigate waste, fraud, or abuse; those

20   words do not appear in the Executive Order.

21        THE COURT:  Okay.  Let's move on to an arguably even

22   more complicated exception, the routine use exception.

23        So the Privacy Act permits disclosure of personal

24   information for routine use, which is defined as the use of such

25   record for a purpose which is compatible with the purpose for

1   which it was collected.  That's Title 5, United States Code

2   Section 552a(a)(7) and (b)(3).

3          So the government has identified a few statement of

4   record notices, or SORNs, that it believes identify the

5   categories of the routine use.  What is your response to the

6   SORNs that the government has identified?

7          MS. HU:  Certainly, Your Honor.  I think here, our

8   response is that the routine use as identified by Defendants as

9   supporting the access are not met.

10          I'll start first with the Treasury routine use they

11  identify, which they point, say, for the purpose of identifying,

12  preventing or recouping improper payments to an applicant for or

13  recipient of federal funds, but the full routine use here says

14  it's disclosure to a federal agency.  Defendants have now made

15  clear through their declarations and through their papers that

16  Mr. Krause and Mr. Elez are and were, respectively, Treasury

17  employees.  So this can't be disclosure to a federal agency for

18  the purpose of identifying, preventing, or recouping improper

19  payments.

20          I would note, by the way, that this routine use is

21  very consistent with the statutory scheme involving the

22  disbursement and approval of payments.  It authorizes the

23  Treasury to disclose information to another agency to help that

24  agency identify improper payments, as is that other agency's

25  responsibility under the statute.

1        Your Honor, if you have no questions on that, I will

2  move to the OPM routine use.

3        THE COURT:  Okay, go ahead.

4        MS. HU:  So the OPM routine use, Defendants, in their

5  brief, say, In certain circumstances, this routine use says,

6  information can be used or disclosed to help eliminate waste,

7  fraud, and abuse in governmental programs, but what they omit in

8  their brief is that the circumstances identify --

9        THE COURT:  Hang on, hang on.  Just -- you're smarter

10  than I am, you're faster than I am; you need to slow down.

11        We're at OPM and we're at the SORN they've identified.

12  What did they identify?  There is ... to disclose relevant

13  information with personal identifiers of federal civilian

14  employees whose records are contained in the EHRI, to authorize

15  federal agencies and nonfederal entities for use in computer

16  matching?

17        MS. HU:  Correct.

18        THE COURT:  Okay.

19        MS. HU:  That is the computer matching provision, and

20  I think what Defendant's brief elides is that the purpose of

21  helping eliminate waste, fraud, and abuse is very specific to

22  the use of authorized computer matching programs.  Computer

23  matching programs are specifically defined in the Privacy Act,

24  they require an agreement, that agreement takes 30 days to take

25  effect, and it has to be an agreement between the agency that

1    maintains the record and the agency that will be doing the

2    computer matching.

3          And here, none of those requirements for this routine

4    use are satisfied, because again, Defendants have represented

5    that the DOGE affiliates and representatives who have access

6    here are OPM employees.  So you don't computer match with

7    yourself, but even if you were to accept that maybe some of

8    these were DOGE employees, there could not be a computer

9    matching agreement in place, because the access began well

10   before 30 days had passed between the Executive Order and when

11   access was granted.

12         THE COURT:  Okay.  What about Education?

13         MS. HU:  So in Education, Defendants have pointed to a

14   provision, a routine use that says disclosure is permitted to

15   support the investigation of possible fraud or abuse and to

16   detect and prevent fraud or abuse in Title IV HEA program funds.

17   But Mr. Ramada's supplemental declaration expressly states that

18   he and others affiliated with DOGE who have been dispatched to

19   Education have been reviewing information in the systems, not

20   for fraud, but instead for waste, abuse, and leadership policy

21   priorities.

22         That is obviously not -- that does not map onto this

23   routine use.  Fraud is missing from that declaration.  In its

24   place, we now have leadership policy priorities, which are not

25   defined.

1          And I think if Defendants had wanted to rely and say

2    that this is a routine use of the data, they should have,

3    consistent with the Privacy Act, published a notice in the

4    Federal Register, stating their intent to add that, policy

5    priorities, leadership policy priorities, as a routine use that

6    warrants the disclosure of this information, and then under the

7    statute given the 30 days of notice to the public to solicit

8    comments, feedback, disagreements, and then made any adjustments

9    needed before finalizing that routine use, but they did not do

10   that; they are trying to fit what they are doing now into a

11   preexisting routine use that does not accommodate their actions.

12          THE COURT:  All right.  Is there -- isn't there

13   another SORN that they identified for Education?  I believe it

14   is to support governmental researchers and policy analysts?

15          MS. HU:  That's correct, Your Honor, but in this

16   particular case, the focus of that routine use is disclosure to

17   analysts, policy analysts, and government researchers.  There is

18   no allegation in the declaration of Mr. Ramada that he has been

19   sharing any this information with a governmental researcher or

20   with a policy analyst.  Those words do not appear in his

21   declaration.  I do not think that they have set forth any

22   evidence that would support that is, in fact, a routine use that

23   is being used here.

24          THE COURT:  All right.

25          MS. HU:  And I would finally note, Your Honor, I'm

JA130

1  sure eventually we will talk about what it looks like after the

2  TRO hearing has concluded and an order has been issued, but the

3  statute, the Privacy Act --

4          THE COURT:  If an order has been issued.

5          MS. HU:  If an order -- if an order has been issued,

6  that's correct, Your Honor, an order denying or an order

7  granting.

8          THE COURT:  Fair point.

9          MS. HU:  The Privacy Act actually has very stringent

10  requirements for agencies to log every use of the routine use.

11  So if they're relying on that, there is a log, there should be a

12  log that would justify its support and substantiate the fact

13  that they are using these specific routine uses to justify

14  disclosure to Defendants.

15          THE COURT:  Okay.  I believe with respect to

16  Education, the government in its paper cited to another portion

17  of the Federal Register.  It wasn't exactly clear to me if they

18  were attempting to cite another SORN.  This was at 88 Federal

19  Register -- hold on.

20          I'm looking at page 27 of Government's opposition,

21  ECF 27, Federal Register 42,200 and 42,222.

22          Maybe this is a question for the government, but ...

23  maybe you've already gone over that one.

24          MS. HU:  Your Honor, I apologize; I'm having trouble

25  locating this.  Is this page 27 at the bottom or at the top

stamped?

1          THE COURT:  Good question.  I always refer to the
2  ECF number, so it's ECF page 27.
3          MS. HU:  My brief is potentially turned around; the
4  pages are out of order, so --
5          THE COURT:  All right.  Well, the bottom is 25.
6          MS. HU:  I apologize, Your Honor; I appear to have
7  pages 22 and 27 but not in between.
8          THE COURT:  All right, okay.  Let's move on.  It's
9  probably a better question for the government in any event.
10          Thank you, Counsel.
11          MS. HU:  Your Honor, I think I could address this
12  maybe on reply or rebuttal, I think.
13          THE COURT:  All right, that sounds fine.
14          Okay.  Let's move on from the SORNs.
15          The additional requirement for routine use is
16  compatibility, of course, and in your reply, you argue the
17  government hasn't even addressed the compatibility requirement,
18  so we're on the same page.
19          MS. HU:  I'm sorry, Your Honor, if I actually may just
20  briefly address the Federal Register point?
21          THE COURT:  Sure.
22          MS. HU:  I think that is exactly the point that I was
23  making earlier, which is that they have pointed to language that
24  says, "support the investigation of possible fraud and abuse and

1   to detect and prevent fraud and abuse," but the declaration

2   submitted by the DOGE employee in support of the Education's

3   purpose and the reason why and the purpose for which these

4   individuals are accessing the systems now does not state fraud;

5   it says waste, abuse, and senior policy -- or leadership policy

6   priorities, and that does not, on its face, align with the

7   routine use stated here, or that the government is invoking in

8   its briefs.

9           THE COURT:  Okay.  Let's talk about compatibility.

10  One of the requirements for the routine use exception is that

11  the disclosure of the record is for a purpose which is

12  compatible with the purpose for which it was collected.

13          Let's start with collection.  How do I determine what

14  is the purpose for which records were collected, so collected

15  from your clients, from other people whose information are in

16  federal databases.

17          MS. HU:  Your Honor, for that answer, I would direct

18  you to the privacy impact assessments, which are on a

19  system-by-system basis, and explain -- in a section, there's

20  actually a question, why has the agency collected this

21  personally identifiable information, why does it use it, what

22  does -- why does it maintain it, why is it in the system, and

23  the PIA for each of these systems goes into extraordinary detail

24  about the collection purpose, purpose for which that information

25  was collected.

```
 1            THE COURT:  Okay.  So that's why I look for collection
 2   purpose.
 3            It looks like the leading case on compatibility, the
 4   one that most courts cite, the Fourth Circuit has cited --
 5   although there's not a lot of Fourth Circuit law in routine
 6   use -- is the Britt case out of the Third Circuit.  Is that the
 7   case you're relying on?  I mean, this is Britt v. Naval
 8   Investigative Services, 886 F.2nd 554, and it's from 1989.  Is
 9   that the leading case on compatibility?
10            MS. HU:  I think that's right, Your Honor.  That would
11   be my memory, my recollection, from the briefing and from the
12   legal research that was done here.
13            THE COURT:  What is your argument on compatibility?
14            MS. HU:  Our argument on compatibility, besides the
15   fact that Defendants have not addressed it here, is that when
16   you look at the privacy impact assessments, they do not align,
17   the ways that it has been reported Defendants are using this
18   information -- I'm sorry, that DOGE individuals and
19   representatives are using this information, with access that has
20   been granted to them by Defendants, does not align with the
21   purposes that are set forth for why that information was
22   collected and why it's maintained under each of the agencies and
23   systems.
24            So Your Honor, if I may give you an example of this,
25   the health insurance data warehouse, the purpose for which that
```

JA134

1    information, that PII information is collected and maintained,

2    is to provide internal agency reports regarding enrollment

3    counts, demographic enrollment in health benefit plans, to

4    assess broad effects of pharmacy service use and costs under the

5    program, and to model effects of health benefit plan changes.

6           None of these are explanations that have been advanced

7    by Defendants for why these DOGE individuals or representatives

8    are accessing that information, and all we have, frankly, is --

9    from Mr. Hogan's declaration, this is an OPM system workplace

10   reform, but he doesn't define workplace reform, he doesn't

11   elaborate what workplace reform entails, so it's very hard to

12   see how that has any compatibility with the very narrow purpose

13   described by the agency itself in these privacy impact

14   assessments for these individual systems.

15          And I think this gets us back to where I started from,

16   Your Honor, which is that even though Defendants have put in six

17   declarations, critical factual questions are not addressed by

18   those declarations.  I think the omissions are telling.  They

19   have not articulated the connection, they have not argued a

20   connection between the information, its purpose for its

21   collection, and how it's compatible with the way it's being used

22   now, and certainly, they have not identified to a routine use

23   that is published that accommodates that access.

24          THE COURT:  All right.  Let me -- give me one minute

25   here.

1          THE COURT REPORTER:  Counsel, could you please slow

2    down?

3          MS. HU:  Yes, I apologize.  You are not the first

4    court reporter to tell me I speak too fast, and I suspect you

5    will not be the last.

6          THE COURT:  Well, you're not the first lawyer to speak

7    too fast, so ...

8          Okay.  If I were to grant a TRO, what would the relief

9    look like to you?  Your proposed order, frankly, is way too

10   broad.  What would the relief -- what would the appropriate

11   relief be?

12         MS. HU:  Your Honor, I think the appropriate relief

13   here would be fashioned to address the irreparable harm of

14   ongoing disclosure, in violation of the Privacy Act.  So that

15   would be an order preventing further access to these systems by

16   DOGE individuals or representatives for purposes that are not

17   authorized by law, and that that would hold for 14 days, which

18   is the maximum allowed under Federal Rule of Civil Procedure 65.

19         THE COURT:  Well, help me understand one thing.  Would

20   it be limiting access to the systems, and I would identify the

21   systems, or would it be limiting access to your clients'

22   personal information?

23         So I would -- I think it's the latter; I think it's,

24   your clients have alleged that their personal information is in

25   these systems.  I don't know which systems it's in, if it's in

1    all of them, part of them, some of their information in some,

2    some in others.  So it seems to me, if I grant any temporary

3    relief, it would need to be limited to the plaintiffs before me

4    and their personal information.  Do you disagree with that?

5          MS. HU:  Your Honor, I don't disagree with that if

6    that is your understanding of what you can craft.  I don't know

7    how workable that is, frankly, for the government, right --

8          THE COURT:  Is that my problem?

9          MS. HU:  Well, Your Honor, I think if the choice is --

10   if it's not -- if the remedy ordered is not workable, then it

11   doesn't actually protect our clients' information, right, so

12   that is why we made the ask that we did, which is to prohibit

13   further access to these systems in the 14-day period that we

14   take to get up to a preliminary injunction, where hopefully,

15   there will have been additional fact development to help fashion

16   an appropriately tailored preliminary injunction.

17          But here, at this stage, I don't know that the

18   government has given any indication that it could abide by an

19   order that says, limit Defendants' -- or sorry, limit

20   DOGE representatives' or DOGE individuals' access so that they

21   cannot access the information belonging to Plaintiffs.

22          THE COURT:  Well, it may be an effective shutdown of

23   their operation, but I need to know what my relief should be,

24   based on what your alleged injury is and the alleged violation.

25          MS. HU:  Certainly, Your Honor.  I think here, an

1    order to the effect of limiting access to our plaintiffs'

2    personally identifiable information is one way to fashion the

3    order to address the harm.

4          I think -- and again, it depends on Your Honor's

5    ultimate decision regarding irreparable harm here, but we also

6    think the risk, the material risk of disclosure of this

7    information, because of the way the systems have been handled

8    and the data within those systems have been handled by

9    DOGE individuals and representatives, requires that that broader

10   relief we are asking for, which is to prevent further access,

11   when they use nongovernment devices to access information,

12   for example.

13         I don't know that there is a way to simply, in the

14   process of accessing, somehow make it secure that only the

15   plaintiffs' information is being accessed in a secure way but

16   not everyone else's information.  I think we're talking here

17   about real security risks that are -- that are broader than

18   this, that encompass, obviously, the risk to specifically

19   Plaintiffs from having their information disclosed but are, in

20   some sense, not divorced and cannot be divorced from the systems

21   themselves in their totality and Defendants' unfettered access

22   to it.

23         THE COURT:  Okay.  If I were to issue a TRO,

24   Rule 65(c) requires me to consider whether a bond should be

25   posted.  You never addressed that issue.  What is your position

```
1    on that?
2              MS. HU:  I think on that, Your Honor, we would defer
3    to what the Court prefers in this instance.  We take no position
4    on that.
5              THE COURT:  All right.
6              Okay.  I'll move on to the government now.
7              MS. HU:  Thank you, Your Honor.
8              THE COURT:  All right.
9              Let me just check on our court reporter.
10             Are you doing okay?  All right.  We might take a break
11   in about 20 minutes or so, just to give you break, okay?
12   All right.
13             MS. HALL:  Thank you, Your Honor.
14             THE COURT:  All right.  Good morning, Ms. Hall.
15             MS. HALL:  Good morning.
16             THE COURT:  How are you?
17             MS. HALL:  I'm good; how are you?
18             THE COURT:  Good.
19             I have a lot of questions for you, Ms. Hall.
20             MS. HALL:  I look forward to answering them.
21             THE COURT:  Yes, very good.  Do you want to start?
22             MS. HALL:  Yes, please, Your Honor.
23             THE COURT:  Okay.
24             MS. HALL:  Your Honor, the government requests that
25   you deny Plaintiffs' motion for a temporary restraining order,
```

1  and as our brief lays out, there are many reasons that

2  Your Honor could deny the order, but I'll start with two of

3  them.  The first is that Plaintiffs lack standing here, and the

4  second, relatedly, is that Plaintiffs have not demonstrated

5  irreparable harm.  Either of those is independently sufficient

6  to deny relief here.

7  So if I may begin with standing, Your Honor.

8  Plaintiffs have not alleged a cognizable Article III

9  injury in fact.  As Your Honor identified in -- earlier in this

10  hearing, TransUnion, I think, is very relevant here and requires

11  that Plaintiffs identify an analogue in the common law, and the

12  analogues that Plaintiffs have identified here simply are

13  insufficient.

14  Under TransUnion, courts are to look at both the type

15  of harm and the factual scenario in which that harm arises.  And

16  here, Plaintiffs identified intrusion upon seclusion or right to

17  privacy as potential analogues, but in this situation, the

18  intrusion upon seclusion privacy right, for example, in my

19  understanding, their statement states that the disclosure at

20  issue must be highly offensive to a reasonable man.  This is an

21  objective standard.

22  THE COURT:  Reasonable person, it says.

23  MS. HALL:  Reasonable person.  I'm sorry, Your Honor.

24  I may have been looking at an older version.

25  But this is a -- this is an objective standard that

1  requires broader disclosure than has occurred here.  This is not

2  something that covers disclosure within the government to

3  authorize government employees in the course of their duties.

4          THE COURT:  Hold on, hold on.  Let's just read it for

5  the record so everyone has it.

6          MS. HALL:  Yes.

7          THE COURT:  I'm reading the Restatement (Second) of

8  Torts -- I feel like I'm back in law school -- Section 652(b),

9  and this is for -- this is intrusion upon seclusion.

10          "One who intentionally intrudes, physically or

11  otherwise, upon the solitude or seclusion of another, or his

12  private affairs or concerns, is subject to liability to the

13  other for invasion of his privacy if the intrusion would be

14  highly offensive to a reasonable person."

15          Why isn't that factually what we have here, assuming

16  the plaintiffs' allegations are true?

17          MS. HALL:  Well, Your Honor, I think that here, the

18  plaintiffs seem to have conceded that the employees involved

19  are, in fact, government employees, and so the only disclosures

20  that have occurred are from one government agency to its own

21  employees.  And so this is not, I think, the sort of example

22  that their statement is referring to, where you have an

23  invasion, a violation of an individual's privacy interest; it's

24  simply individuals whose agency owns a system of data, accessing

25  that system of data in the course of their job responsibilities.

1  This is not, in my view, something that the -- a reasonable

2  person would find highly offensive.

3          THE COURT:  But if they're unauthorized to view the

4  information under the Privacy Act, why wouldn't that be highly

5  offensive to a reasonable person?

6          MS. HALL:  Well, Your Honor, because I think in most

7  of these cases, any unauthorized access, without some actual

8  concrete harm to the plaintiffs, would not be cognizable and

9  would not be something that would ever result in anything at

10  all, and so I think that in this circumstance, you know, most of

11  the cases that are referring to this sort of injury are

12  involving public disclosure or outside disclosure.

13          THE COURT:  But Garey isn't.  That's a 2022

14  Fourth Circuit case, Garey, G-A-R-E-Y, v. James S. Farrin, P.C.,

15  35 F.4th 917.  In Garey, the Court found that the plaintiffs

16  have alleged a legally cognizable privacy injury, and they cited

17  Garey's second amended complaint, and it was -- in that

18  complaint, it was alleged, each plaintiff sustained actual

19  damages by having his or her privacy invaded by Defendants

20  knowingly obtaining his or her name or address from a

21  motor vehicle record for an impermissible purpose, in violation

22  of law.

23          So the legally cognizable privacy injury in Garey was

24  the obtaining of personal information unlawfully.  Why isn't

25  that what the plaintiffs are alleging here?

1           MS. HALL:  Your Honor, as I recall the facts of that

2   case -- and apologies; I don't have it in front of me -- that

3   was not within the -- that was not within a single entity, the

4   disclosure and the accessing of the information.

5           I believe -- if you'll give me just one moment to look

6   at my notes.

7           THE COURT:  So under your theory, when could a

8   plaintiff or a person whose information is held by the

9   government, when could they ever have a cause of action for

10   injunctive relief if there's no dissemination outside the

11   government?

12           MS. HALL:  Well, Your Honor, I think the Privacy Act

13   answers that question and does not provide an action for

14   injunctive relief absent some kind of concrete harm.

15           THE COURT:  Okay.  So we're not -- the cause of action

16   here is not under the Privacy Act; it's under the APA, which

17   does allow for injunctive relief.

18           MS. HALL:  I understand that, Your Honor, and I think

19   even under the APA, perhaps the plaintiffs could have a cause of

20   action for public disclosure or disclosure outside of the

21   government, but again, that is -- that is not the case here.

22           THE COURT:  So you're saying the plaintiffs have no

23   cause of action whatsoever to redress what they believe is

24   DOGE unfettered access to their personal information?

25           MS. HALL:  Your Honor, I -- as I understand it,

1  Plaintiffs are arguing that DOGE representatives, who are,

2  in fact, agency employees, are accessing their data without a

3  need to know that data, and that is their objection.  And it is

4  our position that no, there would not be a cause of action to

5  challenge the need to know.

6        I think that inviting a cause of action and inviting

7  standing in this situation would be inviting courts to

8  superintend the executive's decisions over what its employees

9  need to know in order to perform their job duties, and that's

10 something that, under SUWA, the Norton v. South Utah case out of

11 the Supreme Court --

12       THE COURT:  I read that case.  It's completely off

13 point.  That's a case in which the plaintiffs claim there was

14 agency action when the agency failed to act, but the agency's

15 failure to act was not a violation of a requirement to act.  So

16 I read that case, I have no idea how it supports your position,

17 but I'm happy to hear you try to convince me otherwise.

18       MS. HALL:  Your Honor, I think that case is relevant

19 because it discusses the principle that the APA is not -- was

20 not envisioned in order to insert judicial review of day-to-day

21 government operations, including --

22       THE COURT:  So what are the --

23       MS. HALL:  -- personnel decisions.

24       THE COURT:  I'm sorry.  The court reporter hates it

25 when I interrupt, and I apologize.

JA144

1          But under the plaintiffs' situation, if their

2    allegations are true -- because that's what I have to assume

3    right now, given the stage we are at -- it's the government's

4    position that they have no legal resource recourse; is that

5    correct?

6          MS. HALL:  If the plaintiffs' allegations regarding --

7    I think I'd like to limit their allegations to what I believe

8    they're representing in court today, which is that these

9    individuals are, in fact, employees.  I think the key is outside

10   disclosure versus within government or within the agency

11   disclosure, and I think that only a disclosure that was leaving

12   the agency would be sufficiently analogous to the common law

13   causes of action.  And so I think that's the key, and so the --

14   I just want be very precise about the allegations that you're

15   referring to.

16          THE COURT:  All right; let me be more precise.  That's

17   a good point, because we should be very precise.

18          Assume the following allegations are true.

19   Plaintiffs' personal information is maintained in databases

20   within the three defendant agencies.  Unauthorized federal

21   employees have unfettered access to that information.  That

22   information has not yet been disseminated outside of the federal

23   government.  Assume all of that's true.  Do Plaintiffs have any

24   cause of action against the government for allowing unauthorized

25   access by DOGE people to their information?

1          MS. HALL:  Your Honor, I think that depends on what

2     Plaintiffs mean by DOGE people or DOGE representatives, and

3     that's something that I think is not precisely defined in their

4     order or in their briefing, so I think the answer to your

5     question is going to depend in part on what with that means.

6          THE COURT:  All right.  Well, let's assume we're

7     talking about Mr. Hogan and Mr. Krause.  They both, according to

8     your declarations, appear to be employees of their respective

9     agencies.  Is that true?

10         MS. HALL:  That's true, Your Honor.

11         THE COURT:  Okay.  Let's assume those are the

12    DOGE people I'm talking about.

13         MS. HALL:  Your Honor, then -- yes, the answer to your

14    question is yes, the government's position is that there is no

15    cause of action under the APA to challenge the agency's decision

16    to offer its own personnel access to data that the agency has

17    determined are necessary for that employee to perform his

18    functions.

19         THE COURT:  Then what's the point of injunctive relief

20    under the APA for a Privacy Act violation?

21         MS. HALL:  Well, Your Honor, I'm not sure that there

22    should be injunctive relief available under the APA for a

23    Privacy Act violation, for the reasons we identified in our

24    opposition.

25         THE COURT:  Well, I know you're not sure, but the

1    Fourth Circuit is sure.

2         MS. HALL:  Well, Your Honor, I think in Doe v. Chao,

3    the Fourth Circuit, that footnote, Footnote 17, that Plaintiffs

4    refer to in their reply -- I have it in front of me, if you'll

5    give me just one --

6         THE COURT:  Hold on.  I do, too; give me a minute.

7         All right.  Footnote 17, Doe v. Chao, 435 F.3d 492

8    (4th Cir. 2006).

9         MS. HALL:  Your Honor, I would point the Court to the

10   idea in this footnote that again, we're talking about a broad

11   disclosure, and this is not within the government disclosure, as

12   I understand it.  And this is a -- again, this is also a case

13   involving attorneys' fees in a damages action.  So this is not a

14   court holding of this case, this is not the Fourth Circuit, you

15   know, using this footnote to decide the case, as I understand

16   it.

17        THE COURT:  Are there any other cases, perhaps in the

18   D.C. Circuit, that sees a lot of these challenges, that have

19   approved or not batted an eye at an APA action for injunctive

20   relief for a Privacy Act violation?  Aren't there other cases

21   that allow this?

22        MS. HALL:  Not to my recollection, Your Honor.

23        THE COURT:  So this --

24        MS. HALL:  We identified in our briefing a few D.C.

25   Circuit cases that noted the unavailability of injunctive relief

 1  in this circumstance.

 2        THE COURT:  I think we can agree, there's no

 3  injunctive relief if you are bringing a Privacy Act -- a cause

 4  of action under the Privacy Act, correct?

 5        MS. HALL:  Correct.

 6        THE COURT:  But this is an action under the

 7  Administrative Procedures Act for injunctive relief.  And as I

 8  read Footnote 17 of this Fourth Circuit case, it authorizes

 9  injunctive relief for a government's violation of the

10  Privacy Act as being appropriate and authorized by the APA.  I

11  don't know how else to read that footnote.

12        MS. HALL:  Your Honor, I think that the government's

13  main point on this is that the facts in Doe v. Chao were quite

14  different from these and involve a broad disclosure.

15        THE COURT:  Okay, I understand.

16        All right.  Anything else on standing?

17        MS. HALL:  Your Honor, I would also just identify that

18  the future harms that Plaintiffs identified, the risk of

19  identity theft, the risk of records or systems of records being

20  fed into outside systems and causing Plaintiffs, you know,

21  innumerable harms that they identify in their briefing, is

22  purely speculative and is not actual or imminent, as required

23  under Supreme Court standing doctrine.

24        THE COURT:  What do I do about all of the news

25  articles that they have attached to their reply and also cited

```
 1   in their complaint about possible feeding of this information
 2   into AI, accessing information through unsecure means?  What do
 3   I do with those news reports?
 4            MS. HALL:  Well, Your Honor, I think it's important
 5   that newspaper articles shouldn't be admitted for the truth of
 6   their contents, and most of these newspaper articles, notably, I
 7   think, are relying on anonymous sources.  So I think, while the
 8   Court may, you know, look at these articles for the fact that
 9   they exist and for, you know, perhaps why Plaintiffs have filed
10   this suit, I don't think that they are admissible as
11   representing the truth of what's going on.
12            THE COURT:  Okay, that's fair; they are in an
13   information vacuum, they don't have inside information.  You do,
14   you're the government.  Has the government put any of the
15   plaintiffs or any personal information, have any of these
16   DOGE people put any of the personal information into an
17   AI system?
18            MS. HALL:  It is my understanding that to the extent
19   any automation is occurring, it's all occurring consistent with
20   all applicable law.
21            THE COURT:  So the answer might be maybe, but if it
22   is, it's subject to applicable law?
23            MS. HALL:  That's correct, Your Honor.
24            THE COURT:  Okay.
25            Okay.  Anything else on standing?
```

1      MS. HALL:  No, Your Honor, nothing more on standing.

2      THE COURT:  Okay, okay.

3      All right.  I'd like to get into the exceptions, but

4  before that, do you have anything to add on your position in

5  your papers that a final agency action has not occurred?

6      MS. HALL:  Your Honor, I think the other component of

7  this is that the access involved doesn't alter the legal regime

8  to which Plaintiffs are subject.  You know, a month ago, the

9  plaintiffs had their -- their records, their PII, in various

10  government systems that were accessible by -- I'm using

11  hypothetical numbers, but say, 300 Education Department

12  employees, and today, those systems may be subject -- may be

13  accessible by 336 agency employees.  And I don't think that that

14  is something that's really altered the legal rights of those --

15  of those plaintiffs, Your Honor.

16      THE COURT:  Well, what if those extra 36 that have

17  been granted access since Inauguration Day, what if those 36 are

18  not authorized to have access?  Why doesn't that -- why isn't

19  that a decision from which legal consequences could flow or

20  their rights and obligations could be determined?

21      MS. HALL:  Well, Your Honor, just one quick factual

22  point.  It's six employees, not 36 employees at the Department

23  of Education.

24      THE COURT:  You're correct; that's what Mr. Ramada's

25  declaration said.  I apologize.  Let's -- thank you for that.

1              MS. HALL:  Thank you, Your Honor.

2              As to the substance of your question, I don't think

3      that that creates any legal consequences or legal rights,

4      because those employees, to the extent that they are

5      unauthorized, are still subject to all of the confidentiality

6      requirements and all of the protections that Plaintiffs enjoy

7      for their data within the government; they are not permitted to

8      disclose anything outside of the agency without proper

9      authorization, they are not permitted by law to do anything that

10     the other employees are also not permitted to do.

11             THE COURT:  All right.  So with respect to final

12     agency action, what I'm hearing from you is that the second

13     Bennett prong hasn't been met, but the first Bennett prong,

14     which is, the action marks the consummation of the agency's

15     decision process and is not of a merely tentative or

16     interlocutory nature, that prong has been satisfied; is that

17     correct?

18             MS. HALL:  Well, Your Honor, I disagree with that, and

19     I think that's because these decisions regarding data access can

20     be fluid, and they frequently change based on the needs of these

21     employees, and so just because one employee has access to a

22     system of data today --

23             THE COURT:  Speak a little more slowly, please.

24             MS. HALL:  Thank you, Your Honor.

25             THE COURT:  Thank you.

JA151

1      MS. HALL:  Just because an employee has access to a

2  system of data today does not mean that that employee will be

3  able to access that data in an unfettered way, as Plaintiffs

4  allege, just as a result of the fact that the agency has

5  permitted cabined access to a particular system in any

6  particular situation.

7      And so I think that according to Bennett's first

8  prong, this really is more of an informal decision; it's not the

9  consummation of agency decision-making on, you know -- as in the

10  FOIA cases, for example, the FOIA disclosure decisions are

11  pursuant to an entire statutory scheme that is designed to

12  address public disclosure of documents held by the government.

13      THE COURT:  Is that required in order to have a final

14  agency action?

15      MS. HALL:  A statutory scheme, Your Honor?  No, I

16  don't think that there is required a statutory scheme, I don't

17  think that's been recognized in the case law, but I think that

18  the line between formality and informality is one that suggests

19  that the cases that the plaintiffs are citing regarding FOIA

20  disclosures are not cases that can be supportive here, because

21  those cases do involve this formal statutory scheme where the

22  task at hand at the agency is ultimately to make a disclosure

23  decision.

24      Here, the task at hand at the agency is to enable

25  their personnel to do their jobs, and I think that renders these

1    decisions far more interlocutory, and tentative, and subject to
2    revision than in the FOIA context, Your Honor.
3              THE COURT:  Is there any plan on behalf of the
4    agencies to limit the access that the DOGE teams at their
5    respective agencies have to personal information?
6              MS. HALL:  Your Honor, I think, as the declarations
7    lay out, the access that provided is being continually assessed
8    to make sure that these plain- -- or that the employees at the
9    agencies do, in fact, need access, and so if an employee moves
10   on to a different project that no longer requires access to
11   these record systems, my understanding is that that access will
12   be revoked.
13             THE COURT:  Okay.  I'm ready to move on from final
14   agency action if you are.
15             MS. HALL:  Yes, Your Honor.
16             THE COURT:  Okay, great.
17             Let's talk about the exceptions.  Let's first start
18   with need to know.
19             MS. HALL:  Yes, Your Honor.
20             THE COURT:  So I don't understand where I should look
21   to determine what the duties are of, for instance,
22   Thomas Krause, Gregory Hogan -- actually, Mr. Hogan identifies
23   his duties in his declaration, so I take that back.
24             Thomas Krause, or Adam Ramada, or the five other
25   people working with Mr. Ramada at the Department of Education,

1   where do I find their duties?

2   　　　　MS. HALL:  Your Honor, I think their duties are -- are

3   found in several sources, one of which is the President's

4   Executive Orders regarding the DOGE service, and I think that

5   another is that these -- these individuals' declarations, which

6   identify the tasks for which they were hired at, at these

7   agencies.

8   　　　　THE COURT:  Okay.  So the source of their duties are

9   the Executive Orders regarding the DOGE service and their

10  declarations.

11  　　　　Okay.  Let's talk about the Executive Orders.  I have

12  two of them in front of me, but I'd like to make sure I'm aware

13  of the operative Executive Order, so I'm relying on you to tell

14  me.

15  　　　　MS. HALL:  Okay, Your Honor.

16  　　　　THE COURT:  So the first one I have in my hand was

17  signed on January 20th, 2025, and it's called, Establishing and

18  Implementing the President's Department of Government

19  Efficiency.  This is Executive Order 14158.  So that's one them,

20  correct?

21  　　　　MS. HALL:  Yes, Your Honor.

22  　　　　THE COURT:  Okay.

23  　　　　And then I have another one, issued on February 11th,

24  2025, called Implementing the President's Department of

25  Government Efficiency Workforce Optimization Initiative,

```
1    Executive Order 14210.  That's second, right?
2              MS. HALL:  Yes, Your Honor.
3              THE COURT:  Are there any more?
4              MS. HALL:  Not to my knowledge, Your Honor.
5              THE COURT:  Okay, okay.
6              All right.  So I look, according to you, to the
7    Executive Orders and to the declarations of the DOGE people to
8    determine what their duties are, right?
9              MS. HALL:  Yes, Your Honor.  And I think that the --
10   the duties of the -- I don't view the declarations as needing to
11   be exhaustive as to these individuals' duties; I think that the
12   broad purposes identified in the Executive Order can be and have
13   been implemented in more specific ways for particular employees
14   at the agencies.
15             And that may be documented in -- that may be
16   documented for some of them at, for example, in the
17   Krause declaration, in the declarations, but I don't think that
18   a person's -- a federal employee's full portfolio and job duties
19   are always fully reflected in, for example, a document laying
20   that out.  You know, when I was hired into the Department of
21   Justice, I don't think that there was a document that layed out
22   precisely every task that I would be performing, and I don't --
23             THE COURT:  You were hired as a lawyer for the
24   Department of Justice, correct?
25             MS. HALL:  That's correct, Your Honor.
```

```
 1              THE COURT:  I think people could -- we don't need a

 2   document to lay out what lawyers do.  This is so new, we

 3   don't -- I don't know what the DOGE people's purposes or tasks

 4   are, so I'm trying to figure that out.  The only information I

 5   have are these Executive Orders and the declarations.

 6              So let's turn to the Executive Orders.  Which part of

 7   the Executive Order do I look to, to help me understand what the

 8   duties of the DOGE team are?

 9              MS. HALL:  So your Honor, I would point you first to

10   the January 20th Executive Order.

11              THE COURT:  Okay.

12              MS. HALL:  And give me one moment to find the

13   language.

14              So I would first point you to Section 1, which states

15   that the Department of Government Efficiency will implement the

16   President's DOGE agenda by modernizing federal technology and

17   software to maximize governmental efficiency and productivity.

18              I think that "maximizing governmental efficiency and

19   productivity" is some of the key language here, and that's the

20   ambit that these employees are being hired to implement at their

21   particular agencies.

22              THE COURT:  That couldn't be any more vague or broad,

23   "to maximize governmental efficiency and productivity."

24              MS. HALL:  Well, Your Honor, I think that it is a

25   broad goal, and it's a sweeping goal, and it's one that the
```

1    President was elected in order to implement.  And I think that

2    the broadness of the goal highlights the broadness of the duties

3    that these individuals are tasked with, but it does not suggest

4    that those cannot possibly be their tasks or that cannot

5    possibly their duties.

6         I think that the President is aiming to implement

7    pretty sweeping changes in these agencies to ensure that waste,

8    fraud, and abuse are being examined closely and reduced as much

9    as possible.

10        THE COURT:  I'm not questioning the President's agenda

11   or the creation of DOGE; I'm a District Court judge trying to

12   find out what the duties are of these individuals who have

13   access to the personal information of the plaintiffs.  I'm

14   looking to the only documents I have.  The document you pointed

15   me to and the language you pointed me to is very broad.  That

16   does not tell me what the duties are of these people.  So let's

17   focus on their duties and not the President's agenda, okay?

18        MS. HALL:  Yes, Your Honor.

19        THE COURT:  All right.  What else in the order tells

20   me what the duties of the DOGE people are?

21        THE COURT REPORTER:  Counsel, could you please slow

22   down?

23        MS. HALL:  Yes, thank you.

24        Your Honor, at the risk of being a little bit

25   repetitive, Section 3, in the last sentence of Section 3 --

```
 1              THE COURT:  Okay.
 2              MS. HALL:  -- the DOGE teams are responsible for
 3     advising agency heads on implementing the President's
 4     DOGE agenda.
 5              THE COURT:  Okay, hold on.  You're in Section 3.
 6     There's (a), (b), and (c).  Which one are you in?
 7              MS. HALL:  I'm sorry, Section (c), Your Honor.
 8              THE COURT:  Okay.
 9              "Agency heads shall ensure that the DOGE team leads
10     coordinate their work with USDS and advise their respective
11     agency heads on implementing the President's DOGE agenda."
12              Okay.
13              Okay.
14              MS. HALL:  So I think the Executive Order -- you know,
15     that's why I said I -- I risk being a little bit repetitive, but
16     the specific task to the members of these teams is to advise
17     agency heads on implementing that agenda, which I recognize is a
18     broad one.
19              THE COURT:  Okay, all right.
20              All right.  Let's turn to Executive Order 2.  Is there
21     anything in there that I should look to, to determine what are
22     the DOGE people's duties?
23              MS. HALL:  Let me just find it in my binder.
24     Thank you, Your Honor.
25              THE COURT:  Take your time.
```

JA158

```
 1              MS. HALL:  Your Honor, I don't seem to have a copy
 2   here.  Do you mind if I check with cocounsel?
 3              THE COURT:  Of course.
 4              MS. HALL:  Thank you.
 5              THE COURT:  If you don't have a copy, I'm sure we can
 6   get you a copy.
 7              MS. HALL:  That would be great, Your Honor.
 8              THE COURT:  All right.
 9              MS. HALL:  I'm sorry, I don't have that in front of
10   me.
11              THE COURT:  Yeah.
12              Why don't we -- why don't we do this.  Why don't we
13   take about a 15-minute break, comfort break, give our
14   court reporter a rest.  We can get you a copy of the
15   Executive Order.
16              And no surprise, my agenda, when we get back, is to
17   continue our discussion of the need to know exception and then
18   the routine use exception.
19              All right.
20              MS. HALL:  Thank you, Your Honor.  And apologies,
21   again, for the --
22              THE COURT:  No, we need a break anyway, so we'll get
23   you a copy of that.
24              We'll be back in about 15 minutes.
25              MS. HALL:  Thank you, Your Honor.
```

```
 1              THE COURTROOM DEPUTY:  All rise.  This Honorable Court
 2    now stands in recess.
 3         (Recess taken from 11:40 a.m. to 12:00 p.m.)
 4              THE COURTROOM DEPUTY:  All rise.  This Honorable Court
 5    new resumes in session.
 6              THE COURT:  Okay.  Please be seated.
 7              All right.  Ms. Hall.
 8              MS. HALL:  May I return to the podium?
 9              THE COURT:  Please, yes.
10              MS. HALL:  Thank you, Your Honor.
11              THE COURT:  Okay.  Hopefully, you have the second
12    Executive Order in front of you, and just if you could direct me
13    to the relevant parts.
14              MS. HALL:  That's right, thank you.
15              And thank you to your clerks for providing that.
16              So I'll start with in the second Executive Order of
17    February 11, 2025.  Again, I'll point you first to Section 1,
18    which identifies eliminating waste, bloat, and insularity as one
19    of the goals of the DOGE program.
20              And I -- I'm sorry.  Sorry, your Honor.
21              And then, I will also point you to Section 3, which
22    identifies, in subsection (a) -- I'm sorry, subsection (b),
23    Your Honor; my apologies.
24              So each agency head shall develop a data-driven plan,
25    in consultation with its DOGE team lead, to ensure new career
```

JA160

1    appointment hires are in highest need areas.

2              And subsection 1, there, says that the hiring

3    decisions shall be made in consultation with the agency's DOGE

4    team lead.  And subsection 2 and 3 also identify related

5    requirements, and I can read those for Your Honor if you'd like,

6    but I'll just point you to them.

7              THE COURT:  I have them.

8              All right.

9              MS. HALL:  Then, I would also point you to

10   subsection (d), which identifies OPM as required to initiate a

11   rule-making proposing to revise 5 C.F.R., Section 731.202(b) to

12   include additional suitability criteria.

13             And subsection (e), which also requires agency heads

14   to submit a report that identifies any statutes that establish

15   the agency or subcomponents as statutorily required --

16             THE COURT:  Hold on; you have to read more slowly than

17   that.

18             MS. HALL:  Yes, Your Honor.

19             THE COURT:  Go ahead.

20             MS. HALL:  Subsection (e) says, Developing Agency

21   Reorganization Plans, and in relevant part, it requires agency

22   heads to submit to the director of the Office of Management and

23   Budget a report that identifies statutes that establish

24   statutorily required entities.

25             THE COURT:  Okay.  What about section (c), called

1  Reductions in Force.  Is that another duty of a DOGE person?

2          MS. HALL:  Your Honor, as I understand it -- again, it

3  depends on what we're defining as a DOGE person, and I think

4  that that's, you know, a little bit of a flexible term.  But

5  you know, the -- section (c) obviously tasks agency heads with

6  promptly undertaking preparations to initiate large-scale

7  reductions in force consistent with applicable law.

8          And you know, for example, at OPM, the agency head

9  is -- at all of these agencies, actually, not -- I don't need to

10  use an example.  The agency heads are being advised by,

11  consistent with the first Executive Order, their DOGE teams.

12  And so I think that when you read these together, certainly, you

13  do have DOGE teams who, according to the -- the tasks of these

14  Executive Orders, are going to be advising the agency heads as

15  the agency heads prepare to execute subsection (c).

16          THE COURT:  Okay.

17          So I look to those Executive Orders, and I look to the

18  declarations for the duties, correct?

19          MS. HALL:  Yes, Your Honor, and I can walk through the

20  relevant parts of the declarations.

21          THE COURT:  All right, let's do that.

22          MS. HALL:  Give me one moment to pull those up.

23          THE COURT:  Okay.  You can just cite the paragraphs.

24  I'm looking at the Krause declaration, ECF 27-1.

25          MS. HALL:  Great.  I will begin there, Your Honor.

1          THE COURT:  All right.

2          And if there are certain portions within the

3  paragraph, let me know.

4          MS. HALL:  Okay.

5          So your Honor, in the Krause declaration, ECF 27-1,

6  in -- at the end of -- at the beginning and the end of

7  paragraph 1, Tom Krause identifies himself as employed as the

8  senior adviser for technology and modernization, and he is also

9  performing the duties of the fiscal assistant secretary.  And

10  then, in subsequent paragraph 2, he explains that his role at

11  Treasury was created to help effectuate the mission of the

12  Department of Government Efficiency, seeks to maximize

13  governmental efficiency and productivity.

14          THE COURT:  He's doing all this while he's still the

15  chief executive officer of Cloud Software Group?

16          MS. HALL:  That's my understanding, Your Honor.

17          THE COURT:  All right.

18          MS. HALL:  And in paragraph -- at the end of

19  paragraph 2, he particularly identifies, In this role, I am

20  responsible, among other duties, for reducing and eliminating

21  improper and fraudulent payments, waste, fraud, and abuse, and

22  improving the accuracy of financial reporting.  To that end, I

23  am focused on improving the controls processes and systems that

24  facilitate payments and enable consolidated financial reporting.

25          He also serves as the DOGE team lead for the Treasury

 1   Department.

 2          The -- paragraph 3 of the same declaration discusses

 3   duties of Marko Elez, who is no longer employed at the

 4   Department, so I'm not sure if Your Honor wants me to walk

 5   through that.

 6          Thank you.

 7          In paragraph 4, Tom Krause also identifies that his

 8   role on the Treasury DOGE team is to find ways to use technology

 9   to make the Treasury Department more effective, more efficient,

10   and more responsive to the policy goals of this administration.

11          And paragraph 5, he identifies his role performing the

12   duties of Fiscal Assistant Secretary, which means that he

13   oversees the activities of the Bureau of the Fiscal Service,

14   BFS, which manages the government's accounting, central payment

15   systems, and public debt, among other tasks, and which serves as

16   the central payment clearinghouse for all payments to and from

17   federal agencies.

18          In paragraph 7, 8, 9, Mr. Krause identifies particular

19   GAO reports.

20          THE COURT:  We just need -- I just need his duties,

21   okay?

22          MS. HALL:  So ... Your Honor, in paragraph 10 --

23          THE COURT:  Okay.

24          MS. HALL:  -- Mr. Krause specifically identifies BFS,

25   the bureau which he leads as part of his duties here, as

JA164

```
 1    well positioned to help agencies in the federal government

 2    holistically understand and take stock of the problems that GAO

 3    has reported on -- and those are the problems that I identified

 4    in paragraphs 7 through 9 -- and assist agencies in the

 5    government-wide mission to stop fraudulent and improper

 6    payments, including by enhancing our ability to help agencies

 7    identify payments that may potentially be directed to fraudulent

 8    accounts, payments to individuals or entities which may be

 9    barred from receiving government payments --

10              THE COURT:  You're just speaking way too fast.

11              MS. HALL:  I'm sorry, Your Honor.

12              THE COURT:  When you're reading, you have to slow

13    down.

14              MS. HALL:  Yes, Your Honor.

15              To help agencies identify payments that may be -- may

16    potentially be directed to fraudulent accounts, payments to

17    individuals or entities which may be barred from receiving

18    government payments, payments that are potentially improperly

19    sent to deceased individuals, may have a mismatch between payee

20    and account data, or have other indicators of problems.

21              The following paragraph, paragraph 11, specifically

22    states that Mr. Krause is at Treasury to understand how BFS'

23    end-to-end payment systems and financial report tools work,

24    recommend ways to update and modernize those systems, to better

25    identify potentially improper and fraudulent payments, and find
```

```
1   ways for BFS to assist federal agencies in responding to
2   statutes, regulations, and Executive Orders that affect the
3   government's payment authorities and spending priorities.
4           In paragraph 12, Mr. Krause also identifies early work
5   that he performed as soon as he arrived at the Treasury
6   Department.  That work included initiating --
7           THE COURT:  You don't need to read the whole thing.  I
8   want to know, I'm marking in my notes --
9           MS. HALL:  Sure.
10          THE COURT:  -- so I've got it, okay?
11          All right, keep going.
12          MS. HALL:  Paragraph 13 also identifies some of
13  Mr. Krause's responsibilities, so does paragraph 14,
14  paragraph 15, and paragraph 17.
15          THE COURT:  Mm-hmm.
16          MS. HALL:  Paragraph 19.
17          THE COURT:  So does 17 --
18          MS. HALL:  Yes, Your Honor.
19          THE COURT:  This says, "as part of the Treasury DOGE
20  team's efforts to assist payer agencies in identifying payments
21  that may have been improper under the President's
22  Executive Orders."
23          What payments were improper under an Executive Order,
24  and what Executive Order are they talking about?
25          MS. HALL:  Your Honor, I believe, in that sentence,
```

JA166

```
1    they are referring to Executive Orders.
2            THE COURT:  All right.
3            MS. HALL:  I don't have the particular names or
4    numbers, but from the president's first week in office,
5    identifying spending priorities.
6            THE COURT:  Oh, and here, he identifies the
7    Executive Order from January 20th, Reevaluating and Realigning
8    United States Foreign Aid.  Under that order, the President
9    required that agencies pause all foreign development assistance
10   for assessment of programmatic efficiencies, inconsistency with
11   the United States foreign policy.
12           So Mr. -- part of Mr. Krause's duties at Treasury is
13   to help pause foreign aid?
14           MS. HALL:  Your Honor, yes, it's to help enforce
15   compliance with the President's Executive Orders, including the
16   Reevaluating and Realigning United States Foreign Aid order.
17           THE COURT:  Okay, okay.
18           All right.
19           MS. HALL:  Paragraph 19 identifies Mr. Krause's
20   engagement in the preedit process.
21           THE COURT:  Mm-hmm.
22           MS. HALL:  And with that, I can move on to the next
23   declaration, if that's okay with Your Honor?
24           THE COURT:  All right.  Mr. Ramada has two of them.
25   Just --
```

```
 1              MS. HALL:  I think Mr. Wenzler's declaration at
 2    Treasury is also relevant here, Your Honor, but I'm happy to
 3    move to Education if you would prefer.
 4              THE COURT:  Okay.  All right, talk to me about
 5    Mr. Wenzler's duties as a DOGE person.
 6              MS. HALL:  Mr. Wenzler is simply referring to
 7    Mr. Krause's duties and describing those in his declaration.
 8    Currently, Mr. Krause is the only DOGE team member at Treasury.
 9              THE COURT:  All right, okay.  I can review
10    Mr. Wenzler's for that.
11              All right.  So for Mr. Ramada, it looks like his
12    duties are in paragraph 4 of his declaration.
13              MS. HALL:  Just one moment while I pull it up,
14    Your Honor.
15              Yes.  Mr. Ramada, together with his DOGE team, fellow
16    DOGE team members, are detailed -- are working at the Department
17    of Education to, among other duties, assist the Department of
18    Education with auditing contract, grant, and related programs
19    for waste, fraud, and abuse, including an audit of the
20    Department of Education's federal student loan portfolio, to
21    ensure it is free from, among other things, fraud, duplication,
22    and ineligible loan recipients.  He also is tasked with helping
23    senior department leadership obtain access to accurate data and
24    data analytics to inform their policy --
25              (Reporter requesting clarification.)
```

1   MS. HALL:  Obtain access to accurate data and data

2   analytics to inform their policy decisions at the Department.

3   THE COURT:  Okay.  And then, in the supplemental

4   Ramada declaration.

5   MS. HALL:  The supplemental declaration does not

6   provide any more detail on the Education DOGE team's duties.

7   THE COURT:  Well, I thought that 5 is a summary of

8   what we just went over, and then it looks like 8 says, "The six

9   of us have primarily worked to identify contracts and grants

10   that are wasteful, abusive, or inconsistent with leadership's

11   policy priorities."

12   MS. HALL:  That's right, Your Honor.  I'm sorry; I

13   missed that paragraph.

14   THE COURT:  Okay.

15   Okay.  And then we get to Mr. Hogan.  Or -- at OPM.

16   MS. HALL:  Yes, Your Honor.

17   THE COURT:  So I see his responsibilities he's laid

18   out in paragraph 3, and it says that they are pursuant to

19   statute.  He also refers to workforce reform in paragraphs 8 and

20   9.

21   MS. HALL:  That's right, Your Honor.

22   And in paragraph 10, he also identifies that many

23   OPM employees who are involved in these efforts -- who I believe

24   might be considered DOGE representatives, in a capacious

25   understanding of that term, called policymaking, legal, or other

1    similar positions.  So those individuals have disparate duties

2    that are -- also fall under the umbrella of the President's

3    Executive Orders and that exist pursuant to those individuals'

4    appointments.

5                THE COURT:  Okay.

6                So we spent a lot of time -- I think it was important

7    time -- talking about the DOGE team duties, so thank you for

8    that.

9                So now that we've identified the duties, why do they

10   need to know everything?

11               MS. HALL:  Well, Your Honor, I think the employees who

12   are involved in this and who have -- who the plaintiffs complain

13   of their access need to be able to access the systems of records

14   involved in order to make assessments of how to better modernize

15   and evaluate the systems and programs that are involved.

16               THE COURT:  Okay.  So they need access to every piece

17   of data in every system of record in all three agencies; yes or

18   no?

19               MS. HALL:  I don't think I can make a blanket

20   statement as to every single individual.  As the declarations

21   point out, different employees have different levels of access

22   to different databases, and that access is tailored to their

23   particular job responsibilities.

24               THE COURT:  Okay.  Then let's focus on -- with my

25   mind, to three big people, Mr. Krause, Mr. Ramada, and

1  Mr. Hogan.

2          MS. HALL:  Okay.

3          THE COURT:  From the three respective agencies.  In

4  order to perform their duties, is it your position that they

5  need access to every piece of personally identifying information

6  in every system of record in their respective agency?

7          MS. HALL:  My position is that -- so I'll start with

8  Mr. Krause.  Mr. Krause, at Treasury, has what's called

9  over-the-shoulder access to particular databases as outlined in

10  his declaration, and I believe Mr. Gioeli's declaration as well,

11  and it is the government's position that he does need access to

12  all of the information in those systems in order to perform his

13  duties and ensure that all of his duties are able to be

14  performed properly.

15          THE COURT:  Okay.  Why?

16          MS. HALL:  Your Honor, because Mr. Krause is tasked

17  with broad, sweeping reforms and reviews in a way that requires

18  a broad, sweeping review of these systems in order to assess

19  what kinds of issues and modernizations may be available and

20  appropriate, and I think without access to those pieces of

21  information and specifically those systems of records, which is

22  the relevant level of analysis under the Privacy Act, he

23  can't make those assessments of how to improve efficiency, how

24  to ensure that there are not fraudulent payments going out the

25  door, how to make sure that government resources are not wasted

```
 1   on inefficient systems or improper payments.
 2            THE COURT:  Do the systems of records that he has
 3   access to include people's Social Security numbers?
 4            MS. HALL:  That is my understanding, yes.
 5            THE COURT:  Does he need access to anyone's
 6   Social Security number to perform his duties?
 7            MS. HALL:  That is my understanding, yes, is that he
 8   needs access to the systems of records that contain
 9   Social Security numbers, in part because matching those
10   Social Security numbers can help to eliminate fraud.
11            THE COURT:  So he's going line by line and looking at
12   Social Security numbers and matching or finding un-matching
13   Social Security numbers?
14            MS. HALL:  Your Honor, I'm not sure precisely how he's
15   performing these tasks, so I can't make a representation on that
16   point.
17            THE COURT:  Do these systems of records, are they able
18   to redact things like Social Security numbers, dates of birth,
19   bank account numbers?
20            MS. HALL:  I don't know, Your Honor.
21            THE COURT:  You don't know?
22            MS. HALL:  I don't know, Your Honor.
23            THE COURT:  Plaintiffs' counsel told me that she
24   thought it was possible, but you don't know.
25            MS. HALL:  I don't -- I can't make a representation on
```

1     that point at this time.

2            THE COURT:  Okay.

3            Let's switch to Mr. Ramada.

4            MS. HALL:  Yes, Your Honor.

5            THE COURT:  Does he need full access to all personally

6     identifying information in the systems of record at the

7     Department of Education to perform his duties?

8            MS. HALL:  Yes, Your Honor, it is my understanding

9     that he does need access to the system of records that he has

10    been granted access to in order to perform the duties that we

11    identified from his declaration.

12           THE COURT:  Why?

13           MS. HALL:  Your Honor, I think that's for somewhat

14    similar reasons.  He's trying to identify waste, he's trying to

15    identify fraud, and without access to these systems and the

16    information contained within those systems, he is not able to

17    properly make the assessments that he's tasked with doing under

18    the Executive Orders and the direction of his agency head.

19           THE COURT:  That's a pretty vague answer.  I

20    understand; you're in a tough spot.

21           Does Mr. Ramada need access to, for instance,

22    Social Security number, dates of birth, income?

23           MS. HALL:  Your Honor, my understanding is that he

24    does, and that's in part because part of his portfolio is

25    assessing the student loan system to ensure that student loans

1   are being handled in a way that is efficient and to advise on

2   policymaking regarding student loans.  And so information like

3   the income of people and how that may be related to their

4   ability to repay student loans could be relevant to that

5   policymaking advice.

6           THE COURT:  So when I've looked at the cases that

7   analyze the need to know exception, the information that the

8   government has provided to the Court is much more specific than

9   what you've offered me.  You know, we're talking at a very high

10  generalized level.  I mean, like -- Bigelow is very specific

11  about what was disclosed, whether or not there was a need to

12  know the person's personnel file, and perhaps the reason these

13  cases are so specific is because there's -- they usually involve

14  either the disclosure of a telephone number, a Social Security

15  number, perhaps one document, perhaps a whole file.

16          None of them involve this massive access to personally

17  identifying information that we have here.  So what am I

18  supposed to do about that?  I've got the reasons you're offering

19  me, which are very vague and not that specific, and I've got

20  cases that require me to get into the specifics.  There's a gap.

21          MS. HALL:  Well, Your Honor, I think that this case is

22  different from those cases for a few reasons.  One is that, as

23  you identified, those cases involve a particular plaintiff's

24  particular piece of information and allegations that the -- at

25  least in some of those cases that I have seen, that the access

1  to the information was for personal purposes rather than

2  professional purposes.

3         And I don't think we really have an allegation like

4  that here.  I think the allegation is that the reason -- the

5  purposes for which the relevant employees are accessing the data

6  is improper because the plaintiffs have identified it as

7  improper for a variety of policy reasons but not that the -- the

8  purposes that they are pursuing are personal to them or,

9  you know, something that's outside the ambit of their government

10 responsibilities.

11        THE COURT:  I'm a little confused; I thought in

12 Bigelow, there was a member of the military whose supervisor --

13 is that the right case?  Yeah, whose supervisor suspected him of

14 perhaps espionage or being a traitor because he seemed to

15 disappear when he was traveling to foreign countries.  So

16 because of the supervisor's suspicion, he asked for the person's

17 personnel file, and the D.C. Circuit said that was okay.

18        MS. HALL:  Yes, Your Honor, and the distinction that I

19 was referring to was referencing other cases than Bigelow.  That

20 one, I think, is a -- I can address that as well.

21        THE COURT:  Okay.

22        MS. HALL:  And again, I think that that case involves

23 much more particular reasons, because again, it is a very

24 particular factual circumstance involving one particular

25 individual's --

```
 1              THE COURT:  Well, exactly, but we don't have one
 2    particular record, or one file; we have -- I don't even know how
 3    many.  The plaintiffs represent about two million people, so
 4    presumably, we have 2 million files.  What do I do about that?
 5              MS. HALL:  Well, Your Honor, I think that speaks to
 6    the breadth of this case and the fact that the plaintiffs are
 7    bringing a pretty novel challenge to government employees'
 8    access to systems of records, not access to particular records,
 9    that are identified because of the plaintiff.  And there really
10    isn't any particularized injury to Plaintiffs for the reasons
11    that we've discussed previously.
12              THE COURT:  But this is -- this is of the government's
13    making; it's the government who authorized this global access to
14    the DOGE team.  So they're just responding to an action the
15    government did.
16              MS. HALL:  Yes, Your Honor, the government has given
17    individual employees of the government access to particular
18    systems in accordance with their job duties.  And I -- to my
19    knowledge -- I have not seen a case that challenges access to a
20    big system of data in accordance with the job duties, and
21    I think that that is -- is not something that suggests that
22    granting access is unusual; it -- I don't think the plaintiffs
23    can contest that employees within these agencies have access to
24    these systems of data.  There are non-DOGE employees who have
25    access to these systems of data, and the plaintiffs do not
```

```
 1    contest those employees' duties require access to those systems.
 2              And I think that in that particular circumstance --
 3    you know, as I mentioned, I don't know of a case that has the
 4    government particularly identifying the specific duties of
 5    employees who are not DOGE-affiliated who have access to systems
 6    of data, but I think that the proof that the government would
 7    need to offer for -- for a system of data is just fundamentally
 8    different from a particular piece of data that's being pulled
 9    out of the database related to one particular person.
10              I think that's a very different circumstance, and
11    I think that that's part of the reason that our case looks a
12    little bit different, Your Honor.
13              THE COURT:  All right.  Isn't that your job, to do
14    that?
15              MS. HALL:  Well, Your Honor, I think that, critically,
16    the burden here lies with the plaintiffs, and particularly when
17    it comes to an extraordinary form of relief, like a TRO, it's
18    the plaintiffs' responsibility to show that they are likely to
19    succeed on the merits, that they are likely to suffer
20    irreparable harm, and that the balance of the equities and the
21    public interest lie in their favor.  And --
22              THE COURT:  Slow down, slow down, okay?
23              MS. HALL:  Yes, Your Honor.
24              THE COURT:  No, you're right, it is the plaintiffs'
25    burden on all of those counts, I completely agree, but what I
```

1   was asking is, isn't it your responsibility for the government

2   to identify why, with specificity -- at least a certain level of

3   specificity, why the DOGE team needs access to all of this

4   information?

5            MS. HALL:  Well, Your Honor, I think we have

6   identified, with some specificity, the need for these employees

7   to have access to data, and specifically systems of data rather

8   than, you know -- I'm not suggesting that, you know, if some

9   individual -- if the DOGE team were pulling one individual's

10  particular piece of data and then using that for some other

11  purpose from their job responsibilities, you know, I think that

12  would be a very different circumstance.

13           THE COURT:  I just don't know enough about the systems

14  that they are accessing to know if the PII can be segregated or

15  redacted in order to allow them to form perform their duties,

16  and what I'm hearing from you is, you don't know either,

17  correct?

18           MS. HALL:  Your Honor, that's correct, I don't know

19  how the redaction would work and how access to the systems would

20  work, but I would also mention that the plaintiffs don't seem to

21  have any kind of distinction between different types of PII, or

22  they don't seem to object specifically to Social Security

23  numbers, for example, while permitting access to income.

24           And I think, again, it's the plaintiffs' burden to

25  establish that there is a violation and that the relief that

```
 1    they're requesting is sufficiently tailored.
 2              THE COURT:  All right.
 3              All right.  Is there anything else on need to know
 4    before we move on to routine use?
 5              MS. HALL:  Your Honor, I would just point out --
 6              THE COURT:  Excuse me one moment.
 7              Just give me one moment.
 8              MS. HALL:  Yes, Your Honor.
 9              THE COURT:  I'm drowning in papers here.
10              MS. HALL:  I understand.
11              THE COURT:  Before you move on to routine use, are you
12    familiar with a case, Parks v. IRS?  It's a 1980 case from the
13    Tenth Circuit.
14              MS. HALL:  Your Honor, I don't recall it offhand, but
15    if you wouldn't mind refreshing my memory as to the facts, I'd
16    be happy to discuss it.
17              THE COURT:  We have copies of it for you; my law clerk
18    will hand one to you and to opposing counsel.
19              This is a case that was brought by an IRS employee
20    against the IRS, and the IRS employee complained that he was
21    called by other IRS employees and was asked to buy savings
22    bonds, and the request was because President Nixon had issued an
23    Executive Order asking for people to encourage their people to
24    buy savings bonds, and the Tenth Circuit found that the
25    Executive Order charged the committee to formulate a plan of
```

1  organization and sales promotion of the savings bond program.

2       Even though this may have been a worthy effort, it

3  does not justify the use of information derived from the

4  personnel files of employees, particularly in view of the

5  subsequent passage of the Privacy Act.  In short, the

6  Executive Order, which was at odds with the stated legislative

7  purpose of the Privacy Act, does not license the defendants to

8  violate the Privacy Act, and it would not be grounds for

9  justifying dismissal of the plaintiff's complaint.

10      I know I'm springing this on you now, it's not

11 completely fair, but it's a case that we found, and it seems

12 somewhat relevant to me.

13      MS. HALL:  Well, Your Honor, if you'll give me just

14 one moment to situate myself with the opinion.

15      THE COURT:  Sure.

16      MS. HALL:  Well, Your Honor, first, I would mention

17 that this case appears to have been decided on a motion to

18 dismiss, where the Court was properly assuming the facts in the

19 plaintiff's complaint was true, which is, of course, as

20 Your Honor knows, a different standard of review than for a

21 temporary restraining order or any kind of injunctive relief.

22      So in keeping with that, the Court identified -- and

23 I'm at page 681 of the Federal Reporter citations, which is the

24 Westlaw page 4, and it identifies a particular allegation that

25 disclosure of savings bond information was not needed by agency

 1  officials and employees in the regular performance of their

 2  work.

 3        And so I think that in that situation, it seems like

 4  the Court was in part relying on the motion to dismiss standard

 5  and the fact that it was alleged that it was not necessary.

 6        And furthermore, it appears that the Executive Order

 7  at issue established an interdepartmental committee for the

 8  voluntary payroll savings plan, which consisted of the heads of

 9  all federal executive branch agencies, and the order charged the

10  committee with formulating a plan to promote the savings bond

11  program.

12        I think that's pretty different from the case that we

13  have here, where the Executive Order does not only apply to

14  directing the action of agency heads, it also directs the action

15  of the particular employees who are involved in this case, and

16  for those reasons, I think this case is quite different from the

17  one we have here.

18        THE COURT:  Okay.

19        Let's talk about routine use.  Before we get into the

20  details of that exception, Plaintiffs' counsel mentioned

21  something about a log for routine use; you might need ask her

22  follow-up questions about that.  I'm not familiar with that at

23  all.  Are you?

24        MS. HALL:  I am not, Your Honor.  I did not see

25  anything about the logs in Plaintiffs' briefing, and so I'm not

1    familiar with any requirement like that.

2              THE COURT:  Okay, all right.

3              MS. HALL:  On routine use, Your Honor, I think the

4    first point that I'll make is that the government's position is

5    that we don't need to reach routine use at all, because the

6    individuals involved are employees, and routine use is used to

7    cover disclosures outside the agency.  So I think that this

8    is -- so long as Plaintiffs have conceded that these individuals

9    are employees at the relevant agencies, we don't need to reach

10   routine use at all.

11             THE COURT:  Because they're not sharing outside the

12   agencies.

13             MS. HALL:  Correct.

14             THE COURT:  So from your position, these DOGE people

15   are employees of their respective agencies, correct?

16             MS. HALL:  Correct.

17             THE COURT:  And therefore, you are not relying on

18   routine use; is that correct?

19             MS. HALL:  Yes, Your Honor.  The routine use exception

20   is an argument to the extent that these individuals whose access

21   the plaintiffs complain of are not actually employees of the

22   respective agencies.

23             THE COURT:  So from your perspective, if this case

24   ever went to trial or got, you know, to a dispositive motion,

25   you would be invoking the need to know exception.

1          MS. HALL:  Your Honor, we might invoke the routine use

2     exception as an alternative.

3          THE COURT:  Understood, but --

4          MS. HALL:  Yes, Your Honor.

5          THE COURT:  -- if the facts prove that these were

6     employees, you would be relying on the need to know exception.

7          MS. HALL:  Yes, Your Honor.

8          THE COURT:  Okay.

9          All right.  Well, listen, let's just -- let's talk

10     about it since you're here, and I'll ask the plaintiff some

11     follow-up questions.

12          I didn't see any discussion of compatibility.  Did you

13     not address that because you didn't think the routine use

14     exception applies or because you don't have any good arguments

15     on compatibility?

16          MS. HALL:  Your Honor, it was because we don't believe

17     that the routine use exception applies here.

18          THE COURT:  All right.  Do you have any arguments on

19     compatibility that you want to share with me?

20          MS. HALL:  So Your Honor, I don't have the PIAs in

21     front of me, so to the extent that analyzing the text of those

22     is particularly important on compatibility, I'm not prepared to

23     make specific representations about the PIAs.

24          But Your Honor, I think that when the government is

25     collecting a lot of this data, part of the reason that the

1  government is collecting data is to ensure that the programs

2  that the data is used to facilitate are free of fraud and are

3  used legitimately.  And so you know, for example, when the IRS

4  collects information related to your tax returns, I think part

5  of that is in order to facilitate the payment and refund of

6  taxes, but it's also in order to ensure that the tax laws are

7  being complied with and that all of the forms involved are being

8  filled out free of fraud.

9        And so I think that in part, that the purposes for

10  which the information is collected may be a little bit broader

11  than Plaintiffs are identifying, and you know, the purposes are

12  both to facilitate a program and to facilitate that program in a

13  way that that ensures compliance with that program's particular

14  strictures.

15        THE COURT:  Okay.  So for routine use, the government

16  has to identify the routine use, which needs to be published in

17  the Federal Register, and they are published in the form of

18  these SORNs that we've talked about.  So for Treasury, I just

19  want to make sure I understand all of the SORNs that identify

20  the routine use that you believe is relevant here and I know

21  what they are.

22        So for Treasury, it's -- what you've identified -- I'm

23  looking at page 27, I believe, of your opposition brief?

24        MS. HALL:  Yes, Your Honor.

25        THE COURT:  All right.

JA184

1          So the systems of record notice or the SORN for

2     Treasury is -- is this for the purpose of identifying,

3     preventing, or recouping improper payments to an applicant for

4     or a recipient of federal funds?

5          MS. HALL:  Yes, Your Honor.

6          THE COURT:  Okay.  So do you understand the phrase

7     "identifying, preventing, or recouping improper payments" to

8     cover the use described in Mr. Krause's affidavit?

9          MS. HALL:  Yes, Your Honor, I think it covers many of

10    the purposes that Mr. Krause identifies.

11         THE COURT:  All right.  How is that purpose or use

12    compatible with the reason this information was collected?

13         MS. HALL:  Your Honor, I -- I, again, am not familiar

14    with the specifics of the PIAs in these cases -- in these

15    particular systems, but I think that identifying, preventing, or

16    recouping improper payments is directly related to the provision

17    of payments and the grant programs or other programs that might

18    be involved in the provision of those payments.

19         I think that it's sort of two sides of one coin, as I

20    just identified, that when the government is collecting

21    information in order to provide a payment, it is also collecting

22    information in order to provide that payment in a way that is

23    free of fraud or improper payments.

24         THE COURT:  Well, those are two things.  Fraud is

25    something that the recipient of the money has done in order to

JA185

```
 1    illegally obtain it.

 2            Improper payment, who determines if it's improper?  Is

 3    it improper pursuant to a presidential policy?

 4            MS. HALL:  I think it could be, Your Honor, but

 5    I think more commonly -- and this is identified, I believe, in

 6    the Krause declaration.  There's -- one of the Treasury

 7    declarations has a footnote about this.

 8            THE COURT:  It's Footnote 2 in the Krause declaration;

 9    I see it.

10            MS. HALL:  Thank you, Your Honor.

11            THE COURT:  Okay.

12            All right, so that's the SORN for Treasury.

13            With respect to Education, I see one SORN called

14    Common Origination Disbursement System and another one for

15    National Student Loan Data System, correct?

16            MS. HALL:  That's right, Your Honor.

17            THE COURT:  And it looks like, in your paper, you've

18    referred to another one.  I was talking to Plaintiffs' counsel

19    about this, she was unfamiliar with it, but it's -- do you have

20    a third?

21            MS. HALL:  So I have -- unfortunately, in my papers --

22    if you'll give me one moment, Your Honor, I think I can give you

23    a little more clarity.

24            Sorry for the delay.

25            THE COURT:  Okay, that's all right.
```

```
1              We looked at the portion of the Federal Register, and
2   it looks like it refers to the Future Act Systems?
3              MS. HALL:  Okay, FAS.  I --
4              THE COURT:  FAS, great.
5              I don't know; is that right?
6              MS. HALL:  I believe so.
7              THE COURT:  So I don't -- I guess there are several.
8   Do you know which one, which provision of that SORN?
9              MS. HALL:  I don't have --
10             THE COURT:  All right.
11             MS. HALL:  I just have the pin cites in front of me;
12  I'm sorry.
13             THE COURT:  And those pin cites are what?
14             MS. HALL:  They're on page 27 of the brief, and
15  that's --
16             THE COURT:  All right.  That's what didn't match up
17  with what we saw, so -- okay, all right.
18             You also cite to what appears to be a proposed rule
19  implementing the Privacy Act, not a SORN?  That's 73 Federal
20  Register 117.  What -- why did you cite that?
21             MS. HALL:  Your Honor, I don't recall the particular
22  premise for that citation; I'm sorry.
23             THE COURT:  Okay, all right.
24             Mr. Ramada in his supplemental declaration says that
25  he's been identifying contracts and grants that are wasteful,
```

1    abusive, or inconsistent with the leadership's policy

2    priorities.

3          Which SORN covers his identifying contracts and grants

4    that are inconsistent with the leadership's policy or

5    priorities?

6          MS. HALL:  Well, Your Honor, I think that the SORN

7    permitting disclosure for government researchers and policy

8    analysts would cover that, and in that capacity, you know, as

9    the plaintiffs noted in their argument, there is no allegation

10    that the DOGE employees involved disclosed anything to outside

11    governmental researchers and policy analysts, but as we've

12    discussed, this would apply to these individuals only if they

13    are in fact outside of the Education Department, which because

14    they're detailees, they are not.

15          But to the extent that we are looking at routine use

16    for that reason, I think Mr. Ramada is, in part, operating as a

17    policy analyst and a researcher to advise the leadership of the

18    Department of Education.

19          THE COURT:  Okay, all right.

20          Okay.  And for OPM, you cite one SORN.  It's the

21    General Personnel Records, I guess.  It covers only the system

22    with the name General Personnel Records.  So my question is, is

23    that the only SORN, and is that the only system that has been

24    accessed by the DOGE team at OPM?

25          MS. HALL:  Your Honor, I am not certain of the answer

```
 1   to that question.
 2          THE COURT:  So it had two parts; let me break it down.
 3          Is this the only SORN that you are citing to support
 4   your position that the disclosures to DOGE OPM is within the
 5   routine use exception?
 6          MS. HALL:  For purposes of this TRO, yes.
 7          THE COURT:  Okay, okay.
 8          The second question was, are the DOGE people at OPM
 9   accessing records that are not in the General Personnel Records?
10          MS. HALL:  Your Honor, I'm not certain whether -- so
11   the DOGE personnel, according to the Hogan declaration, I
12   believe, are accessing ...
13          THE COURT:  Let's look at the Hogan declaration.
14          MS. HALL:  Some of them are accessing EOPF and EHRI,
15   and it is my understanding that the SORN that we cited covers
16   those systems.
17          THE COURT:  What is that based on?  I don't see that
18   in the SORN; I see General Personnel Records.  Maybe the records
19   you just cited are a subset, but I don't know that.
20          MS. HALL:  That is my understanding, Your Honor, but
21   if you'd like for the government to submit a letter confirming
22   whether that is the case, we can do that.
23          THE COURT:  For instance, there's a system named
24   Employee Performance File System Records, there's a system named
25   Records of Adverse Actions, Performance-Based Reductions in
```

1    Grades and Removal Actions, and Terminations of Probationers.

2    Do the -- does the DOGE team have access to those two systems?

3    MS. HALL:  Your Honor, my understanding is that the

4    only way that the DOGE team -- and with OPM, I'd like to clarify

5    that it is a little bit different, because as the Hogan

6    declaration explains, OPM is in some capacity -- you know, the

7    entire agency is really working on these DOGE EOs and

8    implementing the President's directives, so I want to be very

9    careful about distinguishing between individual -- I'm sure

10   there are individuals at OPM who have access to those records,

11   and I think in some capacity, everyone at OPM is involved in

12   implementing the President's Executive Orders.

13   So I can't make a representation that no one who is

14   doing anything on the Executive Orders has access to those

15   systems, but it's my understanding that the individuals the

16   plaintiffs seem to be objecting to have -- only a few of them

17   have access to EOPF and EHRI, and that's in paragraph 11 of the

18   Hogan declaration.

19   THE COURT:  Well, paragraph 11 just says that

20   Mr. Hogan removed access to those two systems with respect to

21   three engineers.

22   MS. HALL:  Your Honor, if I may direct your attention

23   to the first sentence of that paragraph, it says, "For systems

24   engineers who require access to sensitive systems, such as EOPF

25   and EHRI," so that -- that's where I'm getting the idea that we

```
 1    have engineers who require access to those systems and who have
 2    access to those systems.
 3              THE COURT:  Okay, all right.
 4              So one of the issues that the plaintiffs point out
 5    with this particular SORN is that the disclosure of the
 6    information with personal identifiers in the EHRI is for use in
 7    computer matching, and the statute defines computer matching,
 8    requires a computer matching agreement, shall not be effective
 9    until 30 days after it's made.
10              Is there a computer matching agreement?
11              MS. HALL:  Your Honor, I'm not aware of a computer
12    matching agreement with what would presumably be the USDS.  I
13    will -- Plaintiffs have suggested that a matching agreement
14    could not possibly be in place.  I will say that the
15    United States Digital Service, which is the office that
16    United States DOGE Service has renamed, did exist more than
17    30 days ago, but I am not aware of a computer matching agreement
18    with USDS.  And Plaintiffs have not identified what other agency
19    would need a computer matching agreement, again, because I think
20    these individuals are in fact employees of their home agencies.
21              Or -- I'm sorry, Your Honor; I'd like to correct what
22    I just said.  When I say "home agencies," I mean the agencies
23    that are named in the complaint.
24              THE COURT:  All right, okay.  Okay.
25              So let's talk about irreparable harm.  It's related to
```

1    standing.  We've talked about standing.  I know it's your

2    position that there's no standing.

3            Let me just clarify one thing about your position on

4    standing.  So earlier, I believe you said, the plaintiffs have

5    no cause of action if their personal information kept in a

6    federal government database is shared from one employee to

7    another, regardless of whether there's -- the access is

8    authorized; is that right?

9            MS. HALL:  That's right, Your Honor.

10           THE COURT:  Okay.  So does that mean if, you know,

11   someone pays their taxes, files their taxes with the IRS, that

12   someone from Immigration can call someone at IRS and say, I'd

13   like information about so-and-so for purposes of investigating

14   whether they're in the country lawfully -- so that's information

15   being shared between two government agencies -- would that be

16   unactionable?

17           MS. HALL:  Your Honor, I don't think that that is

18   analogous to the facts in this case, because it's all within one

19   agency, so I don't think that --

20           THE COURT:  Okay, let's do it with one agency.

21   Let's say I applied to be a lawyer at the Department of Justice.

22   There might be a few of us in here who have done that before.

23   And you know, I got -- let's say I got the job.  Let's also say

24   that the FBI at some point wanted to investigate me for reasons

25   unrelated to my job application and in fact unrelated to my

1    employment.  The FBI is within the Department of Justice.  Could

2    the FBI get interagency information from HR at DOJ about me?

3        MS. HALL:  I -- your Honor, I don't know whether there

4    is some other cause of action that might preclude that, or other

5    regulations that might preclude that, separate from those that

6    are at issue in this case, but I think under the Privacy Act

7    alone, that would be an intra-agency disclosure, and if the --

8    if the Department of Justice made the determination that access

9    was proper, then that would be an -- and the disclosure alone,

10   without the harm of an investigation, without the concrete harms

11   that would attend from the FBI having access, those are separate

12   harms from the disclosure itself.  So I think without any

13   additional harms occurring --

14        THE COURT:  So if I heard that that had happened, and

15   before any harm happened to me, I rushed into court and asked a

16   Court to prevent that, prevent continued disclosure, I'd be out

17   of luck, I'd have no cause of action?

18        MS. HALL:  I think that's right, Your Honor, and

19   I think that follows from TransUnion, and TransUnion is -- on

20   the facts of that case, it was possible that at any time, there

21   could have been disclosure that would cause concrete harm, but

22   there had not actually been the kind of public disclosure that

23   would cause that harm.  And because the harm had not yet

24   occurred, the concrete harm had not yet occurred, the plaintiffs

25   lacked standing even though they were alleging informational

```
 1   injuries.
 2          THE COURT:  Okay.  Let me ... and so tell me again
 3   your position on irreparable harm.  Let's assume that I believe
 4   there is standing.  Let's assume I believe there is a common law
 5   analogue and that it's invasion of privacy or intrusion upon
 6   seclusion.  Why isn't there irreparable harm?
 7          MS. HALL:  Well, Your Honor, I don't think that that
 8   is an irreparable injury, and I think it's particularly not so
 9   with regard to the limited duration of a TRO while the Court,
10   you know, takes time to consider a motion for preliminary
11   injunction, where it could consider, you know, a fuller record,
12   and that's a very high standard at the TRO phase for --
13          THE COURT:  It is.
14          Why isn't ongoing, unlawful access to personally
15   identifying information irreparable harm?
16          MS. HALL:  Your Honor, I think, because the -- the
17   case law on irreparable harm is -- requires -- you know, must be
18   certain and great, must be actual and imminent, and I don't
19   think that that is causing -- we don't have any certain, great,
20   actual, imminent harm that cannot be redressed by later revoking
21   access from those individuals.
22          THE COURT:  So currently, if what the plaintiffs are
23   alleging is true, there is an ongoing invasion of their privacy
24   by DOGE members.  Why isn't that harm irreparable?  Why
25   shouldn't an injunction be issued to stop that until we
```

1   determine whether or not their access is lawful?

2         MS. HALL:  Your Honor -- well, for -- on the first

3   point, I think that first, the plaintiffs are not entitled to an

4   injunction or a temporary restraining order simply because they

5   have established irreparable harm; that's not sufficient on its

6   own.  And so if the Court is unsure whether there has in fact

7   been a violation, then I don't think that irreparable harm

8   regardless could get you over the finish line there.

9         And secondly, on that, I think, again, if -- if the

10   Court is not sure that -- or if the Court is not willing to find

11   that the plaintiffs will likely succeed on the merits and in

12   fact that access is unauthorized, then -- without that, then

13   they are suffering no harm at all from these individuals having

14   access.  And that's because if the Court doesn't find that they

15   are likely to succeed, then the -- the -- excuse me,

16   Your Honor -- then the access is, in fact, authorized, and

17   there's no harm at all.

18         THE COURT:  I understand completely, they have to

19   establish a likelihood of success on the merits.  Assume they

20   have done that.

21         Take a minute to read your -- your friend --

22         MS. HALL:  Thank you, Your Honor.

23         THE COURT:  You phoned in some help.

24         MS. HALL:  Thank you, Your Honor.

25         I would continue also and say as well that in the

```
 1    context of the Privacy Act specifically, there are damages
 2    remedies available, and so I think that, you know, by virtue of
 3    the statutory scheme that Congress has enacted, there is
 4    actually a remedy available in the form of damages under the
 5    Privacy Act or for an unauthorized disclosure that causes harm.
 6              THE COURT:  Okay.
 7              If I were to grant a temporary restraining order --
 8    and I know you vehemently oppose it; I understand that.  I
 9    understand it's the plaintiffs' burden.  I understand that
10    relief is extraordinary.  I don't know what I am going to do,
11    but I have to ask you.  If I issue a temporary restraining
12    order, what do you propose would be the proper scope of the
13    order?
14              MS. HALL:  Your Honor, I think that any order in this
15    case would need to be very narrowly tailored, so I'll point you
16    to the plaintiffs' proposed order and identify some issues that
17    we have identified with that.
18              One is that the order refers to Department of
19    Government Efficiency representatives, and as I've identified
20    throughout this argument, I think that that's a very vague term,
21    and it's not one that -- I think we would probably end up coming
22    back to Your Honor and asking for clarification if you entered
23    an order with that broad of a scope, particularly with respect
24    to the Office of Personnel Management, where, as I identified,
25    you know, in some sense, the entire agency is implementing the
```

1   President's Executive Orders and operating in some sense as

2   representatives of the Department of Government Efficiency in

3   that regard.

4        So I think that -- we would request that any relief

5   that Your Honor orders be carefully tailored to the particular

6   individuals that Your Honor believes are inappropriately

7   accessing data, rather than a broad, sweeping term like "DOGE

8   representatives."

9        And -- one moment, Your Honor.  Sorry; I'm just taking

10  a look at my notes.

11       I think as well, Your Honor, any relief should be

12  carefully tailored to the parties here and the parties -- the

13  plaintiffs specifically, and also to whatever particular

14  irreparable harm Your Honor identified to justify the order, so

15  that that harm could be mitigated during the pendency of this

16  action.

17       THE COURT:  So if I tailored it to the plaintiffs,

18  what I heard from the plaintiffs' side is, that would be

19  unworkable for enforcement reasons.  You know better than we do.

20  You've asked me, if I do this, to tailor it to the plaintiffs'

21  personally identifying information.  By my back-of-the-envelope

22  count, that's over two million people.  Would you be able to do

23  that?

24       MS. HALL:  Your Honor, I am not an expert on the

25  systems involved or how these particular redactions or

1    restrictions could work, but if -- I think the relief available

2    needs to be tailored to the parties in order to comply with the

3    rules of procedure and Your Honor's jurisdiction, and if the

4    order is properly restricted to the plaintiffs, then the

5    government would have the opportunity to assess what options

6    there are to make those redactions or make those restrictions.

7    And we would ask that the plaintiffs endeavor to work with the

8    government in order to identify the actual members and the

9    people involved.

10       THE COURT:  All right.  The second paragraph of the

11   proposed order says, "Defendants are ordered to retrieve and

12   destroy any personally identifiable information or confidential

13   information retrieved from the systems of records that are

14   currently in the possession of any DOGE representatives or

15   persons who received such information from DOGE."

16       What is your position on this?

17       MS. HALL:  Your Honor, I think that to retrieve and

18   destroy would be very burdensome on the government, to go back

19   and try to unwind anything that has occurred so far.  And

20   I think that in the -- particularly the language that says "any

21   documents created by DOGE representatives from such

22   information," those, in particular, would not actually -- might

23   not contain any protected information, and so I don't think

24   there's any reason that documents that have been derived from

25   systems of records shouldn't be available to the defendants as

 1   they're making policy choices or decisions about ways to

 2   modernize their systems.

 3           So I think that any relief here needs to be limited to

 4   actual PII and not documents that, you know, stemmed from

 5   systems that once contained PII.

 6           I would also identify subparagraph 2, "Persons who

 7   received such information from DOGE representatives."  Again,

 8   I think that's quite broad and, you know, could encompass career

 9   staff that have access to these systems anyway, it could

10   encompass the leadership of these agencies who should not be

11   enjoined from having access to their own systems, so I think,

12   again, that's part of the tailoring concern that the government

13   has, is that these -- this proposed order includes really broad

14   language.

15           And I'd also, if you don't mind, Your Honor, point you

16   back to that first paragraph, where the plaintiffs identified

17   any Treasury Department, Office of Personnel Management, or

18   Departments of Education systems of records.  I think that's,

19   again, broad, and it's broader than the particular systems of

20   records that the plaintiffs have identified in their pleadings

21   and their briefing.

22           THE COURT:  Well, if I tailored it to the plaintiffs'

23   information, I wouldn't need to identify the system; it would

24   just be wherever it is, it would be incumbent upon you to

25   determine what system it's in, correct?

```
 1              MS. HALL:  Your Honor, I'm not sure -- I think that
 2   the -- there are two components of tailoring here; there's the
 3   idea of tailoring it to Plaintiffs' PII, and that's, you know,
 4   necessary in order to keep the TRO contained to the parties to
 5   this suit.  And then, I think there's a second question of
 6   tailoring, which is just proper tailoring of an injunction to
 7   the subject of the suit, and that, I think, would -- is the part
 8   that would require limiting it to the systems that Plaintiffs
 9   have actually identified and that the parties have been able to
10   brief here.
11              THE COURT:  All right.
12              Okay.  One last question -- well, I can't promise it's
13   the last question, but I am winding down.
14              I agree with you that using the term "Department of
15   Government Efficiency representatives" is vague and broad.  I
16   don't exactly know what that means.  I could guess, but I really
17   don't know what that means, and if I issue this order and the
18   government is implementing it, you would probably say, well,
19   what does that mean?
20              MS. HALL:  Yes, Your Honor.
21              THE COURT:  Can you think of a better way to phrase
22   it, that wouldn't confuse you?
23              MS. HALL:  Your Honor, I think that we have identified
24   particular employees in our declarations, and so to the
25   extent -- you know, at Treasury, that's Tom Krause, since
```

1    Marko Elez has departed the Department.

2         THE COURT:  All right.  So at Treasury, it's

3    Tom Krause.  He indicates he was hiring more people, but I don't

4    know if that's happened.

5         MS. HALL:  And then at Education, we have Adam Ramada

6    and the five individuals that he particularly identifies in his

7    declaration.

8         I think in the -- I'm sorry, Your Honor.  At

9    Education, again, this would depend on the nature of the

10   violation that Your Honor found and the nature of the harm that

11   Your Honor found, but my understanding is that at Education,

12   while there are -- there are multiple employees who are simply

13   Education Department employees, who are detailed from other

14   agencies.  And so there are only two individuals, Mr. Ramada and

15   one other individual, who are from USD- -- detailed from USDS,

16   and so Your Honor might confine relief to those individuals.

17        THE COURT:  All right, at OPM.

18        MS. HALL:  At OPM, I think it's much more difficult,

19   candidly, and I think that in that circumstance, if Your Honor

20   were to enjoin anyone affiliated with the DOGE project, that

21   would be overbroad, and I -- I don't think that it would be

22   proper, given the nature of that particular agency.

23        THE COURT:  All right.  I need -- you have two

24   options; you can either say, I can't give you an answer, Judge,

25   and then leave me to fashion it if I decide that I want to grant

 1  the TRO, or you can help me, to make your life easier, if I

 2  issue a TRO.

 3          Is it people who are working on the DOGE mission, who

 4  are principally working on the DOGE mission?

 5          MS. HALL:  Your Honor, I think, perhaps, it could be

 6  individuals who are both principally working on the DOGE mission

 7  and who are accessing those records for tasks related to the

 8  DOGE mission, so that it would not encompass individuals who may

 9  have access to those for other purposes while they also are

10  involved in executing the DOGE mission in their other

11  capacities.

12          THE COURT:  Thank you for that.

13          MS. HALL:  Yes, Your Honor.

14          THE COURT:  Is there anything else before I hear

15  briefly from the plaintiffs?  It's 1:15, and I've got to give my

16  staff a lunch break.

17          MS. HALL:  Your Honor, just two brief points.  One is,

18  we would also request, on relief, that relief be limited to the

19  individual members, the individual plaintiffs who are named in

20  the complaint rather than all members of the organizations,

21  because they only have standing to the extent that they're

22  members to.

23          And then, secondly, we -- the government would request

24  bond in this case.

25          THE COURT:  Okay.  What's your request for bond?

1     MS. HALL:  Your Honor, we would defer to the amount

2  that Your Honor finds appropriate, but I think we would request

3  something -- a substantial number in order to account for the

4  scope of relief that Your Honor might enter.

5     THE COURT:  I have no idea what that is.

6  Judge Engelmayer set the bond at $10,000; is that substantial?

7     MS. HALL:  Your Honor, that would be substantial.

8     THE COURT:  All right.  So before we talked about

9  bond, you said any relief, if I grant it, you want only as to

10  the six individuals that are plaintiffs and not the over

11  two million members of the various organizations that are

12  plaintiffs?

13     MS. HALL:  Yes, Your Honor, and I think that's because

14  the plaintiffs have not proven organizational standing in this

15  case.

16     THE COURT:  So sometimes I mix them up; you'll have to

17  help me.  I thought they were proceeding under associational

18  standing.

19     MS. HALL:  If you don't mind me just checking my

20  papers.

21     THE COURT:  Please, yeah.

22     MS. HALL:  Thank you, Your Honor.

23     Your Honor, that's correct; they -- I found the part

24  in their briefing, and it is associational standing; you're

25  right.

1      THE COURT:  Okay.  So does that change your position?

2      MS. HALL:  I'm sorry?

3      THE COURT:  Does that change your position?

4      MS. HALL:  I would no longer say that they have not

5  established organizational standing.  They have -- seem not to

6  have attempted to.

7      I think the key is that this is -- this is not a class

8  action.  This is not -- so the injunction I don't think could

9  run against all members of these organizations without them

10  trying to identify a class and with some particularity.

11      THE COURT:  So then why wouldn't the answer be to

12  fashion a TRO, if I grant one, that enjoins the DOGE people that

13  have submitted the declarations and then the people that I

14  identify, perhaps along the lines that you've suggested, from

15  accessing any PII?  That makes it much easier, rather than

16  saying just the plaintiffs.

17      MS. HALL:  Your Honor, I don't think that that would

18  be commensurate with the alleged violation.

19      THE COURT:  All right.  So then it would be up to the

20  government to get all 2 million names and figure out a way where

21  you're blocking access to those persons' information, right?

22      MS. HALL:  If that was Your Honor's order, yes.

23      THE COURT:  Okay, all right.  Is there anything else?

24      MS. HALL:  No, Your Honor.

25      THE COURT:  Thank you very much, Ms. Hall.

1          MS. HALL:  Thank you.

2          THE COURT:  All right.  Ms. Hu, I don't know how much

3    time you want in rebuttal, but either we take a lunch break and

4    return at 2:00, or you can be brief.

5          MS. HU:  Your Honor, I think I can try to be brief.

6          THE COURT:  All right.  I'm going to hold you to that.

7          MS. HU:  Thank you.

8          A couple housekeeping matters.  I think earlier,

9    Your Honor had asked what to do about the news reports, and my

10   friend on the other side said that those news reports cannot be

11   used for the truth of the matter asserted, as they are hearsay.

12   That is contra authority from the Fourth Circuit that is

13   binding.

14         I direct Your Honor's attention to G.G. ex rel. Grimm

15   v. Gloucester County School Board, 822 F.3d 709, specifically on

16   page 725, and there, the Fourth Circuit held, "Because

17   preliminary injunction proceedings," and obviously TROs, "are

18   informal ones designed to prevent irreparable harm before a

19   later trial, governed by the full rigor of usual evidentiary

20   standards, District Courts may look to, and indeed, in

21   appropriate circumstances, rely on hearsay or other inadmissible

22   evidence when deciding whether a preliminary injunction is

23   warranted."

24         THE COURT:  Okay.

25         MS. HU:  And there are a number of District of

1    Maryland decisions that cite that, four newspapers as well.

2            THE COURT:  All right.

3            MS. HU:  On -- I believe Your Honor had asked about my

4    earlier comments on the fact that information and PII can be

5    redacted.  I direct Your Honor's attention to the Financial

6    Management System.  The privacy impact assessment for that

7    system expressly says that "masked PII is used for testing when

8    required.  PII is masked in all non-production environments," so

9    that is protected from access, "by staff who do not have the

10   appropriate access roles.  PII elements other than name are

11   masked by replacing the elements with 'dummy'" -- quotation

12   marks -- "'dummy' data; e.g., identifying numbers are replaced

13   with 99999."

14           THE COURT:  Okay.

15           MS. HU:  I believe Your Honor had earlier also asked

16   about the routine use log.  That can be found in 552a(c),

17   Accounting of Certain Disclosures.

18           THE COURT:  A-A-C?

19           MS. HU:  Sorry, I skipped a number.  552a, that's the

20   section of the Code, and then subsection (c), which is

21   Accounting of Certain Disclosures.

22           And it states, "Each agency, with respect to each

23   system of records under its control, shall, except for the need

24   to know exception, keep an accurate accounting of the date,

25   nature, and purpose of each disclosure of a record to any person

1    or to another agency made under subsection (b) of this section

2    which has the routine use exception."

3        THE COURT:  All right.  So the government's position

4    is that these DOGE team members are accessing the information

5    within the agency where they are working, and so therefore, the

6    routine use exception does not apply.  What is your position on

7    that?

8        MS. HU:  My position on that is that that's fine, but

9    they need to fit under a different exception, then.

10        THE COURT:  So the need to know.

11        MS. HU:  The need to know exception.  And I think -- I

12    do disagree, I think, with the government's position that

13    somehow disclosures within an agency is meaningfully different

14    from disclosures between agencies.  The Privacy Act has a scheme

15    that encompasses with the need to know requirement, and it

16    limits access even within an agency to these records maintained

17    by the agency unless there is a demonstrated need to know.

18        And I thought the discussion Your Honor had with my

19    friend on the other side about the need to know here and the

20    duties at issue here was very illuminating, because I think what

21    it boiled down to, the government's position seems to be that

22    the more sweeping the level of disclosure, the less specificity

23    you need to articulate the duties or to articulate the need to

24    access that data.

25        THE COURT:  Well, I don't know that she said that.

1          MS. HU:  But I think that that --

2          THE COURT:  It's just more -- it's just more

3    challenging, given the magnitude of the access.

4          MS. HU:  That's correct, Your Honor, but I think this

5    exemplifies the unprecedented nature of the disclosures they

6    have given, right, and I think under these circumstances, where

7    the grant of access is so broad, and we know from some of these

8    declarations, the grant of access exceeds those given to

9    auditors, that there really needs to be a close scrutinization

10   of the connection between all of this information, and the

11   duties, and the need for that information for these employees,

12   and I do not believe that the government provided that.

13         I think I would also add, what I understood the

14   government to be saying was, well, it's Plaintiffs' burden; it's

15   Plaintiffs' burden to prove all of this, it's Plaintiffs' burden

16   for the order to name the specific systems that the Court should

17   prevent or prohibit access to.  And I think that that is a

18   little Kafkaesque, because, of course, the reason why we can't

19   name all of the systems is because the government has not been

20   transparent about them.  Even in the declarations that

21   Your Honor painstakingly went through with the government, there

22   was not information on the full range of systems that currently,

23   these DOGE individuals and representatives have access to.

24         The sentence that I believe my friend on the other

25   side pointed you to said "such as," systems such as, as

1    exemplars.  That suggests, of course, that that is not the

2    exclusive list of systems.

3              THE COURT:  All right.  So let's talk about a proposed

4    order.

5              I think, if I issue this TRO, I think the government's

6    correct, it has to be tailored to the plaintiffs, and I also

7    think that just saying "Department of Government Efficiency

8    representatives" is too broad.  Do you have any suggestions?

9              MS. HU:  Certainly, Your Honor.  I think the reason

10   why we use that language in the proposed order is because there

11   is a great deal of uncertainty about the individuals.  Again,

12   much of that information has not been forthcoming.

13             Now we have these declarations that have identified at

14   least the number of individuals within Education, for example,

15   or Treasury, but I also think that what my friend on the other

16   side suggested as a narrowing, more precise language at

17   capturing the individuals we are concerned about here, I think

18   we would agree with that; I think the language that she used is,

19   people who are preliminary working on DOGE initiatives and

20   access the data contained within these systems to support those

21   initiatives.  I think that that would be an appropriate

22   narrowing of the order that we proposed.

23             THE COURT:  I was very impressed with her ability to

24   come up with that so quickly; that was excellent.  I mean that.

25             Your second paragraph, it just seems unworkable.

JA209

1    MS. HU:  Your Honor, I think that second paragraph

2    intended to parallel the order that Judge Engelmayer issued.  So

3    to the extent that Your Honor is not inclined to issue that

4    relief, I would just ask that Your Honor fashion something that

5    addresses any potential workarounds.

6        What we were really trying to avoid is that to the

7    extent these DOGE individuals or representatives, which I will

8    use the shorthand here, created copies of the datasets, they

9    should not be permitted to continue accessing those copies to do

10   the work.  In other words, they should not be able to work

11   around the Court's order on a technicality.  That is what the

12   second provision was intended to address.  We are fine with a

13   much narrower framing of that, but that is the animating concern

14   from Plaintiffs.

15       THE COURT:  Okay.  Is there anything else?

16       MS. HU:  Your Honor, unless there's anything further,

17   we rest on our papers and our argument today.

18       THE COURT:  Let me look at my notes and check with my

19   law clerks.

20       Let me ask you this.  I mean, I think this would be

21   also for Ms. Hall, but if I do issue a TRO, it lasts 14 days.

22   What next?

23       MS. HU:  Your Honor, I think, next, Plaintiffs would

24   request a preliminary injunction hearing.  We would propose that

25   there be limited discovery in connection with that hearing,

1    limited to Defendants' decisions to grant access to the

2    individuals at issue here, and so that would be -- in ordinary

3    cases, there would be an administrative record.

4         Here, we understand that the government has asserted,

5    in other proceedings, there is no administrative record, so it

6    would be the emails or communications around the decision to

7    grant access and the scope and extent of that access to the

8    systems.  We propose that the government would provide that to

9    us on Monday, and then we would be given three days --

10        THE COURT:  This coming Monday?

11        MS. HU:  Correct, Your Honor.  Or if that's not

12   feasible -- we're sort working around Your Honor's schedule,

13   recognizing there's a 14-day expiration limit on that TRO, which

14   could be extended once by an additional 14 days for good cause

15   shown.

16        But the general, broad-stroke proposal would be for

17   limited discovery, followed by some amount of time for us to put

18   in -- and it can be three days -- for us to put in our

19   preliminary injunction motion, three days for the government to

20   respond to that preliminary injunction motion, two days for us

21   to put in the reply, and then we would reconvene at a time that

22   is convenient for Your Honor's calendar for that hearing, during

23   which I think we would ask that some witnesses be made available

24   for questioning.

25        THE COURT:  All right, thank you.

1          Thank you very much.  You can have a seat.

2          MS. HU:  Thank you.

3          THE COURT:  Thank you.

4          Ms. Hall.

5          MS. HALL:  Your Honor, as to that schedule, that

6     timeline for discovery would be I think impossible for the

7     government to comply with.  To get the kind of discovery that

8     Plaintiffs are requesting by next Monday would impose a severe

9     hardship on the government, and I'm not sure that we would be

10    able to comply with that timeline.  So if Your Honor were to

11    order discovery, then we would request more time for that to

12    occur.

13          In the alternative, we do request that Your Honor, in

14    keeping with a -- we had a footnote in our brief --

15    (Reporter requesting clarification.)

16          MS. HALL:  I'm sorry -- in keeping with a footnote

17    that we had in our brief, our opposition brief, convert the

18    motion to a TRO into a motion for a preliminary injunction and

19    instead just issue a preliminary injunction in this case.

20          THE COURT:  All right, thank you for that.

21          MS. HALL:  Thank you, Your Honor.

22          THE COURT:  Ms. Hu, what's your position on that?

23          MS. HU:  Your Honor, our position on the preliminary

24    injunction is that part of Defendants' argument here is that not

25    sufficient evidence has been elucidated to date to support our

1    request for relief or to show a likelihood of success on the

2    merits.  If they're willing to drop that objection on grounds of

3    lack of evidence, then we have no objection to the TRO being

4    converted into a preliminary injunction.

5           What we are concerned may happen is that if the

6    conversion is done on this evidentiary record, perhaps an appeal

7    might be sought, and I don't think we would want to be in that

8    position.

9           THE COURT:  Well, what I just heard from the

10   government is, they don't need any additional evidence in order

11   to oppose a preliminary injunction.  You're saying, you want

12   more evidence to beef up your preliminary injunction, to protect

13   it on appeal?

14          MS. HU:  Your Honor, I think, though -- perhaps I was

15   imprecise in my phrasing.  What I'm trying to say here is that

16   Defendants have argued that Plaintiffs have not come forward

17   with sufficient evidence, and if they convert this TRO into a

18   preliminary injunction, depriving us of the ability to develop

19   that evidence and then renew that argument on appeal, we think

20   that that would be unfair to us; that is our concern.

21          THE COURT:  Thank you.  That was -- you said that the

22   first time, and you said it even better the second time.  I got

23   it.  I should have gotten it the first time.

24          MS. HU:  Thank you, Your Honor.

25          THE COURT:  Thank you.

```
 1              Ms. Hall, what's your response?
 2         MS. HALL:  Your Honor, we would -- we are not going to
 3    drop our contention that the plaintiffs have failed to satisfy
 4    their burden, and so that idea from Plaintiffs, we will not be
 5    omitting that if we were to appeal a preliminary injunction.
 6         THE COURT:  So how could I then turn -- if I did
 7    this -- again, I'm not there, okay, but if I turn their
 8    TRO motion into a preliminary injunction motion, as you've
 9    requested, and I were to perhaps grant that, would you then
10    appeal to the Fourth Circuit and say, one of the reasons either
11    the Court erred or the plaintiffs didn't meet their burden was,
12    there wasn't enough evidence?
13         MS. HALL:  Yes, Your Honor, we would.
14         THE COURT:  Okay, all right.
15         MS. HALL:  Your Honor, we would also advance purely
16    legal grounds, so we would have multiple grounds in our own
17    appeal.
18         THE COURT:  If you're willing to waive any argument
19    that the record hasn't been developed sufficiently, I'd consider
20    your request to turn it into a PI, if I were headed towards a
21    TRO.  Are you willing to do that?
22         MS. HALL:  Your Honor, may the government get back to
23    you on that later today?
24         THE COURT:  Yes, that would be helpful.
25         MS. HALL:  Thank you, Your Honor.
```

```
1              THE COURT:  All right.

2              All right, just give me one moment.

3              All right.  I want to thank the lawyers; you've done

4    an excellent job in your written submissions and in your oral

5    arguments today.  These are very important issues, very

6    fascinating for a law nerd like me, and so thank you very much.

7              I will rule as soon as I can.

8              Okay, thank you.

9              MS. HALL:  Thank you, Your Honor.

10             THE COURTROOM DEPUTY:  All rise.  This Honorable Court

11   now stands adjourned.  Thank you.

12        (The proceedings were adjourned at 1:34 p.m.)

13                      *      *      *

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2           I, Patricia Klepp, Registered Merit Reporter, in and for

3     the United States District Court for the District of Maryland,

4     do hereby certify, pursuant to 28 U.S.C. § 753, that the

5     foregoing is a true and correct transcript of the

6     stenographically-reported proceedings held in the above-entitled

7     matter and the transcript page format is in conformance with the

8     regulations of the Judicial Conference of the United States.

9                              Dated this 23rd day of February, 2025.

10

11

                             _____/s/_____
12                           PATRICIA KLEPP, RMR
                             Official Court Reporter
13
```

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **AMERICAN FEDERATION OF TEACHERS**, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civ. No. DLB-25-0430 |
| | * | |
| **SCOTT BESSENT**, *et al.*, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER**

This lawsuit is one of several filed by plaintiffs who seek to enjoin federal government agencies from disclosing records with their sensitive personal information to government personnel affiliated with the newly established Department of Government Efficiency ("DOGE").

The plaintiffs in this suit are unions and membership organizations representing current and former federal employees and federal student aid recipients and six military veterans who have received federal benefits or student loans. In their amended complaint, filed on February 12, 2025, the plaintiffs assert claims under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA") against the U.S. Department of the Treasury ("Treasury"); the U.S. Department of Education ("Education"); the U.S. Office of Personnel Management ("OPM"); Scott Bessent, the Secretary of the Treasury; Charles Ezell, the Acting Director of OPM; and Denise L. Carter, the Acting Secretary of Education (collectively, "the government"). ECF 13. The plaintiffs allege that the agencies unlawfully granted access to records that contain their personally identifiable information ("PII") to personnel implementing the President's Executive Orders on the DOGE agenda.

The plaintiffs have moved for a temporary restraining order to enjoin the government from granting access to record systems with their sensitive personal information to individuals who are

implementing the President's DOGE agenda. ECF 14 & 14-1. The government filed an opposition, ECF 27, and the plaintiffs replied, ECF 28. The Court held a hearing on February 19, 2025.

Upon consideration of the amended complaint, the TRO briefing, the limited record evidence, oral argument, and the recent decisions of other courts in similar cases, the Court finds that the plaintiffs have met their burden for the extraordinary relief they seek. The TRO is granted in part and denied in part.[1]

---

[1] Other courts recently have denied TROs in similar cases. *See* Mem. Op. & Order, *Am. Fed. of Labor of Indus. Orgs. v. Dep't of Labor*, No. 1:25-cv-339 (D.D.C. Feb. 14, 2025) (Bates, J.) (denying TRO against the U.S. Department of Labor, the U.S. Department of Health and Human Services, the Consumer Financial Protection Bureau, the U.S. DOGE Service, and the U.S. DOGE Service Temporary Organization because plaintiffs did not establish likelihood of success on the merits); Mem. Op. & Order, *Univ. of Cal. Student Ass'n v. Carter*, 1:25-cv-354 (D.D.C. Feb. 17, 2025) (Moss, J.) (denying TRO against Education and Acting Secretary of Education because plaintiffs did not establish irreparable harm); Mem. Op. & Order, *EPIC v. OPM*, No. 1:25-cv-255 (E.D. Va. Feb. 21, 2025) (Alston, J.) (denying TRO against OPM, Treasury, and agency heads because plaintiffs did not establish irreparable harm). One court has granted a TRO and a preliminary injunction. On February 21, 2025, a district judge in the Southern District of New York granted a preliminary injunction that effectively gives the plaintiffs in this case the relief they seek against Treasury. *See* Op. & Order, *New York v. Trump*, 1:25-cv-01144 (S.D.N.Y. Feb. 21, 2025) (Vargas, J.). The court ordered, in part:

> [T]he United States Department of the Treasury and the Secretary of the Treasury are restrained from granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees to any employee, officer or contractor employed or affiliated with the United States DOGE Service, DOGE, or the DOGE Team established at the Treasury Department, pending further Order of this Court.

*Id.* at 63. The scope of the preliminary injunction includes Treasury records with the plaintiffs' PII. Thus, the plaintiffs cannot establish that they will be irreparably harmed if this Court does not grant a TRO against Treasury. For this reason, their motion for a TRO against Treasury and Secretary Bessent is denied.

I.     **Background**

   A.  **DOGE Executive Orders**

On January 20, 2025, President Donald J. Trump signed an Executive Order called "Establishing and Implementing the President's 'Department of Government Efficiency.'" Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 29, 2025) ("DOGE Executive Order"). The DOGE Executive Order established the Department of Government Efficiency "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." *Id.* § 1. The order renames the United States Digital Service as the United States DOGE Service ("USDS") and establishes "the U.S. DOGE Service Temporary Organization" to be "dedicated to advancing the President's 18-month DOGE agenda." *Id.* § 3(a), (b). It directs each agency head to establish "a DOGE Team of at least four employees, which may include Special Government Employees, hired or assigned within thirty days of the date of this Order." *Id.* § 3(c). "Each DOGE Team will typically include one DOGE Team Lead, one engineer, one human resources specialist, and one attorney." *Id.* DOGE Team Leads will "coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.*

The DOGE Executive Order directs the USDS Administrator to "commence a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems," which includes "work[ing] with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." *Id.* § 4(a). The DOGE Executive Order commands agency heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and

prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b). It also directs that "USDS shall adhere to rigorous data protection standards." *Id.*

On February 11, 2025, President Trump signed an Executive Order called "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative." Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 14, 2025) ("Workforce Executive Order"). The Workforce Executive Order "commences a critical transformation of the Federal bureaucracy." *Id.* § 1. It proclaims that the Trump "Administration will empower American families, workers, taxpayers, and our system of Government itself" by "eliminating waste, bloat, and insularity." *Id.* In a section titled "Reforming the Federal Workforce to Maximize Efficiency and Productivity," the Order directs: (a) the Office of Management and Budget ("OMB") to submit a plan to reduce the size of the federal government workforce; (b) agency heads to "develop a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas"; (c) agency heads to prepare "to initiate large-scale reductions in force"; (d) OPM to revise regulations on fitness and suitability criteria; (e) agency heads to submit to OMB "a report that identifies any statutes that establish the agency . . . as statutorily required entities" and discusses "whether the agency . . . should be eliminated or consolidated"; and (f) the USDS Administrator, within 240 days of the Order, to "submit a report to the President regarding implementation of this order." *See id.* § 3.

### B. Agency Defendants

#### 1. Education

Education manages the federal student loan system. ECF 13, ¶ 94. Within this system, the Federal Student Aid Office maintains the National Student Loan Data System ("NSLDS"), the Common Origination and Disbursement System ("CODS"), the FUTURE Act System ("FAS"),

and the Financial Management System ("FMS"). *See id.* ¶¶ 95, 98, 100, 102. These systems house records that contain PII of individuals who either apply for or receive federal student aid, such as Social Security numbers and taxpayer identification numbers, names and addresses, dates of birth, email addresses, income and asset information, tax information, marital status, demographic information including citizenship status, and family members' personal and financial information. *Id.* ¶¶ 95–102; *see also, e.g.*, 87 Fed. Reg. 57,873, 57,878 (2022) (listing categories of records in the NSLDS); 88 Fed. Reg. 41,942, 41,947 (2023) (listing categories of records in the CODS); 88 Fed. Reg. 42200, 42222 (2023) (listing categories of records in FAS).

The DOGE affiliates at Education include Adam Ramada, a USDS employee detailed to Education, and five other "DOGE-affiliated individuals" who "play the principal role in helping to advance the mission of President Trump's Executive Order 14,158." ECF 27-6, ¶¶ 1–2 (A. Ramada Supp. Decl.).[2] These individuals are "assist[ing] the Department of Education with auditing contract, grant, and related programs for waste, fraud, and abuse, including an audit of the Department of Education's federal student loan portfolio to ensure it is free from, among other things, fraud, duplication, and ineligible loan recipients." ECF 27-5, ¶ 4 (A. Ramada Decl.). They also "help senior Department leadership obtain access to accurate data and data analytics to inform their policy decisions at the Department." *Id.* ¶ 4. These individuals "primarily worked to identify contracts and grants that are wasteful, abusive, or inconsistent with leadership's policy priorities."

---

[2] The Court uses the term "DOGE affiliates" throughout the opinion to refer to the personnel at Education and OPM who are working on the DOGE agenda and have been granted access to records containing PII. At Education, this includes Adam Ramada and the "DOGE-affiliated individuals" granted such access as described in Ramada's supplemental declaration. *See* ECF 27-6, ¶ 7. At OPM, this includes Greg Hogan, the agency's Chief Information Officer, and OPM personnel who are principally working on the President's DOGE agenda and accessing OPM's records for the principal purpose of implementing the President's DOGE agenda.

ECF 27-6, ¶ 8; *see also* ECF 27, at 9 ("All six [Education DOGE affiliates] work to audit contract, grant and related programs for waste, fraud and abuse.").

DOGE affiliates at Education "have been granted access to Department information technology and data systems." ECF 27-6, ¶ 7. This includes records that Education maintains in its operation of federal student loan programs. *See also* ECF 27-5, ¶ 9 ("The relevant employees require access to Department of Education information technology and data systems related to student loan programs in order to audit those programs for waste, fraud, and abuse."); *see also* ECF 27, at 26 (describing how "Executive Order 14,158 provides that these individuals have a need to know '*all* unclassified agency records, software systems, and IT systems' to perform their duties" and that "Education personnel need to access such records in order to audit student loan programs for waste, fraud, and abuse" (quoting Exec. Order 14,158, § 4)). DOGE affiliates at Education are also expected to access tax-related information maintained by Education in the future. ECF 27-5, ¶ 11.

### 2. OPM

OPM acts as the "chief human resources agency and personnel policy manager for the Federal Government." ECF 13, ¶ 71 (quoting "About Us," OPM, https://www.opm.gov/about-us (last visited Feb. 23, 2025)). OPM maintains a host of records about federal government personnel, including human resource and payroll data, application and hiring systems for federal jobs, and health benefits for federal employees. *Id.* ¶ 72. For example, OPM maintains the electronic Official Personnel Folder ("eOPF"), which contains digital versions of federal employees' personnel files that cover their entire period of federal civilian service. *See* OPM, *Privacy Impact Assessment for Electronic Official Personnel Folder System (eOPF)* 1 (Oct. 28, 2020), https://www.opm.gov/information-management/privacy-policy/privacy-policy/eopf-pia.pdf.   The

eOPF contains current and former federal employees' PII such as Social Security numbers, bank account numbers, names and addresses, dates of birth, health and life insurance policy numbers, civil and criminal history information, and personnel actions such as promotions and suspensions. *Id.* at 5. OPM also maintains the Enterprise Human Resources Integration Data Warehouse ("EHRI"), which contains PII as well. *See* ECF 13, ¶¶ 81–82.

The DOGE affiliates at OPM include Greg Hogan, the Chief Information Officer ("CIO") of OPM. *See* ECF 27-8, ¶ 4 (G. Hogan Decl.). As CIO of the agency, Hogan's statutory responsibilities include development and management of OPM's information technology and resources. *See* 40 U.S.C. § 11315. Hogan can grant or revoke access to record systems including eOPF and EHRI. *See* ECF 33-1, ¶ 12 (G. Hogan Supp. Decl.). Additional personnel at OPM have been granted access to OPM's record systems to "contribute[] to facilitating the President's initiatives related to workplace reform." ECF 33-1, ¶¶ 6, 8, 13–14; *see also* ECF 27, at 10 (explaining that at least some individuals at OPM who are working to implement the President's directives have access to "OPM records systems"). Other than Hogan, there are five "key systems engineers" working at OPM on these efforts. ECF 33-1, ¶ 13. None of these five individuals has access to EHRI, "though that could change if their duties require access in the future." *See id.* ¶¶ 11–12. Hogan periodically reviews access to these systems. *Id.* ¶ 12. In early February, he directed his team to remove access to eOPF and EHRI "for three engineers whose job duties do not require prospective access." *Id.*

### C.  The Plaintiffs

The organizational plaintiffs are: American Federation of Teachers ("AFT"), International Association of Machinists and Aerospace Workers ("IAM"), International Federation of Professional and Technical Engineers ("IFPTE"), National Active and Retired Federal Employees

Association ("NARFE"), and National Federation of Federal Employees ("NFFE"). ECF 13, ¶¶ 18–21. AFT represents over 1.8 million people employed in the teaching and nursing professions. *Id.* ¶ 18. IAM and its affiliate organization NFFE represent more than 100,000 federal workers, veterans, and veterans' groups. *Id.* ¶ 20. IFPTE represents approximately 34,000 federal employees, most of whom work in shipyards for the Department of Defense. *Id.* ¶ 21. Other IFPTE members include nuclear submarine engineers, scientists and researchers at NASA, administrative law judges at the Social Security Administration, nuclear engineers at the Tennessee Valley Authority, and employees at the Environmental Protection Agency. *Id.* NARFE represents approximately 128,000 current former federal employees and spousal annuitants. *Id.* ¶ 19. The members of the plaintiff organizations have records with their PII housed within Education, OPM, and/or Treasury. *Id.* ¶¶ 18–21.

The individual plaintiffs are Jason Cain, Kristofer Goldsmith, Clifford Grambo, Thomas Fant, Donald Martinez, and Christopher Purdy. *Id.* ¶¶ 22–27. Cain, a U.S. Army veteran, receives veterans' disability benefits and previously received GI bill benefits, student loans, and a VA home loan from the federal government. *Id.* ¶ 22. Goldsmith, a U.S Army veteran, receives veterans' disability benefits and previously received federal student loans. *Id.* ¶ 23. Grambo, a U.S. Navy veteran, receives veterans' disability benefits and a military pension. *Id.* ¶ 24. Fant, a veteran of the U.S. Coast Guard, receives veterans' disability benefits. *Id.* ¶ 25. Martinez, a U.S. Army veteran, receives veterans' benefits, Social Security Disability Insurance/Medicare, and Combat Related Special Compensation. *Id.* ¶ 26. Martinez previously worked for the Federal Emergency Management Agency and received federal student loans. *Id.* Purdy, a veteran of the Army National Guard, receives veterans' disability benefits and previously received federal student loans. *Id.* ¶

27. The individual plaintiffs have records with their PII housed in OPM, Education, and/or Treasury. *Id.* ¶¶ 22–27.

The plaintiffs allege that pursuant to the DOGE Executive Order and the Workforce Executive Order, Treasury, Education, and OPM have given DOGE affiliates unrestricted access to their PII and other sensitive personal information. *Id.* ¶¶ 61, 76, 77, 78, 84, 85, 103, 104, 108. None of the plaintiffs or the members of the plaintiffs' organizations requested disclosure or provided express written consent to the disclosure of their records and information to DOGE affiliates. *Id.* ¶¶ 62, 87, 109. And none of the DOGE affiliates needs to know their personal information to perform their duties. *Id.* ¶¶ 64, 65, 89, 113–16. The plaintiffs allege that the "continued and ongoing disclosure of their records to DOGE affiliates constitutes a violation of the Privacy Act, for which no exception applies." *Id.* ¶ 87. The purportedly unlawful disclosures to DOGE affiliates have caused the plaintiffs "major stress and anxiety, as they do not know who their data has been or will be shared with, whether these disclosures have made them vulnerable to further privacy breaches, and how it may be weaponized against them." *Id.* ¶ 140.

The plaintiffs assert three violations of the APA. First, the agencies' actions violate the Privacy Act. *Id.* ¶¶ 145–51. Second, the agencies acted arbitrarily and capriciously when they failed to consider the requirements of the Privacy Act and failed to engage in reasoned decision-making when they granted DOGE affiliates sweeping access to their systems of records containing sensitive and personal data. *Id.* ¶¶ 152–56. Finally, the agencies violated their non-discretionary duties to protect records from unauthorized disclosure. *Id.* ¶¶ 157–59.

## II.    Discussion

### A.    Jurisdiction

Before the Court considers the TRO motion, the Court must assure itself that the plaintiffs have standing and that it may review the agency actions.

#### 1.    Standing

Article III of the Constitution extends the "judicial Power" of the federal courts only to "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). There is a case or controversy only if the plaintiff has standing to assert their claim. *TransUnion*, 594 U.S. at 423. To establish standing, a plaintiff must show "(1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "An organization . . . can assert standing either in its own right or as a representative of its members." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013).

Here, the organizational plaintiffs assert standing as representatives of their members. *See* ECF 14-9, ¶¶ 6–11; ECF 14-10, ¶¶ 10–15; ECF 14-11, ¶¶ 5–10; ECF 14-12, ¶¶ 8–13. An organization pleads "representational standing" by "alleg[ing] that '(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit.'" *S. Walk at Broadlands*, 713 F.3d at 184 (quoting *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)).

The individual plaintiffs and the members of the organizational plaintiffs allege their injury is the unauthorized access to their sensitive personal information.[3] The plaintiffs assert that granting DOGE affiliates access to their sensitive personal information invades their privacy and increases their risk of identity theft. The government argues that the plaintiffs have not alleged an injury in fact because their personal information has not been publicly disclosed and, without public disclosure, an alleged violation of the Privacy Act does not satisfy the injury-in-fact requirement.[4] The Court finds that the plaintiffs have alleged an injury in fact.[5]

In *TransUnion LLC v. Ramirez*, the Supreme Court explained "[w]hat makes a harm concrete for purposes of Article III." 594 U.S. at 424. To determine whether the concrete-harm requirement has been met, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* The inquiry "does not require an exact duplicate in American history and tradition." *Id.* Traditional tangible harms include physical and monetary harms. *Id.* at 425. Intangible harms also can be concrete. *Id.* They include injuries such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*; *accord Krakauer v. Dish Network, L.L.C.*, 925

---

[3] For convenience, and in consideration of the organizational plaintiffs' role as representatives of their members, the Court uses "plaintiffs" to refer to the individual plaintiffs and the members of the organizational plaintiffs.

[4] The government does not argue that the organizational plaintiffs cannot meet the second and third requirements for organizational standing. *See* ECF 27, at 16–17.

[5] The Court "assumes the merits of a dispute will be resolved in favor of the party invoking our jurisdiction in assessing standing." *See Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 99 (4th Cir. 2011).

F.3d 643, 653 (4th Cir. 2019) ("Intrusions upon personal privacy were recognized in tort law and redressable through private litigation.").

In the wake of *TransUnion*, the Fourth Circuit affirmed that invasion of privacy constitutes a cognizable injury for Article III standing. In *Garey v. James S. Farrin, P.C.*, the plaintiffs alleged violations of the Driver's Privacy Protection Act ("DPPA") after lawyers obtained car accident reports from state law enforcement and private data brokers and mailed unsolicited attorney advertisements to drivers involved in crashes. 35 F.4th 917, 920 (4th Cir. 2022). The DPPA provides a cause of action against "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record." *Id.* (quoting 18 U.S.C. § 2724(a)). The plaintiffs alleged that they "sustained actual damages by having [their] privacy invaded by Defendants' knowingly obtaining [their] name[s] and address[es] from motor vehicle record[s] for an impermissible purpose in violation of law." *Id.* (quoting second am. compl.). These allegations of merely obtaining names and addresses satisfied the injury-in-fact requirement because "injuries to personal privacy have long been 'recognized in tort law and redressable through private litigation.'" *See id.* at 921–22 (quoting *Krakauer*, 925 F.3d at 653). By pleading a violation of a statute "aimed squarely at 'the right of the plaintiff . . . to be let alone,'" the plaintiffs had "alleged a legally cognizable injury." *See id.* (cleaned up) (quoting William L. Prosser, Privacy, 48 Calif. L. Rev. 383, 389 (1960)); *see also* Restatement (Second) of Torts § 652A ("One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.").

The plaintiffs allege that they are experiencing an ongoing invasion of privacy. This alleged harm resembles the common law tort of intrusion upon seclusion, a type of invasion of privacy. "The right of privacy is invaded by," among other things, "unreasonable intrusion upon the seclusion of another." Restatement (Second) Torts § 652A. The Second Restatement of Torts

defines "intrusion upon seclusion" as follows: "intentional[] intru[sion], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Id.* § 652B; *see Krakauer*, 925 F.3d at 653 (quoting § 652B).

The plaintiffs allege that Education and OPM have granted DOGE affiliates unauthorized access to their sensitive personal information. The information includes bank account numbers; Social Security numbers; dates of birth; physical and email addresses; disability status; income and asset information; marital status; demographic information; employment records such as performance appraisals and personnel actions; and information about family members, such as their financial status, dates of birth, and addresses. The DOGE affiliates who have been granted unauthorized access to the plaintiffs' records at OPM and Education could use the information available to them to create a comprehensive picture of the plaintiffs' familial, professional, or financial affairs. *See Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 764 (1989) (recognizing "the distinction, in terms of personal privacy, between scattered disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a whole"). The unauthorized disclosure of this massive amount of personal information can be considered an "unwanted intrusion into the home that marks intrusion upon seclusion." *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 246 (4th Cir. 2023). The plaintiffs have alleged a harm similar to an "intru[sion] . . . upon the solitude or seclusion of another or his private affairs or concerns" that is "highly offensive to a reasonable person." Restatement (Second) Torts § 652B. Thus, the plaintiffs have alleged an injury in fact.

The government argues that the plaintiffs are not experiencing an injury akin to intrusion upon seclusion because access to their personal information has been granted only to other

government employees, not to the public. But the tort does not require public disclosure of personal information. Intrusion upon seclusion, unlike the tort of public disclosure of private information, "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." Restatement (Second) Torts, § 652B, cmt. a. The disclosure to unauthorized government employees suffices. Indeed, Congress passed the Privacy Act "in light of the government's 'increasing use of computers and sophisticated information technology,' which 'greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use, or dissemination of personal information.'" *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (quoting the Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(2), 88 Stat. 1896). The Act was meant "to protect the privacy of individuals identified in information systems maintained by Federal agencies" by "regulat[ing] the collection, maintenance, use, and dissemination of information by such agencies." *Doe v. Chao* ("*Chao I*"), 540 U.S. 614, 618 (2004) (quoting Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896). The Privacy Act's purposes included "prevent[ing] the kind of illegal, unwise, overbroad, investigation and record surveillance of law abiding citizens produced in recent years from actions of some overzealous investigators, and the curiosity of some government administrators, or the wrongful disclosure and use, in some cases, of personal files held by Federal agencies." *Doe v. DiGenova*, 779 F.2d 74, 84 (D.C. Cir. 1985) (quoting S. Rep. No. 1183, 93d Cong., 2d Sess. 1 (1974)). The legislative history of the law's enactment reveals Congress's concerns that "every detail of our personal lives can be assembled instantly for use by a single bureaucrat or institution" and that "a bureaucrat in Washington or Chicago or Los Angeles can use his organization's computer facilities to assemble a complete dossier of all known information about an individual." *See* Danielle Keats Citron, *A More Perfect Privacy*, 104 B.U. L. Rev. 1073,

1078 (2024) (first quoting 120 Cong. Rec. 36,917 (1974) (statement of Sen. Goldwater); and then quoting 120 Cong. Rec. 36,917 (statement of Sen. Percy)).

The plaintiffs have a privacy interest in restricting access to their personal information to government employees properly authorized to access it. *Cf. Krakauer*, 925 F.3d at 653 (finding a cognizable injury for violation of a privacy statute after "[l]ooking both to Congress's judgment and historical practice" to recognize that "[i]n enacting § 227(c)(5) of the [Telephone Consumer Protection Act], Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests"). Education and OPM possess a significant amount of detailed information about the plaintiffs' lives. To say that the plaintiffs suffer no cognizable injury when their personal information is improperly disclosed to government employees would nullify their interest in preventing unlawful government intrusion into their private affairs. The unauthorized disclosure of the plaintiffs' sensitive personal information is an injury in fact. *See Parks v. U.S. IRS*, 618 F.2d 677, 683 (10th Cir. 1980) (finding plaintiffs had standing to bring a Privacy Act action for intra-agency disclosure because "[t]he plaintiffs are the objects or the subjects of the disclosure and the allegation is that they suffered a personal invasion"). The plaintiffs adequately allege standing to pursue their APA claims against the government.[6]

---

[6] The plaintiffs argue they have suffered another injury in fact: the risk of identity theft. To establish standing based on the risk of identity theft, the plaintiffs must show that "their contention of an enhanced risk of future identity theft" is more than "speculative." *See Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017). Because the Court finds that the unauthorized disclosure of sensitive personal information is a concrete injury, it need not decide whether the risk of identity theft also is a concrete injury.

## 2. Judicial Reviewability

The APA allows for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The government argues there is no final agency action and that the plaintiffs have an adequate remedy under the Privacy Act.

### a. Final Agency Action

Agency action is "final" when two conditions are met: (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); and then quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S. 62, 71 (1970)); *see Biden v. Texas*, 597 U.S. 785, 808 (2022) (quoting *Bennett*, 520 U.S. at 178).

In *Venetian Casino Resort, L.L.C. v. EEOC*, the D.C. Circuit concluded that an agency's decision to permit its employees to disclose confidential information without notice was a final agency action. 530 F.3d 925, 930–31 (D.C. Cir. 2008). There, a company operating a hotel and casino ("Venetian") filed suit against the EEOC. *Id.* at 930–31. Venetian asserted the EEOC violated the APA through a policy that allowed EEOC "employees to disclose an employer's confidential information to potential . . . plaintiffs without first notifying the employer that its information [would] be disclosed." *Id.* The EEOC argued that Venetian could not bring an APA claim because the challenged policy appeared in its compliance manual, which was not a final agency action. *Id.* at 931. According to the D.C. Circuit, EEOC's "argument [was] misdirected" because the final agency action at issue was not the manual but rather "the decision of the Commission to adopt a policy of disclosing confidential information without notice." *Id.* The court

determined that "the agency took final action by adopting the policy" and that action was subject to judicial review. *Id.* Ultimately, the *Venetian* Court found that "[a]dopting a policy of permitting employees to disclose confidential information without notice is surely a 'consummation of the agency's decisionmaking process'" and 'one by which [the submitter's] rights [and the agency's] obligations have been determined.'" *Id.* at 931 (quoting *Bennett*, 520 U.S. at 178). The D.C. Circuit remanded the case for entry of "an injunction prohibiting the [EEOC] from disclosing Venetian's confidential information pursuant to its current disclosure policy." *Id.* at 927.

Here, as in *Venetian*, the decisions to grant DOGE affiliates access to agency record systems were final agency actions. Education and OPM granted DOGE affiliates access to systems that contain records with the plaintiffs' PII. *See* ECF 27-5, ¶¶ 8–9 (A. Ramada Decl.); ECF 27-6, ¶ 7 (A. Ramada Supp. Decl.); ECF 27-7, ¶¶ 4, 6–9 (T. Flagg Decl.); ECF 27-8, ¶¶ 10–12 (G. Hogan Decl.); ECF 33-1, ¶¶ 11–13 (G. Hogan Supp. Decl.). The decision to grant access was neither tentative nor interlocutory in nature. It was "the 'consummation of the agenc[ies'] decisionmaking process." *See Bennett*, 520 U.S. at 177–78 (quoting *Chicago & S. Air Lines*, 333 U.S. at 113). There was nothing further for the agencies to do to formalize the decisions. No written decision was required to finalize the actions. *See Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020) ("[T]he absence of a written memorialization by the agency does not defeat finality. . . . Agency action generally need not be committed to writing to be final and judicially reviewable." (citing *Venetian*, 530 F.3d at 930–31)); *Garcia v. Unknown Parties*, No. 23-468-TUC-CKJ, 2024 WL 1619370, at *6 (D. Ariz. Apr. 15, 2024) (noting "district courts have recognized that a final and judicially reviewable agency action need not be in writing") (collecting cases). And, while the agencies have the authority to revoke or restrict the access, that authority does not make their decisions tentative. The agencies decided that DOGE affiliates could

access their record systems, and DOGE affiliates did so. The agency actions marked the consummation of their decisionmaking process.

And here, as in *Venetian*, Education and OPM "[a]dopt[ed] a policy of permitting . . . disclos[ure]" that determines the plaintiffs' legal rights and the agencies' legal obligations. *See Venetian*, 530 F.3d at 931. The Privacy Act prohibits disclosure of the records at issue "except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless the disclosure falls within an enumerated exception. *See* 5 U.S.C. § 552a(b). The agencies have determined that, to comply with the Privacy Act, they do not need the plaintiffs' written authorization to disclose their records to DOGE affiliates. Thus, OPM and Education made determinations about the plaintiffs' rights to protect their personal information and the agencies' legal obligations under the Privacy Act.

The agency decisions to grant DOGE affiliates access to the plaintiffs' personal information are final agency actions.

### b. No Adequate Remedy

The government argues that the plaintiffs cannot seek relief under the APA because they have an adequate remedy available under the Privacy Act. They do not. The Privacy Act provides a cause of action for damages when an agency improperly discloses records; it does not provide a cause of action for injunctive relief in these circumstances. *See Doe v. Chao* ("*Chao II*"), 435 F.3d 492, 504 (4th Cir. 2006). Thus, the plaintiffs do not have an available remedy under the Privacy Act. Instead, they can only bring an action under the APA for injunctive relief. *See id.* at 504–05 & n.17 (recognizing that while injunctive relief is not authorized by the Privacy Act for unauthorized disclosure of records, "we do not read these cases to stand for the proposition that the Government may not be enjoined from violating the Privacy Act by disclosing personal

records," and "injunctive relief for a Government's violation of the Act will instead be appropriate and authorized by the APA," which "empower[s] courts to 'hold unlawful and set aside agency action . . . found to be . . . not in accordance with the law'") (quoting 5 U.S.C. § 706(2)); *see also Radack v. U.S. Dep't of Just.*, 402 F. Supp. 2d 99, 104 (D.D.C. 2005) ("Because Radack seeks declaratory and injunctive relief in addition to damages, the Privacy Act does not provide an 'adequate remedy.'"); *cf. Doe v. Stephens*, 851 F.2d 1457, 1466 (D.C. Cir. 1988) (noting case involving unauthorized disclosure claims under the Veterans' Records Statute, which incorporates the Privacy Act, "clearly is a case of agency action 'not in accordance with law'" (quoting 5 U.S.C. § 706(2))).

The plaintiffs challenge a "final agency action for which there is no other adequate remedy in a court." *See* 5 U.S.C. § 704. Therefore, the APA allows for judicial review of their claims.

## B. Temporary Restraining Order

"The standard for a temporary restraining order is the same as a preliminary injunction." *Maages Auditorium v. Prince George's County*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017). The party seeking the temporary restraining order must establish (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm if preliminary relief is not granted; (3) that the balance of equities favors them; and (4) that an injunction is in the public interest. *See Frazier v. Prince George's County*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### 1. Likelihood of Success on the Merits

The plaintiffs have shown a likelihood of success on the merits of their APA claim that Education and OPM took final agency actions "not in accordance with law." 5 U.S.C. § 706(2)(A).

Specifically, the plaintiffs have shown that Education and OPM likely violated the Privacy Act by disclosing their personal information to DOGE affiliates without their consent.[7]

The Privacy Act prohibits agencies from "disclos[ing] any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). The Privacy Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." *Id.*

---

[7] The plaintiffs also have shown that they likely have standing. They "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Lujan*, 504 U.S. at 561). At this stage, they "must make a 'clear showing' that [they are] 'likely' to establish each element of standing." *Id.* (quoting *Winter*, 555 U.S. at 22). The plaintiffs have shown that records stored with OPM and Education contain their sensitive personal information. *See* ECF 14-3, ¶¶ 7–10 (J. Cain Decl.), ¶¶ 7–10; ECF 14-5, ¶¶ 6–9 (K. Goldsmith Decl.); ECF 14-7, ¶¶ 5–10 (D. Martinez Decl.); ECF 14-8, ¶¶ 6–9 (C. Purdy Decl.); ECF 14-9, ¶¶ 6–11 (S. Tammello Decl.); ECF 14–10, ¶¶ 10–14 (B. Bryant Decl.); ECF 14-11, ¶¶ 5–9 (W. Shackelford Decl.); ECF 14-12, ¶¶ 8–13 (M. Biggs Decl.). And they also have shown a likelihood that the government improperly granted DOGE affiliates access to the systems that house these records. In consequence, they have made a clear showing that they likely have suffered a concrete harm and that they likely have standing.

§ 552a(a)(4). The plaintiffs did not request or consent to disclosure of their records to DOGE affiliates.[8]

There are several exceptions to the Act's bar on disclosure. *See id.* § 552a(b)(1)–(13). Of relevance here is the so-called "need-to-know" exception. Under that exception, disclosure of records is permitted "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." *Id.* § 552a(b)(1). To fall within this exception, the disclosure must be within the agency that maintains the record, *see In re Sealed Case*, 551 F.3d 1047, 1051 (D.C. Cir. 2009), and the recipient must "examine[] the record in connection with the performance of duties assigned to him . . . in order to perform those duties properly," *Bigelow v. Dep't of Def.*, 217 F.3d 875, 877 (D.C. Cir. 2000).

The government insists, and the Court assumes for purposes of the TRO motion, that the DOGE affiliates are employees of Education and OPM and that the disclosure of the plaintiffs'

---

[8] The Privacy Act does not define "disclosure," but agencies have interpreted the term to include granting access to records. *See* OMB Guidelines, 40 Fed. Reg. 28948, 28953 (July 9, 1975) ("A disclosure may be either the transfer of a record or the granting of access to a record."); 5 C.F.R. § 297.102 ("Disclosure means providing personal review of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative, parent, or legal guardian[.]"). Likewise, courts have construed the term "liberally to include not only the physical disclosure of the records, but also the accessing of private records." *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010); *Tolbert-Smith v. Chu*, 714 F. Supp. 2d 37, 43 (D.D.C. 2010) (reading "disclosure" to include "plac[ing] records . . . on a server accessible by other federal employees and members of the public"); *cf. Wilborn v. Dep't of Health & Human Servs.*, 49 F.3d 597, 600–01 (9th Cir. 1995) ("[T]he Privacy Act, if it is to be given any force and effect, must be interpreted in a way that does not 'go[] against the spirit' of the Act" (quoting *MacPherson v. IRS*, 803 F.2d 479, 481 (9th Cir. 1986)), *abrogated on other grounds by Chao I*, 540 U.S. 614. Even courts that have required more than mere transmission of records have suggested that disclosure occurs when "information has been exposed in a way that would facilitate easy, imminent access." *See In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 29 (D.D.C. 2014).

records is within the agency that maintains the records. The question, then, is whether the DOGE affiliates "have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1).[9]

### a. Education

Currently, there are six DOGE affiliates working at Education: Adam Ramada and five others who have not been identified by name.

Ramada is a USDS employee detailed to Education. He and the five "DOGE-affiliated individuals" who work with him at Education "play the principal role in helping to advance the mission of President Trump's Executive Order 14,158." ECF 27-6, ¶¶ 2, 7. Ramada's duties include "assist[ing] the Department of Education with auditing contract, grant, and related programs for waste, fraud, and abuse, including an audit of the Department of Education's federal student loan portfolio to ensure it is free from, among other things, fraud, duplication, and ineligible loan recipients." ECF 27-5, ¶ 4. DOGE affiliates at Education "help senior Department leadership obtain access to accurate data and data analytics to inform their policy decisions at the Department." ECF 27-6, ¶ 5. Ramada and the five other DOGE affiliates have "primarily worked

---

[9] The government's explanation of the DOGE affiliates' need for the records is:

> [T]hose employees have a "need to know" under the statute. Executive Order 14,158 provides that these individuals have a need to know "*all* unclassified agency records, software systems, and IT systems" to perform their duties. 90 Fed. Reg. 8441, § 4 (emphasis added). Indeed . . . the OPM personnel need to access such records to execute their direction to implement workplace reform, Hogan Decl. ¶¶ 6, 8, and the Department of Education personnel need to access such records in order to audit student loan programs for waste, fraud, and abuse, Ramada Decl. ¶ 9. *Cf.* Feb. 14, 2025 Order, *Am. Fed. of Labor of Indus. Orgs. v. Dep't of Labor*, No. 1:25-cv-339, at 3-4, 8 (D.D.C. Feb. 14, 2025) (Bates, J.).

ECF 27, at 26–27; *see also id.* at 23 ("What is more, they need access to large datasets (including material that may be covered by the Privacy Act) to carry out their Presidentially-directed functions.").

to identify contracts and grants that are wasteful, abusive, or inconsistent with leadership's policy priorities." *Id.* ¶ 8.

Ramada and his DOGE colleagues "have been granted access to Department information technology and data systems." *Id.* ¶¶ 2, 7. These systems of records contain many of the plaintiffs' PII, including marital status, income and asset information, Social Security numbers, taxpayer identification numbers, dates of birth, demographic information (such as citizenship status), and some similar information about family members. *See, e.g.*, 87 Fed. Reg. 57,873, 57,878 (2022) (listing categories of records in NSLDS). The government says DOGE affiliates at Education need access to all this information "in order to audit student loan programs for waste, fraud, and abuse." ECF 27, at 26 (citing ECF 27-5, ¶ 9 (same)). Ramada states that DOGE affiliates will access tax-related information in Education's systems of record in the future "with appropriate authorization and for purposes consistent with applicable law, such as conducting analyses to estimate costs related to student loan repayment plans, awards, or debt discharges." ECF 27-5, ¶ 11. But neither Ramada nor the government explain *why* he and the DOGE affiliates at Education *need* such comprehensive, sweeping access to the plaintiffs' records to audit student loan programs for waste, fraud, and abuse or to conduct cost-estimate analyses.[10]

There appears to be no precedent with similar facts. In other Privacy Act cases where the need-to-know exception is invoked, the dispute typically involves the alleged unauthorized disclosure of one record. This case involves the alleged unauthorized disclosure of millions of records. Even under existing precedent, this appears to be unlawful. "[P]ermitting agency-wide

---

[10] Notably, for at least one of the Education systems of record, most PII can be masked with "dummy" data. *See* Dep't of Educ., *Privacy Impact Assessment for the Financial Management System (FMS)* 21 (May 29, 2024), https://www.ed.gov/sites/ed/files/notices/pia/fsa-financ-manag-syst.pdf.

distribution under § 552a(b)(1) without any showing of why each employee needed to receive the information would allow the exception to swallow the rule." *Dick v. Holder*, 67 F. Supp. 3d 167, 178 (D.D.C. 2014); *see also Walker v. Gambrell*, 647 F. Supp. 2d 529, 538 n.4 (D. Md. 2009) (disclosure of an employee's miscarriage did not fall within the need-to-know exception because "it is difficult to see how knowledge with such specificity was necessary"). At this stage, the record does not indicate that DOGE affiliates at Education need access to the plaintiffs' PII to perform their jobs.[11]

It may be that, with additional time, the government can explain why granting such broad access to the plaintiffs' personal information is necessary for DOGE affiliates at Education to do their jobs, but for now, the record before the Court indicates they do not have a *need* for these records in the performance of their duties. *Compare Parks*, 618 F.2d at 681 (rejecting argument that employee needed to know protected information to fulfill duties pursuant to President Nixon's executive order creating committee of agency heads to promote savings bond program because the executive "order, which was at odds with the stated legislative purpose of the Privacy Act, d[id] not license the defendants to violate the Privacy Act"), *with Pippinger v. Rubin*, 129 F.3d 519, 530 (10th Cir. 1997) (concluding staff members needed to know Pippinger's identity to "decide whether and how to discipline Pippinger" and "knowledge of Pippinger's identity allowed . . . staff

---

[11] Courts have found the need-to-know exception applies when there is an explanation for why the employee needed access to the protected information to perform their job duties. *See, e.g., Howard v. Marsh*, 785 F.2d 645, 648 (8th Cir. 1986) (attorney and personnel specialist gathering information about a discrimination complaint against the agency needed complainant's employment records to respond to the complaint); *Covert v. Harrington*, 876 F.2d 751, 752–54 (9th Cir. 1989) (Inspector General's agents needed employees' personnel security files after receiving allegations that they were falsifying their permanent residences to obtain a per diem); *Dinh Tran v. Dep't of Treasury*, 351 F. Supp. 3d 130, 137–39 (D.D.C. 2019), *aff'd per curiam*, 798 F. App'x 649 (D.C. Cir. 2020) (employees evaluating a detail request needed to know information in the requestor's performance appraisal to evaluate her skillset and suitability for the detail).

members to put the investigation in context, and might potentially have enabled them to connect the information about Pippinger's alleged misconduct with other data already know[n] to them"), *and Bigelow*, 217 F.3d at 877 (finding Department of Defense employee's immediate supervisor "had a need to examine [his subordinate's personnel file] in view of the doubts that had been raised in his mind about" his subordinate's "access to the country's top secrets").[12]

The plaintiffs have shown a likelihood of success on the merits of their claim that Education's disclosure of their records to DOGE affiliates does not fall within the need-to-know exception and thus violates the Privacy Act.

### b. OPM

At OPM, the DOGE affiliates outnumber their counterparts at Education. OPM DOGE affiliates include Greg Hogan, the CIO, and numerous OPM employees who have been granted access to OPM's systems of records to "contribute[] to facilitating the President's initiatives related to workplace reform, including the deferred resignation program that closed on February 12." ECF 33-1, ¶¶ 6, 8, 13–14; ECF 27, at 10.

Hogan's duties are defined by statute. *See* 40 U.S.C § 11315. The CIO of an executive agency, including OPM, is generally responsible for, among other things, "developing, maintaining, and facilitating the implementation of a sound, secure, and integrated information technology architecture for the executive agency" and "promoting the effective and efficient design and operation of all major information resources management processes for the executive agency, including improvements to work processes of the executive agency." *See id.* § 11315(b)(2)–(3). This statute also dictates that the CIO's "primary duty" is "information

---

[12] At argument, the Court asked government counsel whether any of the systems of records allow for the redaction of PII or whether any of the DOGE affiliates at the agencies were viewing redacted records. Counsel did not know.

resources management"; that the CIO "monitors the performance of information technology programs of the agency, evaluates the performance of those programs on the basis of the applicable performance measurements, and advises the head of the agency regarding whether to continue, modify, or terminate a program or project"; and that the CIO "assesses the requirements established for agency personnel regarding knowledge and skill in information resources management and the adequacy of those requirements for facilitating the achievement of the performance goals established for information resources management." *Id.* § 11315(c); *see also id.* (specifying that the duties defined in 5 U.S.C. § 11315(c) apply to agencies listed in 31 U.S.C. § 901(b)); 31 U.S.C. § 901(b)(2)(E) (listing OPM).

In his declarations, Hogan cites to his statutory duties and his responsibilities to develop and maintain OPM's information technology and information resource infrastructure, to advise agency leadership on the management and acquisition of information technology resources, and to strategically plan information resources management. *See* ECF 27-8, ¶ 3; ECF 33-1, ¶ 3. Hogan has access to OPM's systems of records, including eOPF and EHRI. *See* ECF 27, at 10–11. These systems house records with many of the plaintiffs' PII, such as Social Security numbers, dates of birth, health and life insurance policy numbers, security clearances, civil and criminal histories, education records, employment histories, and notices of personnel actions. *See eOPF Privacy Impact Assessment* 5–6.

Hogan's duties as CIO appear to support the level of access he has been granted to OPM's records. In fact, the CIO is listed as the eOPF "system owner." *See id.* at 3. On the current record, Hogan's broad access to OPM's records appears to be "in connection with the performance of duties assigned to him" and necessary "in order to perform those duties properly." *See Bigelow*, 217 F.3d at 877.

Other DOGE affiliates at OPM are not similarly situated. The duties of the numerous other OPM employees who "have contributed to facilitating the President's initiatives related to workforce reform" are unclear from the current record. *See* ECF 27-8, ¶ 8. The government says their duties are to implement the Workforce Executive Order. At the February 19 hearing, the government directed the Court to the Workforce Executive Order's purpose of "restor[ing] accountability," "eliminating waste, bloat, and insularity" in the "Federal bureaucracy," and creating a plan "to reduce the size of the Federal Government's workforce through efficiency improvements and attrition"; the Order's instructions for agencies to develop "a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas" and to consult with DOGE team leads when filing vacancies and making new appointment hiring decisions; its requirement for DOGE team leads to prepare monthly agency hiring reports; the initiation of "large-scale reductions in force"; its requirement that OPM initiate rulemaking to revise 5 C.F.R. § 731.202(b) to include new suitability criteria; and its charge for agency heads to identify "statutorily required entities" within their respective agencies. *See id.* §§ 1, 3.

None of these workplace reform measures appears to require an OPM employee to access records with the sensitive personal information of current and formal federal employees. Yet some OPM personnel who are implementing the directives in the Workforce Executive Order apparently have access to "sensitive OPM records systems" that contain this information, which includes the PII of some plaintiffs. *See* ECF 33-1, ¶ 12. ECF 27, at 10; ECF 27-8, ¶¶ 6, 8, 12. The government never explains *why* OPM personnel need access to these sensitive records to implement the workplace reform measures in the Workforce Executive Order. *See Walker*, 647 F. Supp. 2d at 538 n.4 ("Defendant has failed to describe how knowledge of such information would affect the

ability of any of these employees to perform their specific duties."); *cf. Vargas v. Reno*, No. 99-2725, slip op. at 13 (W.D. Tenn. Mar. 31, 2000) (denying government's summary judgment motion on Privacy Act claim of unlawful intra-agency disclosure to an agency investigator where "[d]efendants ha[d] not submitted evidence that Vargas had potentially violated any law or regulation or that Vargas's records were relevant or necessary to [the] investigation").

Hogan, OPM's CIO, does not offer any explanation either. Hogan reports that some measures are in place to limit access to some OPM employees who are participating in the workplace reform efforts. *See* ECF 33-1, ¶ 10. He says that some OPM personnel "do not require access to sensitive OPM data systems." *Id.* Hogan also indicates that certain "OPM data systems containing personally identifiable information . . . . require authentication for internal access."[13] *Id.* ¶ 11. He says that "[s]ystems requiring authentication are designed to default to no access, and access is granted on a least-privilege or need-to-know basis by the System Owner and relevant Authorizing Official." *Id.* Hogan assures that "OPM regularly reviews access permissions" for "systems engineers who require access to sensitive OPM data systems . . . to ensure that they are appropriately limited." *Id.* He also says that, in early February, he directed his "team to remove access to eOPF and EHRI for three engineers whose job duties do not require prospective access." *Id.* ¶ 12. And Hogan explains that five "key systems engineers" do not have "access to EHRI, though that could change if their duties require access in the future." *Id.* ¶ 13. Although Hogan explains generally that access to personal information is limited at times, he does not explain why those OPM employees who *do* have access to these systems of record for the principal purpose of

---

[13] These data systems include eOPF, EHRI, USAJOBS, USA Staffing, USA Performance, and Health Insurance, which houses Federal Employees Health Benefits ("FEHB") and Postal Service Health Benefits ("PSHB") data. *See* ECF 33-1, ¶ 11.

implementing the Workforce Executive Order *need* to access these records to perform their jobs. Hogan also does not identify which OPM employees working on the DOGE workplace reform measures have been granted access to the OPM records systems with sensitive information. And he does not explain the criteria for determining who needs access to this information to fulfill their job duties. Thus, even with Hogan's assurances, the current record does not show that DOGE affiliates at OPM have a need for the plaintiffs' PII in the performance of their duties.

The plaintiffs have shown a likelihood of success on the merits of their claim that OPM's disclosure of their records to DOGE affiliates (other than Hogan) does not fall within the need-to-know exception and thus violates the Privacy Act.[14]

The plaintiffs have shown a likelihood of success on the merits of their APA claim that Education and OPM have taken a final agency action "not in accordance with law." 5 U.S.C. § 706(2)(A).[15]

### 2. Irreparable Harm

"To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent'" and that the harm "'cannot

---

[14] The government identified another potentially relevant Privacy Act exception that permits disclosure "for a routine use," which is defined as "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7), (b)(3). *See* ECF 27, at 27. However, the government represented to the Court at the hearing that the agencies are not relying on the routine use exception unless the Court determines that DOGE affiliates are not Education or OPM employees. Because the Court assumes (but does not decide) that the DOGE affiliates are employees of the agencies that disclosed the information to them, the Court need not address whether the "routine use" exception might apply to the inter-agency disclosure of information. *See* 5 U.S.C. § 552a(a)(7), (b)(3).

[15] The plaintiffs have raised two other APA claims against the government: that the agencies acted arbitrarily and capriciously and in excess of their statutory authority. Because the Court finds that the plaintiffs have shown a likelihood of success on the merits of their APA claim that Education and OPM acted "not in accordance with law," 5 U.S.C. § 706(2), it need not consider the plaintiffs' likelihood of success on the remaining APA claims.

be fully rectified by the final judgment after trial.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (first quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991); and then quoting *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 680 (7th Cir. 2012)).

The plaintiffs have made a clear showing that they are likely to suffer irreparable harm without injunctive relief. DOGE affiliates have been granted access to systems of record that contain some of the plaintiffs' most sensitive data—Social Security numbers, dates of birth, home addresses, income and assets, citizenship status, and disability status—and their access to this trove of personal information is ongoing. There is no reason to believe their access to this information will end anytime soon because the government believes their access is appropriate. *See* ECF 27-1, at 23 (articulating the government's position that "[t]he Privacy Act therefore expressly allows disclosure of information protected under that statute in the circumstances of this case").

This continuing, unauthorized disclosure of the plaintiffs' sensitive personal information to DOGE affiliates is irreparable harm that money damages cannot rectify. *See, e.g.*, *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1275 (9th Cir. 1998) (finding "the retention of [the plaintiff's] undisputedly intimate medical information [without consent] . . . would constitute a continuing 'irreparable injury' for purposes of equitable relief"); *Roberts v. Austin*, 632 F.2d 1202, 1213 (5th Cir. 1980) (finding irreparable harm from state agency's unauthorized release of food stamp recipients' files to state's attorney because "the [Food Stamp] Act and accompanying regulations give recipients statutory protection from disclosure of confidential information" and "[a]s such, recipients possess a legitimate expectation that the information will be kept confidential"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 802 (N.D. Cal. 2022) ("The invasion of privacy triggered by the Pixel's allegedly ongoing disclosure of plaintiffs'

medical information is precisely the kind of intangible injury that cannot be remedied by damages."); *Haw. Psychiatric Soc. v. Ariyoshi*, 481 F. Supp. 1028, 1038 (D. Haw. 1979) (finding irreparable injury because "[t]he disclosure of the highly personal information contained in a psychiatrist's files to government personnel is itself a harm that is both substantial and irreversible").

### 3. Balance of the Equities and the Public Interest

The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). To balance the equities, the Court considers "the relative harms to the [plaintiffs and defendants], as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers) (quoting *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers)). These factors weigh in favor of a temporary restraining order.

The plaintiffs have shown that Education and OPM likely violated the APA by granting DOGE affiliates sweeping access to their sensitive personal information in defiance of the Privacy Act. "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). And "[t]here is a strong public interest in curing the effects of the government's unlawful acts[.]" *CACI, Inc. – Federal v. U.S. Navy*, 674 F. Supp. 3d 257, 279 (E.D. Va. 2023). Preventing the unauthorized disclosure of the plaintiffs' personal information is in the public interest.

The government argues that preliminary injunctive relief would harm the public interest because it would "limit[] the President's ability to effectuate the policy choices the American people elected him to pursue by limiting his advisors and other employees' ability to access information necessary to inform that policy." ECF 27, at 28. The temporary injunction in this case does not prevent the President from effectuating the administration's policies. It prevents the

disclosure of the plaintiffs' sensitive personal information to DOGE affiliates who, on the current record, do not have a need to know the information to perform their duties.

The balance of the equities and the public interest favor temporary injunctive relief.

The plaintiffs have established they are entitled to a temporary restraining order.

### C. Scope of the Injunction

Injunctive relief grants "full relief needed to remedy the injury to the prevailing party," but "it should not go beyond the extent of the established violation." *Hayes v. N. State Law Enforcement Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993). "Whenever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends." *S.C. Dep't of Wildlife & Marine Res. v. Marsh*, 866 F.2d 97, 100 (4th Cir. 1989) (quoting *Consol. Coal Co. v. Disabled Miners*, 442 F.2d 1261, 1267 (4th Cir. 1971)).

For the foregoing reasons, it is hereby ORDERED, pursuant Rule 65(b) of the Federal Rules of Civil Procedure, at 8:00 a.m. on this 24th day of February, 2025:

1.    The plaintiffs' motion for a temporary restraining order, ECF 14, is GRANTED in part and DENIED in part as follows:

     a.    The U.S. Department of Education; Denise L. Carter, the Acting Secretary of Education; and their officers, agents, servants, employees, and attorneys are ENJOINED from disclosing the personally identifiable information of the plaintiffs and the members of the plaintiff organizations to any DOGE affiliates, including Adam Ramada and the five other individuals primarily working on the DOGE agenda at the Department of Education, until March 10, 2025 at 8:00 a.m.;

b.      The Office of Personnel Management; Charles Ezell, the Acting Director of OPM; and their officers, agents, servants, employees, and attorneys are ENJOINED from disclosing the personally identifiable information of the plaintiffs and the members of the plaintiff organizations to any OPM employee working principally on the DOGE agenda who has been granted access to OPM records for the principal purpose of implementing the DOGE agenda (other than OPM Chief Information Officer Greg Hogan), until March 10, 2025 at 8:00 a.m.; and

c.      The plaintiffs' motion is DENIED as to the U.S. Department of the Treasury and Scott Bessent, the Secretary of the Treasury;

2.   The plaintiffs shall post security in the amount of $10,000 by February 28, 2025;

3.   The parties shall meet and confer to discuss a schedule for the production of the administrative record, any request for limited discovery, and a briefing schedule for a preliminary injunction motion and shall file a joint status report on these matters by 5:00 p.m. on February 25, 2025; and

4.   The Court will conduct a conference call to discuss the information in the joint status report on February 26, 2025, at 11:00 a.m. (chambers will circulate call-in information to counsel and a public access line will be posted on the Court's website).

Deborah L. Boardman
United States District Judge

33
JA249

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMERICAN FEDERATION OF
TEACHERS, et al.,

          Plaintiffs,

    v.

SCOTT BESSENT, et al.,

          Defendants.

Case No. 8:25-cv-430-DLB

## NOTICE OF FILING OF ADMINISTRATIVE RECORDS

Defendants in the above-captioned action file this notice of the filing of the redacted Administrative Records of the Office of Personnel Management, the U.S. Department of the Treasury, and the U.S. Department of Education regarding the granting of access to systems maintained by the respective agencies to employees implementing Executive Order 14,158. Certifications of completeness of the Administrative Record of the three agencies accompany this filing.[1]

Dated:  March 7, 2025        Respectfully submitted,

                          YAAKOV M. ROTH
                          Acting Assistant Attorney General
                          Civil Division, Federal Programs Branch

                          ELIZABETH J. SHAPIRO
                          Deputy Branch Director
                          Civil Division, Federal Programs Branch

---

[1] Notwithstanding the Court's order to file an administrative record in this case, Defendants maintain that the Amended Complaint does not challenge any final agency action and reserve their right to argue in further proceedings in this case, including in any subsequent appeal, that the Administrative Procedure Act does not provide for review.

United States Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 514-2705
Fax: (202) 616-8470
Elizabeth.Shapiro@usdoj.gov

EMILY HALL
Counsel to the Assistant Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 307-6482
Emily.Hall@usdoj.gov

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

Kelly O. Hayes
Interim U.S. Attorney

ARIANA WRIGHT ARNOLD
USDC Md Bar No. 23000
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
Tel: (410) 209-4813
Fax: (410) 962-2310
Ariana.Arnold@usdoj.gov

*Attorneys for Defendants*

2

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 7, 2025, I electronically filed the foregoing and the accompanying

attachments, and thereby caused a copy to be served on counsel of record.

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS

JA252

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMERICAN FEDERATION OF
TEACHERS, et al.,

               Plaintiffs,

      v.

SCOTT BESSENT, et al.,

               Defendants.

Case No. 8:25-cv-430-DLB

## CERTIFICATION OF ADMINISTRATIVE RECORD

I, Gregory J. Hogan, am currently employed as the Chief Information Officer for the Office of Personnel Management. I am familiar with the claims asserted against OPM in the above-captioned action regarding the granting of access to data systems to employees implementing Executive Order 14,158.

I hereby certify, to the best of my knowledge, that the accompanying administrative record is complete and contains all non-deliberative documents and materials directly or indirectly considered regarding the OPM actions challenged in this case.[1]  Among these documents and materials, OPM has duly evaluated all predecisional documents before excluding them from the record.

---

[1] Notwithstanding the Court's order to file an administrative record in this case, Defendants maintain that the Amended Complaint does not challenge any final agency action and reserve their right to argue in further proceedings in this case, including in any subsequent appeal, that the Administrative Procedure Act does not provide for review.

In accordance with 28 U.S.C. § 1746, I hereby certify and declare under penalty of perjury

that the foregoing is true and correct to the best of my knowledge, information, and belief.


_Gregory J. Hogan_
Gregory J. Hogan

2

**Index to Administrative Record of the Office of Personnel Management**

| | Title of Document | Bates Range |
|---|---|---|
| 1 | Gregory Hogan SF-61 | OPM-000001 |
| 2 | Gregory Hogan SF-50 | OPM-000002 – OPM-000003 |
| 3 | Gregory Hogan SF-50 | OPM-000004 – OPM-000005 |
| 4 | OPM-2 Employee SF-61 | OPM-000006 |
| 5 | OPM-2 Employee Acceptance of Uncompensated Services | OPM-000007 |
| 6 | OPM-2 Employee SF-50 | OPM-000008 – OPM-000009 |
| 7 | OPM-3 Employee SF-61 | OPM-000010 |
| 8 | OPM-3 Employee SF-50 | OPM-000011 |
| 9 | OPM-3 Employee Acceptance of Uncompensated Services | OPM-000012 |
| 10 | OPM-3 Employee Memorandum of Understanding | OPM-000013 |
| 11 | OPM-4 Employee SF-61 | OPM-000014 |
| 12 | OPM-4 Employee Acceptance of Uncompensated Services | OPM-000015 |
| 13 | OPM-5 Employee SF-61 | OPM-000016 |
| 14 | OPM-5 Employee SF-50 | OPM-000017 – OPM-000018 |
| 15 | OPM-5 Employee SF-50 | OPM-000019 – OPM-000020 |
| 16 | OPM-6 Employee SF-61 | OPM-000021 |
| 17 | OPM-6 Employee SF-50 | OPM-000022 |
| 18 | Email chain, "Getting DoGE Engineers access" | OPM-000023 – OPM-000029 |
| 19 | Email chain, "Account Creation Audit" | OPM-000030 – OPM-0000052 |
| 20 | Attachment, "Internal User Access Audit" | OPM-000053 – OPM-000054 |
| 21 | Office of Personnel Management, Privacy Act of 1974; System of Records, 88 Fed. Reg. 56,058 (Aug. 17, 2023) | OPM-000055 – OPM-000056 |
| 22 | Office of Personnel Management, Privacy Act of 1974: Update Existing Systems of Records, 77 Fed. Reg. 73,694 (Dec. 11, 2012) | OPM-000057 – OPM-000062 |
| 23 | OPM/GOVT-2, Employee Performance File System Records | OPM-000063 – OPM-000067 |
| 24 | Office of Personnel Management, Privacy Act of 1974; System of Records, 86 Fed. Reg. 68,291 (Dec. 1, 2021) | OPM-000068 –OPM-000069 |
| 25 | Office of Personnel Management, Privacy Act of 1974: Update and Amend System of Records, 79 Fed. Reg. 16,834 (Mar. 26, 2014) | OPM-000070 – OPM-000074 |

USCA4 Appeal: 25-1282     Doc: 39-1     Filed: 04/14/2025     Pg: 260 of 582

# APPOINTMENT AFFIDAVITS

Senior Advisor to the Director

(Position to which Appointed)

01/20/2025

(Date Appointed)

Office of Personnel Management

(Department or Agency)

Office of the Director

(Bureau or Division)

Washington, DC, United States

(Place of Employment)

I, ___GREGORY JOHN HOGAN___ , do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

(Signature of Appointee)

Subscribed and sworn (or affirmed) before me this 20 day of January , 2025

at Washington

(City)

DC

(State)

(SEAL)

(Signature of Officer)

Commission expires _____

(If by a Notary Public, the date of his/her Commission should be shown)

(Title)

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

EOD:OM00  USA Staffing

JA257

OPM-000001

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| HOGAN, GREGORY JOHN | ▮ | ▮ | 01/20/2025 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 146 | SES NONCAREER APPT |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| V4L | 5 U.S.C. 3394(A). |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| AWM | OPM MEMO DTD 01-20-2025 |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | SENIOR ADVISOR TO THE DIRECTOR FOR TECHNOLOGY AND DELIVERY  PD: 6A38081 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ES | 0301 | 00 | 00 | $195,200.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $195,200.00 | $0 | $195,200.00 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | OPM  OFC OF THE DIRECTOR  WASHINGTON DC |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Pref for RIF |
|---|---|---|---|
| 1 - None  2 - 5 Point  3 - 10 Point/Disability  4 - 10 Point/Compensable  5 - 10 Point/Other  6 - 10 Point/Compensable/30%  = 1 | 0 - None  1 - Permanent  2 - Conditional  3 - Indefinite  = 0 | TG | YES ☐  NO ☒ |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| B0 | 9  NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| KF | 01/20/2025 | F  FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service  2 - Excepted Service  3 - SES General  4 - SES Career  = 3 | E - Exempt  N - Nonexempt  = E | 41AA0 | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON DISTRICT OF COLUMBIA DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 10001 | | 0000 | 33.94 | CRITICAL-SENSITIVE (CS)/HIGH R |

45. Remarks

APPOINTMENT AFFIDAVIT EXECUTED 01-20-2025.

EMPLOYEE SUBJECT TO POST-EMPLOYMENT RESTRICTIONS UNDER 18 U.S.C. 207(C).

THE EMPLOYEE OCCUPIES A POSITION SUBJECT TO THE PAY FREEZE FOR CERTAIN SENIOR POLITICAL OFFICIALS. NOTWITHSTANDING OTHERWISE APPLICABLE PAY STATUTES AND REGULATIONS, PAY MAY BE SET AND ADJUSTED ONLY IN ACCORDANCE WITH APPLICABLE PROVISIONS OF THE PAY FREEZE STATUTE.

TENURE AS USED FOR 5 U.S.C. 3502 IS NOT APPLICABLE TO THE SENIOR EXECUTIVE SERVICE.

CREDITABLE MILITARY SERVICE:0000

PREVIOUS RETIREMENT COVERAGE: NEVER COVERED

EMPLOYEE IS AUTOMATICALLY COVERED UNDER FERS, FERS-RAE, OR FERS-FRAE.

UPON APPOINTMENT TO THIS POSITION, APPOINTEE RECEIVED AND SIGNED THE ETHICS PLEDGE. MEMBER RECEIVED FINANCIAL DISCLOSURE MEMORANDUM AND SF-278 WHICH IS TO BE COMPLETED AND RETURN WITHIN 30 DAYS OF APPOINTMENT. THIS IS A TEMPORARY APPOINTMENT WITH A NOT TO EXCEED DATE OF 2-19-2025.

| 46. Employing Department or Agency  OPM | 50. Signature/Authentication and Title of Approving Official  ELECTRONICALLY SIGNED BY:  CARMEN GARCIA-WHITESIDE  CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |
|---|---|
| 47. Agency Code  OM00 | 48. Personnel Office ID  1000 | 49. Approval Date  01/27/2025 | |

| 5-Part | 2 - OPF Copy - Long-Term Record -- DO NOT DESTROY | Editions Prior to 7/91 Are Not Usable After 6/30/93  NSN 7540-01-333-6236 |
|---|---|---|

Case 8:25-cv-00430-DLB    USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 261 of 582

OPM-000002

# NOTICE TO EMPLOYEE

This is your copy of the official notice of a personnel action. Keep it with your records because it could be used to make employment, pay, and qualifications decisions about you in the future.

**The Action**

- Blocks 5-B and 6-B describe the personnel action(s) that occurred.
- Blocks 15-22 show the position and organization to which you are assigned.

**Pay**

- When the personnel action is an award or bonus, block 20 shows the amount of that one-time cash payment. When the action is not an award or bonus, block 12 shows your former total annual salary, and block 20 shows your new total annual salary (block 20C plus 20D). The amounts in blocks 12 and 20 do not include any one-time cash payments (such as performance awards and recruitment or relocation bonuses) or payments that may vary from one pay period to the next (such as overtime pay), or other forms of premium pay.
- Block 20A is the scheduled amount for your grade and step, including any special salary rate you receive. It does not include any locality-based pay. This rate of pay serves as the basis for determining your rate of pay upon promotion, change to a lower grade, or reassignment, and is used for pay retention purposes.
- Block 20B is the annual dollar amount of your interim Geographic Adjustment or, beginning in 1994, your locality-based comparability payment.
- Block 20C is your Adjusted Basic Pay, the total of blocks 20A and 20B. It serves as the basis for computing your retirement benefits, life insurance, premium pay, and severance pay.
- Block 20D is the total dollar amount of any Retention Allowances, Supervisory Differentials, and Staffing Differentials that are listed in the remarks block. These payments are made in the same manner as basic pay, but are not a part of basic pay for any purpose.

**Block 24 - Tenure**

- Identifies the nature of your appointment and is used to determine your rights during a reduction in force (R·F). Tenure groups are explained in more detail in subchapter 26 of FPM Supplement 296-33 and RIF is explained in FPM Supplement 351-1; both should be available for review in your personnel office.

**Block 26 - Veterans Preference to RIF**

- Indicates whether you have preference for reduction-in-force purposes.

**Block 30 - Retirement Plan**

- **FICA** - Social Security System
- **CS** - Civil Service Retirement System
- **CS-Spec** - Civil Service Retirement System for law enforcement and firefighter personnel
- **FS** - Foreign Service Retirement and Disability System
- **FERS** - Federal Employees' Retirement System
- **FERS-Reserve Tech** - Federal Employees' Retirement System for National Guard Reserve Technicians
- **FERS-ATC** - Federal Employees' Retirement System for Air Traffic Controllers
- **FERS-Spec** - Federal Employees' Retirement System for law enforcement and firefighter personnel
- **FSPS** - Foreign Service Pension System

**Block 31 - Service computation Date (Leave)**

- Shows when your Federal service began unless you have prior creditable service. If so, this date is constructed to include your total years, months and days of prior creditable civilian and military service.
- Full-time employees with fewer than 3 years of service earn 4 hours of annual leave each pay period; those with 3 or more years but less than 15 years earn 6 hours each pay period; and those with 15 or more years earn 8 hours each pay period.
- Your earnings and leave statement or your time and attendance card will

**Block 32 - Work Schedule**

- Your work schedule is established by your supervisor.
- A full-time employee works on a prearranged scheduled tour of duty that is usually 40 hours per week. A part-time employee has a prearranged scheduled tour of duty that is usually between 16 and 32 hours per week. An intermittent employee has no prearranged scheduled tour of duty and works when needed.
  Full-Time and part-time employees whose appointments are for 90 days or more are usually eligible to earn annual leave; intermittent employees are not. Seasonal employees work on an annually recurring basis for periods of less than 12 months each year; they may have a full-time, a part-time, or an intermittent schedule during their work season.
  On-call employees work during periods of heavy workload and are in pay status for at least 6 months of each year; they may have either a full-time or a part-time schedule when they are in pay status.

**Block 33 - Part-time Hours Per Biweekly Pay Period**

  Indicates the number of hours a part-time employee is scheduled to work during a two-week pay period.

**Block 34 - Position Occupied**

  Identifies the employment system under which you are serving -- the Competitive Service, the Excepted Service, or the Senior Executive Service (SES).
  The employment system determines your eligibility to move to other jobs in the Federal service, your rights in disciplinary and adverse actions, and your eligibility for reemployment if you have Federal service.

**Block 35 - FLSA Category**

  Exempt employees are not covered by the minimum wage and overtime law (the Fair Labor Standards Act); nonexempt employees are covered.

**Block 37 - Bargaining Unit Status**

  Identifies a bargaining unit to which you belong, whether or not your are actually a member of a labor organization. Code "7777" indicates you are eligible but not in a bargaining unit; code "8888" indicates you are ineligible for inclusion in a bargaining unit.

**Block 38 and 39 - Duty Station**

  Identifies the city, county, and state or the overseas location, where you actually work.

## OTHER INFORMATION

- If your appointment entitles you to elect health benefits or life insurance, and you have not been provided materials explaining the programs available and the enrollment forms, contact your personnel specialist.

- Your personnel specialist will also tell you if your position is covered by an agreement between an employee organization (union) and your agency. If you are eligible to and elect to join an employee organization, you can elect to have your dues withheld from your salary.

- If you have questions or need more information about your rights and benefits, ask your supervisor or your personnel office.

- Definitions for any coded data in Blocks 1-24, 27-39 and 45-50 may be found in Federal Personnel Manual Supplement 292-1.

**It is your responsibility to read all the information on the front of this notice and tell your personnel office immediately if there is an error in it.**

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 262 of 582

OPM-000003

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 263 of 582

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| HOGAN, GREGORY JOHN | ███████ | ███████ | 02/11/2025 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 546 | CONV TO SES NONCAREER APPT | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| V4L | 5 U.S.C. 3394(A). | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| AWM | OPM FORM 1652 DATED 02-11-2025 | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| SENIOR ADVISOR TO THE DIRECTOR FOR TECHNOLOGY AND DELIVERY | CHIEF INFORMATION OFFICER |
| PD: 6A38081 | PD: 6A39566 |

| 8. Pay Plan | 9. Occ Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ES | 0301 | 00 | 00 | $195,200.00 | PA | ES | 0340 | 00 | 00 | $195,200.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $195,200.00 | $0 | $195,200.00 | $0 | $195,200.00 | $0 | $195,200.00 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| OPM<br>OFC OF THE DIRECTOR<br><br><br><br>WASHINGTON DC | OPM<br>OFC OF THE DIRECTOR<br>OFC OF THE CHIEF INFORMATION OFFICER<br><br>WASHINGTON DC |

### EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | 25. Agency Use | 26. Veterans Pref for RIF |
|---|---|---|---|---|---|
| 1 - None 3 - 10 Point/Disability 5 - 10 Point/Other<br>2 - 5 Point 4 - 10 Point/Compensable 6 - 10 Point/Compensable/30% | | | 0 - None 2 - Conditional<br>1 - Permanent 3 - Indefinite | | |
| 1 | | | 0 | JS | YES [ ] NO [X] |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| B0 ███████ | 9 NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| KF ███████ | 01/20/2025 | F FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service 3 - SES General<br>2 - Excepted Service 4 - SES Career | E - Exempt<br>N - Nonexempt | 51AA0 | 8888 |
| 3 | E | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON DISTRICT OF COLUMBIA DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 10068 | | 0000 | 33.94 | SPECIAL-SENSITIVE (SS)/HIGH RI |

45. Remarks

APPROVED FOR CONVERSION TO PERMANENT INCUMBENCY ON 2-11-2025. OPM FORM 1652 DATED 02-11-2025.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| OPM | ELECTRONICALLY SIGNED BY: |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| OM00 | 1000 | 02/18/2025 | CARMEN GARCIA-WHITESIDE<br>CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

5-Part

**2 - OPF Copy - Long-Term Record -- DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6236

OPM-000004

# NOTICE TO EMPLOYEE

This is your copy of the official notice of a personnel action. Keep it with your records because it could be used to make employment, pay, and qualifications decisions about you in the future.

## The Action

- Blocks 5-B and 6-B describe the personnel action(s) that occurred.
- Blocks 15-22 show the position and organization to which you are assigned.

## Pay

- When the personnel action is an award or bonus, block 20 shows the amount of that one-time cash payment. When the action is not an award or bonus, block 12 shows your former total annual salary, and block 20 shows your new total annual salary (block 20C plus 20D). The amounts in blocks 12 and 20 do not include any one-time cash payments (such as performance awards and recruitment or relocation bonuses) or payments that may vary from one pay period to the next (such as overtime pay), or other forms of premium pay.
- Block 20A is the scheduled amount for your grade and step, including any special salary rate you receive. It does not include any locality-based pay. This rate of pay serves as the basis for determining your rate of pay upon promotion, change to a lower grade, or reassignment, and is used for pay retention purposes.
  Block 20B is the annual dollar amount of your interim Geographic Adjustment or, beginning in 1994, your locality-based comparability payment.
  Block 20C is your Adjusted Basic Pay, the total of blocks 20A and 20B. It serves as the basis for computing your retirement benefits, life insurance, premium pay, and severance pay.
  Block 20D is the total dollar amount of any Retention Allowances, Supervisory Differentials, and Staffing Differentials that are listed in the remarks block. These payments are made in the same manner as basic pay, but are not a part of basic pay for any purpose.

## Block 24 - Tenure

- Identifies the nature of your appointment and is used to determine your rights during a reduction in force (R F). Tenure groups are explained in more detail in subchapter 26 of FPM Supplement 296-33 and RIF is explained in FPM Supplement 351-1, both should be available for review in your personnel office.

## Block 26 - Veterans Preference to RIF

- Indicates whether you have preference for reduction-in-force purposes.

## Block 30 - Retirement Plan

- FICA — Social Security System
- CS — Civil Service Retirement System
- CS-Spec — Civil Service Retirement System for law enforcement and firefighter personnel
- FS — Foreign Service Retirement and Disability System
- FERS — Federal Employees' Retirement System
- FERS-Reserve Tech — Federal Employees' Retirement System for National Guard Reserve Technicians
- FERS-ATC — Federal Employees' Retirement System for Air Traffic Controllers
- FERS-Spec — Federal Employees' Retirement System for law enforcement and firefighter personnel
- FSPS — Foreign Service Pension System

## Block 31 - Service computation Date (Leave)

- Shows when your Federal service began unless you have prior creditable service. If so, this date is constructed to include your total years, months and days of prior creditable civilian and military service.
- Full-time employees with fewer than 3 years of service earn 4 hours of annual leave each pay period; those with 3 or more years but less than 15 years earn 6 hours each pay period; and those with 15 or more years earn 8 hours each pay period.
- Your earnings and leave statement or your time and attendance card will

## Block 32 - Work Schedule

- Your work schedule is established by your supervisor.
- A full-time employee works on a prearranged scheduled tour of duty that is usually 40 hours per week. A part-time employee has a prearranged scheduled tour of duty that is usually between 16 and 32 hours per week. An intermittent employee has no prearranged scheduled tour of duty and works when needed.
  Full-Time and part-time employees whose appointments are for 90 days or more are usually eligible to earn annual leave; intermittent employees are not. Seasonal employees work on an annually recurring basis for periods of less than 12 months each year; they may have a full-time, a part-time, or an intermittent schedule during their work season.
  On-call employees work during periods of heavy workload and are in pay status for at least 6 months of each year; they may have either a full-time or a part-time schedule when they are in pay status.

## Block 33 - Part-time Hours Per Biweekly Pay Period

Indicates the number of hours a part-time employee is scheduled to work during a two-week pay period.

## Block 34 - Position Occupied

Identifies the employment system under which you are serving -- the Competitive Service, the Excepted Service, or the Senior Executive Service (SES).
The employment system determines your eligibility to move to other jobs in the Federal service, your rights in disciplinary and adverse actions, and your eligibility for reemployment if you have Federal service.

## Block 35 - FLSA Category

Exempt employees are not covered by the minimum wage and overtime law (the Fair Labor Standards Act); nonexempt employees are covered.

## Block 37 - Bargaining Unit Status

Identifies a bargaining unit to which you belong, whether or not your are actually a member of a labor organization. Code "7777" indicates you are eligible but not in a bargaining unit; code "8888" indicates you are ineligible for inclusion in a bargaining unit.

## Block 38 and 39 - Duty Station

Identifies the city, county, and state or the overseas location, where you actually work.

## OTHER INFORMATION

- If your appointment entitles you to elect health benefits or life insurance, and you have not been provided materials explaining the programs available and the enrollment forms, contact your personnel specialist.

- Your personnel specialist will also tell you if your position is covered by an agreement between an employee organization (union) and your agency. If you are eligible and elect to join an employee organization, you can elect to have your dues withheld from your salary.

- If you have questions or need more information about your rights and benefits, ask your supervisor or your personnel office.

- Definitions for any coded data in Blocks 1-24, 27-39 and 45-50 may be found in Federal Personnel Manual Supplement 292-1.

**It is your responsibility to read all the information on the front of this notice and tell your personnel office immediately if there is an error in it.**

OPM-000005

USCA4 Appeal: 25-1282     Doc: 39-1     Filed: 04/14/2025     Pg: 264 of 582

Docusign Envelope ID: C7A1287B-E7E2-47B8-BD83-CA83DF85713E

# APPOINTMENT AFFIDAVITS

Senior Advisor
*(Position to which Appointed)*

01/20/2025
*(Date Appointed)*

Office of Personnel Management    Office of the Director
*(Department or Agency)*                 *(Bureau or Division)*

Washington, D.C.
*(Place of Employment)*

## OPM-2

I, _____, do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

## OPM-2

*(Signature of Appointee)*

Subscribed and sworn (or affirmed) before me this 20 day of January , 2025

at Washington                    DC
     *(City)*                        *(State)*

(SEAL)

*(Signature of Officer)*

Commission expires_____
*(If by a Notary Public, the date of his/her Commission should be shown)*

Acting Director
*(Title)*

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

OPM-000006

Docusign Envelope ID: 73EB40E2-7EF1-4CD1-B9BB-609470B2ED71

**Acceptance of Uncompensated Services**

I understand that I may be employed with the United States Office of Personnel Management (OPM) under the authority of 5 U.S.C. § 3109. Under certain circumstances, OPM may use this authority to employ experts or consultants with or without pay, provided that such personnel agree in advance in writing to waive any claims for compensation for those services.

I desire to offer my services to OPM. Accordingly, I agree to being appointed as an uncompensated employee of OPM; I understand that I will not receive any pay or any other form of compensation from OPM, the federal Government, or any other source for the services I render to OPM.

In addition, I hereby waive any and all claims I may have in the future against OPM and/or the federal Government on account of the services I render to OPM.

Signed: __ **OPM-2** _____

Printed Name of Appointee: _____ **OPM-2** _____

Date: _____ January 20, 2025 _____

OPM-000007

Pg: 267 of 582    Filed: 04/14/2025    Doc: 39-1    USCA4 Appeal: 25-1282

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name *(Last, First, Middle)* | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| OPM-2 | | | 01/20/2025 |

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action | | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|---|
| 171 | EXC APPT NTE  07/18/2025 | | | |
| 5-C. Code | 5-D. Legal Authority | | 6-C. Code | 6-D. Legal Authority |
| H2L | REG 304.103. | | | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority |

## SECOND ACTION

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | EXPERT |
| | PD: 6A39741 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ED | 0301 | 00 | 00 | $0 | WC |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $0 | $0 | $0 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | OPM<br>OFC OF THE DIRECTOR<br><br>WASHINGTON DC |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | 25. Agency Use | 26. Veterans Pref for RIF |
|---|---|---|---|---|---|
| 1 - None  3 - 10 Point/Disability  5 - 10 Point/Other<br>2 - 5 Point  4 - 10 Point/Compensable  6 - 10 Point/Compensable/30% | | | 0 - None  2 - Conditional<br>1 - Permanent  3 - Indefinite | TG | YES  [X] NO |
| 1 | | | 0 | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| A0 | 9    NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 4 | 01/20/2025 | F    FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive service  3 - SES General<br>2 - Excepted Service  4 - SES Career | E - Exempt<br>N - Nonexempt | 41AA0 | 8888 |
| 2 | E | | |

| 38. Duty Station Code | 39. Duty Station *(City - County - State or Overseas Location)* |
|---|---|
| 11-0010-001 | WASHINGTON DISTRICT OF COLUMBIA DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 10001 | | 0000 | 33.94 | CRITICAL-SENSITIVE (CS)/HIGH R |

### 45. Remarks

APPOINTMENT AFFIDAVIT EXECUTED 01-20-2025

REASON FOR TEMPORARY APPOINTMENT: TO PROVIDE A HIGH LEVEL OF EXPERTISE RELATIVE TO ISSUES WHICH HAVE A SIGNIFICANT IMPACT ON THE FORMULATION OF AGENCY GOALS AND OBJECTIVES TO THE OPM DIRECTOR.

CREDITABLE MILITARY SERVICE: 0000.

PREVIOUS RETIREMENT COVERAGE: NEVER COVERED

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| OPM | ELECTRONICALLY SIGNED BY: |
| | CARMEN GARCIA-WHITESIDE |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| OM00 | 1000 | 01/30/2025 | CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

| 5-Part | 2 - OPF Copy - Long-Term Record -- DO NOT DESTROY | Editions Prior to 7/91 Are Not Usable After 6/30/93<br>NSN 7540-01-333-6236 |
|---|---|---|

OPM-000008

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 268 of 582

# NOTICE TO EMPLOYEE

This is your copy of the official notice of a personnel action. Keep it with your records because it could be used to make employment, pay, and qualifications decisions about you in the future.

**The Action**

- Blocks 5-B and 6-B describe the personnel action(s) that occurred.
- Blocks 15-22 show the position and organization to which you are assigned.

**Pay**

- When the personnel action is an award or bonus, block 20 shows the amount of that one-time cash payment. When the action is not an award or bonus, block 12 shows your former total annual salary, and block 20 shows your new total annual salary (block 20C plus 20D). The amounts in blocks 12 and 20 do not include any one-time cash payments (such as performance awards and recruitment or relocation bonuses) or payments that may vary from one pay period to the next (such as overtime pay), or other forms of premium pay.
- Block 20A is the scheduled amount for your grade and step, including any special salary rate you receive. It does not include any locality-based pay. This rate of pay serves as the basis for determining your rate of pay upon promotion, change to a lower grade, or reassignment, and is used for pay retention purposes.
  Block 20B is the annual dollar amount of your Interim Geographic Adjustment or, beginning in 1994, your locality-based comparability payment.
  Block 20C is your Adjusted Basic Pay, the total of blocks 20A and 20B. It serves as the basis for computing your retirement benefits, life insurance, premium pay, and severance pay.
  Block 20D is the total dollar amount of any Retention Allowances, Supervisory Differentials, and Staffing Differentials that are listed in the remarks block. These payments are made in the same manner as basic pay, but are not a part of basic pay for any purpose.

**Block 24 - Tenure**

- Identifies the nature of your appointment and is used to determine your rights during a reduction in force (RIF). Tenure groups are explained in more detail in subchapter 26 of FPM Supplement 296-33 and RIF is explained in FPM Supplement 351-1; both should be available for review in your personnel office.

**Block 26 - Veterans Preference to RIF**

- Indicates whether you have preference for reduction-in-force purposes.

**Block 30 - Retirement Plan**

| | |
|---|---|
| FICA | - Social Security System |
| CS | - Civil Service Retirement System |
| CS-Spec | - Civil Service Retirement System for law enforcement and firefighter personnel |
| FS | - Foreign Service Retirement and Disability System |
| FERS | - Federal Employees' Retirement System |
| FERS-Reserve Tech | - Federal Employees' Retirement System for National Guard Reserve Technicians |
| FERS-ATC | - Federal Employees' Retirement System for Air Traffic Controllers |
| FERS-Spec | - Federal Employees' Retirement System for law enforcement and firefighter personnel |
| FSPS | - Foreign Service Pension System |

**Block 31 - Service computation Date (Leave)**

- Shows when your Federal service began unless you have prior creditable service. If so, this date is constructed to include your total years, months and days of prior creditable civilian and military service.
- Full-time employees with fewer than 3 years of service earn 4 hours of annual leave each pay period; those with 3 or more years but less than 15 years earn 6 hours each pay period; and those with 15 or more years earn 8 hours each pay period.
- Your earnings and leave statement or your time and attendance card will

**Block 32 - Work Schedule**

- Your work schedule is established by your supervisor.
- A full-time employee works on a prearranged scheduled tour of duty that is usually 40 hours per week. A part-time employee has a prearranged scheduled tour of duty that is usually between 16 and 32 hours per week. An intermittent employee has no prearranged scheduled tour of duty and works when needed.
  Full-Time and part-time employees whose appointments are for 90 days or more are usually eligible to earn annual leave; intermittent employees are not. Seasonal employees work on an annually recurring basis for periods of less than 12 months each year; they may have a full-time, a part-time, or an intermittent schedule during their work season.
  On-call employees work during periods of heavy workload and are in pay status for at least 6 months of each year; they may have either a full-time or a part-time schedule when they are in pay status.

**Block 33 - Part-time Hours Per Biweekly Pay Period**

Indicates the number of hours a part-time employee is scheduled to work during a two-week pay period.

**Block 34 - Position Occupied**

Identifies the employment system under which you are serving -- the Competitive Service, the Excepted Service, or the Senior Executive Service (SES).
The employment system determines your eligibility to move to other jobs in the Federal service, your rights in disciplinary and adverse actions, and your eligibility for reemployment if you have Federal service.

**Block 35 - FLSA Category**

Exempt employees are not covered by the minimum wage and overtime law (the Fair Labor Standards Act); nonexempt employees are covered.

**Block 37 - Bargaining Unit Status**

Identifies a bargaining unit to which you belong, whether or not your are actually a member of a labor organization. Code "7777" indicates you are eligible but not in a bargaining unit; code "8888" indicates you are ineligible for inclusion in a bargaining unit.

**Block 38 and 39 - Duty Station**

Identifies the city, county, and state or the overseas location, where you actually work.

## OTHER INFORMATION

- If your appointment entitles you to elect health benefits or life insurance, and you have not been provided materials explaining the programs available and the enrollment forms, contact your personnel specialist.

- Your personnel specialist will also tell you if your position is covered by an agreement between an employee organization (union) and your agency. If you are eligible to or elect to join an employee organization, you can elect to have your dues withheld from your salary.

- If you have questions or need more information about your rights and benefits, ask your supervisor or your personnel office.

- Definitions for any coded data in Blocks 1-24, 27-39 and 45-50 may be found in Federal Personnel Manual Supplement 292-1.

**It is your responsibility to read all the information on the front of this notice and tell your personnel office immediately if there is an error in it.**

# APPOINTMENT AFFIDAVITS

Expert
**(Position to which Appointed)**

01/20/2025
**(Date Appointed)**

Office of Personnel Manager    Office of the Director
**(Department or Agency)**    **(Bureau or Division)**

Washinton, D.C.
**(Place of Employment)**

I, **OPM-3** _____, do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

**OPM-3**
(Signature of Appointee)

Subscribed and sworn (or affirmed) before me this 20 day of Janaury _____, 2025

at Washington _____    D.C.
    **(City)**          **(State)**

(Signature of Officer)

(SEAL)

Commission expires_____
(If by a Notary Public, the date of his/her Commission should be shown)

_____ Director
        (Title)

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

OPM-000010

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

OPM-5

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| | | | 01/20/2025 |

## FIRST ACTION / SECOND ACTION

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5–A. Code  171 | 5–B. Nature of Action  EXC APPT NTE   07/18/2025 | 6–A. Code | 6–B. Nature of Action |
| 5–C. Code  H2L | 5–D. Legal Authority  REG 304.103. | 6–C. Code | 6–D. Legal Authority |
| 5–E. Code | 5–F. Legal Authority | 6–E. Code | 6–F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number  EXPERT  PD: 6A39740 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ED | 0301 | 00 | 00 | $0 | WC |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $0 | $0 | $0 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization  OPM  OFC OF THE DIRECTOR  WASHINGTON DC |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference  1 — 1 – None   3 – 10 –Point Disability   5 – 10 –Point Other  2 – 5 –Point   4 – 10 –Point Compensable   6 – 10 –Point Compensable/30% | 24. Tenure  0   0 – None   2 – Conditional  1 – Permanent   3 – Indefinite | 25. Agency Use  TG | 26. Veterans Preference for RIF  YES   X   NO |
|---|---|---|---|
| 27. FEGLI  A0 | 28. Annuitant Indicator  9   NOT APPLICABLE | | 29. Pay Rate Determinant  0 |
| 30. Retirement Plan  4 | 31. Service Comp. Date (Leave)  01/20/2025 | 32. Work Schedule  F   FULL TIME | 33. Part–Time Hours Per Biweekly Pay Period |

## POSITION DATA

| 34. Position Occupied  1 – Competitive Service   3 – SES General  2   2 – Excepted Service   4 – SES Career Reserved | 35. FLSA Category  E   E – Exempt   N – Nonexempt | 36. Appropriation Code  41AA0 | 37. Bargaining Unit Status  8888 |
|---|---|---|---|
| 38. Duty Station Code  11-0010-001 | 39. Duty Station (City – County – State or Overseas Location)  WASHINGTON DISTRICT OF COLUMBIA DC | | |

| 40. Agency Data  10001 | 41. | 42.  0000 | 43.  33.94 | 44.  CRITICAL-SENSITIVE (CS)/HIGH R |
|---|---|---|---|---|

**45. Remarks**
APPOINTMENT AFFIDAVIT EXECUTED 01/20/2025
REASON FOR TEMPORARY APPOINTMENT: TO PROVIDE A HIGH LEVEL OF EXPERTISE RELATIVE TO ISSUES WHICH HAVE A
SIGNIFICANT IMPACT ON THE FORMULATION OF AGENCY GOALS AND OBJECTIVES TO THE OPM DIRECTOR.
CREDITABLE MILITARY SERVICE: 0000
PREVIOUS RETIREMENT COVERAGE: NEVER COVERED.

| 46. Employing Department or Agency  OPM | 50. Signature/Authentication and Title of Approving Official  ELECTRONICALLY SIGNED BY: |
|---|---|
| 47. Agency Code  OM00 | 48. Personnel Office ID  1000 | 49. Approval Date  01/30/2025 | CARMEN GARCIA-WHITESIDE  CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

5–Part 50–316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

USCA4 Appeal: 25-1282     Doc: 39-1     Filed: 04/14/2025     Pg: 270 of 582

OPM-000011

### Acceptance of Uncompensated Services

I understand that I may be employed with the United States Office of Personnel Management (OPM) under the authority of 5 U.S.C. § 3109.  Under certain circumstances, OPM may use this authority to employ experts or consultants with or without pay, provided that such personnel agree in advance in writing to waive any claims for compensation for those services.

I desire to offer my services to OPM.  Accordingly, I agree to being appointed as an uncompensated employee of OPM; I understand that I will not receive any pay or any other form of compensation from OPM, the federal Government, or any other source for the services I render to OPM.

In addition, I hereby waive any and all claims I may have in the future against OPM and/or the federal Government on account of the services I render to OPM.

Signed: _____ **OPM-3** _____

Printed Name of Appointee:   **OPM-3**

Date: _____ January 28, 2025 _____

OPM-000012

2/12/25

**MEMORANDUM OF UNDERSTANDING BETWEEN THE SOCIAL SECURITY ADMINISTRATION,
THE OFFICE OF PERSONNEL MANAGEMENT, THE DEPARTMENT OF EDUCATION,
AND APPOINTEE    OPM-3**

During Appointee's term of service at the Social Security Administration (SSA), Appointee may also serve as an unpaid Special Government Employee (SGE) for the Office of Personnel Management (OPM) and the Department of Education . The Appointees duties, qualifications, and salary are contained in the attached Expert or Consultant Appointment Request & Certification (Appointment Request and Certification). To ensure compliance with applicable law, the Appointee, OPM, the Department of Education (DoEd.), and SSA (the parties) enter into this Memorandum of Understanding (MOU) and agree as follows:

1.  During Appointee's term of service to SSA, Appointee will receive payment, as described in the Appointment Request and Certification, from SSA.
2.  Neither OPM nor DoEd. shall not pay Appointee during his SSA term of service.
3.  While on duty time at SSA, Appointee shall only perform duties for SSA.
4.  While on duty time at SSA, Appointee shall not perform any work for or on behalf of OPM or DoEd..
5.  Appointee shall perform SSA work only at SSA Headquarters (HQ) in Woodlawn, Maryland.
6.  Appointee shall not perform any work for OPM or DoEd.at SSA facilities, including but not limited to SSA HQ.
7.  SSA, OPM and DoEd. shall provide any equipment or systems access to ensure access to their respective networks. Neither SSA, OPM nor DoEd. shall be responsible for providing access to the other agency's network or systems.
8.  Appointee shall not perform work for either OPM or DoEd. using SSA equipment or resources.
9.  Appointee shall not perform SSA work using either OPM or DoEd. equipment or resources.
10. Appointee shall not share any Personally Identifiable Information accessed or obtained through the use of SSA systems or work performed for SSA, with any external entity, organization, or agency federal or state, including OPM and DoEd.
11. Appointee shall not share or disclose SSA information that is non- PII, non-public information with any non-federal entity.  Any disclosure of non- PII, non-public information to another federal entity, organization, or agency shall be made only with expressed permission of the Office of the Commissioner.
12. Appointee shall not share or disclose OPM or DoEd. information to SSA without appropriate permission from each agency's appropriate authorizing official.
13. Appointee shall abide by all SSA regulations and policies regarding access to and protection of any agency records, information, and work products.
14. Appointee shall abide all SSA regulations and policies regarding ethics and employee conduct.
15. In the event of any lapse in appropriations, the Appointee will follow the instructions issued by SSA related to his SSA service.

**AUTHORIZING SIGNATURES AND DATES**

The signatories below warrant and represent that they have the competent authority on behalf of their respective agencies to enter into the obligations set forth in this MOU.  This agreement will become effective on the date it is signed by last party.

| Social Security Administration | Office of Personnel Management | Department of Education |
|---|---|---|
| *Florence Felix-Lawson* | *Brian Bjelde* | |
| [NAME] Florence Felix-Lawson [TITLE] Chief Human Capital Officer Social Security Administration | [NAME] Brian Bjelde [TITLE] Senior Advisor to Acting Director of OPM | James P. Bergeron Acting Under Secretary |
| Date: 2/13/25 | Date: 2/12/2025 | Date: 02/12/25 |

**Appointee**

**OPM-3**
Akash Bobba

Date: 02/12/2025

JA269

OPM-000013

# APPOINTMENT AFFIDAVITS

Expert
*(Position to which Appointed)*

01/24/2025
*(Date Appointed)*

Office of Personnel Management
*(Department or Agency)*

Office of the Director
*(Bureau or Division)*

Washington, D.C.
*(Place of Employment)*

I, **OPM-4** _____, do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

# OPM-4

*(Signature of Appointee)*

Subscribed and sworn (or affirmed) before me this 24 day of JANUARY , 2025

at WASHINGTON    D.C.
*(City)*    *(State)*

*(Signature of Officer)*

(SEAL)

Commission expires_____
*(If by a Notary Public, the date of his/her Commission should be shown)*

SUPERVISORY HR SPECIALIST
*(Title)*

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

JA270

OPM-000014

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 273 of 582

**Acceptance of Uncompensated Services**

I understand that I may be employed with the United States Office of Personnel Management (OPM) under the authority of 5 U.S.C. § 3109. Under certain circumstances, OPM may use this authority to employ experts or consultants with or without pay, provided that such personnel agree in advance in writing to waive any claims for compensation for those services.

I desire to offer my services to OPM. Accordingly, I agree to being appointed as an uncompensated employee of OPM; I understand that I will not receive any pay or any other form of compensation from OPM, the federal Government, or any other source for the services I render to OPM.

In addition, I hereby waive any and all claims I may have in the future against OPM and/or the federal Government on account of the services I render to OPM.

# OPM-4

Signed: _____

Printed Name of Appointee: _____**OPM-4**_____

Date: _____January 24, 2025_____

OPM-000015

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 274 of 582

# APPOINTMENT AFFIDAVITS

Senior Advisor to the Director
_____
(Position to which Appointed)

01/20/2025
(Date Appointed)

Office of Personnel Management    Office of the Director
(Department or Agency)    (Bureau or Division)

Washington, DC, United States
(Place of Employment)

I, **OPM-5** _____ , do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

**OPM-5**
_____
(Signature of Appointee)

Subscribed and sworn (or affirmed) before me this 20 day of January , 2025

at Washington, DC
(City)                (State)

_____
(Signature of Officer)

(SEAL)

Commission expires _____
(If by a Notary Public, the date of his/her Commission should be shown)

Acting Director
(Title)

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

EOD:OM00  USA Staffing

OPM-000016

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 275 of 582

USCA4 Appeal: 25-1282     Doc: 39-1     Filed: 04/14/2025     Pg: 276 of 582

Standard Form 50
Rev. 7/91
U.S. Offfice of Personnel Management
FPM Supp. 296-33, Subch. 4

**NOTIFICATION OF PERSONNEL ACTION**

| 1. Name *(Last, First, Middle)* | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| OPM-5 | | | 01/20/2025 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 190 | PROVISIONAL APPT NTE   05/20/2025 |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| Y9K | SCH C, 213.3302(A). |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| AWM | OPM FORM 1019 DATED 01-20-2025 |

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

**7. FROM: Position Title and Number**

**15. TO: Position Title and Number**
SENIOR ADVISOR TO THE DIRECTOR FOR INFORMATION TECHNOLOGY

PD: 6A38025

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GS | 0301 | 15 | 10 | $195,200.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $162,672.00 | $32,528.00 | $195,200.00 | $0 |

**14. Name and Location of Position's Organization**

**22. Name and Location of Position's Organization**

OPM
OFC OF THE DIRECTOR

WASHINGTON DC

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Pref for RIF |
|---|---|---|---|---|
| 1 - None   3 - 10 Point/Disability   5 - 10 Point/Other | | 0 - None   2 - Conditional | | |
| 2 - 5 Point   4 - 10 Point/Compensable   6 - 10 Point/Compensable/30% | | 1 - Permanent 3 - Indefinite | | |
| 1 | | 3 | MK | YES   X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0 | 9    NOT APPLICABLE | 7 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| KF | 01/20/2025 | F    FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service   3 - SES General | E - Exempt | | |
| 2 - Excepted Service   4 - SES Career | N - Nonexempt | | |
| 2 | E | 41AA0 | 8888 |

| 38. Duty Station Code | 39. Duty Station *(City - County - State or Overseas Location)* |
|---|---|
| 11-0010-001 | WASHINGTON DISTRICT OF COLUMBIA DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 10001 | | 0000 | 33.94 | CRITICAL-SENSITIVE (CS)/HIGH R |

**45. Remarks**

APPOINTMENT IS INDEFINITE.

APPOINTMENT IS ON A PROVISIONAL BASIS. YOU ARE ELIGIBLE FOR RETIREMENT COVERAGE AND FOR HEALTH BENEFITS AND LIFE INSURANCE. IF YOUR PERFORMANCE IS SATISFACTORY, AND YOU MEET ALL LEGAL, QUALIFICATIONS, AND OTHER APPLICABLE REQUIREMENTS, YOU MAY BE CONVERTED TO A NONTEMPORARY APPOINTMENT BEFORE THIS APPOINTMENT EXPIRES.

APPOINTMENT AFFIDAVIT EXECUTED 01-20-2025.

CREDITABLE MILITARY SERVICE: 0000

PREVIOUS RETIREMENT COVERAGE: NEVER COVERED

EMPLOYEE IS AUTOMATICALLY COVERED UNDER FERS, FERS-RAE, OR FERS-FRAE.

OPM FORM 1019 DATED 01-20-2025.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| OPM | ELECTRONICALLY SIGNED BY: |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| OM00 | 1000 | 01/27/2025 | CARMEN GARCIA-WHITESIDE |
| | | | CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

5-Part

**2 - OPF Copy - Long-Term Record -- DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After
6/30/93
NSN 7540-01-333-6236

OPM-000017

# NOTICE TO EMPLOYEE

This is your copy of the official notice of a personnel action. Keep it with your records because it could be used to make employment, pay, and qualifications decisions about you in the future.

**The Action**

- Blocks 5-B and 6-B describe the personnel action(s) that occurred.
- Blocks 15-22 show the position and organization to which you are assigned.

**Pay**

- When the personnel action is an award or bonus, block 20 shows the amount of that one-time cash payment. When the action is not an award or bonus, block 12 shows your former total annual salary, and block 20 shows your new total annual salary (block 20C plus 20D). The amounts in blocks 12 and 20 do not include any one-time cash payments (such as performance awards and recruitment or relocation bonuses) or payments that may vary from one pay period to the next (such as overtime pay), or other forms of premium pay.
- Block 20A is the scheduled amount for your grade and step, including any special salary rate you receive. It does not include any locality-based pay. This rate of pay serves as the basis for determining your rate of pay upon promotion, change to a lower grade, or reassignment, and is used for pay retention purposes.
- Block 20B is the annual dollar amount of your interim Geographic Adjustment or, beginning in 1994, your locality-based comparability payment.
- Block 20C is your Adjusted Basic Pay, the total of blocks 20A and 20B. It serves as the basis for computing your retirement benefits, life insurance, premium pay, and severance pay.
- Block 20D is the total dollar amount of any Retention Allowances, Supervisory Differentials, and Staffing Differentials that are listed in the remarks block. These payments are made in the same manner as basic pay, but are not a part of basic pay for any purpose.

**Block 24 - Tenure**

- Identifies the nature of your appointment and is used to determine your rights during a reduction in force (RIF). Tenure groups are explained in more detail in subchapter 26 of FPM Supplement 296-33 and RIF is explained in FPM Supplement 351-1; both should be available for review in your personnel office.

**Block 26 - Veterans Preference to RIF**

- Indicates whether you have preference for reduction-in-force purposes.

**Block 30 - Retirement Plan**

- FICA — Social Security System
- CS — Civil Service Retirement System
- CS-Spec — Civil Service Retirement System for law enforcement and firefighter personnel
- FS — Foreign Service Retirement and Disability System
- FERS — Federal Employees' Retirement System
- FERS-Reserve Tech — Federal Employees' Retirement System for National Guard Reserve Technicians
- FERS-ATC — Federal Employees' Retirement System for Air Traffic Controllers
- FERS-Spec — Federal Employees' Retirement System for law enforcement and firefighter personnel
- FSPS — Foreign Service Pension System

**Block 31 - Service computation Date (Leave)**

- Shows when your Federal service began unless you have prior creditable service. If so, this date is constructed to include your total years, months and days of prior creditable civilian and military service.
- Full-time employees with fewer than 3 years of service earn 4 hours of annual leave each pay period; those with 3 or more years but less than 15 years earn 6 hours each pay period; and those with 15 or more years earn 8 hours each pay period.
- Your earnings and leave statement or your time and attendance card will

**Block 32 - Work Schedule**

- Your work schedule is established by your supervisor.
- A full-time employee works on a prearranged scheduled tour of duty that is usually 40 hours per week. A part-time employee has a prearranged scheduled tour of duty that is usually between 16 and 32 hours per week. An intermittent employee has no prearranged scheduled tour of duty and works when needed.

  Full-Time and part-time employees whose appointments are for 90 days or more are usually eligible to earn annual leave; intermittent employees are not. Seasonal employees work on an annually recurring bases for periods of less than 12 months each year; they may have a full-time, a part-time, or an intermittent schedule during their work season.

  On-call employees work during periods of heavy workload and are in pay status for at least 6 months of each year; they may have either a full-time or a part-time schedule when they are in pay status.

**Block 33 - Part-time Hours Per Biweekly Pay Period**

  Indicates the number of hours a part-time employee is scheduled to work during a two-week pay period.

**Block 34 - Position Occupied**

  Identifies the employment system under which you are serving -- the Competitive Service, the Excepted Service, or the Senior Executive Service (SES).

  The employment system determines your eligibility to move to other jobs in the Federal service, your rights in disciplinary and adverse actions, and your eligibility for reemployment if you have Federal service.

**Block 35 - FLSA Category**

  Exempt employees are not covered by the minimum wage and overtime law (the Fair Labor Standards Act); nonexempt employees are covered.

**Block 37 - Bargaining Unit Status**

  Identifies a bargaining unit to which you belong, whether or not your are actually a member of a labor organization. Code "7777" indicates you are eligible but not in a bargaining unit; code "8888" indicates you are ineligible for inclusion in a bargaining unit.

**Block 38 and 39 - Duty Station**

  Identifies the city, county, and state or the overseas location, where you actually work.

## OTHER INFORMATION

- If your appointment entitles you to elect health benefits or life insurance, and you have not been provided materials explaining the programs available and the enrollment forms, contact your personnel specialist.

- Your personnel specialist will also tell you if your position is covered by an agreement between an employee organization (union) and your agency. If you are eligible and elect to join an employee organization, you can elect to have your dues withheld from your salary.

- If you have questions or need more information about your rights and benefits, ask your supervisor or your personnel office.

- Definitions for any coded data in Blocks 1-24, 27-39 and 45-50 may be found in Federal Personnel Manual Supplement 292-1.

**It is your responsibility to read all the information on the front of this notice and tell your personnel office immediately if there is an error in it.**

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 277 of 582

OPM-000018

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 278 of 582

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) OPM-5 | 2. Social Security Number | 3. Date of Birth | 4. Effective Date 02/18/2025 |
|---|---|---|---|

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 570 | CONV TO EXC APPT |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| Y7M | SCH C, 213.3391. |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

**7. FROM: Position Title and Number**

SENIOR ADVISOR TO THE DIRECTOR FOR INFORMATION TECHNOLOGY

PD: 6A38025

**15. TO: Position Title and Number**

SENIOR ADVISOR TO THE DIRECTOR FOR INFORMATION TECHNOLOGY

PD: 6A38025

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0301 | 15 | 10 | $195,200.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $162,672.00 | $32,528.00 | $195,200.00 | $0 |

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0301 | 15 | 10 | $195,200.00 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $162,672.00 | $32,528.00 | $195,200.00 | $0 |

**14. Name and Location of Position's Organization**

OPM
OFC OF THE DIRECTOR

WASHINGTON DC

**22. Name and Location of Position's Organization**

OPM
OFC OF THE DIRECTOR

WASHINGTON DC

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Pref for RIF |
|---|---|---|---|
| 1 - None   3 - 10 Point/Disability   5 - 10 Point/Other<br>2 - 5 Point   4 - 10 Point/Compensable   6 - 10 Point/Compensable/30% | 0 - None   2 - Conditional<br>1 - Permanent   3 - Indefinite | | |
| 1 | 3 | JS | YES   X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| B0 | 9   NOT APPLICABLE | 7 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| KF | 01/20/2025 | F   FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career | E - Exempt<br>N - Nonexempt | 41AA0 | 8888 |
| 2 | E | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON DISTRICT OF COLUMBIA DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 10001 | | 0000 | 33.94 | CRITICAL-SENSITIVE (CS)/HIGH R |

**45. Remarks**

POSITION IS AT THE FULL PERFORMANCE LEVEL OR BAND.

OPM FORM 1019 DATED 02-18-2025.

| 46. Employing Department or Agency OPM | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| | ELECTRONICALLY SIGNED BY: |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| OM00 | 1000 | 02/20/2025 | CARMEN GARCIA-WHITESIDE<br>CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

| 5-Part | 2 - OPF Copy - Long-Term Record -- DO NOT DESTROY | Editions Prior to 7/91 Are Not Usable After 6/30/93<br>NSN 7540-01-333-6236 |
|---|---|---|

OPM-000019

# NOTICE TO EMPLOYEE

This is your copy of the official notice of a personnel action. Keep it with your records because it could be used to make employment, pay, and qualifications decisions about you in the future.

**The Action**

- Blocks 5-B and 6-B describe the personnel action(s) that occurred.
- Blocks 15-22 show the position and organization to which you are assigned.

**Pay**

- When the personnel action is an award or bonus, block 20 shows the amount of that one-time cash payment. When the action is not an award or bonus, block 12 shows your former total annual salary, and block 20 shows your new total annual salary (block 20C plus 20D). The amounts in blocks 12 and 20 do not include any one-time cash payments (such as performance awards and recruitment or relocation bonuses) or payments that may vary from one pay period to the next (such as overtime pay), or other forms of premium pay.
- Block 20A is the scheduled amount for your grade and step, including any special salary rate you receive. It does not include any locality-based pay. This rate of pay serves as the basis for determining your rate of pay upon promotion, change to a lower grade, or reassignment, and is used for pay retention purposes.
- Block 20B is the annual dollar amount of your interim Geographic Adjustment or, beginning in 1994, your locality-based comparability payment.
- Block 20C is your Adjusted Basic Pay, the total of blocks 20A and 20B. It serves as the basis for computing your retirement benefits, life insurance, premium pay, and severance pay.
- Block 20D is the total dollar amount of any Retention Allowances, Supervisory Differentials, and Staffing Differentials that are listed in the remarks block. These payments are made in the same manner as basic pay, but are not a part of basic pay for any purpose.

**Block 24 - Tenure**

- Identifies the nature of your appointment and is used to determine your rights during a reduction in force (RIF). Tenure groups are explained in more detail in subchapter 26 of FPM Supplement 296-33 and RIF is explained in FPM Supplement 351-1; both should be available for review in your personnel office.

**Block 26 - Veterans Preference to RIF**

- Indicates whether you have preference for reduction-in-force purposes.

**Block 30 - Retirement Plan**

| | |
|---|---|
| FICA | - Social Security System |
| CS | - Civil Service Retirement System |
| CS-Spec | - Civil Service Retirement System for law enforcement and firefighter personnel |
| FS | - Foreign Service Retirement and Disability System |
| FERS | - Federal Employees' Retirement System |
| FERS-Reserve Tech | - Federal Employees' Retirement System for National Guard Reserve Technicians |
| FERS-ATC | - Federal Employees' Retirement System for Air Traffic Controllers |
| FERS-Spec | - Federal Employees' Retirement System for law enforcement and firefighter personnel |
| FSPS | - Foreign Service Pension System |

**Block 31 - Service computation Date (Leave)**

- Shows when your Federal service began unless you have prior creditable service. If so, this date is constructed to include your total years, months and days of prior creditable civilian and military service.
- Full-time employees with fewer than 3 years of service earn 4 hours of annual leave each pay period; those with 3 or more years but less than 15 years earn 6 hours each pay period; and those with 15 or more years earn 8 hours each pay period.
- Your earnings and leave statement or your time and attendance card will

**Block 32 - Work Schedule**

- Your work schedule is established by your supervisor.
- A full-time employee works on a prearranged scheduled tour of duty that is usually 40 hours per week. A part-time employee has a prearranged scheduled tour of duty that is usually between 16 and 32 hours per week. An intermittent employee has no prearranged scheduled tour of duty and works when needed.
Full-time and part-time employees whose appointments are for 90 days or more are usually eligible to earn annual leave; intermittent employees are not. Seasonal employees work on an annually recurring basis for periods of less than 12 months each year; they may have a full-time, a part-time, or an intermittent schedule during their work season.
On-call employees work during periods of heavy workload and are in pay status for at least 6 months of each year; they may have either a full-time or a part-time schedule when they are in pay status.

**Block 33 - Part-time Hours Per Biweekly Pay Period**

Indicates the number of hours a part-time employee is scheduled to work during a two-week pay period.

**Block 34 - Position Occupied**

Identifies the employment system under which you are serving -- the Competitive Service, the Excepted Service, or the Senior Executive Service (SES).
The employment system determines your eligibility to move to other jobs in the Federal service, your rights in disciplinary and adverse actions, and your eligibility for reemployment if you have Federal service.

**Block 35 - FLSA Category**

Exempt employees are not covered by the minimum wage and overtime law (the Fair Labor Standards Act); nonexempt employees are covered.

**Block 37 - Bargaining Unit Status**

Identifies a bargaining unit to which you belong, whether or not your are actually a member of a labor organization. Code "7777" indicates you are eligible but not in a bargaining unit; code "8888" indicates you are ineligible for inclusion in a bargaining unit.

**Block 38 and 39 - Duty Station**

Identifies the city, county, and state or the overseas location, where you actually work.

## OTHER INFORMATION

- If your appointment entitles you to elect health benefits or life insurance, and you have not been provided materials explaining the programs available and the enrollment forms, contact your personnel specialist.

- Your personnel specialist will also tell you if your position is covered by an agreement between an employee organization (union) and your agency. If you are eligible to and elect to join an employee organization, you can elect to have your dues withheld from your salary.

- If you have questions or need more information about your rights and benefits, ask your supervisor or your personnel office.

- Definitions for any coded data in Blocks 1-24, 27-39 and 45-50 may be found in Federal Personnel Manual Supplement 292-1.

It is your responsibility to read all the information on the front of this notice and tell your personnel office immediately if there is an error in it.

USCA4 Appeal: 25-1282     Doc: 39-1     Filed: 04/14/2025     Pg: 279 of 582

OPM-000020

# APPOINTMENT AFFIDAVITS

Expert

*(Position to which Appointed)*

01/24/2025

*(Date Appointed)*

Office of Personnel Management

*(Department or Agency)*

Office of the Director

*(Bureau or Division)*

Washington, D.C.

*(Place of Employment)*

I, **OPM-6** _____, do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

**OPM-6**

*(Signature of Appointee)*

Subscribed and sworn (or affirmed) before me this 24 day of  JANUARY , 2025

at WASHINGTON

*(City)*

D.C.

*(State)*

(SEAL)

*(Signature of Officer)*

Commission expires_____

*(If by a Notary Public, the date of his/her Commission should be shown)*

SUPERVISORY HR SPECIALIST

*(Title)*

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

USCA4 Appeal: 25-1282     Doc: 39-1     Filed: 04/14/2025     Pg: 280 of 582

OPM-000021

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 281 of 582

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33. Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) OPM-6 | 2. Social Security Number | 3. Date of Birth | 4. Effective Date 01/24/2025 |
|---|---|---|---|

## FIRST ACTION / SECOND ACTION

| 5-A. Code 171 | 5-B. Nature of Action EXC APPT NTE    07/22/2025 | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 5-C. Code H2L | 5-D. Legal Authority REG 304.103. | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number EXPERT PD: 6A39738 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ED | 0301 | 00 | 00 | $0 | WC |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay $0 | 20B. Locality Adj. $0 | 20C. Adj. Basic Pay $0 | 20D. Other Pay $0 |
|---|---|---|---|---|---|---|---|

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization OPM OFC OF THE DIRECTOR WASHINGTON DC |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference 1 | 24. Tenure 0 | 25. Agency Use TG | 26. Veterans Preference for RIF |
|---|---|---|---|

1 - None    3 - 10 Point Disability    5 - 10 Point Other
2 - 5 Point    4 - 10 Point Compensable    6 - 10 Point Compensable 30%

24. Tenure: 0 - None    2 - Conditional    1 - Permanent    3 - Indefinite

26. Veterans Preference for RIF: YES  X  NO

| 27. FEGLI A0 | 28. Annuitant Indicator 9    NOT APPLICABLE | 29. Pay Rate Determinant 0 |
|---|---|---|

| 30. Retirement Plan 4 | 31. Service Comp. Date (Leave) 01/24/2025 | 32. Work Schedule F    FULL TIME | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|

## POSITION DATA

| 34. Position Occupied 2 | 35. FLSA Category E | 36. Appropriation Code 4IAA0 | 37. Bargaining Unit Status 8888 |
|---|---|---|---|

34. Position Occupied: 1 - Competitive Service    3 - SES General    2 - Excepted Service    4 - SES Career Reserved

35. FLSA Category: E - Exempt    N - Nonexempt

| 38. Duty Station Code 11-0010-001 | 39. Duty Station (City - County - State or Overseas Location) WASHINGTON DISTRICT OF COLUMBIA DC |
|---|---|

| 40. Agency Data 10001 | 41. | 42. 0000 | 43. 33.94 | 44. CRITICAL-SENSITIVE (CS)/HIGH R |
|---|---|---|---|---|

**45. Remarks**
APPOINTMENT AFFIDAVIT EXECUTED 01-24-2025
REASON FOR TEMPORARY APPOINTMENT:    TO PROVIDE A HIGH LEVEL OF EXPERTISE RELATIVE TO ISSUES WHICH HAVE A
SIGNIFICANT IMPACT ON THE FORMULATION OF AGENCY GOALS AND OBJECTIVES TO THE OPM DIRECTOR.
CREDITABLE MILITARY SERVICE: NONE
PREVIOUS RETIREMENT COVERAGE: NEVER COVERED

| 46. Employing Department or Agency OPM | 50. Signature/Authentication and Title of Approving Official ELECTRONICALLY SIGNED BY: |
|---|---|
| 47. Agency Code OM00 | 48. Personnel Office ID 1000 | 49. Approval Date 01/30/2025 | CARMEN GARCIA-WHITESIDE CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

5-Part 50-316

**2 - OPF Copy - Long-Term Record - DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

OPM-000022

| | |
|---|---|
| **From:** | Hogan, Greg |
| **To:** | Foster, Ozie L.; Price, MC |
| **Cc:** | Ezell, Charles E. |
| **Subject:** | Re: Getting DoGE Engineers access |
| **Date:** | Sunday, February 16, 2025 6:52:09 PM |

Thank you, that was the info I was looking for.

Greg

---

**From:** Foster, Ozie L. <████████@opm.gov>
**Sent:** Sunday, February 16, 2025 6:39 PM
**To:** Hogan, Greg <████████@opm.gov>; Price, MC <████████@opm.gov>
**Cc:** Ezell, Charles E. <████████@opm.gov>
**Subject:** Re: Getting DoGE Engineers access

You're welcome, Greg. Your account was never created. If you do need an account we can get you setup Tuesday AM.

The only 3 accounts created were for **OPM-4**, **OPM-2**, and **OPM-6** for eOPF and EHRI.

Danielle's file below was updated with user names, system names and dates. You will see where their accounts were added and removed + many other updates associated with OPM Data systems.

☐ Account Creation Audit.xlsx

Thank you,

**Ozie Foster**
Supervisory IT Specialist
U.S. Office of Personnel Management
OCIO, Federal Information Technology Business Solutions
(478) 213-████
████████@opm.gov
OPM.gov

Follow us on LinkedIn | Twitter | YouTube

---

**From:** Hogan, Greg <████████@opm.gov>
**Sent:** Sunday, February 16, 2025 5:43 PM
**To:** Foster, Ozie L. <████████@opm.gov>; Price, MC <████████@opm.gov>
**Cc:** Ezell, Charles E. <████████@opm.gov>
**Subject:** Re: Getting DoGE Engineers access

OPM-000023

Thank you for the quick response!

Can you give me the list of people who did have access and we revoked their access?

Also, can you tell me if I have access?

Greg

---

**From:** Foster, Ozie L. <█████@opm.gov>
**Sent:** Sunday, February 16, 2025 4:48 PM
**To:** Hogan, Greg <█████@opm.gov>; Price, MC █████@opm.gov>
**Cc:** Ezell, Charles E. █████@opm.gov>
**Subject:** Re: Getting DoGE Engineers access

Yes. All access is disabled/removed, verified users never logged in for EHRI and eOPF.

Thank you,

**Ozie Foster**
Supervisory IT Specialist
U.S. Office of Personnel Management
OCIO, Federal Information Technology Business Solutions
(478) 213-█
Ozie.Foster@opm.gov
OPM.gov

Follow us on LinkedIn | Twitter | YouTube

---

**From:** Hogan, Greg <█████@opm.gov>
**Sent:** Sunday, February 16, 2025 4:26:22 PM
**To:** Price, MC <█████@opm.gov>; Foster, Ozie L. █████@opm.gov>
**Cc:** Ezell, Charles E. █████@opm.gov>
**Subject:** Re: Getting DoGE Engineers access

Did we follow up on **OPM-5**, **OPM-3**, and **OPM-4**?  Sorry if I missed it.

Greg

---

**From:** Price, MC <█████@opm.gov>
**Sent:** Thursday, February 6, 2025 10:28 PM
**To:** Foster, Ozie L. <█████@opm.gov>

OPM-000024

**Cc:** Hogan, Greg <████████@opm.gov>; Ezell, Charles E. <████████@opm.gov>
**Subject:** Re: Getting DoGE Engineers access

Thx Ozie!!

On Feb 6, 2025, at 10:04 PM, Foster, Ozie L. ████████@opm.gov> wrote:

Good evening, everyone

**OPM-6** and **OPM-2** accounts have been disabled for both EHRI DW [on prem] and eOPF [on prem Oracle & Azure SQL]. Also OPS verification that accounts were never used.

I will verify account status for **OPM-5**, **OPM-3**, and **OPM-4** in the AM but I'm sure it's the same of unused.

Thank you,

**Ozie Foster**
Supervisory IT Specialist
U.S. Office of Personnel Management
OCIO, Business Applications Services
(478)████████
████████@opm.gov
OPM.gov

<Image.png>

Follow us on LinkedIn | Twitter | YouTube

---

**From:** Price, MC ████████@opm.gov>
**Sent:** Thursday, February 6, 2025 7:44 PM
**To:** Hogan, Greg ████████@opm.gov>
**Cc:** Ezell, Charles E. <████████@opm.gov>; Foster, Ozie L. ████████@opm.gov>
**Subject:** Re: Getting DoGE Engineers access

+Ozie

Greg,

**OPM-6** and **OPM-2** had access to eOPF/eHRI but never logged in. **OPM-4** never completed the process to get access.

Ozie will get them removed tomorrow morning.

Thx, MC

> On Feb 6, 2025, at 6:10 PM, Hogan, Greg <██████@opm.gov> wrote:

> MC:

> I will get back to you tomorrow on your list below.  In the mean time, we have never needed access to ERHI/eOPF so if any access was granted there it can be removed immediately, and your DBAs can have their access back immediately, too.

> Greg

> **From:** Price, MC <██████@opm.gov>
> **Sent:** Thursday, February 6, 2025 5:33 PM
> **To:** Hogan, Greg <██████@opm.gov>
> **Cc:** Ezell, Charles E. ██████@opm.gov>
> **Subject:** RE: Getting DoGE Engineers access

> I will check, however, I believe the folks listed below have full Production access to OPM.gov, USAJOBS, USA Staffing and USA Performance, to our Azure landing zones, and to Akamai portal.

> Do you want to remove them? And if so, do you want to return our OCIO folks to their original permissions?

> MC

> **From:** Hogan, Greg ██████@opm.gov>
> **Sent:** Thursday, February 6, 2025 5:27 PM
> **To:** Price, MC ██████@opm.gov>
> **Cc:** Ezell, Charles E. <██████@opm.gov>
> **Subject:** Re: Getting DoGE Engineers access

> Can someone share with me what access is still set up that was in response to the below email chain?

OPM-000026

Based on the below email chain, it looks like this is the list of people that may have been granted access to certain systems:

**OPM-6**  @opm.gov
**OPM-2**  @opm.gov
**OPM-4**  @opm.gov
**OPM-5**  @opm.gov
**OPM-3**  @opm.gov

I want to start unwinding peoples access if it is currently unnecessary.

Greg

---

**From:** Ezell, Charles E. <████████ @opm.gov>
**Sent:** Monday, January 27, 2025 5:29 PM
**To:** ScalesOLD, Amanda <████████ @opm.gov>; Rajpal, Nikhil <Nikhil.Rajpal@opm.gov>; Hogan, Greg <████████ @opm.gov>; Bjelde, Brian <████████ @opm.gov>
**Subject:** Fw: Getting DoGE Engineers access

Apologies I should've copied you all on this when I sent it.

.ce

**Chuck Ezell**
Acting Director

U.S. Office of Personnel Management
o: (478)████████
c: (478)████████
████████ @OPM.gov
OPM.gov

---

**From:** Ezell, Charles E. <████████ @opm.gov>
**Sent:** Monday, January 27, 2025 5:03 PM
**To:** Price, MC <████████ @opm.gov>
**Subject:** Re: Getting DoGE Engineers access

Yep, I understand. They won't have a lot of time to go through a lot of presentations on what the systems are and what the program officers feel about the programs, etc. You understand…. Bu it there is an architecture level engineering perspective that could be shared that might be helpful if

JA283

OPM-000027

it could be done at some point.

**OPM-6** @opm.gov
**OPM-2**   @opm.gov
**OPM-4**    @opm.gov

.ce

**Chuck Ezell**
Acting Director

U.S. Office of Personnel Management
o: (478) ███
c: (478) ███
███ @OPM.gov
OPM.gov

---

**From:** Price, MC <███ @opm.gov>
**Sent:** Monday, January 27, 2025 4:32:04 PM
**To:** Ezell, Charles E. <███ @opm.gov>
**Subject:** RE: Getting DoGE Engineers access

Sure, just send me a list of names and we'll give them access and hook them up with the folks that can give them the deep dive/documentation on the Apps.

I'm assuming these engineers have GFE/PIVs or will get them soon?

One note, some of the HI systems we simply host and do not have the dev access....those devs live in HI.

MC

---

**From:** Ezell, Charles E. <███ @opm.gov>
**Sent:** Monday, January 27, 2025 4:20 PM
**To:** Price, MC <███ @opm.gov>
**Subject:** Getting DoGE Engineers access

MC,

We are rapidly ramping up some engineers here. To accomplish this goal, these engineers need the following items urgently, starting with a short list of all the systems OPM operates and manages.

JA284

OPM-000028

Right now we don't have immediate plans to change anything but if we need to we might need to move quickly.

For each computer system, (whewe need:

• Code read and write permissions
• Deploy ability Octopus deploy
• Monitoring dashboards (e.g. displaying success rates, volume of traffic)
• Documentation (e.g. test and deploy instructions, system diagrams)
• The on-call rotation for the system
• Names of all engineers deeply familiar with the system
• Names of all product/project managers deeply familiar with the system
• Ability to access the system as a regular user (e.g. hiring manager and onboarding user for USA Staffing)
• Ability to access the system as an admin user
Prioritize USA Staffing, USAJOBS, and EHRI.

Again we don't have any immediate plans for new engineers to make direct changes to any of these systems.

I'll get you the list of Engineers but I think **OPM-5** and **OPM-3** have already been setup with some access.

Thank you


.ce

**Chuck Ezell**
Acting Director

U.S. Office of Personnel Management
o: (478) ███
c: (478) ███
███████@OPM.gov
OPM.gov

OPM-000029

## Account Creation Audit Between 1/20/25 - 2/12/2025



OPM-000030



OPM-000031



OPM-4

OPM-4

O          OPM-4

OPM-4

OPM-000032

OPM-4

OPM-4

OPM-4





OPM-5

OPM-5

OPM-5

OPM-5

OPM-5

OPM-5

OPM-5

OPM-5





Greg Hogan

Greg Hogan

Greg Hogan

\mcn\cld\MGA\Users\

@opm.gov

@opm365.onmicrosoft.com



Greg Hogan                                        @opm.gov

Greg Hogan                                        @opm.gov
Greg Hogan                                        @opm.gov
Greg Hogan                                        @opm.gov
Hogan, Greg                                       _opmgov
Hogan,Greg                                        @opm.gov

OPM-5
OPM-5

OPM-6

OPM-6
OPM-6

OPM-6

OPM-6

OPM-6

OPM-6
OPM-6
OPM-6

OPM-6
OPM-6

OPM-2



OPM-000035



JA292

OPM-000036




OPM-000037

| System Name | Date Created |
|---|---|
| APP.mcn Domain | 1/20/2025 3:46:12 PM |
| Azure DevOps | 1/21/2025 |
| CLD.mcn Domain | 1/20/2025 3:38:26 PM |
| OPM Data : Connect Platform (Az.opm.entraID.efficiencyorg.admin + Az.cio.entraID.PowerBIAdmin) | 1/20/2025 |
| USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 |
| Web Admin | 1/20/2025 |



| GitHub Enterprise | 1/28/2025 |
| GitHub Enterprise | 1/20/2025 |
| USA Performance - U.S. Office of Personnel Management | 1/20/2025 |

OPM-000038



OPM-000039



USA Performance - U.S. Office of Personnel Management                                    1/28/2025

CLD.mcn Domain                                              1/28/202511:39:49 AM

OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData
/ USADATA]                                                                              1/28/2025

OPM Data : Connect Platform (Az.opm.entraID.efficiencyorg.admin +
Az.cio.entraID.PowerBIAdmin)                                                            1/28/2025

OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD             1/28/2025

OPM-000040

OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD          1/28/2025
USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD                              1/28/2025
Web Admin                                                                           1/28/2025



APP.mcn Domain                                                                      1/20/20253:44:47 PM
CLD.mcn Domain                                                                      1/20/20253:35:33 PM
OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData
/ USADATA]                                                                          1/28/2025
OPM Data : Connect Platform (Az.opm.entraID.efficiencyorg.admin +
Az.cio.entraID.PowerBIAdmin)                                                        1/20/2025
USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD                              1/20/2025
Web Admin                                                                           1/20/2025
APP.mcn Domain                                                                      1/20/20253:45:12 PM
Azure DevOps                                                                        1/27/2025

CLD.mcn Domain                                                                      1/20/20253:36:46 PM

ITSP Project Intake app                                                             1/27/2025
ITSP Project Intake app                                                             2/6/2025

JA297                                                                OPM-000041

OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData
/ USADATA]                                                                          1/28/2025
OPM Data : Connect Platform (Az.opm.entraID.efficiencyorg.admin +
Az.cio.entraID.PowerBIAdmin)                                                         1/20/2025
USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD                               1/20/2025
Web Admin                                                                           1/20/2025
GitHub Enterprise                                                                   1/20/2025
USA Performance - U.S. Office of Personnel Management                               1/20/2025

████████████████████████████████████████████                    ██████████
██████████████████████████████████                              ██████████

GitHub Enterprise                                                                   1/20/2025
USA Performance - U.S. Office of Personnel Management                               1/20/2025

█████████████████████████████████                  ████████████████████████
██████████████████████                             ████████████████████████
██████████████████████████                         ████████████████████████

Agency Talent Portal                                                                1/31/2025
CLD.mcn Domain                                                        1/28/202511:39:00 AM

███████████████████                ████████████████████

OD Reports : New Hire Daily Tracker Power BI - USADATA                               1/31/2025
OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData
/ USADATA]                                                                          1/28/2025
OPM Data : Connect Platform (Az.opm.entraID.efficiencyorg.admin +
Az.cio.entraID.PowerBIAdmin)                                                         1/28/2025

OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD          1/28/2025

OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD            1/28/2025
USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD                               1/28/2025
Web Admin                                                                           1/28/2025

████████████████████████████████████              ██████████
██████████████████████████████████                ██████████

Azure DevOps                                                                        1/29/2025

████████████                                      ██████████

USA Performance - U.S. Office of Personnel Management                               1/28/2025

██████████████████████████████████                ██████████

CLD.mcn Domain                                                       1/28/202511:39:25 AM

██████████████████                                ██████████

OPM-000042

**OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA]**    1/28/2025

███

**OPM Data : Connect Platform (Az.opm.entraID.efficiencyorg.admin + Az.cio.entraID.PowerBIAdmin)**    1/28/2025

███

███

**OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD**    1/28/2025

███

███

**OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD**    1/28/2025

███

**USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD**    1/28/2025
Web Admin    1/28/2025
**USA Performance - U.S. Office of Personnel Management**    1/28/2025

███

    OPM-000043



OPM-000044




OPM-000045

**Date Removed**   **Admin Access**        **Login Yes/No**

OPM-000046

OPM-000047

2/6/2025

OPM-000048

2/6/2025

OPM-000049

2/6/2025

2/6/2025

OPM-000050

2/6/2025

2/6/2025

OPM-000051

OPM-000052

| | |
|---|---|
| **From:** | Pinto, Delon G. F. |
| **To:** | Rowell, Danielle R |
| **Cc:** | Hogan, Greg; Saunders, James L; Muetzel, James |
| **Subject:** | RE: Internal User Access Audit |
| **Date:** | Tuesday, February 18, 2025 4:00:37 PM |
| **Attachments:** | image002.png |
| | image003.png |

Good afternoon,

I'm confirming that FLTCIP and FSAFEDS do not have internal OPM user accounts. Let me know if you need anything else.

Best,
Delon

---

**From:** Rowell, Danielle R <████████@opm.gov>
**Sent:** Tuesday, February 18, 2025 1:01 PM
**To:** CISO ████@opm.gov>
**Cc:** Hogan, Greg <████████@opm.gov>; Saunders, James L████████@opm.gov>; OCIO-Leadership████████@opm.gov>
**Subject:** RE: Internal User Access Audit

Good Afternoon,

Thank you for responding to the initial audit call.  In addition to the original ask, we're asking that you please provide the Cybersecurity Division with **evidence of the system account approvals** for all internal OPM user accounts created since 1/20/2025 until 2/12/25 (Please use list of already identified users).  As the System Owner responsible for approving OPM information system access, please provide the formal approval artifact for all internal OPM accounts created during this timeframe." **All responses are due by  2/20/2025.**

**Example Artifacts:**
1. Email request from user and approval.
2. Email request to helpdesk with approval from supervisor.
3. Azure access packages approvals.
4. Other.


☐ Account Creation Artifacts


Thanks!

**Danielle Rowell**
OPM.gov



OPM-000053

Follow us on LinkedIn | Twitter | YouTube

---

**From:** Rowell, Danielle R
**Sent:** Wednesday, February 12, 2025 4:27 PM
**To:** CISO ████@opm.gov>
**Cc:** Hogan, Greg <████████@opm.gov>; Saunders, James L <████████@opm.gov>; OCIO-Leadership ████████@opm.gov>
**Subject:** Internal User Access Audit
**Importance:** High

Good Evening,

As requested by the OPM CIO, the Cybersecurity Division is conducting a review of **all internal OPM user accounts** created between 1/20/2025 and 2/12/25  As the System Owner responsible for approving access to an OPM information system, please provide the following information.  **All responses are due by 2/17/25**.

[Account Creation Audit](#)

- Employee Name
- Account Username
- System Name
- Date Created

Please provide questions to ████ @opm.gov.

Thanks!

**Danielle Rowell**
**Acting Chief Information Security Officer, Cybersecurity Division**

U.S. Office of Personnel Management
Office of the Chief Information Officer
c: 202-████████
o: 202-████ ████ @opm.gov
OPM.gov



Follow us on LinkedIn | Twitter | YouTube

**Isaiah 41:10**

JA310                                                                OPM-000054



will occur with the receipt of both benefits.

**Analysis**

*Agency:* Office of Personnel Management, Retirement Services.

*Title:* We Need Important Information About Your Eligibility for Social Security Disability Benefits.

*OMB Number:* 3206–0216.

*Frequency:* On occasion.

*Affected Public:* Individuals or Households.

*Number of Respondents:* 4,300.

*Estimated Time per Respondent:* 5 minutes.

*Total Burden Hours:* 358.

Office of Personnel Management.

**Kayyonne Marston,**

*Federal Register Liaison.*

[FR Doc. 2023–17640 Filed 8–16–23; 8:45 am]

**BILLING CODE 6325–38–P**

---

**OFFICE OF PERSONNEL MANAGEMENT**

**[Docket ID: OPM–2023–0024]**

**Privacy Act of 1974; System of Records**

**AGENCY:** Office of Personnel Management.

**ACTION:** Notice of a modified system of records.

**SUMMARY:** In accordance with the Privacy Act of 1974, the Office of Personnel Management (OPM) proposes to modify an OPM system of records titled, "OPM/GOVT–1 General Personnel Records" System of Records. The records in this system of records are maintained by OPM and employing agencies in accordance with OPM regulations and instructions. OPM proposes to modify this system of records by revising Routine Uses "s" and "hh".

**DATES:** Submit comments on or before September 18, 2023. The modified routine uses will be effective on September 21, 2023.

**ADDRESSES:** You may submit written comments by one of the following methods:

• *Federal Rulemaking Portal: https://www.regulations.gov.*

All submissions received must include the agency name and docket number for this **Federal Register** document. The general policy for comments and other submissions from members of the public is to make these submissions available for public viewing on the internet at *https://www.regulations.gov* as they are received without change, including any

personal identifiers or contact information.

**FOR FURTHER INFORMATION CONTACT:** Marc Flaster, Senior Agency Official for Privacy (Acting), Office of Personnel Management at *privacy@opm.gov.*

**SUPPLEMENTARY INFORMATION:** In accordance with the Privacy Act of 1974, 5 U.S.C. 552a, the Office of Personnel Management ("OPM"), proposes to make certain modifications to the "OPM/GOVT–1 General Personnel Records" system of records pending a comprehensive review and update at a later date. Specifically, OPM proposes to revise Routine Use "s" to specify that OPM may disclose records from this system of records to other Federal entities for the purpose of conducting research and statistical analysis for government-wide evaluation and reporting about the Federal workforce. In its current form, Routine Use "s" only permits internal use of the records for such purposes.

Routine Use "s" currently reads as follows:

s. By the agency maintaining the records or by the OPM to locate individuals for personnel research or survey response, and in the production of summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained, or for related workforce studies. While published statistics and studies do not contain individual identifiers, in some instances, the selection of elements of data included in the study may be structured in such a way as to make the data individually identifiable by inference.

OPM proposes to revise Routine Use "s" to read as follows:

s. To disclose to another Federal agency, by the agency maintaining the records or by OPM, for research or analytical purposes, including to locate individuals for personnel research or survey response, to produce summary descriptive statistics, or to conduct analytical studies in support of the function for which the records are collected and maintained, or for related workforce studies; provided that the disclosure is made pursuant to a written agreement that clearly outlines the relevant authorities, limits the disclosure only to those records that are necessary for a clearly documented purpose, and limits the use of the records for that purpose.

OPM also proposes to revise Routine Use "hh" to clarify that the records in this system of records may be disclosed in the context of an appropriate computer matching program. The

current language of this Routine Use does not track the definition of "matching program" in the Privacy Act and the revised language is intended to correct that and permit disclosure in the context of any approved matching program that meets the definition in the Act.

Routine Use "hh" currently reads as follows:

hh. To disclose relevant information with personal identifiers of Federal civilian employees whose records are contained in the EHRI to authorized Federal agencies and non-Federal entities for use in computer matching. The matches will be performed to help eliminate waste, fraud, and abuse in Governmental programs; to help identify individuals who are potentially in violation of civil or criminal law or regulation; and to collect debts and overpayments owed to Federal, State, or local governments and their components. The information disclosed may include, but is not limited to, the name, social security number, date of birth, sex, annualized salary rate, service computation date of basic active service, veteran's preference, retirement status, occupational series, health plan code, position occupied, work schedule (full time, part time, or intermittent), agency identifier, geographic location (duty station location), standard metropolitan service area, special program identifier, and submitting office number of Federal employees.

OPM proposed to revise Routine Use "hh" to read as follows:

hh. To other Federal agencies, such as the Social Security Administration, the Department of Education, and the Department of Health and Human Services, and to non-Federal entities, relevant information with personal identifiers of Federal civilian employees whose records are contained in the EHRI to authorized Federal agencies and non-Federal entities for use in a computer matching program, as defined in 5 U.S.C. 552a(a)(8), to help eliminate waste, fraud, and abuse in Governmental programs; to help identify individuals who are potentially in violation of civil or criminal law or regulation; to collect debts and overpayments owed to Federal, State, or local governments and their components; and to identify individuals as Federal civilian employees when relevant to their receiving a benefit from the matching partner.

In addition to revising the above-referenced Routine Uses, OPM also proposes to make certain administrative adjustments to the SORN to update the System Manager to reflect organizational changes at OPM and to

update the description of the System Location for accuracy.

OPM has received a report of this modified system of records to the Committee on Oversight and Government Reform of the House of Representatives, the Committee on Homeland Security and Governmental Affairs of the Senate, and the Office of Management and Budget (OMB), pursuant to 5 U.S.C. 552a(r) and OMB Circular A–108, "Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act," dated December 23, 2016. This modified system will be included in OPM's inventory of records systems.

Office of Personnel Management.

**Kayyonne Marston,**
*Federal Register Liaison.*

**SYSTEM NAME AND NUMBER:**

General Personnel Records, OPM/GOVT–1.

**SECURITY CLASSIFICATION:**

Unclassified.

**SYSTEM LOCATION:**

Records on current Federal employees are located within the employing agency. Records maintained in paper may also be located at OPM or with personnel officers, or at other designated offices of local installations of the department or agency that employs the individual. When agencies determine that duplicates of these records need to be located in a second office, *e.g.*, an administrative office closer to where the employee actually works, such copies are covered by this system of records. Some agencies have employed the electronic Official Personnel Folder (eOPF) information technology system to store their records electronically. Although stored in eOPF, agencies are still responsible for the maintenance of their records. In addition, certain data elements from the eOPF are collected and maintained in OPM's Enterprise Human Resource Integration (EHRI) system.

Former Federal employees' paper Official Personnel Folders (OPFs) are located at the National Personnel Records Center, National Archives and Records Administration, in Valmeyer, Illinois. Former Federal employees' electronic Official Personnel Folders (eOPF) are located in the eOPF system at OPM.

*Note 1*—The records in this system are records of the OPM and must be provided to those OPM employees who have an official need or use for those records. Therefore, if an employing agency is asked by an OPM employee to access the records within this system, such a request must be honored.

**SYSTEM MANAGER(S):**

a. Executive Director, Human Capital Data Management and Modernization, U.S. Office of Personnel Management, 1900 E Street NW, Washington, DC 20415; Associate Director, Employee Services, U.S. Office of Personnel Management, 1900 E Street NW, Washington, DC 20415.

b. For current Federal employees, OPM has delegated to the employing agency the Privacy Act responsibilities concerning access, amendment, and disclosure of the records within this system notice.

\* \* \* \* \*

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

\* \* \* \* \*

s. To disclose to another Federal agency, by the agency maintaining the records or by OPM, for research or analytical purposes, including to locate individuals for personnel research or survey response, to produce summary descriptive statistics, or to conduct analytical studies in support of the function for which the records are collected and maintained, or for related workforce studies; provided that the disclosure is made pursuant to a written agreement that clearly outlines the relevant authorities, limits the disclosure only to those records that are necessary for a clearly documented purpose, and limits the use of the records for that purpose.

\* \* \* \* \*

hh. To other Federal agencies, such as the Social Security Administration, the Department of Education, and the Department of Health and Human Services, and to non-Federal entities, relevant information with personal identifiers of Federal civilian employees whose records are contained in the EHRI to authorized Federal agencies and non-Federal entities for use in a computer matching program, as defined in 5 U.S.C. 552a(a)(8), to help eliminate waste, fraud, and abuse in Governmental programs; to help identify individuals who are potentially in violation of civil or criminal law or regulation; to collect debts and overpayments owed to Federal, State, or local governments and their components; and to identify individuals as Federal civilian employees when relevant to their receiving a benefit from the matching partner.

\* \* \* \* \*

**HISTORY:**

OPM/GOVT–1, "General Personnel Records", 77 FR 73694 (December 11, 2012), 80 FR 74815 (November 30, 2015), 76 FR 32997 (June 7, 2011), 71 FR 35342 (June 19, 2006), 65 FR 24732 (April 27, 2000), and 61 FR 36919 (July 15, 1996).

[FR Doc. 2023–17651 Filed 8–16–23; 8:45 am]

**BILLING CODE 6325–67–P**

---

**POSTAL REGULATORY COMMISSION**

[Docket Nos. MC2023–220 and CP2023–224; MC2023–221 and CP2023–225; MC2023–223 and CP2023–226; MC2023–224 and CP2023–227]

**New Postal Products**

**AGENCY:** Postal Regulatory Commission.

**ACTION:** Notice.

**SUMMARY:** The Commission is noticing a recent Postal Service filing for the Commission's consideration concerning a negotiated service agreement. This notice informs the public of the filing, invites public comment, and takes other administrative steps.

**DATES:** *Comments are due:* August 21, 2023.

**ADDRESSES:** Submit comments electronically via the Commission's Filing Online system at *http://www.prc.gov.* Those who cannot submit comments electronically should contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section by telephone for advice on filing alternatives.

**FOR FURTHER INFORMATION CONTACT:**
David A. Trissell, General Counsel, at 202–789–6820.

**SUPPLEMENTARY INFORMATION:**

**Table of Contents**

I. Introduction
II. Docketed Proceeding(s)

**I. Introduction**

The Commission gives notice that the Postal Service filed request(s) for the Commission to consider matters related to negotiated service agreement(s). The request(s) may propose the addition or removal of a negotiated service agreement from the Market Dominant or the Competitive product list, or the modification of an existing product currently appearing on the Market Dominant or the Competitive product list.

Section II identifies the docket number(s) associated with each Postal Service request, the title of each Postal Service request, the request's acceptance date, and the authority cited by the

OPM-000056



**73694**      Federal Register / Vol. 77, No. 238 / Tuesday, December 11, 2012 / Notices

For the Nuclear Regulatory Commission.

**Michele G. Evans,**
*Director, Division of Operating Reactor Licensing, Office of Nuclear Reactor Regulation.*

[FR Doc. 2012–29612 Filed 12–10–12; 8:45 am]

**BILLING CODE 7590–01–P**

---

## NUCLEAR REGULATORY COMMISSION

### Sunshine Federal Register Notice

**AGENCY HOLDING THE MEETINGS:** Nuclear Regulatory Commission [NRC–2012–0002].

**DATES:** Weeks of December 10, 17, 24, 31, 2012, January 7, 14, 2013.

**PLACE:** Commissioners' Conference Room, 11555 Rockville Pike, Rockville, Maryland.

**STATUS:** Public and Closed.

### Week of December 10, 2012

There are no meetings scheduled for the week of December 10, 2012.

### Week of December 17, 2012—Tentative

There are no meetings scheduled for the week of December 17, 2012.

### Week of December 24, 2012—Tentative

There are no meetings scheduled for the week of December 24, 2012.

### Week of December 31, 2012—Tentative

There are no meetings scheduled for the week of December 31, 2012.

### Week of January 7, 2013—Tentative

*Tuesday, January 8, 2013*

9:00 a.m.   Briefing on Fort Calhoun (Public Meeting). (Contact: Michael Hay, 817–200–1527).

This meeting will be webcast live at the Web address—*www.nrc.gov.*

### Week of January 14, 2013—Tentative

There are no meetings scheduled for the week of January 14, 2013.

\*      \*      \*      \*      \*

* The schedule for Commission meetings is subject to change on short notice. To verify the status of meetings, call (recording)—301–415–1292. Contact person for more information: Rochelle Bavol, 301–415–1651.

\*      \*      \*      \*      \*

The NRC Commission Meeting Schedule can be found on the Internet at: *http://www.nrc.gov/public-involve/public-meetings/schedule.html.*

\*      \*      \*      \*      \*

The NRC provides reasonable accommodation to individuals with disabilities where appropriate. If you need a reasonable accommodation to participate in these public meetings, or need this meeting notice or the transcript or other information from the public meetings in another format (e.g. braille, large print), please notify Bill Dosch, Chief, Work Life and Benefits Branch, at 301–415–6200, TDD: 301–415–2100, or by email at *william.dosch@nrc.gov.* Determinations on requests for reasonable accommodation will be made on a case-by-case basis.

\*      \*      \*      \*      \*

This notice is distributed electronically to subscribers. If you no longer wish to receive it, or would like to be added to the distribution, please contact the Office of the Secretary, Washington, DC 20555 (301–415–1969), or send an email to *darlene.wright@nrc.gov.*

Dated: December 6, 2012.

**Rochelle C. Bavol,**
*Policy Coordinator, Office of the Secretary.*

[FR Doc. 2012–29954 Filed 12–7–12; 4:15 pm]

**BILLING CODE 7590–01–P**

---

## OFFICE OF PERSONNEL MANAGEMENT

### Privacy Act of 1974: Update Existing System of Records

**AGENCY:** U.S. Office of Personnel Management.

**ACTION:** Update OPM/GOVT–1, General Personnel Records.

**SUMMARY:** The U.S. Office of Personnel Management (OPM) proposes to update OPM/GOVT–1, General Personnel Records, System of Records. This action is necessary to meet the requirements of the Privacy Act to publish in the **Federal Register** notice of the existence and character of records maintained by the agency (5 U.S.C. 552a(e)(4)) and (11).

**DATES:** This action will be effective without further notice on January 10, 2013 unless comments are received that would result in a contrary determination.

**ADDRESSES:** Send written comments to the U.S. Office of Personnel Management, Manager, OCIO/RM, 1900 E Street NW., Washington, DC 20415.

**FOR FURTHER INFORMATION CONTACT:** U.S. Office of Personnel Management, Manager, OCIO/RM, 1900 E Street NW., Washington, DC 20415.

**SUPPLEMENTARY INFORMATION:** The OPM system of records subject to the Privacy Act of 1974 (5 U.S.C. 552a), as amended, has been published in the **Federal Register**. The proposed changes include the following: (1) Adding *a reference* to OPM's "Guide to Data Standards" to the "Categories of Records in the System," (2) adding Enterprise Human Resource Integration (EHRI) to Categories of Records in the System (g), (3) shortening existing Note "8,", (4) adding routine use "qq" To disclose foreign language proficiencies to Federal agencies in support of the National Preparedness Goal and the Presidential Policy Directive 8 (PPD–8), and (5) adding routine use "rr" To disclose information to the Centers for Medicare and Medicaid (CMS) to assist in determining whether individuals are eligible for programs under the Patient Protection and Affordable Care Act (PPACA).

U.S. Office of Personnel Management.

**John Berry,**
*Director.*

**OPM/GOVT–1**

**SYSTEM NAME:**

General Personnel Records.

**SYSTEM LOCATION:**

Records on current Federal employees are located within the employing agency.

Records maintained in paper may also be located at OPM or with personnel officers, or at other designated offices of local installations of the department or agency that employs the individual. When agencies determine that duplicates of these records need to be located in a second office, e.g., an administrative office closer to where the employee actually works, such copies are covered by this system. Some agencies have employed the Enterprise Human Resource Integration (EHRI) data system to store their records electronically. Although stored in EHRI, agencies are still responsible for the maintenance of their records.

Former Federal employees' paper Official Personnel Folders (OPFs) are located at the National Personnel Records Center, National Archives and Records Administration (NARA), 111 Winnebago Street, St. Louis, Missouri 63118. Former Federal employees' electronic Official Personnel Folders (eOPF) are located in the EHRI data system that is administered by NARA.

Note 1—The records in this system are records of the OPM and must be provided to those OPM employees who have an official need or use for those records. Therefore, if an employing agency is asked by an OPM employee to access the records within this system, such a request must be honored.

OPM-000057

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Current and former Federal employees as defined in 5 U.S.C. 2105.

(Volunteers, grantees, and contract employees on whom the agency maintains records may also be covered by this system).

**CATEGORIES OF RECORDS IN THE SYSTEM:**

All categories of records may include identifying information, such as name(s), date of birth, home address, mailing address, social security number, and home telephone. This system includes, but is not limited to, contents of the OPF as specified in OPM's Operating Manual, ''The Guide to Personnel Recordkeeping'' and OPM's ''Guide to Data Standards.'' Records in this system include:

a. Records reflecting work experience, education level achieved, and specialized education or training obtained outside of Federal service.

b. Records reflecting Federal service and documenting work experience and specialized education received while employed. Such records contain information about past and present positions held; grades; salaries; duty station locations; and notices of all personnel actions, such as appointments, transfers, reassignments, details, promotions, demotions, reductions-in-force, resignations, separations, suspensions, OPM approval of disability retirement applications, retirement, and removals.

c. Records on participation in the Federal Employees' Group Life Insurance Program and Federal Employees Health Benefits Program.

d. Records relating to an Intergovernmental Personnel Act assignment or Federal-private sector exchange program.

**Note 2**—Some of these records may also become part of the OPM/CENTRAL–5, Intergovernmental Personnel Act Assignment Record system.

e. Records relating to participation in an agency Federal Executive or Senior Executive Service (SES) Candidate Development Program.

**Note 3**—Some of these records may also become part of the OPM/Central-10 Federal Executive Institute Program Participant Records and OPM/CENTRAL–13 Executive Personnel Records systems.

f. Records relating to Government-sponsored training or participation in an agency's Upward Mobility Program or other personnel program designed to broaden an employee's work experiences and for purposes of advancement (e.g., an administrative intern program).

g. Records contained in the Enterprise Human Resource Integration (EHRI) and Central Personnel Data File (CPDF) maintained by OPM and exact substantive representations in agency manual or automated personnel information systems. These data elements include many of the above records along with disability, race/ethnicity, national origin, pay, and performance information from other OPM and agency systems of records. A definitive list of EHRI and CPDF data elements is contained in OPM's Operating Manuals, The Guide to Central Personnel Data File Reporting Requirements and The Guide to Personnel Data Standards.

h. Records on the SES maintained by agencies for use in making decisions affecting incumbents of these positions, e.g., relating to sabbatical leave programs, reassignments, and details, that are perhaps unique to the SES and that may be filed in the employee's OPF. These records may also serve as the basis for reports submitted to OPM for implementing OPM's oversight responsibilities concerning the SES.

i. Records on an employee's activities on behalf of the recognized labor organization representing agency employees, including accounting of official time spent and documentation in support of per diem and travel expenses.

**Note 4**—Alternatively, such records may be retained by an agency payroll office and thus be subject to the agency's internal Privacy Act system for payroll records. The OPM/GOVT–1 system does not cover general agency payroll records.

j. To the extent that the records listed here are also maintained in an agency electronic personnel or microform records system, those versions of these records are considered to be covered by this system notice. Any additional copies of these records (excluding performance ratings of record and conduct-related documents maintained by first line supervisors and managers covered by the OPM/GOVT–2 system) maintained by agencies at remote field/administrative offices from where the original records exist are considered part of this system.

**Note 5**—It is not the intent of OPM to limit this system of records only to those records physically within the OPF. Records may be filed in other folders located in offices other than where the OPF is located. Further, as indicated in the records location section, some of these records may be duplicated for maintenance at a site closer to where the employee works (e.g., in an administrative office or supervisors work folder) and still be covered by this system. In addition, a working file that a supervisor or other agency official is using that is derived from OPM/GOVT–1 is covered by this system notice. This system also includes working files derived from this notice that management is using in its personnel management capacity.

k. Records relating to designations for lump sum death benefits.

l. Records relating to classified information nondisclosure agreements.

m. Records relating to the Thrift Savings Plan (TSP) concerning the starting, changing, or stopping of contributions to the TSP as well as how the individual wants the investments to be made in the various TSP Funds.

**Note 6**—CPDF and EHRI data system's Central Employee Record (CER) are part of OPM/GOVT–1 system of records. CPDF and CER are highly reliable sources of statistical data on the workforce of the Federal government. However, the accuracy and completeness of each data element within the individual records that comprise the aggregate files are not guaranteed, and should not be used as the sole tool or as a substitute for the OPF in making personnel determinations or decisions concerning individuals.

**Note 7**—The eOPF Application within EHRI may contain documents and information beyond the scope and requirements of the OPF as documented in OPM's Guide to Personnel Recordkeeping. Those documents and information in the eOPF Application that are beyond the scope of the documented requirements are not considered part of the OPF or OPM/GOVT–1,

n. Records maintained in accordance with E.O. 13490, section 4(e), January 21, 2009. These records include the ethics pledges and all pledge waiver certifications with respect thereto.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM INCLUDES THE FOLLOWING WITH ANY REVISIONS OR AMENDMENTS:**

5 U.S.C. 1302, 2951, 3301, 3372, 4118, 8347, and Executive Orders 9397, as amended by 13478, 9830, and 12107.

Purposes:

The OPF, which may exist in various approved media, and other general personnel records files, is the official repository of the records, reports of personnel actions, and the documentation required in connection with these actions affected during an employee's Federal service. The personnel action reports and other

OPM-000058

documents, some of which are filed in the OPF, give legal force and effect to personnel transactions and establish employee rights and benefits under pertinent laws and regulations governing Federal employment.

These files and records are maintained by OPM and agencies in accordance with OPM regulations and instructions. They provide the basic source of factual data about a person's Federal employment while in the service and after his or her separation. Records in this system have various uses by agency personnel offices, including screening qualifications of employees; determining status, eligibility, and employee's rights and benefits under pertinent laws and regulations governing Federal employment; computing length of service; and other information needed to provide personnel services. These records may also be used to locate individuals for personnel research.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEMS, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

These records and information in these records may be used—

a. To disclose information to Government training facilities (Federal, State, and local) and to non-Government training facilities (private vendors of training courses or programs, private schools, etc.) for training purposes.

b. To disclose information to education institutions on appointment of a recent graduate to a position in the Federal service, and to provide college and university officials with information about their students working in the Student Career Experience Program, Volunteer Service, or other similar programs necessary to a student's obtaining credit for the experience gained.

c. To disclose information to officials of foreign governments for clearance before a Federal employee is assigned to that country.

d. To disclose information to the Department of Labor, Department of Veterans Affairs, Social Security Administration, Department of Defense, or any other Federal agencies that have special civilian employee retirement programs; or to a national, State, county, municipal, or other publicly recognized charitable or income security administration agency (e.g., State unemployment compensation agencies), when necessary to adjudicate a claim under the retirement, insurance, unemployment, or health benefits programs of the OPM or an agency cited above, or to an agency to conduct an analytical study or audit of benefits being paid under such programs.

e. To disclose information necessary to the Office of Federal Employees Group Life Insurance to verify election, declination, waiver of regular and/or optional life insurance coverage, or eligibility for payment of a claim for life insurance, or to TSP to verify election change and designation of beneficiary.

f. To disclose, to health insurance carriers contracting with OPM to provide a health benefits plan under the Federal Employees Health Benefits Program, information necessary to identify enrollment in a plan, to verify eligibility for payment of a claim for health benefits, or to carry out the coordination or audit of benefit provisions of such contracts.

g. To disclose information to a Federal, State, or local agency for determination of an individual's entitlement to benefits in connection with Federal Housing Administration programs.

h. To consider and select employees for incentive awards and other honors and to publicize those granted. This may include disclosure to other public and private organizations, including news media, which grant or publicize employee recognition.

i. To consider employees for recognition through quality-step increases and to publicize those granted. This may include disclosure to other public and private organizations, including news media, which grant or publicize employee recognition.

j. To disclose information to officials of labor organizations recognized under 5 U.S.C. chapter 71 when relevant and necessary to their duties of exclusive representation concerning personnel policies, practices, and matters affecting working conditions.

**Note 8**—Home addresses will be released from this system only when there are no adequate, alternative sources available for this information.

k. To disclose pertinent information to the appropriate Federal, State, or local agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, when the disclosing agency becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation.

l. To disclose information to any source from which additional information is requested (to the extent necessary to identify the individual, inform the source of the purpose(s) of the request, and to identify the type of information requested), when necessary to obtain information relevant to an agency decision to hire or retain an employee, issue a security clearance, conduct a security or suitability investigation of an individual, classify jobs, let a contract, or issue a license, grant, or other benefits.

**Note 9**—When copies of records become part of an investigative process, those copies become subject to that systems' notice covering the investigative process i.e., if during an investigation, the OPM Federal Investigative Services Division makes copies of records contained in an Official Personnel Folder; those documents become part of OPM Central—9 Personnel Investigation Records system of records and are subject to that systems' routine uses.

m. To disclose to a Federal agency in the executive, legislative, or judicial branch of Government, in response to its request, or at the initiation of the agency maintaining the records, information in connection with the hiring of an employee, the issuance of a security clearance or determination concerning eligibility to hold a sensitive position, the conducting of an investigation for purposes of a credentialing, national security, fitness, or suitability adjudication concerning an individual, the classifying or designation of jobs, the letting of a contract, the issuance of a license, grant, or other benefit by the requesting agency, or the lawful statutory, administrative, or investigative purpose of the agency to the extent that the information is relevant and necessary to the requesting agency's decision.

n. To disclose information to the Office of Management and Budget at any stage in the legislative coordination and clearance process in connection with private relief legislation as set forth in OMB Circular No. A–19.

o. To provide information to a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of the individual.

p. To disclose information to another Federal agency, to a court, or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.

q. To disclose information to the Department of Justice, or in a proceeding before a court, adjudicative body, or other administrative body before which the agency is authorized to appear, when:

1. The agency, or any component thereof; or

2. Any employee of the agency in his or her official capacity; or

JA315

OPM-000059

3. Any employee of the agency in his or her individual capacity where the Department of Justice or the agency has agreed to represent the employee; or

4. The United States, when the agency determines that litigation is likely to affect the agency or any of its components, is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

r. By the National Archives and Records Administration in records management inspections and its role as Archivist.

s. By the agency maintaining the records or by the OPM to locate individuals for personnel research or survey response, and in the production of summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained, or for related workforce studies. While published statistics and studies do not contain individual identifiers, in some instances, the selection of elements of data included in the study may be structured in such a way as to make the data individually identifiable by inference.

t. To provide an official of another Federal agency information needed in the performance of official duties related to reconciling or reconstructing data files, in support of the functions for which the records were collected and maintained.

u. When an individual to whom a record pertains is mentally incompetent or under other legal disability, to provide information in the individual's record to any person who is responsible for the care of the individual, to the extent necessary to assure payment of benefits to which the individual is entitled.

v. To disclose to the agency-appointed representative of an employee all notices, determinations, decisions, or other written communications issued to the employee in connection with an examination ordered by the agency under fitness-for-duty examination procedures.

w. To disclose, in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding.

x. To disclose to a requesting agency, organization, or individual the home

address and other relevant information on those individuals who it reasonably believed might have contracted an illness or might have been exposed to or suffered from a health hazard while employed in the Federal workforce.

y. To disclose specific civil service employment information required under law by the Department of Defense on individuals identified as members of the Ready Reserve to assure continuous mobilization readiness of Ready Reserve units and members, and to identify demographic characteristics of civil service retirees for national emergency mobilization purposes.

z. To disclose information to the Department of Defense, National Oceanic and Atmospheric Administration, U.S. Public Health Service, Department of Veterans Affairs, and the U.S. Coast Guard needed to effect any adjustments in retired or retained pay required by the dual compensation provisions of section 5532 of title 5, United States Code.

aa. To disclose information to the Merit Systems Protection Board or the Office of the Special Counsel in connection with appeals, special studies of the civil service and other merit systems, review of OPM rules and regulations, investigation of alleged or possible prohibited personnel practices, and such other functions promulgated in 5 U.S.C. chapter 12, or as may be authorized by law.

bb. To disclose information to the Equal Employment Opportunity Commission when requested in connection with investigations of alleged or possible discrimination practices in the Federal sector, examination of Federal affirmative employment programs, compliance by Federal agencies with the Uniform Guidelines on Employee Selection Procedures, or other functions vested in the Commission.

cc. To disclose information to the Federal Labor Relations Authority (including its General Counsel) when requested in connection with investigation and resolution of allegations of unfair labor practices, in connection with the resolution of exceptions to arbitrator's awards when a question of material fact is raised, to investigate representation petitions and to conduct or supervise representation elections, and in connection with matters before the Federal Service Impasses Panel.

dd. To disclose to prospective non-Federal employers, the following information about a specifically identified current or former Federal employee:

(1) Tenure of employment;

(2) Civil service status;

(3) Length of service in the agency and the Government; and

(4) When separated, the date and nature of action as shown on the Notification of Personnel Action—Standard Form 50 (or authorized exception).

ee. To disclose information on employees of Federal health care facilities to private sector (i.e., other than Federal, State, or local government) agencies, boards, or commissions (e.g., the Joint Commission on Accreditation of Hospitals). Such disclosures will be made only when the disclosing agency determines that it is in the Government's best interest (e.g., to comply with law, rule, or regulation, to assist in the recruiting of staff in the community where the facility operates to obtain accreditation or other approval rating, or to avoid any adverse publicity that may result from public criticism of the facility's failure to obtain such approval). Disclosure is to be made only to the extent that the information disclosed is relevant and necessary for that purpose.

ff. To disclose information to any member of an agency's Performance Review Board, Executive Resources Board, or other panel when the member is not an official of the employing agency; information would then be used for approving or recommending selection of candidates for executive development or SES candidate programs, issuing a performance rating of record, issuing performance awards, nominating for meritorious or distinguished executive ranks, or removal, reduction-in-grade, or other personnel actions based on performance.

gg. To disclose, either to the Federal Acquisition Institute (FAI) or its agent, information about Federal employees in procurement occupations and other occupations whose incumbents spend the predominant amount of their work hours on procurement tasks; provided that the information shall be used only for such purposes and under such conditions as prescribed by the notice of the Federal Acquisition Personnel Information System as published in the **Federal Register** of February 7, 1980 (45 FR 8399).

hh. To disclose relevant information with personal identifiers of Federal civilian employees whose records are contained in the EHRI to authorized Federal agencies and non-Federal entities for use in computer matching. The matches will be performed to help eliminate waste, fraud, and abuse in Governmental programs; to help identify individuals who are potentially

**73698**       **Federal Register** / Vol. 77, No. 238 / Tuesday, December 11, 2012 / Notices

in violation of civil or criminal law or regulation; and to collect debts and overpayments owed to Federal, State, or local governments and their components. The information disclosed may include, but is not limited to, the name, social security number, date of birth, sex, annualized salary rate, service computation date of basic active service, veteran's preference, retirement status, occupational series, health plan code, position occupied, work schedule (full time, part time, or intermittent), agency identifier, geographic location (duty station location), standard metropolitan service area, special program identifier, and submitting office number of Federal employees.

ii. To disclose information to Federal, State, local, and professional licensing boards, Boards of Medical Examiners, or to the Federation of State Medical Boards or a similar non-government entity which maintains records concerning individuals' employment histories or concerning the issuance, retention or revocation of licenses, certifications or registration necessary to practice an occupation, profession or specialty, to obtain information relevant to an Agency decision concerning the hiring, retention, or termination of an employee or to inform a Federal agency or licensing boards or the appropriate non-government entities about the health care practices of a terminated, resigned or retired health care employee whose professional health care activity so significantly failed to conform to generally accepted standards of professional medical practice as to raise reasonable concern for the health and safety of patients in the private sector or from another Federal agency.

jj. To disclose information to contractors, grantees, or volunteers performing or working on a contract, service, grant, cooperative agreement, or job for the Federal Government.

kk. To disclose information to a Federal, State, or local governmental entity or agency (or its agent) when necessary to locate individuals who are owed money or property either by a Federal, State, or local agency, or by a financial or similar institution.

ll. To disclose to a spouse or dependent child (or court-appointed guardian thereof) of a Federal employee enrolled in the Federal Employees Health Benefits Program, upon request, whether the employee has changed from a self-and-family to a self-only health benefits enrollment.

mm. To disclose information to the Office of Child Support Enforcement, Administration for Children and Families, Department of Health and Human Services, Federal Parent Locator System, or Federal Offset System for use in locating individuals, verifying social security numbers, or identifying their incomes sources to establish paternity, establish, or modify orders of support and for enforcement action.

nn. To disclose records on former Panama Canal Commission employees to the Republic of Panama for use in employment matters.

oo. To disclose to appropriate Federal officials pertinent workforce information for use in national or homeland security emergency/disaster response.

pp. To disclose on public and internally-accessible Federal Government Web sites, and to otherwise disclose to any person, including other departments and agencies, the signed ethics pledges and pledge waiver certifications issued under E.O. 13490 of January 21, 2009, Ethics Commitments by Executive Branch Personnel.

qq. To disclose foreign language proficiencies to Federal agencies in support of the National Preparedness Goal and the Presidential Policy Directive 8 (PPD–8).

rr. To disclose information to the Centers for Medicare and Medicaid (CMS) to assist in determining whether individuals are eligible for programs under the Patient Protection and Affordable Care Act (PPACA).

**POLICIES AND PRACTICES OF STORING, RETRIEVING, SAFEGUARDING, AND RETAINING AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

These records are maintained in file folders, on lists and forms, microfilm or microfiche, and in computer processable storage media such as personnel system databases, PDF forms and data warehouse systems.

**RETRIEVABILITY:**

These records are retrieved by various combinations of name, agency, birth date, social security number, or identification number of the individual on whom they are maintained.

**SAFEGUARDS:**

Paper or microfiche/microfilmed records are located in locked metal file cabinets or in secured rooms with access limited to those personnel whose official duties require access. Access to computerized records is limited, through use of user logins and passwords, access codes, and entry logs, to those whose official duties require access. Computerized records systems are consistent with the requirements of the Federal Information Security Management Act (Pub. L. 107–296), and associated OMB policies, standards and guidance from the National Institute of Standards and Technology.

**RETENTION AND DISPOSAL:**

The OPF is maintained for the period of the employee's service in the agency and is then, if in a paper format, transferred to the National Personnel Records Center for storage or, as appropriate, to the next employing Federal agency. If the OPF is maintained in an electronic format, the transfer and storage is in accordance with the OPM approved electronic system. Other records are either retained at the agency for various lengths of time in accordance with the National Archives and Records Administration records schedules or destroyed when they have served their purpose or when the employee leaves the agency. The transfer occurs within 90 days of the individuals' separation. In the case of administrative need, a retired employee, or an employee who dies in service, the OPF is sent within 120 days. Destruction of the OPF is in accordance with General Records Schedule-1 (GRS–1) or GRS 20.

Records contained within the CPDF and EHRI (and in agency's automated personnel records) may be retained indefinitely as a basis for longitudinal work history statistical studies. After the disposition date in GRS–1 or GRS 20, such records should not be used in making decisions concerning employees.

**SYSTEM MANAGER AND ADDRESS:**

a. Manager, OCIO/RM, U.S. Office of Personnel Management, 1900 E Street NW., Washington, DC 20415.

b. For current Federal employees, OPM has delegated to the employing agency the Privacy Act responsibilities concerning access, amendment, and disclosure of the records within this system notice.

**NOTIFICATION PROCEDURE:**

Individuals wishing to inquire whether this system of records contains information about them should contact the appropriate OPM or employing agency office, as follows:

a. Current Federal employees should contact the Personnel Officer or other responsible official (as designated by the employing agency), of the local agency installation at which employed regarding records in this system.

b. Former Federal employees who want access to their Official Personnel Folders (OPF) should contact the National Personnel Records Center (Civilian), 111 Winnebago Street, St. Louis, Missouri 63118, regarding the records in this system. For other records

covered by the system notice, individuals should contact their former employing agency. Individuals must furnish the following information for their records to be located and identified:

a. Full name.
b. Date of birth.
c. Social security number.
d. Last employing agency (including duty station) and approximate date(s) of the employment (for former Federal employees).
e. Signature.

**RECORD ACCESS PROCEDURE:**

Individuals wishing to request access to their records should contact the appropriate OPM or agency office, as specified in the Notification Procedure section. Individuals must furnish the following information for their records to be located and identified:

a. Full name(s).
b. Date of birth.
c. Social security number.
d. Last employing agency (including duty station) and approximate date(s) of employment (for former Federal employees).
e. Signature.

Individuals requesting access must also comply with the Office's Privacy Act regulations on verification of identity and access to records (5 CFR part 297).

**CONTESTING RECORD PROCEDURE:**

Current employees wishing to request amendment of their records should contact their current agency. Former employees should contact the system manager. Individuals must furnish the following information for their records to be located and identified.

a. Full name(s).
b. Date of birth.
c. Social security number.
d. Last employing agency (including duty station) and approximate date(s) of employment (for former Federal employees).
e. Signature.

Individuals requesting amendment must also comply with the Office's Privacy Act regulations on verification of identity and amendment of records (5 CFR part 297).

**RECORD SOURCE CATEGORIES:**

Information in this system of records is provided by—

a. The individual on whom the record is maintained.
b. Educational institutions.
c. Agency officials and other individuals or entities.
d. Other sources of information maintained in an employee's OPF, in accordance with Code of Federal Regulations Part 293, and OPM's Operating Manual, ''The Guide to Personnel Recordkeeping.''

[FR Doc. 2012–29777 Filed 12–10–12; 8:45 am]

**BILLING CODE 6325–45–P**

---

**POSTAL REGULATORY COMMISSION**

**[Docket No. CP2013–24; Order No. 1566]**

**International Mail Contract**

**AGENCY:** Postal Regulatory Commission.

**ACTION:** Notice.

**SUMMARY:** The Commission is noticing a recent Postal Service filing concerning an additional inbound competitive Multi-Service Agreements with Foreign Postal Operators 1 negotiated service agreement with Royal PostNL BV. This notice informs the public of the filing, invites public comment, and takes other administrative steps.

**DATES:** *Comments are due:* December 14, 2012.

**ADDRESSES:** Submit comments electronically via the Commission's Filing Online system at *http://www.prc.gov.* Those who cannot submit comments electronically should contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section by telephone for advice on filing alternatives.

**FOR FURTHER INFORMATION CONTACT:** Stephen L. Sharfman, General Counsel, at 202–789–6820.

**SUPPLEMENTARY INFORMATION:**

**Table of Contents**

I. Introduction
II. Contents of Filing
III. Commission Action
IV. Ordering Paragraphs

**I. Introduction**

On December 4, 2012, the Postal Service filed a notice, pursuant to 39 CFR 3015.5, stating that it has entered into an additional negotiated service agreement (Agreement) with the Netherlands' foreign postal operator Royal PostNL BV (PostNL).[1] The Postal Service seeks to have the inbound portion of the Agreement, which concerns delivery of inbound Air CP[2] and EMS in the United States, included within the Inbound Competitive Multi-Service Agreements with Foreign Postal Operators 1 (MC2010–34) product on the competitive product list. Notice at 1.

**II. Contents of Filing**

The Postal Service's filing consists of the Notice, a public Excel file containing redacted financial workpapers, and four attachments. Attachment 1 is a redacted copy of the Agreement. *Id.* at 3. Attachment 2 is the certified statement required by 39 CFR 3015.5(c)(2). *Id.* Attachment 3 is a redacted copy of the Governors' Decision No. 10–3. *Id.* Attachment 4 is an application for non-public treatment of unredacted material. *Id.* The Agreement's intended effective date is January 1, 2013. *Id.* at 4.

The rates for inbound Air CP and EMS included in the Agreement are to remain in effect for 2 years after the Agreement's effective date, unless terminated sooner. *Id.* The Postal Service further notes that a TNT Agreement, in accordance with Article 22 of the TNT Agreement, automatically renewed on October 1, 2012, but pursuant to paragraph 3 of Article 22 of the PostNL Agreement, the TNT Agreement is to expire the day prior to the effective date of the PostNL Agreement, if an effective date for the PostNL agreement is established. *Id.* at 3 n.5.

The Postal Service reviews the regulatory history of the Inbound Competitive Multi-Service Agreements with Foreign Operators 1 product and identifies the TNT Agreement (approved in Docket No. CP2010–95) as the baseline agreement for purposes of determining the functional equivalence of the instant Agreement.[3] *Id.* at 2. It asserts that the instant Agreement fits within applicable Mail Classification Schedule language and addresses functional equivalency with the baseline agreement, including similarity of cost characteristics. *Id.* at 3–7. The Postal Service also identifies differences between the two contracts, such as the addition of several articles, revisions to existing articles, and new annexes, but asserts that these differences do not detract from a finding of functional equivalency. *Id.* at 5–7.

**III. Commission Action**

*Notice of establishment of docket.* The Commission establishes Docket No. CP2013–24 for consideration of matters

---

[1] Notice of United States Postal Service of Filing Functionally Equivalent Inbound Competitive Multi-Service Agreement with a Foreign Postal Operator, December 4, 2012 (Notice).

[2] ''CP'' is an abbreviation used to identify or reference international parcel post (from the French phrase *colis postaux*, ''postal package'').

[3] The Postal Service identifies Governors' Decision No. 10–3 as the enabling Governors' Decision. *Id.* at 5. The status of the TNT Agreement as the baseline agreement was confirmed in Docket No. CP2011–69, Order No. 840, Order Concerning an Additional Inbound Competitive Multi-Service Agreements with Foreign Postal Operators 1 Negotiated Service Agreement, September 7, 2011. *See id.* at 2.

**OPM/GOVT–2**

**System Name:**

Employee Performance File System Records.

**System Location:**

Records maintained in this system may be located as follows:

a. In an Employee Performance File (EPF) maintained in the agency office responsible for maintenance of the employee's Official Personnel Folder (OPF) or other agency-designated office. This includes those instances where the agency uses an envelope within the OPF in lieu of a separate EPF folder.

b. In the EPF of Senior Executive Service (SES) appointees where the agency elects to have the file maintained by the Performance Review Boards required by 5 U.S.C. 4314(c)(1), or the administrative office supporting the Board.

c. In any supervisor/manager's work folder maintained in the office by the employee's immediate supervisor/manager or, where agencies have determined that records management is better served, in such folders maintained for supervisors/managers in a central administrative office.

d. In an agency's electronic personnel records system.

e. In an agency microformed EPF.

**Note 1:**

Originals or copies of records covered by this system may be located in more than one location, but if they become part of an agency internal system (e.g., administrative or negotiated grievance file), those copies then would be subject to the agency's internal Privacy Act implementation guidance regarding their use within the agency's system.

**Note 2:**

The records in this system are 'owned' by the Office of Personnel Management (OPM) and should be provided to those Office employees who have an official need or use for those records. Therefore, if an employing agency is asked by an OPM employee for access to the records within this system, such a request should be honored.

**Categories of Individuals Covered by the System:**

Current and former Federal employees (including SES appointees).

**Categories of Records in the System:**

Records in this system, wherever they are maintained, may include any or all of the following:

a. Annual summary performance ratings of record issued under employee appraisal systems and any document that indicates that the rating is being challenged under administrative procedures (e.g., when the employee files a grievance on the rating received).

b. A document (either the summary rating form itself or a form affixed to it) that identifies the job elements and the standards for those elements upon which the rating is based.

c. Supporting documentation for employee ratings of records, as required by agency rating systems or implementing instructions, and which may be filed physically with the rating of record (e.g., productivity and quality control records, records of employee counseling, individual development plans, or other such records as specified in agency issuances) and maintained, for example in a work folder by supervisors/managers at the work site.

d. Records on SES appraisals generated by Performance Review Boards, including statements of witnesses and transcripts of hearings.

e. Written recommendations for awards, removals, demotions, denials of within-grade increases, reassignments, training, pay increases, cash bonuses, or other performance-based actions (e.g., nominations of SES employees for Meritorious or Distinguished Executive), including supporting documentation.

f. Statements made (letter on or appended to the performance rating document) by the employee (e.g., a statement of disagreement with the rating or recommendation), in accordance with agency performance plans and implementing instructions, regarding a rating given and any recommendations made based on them.

**Note 3:**

OPM-000063

When a recommendation by a supervisor/manager or a statement made by the employee regarding the rating issued (or a copy) becomes part of another Governmentwide system or internal agency file (e.g., an SF 52 when the action is effected or when documents or statements of disagreement are placed in a grievance file), that document then becomes subject to that system's notice and appropriate OPM or employing agency Privacy Act requirements, respectively, for the system of records covering that file.

g. Records created by Executive Resource Boards regarding performance of an individual in an executive development program.

h. Records concerning performance during the supervisory or managerial probationary period, the SES appointment probationary period, or the employee's initial period of probation after appointment.

i. Notices of commendations, recommendations for training, such as an Individual Development Plan, and advice and counseling records that are based on work performance.

j. Copies of supervisory ratings used in considering employees for promotion or other position changes originated in conjunction with agency merit promotion programs when specifically authorized for retention in the EPF or work folder.

k. Performance-related material that may be maintained in the work folder to assist the supervisor/manager in accurately assessing employee performance. Such material may include transcripts of employment and training history, documentation of special licenses, certificates, or authorizations necessary in the performance of the employee duties, and other such records that agencies determine to be appropriate for retention in the work folder.

l. Standard Form 7B cards. (While the use of the SF 7B Card system was cancelled effective December 31, 1992, this system notice will cover any of those cards still in existence.)

**Note 4:**

To the extent that performance records covered by this system are maintained in either an EPF, supervisor/manager work folder, or an agency's electronic or microform record system, they are considered covered under this system of records. Further, when copies of records filed in the employee's OPF are maintained as general records related to performance (item k above), those records are to be considered as being covered by this system and not the OPM/GOVT–1 system.

This notice does not cover these records (or copies) when they become part of a grievance file or a 5 CFR parts 432, 752, or 754 file (documents maintained in these files are covered by the OPM/GOVT–3 system of records, while grievance records are covered under an agency-specific system), or when they become part of an appeal or discrimination complaint file as such documents are considered to be part of either the system of appeal records under the control of the Merit Systems Protection Board (MSPB) or discrimination complaints files under the control of the Equal Employment Opportunity Commission (EEOC).

When an agency retains copies of records from this system in another system of records, not covered by this or another OPM, MSPB, or EEOC Government-wide system notice, the agency is solely responsible for responding to any Privacy Act issues raised concerning these documents.

The Office has adopted a position that when supervisors/managers retain personal "supervisory" notes, i.e., information on employees that the agency exercises no control and does not require or specifically describe in its performance system, which remain solely for the personal use of the author and are not provided to any other person, and which are retained or discarded at the author's sole discretion, such notes are not subject to the Privacy Act and are, therefore, not considered part of this system. Should an agency choose to adopt a position that such notes are subject to the Act, that agency is solely responsible for dealing with Privacy Act matters, including the requisite system notice, concerning them.

**Authority for Maintenance of the System:**

Sections 1104, 3321, 4305, and 5405 of title 5, U.S. Code, and Executive Order 12107.

**Purpose:**

These records are maintained to ensure that all appropriate records on an employee's performance are retained and are available (1) To agency officials having a need for the information; (2) to employees; (3) to support actions based on the records; (4) for use by the OPM in connection with its personnel management evaluation role in the executive branch; and (5) to identify individuals for personnel research.

**Routine Uses of Records Maintained in the System, Including Categories of Users and the Purpose of Such Uses:**

a. To disclose information to the Merit Systems Protection Board or the Office of Special Counsel in connection with appeals, special studies of the civil service and other merit systems, review of Office rules and regulations, investigations

OPM-000064

of alleged or possible prohibited personnel practices, and other functions as promulgated in 5 U.S.C. chapter 12, or for such other functions as may be authorized by law.

b. To disclose information to the EEOC when requested in connection with investigations into alleged or possible discrimination practices in the Federal sector, examination of Federal Affirmative Action programs, compliance by Federal agencies with the Uniform Guidelines on Employee Selection Procedures, or other functions vested in the Commission.

c. To disclose information to the Federal Labor Relations Authority (including its General Counsel) when requested in connection with the investigation and resolution of allegations of unfair labor practices, in connection with the resolution of exceptions to arbitrator's awards where a question of material fact is raised, and matters before the Federal Service Impasses Panel.

d. To consider and select employees for incentive awards, quality-step increases, merit increases and performance awards, or other pay bonuses, and other honors and to publicize those granted. This may include disclosure to public and private organizations, including news media, which grant or publicize employee awards or honors.

e. To disclose information to an arbitrator to resolve disputes under a negotiated grievance procedure or to officials of labor organizations recognized under 5 U.S.C. chapter 71 when relevant and necessary to their duties of exclusive representation.

f. To disclose to an agency in the executive, legislative, or judicial branch, or to the District of Columbia's government in response to its request, or at the initiation of the agency maintaining the records, information in connection with hiring or retaining of an employee; issuing a security clearance; conducting a security or suitability investigation of an individual; classifying jobs; letting a contract; issuing a license, grant, or other benefits by the requesting agency; or the lawful statutory, administrative, or investigative purposes of the agency to the extent that the information is relevant and necessary to the decision on the matter.

g. To disclose, in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding.

h. To disclose information to a congressional office from the record or an individual in response to an inquiry from that congressional office made at the request of the individual.

i. To disclose information to another Federal agency, to a court, or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.

j. To disclose information to the Department of Justice, or in a proceeding before a court, adjudicative body, or other administrative body before which the agency is authorized to appear, when:

1. The agency, or any component thereof; or

2. Any employee of the agency in his or her official capacity; or

3. Any employee of the agency in his or her individual capacity where the Department of Justice or the agency has agreed to represent the employee; or

4. The United States, when the agency determines that litigation is likely to affect the agency or any of its components, is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation, provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

k. By the National Archives and Records Administration in records management inspections and its role as Archivist.

l. By the OPM or employing agency to locate individuals for personnel research or survey response and in producing summary descriptive statistics and analytical studies to support the function for which the records are collected and maintained, or for related workforce studies. While published statistics and studies do not contain individual identifiers, in some instances the selection of elements of data included in the study may be structured in such a way as to make the data individually identifiable by inference.

m. To disclose pertinent information to the appropriate Federal, State, or local government agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, where the agency maintaining the record becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation.

OPM-000065

n. To disclose information to any member of an agency's Performance Review Board or other board or panel when the member is not an official of the employing agency. The information would then be used for approving or recommending performance awards, nominating for meritorious and distinguished executive ranks, and removal, reduction-in-grade, and other personnel actions based on performance.

o. To disclose to Federal, State, local, and professional licensing boards or Boards of Medical Examiners, when such records reflect on the qualifications of individuals seeking to be licensed.

p. To disclose to contractors, grantees, or volunteers performing or working on a contract, service, grant, cooperative agreement, or job for the Federal Government.

q. To disclose records on former Panama Canal Commission employees to the Republic of Panama for use in employment matters.

**Policies and Practices for Storing, Retrieving, Safeguarding, Retaining and Disposing of Records in the System:**

**Storage:**

Records are maintained in file folders, envelopes, and on magnetic tapes, disks, microfilm, or microfiche.

**Retrievability:**

Records are retrieved by the name and social security number of the individual on whom they are maintained.

**Safeguards:**

Records are maintained in file folders or envelopes, on electronic media, magnetic tape, disks, or microforms and are stored in locked desks, metal filing cabinets, or in a secured room with access limited to those whose official duties require access. Additional safeguarding procedures include the use of sign-out sheets and restrictions on the number of employees able to access electronic records through use of access codes and logs.

**Retention and Disposal:**

Records on former non-SES employees will generally be retained no longer than 1 year after the employee leaves his or her employing agency. Records on former SES employees may be retained up to 5 years under 5 U.S.C. 4314.

a. Summary performance appraisals (and related records as the agency prescribes) on SES appointees are retained for 5 years and ratings of record on other employees for 4 years, except as shown in paragraph b. below, and are disposed of by shredding, burning, erasing of disks, or in accordance with agency procedures regarding destruction of personnel records, including giving them to the individual. When a non-SES employee transfers to another agency or leaves Federal employment, ratings of record and subsequent ratings (4 years old or less) are to be filed on the temporary side of the OPF and forwarded with the OPF.

b. Ratings of unacceptable performance and related documents, pursuant to 5 U.S.C. 4303(d), are destroyed after the employee completes 1 year of acceptable performance from the date of the proposed removal or reduction-in-grade notice. (Destruction to be no later than 30 days after the year is up.)

c. When a career appointee in the SES accepts a Presidential appointment pursuant to 5 U.S.C. 3392(c), the employee's performance folder remains active so long as the employee remains employed under the Presidential appointment and elects to have certain provisions of 5 U.S.C. relating to the Service apply.

d. When an incumbent of the SES transfers to another position in the Service, ratings and plans 5 years old or less shall be forwarded to the gaining agency with the individual's OPF.

e. Some performance-related records (e.g., documents maintained to assist rating officials in appraising performance or recommending remedial actions or to show that the employee is currently licensed or certified) may be destroyed after 1 year.

f. Where any of these documents are needed in connection with administrative or negotiated grievance procedures, or quasi-judicial or judicial proceedings, they may be retained as needed beyond the retention schedules identified above.

g. Generally, agencies retain records on former employees for no longer than 1 year after the employee leaves.

**Note 5:**

When an agency retains an electronic or microform version of any of the above documents, retention of such records longer than shown is permitted (except for those records subject to 5 U.S.C. 4303(d)) for agency use or for historical or

OPM-000066

statistical analysis, but only so long as the record is not used in a determination directly affecting the individual about whom the record pertains (after the manual record has been or should have been destroyed).

**System Manager(s) and Address:**

a. Deputy Associate Director, Center for HR Systems Requirements and Strategies, Room 6H31, U.S. Office of Personnel Management, 1900 E Street, NW., Washington, DC 20415.

b. For current Federal employees, OPM has delegated to the employing agency the Privacy Act responsibilities concerning access, amendment, and disclosure of the record within this system notice.

**Notification Procedure:**

Individuals wishing to inquire whether this system contains information about them should contact their servicing personnel office, supervisor/manager, Performance Review Board office, or other agency designated office maintaining their performance-related records where they are or were employed. Individuals must furnish the following information for their records to be located and identified:

a. Full name(s).

b. Social Security number.

c. Position occupied and unit where employed.

**Records Access Procedure:**

Individuals wishing access to their records should contact the appropriate office indicated in the Notification Procedure section where they are or were employed. Individuals must furnish the following information for their records to be located and identified:

a. Full name(s).

b. Social security number.

c. Position occupied and unit where employed.

Individuals requesting access to records must also comply with the OPM's Privacy Act regulations on verification of identity and access to records (5 CFR part 297).

**Contesting Record Procedure:**

Individuals wishing to request amendment to their records should contact the appropriate office indicated in the Notification Procedure section where they are or were employed. Individuals must furnish the following information for their records to be located and identified:

a. Full name(s).

b. Social security number.

c. Position occupied and unit where employed.

Individuals requesting amendment must also comply with the OPM's Privacy Act regulations on verification of identity and amendment of records (5 CFR part 297).

**Records Source Categories:**

Records in this system are obtained from:

a. Supervisors/managers.

b. Performance Review Boards.

c. Executive Resource Boards.

d. Other individuals or agency officials.

e. Other agency records.

f. The individual to whom the records pertain.

OPM-000067



Ridge, Tennessee. Hermes would be a fluoride-salt cooled, high-temperature reactor that uses solid tri-structural isotropic fuel in pebble form. A notice of receipt and availability of this portion of the application was published in the **Federal Register** on October 29, 2021 (86 FR 60077).

The first part of the Kairos construction permit application consisted of the following information:
• The general information required by 10 CFR 50.33.
• The Preliminary Safety Analysis Report required by 10 CFR 50.34(a).
• Exemption requests to support issuance of a construction permit.
• A request to invoice the filing fee required by 10 CFR 50.30(e) and 10 CFR 170.21.

On October 31, 2021, Kairos filed the second part of its application (ADAMS Package Accession No. ML21306A131) for a construction permit, which consisted of the Environmental Report required by 10 CFR 50.30(f). Submission of the Environmental Report completed the application for a construction permit.

The NRC staff determined that Kairos submitted a two-part application in accordance with 10 CFR 2.101(a)(5) and 10 CFR part 50, and that the application is acceptable for docketing under Docket No. 50–7513. The NRC staff provided Kairos notice of the acceptance and docketing determinations by letter dated November 29, 2021 (ADAMS Accession No. ML21319A354).

The NRC staff will perform a detailed technical review of the construction permit application and document its safety findings in a safety evaluation report. Also, in accordance with 10 CFR part 51, "Environmental Protection Regulations for Domestic Licensing and Related Regulatory Functions," the NRC staff will prepare an environmental impact statement for the proposed action.

Docketing of the application does not preclude the NRC from requesting additional information from the applicant as the review proceeds, nor does it predict whether the Commission will grant or deny the application. The construction permit application will be referred to the Advisory Committee on Reactor Safeguards for review and report consistent with 10 CFR 50.58, "Hearings and report of the Advisory Committee on Reactor Safeguards." If, after holding an evidentiary hearing, the Commission finds that the construction permit application meets the applicable standards of the Atomic Energy Act and the Commission's regulations, and that any required notifications to other agencies and bodies have been made,

the Commission will issue a construction permit, in the form and containing conditions and limitations that the Commission finds appropriate and necessary.

The Commission will announce, in a future **Federal Register** notice, the opportunity to petition for leave to intervene in a proceeding on the construction permit application.

Dated: November 24, 2021.

For the Nuclear Regulatory Commission.

**Benjamin G. Beasley,**

*Senior Project Manager, Advanced Reactor Licensing Branch, Division of Advanced Reactors and Non-Power Production and Utilization Facilities, Office of Nuclear Reactor Regulation.*

[FR Doc. 2021–26119 Filed 11–30–21; 8:45 am]

**BILLING CODE 7590–01–P**

---

## OFFICE OF PERSONNEL MANAGEMENT

### Privacy Act of 1974; System of Records

**AGENCY:** Office of Personnel Management.

**ACTION:** Notice of a modified system of records.

**SUMMARY:** In accordance with the Privacy Act of 1974, the Office of Personnel Management ("OPM"), proposes to modify an OPM government-wide system of records, OPM/GOVT–5, Recruiting, Examining, and Placement Records, primarily to make clear that records collected and generated in the process of onboarding Federal employees but prior to their entry-on-duty date are included in this system of records. In addition, OPM proposes additional administrative changes to reflect the current OPM organization.

**DATES:** Please submit comments on or before January 3, 2022. This modified system of records is effective upon publication.

**ADDRESSES:** You may submit written comments through the Federal Rulemaking Portal: *http://www.regulations.gov*. All submissions received must include the agency name and docket number for this **Federal Register** document. The general policy for comments and other submissions from members of the public is to make these submissions available for public viewing on the internet at *http://www.regulations.gov* as they are received without change, including any personal identifiers or contact information.

**FOR FURTHER INFORMATION CONTACT:** For general questions, please contact: Dianna Saxman, Associate Director, Human Resources Solutions, Office of Personnel Management at *Dianna.Saxman@opm.gov*. For privacy questions, please contact: Kellie Cosgrove Riley, Chief Privacy Officer, Office of Personnel Management at 202–360–6065 or *privacy@opm.gov*.

**SUPPLEMENTARY INFORMATION:** In accordance with the Privacy Act of 1974, 5 U.S.C. 552a, the Office of Personnel Management ("OPM"), proposes to make certain modifications to the OPM/GOVT–5 Recruiting, Examining, and Placement Records system of records pending a comprehensive review and update at a later date. The records in this system of records include all records submitted by an applicant for Federal employment or generated in connection with the application and the onboarding process.

OPM proposes to modify this system of records to add an additional category of records: "m. Records collected or generated in the process of onboarding an applicant selected to fill a vacant position, to include, for example, vaccination records, proof of citizenship, and agency-specific documentation necessary for the onboarding process." This category of records is being added to clarify that records collected or generated in the onboarding process, after applicants have been selected but before they are Federal employees, are included in this system of records. Once an individual completes the onboarding process and is a Federal employee, certain records collected and generated in the onboarding process may be included in other systems of records. For example, proof of vaccination required by Executive Order 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, may later be included in the OPM/GOVT–10 Employee Medical File Systems Records system of records; and personnel forms completed in the onboarding process may later be included in the OPM/GOVT–1 General Personnel Records system of records.

In addition to modifying this system of records to add an additional category of records, OPM also proposes to modify the description of the system location and identification of the system manager. Both modifications are being made to reflect organizational changes at OPM since the last publication of the OPM/GOVT–5 system of records notice.

OPM has provided a report of this modified system of records to the Committee on Oversight and

Government Reform of the House of Representatives, the Committee on Homeland Security and Governmental Affairs of the Senate, and the Office of Management and Budget (OMB), pursuant to 5 U.S.C. 552a(r) and OMB Circular A–108, ''Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act,'' dated December 23, 2016. This modified system of records will be included in OPM's inventory of record systems.

**Alexys Stanley,**

*Regulatory Affairs Analyst.*

**SYSTEM NAME AND NUMBER:**

Recruiting, Examining, and Placement Records, OPM/GOVT–5.

**SECURITY CLASSIFICATION:**

Unclassified.

**SYSTEM LOCATION:**

Human Resources Solutions, Office of Personnel Management, 1900 E Street NW, Washington, DC 20415, has government-wide responsibility for the records in this system of records. Individual agencies have responsibility for the records pertaining to their applicants.

**SYSTEM MANAGER(S):**

Associate Director, Human Resources Solutions, U.S. Office of Personnel Management, 1900 E Street NW, Room 6H31, Washington, DC 20415.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

\*    \*    \*    \*    \*

m. Records collected or generated in the process of onboarding an applicant selected to fill a vacant position, to include, for example, vaccination records, proof of citizenship, and agency-specific documentation necessary for the onboarding process.

\*    \*    \*    \*    \*

**HISTORY:**

61 FR 36919 (July 15, 1996); 65 FR 24731 (April 27, 2000); 71 FR 35341 (June 19, 2006); 79 FR 16834 (March 26, 2014); 80 FR 74815 (November 30, 2015).

[FR Doc. 2021–26086 Filed 11–30–21; 8:45 am]

**BILLING CODE 6325–43–P**

## SECURITIES AND EXCHANGE COMMISSION

**[Investment Company Act Release No. 34426]**

## Notice of Applications for Deregistration Under Section 8(f) of the Investment Company Act of 1940

November 26, 2021.

The following is a notice of applications for deregistration under section 8(f) of the Investment Company Act of 1940 for the month of November 2021. A copy of each application may be obtained via the Commission's website by searching for the file number, or for an applicant using the Company name box, at *http://www.sec.gov/search/search.htm* or by calling (202) 551–8090. An order granting each application will be issued unless the SEC orders a hearing. Interested persons may request a hearing on any application by emailing the SEC's Secretary at *Secretarys-Office@sec.gov* and serving the relevant applicant with a copy of the request by email, if an email address is listed for the relevant applicant below, or personally or by mail, if a physical address is listed for the relevant applicant below. Hearing requests should be received by the SEC by 5:30 p.m. on December 21, 2021, and should be accompanied by proof of service on applicants, in the form of an affidavit or, for lawyers, a certificate of service. Pursuant to Rule 0–5 under the Act, hearing requests should state the nature of the writer's interest, any facts bearing upon the desirability of a hearing on the matter, the reason for the request, and the issues contested. Persons who wish to be notified of a hearing may request notification by writing to the Commission's Secretary at *Secretarys-Office@sec.gov*.

**ADDRESSES:** The Commission: *Secretarys-Office@sec.gov*.

**FOR FURTHER INFORMATION CONTACT:** Shawn Davis, Assistant Director, at (202) 551–6413 or Chief Counsel's Office at (202) 551–6821; SEC, Division of Investment Management, Chief Counsel's Office, 100 F Street NE, Washington, DC 20549–8010.

**First Eagle Senior Loan Fund [File No. 811–22874]**

*Summary:* Applicant, a closed-end investment company, seeks an order declaring that it has ceased to be an investment company. On July 16, 2021, and September 17, 2021, applicant made liquidating distributions to its shareholders based on net asset value. Expenses of approximately $872,000 incurred in connection with the liquidation were paid by the applicant. Applicant also has retained $7,836,833 for the purpose of paying outstanding payments to service providers.

*Filing Dates:* The application was filed on July 21, 2021, and amended on November 15, 2021.

*Applicant's Address: andrew.morris@feim.com.*

**Gabelli Go Anywhere Trust [File No. 811–23035]**

*Summary:* Applicant, a closed-end investment company, seeks an order declaring that it has ceased to be an investment company. On October 28, 2021, applicant made liquidating distributions to its shareholders based on net asset value. Expenses of $21,170 incurred in connection with the liquidation were paid by the applicant. Applicant also has retained $221,497 for the purpose of paying outstanding expenses.

*Filing Date:* The application was filed on November 10, 2021.

*Applicant's Address: Thomas.DeCapo@skadden.com.*

**Sound Point Floating Rate 2023 Target Term Fund [File No. 811–23119]**

*Summary:* Applicant, a closed-end investment company, seeks an order declaring that it has ceased to be an investment company. Applicant has never made a public offering of its securities and does not propose to make a public offering or engage in business of any kind.

*Filing Dates:* The application was filed on August 3, 2021, and amended on October 29, 2021.

*Applicant's Address: wruberti@soundpointcap.com, mana.behbin@morganlewis.com.*

For the Commission, by the Division of Investment Management, pursuant to delegated authority.

**J. Matthew DeLesDernier,**

*Assistant Secretary.*

[FR Doc. 2021–26137 Filed 11–30–21; 8:45 am]

**BILLING CODE 8011–01–P**

## DEPARTMENT OF STATE

**[Public Notice: 11598]**

## Designation of Sanaullah Ghafari, Sultan Aziz Azam, and Maulawi Rajab as Specially Designated Global Terrorists

Acting under the authority of and in accordance with section 1(a)(ii)(B) of E.O. 13224 of September 23, 2001, as amended by E.O. 13268 of July 2, 2002, E.O. 13284 of January 23, 2003, and E.O. 13886 of September 9, 2019, I hereby



**16834** Federal Register / Vol. 79, No. 58 / Wednesday, March 26, 2014 / Notices

entering the comment submissions into ADAMS.

### II. Further Information

The NUREG provides guidance to a licensee for preparing requests for changes of control and about bankruptcy involving byproduct, source, or special nuclear materials licenses. The NUREG also provides the NRC with criteria for reviewing requests for changes of control and bankruptcy. The purpose of this notice is to provide the public with an opportunity to review and provide comments on draft NUREG–1556, Volume 15, Revision 1, "Consolidated Guidance about Materials Licenses: Guidance about Changes of Control and about Bankruptcy Involving Byproduct, Source, or Special Nuclear Materials Licenses." These comments will be considered in the final version or subsequent revisions.

Dated at Rockville, Maryland, this 19th day of March, 2014.

For the U.S. Nuclear Regulatory Commission.

**John M. Moses,**

*Acting Deputy Director, Division of Materials Safety and State Agreements, Office of Federal and State Materials and Environmental Management Programs.*

[FR Doc. 2014–06721 Filed 3–25–14; 8:45 am]

**BILLING CODE 7590–01–P**

---

### NUCLEAR REGULATORY COMMISSION

[NRC–2014–0060]

### Response Strategies for Potential Aircraft Threats

**AGENCY:** Nuclear Regulatory Commission.

**ACTION:** Regulatory guide; issuance.

**SUMMARY:** The U.S. Nuclear Regulatory Commission (NRC) is issuing revision 1 to Regulatory Guide (RG) 1.214, "Response Strategies for Potential Aircraft Threats." The revision contains updated references and minor corrections. The revision does not contain substantive changes in the NRC staff's regulatory positions. The guide describes a method that the NRC staff considers acceptable for applicants for, and holders of, nuclear power plant licenses to comply with NRC requirements to develop, implement, and maintain procedures for responding to potential aircraft threats.

**ADDRESSES:** The document will be made available for those individuals who have established a "need-to-know" and possess access permission to Official Use Only-Security Related Information (OUO–SRI). To access and review the

document contact: James Vaughn, telephone: 301–287–3586, email: *james.vaughn@nrc.gov*.

**FOR FURTHER INFORMATION CONTACT:** James Vaughn, telephone: 301–287–3586, email: *james.vaughn@nrc.gov*, or Mekonen Bayssie, telephone: 301–251–7489, email: *mekonen.bayssie@nrc.gov*, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001.

**SUPPLEMENTARY INFORMATION:**

### I. Introduction

The NRC is issuing a revision to an existing guide in the NRC's "Regulatory Guide" series. Regulatory guides were developed to describe and make available to the public, to the extent possible, information and methods that are acceptable to the NRC staff for implementing specific parts of the agency's regulations, techniques that the staff uses in evaluating specific problems or postulated accidents, and data that the staff needs in its review of applications for permits and licenses. The NRC typically seeks public comment on a draft version of a regulatory guide by announcing its availability for comment in the **Federal Register**. However, as explained in section III.F. of the Handbook for NRC Management Directive 6.6, "Regulatory Guides" (Agencywide Documents Access and Management System Accession No. ML110330475), the NRC may directly issue a final regulatory guide without a draft version or public comment period if the changes to the regulatory guide are non-substantive. Furthermore, RG 1.214 is withheld from public disclosure but is available to those affected licensees and cleared stakeholders who can or have demonstrated a "need-to-know."

The NRC is issuing Revision 1 of RG 1.214 directly as a final regulatory guide because the changes between Revision 0 and Revision 1 are non-substantive. This revision of RG 1.214 incorporates editorial changes, updates the guide to conform to the current format for regulatory guides, and updates references to related guidance for emergency preparedness (EP). These changes are intended to improve clarity of the guidance and alignment with the EP requirements in part 50 of Title 10 of the *Code of Federal Regulations* (10 CFR), Appendix E, and do not alter the staff regulatory guidance.

### II. Backfitting and Issue Finality

Issuance of this final regulatory guide does not constitute backfitting as defined in 10 CFR 50.109 (the Backfit Rule) and is not otherwise inconsistent with the issue finality provisions in 10

CFR part 52. The changes in Revision 1 of RG 1.214 are limited to editorial changes to improve clarity of the guidance and alignment with the EP requirements in 10 CFR part 50, Appendix E. These changes do not fall within the kinds of agency actions that constitute backfitting or are subject to limitations in the issue finality provisions of 10 CFR part 52. Accordingly, the NRC did not address the Backfit Rule or issue finality provisions of 10 CFR part 52.

### III. Congressional Review Act

This action is not a rule as defined in the Congressional Review Act (5 U.S.C. 801–808).

### IV. Submitting Suggestions for Improvement of Regulatory Guides

Revision 1 of RG 1.214 is being issued without an opportunity for comment. However, you may at any time submit suggestions to the NRC for improvement of existing regulatory guides or for the development of new regulatory guides to address new issues. The input received will be considered in future updates and enhancements of the regulatory guide. Please coordinate with James Vaughn from the NRC's Office of Nuclear Security and Incident Response (telephone: 301–287–3686 or email: *james.vaughn@nrc.gov*) regarding the drafting and transmission of such comments in order to protect comments that contain OUO–SRI information.

Dated at Rockville, Maryland, this 19th day of March, 2014.

For the Nuclear Regulatory Commission.

**Thomas H. Boyce,**

*Chief, Regulatory Guide and Generic Issues Branch, Division of Engineering, Office of Nuclear Regulatory Research.*

[FR Doc. 2014–06575 Filed 3–25–14; 8:45 am]

**BILLING CODE 7590–01–P**

---

### OFFICE OF PERSONNEL MANAGEMENT

### Privacy Act of 1974: Update and Amend System of Records

**AGENCY:** U.S. Office of Personnel Management (OPM).

**ACTION:** Update and amend OPM/ GOVT–5, Recruiting, Examining, and Placement Records.

**SUMMARY:** OPM proposes to update and amend OPM/GOVT–5, Recruiting, Examining, and Placement Records contained in its inventory of record systems subject to the Privacy Act of 1974 (5 U.S.C. 552a), as amended. This action is necessary to meet the requirements of the Privacy Act to

OPM-000070

publish in the **Federal Register** notice of the existence and character, as well as any new use or intended new use of records maintained by the agency. 5 U.S.C. 552a(e)(4) and (11).

**DATES:** These changes will become effective without further notice on May 5, 2014, unless we receive comments that result in a contrary determination.

**ADDRESSES:** Send written comments to the Director, Integrated Hiring Solutions, Office of the Chief Information Officer, U.S. Office of Personnel Management, 1900 E Street NW., Room 44690, Washington, DC 20415.

**FOR FURTHER INFORMATION CONTACT:** Paul Craven, Director, Integrated Hiring Solutions, *paul.craven@opm.gov.*

**SUPPLEMENTARY INFORMATION:** The Office of Personnel Management's (OPM) system of record notices subject to the Privacy Act of 1974 (5 U.S.C. 552a), as amended, have been published in the **Federal Register**. The proposed changes consist of the deletion of an OPM office from the System Locations, and the designation of a replacement for the existing System Manager. Both changes reflect the results of an OPM re-organization that eliminated the position previously named as System Manager and the office previously named in the Locations listing.

U.S. Office of Personnel Management.

**Katherine Archuleta,**
*Director.*

## OPM/GOVT–5

**SYSTEM NAME:**

Recruiting, Examining, and Placement Records.

**SYSTEM LOCATION:**

Office of Personnel Management, 1900 E Street NW., Washington, DC 20415, OPM regional and area offices; and personnel or other designated offices of Federal agencies that are authorized to make appointments and to act for the Office by delegated authority.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

a. Persons who have applied to the Office or agencies for Federal employment and current and former Federal employees submitting applications for other positions in the Federal service.

b. Applicants for Federal employment believed or found to be unsuitable for employment on medical grounds.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

In general, all records in this system contain identifying information including name, date of birth, Social Security Number, and home address. These records pertain to assembled and unassembled examining procedures and contain information on both competitive examinations and on certain noncompetitive actions, such as determinations of time-in-grade restriction waivers, waiver of qualification requirement determinations, and variations in regulatory requirements in individual cases.

This system includes such records as:

a. Applications for employment that contain information on work and education, military service, convictions for offenses against the law, military service, and indications of specialized training or receipt of awards or honors. These records may also include copies of correspondence between the applicant and the Office or agency.

b. Results of written exams and indications of how information in the application was rated. These records also contain information on the ranking of an applicant, his or her placement on a list of eligibles, what certificates applicant's names appeared on, an agency's request for Office approval of the agency's objection to an eligible's qualifications and the Office's decision in the matter, an agency's request for Office approval for the agency to pass over an eligible and the Office's decision in the matter, and an agency's decision to object/pass over an eligible when the agency has authority to make such decisions under agreement with the Office.

c. Records regarding the Office's final decision on an agency's decision to object/pass over an eligible for suitability or medical reasons or when the objection/pass over decision applies to a compensable preference eligible with 30 percent or more disability. (Does not include a rating of ineligibility for employment because of a confirmed positive test result under Executive Order 12564.)

d. Responses to and results of approved personality or similar tests administered by the Office or agency.

e. Records relating to rating appeals filed with the Office or agency.

f. Registration sheets, control cards, and related documents regarding Federal employees requesting placement assistance in view of pending or realized displacement because of reduction in force, transfer or discontinuance of function, or reorganization.

g. Records concerning non-competitive action cases referred to the Office for decision. These files include such records as waiver of time-in-grade requirements, decisions on superior qualification appointments, temporary appointments outside a register, and employee status determinations. Authority for making decisions on many of these actions has also been delegated to agencies. The records retained by the Office on such actions and copies of such files retained by the agency submitting the request to the Office, along with records that agencies maintain as a result of the Office's delegations of authorities, are considered part of this system of records.

h. Records retained to support Schedule A appointments of severely physically handicapped individuals, retained both by the Office and agencies acting under the Office delegated authorities, are part of this system.

i. Agency applicant supply file systems (when the agency retains applications, resumes, and other related records for hard-to-fill or unique positions, for future consideration), along with any pre-employment vouchers obtained in connection with an agency's processing of an application, are included in this system.

j. Records derived from the Office-developed or agency-developed assessment center exercises.

k. Case files related to medical suitability determinations and appeals.

l. Records related to an applicant's examination for use of illegal drugs under provisions of Executive Order 12564. Such records may be retained by the agency (e.g., evidence of confirmed positive test results) or by a contractor laboratory (e.g., the record of the testing of an applicant, whether negative, or confirmed or unconfirmed positive test result).

**NOTE 1:**

Only Routine Use 'p' identified for this system of records is applicable to records relating to drug testing under Executive Order 12564. Further, such records shall be disclosed only to a very limited number of officials within the agency, generally only to the agency Medical Review Official (MRO), the administrator of the agency Employee Assistance Program, and any supervisory or management official within the employee's agency having authority to take the adverse personnel action against the employee.

**NOTE 2:**

OPM does not intend that records created by agencies in connection with the agency's Merit Promotion Plan program be included in the term 'Applicant Supply File' as used within this notice. It is OPM's position that

OPM-000071

**16836**    **Federal Register** / Vol. 79, No. 58 / Wednesday, March 26, 2014 / Notices

Merit Promotion Plan records are not a system of records within the meaning of the Privacy Act as such records are usually filed by a vacancy announcement number or some other key that is not a unique personnel identifier. Agencies may choose to consider such records as within the meaning of a system of records as used in the Privacy Act, but if they do so, they are solely responsible for implementing Privacy Act requirements, including establishment and notice of a system of records pertaining to such records.

**NOTE 3:**

To the extent that an agency utilizes an automated medium in connection with maintenance of records in this system, the automated versions of these records are considered covered by this system of records.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 1302, 3109, 3301, 3302, 3304, 3305, 3306, 3307, 309, 3313, 3317, 3318, 3319, 3326, 4103, 4723, 5532, and 5533, and Executive Order 9397.

**PURPOSE(S):**

The records are used in considering individuals who have applied for positions in the Federal service by making determinations of qualifications including medical qualifications, for positions applied for, and to rate and rank applicants applying for the same or similar positions. They are also used to refer candidates to Federal agencies for employment consideration, including appointment, transfer, reinstatement, reassignment, or promotion. Records derived from the Office-developed or agency-developed assessment center exercises may be used to determine training needs of participants. These records may also be used to locate individuals for personnel research.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:**

**NOTE 4:**

With the exception of Routine Use 'p,' none of the Other Routine Uses identified for this system of records are applicable to records relating to drug testing under Executive Order 12564. Further, such records shall be disclosed only to a very limited number of officials within that agency, generally only to the agency Medical Review Officer (MRO), the administrator of the agency's Employee Assistance Program, and the management official empowered to recommend or take adverse action affecting the individual.

a. To refer applicants, including current and former Federal employees to Federal agencies for consideration for employment, transfer, reassignment, reinstatement, or promotion.

b. With the permission of the applicant, to refer applicants to State and local governments, congressional offices, international organizations, and other public offices for employment consideration.

c. To disclose pertinent information to the appropriate Federal, State, or local agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, when the disclosing agency becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation.

d. To disclose information to any source from which additional information is requested (to the extent necessary to identify the individual, inform the source of the purposes of the request, and to identify the type of information requested), when necessary to obtain information relevant to an agency decision concerning hiring or retaining an employee, issuing a security clearance, conducting a security or suitability investigation of an individual, classifying positions, letting a contract, or issuing a license, grant or other benefit.

e. To disclose information to a Federal agency, in response to its request, in connection with hiring or retaining an employee, issuing a security clearance, conducting a security or suitability investigation of an individual, classifying positions, letting a contract, or issuing a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision in the matter.

f. To disclose information to the Office of Management and Budget at any stage in the legislative coordination and clearance process in connection with private relief legislation as set forth in OMB Circular No. A–19.

g. To provide information to a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of that individual.

h. To disclose information to another Federal agency, to a court, or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to a judicial or administrative proceeding.

i. To disclose information to the Department of Justice, or in a proceeding before a court, adjudicative body, or other administrative body before which the agency is authorized to appear, when:

1. The agency, or any component thereof; or

2. Any employee of the agency in his or her official capacity; or

3. Any employee of the agency in his or her individual capacity where the Department of Justice or the agency has agreed to represent the employee; or

4. The United States, when the agency determines that litigation is likely to affect the agency or any of its components, is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation, provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

j. By the National Archives and Records Administration in records management inspections and its role as Archivist.

k. By the agency maintaining the records or by the Office to locate individuals for personnel research or survey response or in producing summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained, or for related workforce studies. While published statistics and studies do not contain individual identifiers, in some instances the selection of elements of data included in the study may be structured in such a way as to make the data individually identifiable by inference.

l. To disclose information to the Merit Systems Protection Board or the Office of the Special Counsel in connection with appeals, special studies of the civil service and other merit systems, review of Office rules and rules and regulations, investigations of alleged or possible prohibited personnel practices, and such other functions; e.g., as prescribed in 5 U.S.C. chapter 12, or as may be authorized by law.

m. To disclose information to the Equal Employment Opportunity Commission when requested in connection with investigations into alleged or possible discrimination practices in the Federal sector, examination of Federal affirmative employment programs, compliance by Federal agencies with the Uniform Guidelines or Employee Selection Procedures, or other functions vested in the Commission.

n. To disclose information to the Federal Labor Relations Authority or its General Counsel when requested in connection with investigations of allegations of unfair labor practices or

OPM-000072

**Federal Register** / Vol. 79, No. 58 / Wednesday, March 26, 2014 / Notices

matters before the Federal Service Impasses Panel.

o. To disclose, in response to a request for discovery or for an appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding.

p. To disclose the results of a drug test of a Federal employee pursuant to an order of a court of competent jurisdiction where required by the United States Government to defend against any challenge against any adverse personnel action.

q. To disclose information to Federal, State, local, and professional licensing boards, Boards of Medical Examiners, or to the Federation of State Medical Boards or a similar non-government entity which maintains records concerning the issuance, retention, or revocation of licenses, certifications, or registration necessary to practice an occupation, profession, or specialty, in order to obtain information relevant to an agency decision concerning the hiring, retention, or termination of an employee or to inform a Federal agency or licensing board or the appropriate non-government entity about the health care practice of a terminated, resigned, or retired health care employee whose professional health care activity so significantly failed to conform to generally accepted standards of professional medical practice as to raise reasonable concern for the health and safety of patients in the private sector or from another Federal agency.

r. To disclose information to contractors, grantees, or volunteers performing or working on a contract, service, grant, cooperative agreement, or job for the Federal Government.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, SAFEGUARDING, RETAINING AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Records are maintained on magnetic tapes, disk, punched cards, microfiche, cards, lists, and forms.

**RETRIEVABILITY:**

Records are retrieved by the name, date of birth, social security number, and/or identification number assigned to the individual on whom they are maintained.

**SAFEGUARDS:**

Records are maintained in a secured area or automated media with access limited to authorized personnel whose duties require access.

**RETENTION AND DISPOSAL:**

Records in this system are retained for varying lengths of time, ranging from a few months to 5 years, e.g., applicant records that are part of medical determination case files or medical suitability appeal files are retained for 3 years from completion of action on the case. Most records are retained for a period of 1 to 2 years. Some records, such as individual applications, become part of the person's permanent official records when hired, while some records (e.g., non-competitive action case files), are retained for 5 years. Some records are destroyed by shredding or burning while magnetic tapes or disks are erased.

**SYSTEM MANAGER(S) AND ADDRESS:**

Director, Integrated Hiring Solutions, Office of the Chief Information Officer, U.S. Office of Personnel Management, 1900 E Street NW., Room 44690, Washington, DC 20415.

**NOTIFICATION PROCEDURE:**

Individuals wishing to inquire whether this system of records contains information about them should contact the agency or OPM where application was made or examination was taken. Individuals must provide the following information for their records to be located and identified:

a. Name.
b. Date of birth.
c. Social Security Number.
d. Identification number (if known).
e. Approximate date of record.
f. Title of examination or announcement with which concerned.
g. Geographic area in which consideration was requested.

**RECORD ACCESS PROCEDURE:**

Specific materials in this system have been exempted from Privacy Act provisions at 5 U.S.C. (c)(3) and (d), regarding access to records.

The section of this notice titled ''Systems Exempted from Certain Provisions of the Act'' indicates the kind of material exempted and the reasons for exempting them from access. Individuals wishing to request access to their non-exempt records should contact the agency or the OPM where application was made or examination was taken. Individuals must provide the following information for their records to be located and identified:

a. Name.
b. Date of birth.
c. Social Security Number.
d. Identification number (if known).
e. Approximate date of record.
f. Title of examination or announcement with which concerned.
g. Geographic area in which consideration was requested.

Individuals requesting access must also comply with the OPM's Privacy Act regulations on verification of identity and access to records (5 CFR part 297).

**CONTESTING RECORD PROCEDURE:**

Specific materials in this system have been exempted from Privacy Act provisions at 5 U.S.C. 552a(d), regarding amendment of records. The section of this notice titled 'Systems Exempted from Certain Provisions of the Act' indicates the kinds of material exempted and the reasons for exempting them from amendment. An individual may contact the agency or the Office where the application is filed at any time to update qualifications, education, experience, or other data maintained in the system.

Such regular administrative updating of records should not be requested under the provisions of the Privacy Act. However, individuals wishing to request amendment of other records under the provisions of the Privacy Act should contact the agency or the OPM where the application was made or the examination was taken. Individuals must provide the following information for their records to be located and identified:

a. Name.
b. Date of birth.
c. Social Security Number.
d. Identification number (if known).
e. Approximate date of record.
f. Title of examination or announcement with which concerned.
g. Geographic area in which consideration was requested.

Individuals requesting amendment must also comply with the OPM's Privacy Act regulations on verification of identity and amendment of records (5 CFR part 297).

**NOTE 5:**

In responding to an inquiry or a request for access or amendment, resource specialists may contact the OPM's area office that provides examining and rating assistance for help in processing the request.

**RECORD SOURCE CATEGORIES:**

Information in this system of records comes from the individual to whom it applies or is derived from information the individual supplied, reports from medical personnel on physical qualifications, results of examinations that are made known to applicants, agencies, and OPM records, and vouchers supplied by references or other sources that the applicant lists or that are developed.

**SYSTEMS EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:**

This system contains investigative materials that are used solely to

OPM-000073

**16838**    **Federal Register** / Vol. 79, No. 58 / Wednesday, March 26, 2014 / Notices

determine the appropriateness of a request for approval of an objection to an eligible's qualifications for Federal civilian employment or vouchers received during the processing of an application. The Privacy Act, at 5 U.S.C. 552a(k)(5), permits an agency to exempt such investigative material from certain provisions of the Act, to the extent that release of the material to the individual whom the information is about would—

a. Reveal the identity of a source who furnished information to the Government under an express promise (granted on or after September 27, 1975) that the identity of the source would be held in confidence; or

b. Reveal the identity of a source who, prior to September 27, 1975, furnished information to the Government under an implied promise that the identity of the source would be held in confidence.

This system contains testing and examination materials used solely to determine individual qualifications for appointment or promotion in the Federal service. The Privacy Act, at 5 U.S.C. 552a(k)(6), permits an agency to exempt all such testing or examination material and information from certain provisions of the Act, when disclosure of the material would compromise the objectivity or fairness of the testing or examination process. OPM has claimed exemptions from the requirements of 5 U.S.C. 552a(d), which relate to access to and amendment of records.

The specific material exempted include, but are not limited to, the following

a. Answer keys.

b. Assessment center exercises.

c. Assessment center exercise reports.

d. Assessor guidance material.

e. Assessment center observation reports.

f. Assessment center summary reports.

g. Other applicant appraisal methods, such as performance tests, work samples and simulations, miniature training and evaluation exercises, structured interviews, and their associated evaluation guides and reports.

h. Item analyses and similar data that contain test keys and item response data.

i. Ratings given for validating examinations.

j. Rating schedules, including crediting plans and scoring formulas for other selection procedures.

k. Rating sheets.

l. Test booklets, including the written instructions for their preparation and automated versions of tests and related selection materials and their complete documentation.

m. Test item files.

n. Test answer sheets.

[FR Doc. 2014–06593 Filed 3–25–14; 8:45 am]

**BILLING CODE 6325–39–P**

## POSTAL SERVICE

### Board of Governors; Sunshine Act Meeting

**DATES AND TIMES:** April 8, 2014, at 9:00 a.m.

**PLACE:** Washington, DC.

**STATUS:** Closed.

**MATTERS TO BE CONSIDERED:**

### Tuesday, April 8, 2014 at 9:00 a.m.

1. Strategic Issues.
2. Financial Matters.
3. Pricing.
4. Personnel Matters and Compensation Issues.
5. Governors' Executive Session— Discussion of prior agenda items and Board Governance.

**CONTACT PERSON FOR MORE INFORMATION:** Julie S. Moore, Secretary of the Board, U.S. Postal Service, 475 L'Enfant Plaza SW., Washington, DC 20260–1000. Telephone (202) 268–4800.

**Julie S. Moore,**

*Secretary.*

[FR Doc. 2014–06862 Filed 3–24–14; 4:15 pm]

**BILLING CODE 7710–12–P**

## SECURITIES AND EXCHANGE COMMISSION

**[OMB Control No. 3235–0515, SEC File No. 270–456]**

### Submission for OMB Review; Comment Request

*Upon Written Request Copies Available From:* Securities and Exchange Commission, Office of Investor Education and Advocacy, Washington, DC 20549–0213.

*Extension:*
Schedule TO.

Notice is hereby given that, pursuant to the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*), the Securities and Exchange Commission ("Commission") has submitted to the Office of Management and Budget the request for extension of the previously approved collection of information discussed below.

Schedule TO (17 CFR 240.14d–100) must be filed by a reporting company that makes a tender offer for its own securities. Also, persons other than the reporting company making a tender offer for equity securities registered under Section 12 of the Exchange Act (15 U.S.C. 78*l*) (which offer, if consummated, would cause that person to own over 5% of that class of the securities) must file a Schedule TO. The purpose of Schedule TO is to improve communications between public companies and investors before companies file registration statements involving tender offer statements. This information is made available to the public. The information provided on Schedule TO is mandatory. Schedule TO takes approximately 43.5 hours per response and is filed by approximately 820 issuers annually. We estimate that 50% of the 43.5 hours per response (21.75 hours) is prepared by the issuer for an annual reporting burden of 17,835 hours (21.75 hours per response × 820 responses).

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid control number.

The public may view the background documentation for this information collection at the following Web site, *www.reginfo.gov* . Comments should be directed to: (i) Desk Officer for the Securities and Exchange Commission, Office of Information and Regulatory Affairs, Office of Management and Budget, Room 10102, New Executive Office Building, Washington, DC 20503, or by sending an email to: *Shagufta_Ahmed@omb.eop.gov;* and (ii) Thomas Bayer, Director/Chief Information Officer, Securities and Exchange Commission, c/o Remi Pavlik-Simon, 100 F Street NE., Washington, DC 20549 or send an email to: *PRA_Mailbox@sec.gov.* Comments must be submitted to OMB within 30 days of this notice.

Dated: March 20, 2014.

**Kevin M. O'Neill,**

*Deputy Secretary.*

[FR Doc. 2014–06609 Filed 3–25–14; 8:45 am]

**BILLING CODE 8011–01–P**

## SECURITIES AND EXCHANGE COMMISSION

### Submission for OMB Review; Comment Request

*Upon Written Request, Copies Available From:* Securities and Exchange Commission, Office of Investor Education and Advocacy, Washington, DC 20549–0213.

*Extension:*
Rule 15b6–1 and Form BDW, SEC File No. 270–17, OMB Control No. 3235–0018.

Notice is hereby given that, pursuant to the Paperwork Reduction Act of 1995

OPM-000074

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMERICAN FEDERATION OF
TEACHERS, et al.,

     Plaintiffs,

  v.

SCOTT BESSENT, et al.,

     Defendants.

Case No. 8:25-cv-430-DLB

## CERTIFICATION OF ADMINISTRATIVE RECORD

  I, Daniel Katz, am currently employed as the Chief of Staff of the U.S. Department of the

Treasury.  I am familiar with the claims asserted against Treasury in the above-captioned action

regarding the granting of access to systems maintained by the Bureau of the Fiscal Service (BFS)

to employees implementing Executive Order 14,158.

  I hereby certify, to the best of my knowledge, that the accompanying administrative record

is complete and contains all non-deliberative documents and materials directly or indirectly

considered regarding the Treasury actions challenged in this case.[1]  Among these documents and

materials, Treasury has duly evaluated all predecisional documents before excluding them from

the record.

---

[1] Notwithstanding the Court's order to file an administrative record in this case, Defendants maintain that the Amended Complaint does not challenge any final agency action and reserve their right to argue in further proceedings in this case, including in any subsequent appeal, that the Administrative Procedure Act does not provide for review.

JA332

In accordance with 28 U.S.C. § 1746, I hereby certify and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Daniel Katz
Chief of Staff
U.S. Department of the Treasury

2

# Table of Contents

**Tab 1. HUMAN RESOURCES**..................................................................................

1A. Krause Delegation of FAS ..................................................................................

   1A1. Fiscal Assistant Secretary ........................................................................ 1

   1A2. Approved Delegation of Duties of Fiscal Assistant Secretary ................ 2

1B. Onboarding ........................................................................................................

   1B1. Marko Elez SF50 ....................................................................................... 4

   1B2. Expert Consultant Hire Package – Tom Krause .................................... 6

   1B3. Expert Consultant Hire Package – Tom Krause Corrected ................... 14

   1B4. Marko Elez Position Description ............................................................ 22

   1B5. Oath ....................................................................................................... 24

**Tab 2.  SECURITY CLEARANCE** .............................................................................

2A Elez ....................................................................................................................

   2A1. Marko Elez OSP Tracker Records .......................................................... 25

   2A2. Interim Approval Marko Elez ................................................................ 26

   2A3. Interim Approval to EOD ...................................................................... 27

   2A4. Prevetting Checklist – Marko Elez ....................................................... 28

   2A5. Rules of Behavior .................................................................................. 30

   2A6. Fiscal Service Security RoB Internal .................................................... 31

   2A7. SF312 Mark Elez ................................................................................... 33

2B. Krause.................................................................................................................

   2B1. Final Adjudication Approval ................................................................ 39

   2B2. Tom Krause 4414 .................................................................................. 40

   2B3. Tom Krause OSP Tracker Records ........................................................ 44

   2B4.  Prevetting checklist – Tom Krause ...................................................... 45

   2B5. SF-312 Tom Krause ............................................................................... 50

**Tab 3. ENGAGEMENT PLAN**.................................................................................

1. Agenda for BFS Payment Process ...................................................................... 56

2. Fiscal Service Payment Processing Engagement Plan ....................................... 57

3. Preliminary Work Plan ....................................................................................... 60

**Tab 4.  BFS SYSTEMS ACCESS REQUEST**...............................................................

1. IT Check In Follow Up ......................................................................................... 61

2. Access Request Changes ..................................................................................... 62

**Tab 5.  USAID PAYMENT** ................................................................................ ....

1. Confirmation to Proceed ................................................................................... 63

2. Additional Accounts Identified ......................................................................... 66

**Tab 6.  SORNs** ................................................................................................... ....

1. 85 FR 11776 ....................................................................................................... 69

| Tab | Beginning Bates Number | Title |
|---|---|---|
| **Tab 1: Human Resources** | | |
| **Tab 1A_Krause Delegation of FAS** | | |
| 1A1 | 25-cv-00430_DMD_UST_0001 | Fiscal Assistant Secretary |
| 1A2 | 25-cv-00430_DMD_UST_0002 | Approved Delegation of Duties of Fiscal Assistant Secretary |
| **Tab 1B_Onboarding** | | |
| 1B1 | 25-cv-00430_DMD_UST_0004 | Marko Elez SF50 |
| 1B2 | 25-cv-00430_DMD_UST_0006 | Expert Consultant Hire Package – Tom Krause |
| 1B3 | 25-cv-00430_DMD_UST_0014 | Expert Consultant Hire Package – Tom Krause Corrected |
| 1B4 | 25-cv-00430-DMD_UST_0022 | Marko Elez Position Description |
| 1B5 | 25-cv-00430-DMD_UST_0024 | Oath |
| **Tab 2: Security Clearance** | | |
| **Tab 2A_Elez** | | |
| 2A1 | 25-cv-00430-DMD_UST_0025 | Marko Elez OSP Tracker Records |
| 2A2 | 25-cv-00430-DMD_UST_0026 | Interim Approval Marko Elez |
| 2A3 | 25-cv-00430-DMD_UST_0027 | Interim Approval to EOD |
| 2A4 | 25-cv-00430-DMD_UST_0028 | Prevetting Checklist – Marko Elez |
| 2A5 | 25-cv-00430-DMD_UST_0030 | Rules of Behavior |
| 2A6 | 25-cv-00430-DMD_UST_0031 | Fiscal Service Security RoB Internal |
| 2A7 | 25-cv-00430-DMD-UST_0033 | SF312 Mark Elez |
| **Tab 2B_Krause** | | |
| 2B1 | 25-cv-00430-DMD_UST_0039 | Final Adjudication Approval |
| 2B2 | 25-cv-00430-DMD-UST_0040 | Tom Krause 4414 |
| 2B3 | 25-cv-00430-DMD_UST_0044 | Tom Krause OSP Tracker Records |
| 2B4 | 25-cv-00430-DMD_UST_0045 | Prevetting checklist – Tom Krause |
| 2B5 | 25-cv-00430-DMD_UST_0050 | SF-312 Tom Krause |
| **Tab 3: Engagement Plan** | | |
| 1 | 25-cv-00430-DMD_UST_0056 | Agenda for BFS Payment Process |
| 2 | 25-cv-00430-DMD_UST_0057 | Fiscal Service Payment Processing Engagement Plan |
| 3 | 25-cv-00430-DMD_UST_0060 | Preliminary Work Plan |
| **Tab 4: BFS Systems Access Request** | | |
| 1 | 25-cv-00430-DMD_UST_0061 | IT Check In Follow Up |
| 2 | 25-cv-00430-DMD_UST_0062 | Access Request Changes |
| **Tab 5: USAID Payment** | | |
| 1 | 25-cv-00430-DMD_UST_0063 | Confirmation to Proceed |
| 2 | 25-cv-00430-DMD_UST_0066 | Additional Accounts Identified |
| **Tab 6: SORNs** | | |
| 1 | 25-cv-00430-DMD_UST_0069 | 85 FR 11776 |

| | |
|---|---|
| **From:** | Katz, Daniel |
| **To:** | Garber, Matthew; Gribben, Timothy E.; Miskell, Renata |
| **Cc:** | Krause, Tom; Froman, Eric; Pilkerton, Christopher |
| **Subject:** | Fiscal Assistant Secretary |
| **Date:** | Friday, February 7, 2025 8:38:40 AM |

Hi Team-

I wanted to let you know that Secretary Bessent has delegated the duties of the Fiscal Assistant Secretary to Tom Krause. As you know, Tom brings more than 20 years of experience leading, building and positioning software and technology companies for value and long-term success. Mr. Krause previously served as an executive officer of Broadcom Inc., both as Chief Financial Officer and most recently responsible for forming and leading the Broadcom Software Group as President. He began his career in technology with Robertson Stephens and Technology Crossover Ventures followed by business and corporate development leadership roles in the semiconductor industry. Tom is a graduate of Princeton University, where he majored in Economics.

The Secretary is excited about the decades of executive leadership that Tom brings to the role, as well as his deep expertise in building and managing complex organizations across multiple sectors. I know that Tom is very much looking forward to working with all of you and appreciates all of your efforts to advance Treasury's mission. Tom will be in touch with you shortly to share his vision and action plan for the organization.

I want to express thanks and appreciation to Matt for his leadership of the Office of the Fiscal Assistant Secretary over the last two and a half weeks. He will resume his role as Deputy Assistant Secretary for Fiscal Operations & Policy, and will continue to be an essential leader for the Department. I would also appreciate if you could communicate Tom's new duties out to your teams.

Best, Dan

25-cv-00430_DMD_UST_0001

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

February 5, 2025

## ACTION MEMORANDUM FOR SECRETARY BESSENT

**FROM:**      Brian Sonfield, Acting General Counsel

**SUBJECT:**   Proposed Delegation of Duties of Fiscal Assistant Secretary

## RECOMMENDATION:

That you sign the attached document delegating the duties of the Fiscal Assistant Secretary to
Thomas Krause.

_____ Approve          _____ Disapprove          _____ Let's Discuss

## DECISION DEADLINE

**Date:**       ASAP
**Rationale:**  Needed to meet administration priorities.

## BACKGROUND

Delegating the duties of the Fiscal Assistant Secretary position to Thomas Krause will enable
him to more effectively undertake his current work assignment.

## ATTACHMENT

1. Delegation of Authority for Signature.

Final
Docume
nt

Digitally signed
by Final
Document
Date: 2025.02.05
18:02:34 -05'00'

JA338

25-cv-00430_DMD_UST_0002

## DELEGATION OF AUTHORITY

By virtue of my authorities, including 31 U.S.C. § 321(b) and (c), I hereby delegate all authorities and responsibilities of the Fiscal Assistant Secretary to Thomas Krause, reporting directly to me.  This delegation shall remain in effect until a Fiscal Assistant Secretary is appointed or Mr. Krause ends his employment with Treasury, unless sooner rescinded.

2/5/2025

Date

Scott K. H. Bessent

25-cv-00430_DMD_UST_0003

Standard Form 50
Rev 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) ELEZ, MARKO | 2. Social Security Number ▬▬▬ | 3. Date of Birth ▬▬▬ | 4. Effective Date 01-21-2025 |
|---|---|---|---|

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code 171 | 5-B. Nature of Action EXC APPT NTE 05/20/25 | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code Y9K | 5-D. Legal Authority SCH C 213.3302 (A) | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number SPECIAL ADVISOR (IT&M) 66893097  C00424 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary .00 | 13. Pay Basis | 16. Pay Plan GS | 17. Occ. Code 0301 | 18. Grade or Level 11 | 19. Step or Rate 01 | 20. Total Salary $84,601.00 | 21. Pay Basis PA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay .00 | | 12B. Locality Adj. .00 | | 12C. Adj. Basic Pay .00 | 12D. Other Pay .00 | 20A. Basic Pay $63,163.00 | | 20B. Locality Adj. $21,438.00 | | 20C. Adj. Basic Pay $84,601.00 | 20D. Other Pay .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization DEPARTMENTAL OFFICES OFFICE OF THE CHIEF OF STAFF<br><br>TR 910300000000000000   PP 01 2025 |
|---|---|

| EMPLOYEE DATA | | | |
|---|---|---|---|

| 23. Veterans Preference 1 | 1 - None  3 - 10 Point/Disability  5 - 10 Point/Other<br>2 - 5 Point  4 - 10 Point/Compensable  6 - 10 Point/Compensable/30% | 24. Tenure 0 | 0 - None  2 - Conditional<br>1 - Permanent  3 - Indefinite | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|

26. Veterans Preference for RIF    YES    X  NO

| 27. FEGLI A0 | INELIGIBLE-EXCLUDED BY LAW OR REG | 28. Annuitant Indicator 9 | NOT APPLICABLE | 29. Pay Rate Determinant 0 |
|---|---|---|---|---|
| 30. Retirement Plan ▬▬ | | 31. Service Comp. Date (Leave) 01-21-2025 | 32. Work Schedule F  FULL TIME | 33. Part-Time Hours Per Biweekly Pay Period |

| POSITION DATA | | | |
|---|---|---|---|

| 34. Position Occupied 2 | 1 - Competitive Service  3 - SES General<br>2 - Excepted Service  4 - SES Career Reserved | 35. FLSA Category E | E - Exempt<br>N - Nonexempt | 36. Appropriation Code | 37. Bargaining Unit Status 8888 |
|---|---|---|---|---|---|

| 38. Duty Station Code 11-0010-001 | 39. Duty Station  (City-County-State or Overseas Location) WASHINGTON  DIST OF COLUMBIA  DC |
|---|---|

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

**45. Remarks**
INDIVIDUAL APPOINTMENTS UNDER THIS AUTHORITY MAY BE MADE FOR 120 DAYS
WITH ONE EXTENSION OF AN ADDITIONAL 120 DAYS.
EXCEPTED APPOINTMENT NOT TO EXCEED 05/20/2025.
POSITION IS AT THE FULL PERFORMANCE LEVEL OR BAND.
APPOINTMENT AFFIDAVIT EXECUTED 01/21/2025.
REASON FOR TEMPORARY APPOINTMENT: ADMINISTRATIVE NEED.
OPF MAINTAINED BY BUREAU OF THE FISCAL SERVICE, 200 THIRD STREET
PARKERSBURG, WV 26106
CREDITABLE MILITARY SERVICE: 00YRS. 00MOS.
PREVIOUS RETIREMENT COVERAGE: NEVER COVERED.

| 46. Employing Department or Agency DEPARTMENT OF THE TREASURY | | 50. Signature/Authentication and Title of Approving Official ELECTRONICALLY SIGNED BY: |
|---|---|---|
| 47. Agency Code TR 91 | 48. Personnel Office ID 2731 | 49. Approval Date 01-23-2025 | MICHAEL J. WENZLER HUMAN RESOURCES OFFICER |

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6236

**1 - Employee Copy - Keep for Future Reference**

**This is your copy of the official notice of a personnel action. Keep it with your records because it could be used to make  employment, pay, and qualifications decisions about you in the future.**

**The Action**
- Blocks 5-B and 6-B describe the personnel action(s) that occurred.
- Blocks 15-22 show the position and organization to which you are assigned.

**Pay**
- When the personnel action is an award or bonus, block 20 shows the amount of that one-time cash payment. When the action is not an award or bonus, block 12 shows your former total annual salary, and block 20 shows your new total annual salary (block 20C plus 20D). The amounts in blocks 12 and 20 do not include any one-time cash payments (such as performance awards and recruitment or relocation bonuses) or payments that may vary from one pay period to the next (such as overtime pay), or other forms of premium pay.
- Block 20A is the scheduled amount for your grade and step, including any special salary rate you receive. It does not include any locality-based pay. This rate of pay serves as the basis for determining your rate of pay upon promotion, change to a lower grade, or reassignment, and is used for pay retention purposes.
- Block 20B is the annual dollar amount of your Interim Geographic Adjustment or, beginning in 1994, your locality-based comparability payment.
- Block 20C is your Adjusted Basic Pay, the total of blocks 20A and 20B. It servers as the basis for computing your retirement benefits, life insurance, premium pay, and severance pay.
- Block 20D is the total dollar amount of any Retention Allowances, Supervisory Differentials, and Staffing Differentials that are listed in the remarks block. These payments are made in the same manner as basic pay, but are not a part of basic pay for any purposes.

**Block 24 - Tenure**
- Identifies the nature of your appointment and is used to determine your rights during a reduction in force (RIF). Tenure groups are explained in more detail in subchapter 26 of FPM Supplement 296-33 and RIF is explained in FPM Supplement 351-1; both should be available for review in your personnel office.

**Block 26 - Veterans Preference for RIF**
- Indicates whether you have preference for reduction-in-force purposes.

**Block 30 - Retirement Plan**

| | |
|---|---|
| - FICA | -Social Security System |
| - CS | -Civil Service Retirement System |
| - CS-Spec | -Civil Service Retirement System for law enforcement and firefighter personnel |
| - FS | -Foreign Service Retirement and Disability System |
| -FERS | -Federal Employees' Retirement System |
| -FERS Reserve Tech | -Federal Employees' Retirement System for National Guard Reserve Technicians |
| -FERS ATC | -Federal Employees' Retirement System for Air Traffic Controllers |
| -FERS Spec | -Federal Employees' Retirement System for law enforcement and firefighter personnel |
| -FSPS | -Foreign Service Pension System |

**Block 31 - Service Computation Date (Leave)**
- Shows when your Federal service began unless you have prior creditable service. If so, this date is constructed to include your total years, months, and days of prior creditable civilian and military service.
- Full-time employees with fewer than 3 years of service earn 4 hours of annual leave each pay period; those with 3 or more years but less than 15 years earn 6 hours each pay period; and those with 15 or more years earn 8 hours each pay period
- Your earnings and leave statement or your time and attendance card will show the rate at which you earn leave and your current unused leave balance.

**Block 32 - Work Schedule**
- Your work schedule is established by your supervisor.
- A full-time employee works on a prearranged scheduled tour of duty that is usually 40 hours per week. A part-time employee has a prearranged scheduled tour of duty that is usually between 16 and 32 hours per week. An intermittent employee has no prearranged scheduled tour of duty and works when needed.
- Full-time and part-time employees whose appointments are for 90 days or more are usually eligible to earn annual leave; intermittent employees are not.
- Seasonal employees work on an annually recurring basis for periods of less than 12 months each year; they may have a full-time, a part-time, or an intermittent schedule during their work season.
- On-call employees work during periods of heavy workload and are in pay status for a t least 6 months of each year; they may have either a full-time or a part-time schedule when they are in pay status.

**Block 33 - Part-time Hours Per Biweekly Pay Period**
- Indicates the number of hours a part-time employees is scheduled to work during a two-week pay period.

**Block 34 - Position Occupied**
- Identifies the employment system under which you are serving - the Competitive Service, the Excepted service, or the Senior Executive Service (SES).
- The employment system determines your eligibility to move to other jobs in the Federal service, your rights in disciplinary and adverse actions, and your eligibility for reemployment if you leave Federal service.

**Block 35 - FLSA Category**
- Exempt employees are not covered by the minimum wage and overtime law (the Fair Labor Standards Act); nonexempt employees **are** covered.

**Block 37 - Bargaining Unit Status**
- Identifies a bargaining unit to which you belong; whether or not you are actually a member of a labor organization. Code "7777" indicates you are eligible but not in a bargaining unit; code "8888" indicates you are ineligible for inclusion in a bargaining unit.

**Blocks 38 and 39 - Duty Station**
- Identifies the city, county and state or the overseas location, where you actually work.

## OTHER INFORMATION

- If your appointment entitles you to elect health benefits or life insurance, and you have not been provided materials explaining the programs available and the enrollment forms, contact your personnel specialist.
-Your personnel specialist will also tell you if your position is covered by an agreement between an employee organization (union) and agency. If you are eligible to and elect to join an employee organization, you can elect to have

your dues withheld from your salary.
- If you have questions or need more information about your rights and benefits, ask your supervisor or your personnel office.
- Definitions for any coded data in Blocks 1-24, 27-39 and 45-50 may be found in Federal Personnel Manual Supplement 292-1.

**It is your responsibility to read all the information on the front of this notice and tell your personnel office immediately if there is an error in it.**

25-cv-00430_DMD_UST_0005

DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

# EXPERT and CONSULTANT REQUIRED FORMS CHECKLIST
## Appointed under 5 USC 3109, 5 CFR 304 only.

**Check all attachments included with packet.**

☑ Request form
☑ Certification Form
☑ Financial Disclosure
☑ Compensation Waiver Form (if unpaid)
☑ Resume
☑ Summary of Duties

**＊**After HR receives the packet from the requesting office, please send the approved packet to
Ethics @ Ethics@treasury.gov.

Michael J. Wenzler    Digitally signed by Michael J. Wenzler
Date: 2025.02.03 14:50:18 -05'00'    2/3/2025
_____    _____
Signature of Appointing Authority or Designee    Date

25-cv-00430_DMD_UST_0006



DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

## EXPERT and CONSULTANT REQUEST FORM
### Appointed under 5 USC 3109 only

| 1. NAME OF PERSON: (*Last, first, middle initial*) | 2. TOTAL PERIOD FOR WHICH APPOINTMENT IS REQUESTED: (*List dates from beginning month/day/year to ending month/day/year*) |
|---|---|
| Krause Jr., Thomas, Harry | 02/09/2025 - 4/10/2025 |
| 3. MAILING ADDRESS | 4. APPROXIMATE NUMBER OF DAYS IN CALENDAR YEAR PERSON IS EXPECTED TO PERFORM SERVICES DURING THIS PERIOD. |
| ████████ | 60 days |

5. TYPE OF APPOINTMENT: *(Appointment vs Re-appointment), (Expert vs Consultant), (Full-time, Part-time, Intermittent), Hourly basis vs Daily basis)*

### Appointment, Consultant, Intermittent, Hourly (Unpaid)

6A. STATE THE BASE SALARY (EXCLUDING LOCALITY PAY), IF UNPAID, CIRCLE BELOW AND COMPLETE WAIVER ON PAGE 3 OF 3:

6B. WILL COST OF LIVING ADJUSTMENTS BE AUTHORIZED?

**6C: UNPAID**

7. EXPLAIN IN FULL THE SERVICES TO BE PERFORMED:
The Senior Advisor for Technology and Modernization plays a pivotal role in advancing the Treasury's technology infrastructure, financial management systems, and cybersecurity initiatives. This position leads IT modernization efforts by implementing emerging technologies such as AI, blockchain, and cloud computing while ensuring compliance with federal IT policies. Additionally, the advisor oversees the modernization of legacy systems, integrating real-time analytics, automation, and enhanced data-sharing capabilities across agencies. In collaboration with the Chief Information Officer (CIO), they strengthen cybersecurity protocols to protect critical financial systems and mitigate risks. Furthermore, the role fosters public-private partnerships with financial institutions, technology firms, and regulatory agencies to drive innovation in digital payments, blockchain applications, and AI-driven fiscal management, ensuring Treasury's financial operations remain secure, efficient, and technologically advanced.

7A. EXPLAIN WHAT DUTIES WILL BE ASSIGNED THAT WILL INVOLVE THE PERSON IN THE TRANSACTION OF BUSINESS ON BEHALF OF THE GOVERNMENT WITH ANY PROFIT OR NON-PROFIT ORGANIZATION:
The Senior Advisor for Technology and Modernization will not be assigned any duties that will involve the incumbent in the transaction of business on behalf of the government with any profit or non-profit organizations.

7B. SPECIFY WHAT DUTIES WILL BE ASSIGNED THAT WILL INVOLVE THE PERSON IN THE RENDERING OF ADVICE TO THE GOVERNMENT WHICH WILL HAVE DIRECT AND PREDICTABLE EFFECT ON THE INTERESTS OF ANY PROFIT OR NON-PROFIT ORGANIZATION:
The Senior Advisor for Technology and Modernization will provide critical recommendations that shape government technology and financial management strategies, directly influencing profit and non-profit organizations involved in financial services, technology procurement, cybersecurity, payment processing, and regulatory compliance. Through policy guidance, modernization efforts, and strategic partnerships, this role will have a direct and predictable effect on private-sector and non-profit entities that interact with the Department of the Treasury.

8. JUSTIFICATION FOR OBTAINING OR EXTENDING THIS PERSON'S SERVICES: (*Please include special qualifications of the nominee which relate specifically to the services to be performed.*)
The appointment of Thomas Harry Krause, Jr. as the Senior Advisor for Technology and Modernization is essential to advancing the Department of the Treasury's efforts in modernizing financial systems, enhancing cybersecurity, and improving the operational efficiency of its bureaus. Given the Treasury's increasing reliance on emerging technologies to enhance fiscal management, payment systems, and data security, Mr. Krause's extensive expertise and proven leadership make him exceptionally well-suited for this role.

9A. TOTAL NUMBER OF DAYS ALREADY EMPLOYED THE ABOVE PERSON AS AN EXPERT OR CONSULTANT TO PERFORM SUBSTANTIALLY THE SAME DUTIES:
0 (zero) days

9B. TOTAL AMOUNT OF FUNDS, EXCLUDING PAYMENTS FOR TRAVEL AND RELATED EXPENSES, I.E., LODGINGS/MEALS, ETC., PAID THE ABOVE PERSON AS AN EXPERT /CONSULTANT TO PERFORM SUBSTANTIALLY THE SAME DUTIES:
$0.00

10. PROPOSED TOTAL AMOUNT OF FUNDS, EXCLUDING PAYMENTS FOR TRAVEL AND RELATED EXPENSES, I.E., LODGINGS/MEALS, ETC., ESTIMATES PAYING THE ABOVE PERSON AS AN EXPERT OR CONSULTANT ON THIS APPOINTMENT:
$0.00



DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

**CERTIFICATION**
**EXPERT/CONSULTANT APPOINTMENT**

In approving the appointment of this consultant/expert, I have considered the requirements of law, Office of Personnel Management, and Departmental Offices (DO) policies and instructions.  More specifically, I certify that:

1.  The services of this individual are essential for effective program management.

2.  The duties to be performed are those of *(check one)*

    [✓] a consultant, i.e., they are purely advisory in nature and will not include the performance of supervision of operating functions.

    [ ] an expert, i.e., they require a high level of expertise not available in the regular workforce.

3.  The individual is qualified to *(check one)*

    [✓] provide advisory services views, opinions, alternatives, or recommendations on a temporary and/or intermittent basis on issues, problems, or questions presented by a federal official as a consultant as that term is defined in 5 CFR 304.102.

    [ ] serve as an expert with skills superior to those of others in the same profession, occupation, or activity to perform work on a temporary and/or intermittent basis assigned by a federal official as that term is defined in 5 CFR 304.103(a)(2).

4.  The appointment is appropriately designated as *(check one)*

    [✓] intermittent (the individual will work occasionally and irregularly).

    [ ] Full-time or part-time (the individual will work on a regular basis for a temporary period)

5.  The appropriate appointment authority is being used.

6.  The proposed pay rate is commensurate with the work to be performed and qualifications of the proposed appointee; and

7.  The record of appointment has been clearly documented to show the services to be performed and the special qualifications of the appointee which relate specifically to those services

| Date | Signature (Supervisor/Program Manager) Authorized to Obtain the Consultant's/Expert's Services |
|---|---|
| **2/3/2025** | **Michael J. Wenzler** Digitally signed by Michael J. Wenzler Date: 2025.02.03 14:53:08 -05'00' |
| Date | Signature (Appointing Official) |

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 347 of 582

USCA4 Appeal: 25-1282     Doc: 39-1     Filed: 04/14/2025     Pg: 348 of 582



DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

**WAIVER OF COMPENSATION**

I understand my service to the Government of the United States as an expert or consultant for the Departmental Offices, Office of the Chief of Staff is provided without compensation.

I agree to release the Government of the United States from any claims or demands for compensation for services performed under this appointment.

_____          **1/27/2025**
Signature of Proposed Appointee                Date

*Office Use Only*

*Date Received:*  **1/27/2025**  _____

*Office Human Resources Authorized Signatory:* _____

                        *Director (or Designee)*

JA345                    25-cv-00430_DMD_UST_0009

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 349 of 582

# Contact

www.linkedin.com/in/thomas-h-krause (LinkedIn)

# Tom Krause

CEO, Cloud Software Group

Fort Lauderdale, Florida, United States

## Summary

Fueled by a decades-long passion for technology and finance, my career has been focused on driving product and business process innovation that builds both sustainable growth for the businesses I lead and value for the customers and partners we serve.

Currently, I serve as Chief Executive Officer at Cloud Software Group, which provides more than 100 million users around the world with mission critical enterprise software at scale. Comprised of the Citrix, NetScaler, TIBCO, IBI, Jaspersoft, ShareFile, and XenServer business units, Cloud Software Group helps the world's largest organizations adapt, transform, and meet the challenges facing every modern enterprise across private, public, managed and sovereign cloud environments.

Prior to joining Cloud Software Group, I served as president of Broadcom Software Group, where I led six software divisions, worked with a team of more than 6,000 employees and managed $5 billion+ in revenue. I previously served as Chief Financial Officer of Broadcom, after joining the company as VP Corporate Development in 2012.

---

## Experience

Cloud Software Group
Chief Executive Officer
September 2022 - Present (2 years 4 months)
Fort Lauderdale, Florida, United States

More than 100 million users around the globe rely on Cloud Software Group to help them adapt, transform, and meet the challenges facing every modern enterprise across private, public, managed and sovereign cloud environments. We enable our customers to evolve, compete and succeed leveraging our software franchises for and across data, automation, insight and collaboration.

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 350 of 582

Broadcom Software
6 years 8 months

President, Broadcom Software Group
December 2020 - September 2022 (1 year 10 months)
San Francisco Bay Area

Broadcom Software:  Business-critical software solutions that modernize,
optimize, and protect the world's most complex hybrid environments.

Managed Broadcom's six software divisions as well as software sales,
customer support and software operations. Included a team of more than
6,000 employees with $5 billion+ in revenue.

Chief Financial Officer
October 2016 - December 2020 (4 years 3 months)
San Jose, California, United States

Broadcom Inc: A global technology leader in semiconductor and infrastructure
software solutions.

Responsible for overseeing all financial functions, mergers and acquisitions,
information technology, human resources and investor relations

Acting Chief Financial Officer
March 2016 - October 2016 (8 months)
San Jose, California, United States

VP Corporate Development
February 2016 - October 2016 (9 months)
San Jose, California, United States

Avago Technologies
VP Corporate Development
January 2012 - January 2016 (4 years 1 month)

Avago Technologies: Leading designer, developer, and global supplier of a
broad range of analog and digital semiconductor connectivity solutions.

Krause Consulting Group
Managing Partner
2010 - 2012 (2 years)
Palo Alto, California, United States

Independent financial advisory firm for various technology companies.

Techwell
VP Business Development
2004 - 2010 (6 years)
San Jose. California, United States

Fabless semiconductor company that designed and sold mixed-signal video solutions for the security surveillance and automotive infotainment markets. Acquired by Intersil in 2010.

TCV
Associate
2002 - 2004 (2 years)
Palo Alto, California. United States

Leading venture capital firm providing capital to growth-stage, private, and public companies in the technology industry.

Robertson Stephens
Investment Banking Analyst
2000 - 2002 (2 years)
San Francisco

---

## Education

Princeton University
Bachelor of Arts - BA, Economics · (1996 - 2000)

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 351 of 582

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 352 of 582

Senior Advisor (Technology and Modernization) to the Chief of Staff
FLSA: Exempt
GS-15

The Senior Advisor for Technology and Modernization shall work closely with the Chief of
Staff, the Under Secretary for Domestic Finance, and the Office of Fiscal Assistant Secretary and
Fiscal Service to lead on the development, execution, and management of the information
technology and technological modernization efforts and programs for the Department of the
Treasury and the internal management of the Department and its bureaus – including the Bureau
of the Fiscal Service (see additional detail below) – as it relates to technology.

The incumbent requires access to Special Sensitive/SCI information in the execution of his
duties and Special Sensitive security clearance in order to work on matters related to Department
of the Treasury critical infrastructure.

The Senior Advisor will work very closely with the Office of Fiscal Assistant Secretary and
Fiscal Service – and in particular the Office of the Commissioner – to execute Fiscal's mission of
promoting the financial integrity and operational efficiency of the federal government through
exceptional accounting, financing, collections, payments, and shared services. The Senior
Advisor shall focus on key issues for Fiscal, including but not limited to (1) Operational
Resiliency; (2) Advancing Governmentwide Payment Integrity; (3) Critical Modernization
Programs; (4) Improving the Payment Experience; and (5) TreasuryDirect User Credential Costs.
The Senior Advisor shall work closely with key internal, external, and interagency stakeholders
to execute Fiscal's mission.

III. SUPERVISION AND GUIDANCE

Reports to the Chief of Staff who provides general direction. The Chief of Staff defines the role
of the Senior Advisor for IT and Modernization, delegates sufficient authority to permit
enactment of this role, communicates relevant policy information, and evaluates performance in
terms of effectiveness in the attainment of objectives.



DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

*CORRECTED 2/10/2025*

# EXPERT and CONSULTANT REQUIRED FORMS CHECKLIST
## Appointed under 5 USC 3109, 5 CFR 304 only.

**Check all attachments included with packet.**

☑Request form
☑Certification Form
☑Financial Disclosure
☑Compensation Waiver Form (if unpaid)
☑Resume
☑Summary of Duties

\*After HR receives the packet from the requesting office, please send the approved packet to
Ethics @ Ethics@treasury.gov.

Michael J. Wenzler  Digitally signed by Michael J. Wenzler
Date: 2025.02.10 14:03:34 -05'00'        02/10/2025
_____        _____
Signature of Appointing Authority or Designee        Date



DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

## EXPERT and CONSULTANT REQUEST FORM
### Appointed under 5 USC 3109 only

| | |
|---|---|
| **1. NAME OF PERSON:** (*Last, first, middle initial*)<br><br>Krause Jr., Thomas, Harry | **2. TOTAL PERIOD FOR WHICH APPOINTMENT IS REQUESTED:**<br>(*List dates from beginning month/day/year to ending month/day/year*)<br>01/23/2025 - 03/24/2025 |
| **3. MAILING ADDRESS**<br><br>▓▓▓▓▓▓▓▓▓▓▓ | **4. APPROXIMATE NUMBER OF DAYS IN CALENDAR YEAR PERSON IS EXPECTED TO PERFORM SERVICES DURING THIS PERIOD.**<br><br>60 days |

**5. TYPE OF APPOINTMENT:** (*Appointment vs /Re-appointment), (Expert vs Consultant), (Full-time, Part-time, Intermittent), Hourly basis vs Daily basis*)

Appointment, Consultant, Intermittent, Hourly (Unpaid)

**6A.  STATE THE BASE SALARY (EXCLUDING LOCALITY PAY). IF UNPAID, CIRCLE BELOW AND COMPLETE WAIVER ON PAGE 3 OF 3:**

**6B.  WILL COST OF LIVING ADJUSTMENTS BE AUTHORIZED?**



**7.  EXPLAIN IN FULL THE SERVICES TO BE PERFORMED:**
The Senior Advisor for Technology and Modernization plays a pivotal role in advancing the Treasury's technology infrastructure, financial management systems, and cybersecurity initiatives. This position leads IT modernization efforts by implementing emerging technologies such as AI, blockchain, and cloud computing while ensuring compliance with federal IT policies. Additionally, the advisor oversees the modernization of legacy systems, integrating real-time analytics, automation, and enhanced data-sharing capabilities across agencies. In collaboration with the Chief Information Officer (CIO), they strengthen cybersecurity protocols to protect critical financial systems and mitigate risks. Furthermore, the role fosters public-private partnerships with financial institutions, technology firms, and regulatory agencies to drive innovation in digital payments, blockchain applications, and AI-driven fiscal management, ensuring Treasury's financial operations remain secure, efficient, and technologically advanced.

**7A. EXPLAIN WHAT DUTIES WILL BE ASSIGNED THAT WILL INVOLVE THE PERSON IN THE TRANSACTION OF BUSINESS ON BEHALF OF THE GOVERNMENT WITH ANY PROFIT OR NON-PROFIT ORGANIZATION:**

The Senior Advisor for Technology and Modernization will not be assigned any duties that will involve the incumbent in the transaction of business on behalf of the government with any profit or non-profit organizations.

**7B. SPECIFY WHAT DUTIES WILL BE ASSIGNED THAT WILL INVOLVE THE PERSON IN THE RENDERING OF ADVICE TO THE GOVERNMENT WHICH WILL HAVE DIRECT AND PREDICTABLE EFFECT ON THE INTERESTS OF ANY PROFIT OR NON-PROFIT ORGANIZATION:**

The Senior Advisor for Technology and Modernization will provide critical recommendations that shape government technology and financial management strategies, directly influencing profit and non-profit organizations involved in financial services, technology procurement, cybersecurity, payment processing, and regulatory compliance. Through policy guidance, modernization efforts, and strategic partnerships, this role will have a direct and predictable effect on private-sector and non-profit entities that interact with the Department of the Treasury.

**8.  JUSTIFICATION FOR OBTAINING OR EXTENDING THIS PERSON'S SERVICES:** (*Please include special qualifications of the nominee which relate specifically to the services to be performed.*)

The appointment of Thomas Harry Krause, Jr. as the Senior Advisor for Technology and Modernization is essential to advancing the Department of the Treasury's efforts in modernizing financial systems, enhancing cybersecurity, and improving the operational efficiency of its bureaus. Given the Treasury's increasing reliance on emerging technologies to enhance fiscal management, payment systems, and data security, Mr. Krause's extensive expertise and proven leadership make him exceptionally well-suited for this role.

**9A. TOTAL NUMBER OF DAYS ALREADY EMPLOYED THE ABOVE PERSON AS AN EXPERT OR CONSULTANT TO PERFORM SUBSTANTIALLY THE SAME DUTIES:**

0 (zero) days

**9B. TOTAL AMOUNT OF FUNDS, EXCLUDING PAYMENTS FOR TRAVEL AND RELATED EXPENSES, I.E., LODGINGS/MEALS, ETC., PAID THE ABOVE PERSON AS AN EXPERT /CONSULTANT TO PERFORM SUBSTANTIALLY THE SAME DUTIES:**

$0.00

**10. PROPOSED TOTAL AMOUNT OF FUNDS, EXCLUDING PAYMENTS FOR TRAVEL AND RELATED EXPENSES, I.E., LODGINGS/MEALS, ETC., ESTIMATES PAYING THE ABOVE PERSON AS AN EXPERT OR CONSULTANT ON THIS APPOINTMENT:**

$0.00



DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

**CERTIFICATION**
**EXPERT/CONSULTANT APPOINTMENT**

In approving the appointment of this consultant/expert, I have considered the requirements of law, Office of Personnel Management, and Departmental Offices (DO) policies and instructions. More specifically, I certify that:

1.  The services of this individual are essential for effective program management.

2.  The duties to be performed are those of *(check one)*

    ☑ a consultant, i.e., they are purely advisory in nature and will not include the performance of supervision of operating functions.

    ☐ an expert, i.e., they require a high level of expertise not available in the regular workforce.

3.  The individual is qualified to *(check one)*

    ☑ provide advisory services views, opinions, alternatives, or recommendations on a temporary and/or intermittent basis on issues, problems, or questions presented by a federal official as a consultant as that term is defined in 5 CFR 304.102.

    ☐ serve as an expert with skills superior to those of others in the same profession, occupation, or activity to perform work on a temporary and/or intermittent basis assigned by a federal official as that term is defined in 5 CFR 304.103(a)(2).

4.  The appointment is appropriately designated as *(check one)*

    ☑ intermittent (the individual will work occasionally and irregularly).

    ☐ Full-time or part-time (the individual will work on a regular basis for a temporary period)

5.  The appropriate appointment authority is being used.

6.  The proposed pay rate is commensurate with the work to be performed and qualifications of the proposed appointee; and

7.  The record of appointment has been clearly documented to show the services to be performed and the special qualifications of the appointee which relate specifically to those services.

_____
Date

_____
Signature (Supervisor/Program Manager)
Authorized to Obtain the Consultant's/Expert's Services

02/10/2025

Michael J. Wenzler  Digitally signed by Michael J. Wenzler
Date: 2025.02.10 14:02:36 -05'00'

_____
Date

_____
Signature (Appointing Official)

25-cv-00430_DMD_UST_0016



DEPARTMENT OF THE TREASURY
DEPARTMENTAL OFFICES
OFFICE OF HUMAN RESOURCES

## WAIVER OF COMPENSATION

I understand my service to the Government of the United States as an expert or consultant for the Departmental Offices, Office of the Chief of Staff is provided without compensation.

I agree to release the Government of the United States from any claims or demands for compensation for services performed under this appointment.

_____
Signature of Proposed Appointee

1/27/2025
_____
Date

*Office Use Only*

*Date Received:* 1/27/2025 _____

*Office Human Resources Authorized Signatory:* _____

*Director (or Designee)*

JA353                                    25-cv-00430_DMD_UST_0017

Contact

www.linkedin.com/in/thomas-h-krause (LinkedIn)

# Tom Krause

CEO, Cloud Software Group
Fort Lauderdale, Florida, United States

## Summary

Fueled by a decades-long passion for technology and finance, my career has been focused on driving product and business process innovation that builds both sustainable growth for the businesses I lead and value for the customers and partners we serve.

Currently, I serve as Chief Executive Officer at Cloud Software Group, which provides more than 100 million users around the world with mission critical enterprise software at scale. Comprised of the Citrix, NetScaler, TIBCO, IBI, Jaspersoft, ShareFile, and XenServer business units, Cloud Software Group helps the world's largest organizations adapt, transform, and meet the challenges facing every modern enterprise across private, public, managed and sovereign cloud environments.

Prior to joining Cloud Software Group, I served as president of Broadcom Software Group, where I led six software divisions, worked with a team of more than 6,000 employees and managed $5 billion+ in revenue. I previously served as Chief Financial Officer of Broadcom, after joining the company as VP Corporate Development in 2012.

―――――

## Experience

Cloud Software Group
Chief Executive Officer
September 2022 - Present (2 years 4 months)
Fort Lauderdale, Florida, United States

More than 100 million users around the globe rely on Cloud Software Group to help them adapt, transform, and meet the challenges facing every modern enterprise across private, public, managed and sovereign cloud environments. We enable our customers to evolve, compete and succeed leveraging our software franchises for and across data, automation, insight and collaboration.

Broadcom Software

6 years 8 months

President, Broadcom Software Group
December 2020 - September 2022 (1 year 10 months)
San Francisco Bay Area

Broadcom Software:  Business-critical software solutions that modernize, optimize, and protect the world's most complex hybrid environments.

Managed Broadcom's six software divisions as well as software sales, customer support and software operations. Included a team of more than 6,000 employees with $5 billion+ in revenue.

Chief Financial Officer
October 2016 - December 2020 (4 years 3 months)
San Jose, California, United States

Broadcom Inc: A global technology leader in semiconductor and infrastructure software solutions.

Responsible for overseeing all financial functions, mergers and acquisitions, information technology, human resources and investor relations

Acting Chief Financial Officer
March 2016 - October 2016 (8 months)
San Jose, California, United States

VP Corporate Development
February 2016 - October 2016 (9 months)
San Jose, California, United States

Avago Technologies
VP Corporate Development
January 2012 - January 2016 (4 years 1 month)

Avago Technologies: Leading designer, developer, and global supplier of a broad range of analog and digital semiconductor connectivity solutions.

Krause Consulting Group
Managing Partner
2010 - 2012 (2 years)
Palo Alto, California, United States

Independent financial advisory firm for various technology companies.

JA355

Techwell
VP Business Development
2004 - 2010 (6 years)
San Jose, California, United States

Fabless semiconductor company that designed and sold mixed-signal video solutions for the security surveillance and automotive infotainment markets. Acquired by Intersil in 2010.

TCV
Associate
2002 - 2004 (2 years)
Palo Alto, California, United States

Leading venture capital firm providing capital to growth-stage, private, and public companies in the technology industry.

Robertson Stephens
Investment Banking Analyst
2000 - 2002 (2 years)
San Francisco

———

## Education

Princeton University
Bachelor of Arts - BA, Economics · (1996 - 2000)

Senior Advisor (Technology and Modernization) to the Chief of Staff
FLSA: Exempt
GS-15

The Senior Advisor for Technology and Modernization shall work closely with the Chief of Staff, the Under Secretary for Domestic Finance, and the Office of Fiscal Assistant Secretary and Fiscal Service to lead on the development, execution, and management of the information technology and technological modernization efforts and programs for the Department of the Treasury and the internal management of the Department and its bureaus – including the Bureau of the Fiscal Service (see additional detail below) – as it relates to technology.

The incumbent requires access to Special Sensitive/SCI information in the execution of his duties and Special Sensitive security clearance in order to work on matters related to Department of the Treasury critical infrastructure.

The Senior Advisor will work very closely with the Office of Fiscal Assistant Secretary and Fiscal Service – and in particular the Office of the Commissioner – to execute Fiscal's mission of promoting the financial integrity and operational efficiency of the federal government through exceptional accounting, financing, collections, payments, and shared services. The Senior Advisor shall focus on key issues for Fiscal, including but not limited to (1) Operational Resiliency; (2) Advancing Governmentwide Payment Integrity; (3) Critical Modernization Programs; (4) Improving the Payment Experience; and (5) TreasuryDirect User Credential Costs. The Senior Advisor shall work closely with key internal, external, and interagency stakeholders to execute Fiscal's mission.

III. SUPERVISION AND GUIDANCE

Reports to the Chief of Staff who provides general direction. The Chief of Staff defines the role of the Senior Advisor for IT and Modernization, delegates sufficient authority to permit enactment of this role, communicates relevant policy information, and evaluates performance in terms of effectiveness in the attainment of objectives.

25-cv-00430_DMD_UST_0021

| Official Title | | | |
|---|---|---|---|
| Special Advisor (IT&M) | | | |
| **Organizational Title** | | | |
| | | | |
| **PD #** | **Date Classified** | **As of** | |
| C00424 | 01/15/2025 | 01/15/2025 | |
| **Pay Plan** | **Series** | **Grade** | **Target Grade** |
| GS | 0301 | 11 | 11 |
| **Manager Level** | **Bargaining Unit Code** | **FLSA** | **LEO Position** |
| 8-All Other Positions | 8888 | Exempt | |
| **Medical Check Required** | **Position Sensitivity** | **Cyber Code** | |
| No | 4N-Special Sensitive | Primary: 000 1st: 000 2nd: 000 | |

| Sub-Agency/POI Combinations |
|---|
| 91 - 2731 |

| Career Ladder PD(s) |
|---|
| |

| Major Duties |
|---|

Special Advisor (Information Technology and Modernization)        FLSA: Exempt

GS-301-11


I. INTRODUCTION


The primary purpose of this position is to serve in a close and confidential capacity to the Chief of Staff's Senior Advisor for Information Technology and Modernization. The Special Advisor is responsible for advising the Chief of Staff's Senior Advisor for Information Technology and Modernization on engineering, software, hardware, systems, and other technology matters.


The incumbent of this position requested for Schedule C exception will not be able to adequately perform his/her duties without being privy to the critical information technology hardware and software infrastructure of Treasury Department. The incumbent will be exposed to conversations, dialogues, and other kinds of sensitive information, some of which concern controversial and sensitive issues. The incumbent performs a variety of confidential assignments requiring analysis and evaluation of programs and activities of importance to the Senior Advisor for Information Technology and Modernization.  Consequently, the incumbent is required to be familiar with the policies of the Administration and to maintain the confidentiality of all materials. The working relationship between the incumbent and the Chief of Staff and the Chief of Staff's Senior Advisor for Information Technology and Modernization is of a confidential nature required by Schedule C exception. The incumbent requires access to Special Sensitive/SCI information in the execution of his duties and Special Sensitive security clearance in order to work on matters related to Department of the Treasury critical infrastructure.


II. DUTIES AND RESPONSIBILITIES

25-cv-00430_DMD_UST_0022

Conducts special and confidential studies on a variety of strategic and issues related to Treasury's information technology.  Reviews and furnishes the Chief of Staff's Senior Advisor for Information Technology and Modernization with recommendations regarding Treasury's critical software infrastructure.

Identifies, analyzes, and makes recommendations to strengthen Treasury's hardware and software.

The Special Advisor shall work closely with the engineers in the Bureau of Fiscal Service on Information Technology matters to execute Fiscal's mission of promoting the financial integrity and operational efficiency of the federal government through exceptional accounting, financing, collections, payments, and shared services. The Special Advisor shall assist on key issues for Fiscal, including but not limited to (1) Operational Resiliency; (2) Advancing Governmentwide Payment Integrity; (3) Critical Modernization Programs; (4) Improving the Payment Experience; and (5) TreasuryDirect User Credential Costs.

III. SUPERVISION AND GUIDANCE RECEIVED

The incumbent reports to the Chief of Staff's Senior Advisor for Information Technology and Modernization.  Instructions given with assignments are general and indicate objectives to be attained.  The incumbent determines ways to attain desired results.  Analyses and reports must be comprehensive and sound enough to require minimal review before completion.  Completed work is reviewed to ensure adherence to the modernization and information technology objectives of the Treasury Department.

25-cv-00430_DMD_UST_0023

# APPOINTMENT AFFIDAVITS

Senior Advisor (Technology and Modernization)

(Position to which Appointed)

01/23/2025

(Date Appointed)

Treasury, Departmental Offices

(Department or Agency)

Office of the Chief of Staff

(Bureau or Division)

Washington, DC, United States

(Place of Employment)

I, Thomas Harry Krause, Jr , do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

Electronically Signed by Thomas H Krause Jr

(Signature of Appointee)

Subscribed and sworn (or affirmed) before me this ___ day of _____ , 2 ____

at _____   _____
  (City)                                (State)

(SEAL)

_____

(Signature of Officer)

Commission expires _____   _____

(If by a Notary Public, the date of his/her Commission should be shown)   (Title)

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

JA360

EOD:TR91  USA Staffing

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

25-cv-00430_DMD_UST_0024

| ☰ OSP Tracker Status | ☰ Start Date ▼ | ☰ End Date | ☰ Total Business Days | ☰ Duration |
|---|---|---|---|---|
| Pending ISP | 01-19-2025 | | | 26 |
| EOD Determination Made | 01-19-2025 | 01-19-2025 | | 0 |
| eApp Received | 01-19-2025 | 01-19-2025 | | 0 |
| Pending eApp | 01-18-2025 | 01-19-2025 | | 0 |
| Pending Fingerprint SAC | 01-17-2025 | 01-18-2025 | | 1 |
| Package Under Review | 01-17-2025 | 01-17-2025 | | 0 |

JA361

25-cv-00430_DMD_UST_0025

| | |
|---|---|
| **From:** | Security Support |
| **To:** | Elez, Marko |
| **Cc:** | Security Support |
| **Subject:** | Interim Approval | Elez, Marko | P4P Entry date: January 21st, 2025 |
| **Date:** | Wednesday, January 22, 2025 9:53:09 AM |
| **Attachments:** | Initial Collateral Security Training.pdf |

Good morning, Marko,

You have been approved for an ***Interim Secret*** clearance.

Please have review the attached Initial Security Training PowerPoint presentation. Also review the SEAD 3 presentation and the SEAD 3 Interactive Module links to the Security Executive Agent Directive 3 (SEAD 3) reporting requirements provided above. A frequently asked questions section is provided here.

**Once finished, please "reply all" to this email stating you have successfully reviewed the presentation and links.**

Please provide a day and time you will be available to come to **Main Treasury, Room B-16** (basement) to sign your Standard Form (SF) 312, Classified Nondisclosure Agreement.


Very Respectfully,

Justin R. Schwartz
Security Specialist
U.S. Department of the Treasury | Office of Intelligence & Analysis
Desk: ███████████ | Cell: ███████████ | VoIP ██████████

Your new Security & Counterintelligence portal is available for use!

https://treasury.servicenowservices.com/sentry

25-cv-00430_DMD_UST_0026

| | |
|---|---|
| **From:** | Personnel Security Team |
| **To:** | Iraheta, Oscar; Satcher, Eva |
| **Cc:** | SecurityPrograms; Security Support; Mencl, Kari; Dague, Jaimie |
| **Subject:** | Interim Approval to EOD [Elez, Marko, Federal Employee, Initial-New Hire] |
| **Date:** | Sunday, January 19, 2025 1:35:12 PM |

Greetings,

Marko Elez has been granted <u>interim</u> approval to Enter On Duty (EOD) into a 4N - Special Sensitive position. Final approval is contingent on a completed background investigation and a favorable adjudication.

If a collateral security briefing is required, Marko Elez will be contacted by ███████████ @treasury.gov once the EOD date is established to schedule the briefing.

Thank you,

Office of Security Programs
Office of Intelligence and Analysis
U.S. Department of the Treasury

Unsubscribe | Notification Preferences
Ref:MSG5492798_p2hkRQklRuFRxGY3QmlW

JA363                                            25-cv-00430_DMD_UST_0027

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

**To**:        Marko Elez

**From**:      Brian Halliden
              Attorney-Advisor, General Law, Ethics & Regulation

**Date**:      January 16, 2025

**Subject**:   Vetting Checklist[1]

---

Please respond to the questions below.  Indent your response as a sub-bullet or change the text color to signal your response.

1. Do you (as applicable, or your spouse, minor child, or general partner) hold significant financial investments in the financial services industry (e.g., J.P. Morgan Chase common stock or stock in a sector fund concentrating in the financial industry)?  Also, do you (as applicable, or your spouse, minor child, or general partner) hold investments in companies that contract with the government?
   ○ If yes, is there a willingness/ability to divest if necessary?

   No

2. Do you currently hold any investments that restrict your ability to divest of the holding (e.g., hedge funds, private equity holdings, stock options, other plans that do not allow divestiture or trust arrangements that cannot be exited)?

   I hold ████████████████ common stock and ████████████ RSUs.

3. Do you (or your spouse or minor child) currently own or are you invested in any financial business or business that you would be unable or unwilling to divest?

   No

4. Were you employed by or a consultant to a financial services entity the past year?

   No

---

[1] PLEASE NOTE:  This checklist contains broad parameters that may be used as one helpful tool in an initial vetting process.  If a potential candidate answers "yes" to any of these questions, it does NOT necessarily mean they have unalterable conflicts and cannot be hired to work for Treasury.  It only means that an ethics official should be consulted concerning the possibility of a conflict.

5. Does your current employment, or did your employment within the last year, result in the representation of any financial services firms?

No

6. (If applicable) Does your spouse and/or dependent child work for a financial institution; a financial services firm; or represent clients who do?

No

7. Does any other member of your household (adult children, significant other, and housemates) work for a company in the financial sector or represent clients in the financial sector (e.g., as a lawyer or accountant for J.P. Morgan Chase)?

No member of my household. However, 

8. Do any close relatives work for a company that contracts with the financial sector or represent clients in the financial sector?

No

9. Are you currently seeking a business, contractual, or other financial relationship (other than a routine commercial transaction) with an entity in the financial sector?

No

10. Are you currently the party to any book contract or teaching or speaking agreement?

No

11. Are you an active participant in any organization that has significant involvement with the financial sector?

No

12. Are you a member of the board of directors of any organization?

No

25-cv-00430_DMD_UST_0029

| | |
|---|---|
| **From:** | ████████████ |
| **To:** | Marko Elez |
| **Cc:** | ▁avid J, Am▁rose |
| **Subject:** | ▁ules of ▁e▁avior |
| **Date:** | Wednesday, ▁e▁ruary 5, 2025 ▁:10:15 PM |
| **Attachments:** | ▁iscal_Service_Security_▁o▁_Internal_2025 01 2▁.pdf |

Marko,

In issuing you the fiscal laptop we missed having you sign the Fiscal Service rules of behavior. Could you sign this and return this back to us.

Very Respectfully,

████████████

Deputy Assistant Commissioner, Enterprise IT ▁perations

Information ▁ Security Services

▁ureau of the Fiscal Service

Desk █████████████

Cell : █████████

25-cv-00430_DMD_UST_0030

**Fiscal Service**                                                    <u>**Security Rules of Behavior**</u>
**January 27, 2025**

**SUBJECT:**

The Bureau of the Fiscal Service (Fiscal Service) Security Rules of Behavior (Rules of Behavior)

**PURPOSE:**

The Rules of Behavior define responsibilities and procedures for the secure use of Fiscal Service data, equipment, information technology (IT) systems, and facilities.  By reading and signing the Rules of Behavior, Users (defined below) acknowledge their responsibility for complying with the Rules of Behavior.

**SCOPE:**

The Rules of Behavior apply to Users (not public users) who access or maintain any Fiscal Service data, equipment, IT systems, or facilities, regardless of location (e.g., whether you are at your regular duty station or a remote work location).  Users are individuals who have access to Fiscal Service data, equipment, IT systems or facilities for the purpose of performing work on behalf of Fiscal Service.  Examples of Users include, but are not limited to, Fiscal Service employees and employees of contractors, sub-contractors, and agents.  At Fiscal Service's discretion, certain individuals who have access to Fiscal Service data, equipment, IT systems, or facilities may not be considered Users under this definition and as such may not be required to sign these Rules of Behavior.  In addition to the rules and requirements contained within this document, Users should note that other federal laws and regulations apply when accessing Fiscal Service resources (e.g., licensing agreements and copyright laws), but are considered outside the scope of this document.

**Users SHALL:**

Follow these rules regarding Fiscal Service facilities:
- Use facilities properly and follow laws, regulations, and policies governing the use and entrance to such facilities.
- Do not threaten any person or organization.
- Do not commit acts of violence against any person, organization, equipment, or facility.
- Do not bring prohibited items (e.g., weapons) into a Fiscal Service facility.
- Do not use another person's access credential to enter a Fiscal Service facility or secured room.

Follow these rules regarding Fiscal Service data, equipment, and IT systems:
- Use Fiscal Service data, equipment, and IT systems properly and follow laws, regulations, and policies governing the use of such resources (Base Line Security Requirements, ([BLSRs](#)), Treasury Information Technology Security Program ([TD-P 85-01](#)), the Treasury Security Manual ([TD-P 15-71](#)), and [Fiscal Service Policies](#)).
- Protect Fiscal Service data, equipment and IT systems from loss, theft, damage, and unauthorized use or disclosure.
- Secure mobile media (paper and digital) based on the sensitivity of the information contained.
- Use appropriate sensitivity markings on mobile media (paper and digital).
- Promptly report any known or suspected security breaches or threats, including lost, stolen, or improper/suspicious use of Fiscal Service data, equipment, IT systems, or facilities to the IT Service Desk at 304-480-7777.
- Do not attempt to circumvent any security or privacy controls.
- Logoff, lock, or secure workstation/laptop to prevent unauthorized access to Fiscal Service IT systems or services.

1

25-cv-00430_DMD_UST_0031

**Fiscal Service**                                              <u>**Security Rules of Behavior**</u>
**January 27, 2025**

- Do not read, alter, insert, copy, or delete any Fiscal Service data except in accordance with assigned job responsibilities, guidance, policies, or regulations.  The ability to access data does not equate to the authority to access data.  In particular, Users must not browse or search Fiscal Service data except in the performance of authorized duties.
- Do not reveal any data processed or stored by Fiscal Service except as required by job responsibilities and within established procedures.
- Do not remotely access Fiscal Service IT systems unless authorized to do so, such as an approved telework agreement authorizing remote access over the bureau's VPN software.
- Do not transport or use Fiscal Service data or equipment outside of the United States or US Territories without written approval from the CSO or CISO.
- Do not connect Fiscal Service equipment to or access a Fiscal Service IT system from a foreign network without written approval from the CSO or CISO.
- Do not install or use unauthorized software or cloud services on Fiscal Service equipment.
- Take reasonable precautions to prevent unauthorized individuals from viewing screen contents or printed documents.
- Do not open e-mail attachments, or click links, from unknown or suspicious sources.
- Be responsible for all activities associated with your assigned user IDs, passwords, access tokens, identification badges, Personal Identity Verification (PIV) cards, or other official identification device or method used to gain access to Fiscal Service data, equipment, IT systems, or facilities.
- Protect passwords and other access credentials from improper disclosure.
- Do not share passwords with anyone else or use another person's password or other access credential such as, but not limited to, someone else's PIV card.
- Use only equipment and software provided by Fiscal Service or that has been approved for use by Fiscal Service's CIO or designee to conduct Fiscal Service business.
- Provide non-work contact information to the bureau to facilitate emergency communications.
- Comply with Fiscal Service social media policy, including restrictions on publishing Fiscal Service information to social media and public websites.


**ACCEPTANCE:**

I have read the Fiscal Service Security Rules of Behavior and fully understand the security requirements.  I further understand that violation of these rules may be grounds for legal and/or administrative action by the Fiscal Service and may result in actions up to and including disciplinary action, termination of access, termination of employment, contract termination, and/or prosecution under federal law.


User's Name: _____ (printed)


User's Signature: _____ (signature)


Date: _____

## CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

AN AGREEMENT BETWEEN      MARKO ELEZ      AND THE UNITED STATES

*(Name of Individual - Printed or typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 13526, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in sections 1.1, 1.2, 1.3 and 1.4(e) of Executive Order 13526, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of sections 641, 793, 794, 798, *952 and 1924, title 18, United States Code; *the provisions of section 783(b), title 50, United States Code; and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of sections 793 and/or 1924, title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

*(Continue on reverse.)*

---

NSN 7540-01-280-5499
Previous edition not usable.

STANDARD FORM 312 (Rev. 7-2013)
Prescribed by ODNI
32 CFR PART 2001.80  E.O. 13526

25-cv-00430_DMD_UST_0033

11. These restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by Executive Order No. 13526 (75 Fed. Reg. 707), or any successor thereto section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); section 2302(b) (8) of title 5, United States Code, as amended by the Whistleblower Protection Act of 1989 (governing disclosures of illegality, waste, fraud , abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents); sections 7(c) and 8H of the Inspector General Act of 1978 (5 U.S.C. App.) (relating to disclosures to an inspector general, the inspectors general of the Intelligence Community. and Congress); section 103H(g)(3) of the National Security Act of 1947 (50 U.S.C. 403-3h(g)(3) (relating to disclosures to the inspector general of the Intelligence Community); sections 17(d)(5) and 17(e)(3) of the Central Intelligence Agency Act of 1949 (50 U.S.C. 403g(d)(5) and 403q(e)(3)) (relating to disclosures to the Inspector General of the Central Intelligence Agency and Congress); and the statutes which protect against disclosure that may compromise the national security, including sections 641, 793, 794, 798, *952 and 1924 of title 18, United States Code, and *section 4 (b) of the Subversive Activities Control Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions, and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling.

12. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this agreement and its implementing regulation (32 CFR Part 2001 , section 2001 .80(d)(2) ) so that I may read them at this time, if I so choose.

* NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

| SIGN█████████████████████ | DATE 1/22/25 | SOCIAL SECURITY NUMBER *(See Notice below)* ██████████████ |

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE: NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) *(Type or print)*
DEPARTMENT OF TREASURY
1500 PENNSYLVANIA AVE, NW
WASHINGTON, DC

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |
| ████████████ DATE 1/22/25 | SIGNA████████████████ DATE 1/22/25 |
| | NAME AND ADDRESS *(Type or print)* |
| DEPARTMENT OF TREASURY 1500 PENNSYLVANIA AVE, NW WASHINGTON, DC | DEPARTMENT OF TREASURY 1500 PENNSYLVANIA AVE, NW WASHINGTON, DC |

SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | | DATE |
| NAME OF WITNESS *(Type or print)* | SIGNATURE OF WITNESS | |

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Number (SSN) is Public Law 104-134 (April 26, 1996). Your SSN will be used to identify you precisely when it is necessary to certify that you have access to the information indicated above or to determine that your access to the information indicated has been terminated. Furnishing your Social Security Number, as well as other data, is voluntary, but failure to do so may delay or prevent you being granted access to classified information.

STANDARD FORM 312 BACK (Rev. 7-2013)

# Department of the Treasury
## Contact Reporting Requirement Acknowledgment

Department of the Treasury and bureau employees are required to report all contacts with individuals of any nationality, either within or outside the scope of the employees' official activities, in which:

*(1) Illegal or unauthorized access is sought to classified or otherwise sensitive information and technology.*

*(2) The employee is concerned that he/she may be the target of actual or attempted exploitation by a foreign entity.*

*(3) The employee has contact with known or suspected foreign intelligence officers from any country.*

The focus is on reporting questionable contacts by individuals of any nationality regardless of the status of relations between his or her foreign country (or third-country nationals) and the United States.

These reporting requirements are NOT intended to infringe upon the rights of Treasury/bureau employees' free association, but to reinforce their responsibility for safeguarding classified and sensitive information and technology.

By signing this form, the employee is acknowledging that he or she has been briefed on the Treasury Department contact reporting requirements and conditions warranting reporting. Contact reports may be submitted in person and/or in writing to their Treasury/bureau security office. That office shall evaluate the employee's report and notify Treasury's Office of Counterintelligence for appropriate counterintelligence information purposes.

Employee Name ___*Marko Elez*___

Signature ███████████     Date ___1/22/25___

The completed form will be filed in the individual's Treasury/bureau security file and a copy thereof may be provided to the individual.

TD F 15-03.4 (7/11)

1

25-cv-00430_DMD_UST_0035

25-cv-00430_DMD_UST_0036

Department of the Treasury
**SECURITY ORIENTATION ACKNOWLEDGMENT**

| Name of Attendee | Last, | First, | Middle Initial *(Type or print in ink)* |
|---|---|---|---|
| | Elez | Marko | |

| Date of Briefing | | | |
|---|---|---|---|
| 1/22/25 | ☒ Initial | ☐ Refresher | |

This security orientation program highlights the requirements and procedures prescribed by Executive Order for safeguarding classified national security information and applicable Treasury regulations for sensitive but unclassified information. Briefing programs on handling classified information are required of all U.S. Government agencies and departments that originate or process such information. This form documents subject areas presented to the above-named individual including, but not necessarily limited to:

General background information: classification categories (Top Secret, Secret and Confidential); original and derivative classification; classification authority; identification and markings; downgrading and declassification; safeguarding and storage; general restrictions on access; Need-to-Know; dissemination, accountability and transmittal; reproduction; destruction; security violations; loss and/or possible compromise and sensitive but unclassified information.

This form may be supplemented to include office or/bureau-specific security requirements and procedures under "remarks".

REMARKS:

ACKNOWLEDGMENT: I hereby acknowledge that I have been provided a security orientation program in the areas identified above. I understand that it is my responsibility to become familiar with Treasury security requirements and procedures for safeguarding both classified national security and sensitive but unclassified information.

| Signature of Attendee | Office and Location | Date |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓ | OO | 1/22/25 |

| Signature of Briefing Official | | Date |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓ | O1A | 1/22/2025 |

TD F 15-05.1 (Rev. 06/05) Previous editions obsolete.

25-cv-00430_DMD_UST_0038

| | |
|---|---|
| **From:** | Personnel Security Team |
| **To:** | Iraheta, Oscar; ████████@gmail.com; Satcher, Eva |
| **Cc:** | SecurityPrograms; Security Support; Mencl, Kari; Daque, Jaimie; Macey, Christopher |
| **Subject:** | Final Adjudication Approval [Krause, Thomas, Federal Employee, Initial-New Hire] |
| **Date:** | Tuesday, January 21, 2025 12:00:27 PM |

Greetings,

Your background investigation has been favorably adjudicated for 4N - Special Sensitive/4 - SCI Intel Community Directive 704 pursuant to the Department of the Treasury Security Manual, Treasury Directive P 15-71, Chapter II, Personnel Security Investigations for Federal Employees, Contractors, Subcontractors, Experts, Consultants and Paid / Unpaid Interns.

On 01-21-2025, you were found eligible for employment by the Department of the Treasury. Should you require additional security briefings, you will be contacted by ████████@treasury.gov, otherwise there is no further action required on your part.

Thank you,

Office of Security Programs
Office of Intelligence and Analysis
U.S. Department of the Treasury

Unsubscribe | Notification Preferences
Ref:MSG5499350_MSU2SCm0vLSskInPT1Hl

# CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

**AN AGREEMENT BETWEEN** _____Thomas Harry Krause Jr._____ **AND THE UNITED STATES**

*(Name of Individual - Printed or typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 13526, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in sections 1.1, 1.2, 1.3 and 1.4(e) of Executive Order 13526, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of sections 641, 793, 794, 798, *952 and 1924, title 18, United States Code; *the provisions of section 783(b), title 50, United States Code; and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of sections 793 and/or 1924, title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

*(Continue on reverse.)*

NSN 7540-01-280-5499
Previous edition not usable.

STANDARD FORM 312 (Rev. 7-2013)
Prescribed by ODNI
32 CFR PART 2001.80  E.O. 13526

25-cv-00430_DMD_UST_0040

11. These restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by Executive Order No. 13526 (75 Fed. Reg. 707), or any successor thereto section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); section 2302(b) (8) of title 5, United States Code, as amended by the Whistleblower Protection Act of 1989 (governing disclosures of illegality, waste, fraud , abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents); sections 7(c) and 8H of the Inspector General Act of 1978 (5 U.S.C. App.) (relating to disclosures to an inspector general, the Inspectors general of the Intelligence Community, and Congress); section 103H(g)(3) of the National Security Act of 1947 (50 U.S.C. 403-3h(g)(3) (relating to disclosures to the inspector general of the Intelligence Community); sections 17(d)(5) and 17(e)(3) of the Central Intelligence Agency Act of 1949 (50 U.S.C. 403g(d)(5) and 403g(e)(3)) (relating to disclosures to the Inspector General of the Central Intelligence Agency and Congress); and the statutes which protect against disclosure that may compromise the national security, including sections 641, 793, 794, 798, *952 and 1924 of title 18, United States Code, and *section 4 (b) of the Subversive Activities Control Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions, and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling.

12. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this agreement and its implementing regulation (32 CFR Part 2001 , section 2001 .80(d)(2) ) so that I may read them at this time, if I so choose.

**\* NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.**

| SIGNATURE | DATE 1/22/25 | SOCIAL SECURITY NUMBER (See Notice below) |
|---|---|---|

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE; NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) (Type or print)
DEPARTMENT OF TREASURY
1500 PENNSYLVANIA AVE, NW
WASHINGTON, DC

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |
| SIGNATURE ████████  DATE 1/22/25 | SIGNATURE ████████  DATE 1/22/25 |
| NAME AND ADDRESS (Type or print) DEPARTMENT OF TREASURY 1500 PENNSYLVANIA AVE, NW WASHINGTON, DC | NAME AND ADDRESS (Type or print) DEPARTMENT OF TREASURY 1500 PENNSYLVANIA AVE, NW WASHINGTON, DC |

## SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |
|---|---|

| NAME OF WITNESS (Type or print) | SIGNATURE OF WITNESS |
|---|---|

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Number (SSN) is Public Law 104-134 (April 26, 1996). Your SSN will be used to identify you precisely when it is necessary to certify that you have access to the information indicated above or to determine that your access to the information indicated has been terminated. Furnishing your Social Security Number, as well as other data, is voluntary, but failure to do so may delay or prevent you being granted access to classified information.

STANDARD FORM 312 BACK (Rev. 7-2013)

Print Form

Apply appropriate classification level and any control markings (if applicable) when filled in.

## (U) SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement between _____Thomas  Harry Krause Jr._____ and the United States.

*(Name – Printed or Typed)*

1. (U) Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in process of a classification determination under the standards of Executive Order 13526 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. (U) I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. (U) I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. (U) In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation with, or show it to, anyone who is not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. (U) I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. (U) I have been advised that any breach of this Agreement may result in my termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. (U) I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorney's fees incurred by the United States Government may be assessed against me if I lose such action.

8. (U) I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. (U) Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed on me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. (U) Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other

**FORM 4414** (Rev. 12-2013)

CL:
DECL ON:
DRV FROM:

Page 1 of 2

25-cv-00430_DMD_UST_0042

Apply appropriate classification level and any control markings (if applicable) when filled in.

conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. (U) I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798 and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 13526, as amended, so that I may read them at this time, if I so choose.

12. (U) I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. (U) These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

14. (U) These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order13526; or any successor thereto, Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosures to Congress by members of the Military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosure of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents), sections 7(c) and 8H of the Inspector General Act of 1978 (5 U.S.C. App.) (relating to disclosures to an inspector general, the inspectors general of the Intelligence Community; and Congress); section 103H(g)(3) of the National Security Act of 1947 (50 U.S.C. 403–3h(g)(3) (relating to disclosures to the inspector general of the Intelligence Community); sections 17(d)(5) and 17(e)(3) of the CIA Act of 1949 (50 U.S.C. 403q(d)(5) and 403q(e)(3)) (relating to disclosures to the Inspector General of the Central Intelligence Agency and Congress): and the statutes which protect agent disclosure which may compromise the national security, including Section 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Control Act of 1950 (50 U.S.C. Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

15. (U) This Agreement shall be interpreted under and in conformance with the law of the United States.

16. (U) I make this Agreement without any mental reservation or purpose of evasion.

_____    1/23/25
                Signature                              Date

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Co▮▮▮▮▮

WITNESS and ACCEPTANCE:  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    1/23/2025
                                      Signature                              Date

| SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT | | | | | |
|---|---|---|---|---|---|
| SI | TK | SI-G | HCS-P | KLM-R | |
| | | (Special Access Programs by Initials Only) | | | |
| | | Thomas  Harry Krause Jr. | | DO | |
| ▮▮▮▮▮▮ | | | | | |
| SSN (See Notice Below) | | Printed or Typed Name | | Organization | |

| BRIEF          Date  1/23/25 | DEBRIEF          Date_____ |
|---|---|
| I hereby acknowledge that I was briefed on the above SCI Special Access Program(s): | Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Program(s): |
| _____ Signature of Individual Briefed | _____ Signature of Individual Briefed |

▮▮▮▮▮▮▮▮ e above date was in accordance with relevant SCI procedures.

_____ Officer    ▮▮▮▮▮▮▮ SSN (See notice below)

                                                OIA
▮▮▮▮▮▮▮▮▮▮▮▮▮                          Organization (Name and Address)
Printed or Typed Name

(U) NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397, as amended. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

FORM 4414 (Rev. 12-2013)                                                      Page 2 of 2

| ☰ OSP Tracker Status | ☰ Start Date ▼ | ☰ End Date | ☰ Total Business Days | ☰ Duration |
|---|---|---|---|---|
| Closed | 02-24-2025 | | | 3 |
| Pending EOD Determination | 02-24-2025 | 02-24-2025 | | 0 |
| Adjudication - Favorable | 01-21-2025 | 01-21-2025 | | 0 |
| Closed | 01-21-2025 | 02-24-2025 | | 23 |
| Pending Adjudication Review | 01-21-2025 | 01-21-2025 | | 0 |
| Conducting Security Check | 01-18-2025 | 01-21-2025 | | 0 |
| Package Under Review | 01-17-2025 | 01-18-2025 | | 1 |

| ☰ OSP Tracker Status | ☰ Start Date ▼ | ☰ End Date | ☰ Total Business Days | ☰ Duration |
|---|---|---|---|---|
| Conducting Security Check | 02-11-2025 | 02-11-2025 | | 0 |
| EOD Re-affirmed for New Position | 02-11-2025 | 02-11-2025 | | 0 |
| Package Under Review | 02-11-2025 | 02-11-2025 | | 0 |
| Closed | 02-11-2025 | | | 11 |

25-cv-00430_DMD_UST_0044

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

**To**:        Tom Krause
               ████████@gmail.com

**From**:      ████████████

**Date**:      1/10/25

**Subject**:   Potential Hire Vetting Checklist[1]

---

Please respond to the questions below.  Indent your response as a sub-bullet or change the text color to signal your response.

1. Do you (as applicable, or your spouse, minor child, or general partner) hold significant financial investments in the financial services industry (e.g., J.P. Morgan Chase common stock or stock in a sector fund concentrating in the financial industry); or in the software sector?  Also, do you (as applicable, or your spouse, minor child, or general partner) hold investments in companies that contract with the government?
   o  If yes, is there a willingness/ability to divest if necessary

   Attached is a list of my equity holdings based on GICS classifications for Financials (includes banks, capital markets firms, consumer finance, insurance, and asset managers), Software, and Aerospace & Defense (which is the closest approximation among the GICS classifications for "companies that contract with the government").  I would be willing and able to divest any of these holdings if necessary.

   I also have a ████ commitment as a Limited Partner (LP) in GTM Fund, a software venture capital fund, but have no control or discretion over it.  It would be a challenge to divest myself of that commitment.

   Finally, I have stock options in my current employer, Cloud Software Group (www.cloud.com), which sells products to commercial and government users.

   Note that these investments are held by me directly or in trust where I am either grantor, trustee, or beneficiary.

2. Do you currently hold any investments that restrict your ability to divest of the holding (e.g., hedge funds, private equity holdings, stock options, other plans that do not allow divestiture or trust arrangements that cannot be exited)?

---

[1] PLEASE NOTE:  This checklist contains broad parameters that may be used as one helpful tool in an initial vetting process.  If a potential candidate answers "yes" to any of these questions, it does NOT necessarily mean they have unalterable conflicts and cannot be hired to work for Treasury.  It only means that an ethics official should be consulted concerning the possibility of a conflict.

JA381                                    25-cv-00430_DMD_UST_0045

In addition to GTM Fund and my stock options in Cloud Software Group described above, I am a minority shareholder or LP – with no control or discretion – in the following private investments which would also be challenging to divest:

Private Equity
- ██████ commitment to Vista Capital Solution Fund LP (Private Credit Fund)
- ████████ investment in KKR Private Equity Conglomerate LLC (Private Equity)

Private Credit
- ██████ investment in Blackstone Private Credit (Private Credit Fund)
- ██████ investment in Apollo Debt Solutions (Private Credit Fund)

Private Real Estate
- ██████ investment in Blackstone Private Real Estate Investment Trust
- ██████ commitment to Bridge Workforce and Affordable Housing II
- ██████ investment in Starwood Private Real Estate Investment Trust

Hedge Funds
- ██████ investment in Millennium
- ██████ investment in Schonfeld Fundamental Equity
- ██████ investment in The Children's Investment Fund

Note that these investments are held by me directly or in trust where I am either grantor, trustee, or beneficiary.

3. Do you (or your spouse or minor child) currently own or are you invested in any financial business or business that you would be unable or unwilling to divest?

See responses above.

4. Were you employed by or a consultant to a financial services entity the past year?

I have a consulting contract with Elliott Investment Management – an alternative investment manager – to provide advice regarding software/technology investments.

5. Does your current employment, or did your employment within the last year, result in the representation of any financial services firms?

No

6. (If applicable) Does your spouse and/or dependent child work for a financial institution; a financial services firm; or represent clients who do?

No

25-cv-00430_DMD_UST_0046

7. Does any other member of your household (adult children, significant other, and housemates) work for a company in the financial sector or represent clients in the financial sector (e.g., as a lawyer or accountant for J.P. Morgan Chase)?

   No

8. Do any close relatives work for a company that contracts with the financial sector or represent clients in the financial sector?

   No

9. Are you currently seeking a business, contractual, or other financial relationship (other than a routine commercial transaction) with an entity in the financial sector?

   No

10. Are you currently the party to any book contract or teaching or speaking agreement?

   No

11. Are you an active participant in any organization that has significant involvement with the financial sector?

   No

12. Are you a member of the board of directors of any organization?

   Yes.  In addition to being CEO of Cloud Software Group, I am a member of the company's board of directors.

**Portfolio Holdings**
As of: 01/10/2025

GICS Sector: Financials
GICS Industry: Software
GICS Industry: Aerospace & Defense

| Symbol | Name | Country | GICS Sector | GICS Industry | Value ($) |
|---|---|---|---|---|---|
| **GICS Sector: Financials** | | | | | |
| BLK | BlackRock Inc | United States of America | Financials | Capital Markets | |
| BRKB | Berkshire Hathaway Inc | United States of America | Financials | Financial Services | |
| AIG | American International Group Inc | United States of America | Financials | Insurance | |
| JPM | JPMorgan Chase & Co | United States of America | Financials | Banks | |
| AON | Aon PLC | Ireland; Republic of | Financials | Insurance | |
| BAC | Bank of America Corp | United States of America | Financials | Banks | |
| AMP | Ameriprise Financial Inc | United States of America | Financials | Capital Markets | |
| COF | Capital One Financial Corp | United States of America | Financials | Consumer Finance | |
| V | Visa Inc | United States of America | Financials | Financial Services | |
| MA | Mastercard Inc | United States of America | Financials | Financial Services | |
| PGR | Progressive Corp | United States of America | Financials | Insurance | |
| GS | Goldman Sachs Group Inc | United States of America | Financials | Capital Markets | |
| PNC | PNC Financial Services Group Inc | United States of America | Financials | Banks | |
| USB | US Bancorp | United States of America | Financials | Banks | |
| BX | Blackstone Inc | United States of America | Financials | Capital Markets | |
| AJG | Arthur J. Gallagher & Co. | United States of America | Financials | Insurance | |
| MUFG | Mitsubishi UFJ Financial Group Inc | Japan | Financials | Banks | |
| MCO | Moody's Corp | United States of America | Financials | Capital Markets | |
| ICE | Intercontinental Exchange Inc | United States of America | Financials | Capital Markets | |
| AXP | American Express Co | United States of America | Financials | Consumer Finance | |
| CFR | Cullen/Frost Bankers Inc | United States of America | Financials | Banks | |
| CBOE | Cboe Global Markets Inc | United States of America | Financials | Capital Markets | |
| TRV | Travelers Companies Inc | United States of America | Financials | Insurance | |
| CBSH | Commerce Bancshares Inc | United States of America | Financials | Banks | |
| SPGI | S&P Global Inc | United States of America | Financials | Capital Markets | |
| MS | Morgan Stanley | United States of America | Financials | Capital Markets | |
| AFL | Aflac Inc | United States of America | Financials | Insurance | |
| BRO | Brown & Brown Inc | United States of America | Financials | Insurance | |
| RJF | Raymond James Financial Inc | United States of America | Financials | Capital Markets | |
| WFC | Wells Fargo & Co | United States of America | Financials | Banks | |
| CMWAY | Commonwealth Bank of Australia | Australia | Financials | Banks | |
| HSBC | HSBC Holdings PLC | United Kingdom | Financials | Banks | |
| UNCRY | UniCredit SpA | Italy | Financials | Banks | |
| MURGY | Muenchener Rueckversicherungs-Gesellschaft in Muenchen AG | Germany | Financials | Insurance | |
| ISNPY | Intesa Sanpaolo SpA | Italy | Financials | Banks | |
| SAN | Banco Santander SA | Spain | Financials | Banks | |
| UBS | UBS Group AG | Switzerland | Financials | Capital Markets | |
| TGOPY | 3i Group PLC | United Kingdom | Financials | Capital Markets | |
| MFG | Mizuho Financial Group Inc | Japan | Financials | Banks | |
| AXAHY | AXA SA | France | Financials | Insurance | |
| TKOMY | Tokio Marine Holdings Inc | Japan | Financials | Insurance | |
| SCHW | Charles Schwab Corp | United States of America | Financials | Capital Markets | |
| NABZY | National Australia Bank Ltd | Australia | Financials | Banks | |
| DBSDY | DBS Group Holdings Ltd | Singapore | Financials | Banks | |
| BBVA | Banco Bilbao Vizcaya Argentaria SA | Spain | Financials | Banks | |
| ING | ING Groep NV | Netherlands | Financials | Banks | |
| AAGIY | AIA Group Ltd | Hong Kong | Financials | Insurance | |
| ANZGY | ANZ Group Holdings Ltd | Australia | Financials | Banks | |
| ALIZY | Allianz SE | Germany | Financials | Insurance | |
| MQBKY | Macquarie Group Ltd | Australia | Financials | Capital Markets | |
| DB | Deutsche Bank AG | Germany | Financials | Capital Markets | |
| EBKDY | Erste Group Bank AG | Austria | Financials | Banks | |
| NRDBY | Nordea Bank Abp | Finland | Financials | Banks | |
| MSADY | MS&AD Insurance Group Holdings Inc | Japan | Financials | Insurance | |
| IX | ORIX Corp | Japan | Financials | Financial Services | |
| HVRRY | Hannover Rueck SE | Germany | Financials | Insurance | |
| SCBFY | Standard Chartered PLC | United Kingdom | Financials | Banks | |
| SWDBY | Swedbank AB | Sweden | Financials | Banks | |
| ZURVY | Zurich Insurance Group AG | Switzerland | Financials | Insurance | |
| ADYEY | Adyen NV | Netherlands | Financials | Financial Services | |
| JBAXY | Julius Baer Gruppe AG | Switzerland | Financials | Capital Markets | |
| SVNLY | Svenska Handelsbanken AB | Sweden | Financials | Banks | |
| SMFG | Sumitomo Mitsui Financial Group Inc | Japan | Financials | Banks | |
| JPXGY | Japan Exchange Group Inc | Japan | Financials | Capital Markets | |
| DNBBY | Dnb Bank ASA | Norway | Financials | Banks | |
| KBCSY | Kbc Groep NV | Belgium | Financials | Banks | |
| MDIBY | Mediobanca Banca di Credito Finanziario SpA | Italy | Financials | Banks | |
| MMC | Marsh & McLennan Companies Inc | United States of America | Financials | Insurance | |

25-cv-00430_DMD_UST_0048

**Portfolio Holdings**
As of: 01/10/2025

**GICS Sector: Financials**
**GICS Industry: Software**
**GICS Industry: Aerospace & Defense**

| Symbol | Name | Country | GICS Sector | GICS Industry | Value ($) |
|--------|------|---------|-------------|---------------|-----------|

**GICS Industry: Software**

| Symbol | Name | Country | GICS Sector | GICS Industry | Value ($) |
|--------|------|---------|-------------|---------------|-----------|
| MSFT | Microsoft Corp | United States of America | Information Technology | Software | |
| ORCL | Oracle Corp | United States of America | Information Technology | Software | |
| INTU | Intuit Inc | United States of America | Information Technology | Software | |
| ADBE | Adobe Inc | United States of America | Information Technology | Software | |
| CRM | Salesforce Inc | United States of America | Information Technology | Software | |
| ANSS | ANSYS Inc | United States of America | Information Technology | Software | |
| NOW | ServiceNow Inc | United States of America | Information Technology | Software | |
| SAP | SAP SE | Germany | Information Technology | Software | |
| ROP | Roper Technologies Inc | United States of America | Information Technology | Software | |
| PANW | Palo Alto Networks Inc | United States of America | Information Technology | Software | |
| ADSK | Autodesk Inc | United States of America | Information Technology | Software | |

**GICS Industry: Aerospace & Defense**

| Symbol | Name | Country | GICS Sector | GICS Industry | Value ($) |
|--------|------|---------|-------------|---------------|-----------|
| GE | General Electric Co | United States of America | Industrials | Aerospace & Defense | |
| GD | General Dynamics Corp | United States of America | Industrials | Aerospace & Defense | |
| LMT | Lockheed Martin Corp | United States of America | Industrials | Aerospace & Defense | |
| TDG | TransDigm Group Inc | United States of America | Industrials | Aerospace & Defense | |
| BA | Boeing Co | United States of America | Industrials | Aerospace & Defense | |
| NOC | Northrop Grumman Corp | United States of America | Industrials | Aerospace & Defense | |
| RTX | RTX Corp | United States of America | Industrials | Aerospace & Defense | |

25-cv-00430_DMD_UST_0049

## CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

AN AGREEMENT BETWEEN      Thomas Harry Krause Jr.      AND THE UNITED STATES

*(Name of Individual - Printed or typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 13526, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in sections 1.1, 1.2, 1.3 and 1.4(e) of Executive Order 13526, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of sections 641, 793, 794, 798, *952 and 1924, title 18, United States Code; *the provisions of section 783(b), title 50, United States Code; and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of sections 793 and/or 1924, title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

*(Continue on reverse.)*

NSN 7540-01-280-5499
Previous edition not usable.

STANDARD FORM 312 (Rev. 7-2013)
Prescribed by ODNI
32 CFR PART 2001.80   E.O. 13526

JA386

25-cv-00430_DMD_UST_0050

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 389 of 582

11. These restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by Executive Order No. 13526 (75 Fed. Reg. 707), or any successor thereto section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); section 2302(b) (8) of title 5, United States Code, as amended by the Whistleblower Protection Act of 1989 (governing disclosures of illegality, waste, fraud , abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents); sections 7(c) and 8H of the Inspector General Act of 1978 (5 U.S.C. App.) (relating to disclosures to an inspector general, the inspectors general of the Intelligence Community, and Congress); section 103H(g)(3) of the National Security Act of 1947 (50 U.S.C. 403-3h(g)(3) (relating to disclosures to the inspector general of the Intelligence Community); sections 17(d)(5) and 17(e)(3) of the Central Intelligence Agency Act of 1949 (50 U.S.C. 403q(d)(5) and 403q(e)(3)) (relating to disclosures to the Inspector General of the Central Intelligence Agency and Congress); and the statutes which protect against disclosure that may compromise the national security, including sections 641, 793, 794, 798, *952 and 1924 of title 18, United States Code, and *section 4 (b) of the Subversive Activities Control Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions, and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling.

12. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this agreement and its implementing regulation (32 CFR Part 2001 , section 2001 .80(d)(2) ) so that I may read them at this time, if I so choose.

* NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

| SIGNATURE | DATE 1/22/25 | SOCIAL SECURITY NUMBER *(See Notice below)* ███ |

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE: NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) *(Type or print)*
DEPARTMENT OF TREASURY
1500 PENNSYLVANIA AVE, NW
WASHINGTON, DC

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |
| SIGNATURE ███ DATE 1/22/25 | SIGNATURE ███ DATE 1/22/25 |
| NAME AND ADDRESS *(Type or print)* DEPARTMENT OF TREASURY 1500 PENNSYLVANIA AVE, NW WASHINGTON, DC | NAME AND ADDRESS *(Type or print)* DEPARTMENT OF TREASURY 1500 PENNSYLVANIA AVE, NW WASHINGTON, DC |

### SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |

NAME OF WITNESS *(Type or print)*    SIGNATURE OF WITNESS

**NOTICE:** The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Number (SSN) is Public Law 104-134 (April 26, 1996). Your SSN will be used to identify you precisely when it is necessary to certify that you have access to the information indicated above or to determine that your access to the information indicated has been terminated. Furnishing your Social Security Number, as well as other data, is voluntary, but failure to do so may delay or prevent you being granted access to classified information.

STANDARD FORM 312 BACK (Rev. 7-2013)

# Department of the Treasury
## Contact Reporting Requirement Acknowledgment

Department of the Treasury and bureau employees are required to report <u>all contacts</u> with individuals of <u>any nationality,</u> either within or outside the scope of the employees' official activities, in which:

    *(1) Illegal or unauthorized access is sought to classified or otherwise sensitive information and technology.*

    *(2) The employee is concerned that he/she may be the target of actual or attempted exploitation by a foreign entity.*

    *(3) The employee has contact with known or suspected foreign intelligence officers from any country.*

The focus is on reporting questionable contacts by individuals of any nationality regardless of the status of relations between his or her foreign country (or third-country nationals) and the United States.

These reporting requirements are NOT intended to infringe upon the rights of Treasury/bureau employees' free association, but to reinforce their responsibility for safeguarding classified and sensitive information and technology.

By signing this form, the employee is acknowledging that he or she has been briefed on the Treasury Department contact reporting requirements and conditions warranting reporting. Contact reports may be submitted in person and/or in writing to their Treasury/bureau security office. That office shall evaluate the employee's report and notify Treasury's Office of Counterintelligence for appropriate counterintelligence information purposes.

Employee Name **Thomas Harry Krause** *Jr.*

Signature _____     Date **1/22/25**

The completed form will be filed in the individual's Treasury/bureau security file and a copy thereof may be provided to the individual.

TD F 15-03.4 (7/11)

1

25-cv-00430_DMD_UST_0053

Department of the Treasury
## SECURITY ORIENTATION ACKNOWLEDGMENT

| Name of Attendee | Last, | First, | Middle Initial (Type or print in ink) |
|---|---|---|---|
| | Krause | Thomas | H |

| Date of Briefing | | | |
|---|---|---|---|
| 1/22/25 | ☒ Initial | ☐ Refresher | |

This security orientation program highlights the requirements and procedures prescribed by Executive Order for safeguarding classified national security information and applicable Treasury regulations for sensitive but unclassified information. Briefing programs on handling classified information are required of all U.S. Government agencies and departments that originate or process such information. This form documents subject areas presented to the above-named individual including, but not necessarily limited to:

General background information: classification categories (Top Secret, Secret and Confidential); original and derivative classification; classification authority; identification and markings; downgrading and declassification; safeguarding and storage; general restrictions on access; Need-to-Know; dissemination, accountability and transmittal; reproduction; destruction; security violations; loss and/or possible compromise and sensitive but unclassified information.

This form may be supplemented to include office or/bureau-specific security requirements and procedures under "remarks".

REMARKS:

ACKNOWLEDGMENT: I hereby acknowledge that I have been provided a security orientation program in the areas identified above. I understand that it is my responsibility to become familiar with Treasury security requirements and procedures for safeguarding both classified national security and sensitive but unclassified information.

| Signature of Attendee | Office and Location | Date |
|---|---|---|
| | Main Treasury | 1/22/25 |

| Signature of Briefing Official | | Date |
|---|---|---|
| ▮▮▮▮▮▮ | O1A | 1/22/2025 |

TD F 15-05.1 (Rev. 06/05) Previous editions obsolete.

25-cv-00430_DMD_UST_0055

 **Bureau of the Fiscal Service** | Payment Process Engagement - Kansas City Site Visit
January 2025

| MEETING | Payment Process Engagement – Kansas City Site Visit |
|---|---|
| DATE/TIME | Tuesday January 28 – Thursday January 30, 2025 |
| LOCATION | **Fiscal Service Kansas City:** 4241 NE 34th Street Kansas City, MO 64117<br>**Point of Contact:** Joe Gioeli, ███████ |
| PARTICIPANTS | Fiscal Service, Federal Reserve, SAIC, and Treasury organization personnel are participating. Final list of names to be added next week. |
| PURPOSE | As part of the ongoing Payment Process Engagement, conduct in-person technical and user deep dive sessions with applicable support teams. This agenda is designed to provide some general structure so that we can plan accordingly but can and will be **adjusted as needed** to ensure we address questions and associated conversations. |

| TIME | TOPIC | PARTICIPANTS(S) | NOTES |
|---|---|---|---|
| *Monday January 27, 2025– All Times CT* | | | |
| *Travel to Kansas City* | | | |
| *Tuesday January 28, 2025 – All Times CT* | | | |
| 9:00am CT | Arrive at Fiscal Service KC facility | | Call Joe Gioeli upon arrival (Backup: Susan Robinson) |
| 9:05am – 9:30am | **Tom & Joe Daily Sync (Tom)**<br>**IT Appointment for BFS GFE (Marko)** | Fiscal Service, Treasury | |
| 9:30am-10:00am | **Meet and Greet with BFS Payments team** | Fiscal Service, Treasury | |
| 10:00am-10:30am | **Tour of Check Printing Operations** | Fiscal Service, Treasury | |
| 10:30am-12:00pm | **SPS Deep Dive and Demo** | Fiscal Service, Treasury, SAIC | |
| 12:00pm-1:00pm | *Lunch Break (to be ordered in; please use supplied Order Form)* | | |
| 1:00pm-2:30pm | **PAM Deep Dive and Demo** | Fiscal Service, Treasury | |
| 2:30pm-3:30pm | **ASAP Deep Dive and Demo** | Fiscal Service, Treasury | |
| 3:30pm-4:00pm | **Next Steps & Closing** | Fiscal Service, Treasury | |
| *Wednesday, January 29, 2025 – All Times CT* | | | |
| 9:00am CT | Arrive at Fiscal Service KC facility | | Call Joe Gioeli upon arrival (Backup: Susan Robinson) |
| 9:05am-9:30am | **Meet and Greet with FRB leadership team** | Fiscal Service, Treasury, FRB | |
| 9:30am-10:30am | **PAM Product Team** – technical discussion | Fiscal Service, Treasury, FRB | |
| 10:30am-10:45am | *Break* | | |
| 10:45am-11:45am | **ASAP Product Team –** technical discussion | Fiscal Service, Treasury, FRB | |
| 11:45am-12:00pm | **Next Steps & Closing** | Fiscal Service, Treasury, FRB | |
| 12:00pm-1:30pm | *Lunch Break* | | |
| 1:30pm-3:30pm | **Additional Follow ups/Discussions as needed;** Plan for Thursday if needed | Fiscal Service, Treasury | |
| 3:30pm-4:00pm | **Next Steps & Closing** | Fiscal Service, Treasury | |
| *Thursday, January 30, 2025 – All Times CT* | | | |
| *Buffer for any remaining necessary conversations* | | | |

 **US Department of the Treasury | Fiscal Service |** Payment Process Engagement Plan
January 24, 2025

Fiscal Service is supporting the USDS/DOGE team during their 4–6-week engagement to understand payment processes and opportunities to advance payment integrity and fraud reduction goals.

Given the Fiscal Service's authorities and role in enabling federal government financial operations, we must engage in a way that is secure and minimizes the likelihood of disruptions to ensure daily operations occur seamlessly.  This is especially critical for those operations that support the facilitation of the 2025 tax season and the Debt Issuance Suspension Period. Disruptive impacts to technical operations, especially to payment systems such as the Payment Automation Manager (PAM) and Secure Payment System (SPS), could have catastrophic consequences that can range from debilitating U.S. economic security (and necessitating increases to the debt ceiling and defaults on U.S. Government financial obligations), endangering U.S. interests abroad, jeopardizing the delivery of lifeline payments to millions of constituents, and delaying or denying access to thousands of federal agency assets which would all erode public confidence. As such, ensuring operational excellence and resiliency remains the top priority for the Fiscal Service.

So that we can streamline communication, ensure clarity and alignment, and achieve the most optimal outcome for all parties, we have outlined our expectations for the duration of this engagement below.

## ENGAGEMENT SCOPE

**Objective**: Gain insight on money-in/money-out through the Fiscal Service payment systems while identifying efficiencies in the overall payment flow

**Timeframe:** 4-6 weeks

**Focus Area**: Payment Processing, to include Payment Automation Manager (PAM), Secure Payment System (SPS), and Automated Standard Application for Payments (ASAP)

**Deliverable**: Report to the Secretary of the Treasury outlining recommendations for greater efficiencies and potential improvements to the existing payment processes and associated technology and policies in support of payment integrity and fraud prevention.

**Key Points of Contact:**
- **Treasury Department**: Matt Garber, PDO Fiscal Assistant Secretary
- **Bureau of the Fiscal Service:** Joe Gioeli, Deputy Commissioner for Transformation and Modernization

## ENGAGEMENT PROCESS

- **Central Management and Coordination with Treasury**: Matt Garber will serve as the Departmental executive point of contact to provide policy insights, and oversight/guidance of the Fiscal Service engagement. Joe Gioeli will serve as the main point of contact for information related to Fiscal Service systems, organizational structure, and business processes.  Together, they will ensure Fiscal Service is being responsive within the bounds

25-cv-00430_DMD_UST_0057



**US Department of the Treasury | Fiscal Service** | Payment Process Engagement Plan
January 24, 2025

of the law, Treasury policy, and Fiscal Service security protocols. All requests will be prioritized, actioned as quickly as feasible, and centrally managed and tracked accordingly. Preferably, requests should be sent via email to joseph.gioeli@fiscal.treasury.gov.

- **Status Meetings**: A meeting cadence will be established for the duration of the effort for a minimum of at least once per week and will include Tom Krause, Matt Garber, Joe Gioeli and other relevant stakeholder parties to ensure requests are being addressed. Additionally, a daily standup will be established between Tom Krause and Joe Gioeli to ensure alignment on the prioritization of activities, share status, and to discuss mitigation of any challenges that arise. The frequency of this meeting series can be adjusted based on need.

- **Access to and Management of Pertinent Artifacts**: Access will be granted to pertinent artifacts via a shared folder hosted on the Treasury Enterprise Content Manager (ECM) and permissioned to only necessary individuals. Proper handling of artifacts consistent with their labelling is required. Code will be shared and controlled via an alternate method.

- **Access to and Management of In Scope Systems and Data**: Fiscal Service will provision and issue the designated technical team member with a Fiscal Service laptop (i.e., government furnished equipment (GFE)) during Day 1 (i.e., January 28) of the Week 2 Site Visit to Kansas City. This will accelerate your ability to obtain access to the in-scope systems and code repositories you are seeking while also providing the Fiscal Service with a greater level of assurance that our risk posture is being managed in accordance with our established security protocols and existing control architecture.

- **Adherence to Fiscal Service Security Control Requirements**: To adhere to the Fiscal Service's established security protocols and existing control architecture, below are our required actions (including those already completed as of 1/24/2025).

  1) *Vetting*: Fiscal Service confirmed with the Treasury Department Security office the (2) individuals requesting access have been properly vetted with signed Nondisclosure Agreements (NDAs) and confirmed their access to Treasury and Fiscal Service information.

  2) *Use of FS GFE*: USDS/DOGE confirmed that only (1) individual (i.e., the designated technical team member) requires access to Fiscal Service systems and data at this time. This designated individual will be provisioned to a Fiscal Service provided workstation. The Fiscal Service GFE must be connected to the Fiscal Service VPN network at all times while work is performed with this engagement.

  3) *Data Handling*: Fiscal Service will provide USDS/DOGE safeguarding and handling instructions of Fiscal Service data for the duration of this engagement. USDS/DOGE confirmed Fiscal Service data will not leave the workstation during this engagement and will only be reviewed by cleared and authorized Treasury personnel.

  4) *System Access*: USDS/DOGE will be provided access to in scope payment systems source code via a secure code repository. USDS/DOGE will be provided Development access to the in scope payment systems. Any recommended changes to the payments source code will be appropriately tested by security and change management controls per Fiscal Service processes and procedures.

25-cv-00430_DMD_UST_0058



**US Department of the Treasury | Fiscal Service |** Payment Process Engagement Plan
January 24, 2025

5) ***Payment Processing User Access***: USDS/DOGE requested to be granted "over the shoulder" access to monitor Fiscal Service personnel conducting payment processing roles, which was approved by Fiscal Service on 1/23/25. Any additional system level access (i.e. application end user access and sysadmin privileged access) will be provisioned according to Fiscal Service processes and procedures.

6) ***Attestation***: USDS/DOGE agreed to provide Fiscal Service an attestation statement (template to be provided by the Fiscal Service) at the end of the engagement that confirms:

   a. The provided Fiscal Service information has been properly destroyed.

   b. Confirmation that no known suspicious or unauthorized access to Fiscal Service provided GFE and data occurred during this engagement.

- **Review of Recommendations**: Fiscal Service will be provided the report deliverable, have the opportunity to clarify any technical or process inaccuracies, and provide any necessary policy feedback or context before finalization.

## ENGAGEMENT TIMELINE AND KEY ACTIVITIES

| Week 1<br>*Jan 21-24* | Week 2<br>*Jan 27-31* | Week 3<br>*Feb 3-7* | Week 4<br>*Feb 10-14* | Weeks 5-6<br>*Feb 17-28* |
|---|---|---|---|---|
| ✓ Introductory Meetings<br>✓ Establish Status Meeting(s)<br>✓ Establish shared folder on Treasury ECM | *Meetings in Kansas City, MO*<br>• Issue FS laptop to designated technical team member (1/28)<br>• Conduct technical deep dives and user deep dives | • Address follow-ups identified during deep dives as needed/feasible<br>• Develop report deliverable<br>*(Engagement team)* | • Continue development of report deliverable<br>• Address questions as needed/feasible<br>• Conduct review of recommendations<br>• Complete Attestation activities | • Submit final report |

25-cv-00430_DMD_UST_0059

**Preliminary Work Plan for IT Accesses**

GAO has found inconsistent reporting, lack of traceability, and need for improved controls with the Treasury's Cash Accounting Reporting System (CARS). (Link and summary below.) Mandating agencies (via Certifying Officers – COs) to use TAS / BETC for all payments at the time of payment certification as well as requiring COs to provide a short plain English reason why the payment is being requested would dramatically:

1) improve financial reporting auditability, accuracy and transparency
2) reduce the risk of improper payments
3) ensure all payments are supported by an appropriation, receipt, or other fund account

For background, TAS (Treasury Account Symbol) / BETC (Business Event Type Code) (Account Symbol (also known as the Treasury Account Symbol or TAS) | TFX: Treasury Financial Experience) is used to classify financial transactions across all federal government agencies and is the backbone for CARS (Central Accounting Reporting System) Central Accounting Reporting System.  Today, Treasury has three primary payments systems (PAM, ASAP, ITS.gov) that support payments on behalf of ~250 agencies. These payment systems (as well all other payment systems not managed by Treasury) feed into CARS. PAM is the most widely used. Within PAM, there are two types of payments (Type A and Type B). Type A is for high value, low volume and typically uses Fedwire. Type B is lower value, higher volume payments and typically uses ACH. We understand (but have not verified) that COs are required to input the TAS / BETC for every payment except for Type B payments in PAM. As a result, a significant percentage of payments are re-classified by agency CFO organizations in CARS well AFTER payments have been certified and processed. In fact, CARS operators use "default" accounts because they cannot tie many of the payments that BFS processes to an appropriation, receipt, or other fund account at the time of the payment.

System access as well as on-going discussions with subject matter experts are critical to understanding and verifying how these payment and accounting systems work.  Without this, common sense recommendations such as this one as well as detailed plans to implement these recommendations are not possible. My discussions with both the disbursement team in Kansas City as well as the CARS team in Parkersburg, WV suggest this mandate would be widely welcomed by the operating teams at BFS. I would also submit that OMB and the White House would strongly support this mandate. The mandate would require a code change to PAM whereby a submitted payment file would be sent back to the CO prior to processing if the TAS/BETC and the reason for payment are not filled out. Based on initial discussions with the PAM technical team (from the FED KC office), this is a very modest code change and can be executed quickly.

25-cv-00430_DMD_UST_0060

| | |
|---|---|
| **From:** | Katz, Daniel |
| **To:** | Garber, Matthew; Krause, Tom; York, John; Pilkerton, Christopher; Froman, Eric; Sonfield, Brian; Briskin, Michael; Sessions, William; Arcadi, Antony; Gioeli III, Joseph; Elez, Marko; Robinson, Vona S. |
| **Cc:** | Marko Elez; Cheng, Lillian L. |
| **Subject:** | RE: IT Check In Follow Up |
| **Date:** | Monday, February 3, 2025 6:42:53 PM |

Great, thanks for the update Matt.

Dan Katz

M: ████████████

---

**From:** Garber, Matthew <Matthew.Garber2@treasury.gov>
**Sent:** Monday, February 3, 2025 4:18 PM
**To:** Katz, Daniel <Daniel.Katz@treasury.gov>; Krause, Tom <Thomas.Krause@treasury.gov>; York, John <John.York@treasury.gov>; Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; Froman, Eric <Eric.Froman@treasury.gov>; Sonfield, Brian <Brian.Sonfield@treasury.gov>; Briskin, Michael <Michael.Briskin@treasury.gov>; Sessions, William <William.Sessions@treasury.gov>; Arcadi, Antony <Tony.arcadi@Treasury.gov>; Gioeli III, Joseph <joseph.gioeli@fiscal.treasury.gov>; Elez, Marko <Marko.Elez@treasury.gov>; Robinson, Vona S. <Susan.Robinson@fiscal.treasury.gov>
**Cc:** Marko Elez <marko.elez@fiscal.treasury.gov>; Cheng, Lillian L. <lillian.cheng@fiscal.treasury.gov>
**Subject:** IT Check In Follow Up

Thanks everyone for getting together this afternoon.  Attached is the spreadsheet we reviewed with the access levels updated based on our conversation.

For the items that Fiscal can implement independently we will get moving immediately, and Marko should see read-only soon.

For the items the Fed needs to implement we're working with the lawyers on the language now. Good conversations with our counterparts, so I do not currently expect any issues, although it may be tomorrow before it's finalized.

Thanks,

Matt

| SYSTEM | ORIGINAL ACCESS REQUEST | ACCESS GRANTED AS OF FEB. 1 | RECOMMENDED CHANGE(S) TO CURRENT (FEB 1) ACCESS LEVELS | MITIGATION(S) AND/OR ADDITIONAL CONTROL(S) | Implementor |
|---|---|---|---|---|---|
| PAM | PAM Source Code | Full access in cordoned off (i.e., not production) repository | No recommended change | Requires joint deployment for all environments with the Fiscal Service/Federal Reserve | Completed |
| | PAM Production Database Administrator | Read-only access in production | Read-only access in production with specific time windows to avoid production outages (would jointly work database changes through lower environments) | Implement and adhere to Fiscal Service's recommended change | Fiscal Service |
| | ~~PAM Production Developer~~ | ~~None~~ | ~~Revisit with Disbursing and Debt Management (DDM)~~ | ~~Implement and adhere to Fiscal Service's recommended change~~ | N/A |
| | PAM Production Driver | None *(approvals in process: submitted required forms to DDM)* | Grant Read-Only access | Implement and adhere to Fiscal Service's recommended change | Fiscal Service |
| | Access to PAM file system | Read-only access | No recommended change | | Fiscal Service |
| SPS | SPS Source Code | Full access in cordoned off (i.e., not production) repository | No recommended change | Requires joint deployment for all environments with the Fiscal Service/Federal Reserve | Completed |
| | SPS Production Database Administrator | Read-only access in production | Read-only access in production with specific time windows to avoid production outages (would jointly work database changes through lower environments) | Implement and adhere to Fiscal Service's recommended change | Fiscal Service |
| | SPS Production Administrator (UI SPSAdmin) | None *(approvals in process: submitted required forms to DDM)* | ISS will work with the SPS team to determine appropriate level of access (e.g., read-only) | Implement and adhere to Fiscal Service's recommended change(s) | Fiscal Service |
| ASAP | ASAP Source Code | Full access in cordoned off (i.e., not production) repository | No recommended change | Requires joint deployment for all environments with the Fiscal Service/Federal Reserve | Completed |
| | ASAP Database Administrator | None | Read-only access in production with specific time windows to avoid production outages (would jointly work database changes through lower environments). | Implement and adhere to Fiscal Service's recommended change(s) | Federal Reserve |
| CARS | CARS Database Administrator | None *(approvals in process: submitted request for Read-Only to Federal Reserve)* | Read-only access in production with specific time windows to avoid production outages (would jointly work database changes through lower environments). | Implement and adhere to Fiscal Service's recommended change(s) | Federal Reserve |
| | CARS SysAdmin | Will need to better understand objective | Revisit with Fiscal Accounting | Consider CARS Auditor Role | Fiscal Service |
| ITS.gov | ITS.gov Operator | None | Revisit with Disbursing and Debt Management (DDM) | Identifying more appropriate read-only role | |
| | ITS.gov Database Administrator | None | Read-only access in production with specific time windows to avoid production outages (would jointly work database changes through lower environments). | Implement and adhere to Fiscal Service's recommended change | Federal Reserve |

25-cv-00430_DMD_UST_0062

| **From:** | Matthew.Garber2@treasury.gov |
|---|---|
| **To:** | Timothy E. Gribben |
| **Cc:** | Matthew J. Miller; Susan Robinson; Lillian Cheng; Joseph Gioeli III; Nathaniel Reboja |
| **Subject:** | Confirmation to Proceed |
| **Date:** | Sunday, January 26, 2025 5:42:08 PM |

This message was sent securely using Zix®

Tim,

Please consider this note your approval/direction to move forward with the process outlined below.

Thanks to the DDM and ISS teams for actioning against the request over the weekend.

Matt

**From:** Katz, Daniel <Daniel.Katz@treasury.gov>
**Sent:** Sunday, January 26, 2025 6:34 PM
**To:** Garber, Matthew <Matthew.Garber2@treasury.gov>

Thanks Matt for actioning this so quickly. The below process looks good and appropriate to me. ██
███████████████████████████████████████████████████████
████████

Appreciate the work over the weekend as well.

Dan Katz

████████████

**From:** Garber, Matthew <Matthew.Garber2@treasury.gov>
**Sent:** Sunday, January 26, 2025 4:31:02 PM
**To:** Katz, Daniel <Daniel.Katz@treasury.gov>

Dan,

We've successfully set up the technical and process adjustments at Fiscal to support this request within the appropriate bounds.  A reminder of the process we discussed and will execute against beginning Monday:

- **Fiscal will intercept USAID payments files prior to ingestion into our PAM/SPS systems** *(this is in place now and can begin immediately)*
  - We developed a process to intercept the file, and additional flags to ensure we catch all USAID payment requests through our systems
  - Fiscal will manually pull an unredacted and unmodified copy to share with State officials
  - Individual ITS payment requests will be flagged and shared for review as needed

- ○ <u>NOTE</u>: Fiscal will not provide any preliminary review or determination on the payments, and will not edit or modify the file at any point in this process
- **Fiscal will deliver the USAID payment file to the designated State officials for review**
  - ○ Fiscal has set up a secure portal where the designated officials will be able to access the files *(this will have encryption and MFA, and has completed third party pen testing)*
  - ○ We developed a user guide and instructions to support State officials in using the portal
    - ■ We can provide additional technical support as needed
  - ○ We will deliver the file once-a-day according to the normal USAID payment schedule
- **State officials will review and provide a determination to Fiscal on whether or not to release the file into our normal payment processes**
  - ○ We will provide a template for State officials to provide the determination back to Fiscal
  - ○ Files that are determined by State as able to move forward will be released by Fiscal into PAM/SPS or ITS systems
  - ○ Files that are determined by State as unable to move forward will be returned to USAID for correction
    - ■ *State will work directly with USAID to provide any necessary corrections prior to resubmission.*
- **Payment files that are cleared by State and released into our normal payment processes will continue to be certified by USAID certifying officers prior to payment**


While we will begin intercepting the USAID files prior to ingestion immediately on Monday, we will not transmit files to State until **we receive confirmation from the appropriate security officers (likely in the CIO office) that:**

- ○ the individuals at State accessing and reviewing the information have the appropriate clearances, etc
- ○ the necessary data security methods are in place at State and those standards have been communicated and agreed to by the individuals accessing the files
- ○ <u>NOTE</u>: We are still working to connect with the appropriate IT/Security/Technical individuals at State, which we believe will happen as soon as Monday morning.

<u>Additional note:</u>
- As mentioned, these files are mixed and contain a variety of payments.  We recommend State ensures they can review these files and provide a determination <u>same-day</u> to avoid any unintended downstream issues.


Please confirm we are still good to execute this plan beginning Monday.  Happy to hop on a call if needed.

Thanks,

Matt

25-cv-00430_DMD_UST_0065

| | |
|---|---|
| **From:** | Marko.Elez@treasury.gov |
| **To:** | Marko Elez |
| **Subject:** | Fw: 4 Additional Accounts Identified for State Review |
| **Date:** | Friday, January 31, 2025 12:15:38 PM |

**This message was sent securely using Zix®**

---

**From:** Krause, Tom
**Sent:** Friday, January 31, 2025 11:14:30 AM
**To:** Elez, Marko ; Robinson, Vona S.
**Subject:** Fw: 4 Additional Accounts Identified for State Review

---

**From:** Katz, Daniel
**Sent:** Thursday, January 30, 2025 9:12 AM
**To:** Krause, Tom ; Garber, Matthew ; Froman, Eric ; Sonfield, Brian
**Cc:** Pilkerton, Christopher
**Subject:** RE: 4 Additional Accounts Identified for State Review
Given the below analysis, the Secretary is comfortable proceeding as proposed. Thank you.
Dan Katz
M█████████████

**From:** Krause, Tom
**Sent:** Thursday, January 30, 2025 8:22 AM
**To:** Garber, Matthew ; Froman, Eric ; Katz, Daniel ; Sonfield, Brian
**Cc:** Pilkerton, Christopher
**Subject:** Re: 4 Additional Accounts Identified for State Review
Ok. We will proceed on preparing these pending Dan's confirmation from the Secretary.

**From:** Garber, Matthew <Matthew.Garber2@treasury.gov>
**Sent:** Wednesday, January 29, 2025 8:31 PM
**To:** Krause, Tom <Thomas.Krause@treasury.gov>; Froman, Eric <Eric.Froman@treasury.gov>; Katz, Daniel <Daniel.Katz@treasury.gov>; Sonfield, Brian <Brian.Sonfield@treasury.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>
**Subject:** Re: 4 Additional Accounts Identified for State Review

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
Thanks

---

**From:** Krause, Tom <Thomas.Krause@treasury.gov>
**Date:** January 29, 2025 at 9:22:17 PM EST
**To:** Garber, Matthew <Matthew.Garber2@treasury.gov>, Froman, Eric

<Eric.Froman@treasury.gov>, Katz, Daniel <Daniel.Katz@treasury.gov>, Sonfield, Brian
<Brian.Sonfield@treasury.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>
**Subject:** Re: 4 Additional Accounts Identified for State Review
Matt -

███████████████████████████████████████████
███████████████████████████████████████

---

**From:** Garber, Matthew <Matthew.Garber2@treasury.gov>
**Sent:** Wednesday, January 29, 2025 8:16 PM
**To:** Froman, Eric <Eric.Froman@treasury.gov>; Krause, Tom <Thomas.Krause@treasury.gov>; Katz,
Daniel <Daniel.Katz@treasury.gov>; Sonfield, Brian <Brian.Sonfield@treasury.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>
**Subject:** Re: 4 Additional Accounts Identified for State Review

███████████████████████████████████     ███████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████

The team will have a better understanding of the file set up in the morning.

---

**From:** Froman, Eric <Eric.Froman@treasury.gov>
**Date:** January 29, 2025 at 9:05:10 PM EST
**To:** Krause, Tom <Thomas.Krause@treasury.gov>, Katz, Daniel <Daniel.Katz@treasury.gov>,
Sonfield, Brian <Brian.Sonfield@treasury.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>, Garber, Matthew
<Matthew.Garber2@treasury.gov>
**Subject:** Re: 4 Additional Accounts Identified for State Review

███████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████.
Adding Matt for thoughts on any operational issues.

---

**From:** Krause, Tom <Thomas.Krause@treasury.gov>
**Sent:** Wednesday, January 29, 2025 7:57 PM
**To:** Froman, Eric <Eric.Froman@treasury.gov>; Katz, Daniel <Daniel.Katz@treasury.gov>; Sonfield,
Brian <Brian.Sonfield@treasury.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>
**Subject:** Re: 4 Additional Accounts Identified for State Review
Correct. Same process.

---

**From:** Froman, Eric <Eric.Froman@treasury.gov>
**Sent:** Wednesday, January 29, 2025 6:39 PM

**To:** Katz, Daniel <Daniel.Katz@treasury.gov>; Sonfield, Brian <Brian.Sonfield@treasury.gov>
**Cc:** Krause, Tom <Thomas.Krause@treasury.gov>; Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>
**Subject:** Re: 4 Additional Accounts Identified for State Review
We're still assuming that the paying agencies would give us the relevant instructions before they certify the payment, right? That is, this would be part of the early stages of the payment process?

---

**From:** Katz, Daniel <Daniel.Katz@treasury.gov>
**Sent:** Wednesday, January 29, 2025 6:39:18 PM
**To:** Froman, Eric <Eric.Froman@treasury.gov>; Sonfield, Brian <Brian.Sonfield@treasury.gov>
**Cc:** Krause, Tom <Thomas.Krause@treasury.gov>; Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>
**Subject:** FW: 4 Additional Accounts Identified for State Review
Hi Eric and Brian –
See below from Tom. He is proposing to utilize the same process we have put together with the State Department with respect to USAID payments that may be implicated by the Foreign Aid EO for four additional accounts, as explained below. ████████████████████████████
████████████████████████████████████████
Thank you.
Dan Katz
M: ████████████

---

**From:** Krause, Tom <Thomas.Krause@treasury.gov>
**Sent:** Wednesday, January 29, 2025 6:17 PM
**To:** Katz, Daniel <Daniel.Katz@treasury.gov>
**Subject:** 4 Additional Accounts Identified for State Review
Dan –
There are 4 additional accounts where I would like to implement the same process we used for USAID here at BFS. These four have been identified as being subject to the foreign aid EO. In these 4 cases, we would send any payment requests across our three main systems to our State designee(s) for sign off before putting through for processing. This will ensure we are not making payments that directly violate the EO. I would like Secretary Bessent's go ahead to proceed on these four. I can call with additional info.
Regards,
Tom

Millennium Challenge Corporation (About MCC)
Agency ID: ████
TAS: ████████
HHS – Refugee and Entrant Assistance, Admin for Children and Families (2 subaccounts in HHS)
Agency ID: ████
TAS: ████████████
HHS – Gifts and Donations Office of Refugee Resettlement, Admin for Children and Families
Agency ID: ████
TAS: ██████

## *85 FR 11776*

Vol. 85, No. 039, Thursday, February 27, 2020

Notices

**Reporter**

85 FR 11776 *

*Federal Register* > *2020* > *February* > *Thursday, February 27, 2020* > *Notices* > *Bureau of the Fiscal Service, Department of the Treasury.*

**Title: Privacy Act of 1974; System of Records**

**Action:**          Notice of Systems of Records.

**Agency**

Bureau of the Fiscal Service, Department of the Treasury.

**Synopsis**

**SUMMARY:** In accordance with the requirements of the Privacy Act of 1974, the Department of the Treasury, Bureau of the Fiscal Service is publishing its inventory of Privacy Act systems of records.

**Text**

 **[\*11776]**

**SUPPLEMENTARY INFORMATION:**

In accordance with the Privacy Act of 1974, *5 U.S.C. 552a*, and the Office of Management and Budget (OMB), Circular No. A-108, the Department of the Treasury, Bureau of the Fiscal Service has completed a review of its Privacy Act systems of records notices to identify changes that will more accurately describe these records and is publishing an inventory of them.

On October 7, 2012, the Secretary of the Treasury issued Treasury Order 136-01, establishing within the Department of the Treasury ("Department") the Bureau of the Fiscal Service ("Fiscal Service"). The new bureau consolidated the bureaus formerly known as the Financial Management Service ("FMS") and the Bureau of the Public Debt ("BPD"). Treasury Order 136-01 was published in the **Federal Register** on May 24, 2013 (*78 FR 31629*). Fiscal Service

is consolidating both legacy bureau's systems of records into a new set of SORNs under the Fiscal Service name.[1]

In some instances, FMS and BPD's SORNs have been renumbered. In other cases, parts of the legacy bureaus' SORNs were combined into one or more SORNs. No SORN was rescinded in its entirety.

Fiscal Service's SORNs are derived as follows:

Systems of records notice .001 (Administrative Records) is derived from FMS system of records notice .001 (Administrative Records) and BPD system of records notice .001 (Human Resources and Administrative Records).

System of records notice .002 (Payment Records) is derived from FMS system of records notice .002 (Payment Records—Treasury/FMS).

System of records notice .003 (Claims and Inquiry Records on Treasury Checks, and International Claimants) is derived from FMS system of records notice .003 (Claims and Inquiry Records on Treasury Checks, and International Claimants).

System of records notice .004 (Education and Training Records) is derived from BPD system of records notice .001 (Human Resources and Administrative Records) and FMS system of records notice .004 (Education and Training Records).

System of records notice .005 (Fiscal Service Personnel Records) is derived from BPD system of records notice .001 (Human Resources and Administrative Records) and FMS system of records notice .005 (FMS Personnel Records).

System of records notice .006 (Employee Assistance Records) is derived from BPD system of records notice .005 (Employee Assistance Records).

System of records notice .007 (Direct Deposit Enrollment Records) is derived from FMS system of records notice .006 (Direct Deposit Enrollment Records).

System of records notice .008 (Mailing List Records) is derived from FMS system of records notice .008 (Mailing List Records—Treasury/FMS).

System of records notice .009 (Delegations and Designations of Authority for Disbursing Functions) is derived from FMS system of records notice .010 (Records of Accountable Offices' Authority with Treasury).

---

[1]  BPD last published its systems of records in their entirety on August 17, 2011, at **76 FR 51128**. FMS last published its systems of records in their entirety on October 15, 2012, at 77 FR 62602. Since consolidation, Fiscal Service published two additional systems of records: (1) Do Not Pay Payment Verification Records, published on December 9, 2013, at 78 FR 73923; and (2) OneVoice Customer Relationship Management, published on September 19, 2014, at **79 FR 56433**.

System of records notice .010 (Pre-complaint Counseling and Complaint Activities) is derived from FMS system of records notice .012 (Pre-Complaint Counseling and Complaint Activities).

System of records notice .011 (Gifts to the United States) is derived from FMS system of records notice .013 (Gifts to the United States).

System of records notice .012 (Debt Collection Operations System) is derived from FMS system of records notice .014 (Debt Collection Operations System).

System of records notice .013 (Collections Records) is derived from FMS system of records notice .017 (Collections Records).

System of records notice .014 (United States Securities and Access) is derived from BPD systems of records notices .002 (United States Savings-Type Securities), .003 (United States Securities (Other than Savings-Type Securities)), and .008 (Retail Treasury Securities Access Application).

System of records notice .015 (Physical Access Control System) is derived from BPD system of records notice .004 (Controlled Access Security System).

System of records notice .016 (Health Unit Records) is derived from BPD system of records notice .006 (Health Service Program Records).

System of records notice .017 (Do Not Pay Payment Verification Records) is derived from Fiscal Service system of records notice .023 (Do Not Pay Payment Verification Records—Department of the Treasury/Bureau of the Fiscal Service).

System of records notice .018 (OneVoice Customer Relationship Management) is derived from Fiscal Service system of records notice .024 (OneVoice Customer Relationship Management—Department of the Treasury/Bureau of the Fiscal Service).

System of records notice .019 (Gifts to Reduce the Public Debt) is derived from BPD system of records notice .007 (Gifts to Reduce the Public Debt).

System of records notice .020 (U.S. Treasury Securities Fraud Information System) is derived from BPD system of records notice .009 (U.S. Treasury Securities Fraud Information System).

Fiscal Service is adding one routine use to all of the systems of records to share information with other federal agencies or federal entities as required by OMB Memorandum 17-12, "Preparing for and Responding to a Breach of Personally Identifiable Information," dated January 3, 2017, to assist Treasury/Fiscal Service in responding to a suspected or confirmed breach or prevent, minimize, or remedy the risk of harm to the requesters, Treasury/Fiscal Service, the Federal Government, or national security.

Fiscal Service also slightly expanded the scope of SORN .003 (Claims and Inquiry Records on Treasury Checks, and International Claimants) to cover payments that will be made pursuant to the Guam World War II Loyalty Recognition Act, *Public Law 114-328*, Title XVII. This change is consistent with the purpose of the SORN and many other payments made pursuant to similar statutes and requirements. **[*11777]**

In addition to the changes noted above, this notice updates some of the system of records notices, changes references in the systems of records notices, and makes other administrative changes to reflect the consolidation into the Fiscal Service, such as updating the procedures for gaining access to, or contesting the contents of, records in these systems of records.

This notice covers all systems of records adopted by the Fiscal Service as of February 27, 2020. The system notices are reprinted in their entirety following the Table of Contents.

**Ryan Law,**

*Deputy Assistant Secretary for Privacy, Transparency, & Records.*

## Table of Contents

Fiscal Service

TREASURY/Fiscal Service .001—Administrative Records

TREASURY/Fiscal Service .002—Payment Records

TREASURY/Fiscal Service .003—Claims and Inquiry Records on Treasury Checks, and International Claimants

TREASURY/Fiscal Service .004—Education and Training Records

TREASURY/Fiscal Service .005—Fiscal Service Personnel Records

TREASURY/Fiscal Service .006—Employee Assistance Records

TREASURY/Fiscal Service .007—Direct Deposit Enrollment Records

TREASURY/Fiscal Service .008—Mailing List Records

TREASURY/Fiscal Service .009—Delegations and Designations of Authority for Disbursing Functions

TREASURY/Fiscal Service .010—Pre-complaint Counseling and Complaint Activities

TREASURY/Fiscal Service .011—Gifts to the United States

TREASURY/Fiscal Service .012—Debt Collection Operations System

25-cv-00430_DMD_UST_0072

TREASURY/Fiscal Service .013—Collections Records

TREASURY/Fiscal Service .014—United States Securities and Access

TREASURY/Fiscal Service .015—Physical Access Control System

TREASURY/Fiscal Service .016—Health Unit Records

TREASURY/Fiscal Service .017—Do Not Pay Payment Verification Records

TREASURY/Fiscal Service .018—OneVoice Customer Relationship Management

TREASURY/Fiscal Service .019—Gifts to Reduce the Public Debt

TREASURY/Fiscal Service .020—U.S. Treasury Securities Fraud Information System

**Treasury/Fiscal Service .001**

**SYSTEM NAME AND NUMBER:**

Department of the Treasury, Bureau of the Fiscal Service .001—Administrative Records.

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**SYSTEM MANAGER(S):**

(1) For Retiree Mailing Records: Legislative and Public Affairs, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785; and

25-cv-00430_DMD_UST_0073

(2) For all other records: Assistant Commissioner, Office of Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 301*; *40 U.S.C. 581*.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained about Fiscal Service employees, their relocating family members, contract vendors, retirees and other individuals if: (1) The Fiscal Service has incurred obligations on their behalf; (2) the individual has requested mailings from Fiscal Service or other Treasury publications; (3) the individual has a parking permit issued by the Fiscal Service; (4) the individual has been involved in a motor vehicle accident that may involve the Fiscal Service; (5) the individual has engaged in certain transactions in connection with their employment with the Fiscal Service or (6) the individual is a vendor to the Fiscal Service.

The information contained in the records assists Fiscal Service in properly tracking its use of appropriated and non-appropriated funding to acquire goods and services received from contractors and other federal agencies, as well as non-payroll related reimbursements to employees. Fiscal Service maintains these records to ensure that financial records pertaining to procurement, financial management and relocation are maintained accurately. For those receiving mailings, information contained in the records assists Fiscal Service in establishing and maintaining a robust relationship with its customers, as well as maintaining its commitment to actively engage employees, even those who have retired from the Civil Service.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Fiscal Service employees (including current and former employees), family members of relocating Fiscal Service employees, contractors, vendors, sellers/purchasers associated with

25-cv-00430_DMD_UST_0074

residential transactions involving certain relocating Fiscal Service employees, and individuals requesting various Treasury publications.

## CATEGORIES OF RECORDS IN THE SYSTEM:

(1) Motor vehicle accident reports and parking permits;

(2) Procurement records relating to: (a) Contractors/vendors that are individuals; and (b) government purchase cardholders. These records may include, for example, the name, Social Security number and credit card number for employees who hold Government-use cards, as well as procurement integrity certificates;

(3) Financial management records that relate to government travel, vendor accounts, other employee reimbursements, interagency transactions, employee pay records, vendor registration data, purchase card accounts and transactions, and program payment agreements;

(4) Relocation records that relate to employee relocation travel authorizations, reimbursements, and related vendor invoices;

(5) Retiree mailing records that contain the name and address furnished by Fiscal Service retirees that request mailings of newsletters and other special mailings; and

(6) Distribution Lists of Individuals Requesting Various Treasury Publications.

## RECORD SOURCE CATEGORIES:

Information in this system of records is provided by Fiscal Service personnel, contractors/vendors or individuals requesting Treasury publications.

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

25-cv-00430_DMD_UST_0075

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) General Services Administration for driver's permits, parking permits, accident reports, and credentials;

(2) Government Accountability Office or Fiscal Service contractors for servicing the public on Treasury publications and managing subscriptions to the appropriate publications;

(3) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation **[*11778]** or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(4) The Office of Personnel Management, the Merit Systems Protection Board, the Equal Employment Opportunity Commission, and the Federal Labor Relations Authority upon authorized request;

(5) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(6) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

25-cv-00430_DMD_UST_0076

(7) Foreign governments in accordance with formal or informal international agreements;

(8) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(9) Contractors for the purpose of processing personnel and administrative records;

(10) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(11) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(12) Federal agencies, state agencies, and local agencies for tax purposes;

(13) Private creditors for the purpose of garnishing wages of an employee if a debt has been reduced to a judgment;

(14) Authorized federal and non-federal entities for use in approved computer matching efforts, limited to those data elements considered necessary in making a determination of eligibility under particular benefit programs administered by those agencies or entities, to improve program integrity, and to collect debts and other monies owed to those agencies or entities or to the Fiscal Service;

(15) Other federal agencies to effect salary or administrative offset for the purpose of collecting a debt, except that addresses obtained from the Internal Revenue Service shall not be disclosed to other agencies;

(16) Next-of-kin, voluntary guardians, and other representative or successor in interest of a deceased or incapacitated employee or former employee;

25-cv-00430_DMD_UST_0077

(17) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906;

(18) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm; and

(19) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records may be retrieved by name, Social Security number, other assigned identifier, and Treasury publication.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

25-cv-00430_DMD_UST_0078

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## DISCLOSURE TO CONSUMER REPORTING AGENCIES:

In accordance with section (b)(12) of the Privacy Act of 1974, as amended (*5 U.S.C. 552a(b)(12)*), disclosures may be made from this system of records to "consumer reporting agencies" [2] in accordance with section 3711(e) of title 31. The purpose of the disclosure is to aid in the collection of outstanding debts owed to the Federal Government. After the prerequisites of *31 U.S.C. 3711* have been followed, the Fiscal Service may disclose information necessary to establish the identity of the individual responsible for the claim, including name, address, and taxpayer identification number; the amount, status, and history of the claim; and the agency or program under which the claim arose.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

---

[2]    "Consumer reporting agency" is defined in *31 U.S.C. 3701(a)(3)*.

25-cv-00430_DMD_UST_0079

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record **[*11779]** pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .001—Human Resources and Administrative Records and on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .001—Administrative Records.

**Treasury/Fiscal Service .002**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .002—Payment Records

25-cv-00430_DMD_UST_0080

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

Kansas City Regional Financial Center, Bureau of the Fiscal Service, U.S. Department of the Treasury, 4241 NE 34th Street, Kansas City, MO 64117; Bureau of the Fiscal Service, 320 Avery Street, Parkersburg, WV 26106-1328. Records are also located throughout the United States at Federal Reserve Banks and financial institutions acting as Treasury's fiscal and financial agents. The addresses of the fiscal and financial agents may be obtained from the system manager below.

**SYSTEM MANAGER(S):**

Chief Disbursing Officer, Assistant Commissioner, Payment Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 301*; *31 U.S.C. 321*, 3301, 3321, 3321 note, 3325, 3327, 3328, 3332, 3334, 3720.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected from federal government entities that are requesting disbursement of domestic and international payments to their recipients and is used to facilitate such payments.

The information will also be used for collateral purposes related to the processing of disbursements, such as collection of statistical information on operations, development of

computer systems, investigation of unauthorized or fraudulent activity, and the collection of debts arising out of such activity.

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who are the intended or actual recipients of payments disbursed by the United States Government.

## CATEGORIES OF RECORDS IN THE SYSTEM:

Payment records showing a payee's name, Social Security number, employer identification number, or other agency identification or account number; date and location of birth, physical and/or electronic mailing address; telephone numbers; payment amount; date of issuance; trace number or other payment identification number, such as Treasury check number and symbol; financial institution information, including the routing number of his or her financial institution and the payee's account number at the financial institution; and vendor contract and/or purchase order number.

## RECORD SOURCE CATEGORIES:

Information in this system is provided by: Federal departments and agencies responsible for certifying, disbursing, and collecting federal payments; Treasury or Fiscal Service-designated fiscal and financial agents of the United States that process payments and collections; and commercial database vendors. Each of these record sources may include information obtained from individuals.

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

25-cv-00430_DMD_UST_0082

(1) The banking industry for payment verification;

(2) Federal investigative agencies, Departments and agencies for whom payments are made, and payees;

(3) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(4) A federal, state, or local agency maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(5) A court, magistrate, mediator, or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(6) Foreign governments in accordance with formal or informal international agreements;

(7) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(8) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

25-cv-00430_DMD_UST_0083

(9) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(10) Federal creditor agencies, their employees, or their agents for the purpose of facilitating or conducting federal administrative offset, federal tax refund offset, federal salary offset, or for any other authorized debt collection purpose;

(11) Any state, territory or commonwealth of the United States, or the District of Columbia to assist in the collection of state, commonwealth, territory or District of Columbia claims pursuant to a reciprocal agreement between Fiscal Service and the state, commonwealth, territory or the District of Columbia, or pursuant to federal law that authorizes the offset of federal payments to collect delinquent obligations owed to the state, commonwealth, territory, or the District of Columbia;

(12) The Defense Manpower Data Center and the United States Postal Service and other federal agencies through authorized computer matching programs for the purpose of identifying and locating individuals who are delinquent in their repayment of debts owed to the Department or other federal agencies in order to collect those debts through salary offset and administrative **[*11780]** offset, or by the use of other debt collection tools;

(13) A contractor of the Fiscal Service for the purpose of performing routine payment processing services, subject to the same limitations applicable to Fiscal Service officers and employees under the Privacy Act;

(14) A fiscal or financial agent of the Fiscal Service, its employees, agents, and contractors, or to a contractor of the Fiscal Service, for the purpose of ensuring the efficient administration of payment processing services, subject to the same or equivalent limitations applicable to Fiscal Service officers and employees under the Privacy Act;

(15) To appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems,

25-cv-00430_DMD_UST_0084

programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(16) To another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(17) (a) a federal or state agency, its employees, agents (including contractors of its agents) or contractors; (b) a fiscal or financial agent designated by the Fiscal Service or other Department of the Treasury bureau or office, including employees, agents or contractors of such agent; or (c) a contractor of the Fiscal Service, for the purpose of identifying, preventing, or recouping improper payments to an applicant for, or recipient of, federal funds, including funds disbursed by a state in a state-administered, federally-funded program; disclosure may be made to conduct computerized comparisons for this purpose;

(18) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity; and

(19) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of 4 U.S.C. 2904 and 2906.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS IN THE SYSTEM:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

25-cv-00430_DMD_UST_0085

Records may be retrieved by name, Social Security number, employer identification number, agency-supplied identifier, date of payment, or trace number, or other payment identifying information, such as check number.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR, Part 1, Subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

25-cv-00430_DMD_UST_0086

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (77 FR 62602) as the Department of the Treasury, Financial Management Service .002—Payment Records.

### Treasury/Fiscal Service .003

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .003—Claims and Inquiry Records on Treasury Checks, and International Claimants.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

JA423                    25-cv-00430_DMD_UST_0087

Kansas City Regional Financial Center, Bureau of the Fiscal Service, U.S. Department of the Treasury, 4241 NE 34th Street, Kansas City, MO 64117; Bureau of the Fiscal Service, 320 Avery Street, Parkersburg, WV 26106-1328. Records are also located throughout the United States at Federal Reserve Banks and financial institutions acting as Treasury's fiscal and financial agents. The addresses of the fiscal and financial agents may be obtained from the system manager below.

**SYSTEM MANAGER(S):**

Chief Disbursing Officer, Assistant Commissioner, Payment Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E,", Landover, MD 20785.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 301*; Treasury check claims—*15 U.S.C. 771* with delegation of authority from Comptroller General of the United States; International claims—*50 U.S.C. 2012*; *22 U.S.C. 1627*, 1641, 1642; *Public Law 114-328*.

**PURPOSE(S) OF THE SYSTEM:**

To be the system of record for all checks issued by the U.S. Department of the Treasury and claims against these checks, including:

(1) Claims where the payee has verified they were not the endorser of **[*11781]** the check therefore resulting in potential fraud;

(2) Claims of non-entitlement (reclamations) by agencies;

(3) Claims of non-receipt by payees;

(4) Expired checks, *i.e.,* limited pay cancellations; and

(5) Claims for benefits under the War Claims Act, the International Claims Settlement Act of 1949, and the Guam World War II Loyalty Recognition Act.

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

(1) Payees and holders of Treasury checks; and

(2) Claimants awarded benefits under the War Claims Act, the International Claims Settlement Act of 1949, and the Guam World War II Loyalty Recognition Act.

## CATEGORIES OF RECORDS IN THE SYSTEM:

(1) Treasury check claim files; and

(2) Awards for claims for losses sustained by individuals.

## RECORD SOURCE CATEGORIES:

Information in this system of records is provided by:

(1) Individual payees of Treasury checks, endorsers of Treasury checks, investigative agencies, contesting claimants;

(2) Federal program agencies and other federal entities; and

(3) Awards certified to Treasury for payment by Foreign Claims Settlement Commission.

25-cv-00430_DMD_UST_0089

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) Endorsers concerning checks for which there is liability, federal agencies, state and local law enforcement agencies, General Accountability Office, congressional offices and media assistance offices on behalf of payee claimants;

(2) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation of or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(3) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(4) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(5) Foreign governments in accordance with formal or informal international agreements;

(6) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(7) The news media and the public, with the approval of the Chief Privacy Officer in consultation with counsel, when there exists a legitimate public interest in the disclosure of the information, when disclosure is necessary to preserve confidence in the integrity of the Fiscal Service, or when disclosure is necessary to demonstrate the accountability of Fiscal Service's officers, employees, or individuals covered by the system, except to the extent the Chief Privacy Officer determines that release of the specific information in the context of a particular issue would constitute an unwarranted invasion of personal privacy;

(8) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(9) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(10) The public when attempts by Fiscal Service to locate the claimant have been unsuccessful. This information is limited to the claimant's name, city, and state of last known address, and the amount owed to the claimant. (This routine use does not apply to the Iran Claims Program or the Holocaust Survivors Claims Program or other claims programs that statutorily prohibit disclosure of claimant information);

(11) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906;

(12) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in

    25-cv-00430_DMD_UST_0091

connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(13) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; and

(14) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

Records may be retrieved by:

(1) Name of payee and check number and symbol;

(2) Social Security number; and

(3) Name of claimant or alphanumeric reference to claim number.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

25-cv-00430_DMD_UST_0092

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the [*11782] Fiscal Service File Plan are approved by NARA.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

**RECORD ACCESS PROCEDURES:**

Individuals requesting information under the Privacy Act must follow procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**CONTESTING RECORD PROCEDURES:**

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**NOTIFICATION PROCEDURES:**

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

25-cv-00430_DMD_UST_0093

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

None.

**HISTORY:**

Notice of this system of records was last published in full in the **Federal Register** on Oct. 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .003—Claims and Inquiry Records on Treasury Checks, and International Claimants.

**Treasury/Fiscal Service .004**

**SYSTEM NAME AND NUMBER:**

Department of the Treasury, Bureau of the Fiscal Service .004—Education and Training Records.

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

Bureau of the Fiscal Service, U.S. Department of the Treasury, 320 Avery Street, Parkersburg, WV 26106-1328.

**SYSTEM MANAGER(S):**

Assistant Commissioner, Office of Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.


## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:


*5 U.S.C. 301*; *31 U.S.C. 321*; 31 U.S.C. chapter 33; *31 U.S.C. 3720*.


## PURPOSE(S) OF THE SYSTEM:


Information in this system of records is collected and maintained about Government employees and other individuals who participate in Fiscal Service's education and training program. The information contained in the records will assist Fiscal Service in properly tracking individual training and accurately account for training revenue and expenditures generated through the Fiscal Service's training programs (for example, Integrated Talent Management (ITM)). For Fiscal Service personnel, the records contained in Fiscal Service's training records will also assist managers' active participation in their employees' learning plans. Fiscal Service maintains the information necessary to ensure that Fiscal Service keeps accurate records related to classes, including a training participant's training and enrollment status, class completion information, and learning history. Fiscal Service also maintains the records to ensure that financial records pertaining to a training participant's payment for training fees are maintained accurately. Fiscal Service's training records will report financial information to the Internal Revenue Service and Office of Personnel Management. Finally, the information contained in the covered records will be used for collateral purposes related to the training processes, such as the collection of statistical information on training programs, development of computer systems, investigation of unauthorized or fraudulent activity related to submission of information to Fiscal Service for training program purposes and the collection of debts arising out of such activity.


## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:


Government employees (including separated employees, in certain cases) and other individuals who access and apply for Fiscal Service training services.

25-cv-00430_DMD_UST_0095

## CATEGORIES OF RECORDS IN THE SYSTEM:

(1) Personal Profile—Account Record;

(2) Transcript Record;

(3) Enrollment Status Record;

(4) My Plan Record;

(5) Assessment Performance Results Record;

(6) Managerial Approval/Disapproval Status Record;

(7) Class Roster Record;

(8) Class Evaluation Record;

(9) Payment Record; and

(10) Statistical Reports—retrievable by names: (a) Learning History, (b) Class Enrollment Report, (c) Class Payment/Billing Report, (d) Status of Training Report, (e) Ad Hoc Training Report, and (f) Other Similar Files or Registers.

## RECORD SOURCE CATEGORIES:

Information in this system is provided by the individual on whom the record is maintained; the individual's employer; and other governmental agency or educational institutions.

25-cv-00430_DMD_UST_0096

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, _5 U.S.C. 552a(b)_, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to _5 U.S.C. 552a(b)(3)_ as follows to:

(1) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(2) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(3) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(4) Federal agencies, financial institutions, and contractors for the purpose of performing fiscal services, including, but not limited to, processing payments, investigating and rectifying possible erroneous reporting information, testing and enhancing related computer systems, creating and reviewing statistics to improve the quality of services provided, or conducting debt collection services;

(5) Federal agencies, their agents and contractors for the purposes of facilitating the collection of receipts, **[*11783]** determining the acceptable method of collection, the accounting of such receipts, and the implementation of programs related to the receipts being collected as well as status of their personnel training, statistical training information;

25-cv-00430_DMD_UST_0097

(6) Financial institutions, including banks and credit unions, and credit card companies for the purpose of collections and/or investigating the accuracy of information required to complete transactions using electronic methods and for administrative purposes, such as resolving questions about a transaction;

(7) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(8) Foreign governments in accordance with formal or informal international agreements;

(9) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(10) Federal agencies, their agents and contractors, credit bureaus, and employers of individuals who owe delinquent debt when the debt arises from the unauthorized use of electronic payment methods. The information will be used for the purpose of collecting such debt through offset, administrative wage garnishment, referral to private collection agencies, litigation, reporting the debt to credit bureaus, or for any other authorized debt collection purpose;

(11) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906;

(12) To appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

25-cv-00430_DMD_UST_0098

(13) To another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; and

(14) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

Electronic training data can be retrieved by class name and/or organization name and participant name. Electronic financial data can be retrieved by name, organization and payment information (*e.g.,* credit card, Standard Form 182).

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

25-cv-00430_DMD_UST_0099

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

**RECORD ACCESS PROCEDURES:**

Individuals requesting information under the Privacy Act must follow procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**CONTESTING RECORD PROCEDURES:**

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**NOTIFICATION PROCEDURES:**

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

None.

**HISTORY:**

25-cv-00430_DMD_UST_0100

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .001—Human Resources and Administrative Records and on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .004—Education and Training Records.

**Treasury/Fiscal Service .005**

**SYSTEM NAME AND NUMBER:**

Department of the Treasury, Bureau of the Fiscal Service .005—Fiscal Service Personnel Records.

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

Bureau of the Fiscal Service, U.S. Department of the Treasury, locations at: 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785; 200 Third Street, Parkersburg, WV 26106-1328; 320 Avery Street, Parkersburg, WV 26106-1328; 4241 NE 34th Street, Kansas City, MO 64117-3120; 13000 Townsend Road, Philadelphia, PA 19154; and Fiscal Service offices in Austin, TX 78714 and Birmingham, AL. Copies of some documents have been duplicated for maintenance by supervisors for employees or programs under their supervision. These duplicates are also covered by this system of records.

**SYSTEM MANAGER(S):**

25-cv-00430_DMD_UST_0101

(1) For personnel records: Assistant Commissioner, Office of Management, Bureau of the Fiscal Service, 3201 **[*11784]** Pennsy Drive, Warehouse "E", Landover, MD 20785; and

(2) For personnel security records: Assistant Commissioner, Office of Information and Security Services, Bureau of the Fiscal Service, 320 Avery Street, Parkersburg, WV 26106-1328.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 301*; U.S. Office of Personnel Management, Guide to Personnel Recordkeeping (Operating Manual).

**PURPOSE(S) OF THE SYSTEM:**

The information contained in these records assists Fiscal Service in: (1) Maintaining current and historical personnel records and preparing individual administrative transactions relating to classification; assignment; career development; evaluation; promotion, compensation, separation and retirement; making decisions on the rights, benefits, entitlements and the utilization of individuals; providing a data source for the production of reports, statistical surveys, rosters, documentation, and studies required for the orderly personnel administration within Treasury; (2) maintaining employment history; (3) providing investigatory information for determinations concerning whether an individual is suitable or fit for Government employment; eligible for logical and physical access to Treasury controlled facilities and information systems; eligible to hold sensitive positions (including but not limited to eligibility for access to classified information); fit to perform work for or on behalf of the U.S. Government as a contractor; qualified to perform contractor services for the U.S. Government; or loyal to the United States; (4) ensuring that Fiscal Service is upholding the highest standards of integrity, loyalty, conduct, and security among its employees and contract personnel; (5) to help streamline and make the adjudicative process more efficient; and (6) to otherwise conform with applicable legal, regulatory and policy authorities.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

25-cv-00430_DMD_UST_0102

Fiscal Service employees (including current and separated employees), family members of Fiscal Service employees, and applicants for Fiscal Service employment.

## CATEGORIES OF RECORDS IN THE SYSTEM:

(1) Human Resources Records: Records covered under the National Archives and Records Administration ("NARA")'s General Records Schedule, 2.0 Human Resources, which relate to the supervision over and management of federal civilian employees, including the disposition of Official Personnel Folders and other records relating to civilian personnel; and

(2) Personnel Security Records: Records covered under the NARA General Records Schedule 2.1 Employee Acquisition Records, and 5.6 Security Records that relate to initial and recurring background investigations of Fiscal Service employee and contractors, as well as the issuance of PIV-enabled identification cards (*i.e.,* credentials).

## RECORD SOURCE CATEGORIES:

Information in this system of records is provided by applicant Notification of Personnel Action Forms (SF-50), job application/resume (completed by applicant), payroll actions references, educational institutions, the subject of the record, authorized representatives, supervisor, employers, medical personnel, other employees, other federal, state, or local agencies, and commercial entities.

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or

25-cv-00430_DMD_UST_0103

license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(2) The Office of Personnel Management, the Merit Systems Protection Board, the Equal Employment Opportunity Commission, and the Federal Labor Relations Authority upon authorized request;

(3) Other federal, state, or local agencies, such as a state employment compensation board or housing administration agency, so that the agency may adjudicate an individual's eligibility for a benefit, or liability in such matters as child support;

(4) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(5) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(6) Foreign governments in accordance with formal or informal international agreements;

(7) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(8) Contractors for the purpose of processing personnel and administrative records;

25-cv-00430_DMD_UST_0104

(9) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(10) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(11) Consumer reporting agencies, private creditors and debt collection agencies, including mailing addresses obtained from the Internal Revenue Service to obtain credit reports;

(12) Federal agencies and to state and local agencies for tax purposes;

(13) Private creditors for the purpose of garnishing wages of an employee if a debt has been reduced to a judgment;

(14) Authorized federal and non-federal entities for use in approved computer matching efforts, limited to those data elements considered necessary in making a determination of eligibility under particular benefit programs administered by those agencies or entities, to improve program integrity, and to collect debts and other monies owed to those agencies or entities or to the Fiscal Service;

(15) Other federal agencies to effect salary or administrative offset for the purpose of collecting a debt, except that addresses obtained from the Internal Revenue Service shall not be disclosed to other agencies;

(16) Next-of-kin, voluntary guardians, and other representative or successor in interest of a deceased or incapacitated employee or former employee;

(17) Representatives of the National Archives and Records Administration ("NARA") who are conducting records  **[*11785]** management inspections under authority of _44 U.S.C. 2904_ and 2906;

(18) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(19) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(20) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; and

(21) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**DISCLOSURE TO CONSUMER REPORTING AGENCIES:**

In accordance with section (b)(12) of the Privacy Act of 1974, as amended (_5 U.S.C. 552a(b)(12)_), disclosures may be made from this system of records to "consumer reporting agencies" [3]          in accordance with section 3711(e) of title 31." The purpose of the disclosure is to aid in the collection of outstanding debts owed to the Federal Government. After the prerequisites of _31 U.S.C. 3711_ have been followed, the Fiscal Service may disclose information necessary to establish the identity of the individual responsible for the claim,

---

[3]          "Consumer reporting agency" is defined in _31 U.S.C. 3701(a)(3)_.

25-cv-00430_DMD_UST_0106

including name, address, and taxpayer identification number; the amount, status, and history of the claim; and the agency or program under which the claim arose.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

By name, Social Security number or other assigned identifier.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .001—Human Resources and Administrative Records and on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .005—FMS Personnel Records.

## Treasury/Fiscal Service .006

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .006—Employee Assistance Records.

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

This system covers Fiscal Service employee assistance records that are maintained by another federal, state, local government, or contractor under an agreement with the Fiscal Service directly or through another entity to provide the Employee Assistance Program (EAP) functions. The address of the other agency or contractor may be obtained from the system manager below.

**SYSTEM MANAGER(S):**

Assistant Commissioner, Office of Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 301*, 7361, 7362, 7904; *44 U.S.C. 3101*.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained to provide a history and record of the employee's or his/her family member's counseling session.

25-cv-00430_DMD_UST_0109

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Fiscal Service employees and former employees who have been counseled, either by self-referral or supervisory-referral, regarding alcohol or drug abuse, emotional health, or other personal problems. Where applicable, this system also covers family members of Fiscal Service employees when the family member uses the services of the EAP.

## CATEGORIES OF RECORDS IN THE SYSTEM:

This system contains records of each employee and, in some cases, family **[*11786]** members of the employee who have used the EAP for an alcohol, drug, emotional, or personal problem. Examples of information that may be found in each record are: The individual's name; Social Security number; date of birth; grade; job title; home address; telephone numbers; supervisor's name and telephone number; assessment of problem; and referrals to treatment facilities and outcomes.

## RECORD SOURCE CATEGORIES:

Information in this system of records comes from the individual to whom it applies, the supervisor of the individual if the individual was referred by a supervisor, or the contractor's staff member who records the counseling session.

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) An entity under contract with the Fiscal Service for the purpose of providing the EAP function;

25-cv-00430_DMD_UST_0110

(2) Medical personnel to the extent necessary to meet a bona fide medical emergency in accordance with the Confidentiality of Alcohol and Drug Abuse Patient Records regulations (42 CFR part 2);

(3) Contractors and consultants, and their employees, contractors or other personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, provided individual identifiers are not disclosed in any manner, in accordance with the Confidentiality of Alcohol and Drug Abuse Patient Records regulations (42 CFR part 2);

(4) The Department of Justice or other appropriate federal agency in defending claims against the United States when the records are not covered by the Confidentiality of Alcohol and Drug Abuse Patient Records regulations at 42 CFR part 2;

(5) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(6) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(7) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(8) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in

25-cv-00430_DMD_UST_0111

connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(9) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; and

(10) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

These records are retrieved by the name and Social Security number or other assigned identifier of the individual on whom they are maintained.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

When Fiscal Service contracts with an entity for the purpose of providing the EAP functions, the contractor shall be required to maintain Privacy Act of 1974, as amended, safeguards with respect to such records.

**RECORD ACCESS PROCEDURES:**

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**CONTESTING RECORD PROCEDURES:**

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**NOTIFICATION PROCEDURES:**

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .005—Employee Assistance Records. **[*11787]**

**Treasury/Fiscal Service .007**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .007—Direct Deposit Enrollment Records.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

Federal Reserve Bank of Dallas, acting in its capacity as Treasury's fiscal agent, 2200 North Pearl Street, Dallas, TX 75201.

## SYSTEM MANAGER(S):

Chief Disbursing Officer, Assistant Commissioner, Payment Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 301*; *31 U.S.C. 321*; 31 U.S.C. chapter 33; *31 U.S.C. 3332*.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained about individuals who wish to enroll in the Direct Deposit program in order to receive federal payments directly to a bank account or other similar type of account via electronic funds transfer, rather than by paper check.

The records are used to process Direct Deposit enrollment applications that may be received directly by Fiscal Service, its fiscal agents, and/or contractors. The records are collected and maintained to guarantee that Direct Deposit enrollment applications are processed properly to ensure that a recipient's federal payment will be disbursed to the correct account. Without the appropriate information, Fiscal Service, its fiscal agents and contractors, would not be able to process the Direct Deposit enrollment application as requested by the individual authorizing the Direct Deposit.

The information will also be used for collateral purposes related to the processing of Direct Deposit enrollments, such as collection of statistical information on operations, development of computer systems, investigation of unauthorized or fraudulent activity, and the collection of debts arising out of such activity.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who enroll with the Fiscal Service to receive federal payments from the Federal Government via an electronic funds transfer program known as "Direct Deposit."

**CATEGORIES OF RECORDS IN THE SYSTEM:**

25-cv-00430_DMD_UST_0115

The records may contain identifying information, such as: An individual's name(s), Social Security number, home address, home and work telephone number, and personal email address (home and work); date of birth; bank account(s) and other types of accounts to which payments are made, such as the individual's bank account number and the financial institution routing and transit number; information about an individual's payments received from the United States, including the type of payment received and the federal agency responsible for authorizing the payment; information related to the cancellation or suspension of an individual's Direct Express® debit card [4]                by Fiscal Service's financial agent; and information provided by an individual regarding a hardship due to a remote geographic location or about his or her inability to manage a bank account or prepaid debit card due to mental impairment.


**RECORD SOURCE CATEGORIES:**


Information in this system is provided by the individual on whom the record is maintained (or by his or her authorized representative), other persons who electronically authorize payments from the Federal Government, federal agencies responsible for authorizing payments, federal agencies responsible for disbursing payments, Treasury financial agents, Treasury fiscal agents that process Direct Deposit enrollment applications, and contractors.


**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**


In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:


(1) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

---

[4]          Direct Express® is a registered service mark of the Bureau of the Fiscal Service, U.S. Department of the Treasury.

25-cv-00430_DMD_UST_0116

(2) A federal, state, or local agency, maintaining civil, criminal, or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(3) Foreign governments in accordance with formal or informal international agreements;

(4) Authorized federal and non-federal entities for use in approved computer matching efforts, limited to those data elements considered necessary in making a determination of eligibility under particular benefit programs administered by those agencies or entities, to improve program integrity, and to collect debts and other monies owed to those agencies or entities or to the Fiscal Service;

(5) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(6) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(7) Fiscal agents, financial agents, financial institutions, and contractors for the purposes of: (a) Processing Direct Deposit enrollment applications, including, but not limited to, processing Direct Deposit enrollment forms and implementing programs related to Direct Deposit; investigating and rectifying possible erroneous information; creating and reviewing statistics to improve the quality of services provided; conducting debt collection services for debts arising from Direct Deposit activities; or developing, testing and enhancing computer systems; and (b) processing waivers from the requirement to receive payments electronically, including, but not limited to, processing automatic waivers and applications for waivers, as well as implementing the waivers; investigating and rectifying possible erroneous information or fraud; creating and reviewing statistics to improve the quality of services provided; or developing, testing and enhancing computer systems;

    25-cv-00430_DMD_UST_0117

(8) Federal agencies, their agents, and contractors for the purposes of facilitating the processing of Direct Deposit enrollment applications and the implementation of programs related to Direct Deposit; **[\*11788]**

(9) Federal agencies, their agents and contractors, credit bureaus, and employers of individuals who owe delinquent debt for the purpose of garnishing wages, only when the debt arises from the unauthorized or improper use of the Direct Deposit program. The information will be used for the purpose of collecting such debt through offset, administrative wage garnishment, referral to private collection agencies, litigation, reporting the debt to credit bureaus, or for any other authorized debt collection purpose;

(10) Financial institutions, including banks and credit unions, for the purpose of disbursing payments and/or investigating the accuracy of information required to complete transactions using Direct Deposit and for administrative purposes, such as resolving questions about a transaction;

(11) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906;

(12) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(13) Federal agencies, state agencies, and local agencies for tax purposes;

(14) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

    25-cv-00430_DMD_UST_0118

(15) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(16) Consumer reporting agencies, as defined by the Fair Credit Reporting Act, 5 U.S.C. 1681(f), to encourage repayment of a delinquent debt; and

(17) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records are retrieved by name, Social Security number, telephone number, transaction identification number, or other alpha/numeric identifying information.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

25-cv-00430_DMD_UST_0119

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

**RECORD ACCESS PROCEDURES:**

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**CONTESTING RECORD PROCEDURES:**

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**NOTIFICATION PROCEDURES:**

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

None.

25-cv-00430_DMD_UST_0120

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .006—Direct Deposit Enrollment Records.

## Treasury/Fiscal Service .008

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .008—Mailing List Records.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785, or its fiscal or financial agents at various locations. The addresses of the fiscal or financial agents may be obtained by contacting the System Manager below.

## SYSTEM MANAGER(S):

Chief Disbursing Officer, Assistant Commissioner, Payment Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

25-cv-00430_DMD_UST_0121

*5 U.S.C. 301*; *31 U.S.C. 321*; 31 U.S.C. chapter 33; *31 U.S.C. 3332*; Title XII of the Dodd-Frank Wall Street Reform and Consumer Protection Act (*Pub. L. 111-203*, Jul. 21, 2010).

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained about low to moderate income individuals, who are more likely to be unbanked or under-banked, and who could potentially receive federal tax refund payments. The records are used to send letters to individuals informing them of the benefits of electronic payments and Treasury-recommended account options for receiving payments electronically. Without the information, Fiscal Service and its fiscal or financial agents and contractors would not be able to directly **[*11789]** notify prospective payment recipients about the benefits of electronic payments and the Treasury-recommended account options for the receipt of federal payments electronically.

The information will also be used to study the effectiveness of offering account options to individuals for the purpose of receiving federal payments. To study program efficacy, Fiscal Service may use its mailing list records to collect aggregate statistical information on the success and benefits of direct mail and the use of commercial database providers.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Low- to moderate-income individuals, who are more likely to be unbanked or underbanked, who could potentially receive federal tax refund payments, and whose names and addresses are included on mailing lists purchased from commercial providers.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

The records may contain identifying information, such as an individual's name(s) and address.

**RECORD SOURCE CATEGORIES:**

Information in this system is provided by commercial database providers based on publicly available information.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) The U.S. Department of Justice ("DOJ") for its use in providing legal advice to the Department or in representing the Department in a proceeding before a court, adjudicative body, or other administrative body before which the Department is authorized to appear, where the use of such information by the DOJ is deemed by the Department to be relevant and necessary to the litigation, and such proceeding names as a party or interests: (a) The Department or any component thereof; (b) any employee of the Department in his or her official capacity; (c) any employee of the Department in his or her individual capacity where DOJ has agreed to represent the employee; or (d) the United States, where the Department determines that litigation is likely to affect the Department or any of its components;

(2) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(3) Fiscal agents, financial agents, and contractors for the purpose of mailing information to individuals about the benefits of electronic federal payments and Treasury-recommended account options for receipt of federal payments electronically, including, but not limited to, processing direct mail or performing other marketing functions; and creating and reviewing statistics to improve the quality of services provided;

(4) Federal agencies, their agents and contractors for the purposes of implementing and studying options for encouraging current and prospective federal payment recipients to receive their federal payments electronically;

25-cv-00430_DMD_UST_0123

(5) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906;

(6) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(7) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violations or enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(8) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(9) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(10) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(11) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; and

(12) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records are retrieved by name, address, or other alpha/numeric identifying information.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

25-cv-00430_DMD_UST_0125

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including **[*11790]** the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

25-cv-00430_DMD_UST_0126

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .008—Mailing List Records.

**Treasury/Fiscal Service .009**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .009—Delegations and Designations of Authority for Disbursing Functions

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

Kansas City Regional Financial Center, Bureau of the Fiscal Service, U.S. Department of the Treasury, 4241 NE 34th Street, Kansas City, MO 64117.

## SYSTEM MANAGER(S):

Chief Disbursing Officer, Assistant Commissioner, Payment Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

*5 U.S.C. 301*; *31 U.S.C. 3321*, 3325.

25-cv-00430_DMD_UST_0127

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained from federal agencies that are requesting disbursement of domestic and international payments to its recipients. The information is collected and maintained to ensure that only properly authorized Federal Government personnel are able to engage in the process of disbursing a payment.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Heads of Agencies, Certifying Officers, designated agents, and other federal employees designated to perform specific disbursement-related functions.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records are maintained on the designation or removal of individuals to act in a specified capacity pursuant to a proper authorization.

**RECORD SOURCE CATEGORIES:**

Information in this system of records is provided by government departments and agencies requiring services of the Department for issuance and payment of Treasury checks.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

25-cv-00430_DMD_UST_0128

(1) Banking institutions, Federal Reserve Banks, and government agencies for verification of information on authority of individuals to determine propriety of actions taken by such individuals;

(2) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(3) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(4) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(5) Foreign governments in accordance with formal or informal international agreements;

(6) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(7) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(8) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(9) Contractors for the purpose of processing personnel and administrative records;

(10) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(11) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; **[*11791]**

(12) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of _44 U.S.C. 2904_ and 2906; and

(13) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

25-cv-00430_DMD_UST_0130

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records may be retrieved by name.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

**RECORD ACCESS PROCEDURES:**

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**CONTESTING RECORD PROCEDURES:**

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (_77 FR 62602_) as the Department of the Treasury, Financial Management Service .010—Records of Accountable Officers' Authority With Treasury.

**Treasury/Fiscal Service .010**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .010—Pre-complaint Counseling and Complaint Activities.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

JA468                                                25-cv-00430_DMD_UST_0132

Bureau of the Fiscal Service, U.S. Department of the Treasury, 200 Third Street, Parkersburg, WV 26106-1328.

## SYSTEM MANAGER(S):

Director, Equal Employment Opportunity & Diversity, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328.

## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 7154; 42 U.S.C. 200e-16; Executive Order 11478; and 5 CFR part 713.

## PURPOSE(S) OF THE SYSTEM:

The system is used for the investigation of complaints of discrimination on the basis of race, color, national origin, sex, age, retaliation/reprisal and disability. In addition, the system contains case files developed in investigating complaints and in reviewing actions within Fiscal Service to determine if it conducted programs and activities in compliance with the federal laws. The system also contains annual and bi-annual statistical data submitted to and used by the Fiscal Service.

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Employees seeking services of EEO Counselors.

## CATEGORIES OF RECORDS IN THE SYSTEM:

Monthly pre-complaint activity reports from all Fiscal Service facilities.

JA469

25-cv-00430_DMD_UST_0133

**RECORD SOURCE CATEGORIES:**

Information in this system of records is provided by monthly submissions by financial centers and headquarters.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(2) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(3) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(4) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(5) Appropriate federal, state, local, or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations

25-cv-00430_DMD_UST_0134

and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(6) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(7) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a **[*11792]** result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(8) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(9) Contractors for the purpose of processing personnel and administrative records; and

(10) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

25-cv-00430_DMD_UST_0135

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

Records may be retrieved by employee name and date of receipt.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .012—Pre-complaint Counseling and Complaint Activities.

**Treasury/Fiscal Service .011**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .011—Gifts to the United States

## SECURITY CLASSIFICATION:

Information in this system is not classified.

25-cv-00430_DMD_UST_0137

**SYSTEM LOCATION:**

Bureau of the Fiscal Service, U.S. Department of the Treasury, 200 Third Street, Parkersburg, WV 26106-1328.

**SYSTEM MANAGER(S):**

Director, Reporting and Analysis Division, Reporting and Analysis Branch 2, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*31 U.S.C. 3113*.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained to document donors' gifts to the United States Government.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Donors of inter vivos and testamentary gifts to the United States.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Correspondence, copies of wills and court proceedings, and other material related to gifts to the United States.

25-cv-00430_DMD_UST_0138

**RECORD SOURCE CATEGORIES:**

Information in this system of records is provided by individuals, executors, administrators and other involved persons.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) Fiscal agents, financial agents, financial institutions, and contractors for the purpose of performing fiscal or financial services, including, but not limited to, processing payments, investigating and rectifying possible erroneous reporting information, creating and reviewing statistics to improve the quality of services provided, or developing, testing and enhancing computer systems;

(2) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(3) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this **[*11793]** system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

USCA4 Appeal: 25-1282   Doc: 39-1   Filed: 04/14/2025   Pg: 479 of 582   Page 152 of 141
Case 8:25-cv-00430-DLB   Document 51-2   Filed 03/07/25   Page 146 of 215
85 FR 11776, *11793

(4) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(5) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906;

(6) The news media and the public, with the approval of the Chief Privacy Officer in consultation with counsel, when there exists a legitimate public interest in the disclosure of the information, when disclosure is necessary to preserve confidence in the integrity of the Fiscal Service, or when disclosure is necessary to demonstrate the accountability of the Fiscal Service's officers, employees, or individuals covered by the system, except to the extent the Chief Privacy Officer determines that release of the specific information in the context of a particular issue would constitute an unwarranted invasion of personal privacy;

(7) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(8) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(9) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

25-cv-00430_DMD_UST_0140

(10) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(11) Authorized federal and non-federal entities for use in approved computer matching efforts, limited to those data elements considered necessary in making a determination of eligibility under particular benefit programs administered by those agencies or entities, to improve program integrity, and to collect debts and other monies owed to those agencies or entities or to the Fiscal Service; and

(12) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records may be retrieved by name of donor.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

25-cv-00430_DMD_UST_0141

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

25-cv-00430_DMD_UST_0142

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .013—Gifts to the United States.

**Treasury/Fiscal Service .012**

**SYSTEM NAME AND NUMBER:**

Department of the Treasury, Bureau of the Fiscal Service .012—Debt Collection Operations System.

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

Records are located throughout the United States at Bureau of the Fiscal Service operations centers, Federal Records Centers, Federal Reserve Banks acting as Treasury's fiscal agents, and financial institutions acting as Treasury's financial agents. Addresses may be obtained from system managers.

**SYSTEM MANAGER(S):**

System Manager, Debt Management Services, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

25-cv-00430_DMD_UST_0143

Federal Claims Collection Act of 1966 (*Pub. L. 89-508*), as amended by the Debt Collection Act of 1982 (*Pub. L. 97-365*, as amended); Deficit Reduction Act of 1984 (*Pub. L. 98-369*, as amended); Debt Collection Improvement Act of 1996 (*Pub. L. 104-134*, sec. 31001); Taxpayer Relief Act of 1997 (*Pub. L. 105-34*); Internal Revenue Service Restructuring and Reform Act of 1998 (*Pub. L. 105-206*); Improper Payments Information Act of 2002 (*Pub. L. 107-300*); Recovery Audit Act of 2002 (*Pub. L. 107-107*; Section 831; 115 Stat. 1186); Improper Payments Elimination and **[*11794]** Recovery Act of 2010 (*Pub. L. 111-204*); Improper Payments Elimination and Recovery Improvement Act of 2012 (*Pub. L. 112-248*); *26 U.S.C. 6402*; *26 U.S.C. 6331*; 31 U.S.C. chapter 37 (Claims), subchapter I (General) and subchapter II (Claims of the U.S. Government); *31 U.S.C. 3321* note.

**PURPOSE(S) OF THE SYSTEM:**

The purpose of this system is to maintain records about individuals who owe current receivable(s) or delinquent debt(s) to the United States or to any person for whom the United States is authorized by statute to collect for the benefit of such person, through one or more of its departments or agencies, or to states, including past due support enforced by states. The information contained in the records is maintained for the purpose of taking action to facilitate the collection or resolution of the debt(s) using various methods, including, but not limited to, requesting repayment of the debt orally or in writing; offset or levy of federal or state payments; administrative wage garnishment; referral to collection agencies or for litigation; or other collection or resolution methods authorized or required by law. The information is also maintained for the purpose of providing collection information about the debt to the agency collecting the debt, so that debtors can access information to resolve their debt, and to provide statistical information on debt collection operations. The information is also maintained for the purpose of testing and developing enhancements to: The computer systems which contain the records; and operations or business processes used to collect or resolve debts. The information is also maintained for the purpose of data analysis related to improving government-wide efforts to resolve and/or collect current receivables and delinquent debts owed to federal and/or state agencies. The information is also maintained for the purpose of resolving delinquent debts owed by debtors who are ineligible for federally funded programs until the delinquency is resolved, or for identifying, preventing, or recouping improper payments to individuals who owe obligations to federal and/or state agencies.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

    25-cv-00430_DMD_UST_0144

Individuals who may owe current receivables or delinquent debts (collectively "debts") to: (a) The United States, through one or more of its departments and agencies; or (b) states, territories or commonwealths of the United States, or the District of Columbia (hereinafter collectively referred to as "States").

## CATEGORIES OF RECORDS IN THE SYSTEM:

Debt records containing information about the debtor(s), the type of debt, the governmental entity to which the debt is owed, and the debt collection tools utilized to collect the debt. The records may contain identifying information, such as: (a) Debtor name(s) and taxpayer identifying number(s) (*i.e.,* Social Security number or employer identification number); (b) debtor contact information, such as work and home address, email address, or work, home or cellular telephone numbers; (c) contact information for the debtor's authorized third party representative(s); (d) information concerning the financial status of the debtor and his/her household, including income, assets, liabilities or other financial burdens, and any other resources from which the debt may be recovered; and (e) name of employer or employer contact information. Debts may include taxes, loans, assessments, fines, fees, penalties, overpayments, advances, extensions of credit from sales of goods or services, or other amounts of money or property owed to, or collected by, the Federal Government or a State, including past due support which is being enforced by a State.

The records also may contain information about: (a) The debt, such as the original amount of the debt, the debt account number, the date the debt originated, the amount of the delinquency or default, the date of delinquency or default, basis for the debt, amounts accrued for interest, penalties, and administrative costs, proof of debt documentation, or payments on the account; (b) actions taken to collect or resolve the debt, such as copies of demand letters or invoices, information prepared for the purpose of referring the debt to private collection agencies or the United States Department of Justice, recordings of telephone calls and computer activity related to the collection and resolution of debt, collectors' notes regarding telephone or other communications related to the collection or resolution of the debt, copies of administrative wage garnishment orders, due process notices, hearing requests, and hearing decisions, payment or compromise agreements; (c) other relevant information, including orders for military service, prison records, bankruptcy notices, medical records, or other correspondence with the debtor; and (d) the referring or governmental agency that is collecting or owed the debt, such as name, telephone number, and address of the agency contact.

25-cv-00430_DMD_UST_0145

**RECORD SOURCE CATEGORIES:**

Information in this system is provided by: The individual on whom the record is maintained; Federal and state agencies to which the debt is owed; Federal agencies and other entities that employ the individual or have information concerning the individual's employment or financial resources; Federal and State agencies issuing payments; collection agencies; locator and asset search companies, credit bureaus, and other database vendors; Federal, State or local agencies furnishing identifying information and/or debtor address information; and/or public documents.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(2) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(3) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

25-cv-00430_DMD_UST_0146

(4) Any federal agency, State or local agency, or their agents or contractors, including private collection agencies:

(a) To facilitate the collection of debts through the use of any combination of various debt collection methods required or authorized by law, including, but not limited to:

(i) Request for repayment by telephone or in writing;

(ii) Negotiation of voluntary repayment or compromise agreements; **[*11795]**

(iii) Offset or levy of Federal or State payments, which may include the disclosure of information contained in the records for the purpose of providing the debtor with appropriate notice or to otherwise comply with prerequisites, to facilitate voluntary repayment in lieu of offset or levy, to provide information to the debtor to understand what happened to the payment, or to otherwise effectuate the offset or levy process;

(iv) Referral of debts to private collection agencies, to Treasury-designated debt collection centers, or for litigation;

(v) Administrative and court-ordered wage garnishment;

(vi) Debt sales;

(vii) Publication of names and identities of delinquent debtors in the media or other appropriate places; or

(viii) Any other debt collection method authorized by law;

(b) To conduct computerized comparisons to locate Federal or State payments to be made to debtors;

25-cv-00430_DMD_UST_0147

(c) To conduct computerized comparisons to locate employers of, or obtain taxpayer identifying numbers or other information about, an individual for debt collection purposes;

(d) To collect a debt owed to the United States through the offset of payments made by States;

(e) To account or report on the status of debts for which such entity has a legitimate use for the information in the performance of official duties;

(f) For the purpose of denying Federal financial assistance in the form of a loan or loan insurance or guaranty to an individual who owes delinquent debt to the United States or who owes delinquent child support that has been referred to Fiscal Service for collection by administrative offset;

(g) To develop, enhance and/or test database, matching, communications, or other computerized systems which facilitate debt collection processes;

(h) To conduct data analysis which facilitates processes related to the collection or resolution of debts owed to Federal and/or State agencies; or

(i) For any other appropriate debt collection purpose.

(5) The Department of Defense, the U.S. Postal Service, or other Federal agency for the purpose of conducting an authorized computer matching program in compliance with the Privacy Act of 1974, as amended, to identify and locate individuals receiving Federal payments including, but not limited to, salaries, wages, or benefits, which may include the disclosure of information contained in the record(s) for the purpose of requesting voluntary repayment or implementing Federal employee salary offset or other offset procedures;

25-cv-00430_DMD_UST_0148

(6) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(7) The Department of Justice or other federal agency:

(a) When requested in connection with a legal proceeding, including a pending or threatened legal proceeding; or

(b) To obtain concurrence in a decision to compromise, suspend, or terminate collection action on a debt;

(8) The Internal Revenue Service in connection with reporting income from the cancellation of a debt;

(9) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(10) Any individual or other entity who receives federal or state payments as a joint payee with a debtor for the purpose of providing notice of, and information about, offsets from such federal payments;

(11) Any individual or entity:

(a) To facilitate the collection and/or resolution of debts using any combination of various debt collection methods required or authorized by law, including, but not limited to:

(i) Performing administrative and court-ordered wage garnishment;

(ii) Reporting information to commercial or consumer credit bureaus;

(iii) Conducting asset searches or locating debtors;

(iv) Publishing names and identities of delinquent debtors in the media or other appropriate places; or

(v) Selling debts;

(b) For the purpose of denying federal financial assistance in the form of a loan or loan insurance or guaranty to an individual who owes delinquent debt to the United States or who owes delinquent child support that has been referred to the Fiscal Service for collection by administrative offset; or

(c) For any other appropriate debt collection purpose;

(12) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(13) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(14)(a) A Federal or State agency, its employees, agents (including contractors of its agents) or contractors; (b) fiscal or financial agent designated by the Fiscal Service or other Department of the Treasury bureau or office, including employees, agents or contractors of such agent; or (c) contractor of the Fiscal Service, for the purpose of identifying, preventing, or recouping improper payments to an applicant for, or recipient of, Federal funds, including funds disbursed by a state in a state-administered, Federally funded program; disclosure may be made to conduct computerized comparisons for this purpose;

(15) Consumer reporting agencies (as defined by the Fair Credit Reporting Act, 5 U.S.C. 1681(f)) in accordance with *5 U.S.C. 552a(b)(12)* and *31 U.S.C. 3711(e)*, to encourage repayment of a delinquent debt; and

(16) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically, or on paper in secure facilities in a locked drawer behind a locked door. **[*11796]**

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

Records may be retrieved by various combinations of identifiers, including but not limited to name, taxpayer identifying number (*i.e.,* Social Security number or employer identification number), debt account number, offset trace number, payment trace number, telephone number or address.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

25-cv-00430_DMD_UST_0151

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

25-cv-00430_DMD_UST_0152

None.

**HISTORY:**

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (_77 FR 62602_) as the Department of the Treasury, Financial Management Service .014—Debt Collection Operations System.

**Treasury/Fiscal Service .013**

**SYSTEM NAME AND NUMBER:**

Department of the Treasury, Bureau of the Fiscal Service .013—Collections Records.

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785. Records are also located throughout the United States at Federal Reserve Banks and financial institutions acting as Treasury's fiscal and financial agents. The addresses of the fiscal and financial agents may be obtained from the system manager below.

**SYSTEM MANAGER(S):**

Assistant Commissioner, Revenue Collections Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

*5 U.S.C. 301*; *31 U.S.C. 321*; 31 U.S.C. chapter 33; *31 U.S.C. 3720*.

## PURPOSE(S) OF THE SYSTEM:

Information in this system of records is collected and maintained about individuals who electronically authorize payments to the Federal Government. The information contained in the records is maintained for the purpose of facilitating the collection and reporting of receipts from the public to the Federal Government and to minimize the financial risk to the Government and the public of unauthorized use of electronic payment methods. Examples of payment mechanisms authorized electronically include Automated Clearing House (ACH), check conversion, wire transfers, credit and debit cards, or stored value cards. Individuals may authorize payments using paper check conversion or internet-based systems through programs such as "Pay.gov" and "Electronic Federal Taxpayer Payment System" or directly through their financial institution. The information also is maintained to:

(a) Provide collections information to the federal agency collecting the public receipts;

(b) Authenticate the identity of individuals who electronically authorize payments to the Federal Government;

(c) Verify the payment history and eligibility of individuals to electronically authorize payments to the Federal Government;

(d) Provide statistical information on collections operations;

(e) Test and develop enhancements to the computer systems that contain the records; and

(f) Collect debts owed to the Federal Government from individuals when the debt arises from the unauthorized use of electronic payment methods.

Fiscal Service's use of the information contained in the records is necessary to process financial transactions while protecting the government and the public from financial risks that could be associated with electronic transactions. The records are collected and maintained to authenticate payers and their ability to pay, process payments through banking networks, and resolve after-the-fact accounting and reconciliation questions.

In addition, the information contained in the covered records will be used for other purposes related to the processing of financial transactions, such as collection of statistical information on operations, development of computer systems, investigation of unauthorized or fraudulent activity related to electronic transactions, and the collection of debts arising out of such activity.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who electronically authorize payments to the Federal Government through the use of communication networks, such as the internet, via means such as ACH, check conversion, wire transfer, credit/debit cards, and/or stored value card.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Collections records containing information about individuals who electronically authorize payments to the Federal Government to the extent such records are covered by the Privacy Act of 1974, as amended. The records may contain identifying information, such as: An individual's name(s), taxpayer identifying number (*i.e.,* Social Security number or employer identification number), home address, home telephone number, and email addresses (personal and work); an individual's employer's name, address, telephone number, and email address; an individual's date of birth and driver's license number; information about an individual's bank account(s) and other types of accounts from which payments **[*11797]** are made, such as financial institution routing and account number; credit and debit card numbers; information about an individual's payments made to or from the United States (or to other entities such as

    25-cv-00430_DMD_UST_0155

private contractors for the Federal Government), including the amount, date, status of payments, payment settlement history, and tracking numbers used to locate payment information; user name and password assigned to an individual; other information used to identify and/or authenticate the user of an electronic system to authorize and make payments, such as a unique question and answer chosen by an individual; and information concerning the authority of an individual to use an electronic system (access status) and the individual's historical use of the electronic system. The records also may contain information about the governmental agency to which payment is made and information required by such agency as authorized or required by law.

The information contained in the records covered by Fiscal Service's system of records is necessary to process financial transactions while protecting the government and the public from financial risks that could be associated with electronic transactions. It is noted that the system covers records obtained in connection with various mechanisms that either are used currently or may be used in the future for electronic financial transactions. Not every transaction will require the maintenance of all of the information listed in this section. The categories of records cover the broad spectrum of information that might be connected to various types of transactions.

**RECORD SOURCE CATEGORIES:**

Information in this system is provided by the individual on whom the record is maintained (or by his or her authorized representative), other persons who electronically authorize payments to the Federal Government, federal agencies responsible for collecting receipts, federal agencies responsible for disbursing and issuing federal payments, Treasury fiscal and financial agents that process collections, and commercial database vendors.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

25-cv-00430_DMD_UST_0156

(1) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(2) Commercial database vendors for the purposes of authenticating the identity of individuals who electronically authorize payments to the Federal Government, to obtain information on such individuals' payment or check writing history, and for administrative purposes, such as resolving a question about a transaction. For purposes of this notice, the term "commercial database vendors" means vendors who maintain and disclose information from consumer credit, check verification, and address databases;

(3) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(4) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(5) Fiscal agents, financial agents, financial institutions, and contractors for the purpose of performing fiscal or financial services, including, but not limited to, processing payments, investigating and rectifying possible erroneous reporting information, creating and reviewing statistics to improve the quality of services provided, conducting debt collection services, or developing, testing and enhancing computer systems;

(6) Federal agencies, state agencies, and local agencies for tax purposes;

(7) Federal agencies, their agents and contractors, credit bureaus, and employers of individuals who owe delinquent debt for the purpose of garnishing wages only when the debt arises from the unauthorized use of electronic payment methods. The information will be used for the purpose of collecting such debt through offset, administrative wage garnishment, referral to

25-cv-00430_DMD_UST_0157

private collection agencies, litigation, reporting the debt to credit bureaus, or for any other authorized debt collection purpose;

(8) Financial institutions, including banks and credit unions, and credit card companies for the purpose of collections and/or investigating the accuracy of information required to complete transactions using electronic methods and for administrative purposes, such as resolving questions about a transaction;

(9) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(10) Authorized federal and non-federal entities for use in approved computer matching efforts, limited to those data elements considered necessary in making a determination of eligibility under particular benefit programs administered by those agencies or entities, to improve program integrity, and to collect debts and other monies owed to those agencies or entities or to the Fiscal Service;

(11) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(12) A federal, State, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(13) Foreign governments in accordance with formal or informal international agreements;

(14) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems,

programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(15) Another Federal agency or Federal entity, when the Department of **[\*11798]** the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(16) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of _44 U.S.C. 2904_ and 2906; and

(17) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

## DISCLOSURE TO CONSUMER REPORTING AGENCIES:

Debt information concerning a government claim against a debtor when the debt arises from the unauthorized use of electronic payment methods is also furnished, in accordance with _5 U.S.C. 552a(b)(12)_ and _31 U.S.C. 3711(e)_, to consumer reporting agencies, as defined by the Fair Credit Reporting Act, 5 U.S.C. 1681(f), to encourage repayment of a delinquent debt.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

25-cv-00430_DMD_UST_0159

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

Records may be retrieved by account number (such as financial institution account number or credit card account number), name (including an authentication credential, *e.g.,* a user name), Social Security number, transaction identification number, or other alpha/numeric identifying information.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must comply with the rules of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

25-cv-00430_DMD_UST_0160

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on October 15, 2012 (*77 FR 62602*) as the Department of the Treasury, Financial Management Service .017—Collections Records.

**Treasury/Fiscal Service .014**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .014—United States Securities and Access.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

25-cv-00430_DMD_UST_0161

**SYSTEM LOCATION:**

Bureau of the Fiscal Service, U.S. Department of the Treasury, 200 Third Street, Parkersburg, WV 26106-1328; Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785; the Federal Reserve Bank of Minneapolis, 90 Hennepin Avenue, Minneapolis, MN 55401; and the Federal Reserve Bank of New York, East Rutherford Operations Center, 100 Orchard Street, East Rutherford, NJ 07073.

**SYSTEM MANAGER(S):**

Assistant Commissioner, Retail Securities Services, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328. For Federal Housing Administration (FHA) Debentures: Assistant Commissioner, Office of Fiscal Accounting Operations, 200 Third Street, Parkersburg, WV 26106-1328.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 301*; *31 U.S.C. 3101, et seq.*

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and used to identify and maintain all account and ownership data, both paper and electronic (internet based), on past and current purchases of Treasury securities. This includes, for example, U.S. Treasury bonds, notes, and bills; adjusted service bonds; armed forces leave bonds; and Federal Housing Administration debentures as well as savings-type securities including savings bonds, savings notes, definitive accrual, current income, and retirement-type savings securities. Information on transactions related to the inquiry and servicing of these Treasury securities is also collected and maintained. The collection of information allows Fiscal Service and its agents to issue and process Treasury securities, make payments, identify owners and their accounts, and other customer service related transactions.

25-cv-00430_DMD_UST_0162

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Present and former owners of, subscribers to, claimants to, persons entitled to, and inquirers concerning United States savings-type securities and interest on securities, for example, United States savings bonds, savings notes, retirement plan bonds, and individual retirement bonds.

Present and former owners of, subscribers to, claimants to, persons entitled to, and inquirers concerning United States Treasury securities (except savings-type securities) and interest on securities and such securities for which the Treasury acts as agents, for example, Treasury bonds, notes, and bills; adjusted service bonds; armed forces leave bonds; and Federal Housing Administration debentures.

Individuals who provide information to create an account for the purchase of United States Treasury securities and **[*11799]** savings-type securities through the internet.

## CATEGORIES OF RECORDS IN THE SYSTEM:

(1) Issuance: Records relating to registration, issuance, and correspondence in connection with issuance of United States Treasury securities and savings-type securities;

(2) Holdings: Records of accounts for the purchase of United States securities. These records may include ownership and interest activity on registered or recorded United States Treasury securities and savings-type securities;

(3) Transactions (redemptions, payments, reissues, transfers, and exchanges): Records which include securities transaction requests;

(4) Claims: Records including correspondence concerning lost, stolen, destroyed, or mutilated United States Treasury securities and savings-type securities; and

25-cv-00430_DMD_UST_0163

(5) Inquiries: Records of correspondence with individuals who have requested information concerning United States Treasury securities and savings-type securities.

All of the above categories of records include records of FHA debentures in the Fiscal Accounting securities accounting system.

All of the above categories of records include or may include the following types of personal information:

(1) Personal identifiers (name, including previous name used; Social Security number; date of birth; physical and electronic addresses; telephone, fax, and pager numbers); and

(2) Authentication aids (personal identification number, password, account number, shared-secret identifier, digitized signature, or other unique identifier).

**RECORD SOURCE CATEGORIES:**

Information on records in this system is furnished by the individuals or their authorized representatives as listed in "Categories of Individuals" and issuing agents for securities, is generated within the system itself, or, with their authorization, is derived from other systems of records.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) Agents or contractors of the Department for the purpose of administering the public debt of the United States;

(2) Next-of-kin, voluntary guardian, legal representative or successor in interest of a deceased or incapacitated owner of securities and others entitled to the reissue, distribution, or payment for the purpose of assuring equitable and lawful disposition of securities and interest;

(3) Any owner of United States Treasury securities or savings-type securities registered to two or more owners; or to the beneficiary of such securities registered in beneficiary form if acceptable proof of death of the owner is submitted;

(4) Federal agencies, state agencies, and local agencies for tax purposes;

(5) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(6) Foreign governments in accordance with formal or informal international agreements;

(7) The Department of Veterans Affairs and selected veterans' publications for the purpose of locating owners or other persons entitled to undeliverable bonds held in safekeeping by the Department;

(8) The Department of Veterans Affairs when it relates to the holdings of Armed Forces Leave Bonds, to facilitate the redemption or disposition of these securities;

(9) Other federal agencies to effect salary or administrative offset for the purpose of collecting debts;

(10) A consumer-reporting agency, including mailing addresses obtained from the Internal Revenue Service, to obtain credit reports;

25-cv-00430_DMD_UST_0165

(11) A debt collection agency, including mailing addresses obtained from the Internal Revenue Service, for debt collection services;

(12) Contractors conducting Treasury-sponsored surveys, polls, or statistical analyses relating to the marketing or administration of the public debt of the United States;

(13) Appropriate federal, state, local, or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(14) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(15) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(16) Other federal agencies, through computer matching, information on individuals owing debts to the Fiscal Service for the purpose of determining whether the debtor is a federal employee or retiree receiving payments that may be used to collect the debt through administrative or salary offset;

(17) Requesting federal agencies, through computer matching under approved agreements limiting the information to that which is relevant in making a determination of eligibility for federal benefits administered by those agencies, information on holdings of United States Treasury securities and savings-type securities;

(18) Other federal agencies through computer matching, information on individuals with whom the Fiscal Service has lost contact, for the purpose of utilizing letter forwarding services

    25-cv-00430_DMD_UST_0166

to advise these individuals that they should contact the Fiscal Service about returned payments and/or matured, unredeemed securities;

(19) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(20) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably **[*11800]** necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(21) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity;

(22) "Consumer reporting agencies" [5] to aid in the collection of outstanding debts owed to the Federal Government. After the prerequisites of _31 U.S.C. 3711_ have been followed, the Fiscal Service may disclose information necessary to establish the identity of the individual responsible for the claim, including name, address, and taxpayer identification number; the amount, status, and history of the claim; and the agency or program under which the claim arose; and

(23) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of _44 U.S.C. 2904_ and 2906.

---

[5]     "Consumer reporting agency" is defined in _31 U.S.C. 3701(a)(3)_.

25-cv-00430_DMD_UST_0167

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Information can be retrieved alphabetically by name, address, and period of time the security was issued, by bond serial numbers, other assigned identifier, or, in some cases, numerically by taxpayer identification number. In the case of securities, except Series G savings bonds registered in more than one name, information relating to those securities can be retrieved only by the names, or, in some cases, by the taxpayer identification number of the registrants, primarily the registered owners or first-named co-owners. In the case of gift bonds inscribed with the taxpayer identification number of the purchaser, bonds are retrieved under that number or by bond serial number.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## Appendix of Treasury Retail Securities sites:

This appendix lists the mailing addresses and telephone number of the places that individuals may contact to inquire about their securities accounts maintained in Treasury Direct or the Legacy Holding System. The toll-free telephone number 1-844-284-2676 is used to reach all the locations. Customers may also view information on the TreasuryDirect website at *www.TreasuryDirect.gov.*

For Series EE and Series I Bonds:

USCA4 Appeal: 25-1282    Doc: 39-1    Filed: 04/14/2025    Pg: 509 of 582
Case 8:25-cv-00430-DLB    Document 51-2    Filed 03/07/25    Page 176 of 215    of 141

85 FR 11776, *11800

Treasury Retail Securities Services Site, P.O. Box 214, Minneapolis, MN 55480-0214.

For Series HH and Series H Bonds:

Treasury Retail Securities Services Site, P.O. Box 2186, Minneapolis, MN 55480-2816.

For all other Series:

Treasury Retail Securities Services Site, P.O. Box 9150, Minneapolis, MN 55480-9150.

For TreasuryDirect:

Treasury Retail Securities Site, P.O. Box 7015, Minneapolis, MN 55480-9150.

For Legacy Holding System:

Retail Securities Services, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328.

For FHA Debentures:

Fiscal Accounting Office, Special Investments Branch, Bureau of the Fiscal Service, P.O. Box 396, 200 Third Street, Parkersburg, WV 26106-1328.

**HISTORY:**

25-cv-00430_DMD_UST_0170

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .002—United States Savings-Type Securities, Department of the Treasury, Bureau of the Public Debt .003—United States Securities (Other than Savings-Type Securities) and Department of the Treasury, Bureau of the Public Debt .008—Retail Treasury Securities Access Application.

**Treasury/Fiscal Service .015**

**SYSTEM NAME AND NUMBER:**

Department of the Treasury, Bureau of the Fiscal Service .015—Physical Access Control System.

**SECURITY CLASSIFICATION:**

Information in this system is not classified.

**SYSTEM LOCATION:**

All Bureau of the Fiscal Service, U.S. Department of the Treasury, locations.

**SYSTEM MANAGER(S):**

Assistant Commissioner, Information and Security Services, Bureau of the Fiscal Service, 320 Avery Street, Parkersburg, WV 26106-1328.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*31 U.S.C. 321*; 41 CFR 101-20.103.

25-cv-00430_DMD_UST_0171

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained to allow the Fiscal Service to control and verify access to all Fiscal Service facilities. **[*11801]**

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

All Fiscal Service employees, employees of contractors or service companies, and visitors.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Every individual with access to Fiscal Service facilities controlled by the Physical Access Control System ("PACS") has a personal record stored in the PACS database. This record contains the individual's full legal name, date of birth, height, weight, eye/hair color, digital color photograph, federal agency smart credential number, and their door access profile. When an access card is presented at a reader, a record of the access is created on the PACS database. This record contains the individual's name, date/time, door/location scanned, and whether the access was granted or denied.

**RECORD SOURCE CATEGORIES:**

Information in this system of records is provided by the individual concerned, his/her supervisor, or an official of the individual's firm or agency.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

25-cv-00430_DMD_UST_0172

(1) Appropriate federal, state, local, or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(2) A federal, state, or local agency maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(3) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(4) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(5) Unions recognized as exclusive bargaining representatives under 5 U.S.C. Chapter 71, arbitrators, and other parties responsible for the administration of the federal labor-management program if needed in the performance of their authorized duties;

(6) Contractors for the purpose of processing personnel and administrative records;

(7) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

25-cv-00430_DMD_UST_0173

(8) The Office of Personnel Management, the Merit System Protection Board, the Equal Employment Opportunity Commission, and the Federal Labor Relations Authority upon authorized request;

(9) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(10) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(11) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906; and

(12) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

25-cv-00430_DMD_UST_0174

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Information on individuals can be retrieved by name or card number or other assigned identifier such as biometric or biographic information.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

**RECORD ACCESS PROCEDURES:**

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

**CONTESTING RECORD PROCEDURES:**

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

25-cv-00430_DMD_UST_0175

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must **[\*11802]** follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .004—Controlled Access Security System.

### Treasury/Fiscal Service .016

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .016—Health Unit Records

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

25-cv-00430_DMD_UST_0176

Bureau of the Fiscal Service, U.S. Department of the Treasury, 200 Third Street, Parkersburg, WV 26106-1328; Bureau of the Fiscal Service, U.S. Department of the Treasury, 320 Avery Street, Parkersburg, WV 26106-1328; and Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**SYSTEM MANAGER(S):**

Assistant Commissioner, Office of Management, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

*5 U.S.C. 7901*; *29 U.S.C. 2613*.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained to document an individual's utilization on a voluntary basis of health services provided under the Federal Employee Health Services Program at the health unit at the Fiscal Service and to document employees' requests for Family Medical Leave Act ("FMLA") leave in Parkersburg, West Virginia or Hyattsville, Maryland. Data is necessary to ensure: Proper evaluation, diagnosis, treatment, and referral to maintain continuity of care; a medical history of care received by the individual; planning for further care of the individual; a means of communication among health care members who contribute to the individual's care; a legal document of health care rendered; and is a tool for evaluating the quality of health care rendered; and for assessing employees' requests for FMLA leave.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

(1) Fiscal Service employees who receive services under the Federal Employee Health Services Program from the Fiscal Service health units in Parkersburg, West Virginia or Hyattsville,

25-cv-00430_DMD_UST_0177

MD, or who submit medical documentation in support of their requests for sick leave or leave under the FMLA;

(2) Federal employees of other organizations who receive services under the Federal Employee Health Services Program from the Fiscal Service health units in Parkersburg, West Virginia or Hyattsville, Maryland; and

(3) Non-federal individuals working in or visiting the buildings, who may receive emergency treatment from the Fiscal Service health unit in Parkersburg, West Virginia or Hyattsville, Maryland.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

This system is comprised of records developed as a result of an individual's utilization of services provided under the Federal Employee Health Services Program or provided in support of employees' requests for FMLA leave. These records contain information such as: Examination, diagnostic, assessment and treatment data; laboratory findings; nutrition and dietetic files; nursing notes; immunization records; CPR training; first aider: Names, Social Security number, date of birth, addresses, and telephone numbers of individual; name, address, and telephone number of individual's physician; name, address, and telephone number of hospital; name, address, and telephone number of emergency contact; and information obtained from the individual's physician(s); medical documents related to employees' requests for FMLA leave, and record of requested accesses by any Fiscal Service employee (other than health unit personnel) who has an official need for the information.

*Note:* This system does not cover records related to counseling for drug, alcohol, or other problems covered by the system of records notice Treasury/Fiscal Service .006—Employee Assistance Records. Medical records relating to a condition of employment or an on-the-job occurrence are covered by the Office of Personnel Management's system of records notice OPM/GOVT-10—Employee Medical File System Records.

**RECORD SOURCE CATEGORIES:**

25-cv-00430_DMD_UST_0178

Information in this system of records comes from the individual to whom it applies; laboratory reports and test results; health unit physicians, nurses, and other medical technicians who have examined, tested, or treated the individual; the individual's personal physician; other federal employee health units; and other federal agencies.

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) Medical personnel under a contract agreement with the Fiscal Service;

(2) A federal, state, or local public health service agency as required by applicable law, concerning individuals who have contracted certain communicable diseases or conditions. Such information is used to prevent further outbreak of the disease or condition;

(3) Appropriate federal, state, or local agencies responsible for investigation of an accident, disease, medical condition, or injury as required by pertinent legal authority;

(4) A federal agency responsible for administering benefits programs in connection with a claim for benefits filed by an employee;

(5) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(6) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(7) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such **[*11803]** agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(8) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(9) Fiscal Service employees who have a need to know the information in order to assess employees' requests for FMLA leave;

(10) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of _44 U.S.C. 2904_ and 2906;

(11) Contractors for the purpose of processing personnel and administrative records; and

(12) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

25-cv-00430_DMD_UST_0180

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

These records are retrieved by the name or other assigned identifier of the individual to whom they pertain.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in a secured database. Medical personnel under a contract agreement who have access to these records are required to maintain adequate safeguards with respect to such records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .006—Health Service Program Records.

## Treasury/Fiscal Service .017

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .017—Do Not Pay Payment Verification Records.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

25-cv-00430_DMD_UST_0182

Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785. Records are also located throughout the United States at Fiscal Service operations centers, Federal Records Centers, Federal Reserve Banks acting as Treasury's fiscal agents, and financial institutions acting as Treasury's financial agents. The specific address for each of the aforementioned locations may be obtained upon request.

## SYSTEM MANAGER(S):

Director, Do Not Pay Business Center, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

Improper Payments Elimination and Recovery Improvement Act of 2012, *31 U.S.C. 3321* note, *Public Law 112-248*; the Improper Payments Elimination and Recovery Act of 2010, *Public Law 111-204*; E.O. 13520 (Reducing Improper Payments and Eliminating Waste in Federal Programs), *74 FR 62201*; OMB Memorandum M-12-11 (Reducing Improper Payment through the "Do Not Pay List", April 12, 2012; OMB Memorandum M-13-20 (Protecting Privacy while Reducing Improper Payments with the Do Not Pay Initiative); Presidential Memorandum on Enhancing Payment Accuracy through a "Do Not Pay List" (June 18, 2010).

## PURPOSE(S) OF THE SYSTEM:

Information in this system of records is collected and maintained to assist federal agencies in verifying that individuals are eligible to receive federal payments by allowing the Department of the Treasury/Fiscal Service to collect, maintain, analyze, and disclose records that will assist federal agencies in identifying, preventing, and recovering payment error, waste, fraud, and abuse within federal spending, as required by the Improper Payments Elimination and Recovery Improvement Act.

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

25-cv-00430_DMD_UST_0183

(1) Individuals who have applied for or are receiving payments (including contract, grant, benefit or loan payments) disbursed by any federal agency, its agents or contractors;

(2) Individuals declared ineligible to participate in federal procurement programs or to receive certain federal loans, assistance, and/or benefits as a result of an exclusion or disqualification action;

(3) Individuals declared ineligible to participate in federal health care programs or to receive federal assistance and/or benefits as a result of an exclusion action;

(4) Individuals who are barred from entering the United States;

(5) Individuals in bankruptcy proceedings or individuals who have declared bankruptcy;

(6) Individuals who are, or have been, incarcerated and/or imprisoned;

(7) Individuals who are in default or delinquent status on loans, judgment debt, or rural development and farm services programs provided through federal agencies responsible for administering federally-funded programs;

(8) Individuals who owe non-tax debts to the United States; **[*11804]**

(9) Individuals who owe debts to states, where the state has submitted the debt to the Fiscal Service for offset; and

(10) Individuals conducting, or attempting to conduct, transactions at or through a financial institution where the financial institution has identified, knows, suspects, or has reason to suspect that: (a) The transaction involves funds originating from illegal activities; (b) the purpose of the transaction is to hide or disguise funds or assets, or attempt to hide or disguise funds or assets, originating from illegal activities as part of a plan to violate or evade any law or regulation or to avoid any transaction reporting requirement under federal law; or (c) the transaction is illegal in nature or is not the type of transaction in which the particular

25-cv-00430_DMD_UST_0184

individual would normally be expected to engage, and the financial institution knows of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction.

## CATEGORIES OF RECORDS IN THE SYSTEM:

The records in this system contain information that will assist federal agencies to identify and prevent payment error, waste, fraud, and abuse within federal spending. The records contain information about intended or actual payees or recipients of federal payments, including information about financial assets, including income, wages, and bank accounts into which payments are made, and other information to assist federal agencies in making eligibility determinations regarding applicants for and recipients of payments from the Federal Government.

The records may contain the following information:

(1) Name(s), including aliases and surnames;

(2) State and federal taxpayer identification number (TIN), Social Security number (SSN), employer identification number (EIN), individual taxpayer identification number (ITIN), taxpayer identification number for pending U.S. adoptions (ATIN), and preparer taxpayer identification number (PTIN));

(3) Date of birth;

(4) Home and work address;

(5) Driver's license information and other information about licenses issued to an individual by a governmental entity;

(6) Home, work, and mobile telephone numbers;

(7) Personal and work email addresses;

(8) Income;

(9) Employer information;

(10) Assets and bank account information, including account number and financial institution routing and transit number;

(11) Other types of accounts to which payments are made, including account numbers and identifiers (*e.g.,* financial institution routing number, account number, credit card number, and information related to pre-paid debit cards);

(12) Tracking numbers used to locate payment information;

(13) Loan information, such as borrower identification ("ID") number and ID type, case number, agency code, and type code;

(14) Incarceration information, such as inmate status code, date of conviction, date of confinement, and release date;

(15) Information about legal judgments;

(16) Data Universal Numbering System ("DUNS") numbers;

(17) Information about non-tax debts owed to the United States; and

(18) Information about debts owed to state agencies.

25-cv-00430_DMD_UST_0186

**RECORD SOURCE CATEGORIES:**

Information in this system is provided by the individual (or an authorized representative) to whom the record pertains, federal agencies that authorize payments or issue payments with federal funds, Treasury fiscal and financial agents who work with data in this system, and commercial database vendors. The system may contain information about an individual from more than one source, and this information may vary, depending on the source that provided it.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows: [6]

(1) (a) A federal agency, its employees, agents (including contractors of its agents) or contractors; (b) a fiscal or financial agent designated by the Fiscal Service, its predecessors, or other Department bureau or office, including employees, agents or contractors of such agent; or (c) a Fiscal Service contractor, for the purpose of identifying, preventing, or recouping improper payments to an applicant for, or recipient of, federal funds;

(2) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(3) (a) a federal agency, its employees, agents (including contractors of its agents) or contractors; (b) a fiscal or financial agent designated by the Fiscal Service, its predecessors, or other Department bureau or office, including employees, agents or contractors of such agent;

---

[6]          This system contains records that are collected by the Fiscal Service and other federal agencies. Notwithstanding the routine uses listed in this system of records, Federal law may further limit how records may be used, and the Fiscal Service may agree to additional limits on disclosure for some data through a written agreement with the entity that supplied the information. As such, the routine uses listed in this system of records may not apply to every data set in the system. To identify which routine uses apply to specific data sets, visit *https://fiscal.treasury.gov/dnp/privacy-program.html*.

25-cv-00430_DMD_UST_0187

or (c) a Fiscal Service contractor, to initiate an investigation, or during the course of an investigation, and to the extent necessary, obtain information supporting an investigation pertinent to the elimination of systemic fraud, waste, and abuse within federal programs;

(4) (a) a federal agency, its employees, agents (including contractors of its agents) or contractors; (b) a fiscal or financial agent designated by the Fiscal Service, its predecessors, or other Department bureau or office, including employees, agents or contractors of such agent; or (c) a Fiscal Service contractor for the purpose of validating eligibility for an award through a federal program;

(5) (a) a federal agency, its employees, agents (including contractors of its agents) or contractors; (b) a fiscal or financial agent designated by the Fiscal Service, its predecessors, or other Department bureau or office, including employees, agents or contractors of such agent; or (c) a Fiscal Service contractor to check or improve the quality and accuracy of system records;

(6) Financial institutions and their servicers in order to: (a) verify the proper routing and delivery of any federal payment; (b) verify the identity of any recipient or intended recipient of a federal payment; or (c) investigate or pursue recovery of any improper payment;

(7) Foreign governments in accordance with formal or informal international agreements;

(8) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper **[*11805]** and consistent with the official duties of the person making the disclosure;

(9) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(10) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(11) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(12) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(13) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906; and

(14) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

    25-cv-00430_DMD_UST_0189

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.


## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:


Records may be retrieved by identifiers, including, but not limited to, exact name, partial name, SSN, TIN, EIN, DUNS numbers, or a combination of these elements.


## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:


All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.


## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:


These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.


The Fiscal Service may agree to additional safeguards for some data through a written agreement with the entity supplying the data. Information on additional safeguards can be found at *https://donotpay.treas.gov.*


## RECORD ACCESS PROCEDURES:

25-cv-00430_DMD_UST_0190

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on December 9, 2013 (*78 FR 73923*) as the Department of the Treasury, Bureau of the Fiscal Service .023—Do Not Pay Payment Verification Records.

## Treasury/Fiscal Service .018

## SYSTEM NAME AND NUMBER:

25-cv-00430_DMD_UST_0191

Department of the Treasury, Bureau of the Fiscal Service .018—OneVoice Customer Relationship Management.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785. Records are also located throughout the United States at data centers operated by Fiscal Service service providers.

## SYSTEM MANAGER(S):

Director, Office of Agency Outreach, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

*5 U.S.C. 301*.

## PURPOSES(S) OF THE SYSTEM:

The purpose of this system of records is to establish a customer relationship management ("CRM") tool within the Fiscal Service. An enterprise-wide CRM tool is necessary to strategically promote, share, and guide the organization in developing processes for marketing, messaging, outreach, engagement and consistent product and service implementations. In addition, this system will increase transparency; improve outreach, communications, and collaboration efforts with our customers and vendors; and employ sound, repeatable methodologies.

25-cv-00430_DMD_UST_0192

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Sole proprietors and other entities, which provide goods and/or services to the Fiscal Service ("Vendors"); and individuals representing agencies that purchase goods and/or services through the Fiscal Service ("Clients"). **[*11806]**

## CATEGORIES OF RECORDS IN THE SYSTEM:

(1) Client's or Vendor's name;

(2) Agency or organization identifier (if applicable);

(3) Position information (title and expertise area);

(4) Phone and fax numbers;

(5) Email addresses; and

(6) Physical work address.

## RECORD SOURCE CATEGORIES:

Records are obtained directly from clients and vendors and added to the system by authorized Fiscal Service employees, contractors, and fiscal or financial agents.

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

25-cv-00430_DMD_UST_0193

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) A federal, state, or local agency, maintaining civil, criminal, or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(2) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(3) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(4) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(5) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

25-cv-00430_DMD_UST_0194

(6) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under the authority of *44 U.S.C. 2904* and 2906;

(7) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(8) Foreign governments in accordance with formal or informal international agreements; and

(9) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

## POLICIES AND PRACTICES FOR STORAGE OF RECORDS:

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

Records may be retrieved by name, address, or other alpha/numeric identifying information.

## POLICIES AND PROCEDURES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, which are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

25-cv-00430_DMD_UST_0196

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on September 19, 2014 (*79 FR 56433*) as the Department of the Treasury, Bureau of the Fiscal Service .024—OneVoice Customer Relationship Management.

**Treasury/Fiscal Service .019**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .019—Gifts to Reduce the Public Debt.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

## SYSTEM LOCATION:

Bureau of the Fiscal Service, U.S. Department of the Treasury, 200 Third Street, Parkersburg, WV 26106-1328. **[*11807]**

## SYSTEM MANAGER(S):

Assistant Commissioner, Office of Retail Securities Services, Division of Securities Accounting, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328.

## AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

25-cv-00430_DMD_UST_0197

*31 U.S.C. 3113*.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained to document donors' gifts to reduce the public debt. They provide a record of correspondence between Fiscal Service and the donor, information concerning any legal matters, and a record of depositing the gift and accounting for it.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Donors of gifts to reduce the public debt.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Correspondence; copies of checks, money orders, or other payments; copies of wills and other legal documents; and other material related to gifts to reduce the public debt by the Bureau of the Fiscal Service.

Note: This system of records does not cover gifts sent to other agencies, such as gifts sent with one's federal income tax return to the Internal Revenue Service. It also does not include records pertaining to gifts of tangible property, nor does it include any other gifts to the United States.

**RECORD SOURCE CATEGORIES:**

Information in this system of records comes from the individual to whom it applies, executors, administrators, and other involved persons.

## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:

(1) Appropriate federal, state, local, or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;

(2) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

(3) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;

(4) Agents or contractors of the Department for the purpose of administering the public debt of the United States;

(5) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;

(6) The Internal Revenue Service for the purpose of confirming whether a tax-deductible event has occurred;

25-cv-00430_DMD_UST_0199

(7) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(8) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach;

(9) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(10) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906; and

(11) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

## POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:

These records are retrieved by the name of the donor, amount of gift, type of gift, date of gift, Social Security number of donor, if provided, control number, check number, state code, or other assigned identifier.

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, that are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

    25-cv-00430_DMD_UST_0201

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in **[\*11808]** the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

None.

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .007—Gifts to Reduce the Public Debt.

**Treasury/Fiscal Service .020**

## SYSTEM NAME AND NUMBER:

Department of the Treasury, Bureau of the Fiscal Service .020—U.S. Treasury Securities Fraud Information System.

## SECURITY CLASSIFICATION:

Information in this system is not classified.

JA538                                    25-cv-00430_DMD_UST_0202

**SYSTEM LOCATION:**

Bureau of the Fiscal Service, U.S. Department of the Treasury, 200 Third Street, Parkersburg, WV 26106-1328; Bureau of the Fiscal Service, U.S. Department of the Treasury, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785. This system also covers the Fiscal Service records that are maintained by contractor(s) under agreement. The system manager maintains the system location of these records. The addresses of the contractor(s) may be obtained from the system manager below.

**SYSTEM MANAGER(S):**

(1) Assistant Commissioner, Office of Information Technology, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328;

(2) Assistant Commissioner, Retail Securities Services, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328; and

(3) Office of the Chief Counsel, Bureau of the Fiscal Service, 200 Third Street, Parkersburg, WV 26106-1328.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM**

*31 U.S.C. 321(a)(5)*, *31 U.S.C. 333*, *31 U.S.C. 3101, et seq. 31 U.S.C. 5318*, and *5 U.S.C. 301*.

**PURPOSE(S) OF THE SYSTEM:**

Information in this system of records is collected and maintained to: (1) Identify and monitor fraudulent and suspicious activity related to Treasury securities, other U.S. obligations, and fictitious instruments; (2) ensure that the Fiscal Service provides a timely and appropriate notification of a possible violation of law to law enforcement and regulatory agencies; (3)

protect the Government and individuals from fraud and loss; (4) prevent the misuse of Treasury names and symbols on fraudulent instruments; and (5) compile summary reports that conform with the spirit of the USA Patriot Act's anti-terrorism financing provisions and the Bank Secrecy Act's anti-money laundering provisions, and submit the reports to the Financial Crimes Enforcement Network.

## CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals under investigation or who make inquiries or report fraudulent or suspicious activities related to Treasury securities and other U.S. obligations.

## CATEGORIES OF RECORDS IN THE SYSTEM:

The types of personal information collected/used by this system are necessary to ensure the accurate identification of individuals who report or make fraudulent transactions involving Treasury securities, other U.S. obligations, and fictitious instruments. The types of personal information potentially could include the following:

(1) Personal identifiers (name, including previous name used, and aliases; Social Security number; tax identification number; physical and electronic addresses; telephone, fax, and pager numbers); and

(2) Authentication aids (personal identification number, password, account number, credit card number, shared-secret identifier, digitized signature, or other unique identifier).

Supporting records may contain correspondence between the Fiscal Service and the entity or individual suspected of fraud or individual submitting a complaint or inquiry, correspondence between the Fiscal Service and the Department, or correspondence between the Fiscal Service and law enforcement, regulatory bodies, or other third parties.

## RECORD SOURCE CATEGORIES:

25-cv-00430_DMD_UST_0204

Information in this system of records is exempt from the Privacy Act provision that requires that record source categories be reported. (See "Exemptions Promulgated for the System," below.)


## ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:


In addition to those disclosures generally permitted under the Privacy Act of 1974, *5 U.S.C. 552a(b)*, records and/or information or portions thereof maintained as part of this system may be disclosed outside Treasury as a routine use pursuant to *5 U.S.C. 552a(b)(3)* as follows to:


(1) A congressional office in response to an inquiry made at the request of the individual to whom the record pertains;


(2) Appropriate federal, state, local or foreign agencies responsible for investigating or prosecuting a violation or for enforcing or implementing a statute, rule, regulation, order, or license, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure;


(3) A federal, state, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, suitability determination, license, contract, grant, or other benefit;


(4) A court, magistrate, mediator or administrative tribunal in the course of presenting evidence, including disclosures to opposing counsel or witnesses in the course of civil discovery, litigation, or settlement negotiations, in response to a subpoena, or in connection with criminal law proceedings;

25-cv-00430_DMD_UST_0205

(5) Third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation;

(6) Agents or contractors who have been engaged to assist the Fiscal Service in the performance of a service related to this system of records and who need to have access to the records in order to perform the activity;

(7) Appropriate agencies, entities, and person when (1) the Department of the Treasury and/or Fiscal Service suspects or has confirmed that there has been a breach of the system of records; (2) the Department of the Treasury and/or Fiscal Service has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the Department of the Treasury and/or Fiscal Service (including its information systems, programs, and operations), the Federal **[*11809]** Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department of the Treasury's and/or Fiscal Service's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm;

(8) Another Federal agency or Federal entity, when the Department of the Treasury and/or Fiscal Service determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; and

(9) Representatives of the National Archives and Records Administration ("NARA") who are conducting records management inspections under authority of *44 U.S.C. 2904* and 2906.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

25-cv-00430_DMD_UST_0206

Records may be retrieved by (name, alias name, Social Security number, tax identification number, account number, or other unique identifier).

## POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:

All data maintained by this Fiscal Service system of records are retained and destroyed in accordance with the Fiscal Service File Plan. All records schedules and categories within the Fiscal Service File Plan are approved by NARA.

## ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:

These records are maintained in controlled access areas. Identification cards are verified to ensure that only authorized personnel are present. Electronic records are protected by restricted access procedures, including the use of passwords and sign-on protocols, that are periodically changed. Only employees whose official duties require access are allowed to view, administer, and control these records. Copies of records maintained on a computer have the same limited access as paper records.

## RECORD ACCESS PROCEDURES:

Individuals requesting information under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## CONTESTING RECORD PROCEDURES:

Individuals seeking to contest and/or amend records under the Privacy Act must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

25-cv-00430_DMD_UST_0207

## NOTIFICATION PROCEDURES:

Individuals seeking to be notified if this system of record contains a record pertaining to himself or herself must follow the procedures set forth in the regulations of the U.S. Department of the Treasury published in 31 CFR part 1, subpart C, Appendix G.

## EXEMPTIONS PROMULGATED FOR THE SYSTEM:

Records maintained in this system have been designated as exempt from *5 U.S.C. 552a(c)(3)*, (d)(1), (2), (3), and (4), (e)(1), (e)(4)(G), (H), and (I), and (f) pursuant to *5 U.S.C. 552a(k)(2)*. See *31 CFR 1.36*.[7]

## HISTORY:

Notice of this system of records was last published in full in the **Federal Register** on August 17, 2011 (*76 FR 51128*) as the Department of the Treasury, Bureau of the Public Debt .009—U.S. Treasury Securities Fraud Information System.

[FR Doc. 2020-03969 Filed 2-26-20; 8:45 am]

BILLING CODE 4810-35-P

## Dates

**DATES:** Submit comments on or before March 30, 2020. The new routine uses will be applicable on March 30, 2020 unless Treasury receives comments and determines that changes to the system of records notice are necessary.

## Contacts

---

[7]     As noted in the Supplementary Information section, this SORN is the successor to BPD SORN .009 (U.S. Treasuries Securities Fraud Information System). Therefore, references to BPD .009 in 31 CFR part 1 should be construed as a reference to this SORN.

25-cv-00430_DMD_UST_0208

**ADDRESSES:** David J. Ambrose, Chief Security Officer/Chief Privacy Officer, Bureau of the Fiscal Service, 3201 Pennsy Drive, Warehouse "E", Landover, MD 20785.

**FOR FURTHER INFORMATION CONTACT:** David J. Ambrose, Chief Security Officer/Chief Privacy Officer, Bureau of the Fiscal Service, 202-874-6488.

FEDERAL REGISTER

End of Document

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, et al., | |
| Plaintiffs, | |
| v. | Case No. 8:25-cv-430-DLB |
| SCOTT BESSENT, et al., | |
| Defendants. | |

## CERTIFICATION OF ADMINISTRATIVE RECORD

I, Bonnie Hochhalter, am currently employed as the Deputy Chief Human Capital Officer for the U.S. Department of Education. I am familiar with the claims asserted against the Department of Education in the above-captioned action regarding the granting of access to data systems to employees implementing Executive Order 14,158.

I hereby certify, to the best of my knowledge, that the accompanying administrative record is complete and contains all non-deliberative documents and materials directly or indirectly considered regarding the Department of Education actions challenged in this case.[1] Among these documents and materials, the Department of Education has duly evaluated all predecisional documents before excluding them from the record.

---

[1] Notwithstanding the Court's order to file an administrative record in this case, Defendants maintain that the Amended Complaint does not challenge any final agency action and reserve their right to argue in further proceedings in this case, including in any subsequent appeal, that the Administrative Procedure Act does not provide for review.

In accordance with 28 U.S.C. § 1746, I hereby certify and declare under penalty of perjury

that the foregoing is true and correct to the best of my knowledge, information, and belief.

_____    3/7/2025
[NAME]

2

JA548

**Index for Administrative Record of the U.S. Department of Education**

| | | Title of Document | Bates Range |
|---|---|---|---|
| | 1 | Executive Office of the President, U.S. DOGE Service, Terms and Conditions for Reimbursable Work, Department of Education | ED-000001 – ED-000004 |
| | 2 | ED-1 Employee Memorandum of Understanding | ED-000005 – ED-000007 |
| | 3 | ED-1 Employee Memorandum of Understanding | ED-000008 |
| | 4 | ED-2 Employee Request for Schedule C Appointment | ED-000009 |
| | 5 | ED-2 Employee Appointment Letter | ED-000010 – ED-000012 |
| | 6 | ED-3 Employee Memorandum of Understanding | ED-000013 – ED-000016 |
| | 7 | ED-4 Employee Consultant Agreement | ED-000017 – ED-000020 |
| | 8 | ED-4 Employee SF-61 | ED-000021 |
| | 9 | ED-4 Employee Waiver | ED-000022 |
| | 10 | Executive Order 14,158, 90 Fed. Reg. 8,441 (Jan. 29, 2025) | ED-000023 – ED-000024 |
| | 11 | DOGE Authorization Memo | ED-000025 |
| | 12 | Rules of Behavior | ED-0000026 – ED-000029 |



Executive Office of the President
U.S. DOGE Service



## Terms and Conditions for Reimbursable Work

## Department of Education (ED)

**PURPOSE**

This document establishes the Terms and Conditions for reimbursable work by the United States DOGE Service (USDS) for the Department of Education (ED). When referred to collectively, USDS and ED are referred to as the "parties." This agreement formalizes and supersedes the prior oral agreement, written interim assignment agreement, and supporting documentation between USDS and ED and governs relations between the two parties going forward.

**AUTHORITY**

The Economy Act, 31 U.S.C. § 1535, provides that an agency may place an order with a major organizational unit within the same agency or another agency for goods or services if: (A) amounts are available; (B) the ordering agency decides the order is in the best interest of the United States Government; (C) the agency to fill the order is able to provide or get by contract the ordered goods or services; and (D) the agency decides ordered goods or services cannot be provided by contract as conveniently or cheaply by a commercial enterprise (payments must be made on the basis of the actual cost of goods or services provided).

This agreement generally requires reimbursement as described below. The legal authority for any non-reimbursable details arises from decisions of the Comptroller General setting forth exceptions to the general rule that a non-reimbursable detail between Federal agencies constitutes a violation of the Purpose Statute (31 U.S.C. § 1301) by the loaning agency and an improper augmentation of appropriated funds by the gaining agency.  Specifically, the Comptroller General recognizes the following two exceptions allowing non-reimbursable details: (1) "where they involve a matter similar or related to matters ordinarily handled by the loaning agency and will aid the loaning agency in accomplishing a purpose for which its appropriations are provided," or (2) details that have a negligible impact on the loaning agency's appropriations.  See HHS Detail of Office of Community Services Employees, B-211373 (Mar. 20, 1985).

**PERIOD OF AGREEMENT**

The terms and conditions described are effective from **January 20, 2025, through July 4, 2026**, subject to the availability of appropriations. The parties may extend this agreement through a written, signed modification.

**SCOPE OF WORK**

During their assignment, USDS employees detailed to ED will support IT modernization at ED including:
- Providing software engineering, modern architecture and system design, project and team leadership, software delivery, security and site reliability engineering, data engineering, engineering management, and/or executive leadership expertise to champion and deliver modern technology.
- Performing a wide range of activities including debugging, software testing, and programming. USDS employees will quickly adapt and learn by problem-solving within legacy systems and organizational

USCA4 Appeal: 25-1282      Doc: 39-1      Filed: 04/14/2025      Pg: 553 of 582

JA550

constraints while working collaboratively for rapid prototyping. They will assess the state of current projects in agencies and plans and/or leads interventions where major corrections are required.

- Assisting on IT projects including infrastructure, implementing safeguards to prevent fraud, and ensuring the integrity and success of these efforts.
- Championing data strategies and building interoperability across other agencies as well as internal and external stakeholders.

USDS is seeking to detail up to 5 full-time equivalent positions (FTEs), acknowledging that USDS may choose to provide a number of FTEs less than 5 at any given time and/or partial FTEs. The parties can change who from USDS is detailed to ED under this agreement so long as the total number of detailees at any given time does not exceed 5. Should USDS require payment for reimbursables services, the parties agree to amend these terms and conditions to ensure proper reimbursement as required by applicable law.

**ADDITIONAL TERMS**

All parties acknowledge:

- The Supervisor for detailees will be the Secretary of the Department of Education, Chief of Staff of the Department of Education, or their designees.
- USDS full-time equivalent (FTE) employees will maintain coverage under Federal retirement, group health benefits, and life insurance during the assignment; employees' shares of costs for such coverage will continue to be withheld from salary.
- USDS FTE employees will continue to accrue annual and sick leave.
- Each USDS employee will have an email account and necessary devices provided by the Executive Office of the President (EOP).
- ED will provide USDS detailees with access to all ED systems on USDS employees' EOP devices to the maximum extent allowable by law; to the extent new e-mail accounts or new devices are required by law, ED will provide those accounts and devices.
- These terms and conditions are strictly for internal management purposes for each of the parties. These terms and conditions shall not be construed to provide a private right or cause of action for or by any person or entity.

USDS will:

- Maintain personnel records for the detailees, including official time and attendance and formal annual and mid-year performance evaluations as applicable, per USDS policy.
- Manage detailees' leave requests. Leave requests by the detailees will be made to USDS.
- Maintain the detailees' security clearance.
- For administrative purposes, continue to be the supervisor of record for the USDS detailees, to include maintaining their official time and attendance records.
- Promptly notify and coordinate with ED and ED's Office of the General Counsel if any work in this matter becomes the subject of a request for information (such as under the Freedom of Information Act or by the media) or any oversight inquiry from, for example, a Congressional committee, any federal Office of Inspector General, or the Government Accountability Office (GAO).

ED will:

- Provide all necessary identification to allow access and communications, to include badges, network access, and permissions for assignees to complete work for ED. This access includes enabling the detailees to access and store documents related to their work for ED on ED's network and/or hardware. ED will provide USDS detailees with this access on USDS detailees' EOP devices to the

JA551

USCA4 Appeal: 25-1282      Doc: 39-1         Filed: 04/14/2025      Pg: 554 of 582

maximum extent practical and allowable by law; to the extent new e-mail accounts or new devices are required by law, ED will provide those accounts and devices.

- Authorize access, to the extent consistent with law, to ED data systems to enable detailees to perform the work described above. When performing work for ED, detailees will be treated as employees of ED for purposes of data access.
- Ascertain and mitigate any conflicts of interest or confidentiality protocols during the assignment.
- Provide written input for the detailees' performance evaluations and other feedback, as applicable.
- Provide technical and operational support to the detailees for all ED activities related to this assignment.
- Cover any travel or training expenses required by ED to achieve the assignment objectives.
- Maintain records for detailees, including all project-related documents that must be maintained pursuant to the Federal Records Act and ED's policy.
- Create a process by which ED will: (1) review any final project-related documents created by the detailees that may contain legally protected information, and (2) inform the detailees of any information in those documents that ED considers legally protected.
- Promptly notify and coordinate with USDS if the detailees' work in this matter becomes the subject of a request for information (such as under the Freedom of Information Act or by the media) or any oversight inquiries from, for example, a Congressional committee, any federal Office of Inspector General, or the Government Accountability Office (GAO).

USDS detailees will:
- Complete work identified in the Scope of Work.
- Remain under the administrative control of the USDS supervisor for timesheet and other purposes, but report to the ED supervisor regarding substantive work performed for ED.
- Advise the USDS timekeeper of any leave taken during the assignment.
- Retain access to their USDS e-mail accounts during the assignment for purposes of receiving and responding to notifications from USDS.
- Complete EOP's mandatory records management training at https://eop.usalearning.net/, certify completion by e-mailing a copy of the certificate of completion to the USDS General Counsel and attend any mandatory records briefing assigned by the USDS General Counsel.
- In performing work for ED, follow all ED information security, records, and related requirements, such as any requirements specified in ED information security training and rules of behavior agreements, including:
  - Not knowingly take any actions that undermine ED's responsibilities under governing statutes, regulations, or directives, including but not limited to FISMA, FITARA, the Privacy Act, and the Trade Secrets Act.
  - Not knowingly take any measures that create cybersecurity risks to ED's systems.
  - Not knowingly access ED systems in a manner that fails to comply with all relevant federal, security, ethics, and confidentiality laws, regulations, and policies, including ED records management and information security requirements.
  - Access ED data, information, and systems for legitimate purposes, including but not limited to IT modernization, the facilitation of ED operations, and the improvement of government efficiency.
  - Comply with the requirements of the Privacy Act for information that ED collects on individuals, including, if necessary, publishing or amending Systems of Records Notices to adequately account for the information it collects.
  - To the greatest extent possible, use the program agency system documentation to understand how to use the data and information which is being accessed.

3

USCA4 Appeal: 25-1282   Doc: 39-1   Filed: 04/14/2025   Pg: 555 of 582

- Appropriately mark as "PREDECISIONAL/DELIBERATIVE/PRIVILEGED" documents created by them under this agreement that contain opinions, analysis, or ideas exchanged as part of a process that might lead to a final policy or operational decision by ED.

**CONTACT INFORMATION**

| ED POC | | USDS POC | |
|---|---|---|---|
| **NAME** | Rachel Oglesby | **NAME** | ▮▮▮▮▮▮▮ |
| **ADDRESS** | U.S. Department of Education<br>Lyndon Baines Johnson Building<br>400 Maryland Avenue, SW<br>Washington, DC 20202 | **ADDRESS** | U.S. DOGE Service, EOP<br>Eisenhower Executive Office<br>Building<br>Washington DC 20503 |
| **EMAIL** | ▮▮▮▮@ed.gov | **EMAIL** | ▮▮▮▮@omb.eop.gov |
| **PHONE** | (202)▮▮▮▮ | **PHONE** | (202)▮▮▮▮ |

**SIGNATURES**
Authorization of the agreement:

James Bergeron
**Acting Under Secretary**
**Department of Education**

$2/12/25$
Date

/s/ ▮▮▮▮▮▮

▮▮▮▮▮▮ (USDS Approver)
Special Advisor
U.S. DOGE Service

February 12, 2025

Date

4

JA553

MEMORANDUM OF UNDERSTANDING
OFFICE OF PERSONNEL MANAGEMENT
AND
THE DEPARTMENT OF EDUCATION
Office of the Secretary

## I.    PURPOSE

To request a detail for        ED-1        (the Detailee), from the Office of Personnel Management (OPM) to the Department of Education (ED), Office of the Secretary. This agreement formalizes the prior oral agreement and supporting documentation between OPM and ED and governs relations between the two agencies going forward.

## II.    DESCRIPTION OF SERVICES AND ACTIVITIES

During this detail, the Detailee will work in the Office of the Secretary (OS). The Detailee will serve as Senior Advisor. Specific tasks will include: Conduct research to support EOP Department of Government Efficiency efforts.

### DUTIES:

The Detailee will conduct research to support EOP Department of Government Efficiency efforts.

**The Office of the Secretary will perform the following tasks:**

a) Provide office space and materials necessary for building access and communications, including badges, phones, and computers, as required to conduct ED work.
b) Cover expenses only for travel, training, or other costs specifically required and pre-approved for the Detailee to fulfill his/her detail assignment (unless otherwise agreed between the ED and OPM).
c) Determine the work schedule for the Detailee, subject to applicable federal regulations, and approve any requests for leave.        •
d) Advise the Detailee of any applicable ethics and confidentiality requirements that may apply in OS in addition to the Home Agency/Department's ethics and confidentiality requirements.
e) Ensure that the Detailee receives feedback on Detailee's activities during the course of the detail.
f) Provide feedback to ED supervisor to assist in the Detailee's performance review.
g) Ensure the necessary record(s) are collected to document work performed by the Detailee during the detail.
h) Notify OPM once the 130-day limit is met.

## III.    SUPERVISION

During the detail, supervision of the Detailee will be provided by Rachel Oglesby.

## IV.    ETHICS RULES AND REGULATIONS

a) The Detailee is subject to the Federal statutory and regulatory provisions that govern ethical and other standards of conduct, conflicts of interest, and limitations on political activity (18 U.S.C. §§ 203, 205, 207, and 208, 5 C.F.R. Parts 2635, and 5 U.S.C. §§ 7321 – 7326, 5 C.F.R. Part 733, and 5 C.F.R. Part 734).
b) Consistent with the implementing regulations of 5 C.F.R. part 2634, the Detailee should continue to file his/her required financial disclosure reports with OPM while on detail.

c) OPM is responsible for ensuring that the Detailee receives required ethics training.
d) The Detailee will not knowingly take any actions that undermine ED's responsibilities under governing statutes, regulations, or directives, including but not limited to FISMA, FITARA, the Privacy Act, and the Trade Secrets Act.
e) The Detailee will not knowingly take any measures that create cybersecurity risks to ED's systems.
f) The Detailee will not knowingly access ED's systems in a manner that fails to comply with all relevant federal, security, ethics, and confidentiality laws, regulations, and policies, including ED records management and information security requirements.
g) The Detailee will access ED data, information, and systems for legitimate purposes, including but not limited to IT modernization, the facilitation of ED operations, and the improvement of government efficiency.
h) The Detailee will comply with the requirements of the Privacy Act for information that ED collects on individuals, including, if necessary, publishing or amending Systems of Records Notices to adequately account for the information it collects.
i) The Detailee will, to the greatest extent possible, use the program agency system documentation to understand how to use the data and information which is being accessed.
j) The Detailee will have access, to the extent consistent with law, to ED data systems to enable Detailee to perform the work described above. When performing work for ED, Detailee will be treated as an employee of ED for purposes of data access.

## V.   COSTS/TRANSFER OF FUNDS

The Detailee is working for OPM under a gratuitous services agreement. As a result, OPM is not incurring any costs and ED will not be required to provide any reimbursement.

## VI.   AUTHORITY

The Economy Act, 31 U.S.C. §§ 1535 - 1536

## VII.   PERIOD OF AGREEMENT AND CANCELLATION PROVISIONS

- The Detailee will be detailed to the Office of the Secretary for a period not to exceed 130 days.
- This agreement shall become effective when signed by both parties.
- The agreement may be terminated unilaterally by either party through written notice provided at least 14 calendar days prior.
- The agreement may be otherwise modified or extended at any time by mutual consent of the parties.
- The Detailee is appointed as a Special Government Employee (SGE) pursuant to 18 U.S.C. §202, and therefore may not serve in that capacity for more than 130 days in a 365-day period. Any day on which work if performed for the Government (compensated or not) should be counted as a day, regardless of the amount of time worked that day or the nature of the services. However, uncompensated activities limited to strictly administrative matters, uncompensated brief communications, and uncompensated brief periods of reading or other preparation performed at a setting away from a Government workplace, need not be counted.

## VIII.   PERFORMANCE RATING

The Detailee Employee Performance Management System evaluations for 2025 will be completed by ED with input from Rachel Oglesby, in the Office of the Secretary, who can be reached at rachel.oglesby@ed.gov.

## IX.   LEAVE

The Detailee does not accrue annual or sick leave.

## X.    CONTACTS

Office of Personnel Management:
Andrew Kloster
General Counsel

Department of Education:
Richard Smith
Deputy Secretary (Delegated)

## XI.    AUTHORIZING SIGNATURES AND DATES

The undersigned, on behalf of their respective offices, approve the terms of this agreement.

### APPROVED AND ACCEPTED

_____    2/12/2025
Carmen E. Garcia                        Date
Chief Human Capital Officer
Office of Personnel Management
carmen.garcia@opm.gov

_____    2/12/25
James P. Bergeron                        Date
Acting Under Secretary (Delegated)
U.S Department of Education
james.bergeron@ed.gov

JA556

2/12/25                                                                                      1

## MEMORANDUM OF UNDERSTANDING BETWEEN THE SOCIAL SECURITY ADMINISTRATION, THE OFFICE OF PERSONNEL MANAGEMENT, THE DEPARTMENT OF EDUCATION, AND APPOINTEE    ED-1

During Appointee's term of service at the Social Security Administration (SSA), Appointee may also serve as an unpaid Special Government Employee (SGE) for the Office of Personnel Management (OPM) and the Department of Education . The Appointees duties, qualifications, and salary are contained in the attached Expert or Consultant Appointment Request & Certification (Appointment Request and Certification). To ensure compliance with applicable law, the Appointee, OPM, the Department of Education (DoEd.), and SSA (the parties) enter into this Memorandum of Understanding (MOU) and agree as follows:

1.  During Appointee's term of service to SSA, Appointee will receive payment, as described in the Appointment Request and Certification, from SSA.
2.  Neither OPM nor DoEd. shall not pay Appointee during his SSA term of service.
3.  While on duty time at SSA, Appointee shall only perform duties for SSA.
4.  While on duty time at SSA, Appointee shall not perform any work for or on behalf of OPM or DoEd..
5.  Appointee shall perform SSA work only at SSA Headquarters (HQ) in Woodlawn, Maryland.
6.  Appointee shall not perform any work for OPM or DoEd.at SSA facilities, including but not limited to SSA HQ.
7.  SSA, OPM and DoEd. shall provide any equipment or systems access to ensure access to their respective networks. Neither SSA, OPM nor DoEd. shall be responsible for providing access to the other agency's network or systems.
8.  Appointee shall not perform work for either OPM or DoEd. using SSA equipment or resources.
9.  Appointee shall not perform SSA work using either OPM or DoEd. equipment or resources.
10. Appointee shall not share any Personally Identifiable Information accessed or obtained through the use of SSA systems or work performed for SSA, with any external entity, organization, or agency federal or state, including OPM and DoEd.
11. Appointee shall not share or disclose SSA information that is non- PII, non-public information with any non-federal entity.  Any disclosure of non- PII, non-public information to another federal entity, organization, or agency shall be made only with expressed permission of the Office of the Commissioner.
12. Appointee shall not share or disclose OPM or DoEd. information to SSA without appropriate permission from each agency's appropriate authorizing official.
13. Appointee shall abide by all SSA regulations and policies regarding access to and protection of any agency records, information, and work products.
14. Appointee shall abide all SSA regulations and policies regarding ethics and employee conduct.
15. In the event of any lapse in appropriations, the Appointee will follow the instructions issued by SSA related to his SSA service.

## AUTHORIZING SIGNATURES AND DATES

The signatories below warrant and represent that they have the competent authority on behalf of their respective agencies to enter into the obligations set forth in this MOU.  This agreement will become effective on the date it is signed by last party.

| Social Security Administration | Office of Personnel Management | Department of Education |
|---|---|---|
| [NAME] [TITLE] | *Brian Bjelde* [NAME] Brian Bjelde [TITLE] Senior Advisor to Acting Director of OPM 2/12/2025 | James P. Bergeron Acting Under Secretary |
| Date: | Date: | Date: 02/12/25 |

**Appointee**

ED-1

Ā _____    Date: 02/12/2025

JA557

# Request for Schedule C Appointing Authority

| | | |
|---|---|---|
| **Agency Name:** DEPARTMENT OF EDUCATION | | **Print Date:** |
| **POC:** MARGARET FERRELL | **Phone:** (202) 453-6115 | **Fax:** |
| **Request No:** DB250077 | **Request Type:** APPOINTMENT | **Position:** REGULAR C |
| **Candidate:** ED-2 | **Grade/Step:** GS15/6 | **Salary:** $195,200 |
| **Position No:** DBGS61164 | **Title:** SENIOR ADVISOR | |
| **Series:** 00301 | **Desc:** MISCELLANEOUS ADMINISTRATION AND PROGRAM | |

**Date PD certified as Schedule C per 5 CFR 213.3301(a):** 01/31/2025

| | | |
|---|---|---|
| **Organization ID:** 10000 | **Org. Name:** OFFICE OF THE SECRETARY | |
| **Supervisor No:** | **Supv. Title:** | |
| **Supervisor Name:** | | **Supv. Position Type:** |
| **GEO Location:** WASHINGTON | | |

## Schedule C Certification Statement

Under 5 CFR 213.3301(a), the position listed above is excepted from the competitive service because of its confidential or policy-determining character. Per 5 CFR 213.3301(b), I certify that the Schedule C appointment for this position, was not created solely or primarily for the purpose of detailing the appointee to the White House.

Department / Agency Head or Designee:     Denise L. Carter

Signature: _Denise L Carter_     Date Signed: 01/31//2025

## Agency White House Liaison

Name: Stephen A. Warzoha     Phone: 202-374-6144

Signature: _____     Date Signed: 01/31/2025

## OPM USE ONLY

[X] Approved          [ ] Disapproved          [ ] Return without Action

OPM Approving Official: _____     Date Signed: 1/31/2025

**Email to: Senior Executive Resource Services at SERS@OPM.GOV**

**Source: Office of Personnel Management**     **Report 1019, Version March 2018**



UNITED STATES DEPARTMENT OF EDUCATION

January 31, 2025

Dear     ED-2     ,

Your excepted service appointment as a Senior Advisor, GS-0301-15, Step 6, with a salary of $195,200 per annum in the Office of the Secretary, located in Washington, DC will be effective on January 31, 2025. Your first day on duty will be Friday, January 31, 2025.

This is an excepted service appointment, of a political, confidential or policy determining nature. As such, employment under this appointment is subject to change at the discretion of the Administration and may be terminated at any time.

### Background Investigation/Security Clearance

In accordance with Executive Order 10450 – "Security Requirements for Government Employment," Homeland Security Presidential Directive 12 (HSPD-12) – "Policy for a Common Identification Standard for Federal Employees and Contractors," 5 CFR 731 - Suitability, and Departmental policy, the U.S. Department of Education is required to ensure that individuals employed by the Department meet certain background investigation criteria commensurate with their position duties and system access requirements. The Department of Education follows guidelines established by the Office of Personnel Management to assess position risk or sensitivity levels, in order to determine appropriate background investigation requirements.

All Department of Education employees must undergo an initial background investigation, followed by a reinvestigation every five years. Successfully completing a full background investigation with favorable adjudication and maintaining the required suitability is a condition of Federal employment.

Our Personnel Security office has conducted a preliminary review of your background investigation package and determined you can be allowed to onboard pending completion and favorable adjudication of your background investigation.

### Federal Government Ethics

Based on your new appointment as a Senior Advisor, GS-0301-15, Step 6, in the Office of the Secretary, you are required to file a public financial disclosure report (OGE Form 278e) **<u>no later than March 2, 2025</u>**. The Ethics in Government Act (Act) requires individuals who are appointed to certain designated positions to file an OGE Form 278e within 30 days after appointment to that position. This email contains important information regarding reporting requirements and for creating your account.

If you are not expected to serve in this position for at least 60 days, you may not be required to file an OGE Form 278e. If you do not expect to serve in this position for at least 60 days in a calendar year, you should contact the Ethics Division in the Office of the General Counsel **immediately** to determine your filing status. You may request an initial 45-day extension from the Ethics Division to file and complete the OGE Form 278e; however, you must submit your extension request **before** the due date. Below is some additional information about public financial disclosure reporting.

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

- On April 4, 2012 the Stop Trading on Congressional Knowledge Act (STOCK Act) was signed into law. The STOCK Act added requirements to the Public Financial Disclosure System mandated by the Act. Specifically, Section 6 of the STOCK Act requires that employees who are required to complete an OGE Form 278e must also report transactions involving securities on an ongoing basis. Pursuant to this new provision, filers must report transactions the earlier of 30 days after receiving notice of the transaction, or 45 days after the transaction has actually occurred. In addition, filers must also report the transactions of a spouse and/or dependent child. These transactions are to be reported on the OGE Form 278-T.
- ED is currently using an e-filing system, called INTEGRITY.gov, which is hosted in a secure Government cloud, works with modern Internet browsers, and operates on the OMB Max.gov platform. For more information about OMB Max.gov, please visit: https://max.omb.gov/maxportal/home.action/.
- All ED employees who are required to file an OGE Form 278e and/or an OGE Form 278-T must use INTEGRITY.gov to file these reports. To create an account, go to https://Integrity.gov. To log in, type your "user-name", which is your ED "ed.gov" email address and click the link that says "Forgot, set, or change your password". You will be redirected to set up your OMB Max.gov password. After completing this process, you may get started on filing your report(s).

**If you submit your report (either the OGE Form 278e or the OGE Form 278-T) more than 30 days past the stated above due date or extension date, a $200 late filing fee will become due at the time of filing**, pursuant to section 104(d) of the Act. In addition, ED is required to refer to the Attorney General the name of any individual when there is reasonable cause to believe that such individual has willfully failed to file an OGE Form 278e. The Act also states that any individual who knowingly or willfully falsifies or fails to report the required information may be assessed a civil penalty.

### Your First Day / Where to Report for Orientation

Please report to 400 Maryland Ave, SW, Washington, DC, at 9:00am and contact Camille Simonds at 202-453-5738. As a reminder, prior to conducting business on behalf of the Department, our division must be in receipt of your sworn affidavit statement (SF-61) and have verified your identity.

In addition, Camille Simonds, at Camille.Simonds@ed.gov, will contact you through email with an invitation to new employee orientation. As part of this orientation, you will be administered the oath of office and receive a series of briefings designed to ensure a successful transition to the Department.

### In Case of Inclement Weather

In the event that the D.C. metropolitan area experiences inclement weather conditions or another event that may close or delay opening of the Federal government, new employees scheduled for orientation should check the operating status on www.opm.gov and follow any instructions on reporting to work for Federal workers and Government office delays and closures.

### Required Identification Documents

You must provide scanned copies of the following items for your I-9 identification.

Acceptable identification documents include:

- U.S. Passport

Or two of the following:

- State-issued photo driver's license or photo ID card
- Original or certified copy of birth certificate
- Social Security Card

Failure to provide any of these required items or forms to orientation/your first day may delay the processing of your appointment, benefits, and first paycheck.

**Completing and Submitting Employment Forms**

The attached "List of Employment Forms" identifies the employment forms you should complete before or on your first day and when they are due. You will need to submit all forms to Camille Simonds via email at Camille.Simonds@ed.gov. If you encounter any difficulties in opening or completing the forms, please contact me as soon as possible.

**Failure to submit any of the required employment forms in by the specified due dates may delay the processing of your appointment, benefits, and first paycheck.**

If you have questions prior to your first day, please do not hesitate to contact me at Ann.Ferrell@ed.gov.

Sincerely,

*Ann Ferrell*
Human Resources Specialist
U.S. Department of Education

Attachments: List of Employment Forms

CC: Steve Warzoha
     Taronda Wallace
     Latonya Davis
     Holly Williams
     Cherese Beckwith
     Reona Shannon







JA564



**U.S. DEPARTMENT OF EDUCATION**
**EXPERT OR CONSULTANT APPOINTMENT REQUEST**
Reference: 5 CFR 304 and 5 U.S.C. 3109

| 1. NAME OF PERSON (Last, First, MI): ED-4 | 2. TOTAL PERIOD FOR WHICH APPOINTMENT IS REQUESTED: |
|---|---|
| | FROM: 2/4/25  TO: 8/4/25    May not exceed one year |

| 3. MAILING ADDRESS AND EMAIL ADDRESS: | 4. APPROXIMATE NUMBER OF DAYS PERSON IS EXPECTED TO PERFORM SERVICES DURING THIS APPOINTMENT: |
|---|---|
| [REDACTED] | 180   (May not exceed one year) |

| 5. PRINCIPAL OFFICE: | 6. SUPERVISOR NAME AND TITLE: |
|---|---|
| OFFICE OF THE SECRETARY | |

**7. TYPE OF POSITION:**

[ ] Expert - This position requires the services of a specialist with skills superior to those of others in the same profession, occupation, or activity to perform work on a temporary and/or intermittent basis assigned by a Federal official.

[X] Consultant - This position requires providing advice, views, opinions, alternatives, or recommendations on a temporary and/or intermittent basis on issues, problems, or questions presented by a Federal official.

**8. TYPE OF APPOINTMENT:**

[X] New Appointment        [ ] Reappointment

**9. PRIOR EXPERT OR CONSULTANT APPOINTMENTS**

A. [X] No Prior Appointment   [ ] Prior Appointment - Same Services   [ ] Prior Appointment - Substantially Different Services

B. Dates of Prior Service: _____ - _____

C. Number of Hours or Days Paid (Annual Basis Calculation): _____ Hours   (may not exceed 130 days or 1040 hours)

OR Amount of Cumulative Earnings on Expert or Consultant Appointments: _____ *

*(Cumulative earnings for all appointments, including this request may not exceed twice the rate of the GS 15/10)\**

| 10. WORK SCHEDULE: | 11. BASIS FOR CALCULATION FOR SERVICE LIMITS: |
|---|---|
| [ ] Full Time (80 Hours per pay period)   [X] Part Time | [X] Annual   [ ] Cumulative Earnings |
| [ ] Intermittent | |
| (up to 80 Hours per pay period with no regularly scheduled tour of duty) | |

**12. RATE OF PAY:**

[ ] per hour   [ ] per day   [ ] per annum   [X] unpaid

**13. BACKGROUND INVESTIGATION AND PRE-EMPLOYMENT REQUIREMENTS** *(to be completed by Personnel Security)*

| Sensitivity Level | Background Investigation Type | Drug Testing Requirement |
|---|---|---|
| Non-Sensitive/Public Trust | T4 | [ ] Yes   [X] No |

Signature: LISA SENECAL   Digitally signed by LISA SENECAL Date: 2025.02.04 12:08:54 -05'00'   Date: 02/04/25

ED-EMHC-020.01 12/17                    Page 1 of 4

**EXPERT OR CONSULTANT Appointment Request**
*Reference: 5 CFR 304 and 5 U.S.C. 3109*

**14. SERVICES TO BE PERFORMED**

**A. Explain in full the services to be performed.**

ADVISING THE DEPARTMENT ON CHANGE MANAGEMENT.
PERFORMING COST REDUCTIONS.
NO ONE ELSE AT THE AGENCY IS PERFORMING THESE FUNCTIONS.

**B. Specify what duties will be assigned that will involve the person in the transaction of business on behalf of the government with any profit or non-profit organization.**

NONE

**C. Specify what duties will be assigned that will involve the person in the rending of advice to the government which will have direct and predictable effect on the interests of any profit or non-profit organization.**

LESS DOLLARS WILL FLOW FROM DEPARTMENT OF ED
TO MANY NON-PROFIT AND FOR PROFIT INSTITUTIONS
AND COMPANIES.

**D. Special qualifications of the person recommended for appointment which relate specifically to the services to be performed.**

VERY SIGNIFICANT EXPERIENCE IN EDUCATION & TECHNOLOGY.

Page 2 of 4

JA567

**EXPERT OR CONSULTANT Appointment Request**
*Reference: 5 CFR 304 and 5 U.S.C. 3109*

## 15. CERTIFICATION AND APPROVAL

I certify that:

- this position meets the requirements for use of an Expert or Consultant appointment authority;

- the individual being appointed possess the requisite qualifications as follows:

    Expert - The appointee is specifically qualified by education and experience to perform difficult and challenging tasks in a particular field beyond the usual range of achievement of competent persons in that field. The appointee is regarded by others in the field as an authority or practicioner of unusual competence and skill in a professional, scientific, technical or other activity.

    Consultant - The appointee can provide valuable and pertinent advice generally drawn from a high degree of broad administrative, professional or technical knowledge or experience. Appointees to advisory boards/commissions are affected by a particular program and can provide useful views from personal experience.

- this position will not be used to perform SES, managerial or supervisory work; make final decisions on substantive policies

- this appointment is in compliance with law, relevant decisions of the Comptroller General, and Office of Personnel Management and Department policies and instructions;

- the services of the individual are essential for effective program management;

- the pay level is appropriate for the duties to be performed and the qualifications of the appointee;

- the record of appointment has been clearly documented to show the services to be performed and the special qualifications of the appointee which relate specifically to those services;

- a statement of employment and financial interests has been obtained and it has been determined that no conflict of interest exists;

- All responsible clearing offices have reviewed and consulted on the expert or consultant appointment;

- Office of the Executive Secretariat has coordinated review of this appointment and the Secretary has authorized submission for final approval;

- I am authorized to make hiring decisions.

| Principal Office Head Approval | Appointing Official *(Chief Human Capital Officer or Designee)* |
|---|---|
| Name:  Rachel Oglesby | Name:  Jacqueline Clay |
| Title:  Chief of Staff | Title: Director, Chief Human Capital Officer *(or Designee)* |
| Signature: *Rachel Oglesby* | Signature: *[signature]* |
| Date:  02/04/2025 | Date:  2-4-25 |

## 16. REQUEST TO AMEND WORK SCHEDULE WITH NO OTHER CHANGES TO ITEMS 7-15

| Full Time (80 hours per pay period) | Part time | Intermittent |
|---|---|---|

| Principal Office Head Approval | Appointing Official *(Chief Human Capital Officer or Designee)* |
|---|---|
| Name: | Name: |
| Title: | Title: *CHCO/DAS for Human Resources* |
| Signature: | Signature: |
| Date: | Date: |

Page 3 of 4

# APPOINTMENT AFFIDAVITS

| | |
|---|---|
| Consultant | 02/04/2025 |
| (Position to which Appointed) | (Date Appointed) |

| | | |
|---|---|---|
| Department of Education | OS | Washington, DC |
| (Department or Agency) | (Bureau or Division) | (Place of Employment) |

ED-4

I, _____, do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

ED-4

_____
(Signature of Appointee)

Subscribed and sworn (or affirmed) before me this 4 day of February , 2025

at Washington                    DC
         (City)                              (State)

(SEAL)
                                        _____
                                        (Signature of Officer)

Commission expires_____        Director, Executive Resources
(If by a Notary Public, the date of his/her Commission should be shown)        (Title)

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

JA570



UNITED STATES DEPARTMENT OF EDUCATION

February 4, 2025

<u>MEMORANDUM</u>

TO:        Richard Lucas
           Acting Assistant Secretary
           Office of Finance and Operations

FROM:      Denise Carter
           Acting Secretary
           Office of the Deputy Secretary

SUBJECT:   Waiver of the Pre-Appointment Background Investigation Requirement
           for Appointment to a High Risk/Public Trust Position for    ED-4

This is a request for a waiver of the pre-appointment background investigation requirement for
appointment to a High Risk/Public Trust position for    ED-4    This individual has been selected
for the position of Consultant, OS.

Due to the presidential transition, we are requesting a temporary waiver to the personnel security vetting
requirements in order to expedite the onboarding of    ED-4    All required documentation will be
provided for the appropriate background investigation no later than February 7, 2025. It is in the
Department's best interest to fill this appointment as soon as possible.

**ACTING ASSISTANT SECRETARY FOR THE OFFICE OF FINANCE & OPERATIONS**

Approve _____    ~~Disapprove~~ _____    Date _____

400 MARYLAND AVE., S.W., WASHINGTON, DC  20202
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global
competitiveness by fostering educational excellence and ensuring equal access.*

JA571

Federal Register / Vol. 90, No. 18 / Wednesday, January 29, 2025 / Presidential Documents    8441

## Presidential Documents

**Executive Order 14158 of January 20, 2025**

## Establishing and Implementing the President's "Department of Government Efficiency"

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1.** *Purpose.* This Executive Order establishes the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity.

**Sec. 2.** *Definitions.* As used in this order:

(a) "Agency" has the meaning given to it in section 551 of title 5, United States Code, except that such term does not include the Executive Office of the President or any components thereof.

(b) "Agency Head" means the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director, unless otherwise specified in this order.

**Sec. 3.** *DOGE Structure.* (a) *Reorganization and Renaming of the United States Digital Service.* The United States Digital Service is hereby publicly renamed as the United States DOGE Service (USDS) and shall be established in the Executive Office of the President.

(b) *Establishment of a Temporary Organization.* There shall be a USDS Administrator established in the Executive Office of the President who shall report to the White House Chief of Staff. There is further established within USDS, in accordance with section 3161 of title 5, United States Code, a temporary organization known as "the U.S. DOGE Service Temporary Organization". The U.S. DOGE Service Temporary Organization shall be headed by the USDS Administrator and shall be dedicated to advancing the President's 18-month DOGE agenda. The U.S. DOGE Service Temporary Organization shall terminate on July 4, 2026. The termination of the U.S. DOGE Service Temporary Organization shall not be interpreted to imply the termination, attenuation, or amendment of any other authority or provision of this order.

(c) *DOGE Teams.* In consultation with USDS, each Agency Head shall establish within their respective Agencies a DOGE Team of at least four employees, which may include Special Government Employees, hired or assigned within thirty days of the date of this Order. Agency Heads shall select the DOGE Team members in consultation with the USDS Administrator. Each DOGE Team will typically include one DOGE Team Lead, one engineer, one human resources specialist, and one attorney. Agency Heads shall ensure that DOGE Team Leads coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda.

**Sec. 4.** *Modernizing Federal Technology and Software to Maximize Efficiency and Productivity.* (a) The USDS Administrator shall commence a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems. Among other things, the USDS Administrator shall work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization.

**8442**    **Federal Register** / Vol. 90, No. 18 / Wednesday, January 29, 2025 / Presidential Documents

(b) Agency Heads shall take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems. USDS shall adhere to rigorous data protection standards.

(c) This Executive Order displaces all prior executive orders and regulations, insofar as they are subject to direct presidential amendment, that might serve as a barrier to providing USDS access to agency records and systems as described above.

**Sec. 5**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*January 20, 2025.*

[FR Doc. 2025–02005
Filed 1–28–25; 11:15 am]
Billing code 3395–F4–P



**U.S. Department of Education**
Office of the Chief Information Officer
Information Assurance Services

| | |
|---|---|
| **DATE:** | February 5, 2025 |
| **TO:** | All Department of Education IT Systems including associated: Assistant Secretaries, Authorizing Officials (AOs), Information System Owners (ISOs), Information System Security Officers (ISSOs), IT POCs, Contracting Officer Representatives (CORs), Contracting Officers (COs), Employees with Significant Security Responsibilities, Chief of Staffs and Executive Officers. |
| **FROM:** | Thomas Flagg *[signature]*  Digitally signed by THOMAS FLAGG  Date: 2025.02.05 10:02:55 -05'00'  Department of Education Authorizing Official/Chief Information Officer |
| **THROUGH:** | Peter Hoang, Acting Chief Information Security Officer (CISO)  Director, Information Assurance Services, Office of the Chief Information Officer  Frank Miller, Senior Agency Official for Privacy (SAOP)  Acting Director, Student Privacy Policy Office |
| **CC:** | Department of Government Efficiency (DOGE) Team Members |
| **SUBJECT:** | Access to All ED IT Systems by the United States DOGE Service (USDS) |

**INTRODUCTION:**

President Trump signed an Executive Order (EO) "Establishing and Implementing the President's "Department of Government Efficiency"" to implement the President's DOGE Agenda by modernizing Federal technology and software to maximize governmental efficiency and productivity. The EO also tasked Agencies to establish an internal DOGE team and allow full access to the DOGE Administrator to all unclassified agency records, software systems and IT systems.  This is to support the USDS Administrator Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems.  All ED Information System Owners (ISO) shall work with the USDS Administrator and internal DOGE Team members to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization.

This memorandum documents the need to know and authorizes USDS personnel onboarded to the Department of Education DOGE team full and prompt access to all unclassified IT systems and data. These new requirements support the implementation of the EO "Establishing and Implementing the President's "Department of Government Efficiency".[1]

**ACTIONS REQUIRED:**

In coordination with the USDS Administrator and to the maximum extent consistent with cybersecurity and privacy laws and requirements.  The USDS DOGE Team onboarded at the Department of Education shall adhere to rigorous data protection standards and applicable ED data protection policies in accordance with the EO.

---

[1] ESTABLISHING AND IMPLEMENTING THE PRESIDENT'S "DEPARTMENT OF GOVERNMENT EFFICIENCY"

400 Maryland Ave SW, Washington, D.C. 20202

*FOR INTERNAL USE ONLY*

JA574

# U.S. Department of Education
# Information Technology (IT) System Rules of Behavior

All Government and Contractor personnel of the Department of Education (ED) must follow the rules of behavior set forth in this document when accessing and using IT equipment, systems, and departmental data and information. The Department of Education computer network provides access to e-mail, the Internet, Intranet, and most other systems required for the execution of the Department's mission. All personnel authorized access will be held accountable for their actions. Violations of the rules of behavior will be brought to the attention of Management for action, as situations warrant (e.g., personnel found in violation may face disciplinary action). According to the Department's Handbook for Information Assurance (IA) Security Policy, personnel who violate the rules may have their access to the ED computer network revoked. The rules described below are not to be used in place of existing policy, rather they are intended to enhance and define the specific rules each user must follow while accessing the Department of Education computer network.

This applies to all Government and Contractor personnel who have access to Department of Education computer network systems, data, records, and files. Further, all Government and Contractor personnel must adhere to all Department of Education Policy, Guidance and Procedures which include, but are not limited to:

- You are prohibited from uploading offensive or objectionable material to, or downloading from, the Internet. Refer to "Personal Use of Government Equipment and Information Resources", dated April 16, 2006
- You must not knowingly, and with the intent to defraud the U.S. Government, access a protected computer without authorization, or beyond your authorization level
- You are prohibited from using the Department of Education computer network or computer equipment to engage in any activity that is illegal or otherwise expressly prohibited (e.g. political activity, lobbying activity prohibited by law or running a personal business). You are, however, permitted occasional personal use, provided that such use incurs only a negligible additional expense to the Department of Education; does not impede your ability to do your job, does not impede other employees' ability to do their jobs; occurs during off-duty hours, whenever possible; and, is not for the purpose of generating income for yourself or anyone else
- All computer resources (including personal computers, laptops, wireless devices, all parts of the Department of Education computer network, communication lines and computing facilities) are to be used in accordance with ED OCIO 1-104, "Personal Use of Government Equipment and Information Resources", policy
- Be aware that all Department of Education network and system resources used and accessed by Government and Contractor personnel are subject to periodic test, review, audit, and monitoring
- You must adhere to all Department of Education IT security policies, practices and procedures, as well as relevant Presidential Directives and Office of Management and Budget (OMB) memoranda
- You must adhere to the handling and disclosure of information as set forth in the Freedom of Information Act and the Privacy Act
- The confidentiality and integrity of information must be maintained. Therefore, information in any form shall be appropriately protected. You must not maliciously delete, modify, destroy or otherwise misuse any Department data or information
- You must complete the OCIO Annual Security Awareness Training, and, if you are identified as being key IA or IT personnel, you must complete the required annual specialized education and training requirements defined by the OCIO IAS organization

JA575

# U.S. Department of Education
# Information Technology (IT) System Rules of Behavior

**User IDs and Passwords**

All Government and Contractor personnel must adhere to the policy set forth in the Department of Education's IT Password Guidance, which includes, but is not limited to:

- You are prohibited from sharing your account information with anyone, and must take the appropriate action to ensure your account information is stored in a secure manner
- Your password must be a mix of at least 12 characters that contain upper and lower case letters, two numbers and at least one special character
- Passwords cannot resemble any part of your user-ID or name
- Passwords cannot not be reused for 24 iterations
- Passwords must be changed at least once every 90 days
- If your User-ID or password is compromised, you must report it immediately to your supervisor and ISSO/ISSM
- Personal Identification Numbers (PINs) will be constructed as required, by the token issuer of any system requiring a PIN for access

**Account Inactivity**

The Department will implement procedures and methodologies to ensure adequate management of information system accounts.

- After 30 days of inactivity, the account shall be put in suspension within 5 working days, and will be terminated after 90 days. If you will not access your account for 90 days, contact your ISSO in advance to avoid having your account terminated.
- Accounts with a cyclical business model (normally not accessed within 30 days) will not be suspended after 30 days of inactivity. These accounts will be suspended after 30 days of inactivity of their normal access period. Example: if an account with a cyclical business model is only accessed every 60 days, then it would be suspended after 90 days of inactivity. These accounts should be coordinated through ISSO channels.

**Access to Information Must be Controlled**

- All Government and Contractor personnel will be given access to information based on a need to know. Bypassing web filtering is a violation of Department policy that can expose the user and the Department to risks
- You must work within the confines of the access allowed, and you must not attempt to access information for which you do not have a need to know
- Do not leave computers logged on and unattended. Log off at the end of each session, or use access control software (i.e., screen saver with password) or configure auto-lock for unattended use
- All wireless devices must be password protected
- Do not leave mobile, wireless devices or cell phones unattended. Handheld devices should be stored securely when left unattended. To prevent theft, make sure that add-on modules and accessories are adequately protected when not in use
- You are prohibited from sharing mobile or wireless devices, cell phones, or calling cards that have been assigned to you
- You are prohibited from using a dial-up modem to directly access the internal network or any internal network devices. Dial-up access to the networks must be through OCIO operated access servers, and will only be assigned to authorized personnel

2

# U.S. Department of Education
# Information Technology (IT) System Rules of Behavior

- Connection to the Internet shall be in accordance with the ED IA Security Policy
- Users shall not establish Internet or other external network connections (e.g., via modem access or unauthorized VPN) that could allow unauthorized non-Department of Education personnel to bypass security features, and gain access to Department systems and information
- Users shall not connect unauthorized devices to any Department networks, systems or devices
- Users shall not access or attempt to access network resources, systems or devices with unauthorized devices

## Proper Use of IT Resources

- You are only authorized to access and use Department of Education licensed/approved software. The use of unlicensed software is strictly prohibited
- All licensed/approved software and documentation must be used in accordance with the copyrighted license agreement
- You are only authorized to back-up your data to a network device or approved backup device. You are prohibited from storing sensitive or mission-critical data on your systems' hard drive or handheld device
- All Department of Education system resources, including hardware, software programs, files, paper reports, and data are the sole property of the Department of Education, and there should be no expectation of privacy
- You are only authorized to use Department-approved USB drives
- Department-issued laptops should be physically secured with laptop locks in the workspace

## Service Provisions and Restoration

- The Department of Education Network will be available for use by authorized users, at a minimum, during core business hours
- The proper controls are in place to ensure the restoration of critical information systems in the event that the Department of Education Network becomes inoperable

## Warning Banners

All Government and Contractor personnel who request access to the Department of Education's computer network or systems must read, agree to, and adhere to the Department's Warning Banner before being granted access.

### Standard Mandatory Warning Banner

- You are accessing a U.S. Government information system, which includes (1) this computer, (2) this computer network, (3) all computers connected to this network, and (4) all devices and storage media attached to this network or to a computer on this network. This information system is provided for U.S. Government-authorized use only
- Unauthorized or improper use of this system may result in disciplinary action, as well as civil and criminal penalties
- By using this information system, you understand and consent to the following:
- You have no reasonable expectation of privacy regarding any communications or data transiting or stored on this information system. At any time, the government may monitor, intercept, search and seize any communication or data transmitting or stored on this information system
- Any communications or data transiting by or stored on this information system may be disclosed or used for any purpose.

3

JA577

# U.S. Department of Education
# Information Technology (IT) System Rules of Behavior

### Remote Log on Mandatory Warning Banner/User Agreement

- You are accessing a U.S. Government information system, which includes this computer session, this computer network, and all computers connected to this network session.
- This information system is provided for U.S. Government authorized use only.
- Unauthorized or improper use of this system may result in disciplinary action, as well as civil and criminal penalties.
- Personnel using remote access shall not download or store Government information on private equipment, optical or digital media.
- By using this information system, you understand and consent to the following:
  - You have no reasonable expectation of privacy regarding any communications of data transiting this information system.  At any time, the Government may monitor, intercept, search, and seize any communications or data transiting this information system
  - Any communications or data transiting this information system may be disclosed or used for any purpose
- By logging on, I agree and consent to these terms and conditions.

**By signing below, I acknowledge and accept the rules of behavior outlined above.**

Name: _____

*(Printed Name)*

Email Address: _____

*(Please Print Legibly)*

Signature: _____

4

JA578

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, I electronically filed the

foregoing joint appendix with the Clerk of the Court for the United States

Court of Appeals for the Fourth Circuit by using the appellate CM/ECF

system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*

Jack Starcher