No. 25-1282

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AMERICAN FEDERATION OF TEACHERS, et al.,

Plaintiffs-Appellees,

v.

SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Maryland

### JOINT APPENDIX – VOLUME II (JA579-JA805)

JOHN L. SCHWAB
WENDY Q. XIAO
LIAM GENNARI
 *Munger, Tolles & Olson LLP*
 *350 South Grand Avenue, 50th Floor*
 *Los Angeles, California 90071*
 *(213) 683-9100*

XIAONAN APRIL HU
ANDRA LIM
 *Munger, Tolles & Olson LLP*
 *601 Massachusetts Avenue NW*
 *Suite 500E*
 *Washington, DC 20001*
 *(202) 220-1100*

*Counsel for Plaintiffs*

YAAKOV M. ROTH
 *Acting Assistant Attorney General*

ERIC D. MCARTHUR
 *Deputy Assistant Attorney General*

MARK R. FREEMAN
GERARD SINZDAK
JACK STARCHER
JACOB CHRISTENSEN
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7515*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 514-8877*

*Counsel for Defendants*

*(additional counsel listed on inside cover)*

CARSON SCOTT
ROMAN LEAL
  *Munger, Tolles & Olson LLP*
  *560 Mission Street, 27th Floor*
  *San Francisco, California 94105-2907*
  *(415) 512-4000*

MARK HANNA
DAVID RODWIN
  *Murphy Anderson PLLC*
  *1401 K Street NW*
  *Suite 300*
  *Washington, DC 20005*
  *(202) 223-2620*

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

Docket Report.................................................................................JA1

Amended Complaint (Dkt. No. 13)............................................JA27

Declarations in Support of Plaintiffs' Motion for Temporary
    Restraining Order (Dkt. No. 14-3 to 14-12).......................JA69

Transcript of Hearing on Motion for Temporary Restraining Order
    (Dkt. No. 37) ...........................................................................JA100

Memorandum Opinion and Order Granting Temporary Retraining
    Order (Dkt. No. 38) ...............................................................JA217

Notice of Filing of Administrative Records (Dkt. No. 51) .....................JA250

    Administrative Record (OPM) (Dkt. No. 51-1) ..............................JA253

    Administrative Record (Treasury) (Dkt. No. 51-2).......................JA331

    Administrative Record (Education) (Dkt. No. 51-3)......................JA546

Notice of Supplement to OPM's Administrative
    Record (Dkt. No. 64) ...............................................................JA579

Memorandum Opinion Granting Preliminary
    Injunction (Dkt. No. 68)........................................................JA656

Order Granting Preliminary Injunction (Dkt. No. 69)...........................JA724

Notice of Appeal (Dkt. No. 70) ................................................................JA727

Transcript of Hearing on Motion for Preliminary Injunction (Dkt. No.
    71) .............................................................................................JA730

Order Denying Stay (Dkt. No. 77)............................................................JA803

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AMERICAN FEDERATION OF
TEACHERS, et al.,

        Plaintiffs,

    v.

SCOTT BESSENT, et al.,

        Defendants.

Case No. 8:25-cv-430-DLB

## NOTICE OF FILING

As Defendants indicated in their opposition to Plaintiffs' motion for preliminary injunction, filed on March 13, 2025, it has come to OPM's attention that additional employees who would likely be considered "DOGE affiliates," as defined by the Court, *see* ECF No. 38 at 5 n.2—beyond those identified by anonymized monikers in the administrative record filed on March 7, 2025—were granted access to relevant OPM data systems. Of those additional employees, only three people (OPM Chief of Staff Amanda Scales, and two employees OPM identifies as OPM-7 and OPM-8) ever logged into any of these OPM systems. Defendants now supplement the administrative record with a revised version of the "Account Audit Creation" spreadsheet previously submitted as OPM-000076-88, additional system access and login information for all individuals that may be considered "DOGE-affiliates," and additional materials regarding the access decisions. OPM also provides redacted employment documentation for the employees OPM identifies as OPM-7 and OPM-8. OPM's supplement to its administrative record is attached as Exhibit A.

In addition, Defendants write to notify the Court of additional documents that the Department of the Treasury produced yesterday to the Court in *Alliance for Retired Americans v. Bessent*, No. 1:25-cv-00313-CKK (D.D.C.). Although Treasury maintains that the administrative record produced in this case on March 7, 2025 is complete, Treasury agreed in *Alliance for Retired Americans* to provide additional materials and a supplemental declaration in response to the plaintiffs' objections to Treasury's administrative record, in order to conserve the parties' resources and limit issues in dispute. Treasury also provided the court in that case with additional information regarding the Bureau of the Fiscal Service's forensic analysis of the activities of former Treasury employee Marko Elez. The materials Treasury filed yesterday in *Alliance for Retired Americans* are attached as Exhibit B.

Dated: March 15, 2025                     Respectfully submitted,

                                          YAAKOV M. ROTH
                                          Acting Assistant Attorney General
                                          Civil Division

                                          ELIZABETH J. SHAPIRO
                                          Deputy Branch Director
                                          Civil Division, Federal Programs Branch

                                          EMILY HALL
                                          Counsel to the Assistant Attorney General
                                          Civil Division

                                           */s/ Bradley P. Humphreys*
                                          BRADLEY P. HUMPHREYS
                                          Senior Trial Counsel
                                          Civil Division, Federal Programs Branch
                                          United States Department of Justice
                                          1100 L Street NW
                                          Washington, DC 20005
                                          Telephone: (202) 305-0878
                                          Bradley.Humphreys@usdoj.gov

                                          Kelly O. Hayes
                                          Interim U.S. Attorney

ARIANA WRIGHT ARNOLD
USDC Md Bar No. 23000
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
Tel: (410) 209-4813
Fax: (410) 962-2310
Ariana.Arnold@usdoj.gov

*Attorneys for Defendants*

3

### CERTIFICATE OF SERVICE

I certify that on March 15, 2025, I electronically filed the foregoing and the accompanying

attachments, and thereby caused a copy to be served on counsel of record.

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

AMERICAN FEDERATION OF
TEACHERS, et al.,

               Plaintiffs,

     v.

SCOTT BESSENT, et al.,

               Defendants.

Case No. 8:25-cv-430-DLB

---

### CERTIFICATION OF ADMINISTRATIVE RECORD

I, Gregory J. Hogan, am currently employed as the Chief Information Officer for the Office of Personnel Management. I am familiar with the claims asserted against OPM in the above-captioned action regarding the granting of access to data systems to employees implementing Executive Order 14,158.

I hereby certify, to the best of my knowledge, that the accompanying documents being added to the administrative record include personnel records of additional DOGE affiliated OPM employees covered by this matter, as well as an updated systems access spreadsheet that reflects administrative access of certain databases at issue as well as whether the individuals actually logged onto each system that is accurate as of the date it was created- March 13, 2025. The records contain all non-deliberative documents and materials directly or indirectly considered regarding the OPM actions challenged in this case.[1] Among these documents and materials, OPM has duly evaluated all predecisional documents before excluding them from the record.

---

[1] Notwithstanding the Court's order to file an administrative record in this case, Defendants maintain that the Amended Complaint does not challenge any final agency action and reserve their

In accordance with 28 U.S.C. § 1746, I hereby certify and declare under penalty of perjury

that the foregoing is true and correct to the best of my knowledge, information, and belief.


*Gregory J Hogan*
Gregory J. Hogan

---

right to argue in further proceedings in this case, including in any subsequent appeal, that the
Administrative Procedure Act does not provide for review.

**Account Creation Audit Between 1/20/25 - 2/12/2025**

| Employee Name | Account Username | System Name | Date Created | Date Removed | Admin Access | Login Yes/No |
|---|---|---|---|---|---|---|
| [OPM-3] | \mcn\app\MGA\Users\[OPM-3] | APP.mcn Domain | 1/20/20253:46:12 PM | | | |
| [OPM-3] | [OPM-3]@opm.gov | Azure DevOps | 1/21/2025 | | | |
| [OPM-3] | \mcn\cld\MGA\Users\[OPM-3] | CLD.mcn Domain | 1/20/20253:38:26 PM | | | |
| [OPM-3] | | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | | |
| [OPM-3] | [OPM-3]@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | | |
| [OPM-3] | [OPM-3]@opm.gov | Web Admin | 1/20/2025 | | | |
| [OPM-16] | [OPM-16]@opm.gov | USA Performance - Office of the Director | 1/31/2025 | | | |
| Amanda Scale | \mcn\cld\MGA\Users\Amanda Scale | CLD.mcn Domain | 1/20/20253:30:19 PM | | | |
| Amanda Scales | amanda.scales@opm.gov | Agency Talent Portal | 1/21/2025 | | | |
| Amanda Scales | \mcn\app\MGA\Users\Amanda Scales | APP.mcn Domain | 1/20/20253:43:44 PM | | | |
| Amanda Scales | \mcn\cld\MGA\Users\Amanda Scales | CLD.mcn Domain | 1/20/20254:30:19 PM | | | |
| Amanda Scales | adscales@opm.gov | OD Reports : New Hire Daily Tracker Power BI - USADATA | 1/30/2025 | | | |
| Amanda Scales | | OPMData / USADATA | 2/3/2025 | | | |
| Amanda Scales | adscales@opm.gov | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions | 2/3/2025 | | | |
| Amanda Scales | amanda.scales@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | | |
| Amanda Scales | Amanda.Scales@opm.gov | Web Admin | 1/20/2025 | | | |
| [PII] | [PII] | ESCS | 2/11/2025 | | | |
| [OPM-9] | [OPM-9]@opm.gov | OD Reports : New Hire Daily Tracker Power BI - USADATA | 2/4/2025 | | | |
| [OPM-9] | | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions (OPMData / USADATA) | 2/4/2025 | | | |
| [OPM-9] | [OPM-9]@opm.gov | USA Performance - Office of the Director | 1/31/2025 | | | |
| [OPM-2] | [OPM-2]_opmgov | GitHub Enterprise | 1/28/2025 | | | |
| [OPM-7] | [OPM-7]_opmgov | GitHub Enterprise | 1/20/2025 | | | |
| [OPM-7] | [OPM-7]@opm.gov | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | | | |
| [OPM-3] | [OPM-3]_opmgov | GitHub Enterprise | 1/20/2025 | | | |
| [OPM-3] | [OPM-3]@opm.gov | USA Performance - Office of the Director | 1/20/2025 | | | |
| [OPM-7] | | STAMP | 1/27/2025 | | | |
| [OPM-7] | \mcn\app\MGA\Users\[OPM-7] | APP.mcn Domain | 1/20/20253:45:37 PM | | | |
| [OPM-7] | \mcn\cld\MGA\Users\[OPM-7] | CLD.mcn Domain | 1/20/20253:37:48 PM | | | |
| [OPM-7] | [OPM-7]@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | | |
| [OPM-7] | [OPM-7]@opm.gov | Web Admin | 1/20/2025 | | | |
| Charles Ezell | \mcn\app\MGA\Users\Charles Ezell | APP.mcn Domain | 1/20/20253:46:34 PM | | | |
| Charles Ezell | \mcn\cld\MGA\Users\Charles Ezell | CLD.mcn Domain | 1/20/20253:41:54 PM | | | |
| Charles Ezell | | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | | |
| Charles Ezell | charles.ezell@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | | |
| Charles Ezell | Charles.Ezell@opm.gov | Web Admin | 1/20/2025 | | | |
| [PII] | [PII] | Postal Reform | 1/27/2025 | | | |
| [PII] | [PII] | DFS | 1/22/2025 | | | |
| [PII] | [PII] | ARS (DCCS) | 2/5/2025 | | | |
| [PII] | [PII] | ARS (DCCS) | 2/6/2025 | | | |
| [PII] | [PII] | ARS (AVAS) | 1/21/2025 | | | |
| [PII] | [PII] | ARS (AVAS) | 1/21/2025 | | | |
| [PII] | [PII] | ARS (AVAS) | 1/21/2025 | | | |
| [PII] | [PII] | ARS (AVAS) | 1/22/2025 | | | |
| [PII] | [PII] | ARS (AVAS) | 1/23/2025 | | | |
| [PII] | [PII] | BFMS (FMMI) | 1/22/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/22/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/22/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/22/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/23/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/23/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/23/2025 | | | |
| [PII] | [PII] | BFMS (FMCD 2812) | 1/23/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/23/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/23/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/24/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/28/2025 | | | |
| [PII] | (HB Carrier - RACF IDs) | BFMS (FMCD 2812) | 1/28/2025 | | | |
| [PII] | [PII] | ARS (DCCS) | 1/31/2025 | | | |
| [PII] | [PII] | ARS (AVAS) | 2/6/2025 | | | |
| [PII] | [PII] | ARS (DCCS) | 2/10/2025 | | | |
| [PII] | [PII] | ARS (DCCS) | 2/10/2025 | | | |
| [PII] | [PII] | ARS (DCCS) | 2/10/2025 | | | |
| [PII] | [PII] | CIITAR | 1/21/2025 | | | |
| [PII] | [PII] | CIITAR | 1/21/2025 | | | |
| [PII] | [PII] | CIITAR | 1/30/2025 | | | |
| [PII] | [PII] | CIITAR | 2/12/2025 | | | |
| [PII] | [PII] | USA Performance - CFO - Budget | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CFO - Budget | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CFO - Budget | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CFO - Budget | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CFO - Chief Financial Officer | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - Chief Technology Officer | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - Chief Technology Officer | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - Hiring Systems | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - HR Solutions IT PMO | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - Recruitment Systems | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - Recruitment Systems | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - Recruitment Systems | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - Systems Capacity | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - Systems Capacity | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - FITBS - Systems Capacity | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - ITS - IT Security Management | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - ITS - Security Operations Center | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - CIO - RM - Resource Management | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - FSEM - Facilities, Security & Emergency Mgmt - Emergency Management | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HCDMM - Human Capital Data Management & Moderniz - Data Support and Analysis | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Actuaries | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Actuaries | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Audit Resolution & Compliance | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Disputed Claims | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Disputed Claims | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Disputed Claims | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - FEHB 3 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Life and Ancillary Benefits | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Operations and Resource Management | 2/7/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare & Insurance - Program Analysis & Development | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - Healthcare and Insurance | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HI - PSIO 1 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HRS - Applied Analytics Branch | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - HRS - Enterprise Leadership Solutions | 1/24/2025 | | | |

OPM-00089

| Employee Name | Account Username | System Name | Date Created | Date Removed | Admin Access | Login Yes/No |
|---|---|---|---|---|---|---|
| [PII] | [PII] | USA Performance - HRS - Federal Classification Center | 1/31/2025 | | | |
| [PII] | [PII] | USA Performance - MSAC - ACE Western | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - MSAC - Merit System Accountability and Compliance | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - OCHCO - Executive Resources | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - OCHCO - Talent Acquisition A | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - OCR - Office of Civil Rights | 1/24/2025 | | | |
| [OPM-4] | [OPM-4]@opm.gov | USA Performance - U.S. Office of Personnel Management | 1/28/2025 | | | |
| [PII] | [PII] | USA Performance - Office of Communications | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - Office of Exec Sec & Privacy & Info Management | 1/31/2025 | | | |
| [PII] | [PII] | USA Performance - Office of Exec Sec & Privacy & Info Management | 2/7/2025 | | | |
| [PII] | [PII] | USA Performance - Office of Exec Sec & Privacy & Info Management | 2/7/2025 | | | |
| [PII] | [PII] | STAMP | 1/31/2025 | | | |
| [PII] | [PII] | USA Performance - OGC - General Counsel | 1/31/2025 | | | |
| [OPM-15] | [OPM-15]@opm.gov | USA Performance - Office of the Director | 2/7/2025 | | | |
| [OPM-4] | \mcn\cld\MGA\Users\[OPM-4] | CLD.mcn Domain | 1/28/2025 11:39:49 AM | | | |
| [OPM-12] | [OPM-12]@opm.gov | USA Performance - Office of the Director | 2/7/2025 | | | |
| [OPM-11] | [OPM-11]@opm.gov | USA Performance - Office of the Director | 2/7/2025 | | | |
| [OPM-4] | [OPM-6]@opm.gov | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | | |
| [OPM-4] | [OPM-6]@opm.gov | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/28/2025 | | | |
| [OPM-4] | [OPM-6]@opm.gov | OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD | 1/28/2025 | 2/6/2025 | | |
| [OPM-4] | [OPM-6]@opm.gov | OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD | 1/28/2025 | 2/6/2025 | | |
| [OPM-4] | [OPM-6]@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/28/2025 | | | |
| [OPM-4] | [OPM-6]@opm.gov | Web Admin | 1/28/2025 | | | |
| [OPM-14] | [OPM-14]@opm.gov | USA Performance - Office of the Director | 2/7/2025 | | | |
| [PII] | [PII] | USA Performance - OGC - Comp, Ben, Prod & Svcs | 1/24/2025 | | | |
| Ezell, Charles E. | Charles.Ezell@opm.gov | STAMP | 1/23/2025 | | | |
| [PII] | [PII] | USA Performance - OGC - Merit Sys & Accountability | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - OIG - Information Sys Audits Grp | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - OSI - Office of Strategy and Innovation (OSI) | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Branch 1 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Branch 1 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Branch 1 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Branch 2 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Branch 3 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Branch 3 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Branch 3 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Imaging/Central | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Retirement Benefits | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Retirement Claims A | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - Retirement Services System Support | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - RIO 10 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - RIO 6 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - RS - RIO 7 | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - SuitEA - Policy & Strategy | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - SuitEA - Policy & Strategy | 1/24/2025 | | | |
| [OPM-5] | \mcn\app\MGA\Users\[OPM-5] | APP.mcn Domain | 1/20/2025 3:44:47 PM | | | |
| [OPM-5] | \mcn\cld\MGA\Users\[OPM-5] | CLD.mcn Domain | 1/20/2025 3:35:33 PM | | | |
| [OPM-5] | [OPM-5]@opm.gov | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | | |
| [OPM-5] | [OPM-5]@opm.gov | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | | |
| [OPM-5] | [OPM-5]@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | | |
| [OPM-5] | [OPM-5]@opm.gov | Web Admin | 1/20/2025 | | | |
| Greg Hogan | \mcn\app\MGA\Users\Greg Hogan | APP.mcn Domain | 1/20/2025 3:45:12 PM | | | |
| Greg Hogan | Greg.Hogan@opm.gov | Azure DevOps | 1/27/2025 | | | |
| [PII] | [PII] | USA Performance - WPI - Central Region | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - WPI - Central Region | 2/7/2025 | | | |
| [PII] | [PII] | USA Performance - WPI - FEB - Field Operations | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - WPI - Forecasting and Methods | 1/24/2025 | | | |
| [PII] | [PII] | USA Performance - WPI - Hiring Policy (Staffing) | 2/7/2025 | | | |
| [PII] | [PII] | USA Performance - WPI - Resource Mgmt Grp | 1/23/2025 | | | |
| [PII] | [PII] | USA Performance - WPI - Western Region | 1/24/2025 | | | |
| Greg Hogan | \mcn\cld\MGA\Users\Greg Hogan | CLD.mcn Domain | 1/20/2025 3:46:46 PM | | | |
| [PII] | [PII] | Agency Talent Portal | 1/24/2025 | | | |
| Greg Hogan | Greg.Hogan@opm.gov | ITSP Project Intake app | 1/27/2025 | | | |
| Greg Hogan | Greg.Hogan@opm365.onmicrosoft.com | ITSP Project Intake app | 2/6/2025 | | | |
| Greg Hogan | greg.hogan@opm.gov | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | | |
| Greg Hogan | greg.hogan@opm.gov | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | | |
| Greg Hogan | greg.hogan@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | | |
| Greg Hogan | greg.hogan@opm.gov | Web Admin | 1/20/2025 | | | |
| Hogan, Greg | Greg.Hogan_opmgov | GitHub Enterprise | 1/20/2025 | | | |
| Hogan,Greg | Greg.Hogan_opmgov | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | | | |
| [OPM-8] | [OPM-8]@opm.gov | OD Reports : New Hire Daily Tracker Power BI - USADATA | 2/2/2025 | | | |
| [OPM-8] | [OPM-8]@opm.gov | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 2/3/2025 | | | |
| [OPM-8] | [OPM-8]@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 2/3/2025 | | | |
| [OPM-5] | [OPM-5]_opmgov | GitHub Enterprise | 1/20/2025 | | | |
| [OPM-5] | [OPM-5]@opm.gov | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | | | |
| [PII] | [PII] | STAMP | 1/31/2025 | | | |
| [PII] | [PII] | CLD.mcn Domain | 1/21/2025 10:22 PM | | | |
| [PII] | [PII] | APP.mcn Domain | 1/22/2025 8:36:39 AM | | | |
| [PII] | [PII] | APP.mcn Domain | 1/22/2025 8:38:57 AM | | | |
| [PII] | [PII] | APP.mcn Domain | 1/22/2025 8:40:16 AM | | | |
| [PII] | [PII] | CLD.mcn Domain | 1/22/2025 8:41:06 AM | | | |
| [OPM-17] | [OPM-17]@opm.gov | USA Performance - Office of the Director | 1/31/2025 | | | |
| [OPM-6] | [OPM-6]@opm.gov | Agency Talent Portal | 1/31/2025 | | | |
| [OPM-6] | \mcn\cld\MGA\Users\[OPM-6] | CLD.mcn Domain | 1/28/2025 11:39:00 AM | | | |
| [PII] | [PII] | CLD.mcn Domain | 2/12/2025 7:08:50 AM | | | |
| [PII] | [PII] | APP.mcn Domain | 2/12/2025 7:11:04 AM | | | |
| [OPM-6] | [OPM-6]@opm.gov | OD Reports : New Hire Daily Tracker Power BI - USADATA | 1/31/2025 | | | |
| [OPM-6] | [OPM-6]@opm.gov | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | | |
| [OPM-6] | [OPM-6]@opm.gov | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/28/2025 | | | |
| [OPM-6] | [OPM-6]@opm.gov | OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD | 1/28/2025 | 2/6/2025 | | |
| [OPM-6] | [OPM-6]@opm.gov | OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD | 1/28/2025 | 2/6/2025 | | |
| [OPM-6] | [OPM-6]@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/28/2025 | | | |
| [OPM-6] | [OPM-6]@opm.gov | Web Admin | 1/28/2025 | | | |
| [OPM-18] | [OPM-18]@opm.gov | STAMP | 2/3/2025 | | | |
| [OPM-18] | [OPM-18]@opm.gov | USA Performance - Office of the Director | 1/24/2025 | | | |
| [PII] | [PII] | ITSP Cloud Intake app | 1/31/2025 | | | |
| [PII] | [PII] | USA Performance - Office of Communications | 1/31/2025 | | | |
| [OPM-6] | [OPM-6]@opm.gov | Azure DevOps | 1/29/2025 | | | |
| [PII] | [PII] | FOIAXpress | 2/4/2025 | | | |
| [OPM-6] | [OPM-6]@opm.gov | USA Performance - U.S. Office of Personnel Management | 1/28/2025 | | | |
| [OPM-10] | [OPM-10]@opm.gov | USA Performance - Office of the Director | 2/7/2025 | | | |

OPM-00090

| Employee Name | Account Username | System Name | Date Created | Date Removed | Admin Access | Login Yes/No |
|---|---|---|---|---|---|---|
| [PII] | [PII] | GitHub Enterprise | 1/21/2025 | | | |
| [OPM-2] | \mcn\cld\MGA\Users\[OPM-2] | CLD.mcn Domain | 1/28/2025 11:39:25 AM | | | |
| [PII] | [PII] | GitHub Enterprise | 1/31/2025 | | | |
| [PII] | [PII] | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions | | | | |
| [OPM-2] | [OPM-2]@opm.gov | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | | |
| [PII] | [PII] | OPM Data : Connect Platform | 1/31/2025 | | | |
| [OPM-2] | [OPM-2]@opm.gov | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/28/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/22/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/22/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/22/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/31/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/31/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/21/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/21/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/22/2025 | | | |
| [PII] | [PII] | GitHub Enterprise | 1/22/2025 | | | |
| [OPM-2] | [OPM-2]@opm.gov | OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD | 1/28/2025 | 2/6/2025 | | |
| [PII] | [PII] | Carrier Connect | 2/7/2025 | | | |
| [PII] | [PII] | Carrier Connect | 1/23/2025 | | | |
| [PII] | [PII] | Carrier Connect | 2/7/2025 | | | |
| [PII] | [PII] | Engagement Tracking System | 2/3/2025 | | | |
| [PII] | [PII] | STAMP | 1/23/2025 | | | |
| [OPM-2] | [OPM-2]@opm.gov | OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD | 1/28/2025 | 2/6/2025 | | |
| [PII] | [PII] | STAMP | 1/23/2025 | | | |
| [PII] | [PII] | STAMP | 1/24/2025 | | | |
| [OPM-2] | [OPM-2]@opm.gov | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/28/2025 | | | |
| [OPM-2] | [OPM-2]@opm.gov | Web Admin | 1/28/2025 | | | |
| [OPM-2] | [OPM-2]@opm.gov | USA Performance - U.S. Office of Personnel Management | 1/28/2025 | | | |
| Scale,Amanda | adscales@opm.gov | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | | | |
| Scales, Amanda | Amanda.Scales_opmgov | GitHub Enterprise | 1/20/2025 | | | |
| Scales, Amanda | Amanda.Scales@opm.gov | STAMP | 1/31/2025 | | | |
| [PII] | [PII] | STAMP | 2/3/2025 | | | |
| [PII] | [PII] | CLIA Tracking & CS Portal | 1/27/2025 | | | |
| [PII] | [PII] | CLIA Tracking & CS Portal | 1/27/2025 | | | |
| [PII] | [PII] | CLIA Tracking & CS Portal | 1/28/2025 | | | |
| [PII] | [PII] | CLIA Tracking & CS Portal | 1/28/2025 | | | |
| [PII] | [PII] | CXOne | 1/24/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/21/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/21/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/21/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/21/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/21/2025 | | | |
| [PII] | [PII] | USA Performance - Office of the Director | 1/31/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/21/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/22/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/22/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/22/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/22/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/22/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/22/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/23/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/23/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/23/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/23/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/24/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/24/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/24/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/24/2025 | | | |
| [OPM-13] | [OPM-13]@opm.gov | USA Performance - Office of the Director | 1/31/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/27/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/27/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/28/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/28/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/29/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/29/2025 | | | |
| [PII] | [PII] | STAMP | 1/31/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/31/2025 | | | |
| [PII] | [PII] | Azure DevOps | 1/31/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/3/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/3/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/3/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/3/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/4/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/5/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/5/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/5/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/7/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/7/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/7/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/11/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/11/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/11/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/12/2025 | | | |
| [PII] | [PII] | Azure DevOps | 2/13/2025 | | | |
| [PII] | [PII] | Federal Disputed Claims (FDC) | 2/10/2025 | | | |
| [PII] | [PII] | Federal Disputed Claims (FDC) | 2/10/2025 | | | |
| [PII] | [PII] | ESCS | 1/20/2025 | | | |
| [PII] | [PII] | USA Performance - Office of the Director | 1/31/2025 | | | |
| [PII] | [PII] | ESCS | 2/11/2025 | 2/13/2025 | | |
| [PII] | [PII] | ESCS | 2/14/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | ARS (ORION) - Access for this system is handled by RS | 2/12/2025 | | | |
| [PII] | [PII] | SCRD - Access for this system is handled by RS | 1/21/2025 | | | |
| [PII] | [PII] | SCRD - Access for this system is handled by RS | 1/29/2025 | | | |
| [PII] | [PII] | SCRD - Access for this system is handled by RS | 1/29/2025 | | | |
| [PII] | [PII] | SCRD - Access for this system is handled by RS | 1/30/2025 | | | |
| [PII] | [PII] | SCRD - Access for this system is handled by RS | 2/3/2025 | | | |
| [PII] | [PII] | SCRD - Access for this system is handled by RS | 2/11/2025 | | | |
| [PII] | [PII] | SCRD - Access for this system is handled by RS | 1/21/2025 | | | |

OPM-00091

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue | | |
|---|---|---|---|---|---|---|---|---|---|
| 1/20/2025 | 22:07:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "opm-AllEmailGov-np-01.Contributor.RBAC" | | |
| 1/20/2025 | 22:07:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "opm-AllEmailGov-np-01.Contributor.RBAC" | | |
| 1/20/2025 | 22:07:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" | | |
| 1/20/2025 | 22:07:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" | | |
| 1/20/2025 | 21:17:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "hrs-usaj-np-001.SubContributor" | | |
| 1/20/2025 | 21:16:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 21:15:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "hrs-usaj-prd-001.Contributor.RBAC" | | |
| 1/20/2025 | 21:14:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "hrs-usaj-np-001.SubContributor" | | |
| 1/20/2025 | 21:12:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "hrs-usaj-np-001.Contributor" | | |
| 1/20/2025 | 21:11:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:37:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:37:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:37:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:37:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:37:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:36:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "hrs-usaj-np-001.SubContributor" | | |
| 1/20/2025 | 20:36:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "hrs-usaj-np-001.SubContributor" | | |
| 1/20/2025 | 20:36:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | "hrs-usaj-np-001.SubContributor" | | |
| 1/20/2025 | 20:36:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "hrs-usaj-np-001.SubContributor" | | |
| 1/20/2025 | 20:36:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "hrs-usaj-np-001.SubContributor" | | |
| 1/20/2025 | 20:35:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:35:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:35:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:34:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:34:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "hrs-usaj-p-001.Contributor" | | |
| 1/20/2025 | 20:33:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "hrs-usap-np-001.Contributor" | | |
| 1/20/2025 | 20:33:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "hrs-usap-np-001.Contributor" | | |
| 1/20/2025 | 20:33:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "hrs-usap-np-001.Contributor" | | |
| 1/20/2025 | 20:33:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "hrs-usap-np-001.Contributor" | | |
| 1/20/2025 | 20:33:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "hrs-usap-np-001.Contributor" | | |
| 1/20/2025 | 20:31:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "hrs-usas-np-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:30:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "hrs-usas-np-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:30:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "hrs-usas-np-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:30:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "hrs-usas-np-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:30:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "hrs-usas-np-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:28:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "hrs-usas-prd-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:28:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "hrs-usas-prd-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:27:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "hrs-usas-prd-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:27:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "hrs-usas-prd-001.Contributor.RBAC" | | |
| 1/20/2025 | 20:27:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "hrs-usas-prd-001.Contributor.RBAC" | | |
| 1/21/2025 | 23:58:32 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 23:56:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "AZ.OPM.KnowBe4.User" | | |
| 1/21/2025 | 23:56:04 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 20:46:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 20:44:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "HRS – LAB – WIC Collaboration" | | |
| 1/21/2025 | 20:35:29 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 19:17:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 19:16:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:40:05 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:39:02 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:38:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:38:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:38:08 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:37:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:36:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:35:46 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 18:35:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "ocfo-bms-p.Contributor.RBAC" | | |
| 1/21/2025 | 18:34:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "ocfo-bms-p.Owner.RBAC" | | |
| 1/21/2025 | 18:34:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "ocfo-bms-np.Contributor.RBAC" | | |
| 1/21/2025 | 18:32:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "ocfo-bms-np.Owner.RBAC" | | |
| 1/21/2025 | 18:15:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "CIITAR Application Users" | | |
| 1/21/2025 | 17:41:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "CIITAR Application Users" | | |
| 1/21/2025 | 17:41:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "CIITAR Application Users" | | |
| 1/21/2025 | 16:27:00 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 16:22:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "rg-hrs-opf-dev-document-intelligence.RBAC" | | |
| 1/21/2025 | 15:19:14 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 15:19:14 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 14:44:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 14:40:03 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 14:34:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "GHEC-OPM-OCIO-FITBS-HRSITPMO-USAData-Members" | | |
| 1/21/2025 | 14:34:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "OPM-GHEC-User-Read" | | |
| 1/21/2025 | 14:32:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "GHEC-OPM-OCIO-FITBS-HRSITPMO-USAData-Members" | | |
| 1/21/2025 | 14:32:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "OPM-GHEC-User-Read" | | |
| 1/21/2025 | 14:19:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 14:16:10 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 13:59:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "eid-eopf-helpdesk-footprints-apppay-users" | | |
| 1/21/2025 | 13:58:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "eid-eopf-helpdesk-footprints-apppay-users" | | |
| 1/21/2025 | 13:38:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 13:38:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 13:18:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 13:18:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:59:47 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:59:29 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:59:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:59:08 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:58:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:57:43 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:57:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:57:13 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:57:10 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:57:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/21/2025 | 8:56:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:56:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:56:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:56:15 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 8:51:31 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "AZ.OPM.KnowBe4.User" | | |
| 1/21/2025 | 8:55:26 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/21/2025 | 3:20:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" | | |
| 1/21/2025 | 3:20:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" | | |
| 1/21/2025 | 3:02:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" | | |
| 1/21/2025 | 3:02:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "opm-AllEmailGov-np-01.Contributor.RBAC" | | |
| 1/21/2025 | 3:01:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "opm-AllEmailGov-np-01.Contributor.RBAC" | | |
| 1/21/2025 | 2:35:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "opm-AllEmailGov-np-01.Contributor.RBAC" | | |
| 1/21/2025 | 2:35:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" | | |
| 1/22/2025 | 0:14:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "AZ.Serv-Support-Admin" | | |
| 1/22/2025 | 22:45:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 22:45:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "GHEC-OPM-OD-Owners" | | |
| 1/22/2025 | 22:45:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 22:45:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "GHEC-OPM-OD-Owners" | | |
| 1/22/2025 | 22:45:40 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 22:45:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | "GHEC-OPM-OD-Owners" | | |
| 1/22/2025 | 22:45:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "GHEC-OPM-OD-Owners" | | |
| 1/22/2025 | 22:45:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "GHEC-OPM-OD-Owners" | | |
| 1/22/2025 | 22:45:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "GHEC-OPM-OD-Owners" | | |
| 1/22/2025 | 22:00:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [P8] | | | |
| 1/22/2025 | 21:59:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:24 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [P8] | "ghec.emu.Enterprise.Owners" | | |

OPM-00092

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue | | |
|---|---|---|---|---|---|---|---|---|---|
| 1/22/2025 | 21:52:21 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:21 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 21:52:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" | | |
| 1/22/2025 | 19:29:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.CHCODocRepo.Prod.User" | | |
| 1/22/2025 | 19:29:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "Az.OPM.CHCODocRepo.Prod.User" | | |
| 1/22/2025 | 19:16:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.hcdmm.rio.web.dev.readonly" | | |
| 1/22/2025 | 18:58:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" | | |
| 1/22/2025 | 18:36:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Charles.Ezell@opm.gov | "OCIO-STAMP-Users" | | |
| 1/22/2025 | 17:03:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Security-SOCir-Resources-Team" | | |
| 1/22/2025 | 17:02:47 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 17:02:47 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 17:02:46 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 17:02:45 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 17:02:45 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 17:02:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 17:02:43 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 17:02:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 15:55:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Purview-IRM-Investigators" | | |
| 1/22/2025 | 15:55:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.rg-cyber-playbooks-p-001.Contributor" | | |
| 1/22/2025 | 15:53:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Purview-IRM-Investigators" | | |
| 1/22/2025 | 15:53:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Security.Admin" | | |
| 1/22/2025 | 15:53:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.rg-cyber-playbooks-p-001.Contributor" | | |
| 1/22/2025 | 15:53:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ocio-cyber-p-001.Contributor.RBAC" | | |
| 1/22/2025 | 15:49:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ocio-cyber-p-001.Reader.RBAC" | | |
| 1/22/2025 | 15:49:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rg-AzLogs-p-001.Contributor.RBAC" | | |
| 1/22/2025 | 15:49:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.Sentinel.LogApp.Contributor" | | |
| 1/22/2025 | 15:49:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rg-AzLogs-p-001.Reader" | | |
| 1/22/2025 | 15:49:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO – Cloud Services" | | |
| 1/22/2025 | 15:49:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Compliance-Data-Admin" | | |
| 1/22/2025 | 15:49:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Security.DataProtection-Team" | | |
| 1/22/2025 | 15:49:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Compliance.Admin" | | |
| 1/22/2025 | 15:49:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.AAD.GlobalReader" | | |
| 1/22/2025 | 15:49:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Global.Reader.RBAC" | | |
| 1/22/2025 | 15:49:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Security.Reader" | | |
| 1/22/2025 | 15:44:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "WIZ-USAP-Reader" | | |
| 1/22/2025 | 15:40:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "WIZ-USAP-Reader" | | |
| 1/22/2025 | 15:40:24 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "WIZ-USAP-Reader" | | |
| 1/22/2025 | 15:36:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-HI-Members" | | |
| 1/22/2025 | 15:36:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 15:34:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 15:33:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-OPM-APS-PP-Members" | | |
| 1/22/2025 | 15:32:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-FITBS-HRSITPMO-USALearning-Members" | | |
| 1/22/2025 | 15:32:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 15:32:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-OPM-APS-PP-Members" | | |
| 1/22/2025 | 15:32:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 15:32:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-OPM-APS-PP-Members" | | |
| 1/22/2025 | 15:30:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/22/2025 | 15:30:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-OPM-APS-PP-Members" | | |
| 1/22/2025 | 15:10:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" | | |
| 1/22/2025 | 14:53:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "RetireStage" | | |
| 1/22/2025 | 14:31:07 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "RetireProd" | | |
| 1/22/2025 | 14:26:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-usas-footprints-appppy-users" | | |
| 1/22/2025 | 14:26:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-usas-footprints-appppy-users" | | |
| 1/22/2025 | 14:26:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-usas-footprints-appppy-users" | | |
| 1/22/2025 | 5:07:12 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 5:07:11 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 1:46:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 1:37:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 1:09:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 1:09:19 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 1:08:10 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 1:05:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:49:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:47:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:47:43 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:47:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:47:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:45:46 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:18:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:18:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/22/2025 | 0:18:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 22:10:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 21:55:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 20:02:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-FITBS-HRSITPMO-USAS-Architects" | | |
| 1/23/2025 | 19:56:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 19:55:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 19:48:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 19:36:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 19:29:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:18:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Invicti.User" | | |
| 1/23/2025 | 19:18:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Invicti.User" | | |
| 1/23/2025 | 19:12:32 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:40 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:39 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:39 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:11:40 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:10:39 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:10:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 19:10:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 18:48:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 18:47:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 18:44:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 18:42:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 18:23:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 18:23:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cto-digitalservices-np-01.Contributor.RBAC" | | |
| 1/23/2025 | 17:56:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | ADScales@opm.gov | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 17:55:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | ADScales@opm.gov | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 17:44:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/23/2025 | 17:43:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cto-digitalservices-np-01.Owner.RBAC" | | |
| 1/23/2025 | 17:00:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 16:59:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 16:56:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 16:56:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/23/2025 | 16:56:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/23/2025 | 16:46:03 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |

JA590

OPM-00093

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue |
|---|---|---|---|---|---|---|---|
| 1/23/2025 | 16:38:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cto-digitalservices-np-01.Contributor.RBAC" |
| 1/23/2025 | 16:02:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cto-digitalservices-np-01.Contributor.RBAC" |
| 1/23/2025 | 16:02:22 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 16:02:21 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 16:02:20 | Core Directory | UserManagement | Update user | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 1/23/2025 | 16:02:20 | Core Directory | UserManagement | Disable account | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 1/23/2025 | 15:59:01 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 15:58:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 1/23/2025 | 15:12:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Security-Operators" |
| 1/23/2025 | 15:12:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Security-Operators" |
| 1/23/2025 | 15:10:09 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 15:09:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:57:22 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:56:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:56:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:56:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:55:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:55:08 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:53:14 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:52:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:51:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:48:13 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:47:43 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:45:45 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 14:44:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 13:49:21 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 13:34:01 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opmdata-p-001.Reader" |
| 1/23/2025 | 13:30:21 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 13:22:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.ehri" |
| 1/23/2025 | 13:21:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 13:21:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.hbdp.postal.prd" |
| 1/23/2025 | 13:21:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.hbdp.postal.prd" |
| 1/23/2025 | 13:19:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.usadata.dev" |
| 1/23/2025 | 13:17:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.usadata.prod" |
| 1/23/2025 | 13:16:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.usadata.dev" |
| 1/23/2025 | 9:24:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:23:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/23/2025 | 9:22:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:20:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:18:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/23/2025 | 9:18:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/23/2025 | 9:18:01 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:17:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/23/2025 | 9:17:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/23/2025 | 9:16:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:16:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/23/2025 | 9:16:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:16:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:15:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:15:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/23/2025 | 9:15:26 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/24/2025 | 22:08:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cto-digitalservices-np-01.Contributor.RBAC" |
| 1/24/2025 | 21:52:43 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/24/2025 | 21:34:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" |
| 1/24/2025 | 21:22:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cto-digitalservices-np-01.Owner.RBAC" |
| 1/24/2025 | 21:10:19 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/24/2025 | 21:10:17 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/24/2025 | 20:58:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 1/24/2025 | 20:58:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 1/24/2025 | 18:31:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opf-p-001.Contributor.RBAC" |
| 1/24/2025 | 18:30:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usap-np-001.Reader" |
| 1/24/2025 | 15:51:31 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usap-p-001.Reader" |
| 1/24/2025 | 15:15:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 1/24/2025 | 15:09:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ocio-hcdmm-ai-np.Contributor.RBAC" |
| 1/24/2025 | 15:09:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.CogServices-AI-Contributor-HCDMM" |
| 1/24/2025 | 11:57:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.USAStaffingLMSUdutu.Prod.User" |
| 1/25/2025 | 17:48:09 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/25/2025 | 17:28:07 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/25/2025 | 9:30:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/25/2025 | 9:30:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/25/2025 | 9:30:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:29:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:29:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:29:31 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:29:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:28:24 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/25/2025 | 9:28:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/25/2025 | 9:27:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:27:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/25/2025 | 9:27:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/25/2025 | 9:27:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:27:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-16@opm.gov | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:26:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-16@opm.gov | "Az.OPM.LearningConnection.Prod.User" |
| 1/25/2025 | 9:25:40 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:25:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/25/2025 | 9:24:21 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/27/2025 | 22:09:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 22:09:28 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 22:08:21 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 22:06:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 22:06:20 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 22:05:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 21:06:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/27/2025 | 21:05:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/27/2025 | 20:34:09 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 20:30:24 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 20:28:21 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 20:25:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 20:25:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-bsgportal-apppay-users" |
| 1/27/2025 | 19:21:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.Admin" |
| 1/27/2025 | 18:40:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/27/2025 | 18:28:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/27/2025 | 18:24:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 1/27/2025 | 18:24:14 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 18:14:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 18:09:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 18:07:31 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 18:05:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 17:29:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ocio-hcdmm-ai-np.DocumentIntelligence" |
| 1/27/2025 | 17:27:04 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 17:26:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 17:09:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.USAStaffingLMS.Prod.User" |
| 1/27/2025 | 16:17:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.USAPerformanceLMS.Prod.User" |
| 1/27/2025 | 16:17:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.USAPerformanceLMS.Prod.User" |
| 1/27/2025 | 15:53:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 15:52:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.hcdmm.rio.web.dev.businessteward" |
| 1/27/2025 | 15:50:48 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/27/2025 | 14:32:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/27/2025 | 14:27:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-bsgportal-apppay-users" |
| 1/27/2025 | 14:25:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/27/2025 | 4:09:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 22:34:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm365.onmicrosoft.com | "AZ.Global-Admin" |

JA591

OPM-00094

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue |
|---|---|---|---|---|---|---|---|
| 1/28/2025 | 21:57:26 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm365.onmicrosoft.com | |
| 1/28/2025 | 21:21:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-opf-np-001.Contributor.RBAC" |
| 1/28/2025 | 21:20:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-5]@opm.gov | "hrs-opf-np-001.Contributor.RBAC" |
| 1/28/2025 | 21:20:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-opf-np-001.Contributor.RBAC" |
| 1/28/2025 | 21:20:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-opf-p-001.Contributor.RBAC" |
| 1/28/2025 | 21:20:07 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-opf-p-001.Contributor.RBAC" |
| 1/28/2025 | 21:20:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-opf-p-001.Contributor.RBAC" |
| 1/28/2025 | 21:14:28 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 21:14:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 21:14:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 21:10:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-3]@opm.gov | "GitHub-Global-Owner" |
| 1/28/2025 | 21:10:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | "GitHub-Global-Owner" |
| 1/28/2025 | 21:10:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GitHub-Global-Owner" |
| 1/28/2025 | 21:10:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "GitHub-Global-Owner" |
| 1/28/2025 | 21:10:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-7]@opm.gov | "GitHub-Global-Owner" |
| 1/28/2025 | 21:05:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "GitHub-Global-Owner" |
| 1/28/2025 | 21:05:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "OPM-GHEC-User-Read" |
| 1/28/2025 | 21:05:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "GitHub-Global-Owner" |
| 1/28/2025 | 21:05:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "OPM-GHEC-User-Read" |
| 1/28/2025 | 21:05:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "GitHub-Global-Owner" |
| 1/28/2025 | 21:05:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "OPM-GHEC-User-Read" |
| 1/28/2025 | 20:53:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm365.onmicrosoft.com | "AZ.Global-Admin" |
| 1/28/2025 | 19:58:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.CLDCentral.Prod.User" |
| 1/28/2025 | 19:48:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-opmdata-qa-001.SubContributor.RBAC" |
| 1/28/2025 | 19:48:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-opmdata-qa-001.SubContributor.RBAC" |
| 1/28/2025 | 19:48:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-opmdata-qa-001.SubContributor.RBAC" |
| 1/28/2025 | 19:47:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-opmdata-p-001.SubContributor" |
| 1/28/2025 | 19:47:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-opmdata-p-001.SubContributor" |
| 1/28/2025 | 19:47:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-opmdata-p-001.SubContributor" |
| 1/28/2025 | 19:45:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-opmdata-001.Contributor" |
| 1/28/2025 | 19:45:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-opmdata-001.Contributor" |
| 1/28/2025 | 19:45:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-opmdata-001.Contributor" |
| 1/28/2025 | 19:40:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usad-p-001.Contributor.RBAC" |
| 1/28/2025 | 19:40:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-usad-p-001.Contributor.RBAC" |
| 1/28/2025 | 19:40:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usad-p-001.Contributor.RBAC" |
| 1/28/2025 | 19:39:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-usad-qa-001.Contributor.RBAC" |
| 1/28/2025 | 19:39:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usad-qa-001.Contributor.RBAC" |
| 1/28/2025 | 19:38:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-usad-dev-001.Contributor.RBAC" |
| 1/28/2025 | 19:38:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usad-dev-001.Contributor.RBAC" |
| 1/28/2025 | 19:38:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-usad-dev-001.Contributor.RBAC" |
| 1/28/2025 | 19:20:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm365.onmicrosoft.com | "AZ.Exchange-Admin" |
| 1/28/2025 | 18:51:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Global-Admin" |
| 1/28/2025 | 18:27:24 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 18:27:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 18:27:22 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 18:15:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 18:15:50 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 18:15:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 15:42:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 16:22:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 16:22:47 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 16:22:46 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 16:22:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 16:17:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" |
| 1/28/2025 | 16:17:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "ghec.emu.Enterprise.Owners" |
| 1/28/2025 | 16:17:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" |
| 1/28/2025 | 16:17:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "ghec.emu.Enterprise.Owners" |
| 1/28/2025 | 16:17:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" |
| 1/28/2025 | 16:17:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ghec.emu.Enterprise.Owners" |
| 1/28/2025 | 16:17:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "ghec.emu.Enterprise.Owners" |
| 1/28/2025 | 16:16:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM Amazon Business - CIO" |
| 1/28/2025 | 16:13:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM Amazon Business - DCFO" |
| 1/28/2025 | 15:58:05 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 15:44:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usaj-p-001.Contributor" |
| 1/28/2025 | 15:44:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-usaj-p-001.Contributor" |
| 1/28/2025 | 15:44:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-usaj-p-001.Contributor" |
| 1/28/2025 | 15:44:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.CyberAdmin.UAT" |
| 1/28/2025 | 15:43:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usaj-np-001.SubContributor" |
| 1/28/2025 | 15:43:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-usaj-np-001.SubContributor" |
| 1/28/2025 | 15:43:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.CyberAdmin.DEV" |
| 1/28/2025 | 15:42:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.CyberAdmin.PERF" |
| 1/28/2025 | 15:42:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-usaj-p-001.Contributor" |
| 1/28/2025 | 15:42:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.CyberAdmin.SIT" |
| 1/28/2025 | 15:42:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usap-np-001.Contributor" |
| 1/28/2025 | 15:41:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-usap-np-001.Contributor" |
| 1/28/2025 | 15:41:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usap-np-001.Contributor" |
| 1/28/2025 | 15:41:07 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-usap-np-001.Contributor" |
| 1/28/2025 | 15:40:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usas-prod-001.Contributor.RBAC" |
| 1/28/2025 | 15:40:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-usas-prod-001.Contributor.RBAC" |
| 1/28/2025 | 15:40:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-4]@opm.gov | "hrs-usas-np-001.SubContributor" |
| 1/28/2025 | 15:39:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "hrs-usas-np-001.SubContributor" |
| 1/28/2025 | 15:39:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | "hrs-usas-np-001.SubContributor" |
| 1/28/2025 | 15:38:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 15:29:24 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Contributor.RBAC" |
| 1/28/2025 | 13:04:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" |
| 1/28/2025 | 13:03:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" |
| 1/28/2025 | 13:03:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" |
| 1/28/2025 | 13:03:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" |
| 1/28/2025 | 13:03:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" |
| 1/28/2025 | 13:03:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" |
| 1/28/2025 | 13:03:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" |
| 1/28/2025 | 12:08:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" |
| 1/28/2025 | 5:05:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 5:05:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/28/2025 | 5:05:57 | Core Directory | UserManagement | Disable account | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 1/28/2025 | 5:05:51 | Core Directory | UserManagement | Update user | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 1/28/2025 | 5:02:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opf-p-001.StorageBlobDataContributor.RBAC" |
| 1/28/2025 | 0:30:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "AZ.Global.Reader.RBAC" |
| 1/28/2025 | 0:30:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "AZ.AAD.GlobalReader" |
| 1/28/2025 | 0:30:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | "AZ.AAD.GlobalReader" |
| 1/29/2025 | 23:03:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [OPM-6]@opm.gov | "AZ.PSHB.OPMAdmin.SIT" |
| 1/29/2025 | 22:35:01 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" |
| 1/29/2025 | 22:34:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" |
| 1/29/2025 | 22:34:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" |

OPM-00095

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue | | |
|---|---|---|---|---|---|---|---|---|---|
| 1/29/2025 | 22:34:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:34:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:34:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:33:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:33:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:33:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:33:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:33:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 22:32:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.SIT" | | |
| 1/29/2025 | 21:57:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:40 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:40 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:57:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.UAT" | | |
| 1/29/2025 | 21:44:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.USAStaffingLMS.Prod.User" | | |
| 1/29/2025 | 21:36:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" | | |
| 1/29/2025 | 21:36:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" | | |
| 1/29/2025 | 20:31:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.USAS-dev-dataplane-resources-Team" | | |
| 1/29/2025 | 20:30:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.USAS-dev-controlplane-resources-Team" | | |
| 1/29/2025 | 19:51:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Alfabet.Prod" | | |
| 1/29/2025 | 19:51:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Alfabet.Prod" | | |
| 1/29/2025 | 19:49:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Alfabet.Test" | | |
| 1/29/2025 | 19:49:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Alfabet.Test" | | |
| 1/29/2025 | 19:48:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:48:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Dockerhub.User" | | |
| 1/29/2025 | 19:40:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Alfabet.Dev" | | |
| 1/29/2025 | 19:40:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Alfabet.Dev" | | |
| 1/29/2025 | 19:18:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [OPM-2]@opm.gov | | | |

JA593

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue |
|---|---|---|---|---|---|---|---|
| 1/29/2025 | 19:18:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-6J@opm.gov | |
| 1/29/2025 | 19:18:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-5J@opm.gov | |
| 1/29/2025 | 19:18:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | |
| 1/29/2025 | 19:18:21 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-7J@opm.gov | |
| 1/29/2025 | 19:18:13 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-3J@opm.gov | |
| 1/29/2025 | 18:09:00 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-4J@opm.gov | |
| 1/29/2025 | 17:43:05 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | Greg.Hogan@opm.gov | |
| 1/29/2025 | 17:30:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:30:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:10:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:10:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:10:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:10:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:40 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 17:01:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-retsys-np-001.Key.Vault.Secrets.User.RBAC" |
| 1/29/2025 | 15:02:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Prod" |
| 1/29/2025 | 15:02:32 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Prod" |
| 1/29/2025 | 15:02:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Prod" |
| 1/29/2025 | 14:37:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opmhi-np-001.Contributor.RBAC" |
| 1/29/2025 | 14:37:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opmhi-np-001.Contributor.RBAC" |
| 1/29/2025 | 14:36:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opmhi-np-001.Reader.RBAC" |
| 1/29/2025 | 14:36:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opmhi-np-001.Reader.RBAC" |
| 1/29/2025 | 14:22:01 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-disconnect-apppay-users" |
| 1/29/2025 | 14:20:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-bsgportal-apppay-users" |
| 1/29/2025 | 14:20:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-bsgportal-apppay-users" |
| 1/29/2025 | 14:20:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-bsgportal-apppay-users" |
| 1/29/2025 | 9:50:05 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:49:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 1/29/2025 | 9:49:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-13J@opm.gov | "AZ.OPM.KnowBe4.User" |
| 1/29/2025 | 9:49:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 1/29/2025 | 9:49:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:49:16 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:48:12 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:48:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-13J@opm.gov | "Az.OPM.LearningConnection.Prod.User" |
| 1/29/2025 | 9:48:04 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:47:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-17J@opm.gov | "AZ.OPM.KnowBe4.User" |
| 1/29/2025 | 9:47:09 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:46:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:46:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-17J@opm.gov | "Az.OPM.LearningConnection.Prod.User" |
| 1/29/2025 | 9:46:17 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:46:05 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 9:45:29 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/29/2025 | 2:07:40 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-2J@opm.gov | "opm-AllEmailGov-np-01.Contributor.RBAC" |
| 1/29/2025 | 2:07:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-2J@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" |
| 1/30/2025 | 22:05:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" |
| 1/30/2025 | 19:14:29 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/30/2025 | 19:13:28 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/30/2025 | 17:47:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "CIITAR Application Users" |
| 1/30/2025 | 17:07:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 1/30/2025 | 17:02:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/30/2025 | 16:50:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.CogServices-AI-Contributor-HCDMM" |
| 1/30/2025 | 16:50:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 1/30/2025 | 16:49:01 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ocio-hcdmm-ai-np.DocumentIntelligence" |
| 1/30/2025 | 16:28:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-6J@opm.gov | "opm-AllEmailGov-np-01.Contributor.RBAC" |
| 1/30/2025 | 16:17:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-6J@opm.gov | "opm-AllEmailGov-p-01.Contributor.RBAC" |
| 1/30/2025 | 14:49:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 1/30/2025 | 14:48:07 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 1/30/2025 | 14:43:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PERF" |
| 1/30/2025 | 14:43:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PERF" |
| 1/30/2025 | 14:43:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PERF" |
| 1/30/2025 | 14:43:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PERF" |
| 1/30/2025 | 14:42:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |
| 1/30/2025 | 14:42:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" |

OPM-00097

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue | | |
|---|---|---|---|---|---|---|---|---|---|
| 1/30/2025 | 14:42:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:42:07 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.PREPROD" | | |
| 1/30/2025 | 14:29:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" | | |
| 1/30/2025 | 14:24:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.Admin" | | |
| 1/30/2025 | 14:24:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.Admin" | | |
| 1/30/2025 | 14:24:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.Admin" | | |
| 1/30/2025 | 14:20:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:20:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 14:18:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.PSHB.OPMAdmin.Dev" | | |
| 1/30/2025 | 1:05:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-4]@opm.gov | "hrs-mgmt-p-001.USAS.AppInsights.Reader" | | |
| 1/30/2025 | 1:05:24 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-2]@opm.gov | "hrs-mgmt-p-001.USAS.AppInsights.Reader" | | |
| 1/30/2025 | 1:04:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-6]@opm.gov | "hrs-mgmt-p-001.USAS.AppInsights.Reader" | | |
| 1/30/2025 | 0:31:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-6]@opm.gov | "AZ.Global.Reader.RBAC" | | |
| 1/31/2025 | 22:59:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" | | |
| 1/31/2025 | 22:59:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" | | |
| 1/31/2025 | 22:04:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rs-ora-np-01.Contributor" | | |
| 1/31/2025 | 22:03:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rs-ora-np-01.Owner.RBAC" | | |
| 1/31/2025 | 22:03:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "iRetiredev" | | |
| 1/31/2025 | 22:03:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "iRetireTest" | | |
| 1/31/2025 | 22:02:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "iRetireProd" | | |
| 1/31/2025 | 22:01:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "iRetireStage" | | |
| 1/31/2025 | 21:19:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 21:18:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 21:17:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/31/2025 | 21:15:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/31/2025 | 20:57:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/31/2025 | 20:56:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 20:17:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-18]@opm.gov | "OCIO-STAMP-Users" | | |
| 1/31/2025 | 20:17:02 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 20:16:08 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 19:17:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 18:05:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cto-digitalservices-np-01.Contributor.RBAC" | | |
| 1/31/2025 | 17:54:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-8]@opm.gov | "OCIO-STAMP-Users" | | |
| 1/31/2025 | 17:50:27 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | "OCIO-STAMP-Users" | | |
| 1/31/2025 | 17:39:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 17:39:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 17:28:22 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 17:27:10 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 17:26:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 16:57:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 15:51:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/31/2025 | 16:38:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/31/2025 | 16:37:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 16:36:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 14:25:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Architects" | | |
| 1/31/2025 | 14:24:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Members" | | |
| 1/31/2025 | 14:23:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Members" | | |
| 1/31/2025 | 14:23:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/31/2025 | 14:23:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-2]@opm.gov | "GHEC-OPM-OD-Members" | | |
| 1/31/2025 | 14:23:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Members" | | |
| 1/31/2025 | 14:23:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-CTO-Members" | | |
| 1/31/2025 | 14:23:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/31/2025 | 14:23:07 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Architects" | | |
| 1/31/2025 | 14:22:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Members" | | |
| 1/31/2025 | 14:22:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Members" | | |
| 1/31/2025 | 14:22:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OD-Members" | | |
| 1/31/2025 | 14:22:13 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/31/2025 | 14:22:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OD-Members" | | |
| 1/31/2025 | 14:21:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-5]@opm.gov | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-DevOps" | | |
| 1/31/2025 | 14:21:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-DevOps" | | |
| 1/31/2025 | 14:21:31 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OD-Members" | | |
| 1/31/2025 | 14:21:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-3]@opm.gov | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Members" | | |
| 1/31/2025 | 14:21:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/31/2025 | 14:20:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-DevOps" | | |
| 1/31/2025 | 14:20:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-DevOps" | | |
| 1/31/2025 | 14:20:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-CTO-Members" | | |
| 1/31/2025 | 14:20:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OPM-GHEC-User-Read" | | |
| 1/31/2025 | 14:17:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Owners" | | |
| 1/31/2025 | 14:16:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Owners" | | |
| 1/31/2025 | 14:16:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-BAS-PAPS-USALearning-Owners" | | |
| 1/31/2025 | 10:01:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-14]@opm.gov | "AZ.OPM.KnowBe4.User" | | |
| 1/31/2025 | 9:59:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 1/31/2025 | 9:59:46 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 9:59:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 9:59:17 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 1/31/2025 | 9:58:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-10]@opm.gov | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 9:56:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 1/31/2025 | 9:55:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |

OPM-00098

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue |
|---|---|---|---|---|---|---|---|
| 1/31/2025 | 9:55:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-10]@opm.gov | "AZ.OPM.KnowBe4.User" |
| 1/31/2025 | 9:55:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-14]@opm.gov | "Az.OPM.LearningConnection.Prod.User" |
| 1/31/2025 | 5:16:13 | Core Directory | UserManagement | Delete user | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/1/2025 | 5:07:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/1/2025 | 5:07:35 | Core Directory | UserManagement | Update user | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 2/1/2025 | 5:07:35 | Core Directory | UserManagement | Disable account | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 2/1/2025 | 5:06:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/1/2025 | 5:06:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/1/2025 | 5:06:55 | Core Directory | UserManagement | Update user | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 2/1/2025 | 5:06:55 | Core Directory | UserManagement | Disable account | Azure AD Identity Governance - Directory Management | [PII] | "AccountEnabled" |
| 2/2/2025 | 10:09:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/2/2025 | 10:07:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 23:11:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 2/3/2025 | 20:06:03 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 20:04:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 20:03:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 20:03:11 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 20:02:43 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 20:02:20 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 20:01:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 19:52:12 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 17:03:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 17:03:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 17:01:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/3/2025 | 15:19:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs.usadata.data.stusaspr0001.blob.mod" |
| 2/3/2025 | 15:19:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs.usadata.data.stusasnp.blob.mod" |
| 2/3/2025 | 15:18:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs.usadata.d.data.blob.mod" |
| 2/3/2025 | 15:17:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usad-p-001.StorageBlobMod.RBAC" |
| 2/3/2025 | 15:16:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usad-qa-001.StorageBlobMod.RBAC" |
| 2/3/2025 | 15:16:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usad-dev-001.StorageBlobMod.RBAC" |
| 2/3/2025 | 15:11:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.ditt.postal.prd" |
| 2/3/2025 | 15:11:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.ett.postal.prd" |
| 2/3/2025 | 15:11:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.ditt.postal.prd" |
| 2/3/2025 | 15:09:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.ehri" |
| 2/4/2025 | 23:18:09 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 23:15:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 23:13:21 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" |
| 2/4/2025 | 23:12:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 22:59:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 22:36:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 22:18:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 22:18:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 21:57:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 21:57:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 21:36:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.janus.backend.prod.Users" |
| 2/4/2025 | 21:17:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 21:16:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 21:12:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.janus.frontend.prod.Users" |
| 2/4/2025 | 20:02:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usad-qa-001.Contributor.RBAC" |
| 2/4/2025 | 20:02:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usad-dev-001.Contributor.RBAC" |
| 2/4/2025 | 19:58:47 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 19:58:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 19:37:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 19:36:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 19:29:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.SharePoint-Admin" |
| 2/4/2025 | 18:58:45 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 18:58:01 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 18:55:26 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 18:55:17 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 18:40:06 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 17:40:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" |
| 2/4/2025 | 17:40:22 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 17:39:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" |
| 2/4/2025 | 17:35:37 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "HI – FEDVIP – Carrier Communications" |
| 2/4/2025 | 17:01:19 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 16:59:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 15:39:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.ehri.qa" |
| 2/4/2025 | 14:39:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 14:39:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-15]@opm.gov | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 14:38:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-12]@opm.gov | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 14:38:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-11]@opm.gov | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 14:35:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/4/2025 | 14:29:21 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-12]@opm.gov | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 14:29:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 14:28:07 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 14:25:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-15]@opm.gov | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 14:25:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-11]@opm.gov | "Az.OPM.LearningConnection.Prod.User" |
| 2/4/2025 | 13:48:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 13:37:04 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 13:16:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 2/4/2025 | 12:11:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-eopf-helpdesk-footprints-apppeix-users" |
| 2/4/2025 | 10:19:59 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:19:48 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:19:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:19:24 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:19:14 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:19:13 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:18:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:18:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:18:40 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:18:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:18:11 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:12 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:10 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:06 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:17:03 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:16:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:16:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:16:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:16:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:16:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:16:20 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:15:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:15:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:15:49 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:15:29 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:15:20 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:15:16 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/4/2025 | 10:15:12 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/5/2025 | 20:59:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rg-ocio-cyber-cprm-ai-np.CogServicesContributor" |
| 2/5/2025 | 20:57:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rg-ocio-cyber-cprm-ai-np.Contributor" |
| 2/5/2025 | 19:22:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usaj-np-001.SubContributor" |
| 2/5/2025 | 19:22:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usaj-np-001.SubContributor" |
| 2/5/2025 | 19:21:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-ofs-np-001.Contributor.RBAC" |

OPM-00099

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue | | |
|---|---|---|---|---|---|---|---|---|---|
| 2/5/2025 | 19:21:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-sfs-np-001.Contributor.RBAC" | | |
| 2/5/2025 | 19:07:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-sfs-p-001.Contributor.RBAC" | | |
| 2/5/2025 | 19:07:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-sfs-p-001.Contributor.RBAC" | | |
| 2/5/2025 | 19:05:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-p-001.Contributor.RBAC" | | |
| 2/5/2025 | 19:04:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Contributor.RBAC" | | |
| 2/5/2025 | 19:03:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usaj-p-001.Contributor" | | |
| 2/5/2025 | 19:03:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usaj-np-001.Contributor.RBAC" | | |
| 2/5/2025 | 19:03:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usaj-np-001.Contributor.RBAC" | | |
| 2/5/2025 | 18:16:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:47 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:45 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:20 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:19 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:19 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 18:16:03 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 15:07:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "PPCOEToolkitUsers" | | |
| 2/5/2025 | 14:15:46 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_scuba" | | |
| 2/5/2025 | 14:15:45 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_scuba" | | |
| 2/5/2025 | 14:15:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_scuba" | | |
| 2/5/2025 | 14:15:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_scuba" | | |
| 2/5/2025 | 14:15:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_scuba" | | |
| 2/5/2025 | 14:14:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_cyhy " | | |
| 2/5/2025 | 14:14:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_cyhy " | | |
| 2/5/2025 | 14:14:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_cyhy " | | |
| 2/5/2025 | 14:14:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:49 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_cyhy " | | |
| 2/5/2025 | 14:14:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_cyhy " | | |
| 2/5/2025 | 14:14:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "cdm_dbaas_cyhy " | | |
| 2/5/2025 | 14:14:30 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:25 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:25 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/5/2025 | 14:14:24 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 21:56:32 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 21:55:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 19:48:28 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 2/6/2025 | 19:39:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 2/6/2025 | 19:00:00 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 18:38:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 18:45:40 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 18:38:47 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 17:59:34 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 2/6/2025 | 17:55:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 2/6/2025 | 12:13:12 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-eopf-helpdesk-footprints-apppsv-users" | | |
| 2/6/2025 | 11:44:29 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 11:43:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:29:24 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:29:01 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:28:49 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:28:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:27:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:27:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:27:28 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:27:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:27:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:27:05 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:26:02 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:25:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:25:46 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:25:44 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/6/2025 | 10:25:43 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 21:11:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.B2B-DOJ-Collaborators" | | |
| 2/7/2025 | 21:11:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.B2B-DOJ-Collaborators" | | |
| 2/7/2025 | 20:44:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rs-januuc-p-001.Reader" | | |
| 2/7/2025 | 20:38:48 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.B2B-DOJ-Collaborators" | | |
| 2/7/2025 | 20:38:16 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.B2B-DOJ-Collaborators" | | |
| 2/7/2025 | 19:59:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.usadata.prod" | | |
| 2/7/2025 | 19:58:43 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.usadata.dev" | | |
| 2/7/2025 | 19:38:08 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rs-januuc-p-001.Reader" | | |
| 2/7/2025 | 19:28:17 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.AAD.GlobalReader" | | |
| 2/7/2025 | 18:10:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" | | |
| 2/7/2025 | 18:08:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 17:50:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "GHEC-OPM-OCIO-FITBS-HRSITPMO-USAP-DevCps" | | |
| 2/7/2025 | 16:10:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Owner.RBAC" | | |
| 2/7/2025 | 15:05:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.usadata.dev" | | |
| 2/7/2025 | 15:05:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Exchange-Admin" | | |
| 2/7/2025 | 15:05:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Exchange-Admin" | | |
| 2/7/2025 | 15:03:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.scientist.usadata" | | |
| 2/7/2025 | 15:01:14 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.analyst.ehri" | | |
| 2/7/2025 | 14:56:29 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.dtt.postal.prd" | | |
| 2/7/2025 | 14:56:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.dtt.postal.prd" | | |
| 2/7/2025 | 14:56:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "az.databrx.data.engineer.dtt.postal.prd" | | |
| 2/7/2025 | 14:05:45 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-4]@opm.gov | | | |
| 2/7/2025 | 14:03:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-4]@opm.gov | | | |
| 2/7/2025 | 13:39:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ocio-cyber-p-001.Reader.RBAC" | | |
| 2/7/2025 | 13:39:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rg-AzLogs-p-001.Contributor.RBAC" | | |
| 2/7/2025 | 13:39:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "rg-AzLogs-p-001.Reader" | | |
| 2/7/2025 | 13:39:52 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.rg-cyber-playbooks-p-001.Contributor" | | |
| 2/7/2025 | 13:39:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Purview-IRM-Analysts" | | |
| 2/7/2025 | 13:39:51 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Global.Reader.RBAC" | | |
| 2/7/2025 | 13:39:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Security.Reader" | | |
| 2/7/2025 | 13:35:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 13:35:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 13:35:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 13:35:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 13:35:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 13:35:50 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | | | |
| 2/7/2025 | 2:31:26 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-6]@opm.gov | "hrs-opmdata-qa-001.SubContributor.RBAC" | | |
| 2/7/2025 | 2:31:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-2]@opm.gov | "hrs-opmdata-qa-001.SubContributor.RBAC" | | |
| 2/7/2025 | 2:29:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-6]@opm.gov | "hrs-opmdata-qa-001.Reader.RBAC" | | |
| 2/7/2025 | 2:28:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | OPM-6]@opm.gov | "hrs-opmdata-qa-001.Reader.RBAC" | | |
| 2/7/2025 | 2:24:17 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-2]@opm.gov | "hrs-opmdata-qa-001.Reader.RBAC" | | |
| 2/7/2025 | 2:24:16 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-6]@opm.gov | | | |

JA597

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue |
|---|---|---|---|---|---|---|---|
| 2/7/2025 | 2:06:10 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-2@opm.gov | |
| 2/7/2025 | 2:06:10 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-6@opm.gov | |
| 2/7/2025 | 2:04:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-2@opm.gov | |
| 2/7/2025 | 2:04:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | OPM-6@opm.gov | |
| 2/8/2025 | 23:38:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.FullContributor.RBAC" |
| 2/8/2025 | 11:08:17 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/8/2025 | 10:59:02 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/8/2025 | 4:16:07 | Core Directory | UserManagement | Delete user | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/9/2025 | 4:07:58 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/9/2025 | 4:07:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 21:49:55 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 21:48:28 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 21:48:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 21:45:18 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 20:12:35 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 2/10/2025 | 20:12:33 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 2/10/2025 | 20:01:30 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.Intune-Admin" |
| 2/10/2025 | 19:59:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "ocio-itops-p-001.Contributor.RBAC" |
| 2/10/2025 | 18:47:30 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 18:47:26 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 18:47:24 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 18:47:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 18:47:23 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:42 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:41 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:40 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:39 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:33:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:32:38 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:32:37 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:32:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:32:36 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 17:32:35 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 16:42:40 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.USAStaffingLMS.Prod.User" |
| 2/10/2025 | 16:00:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/10/2025 | 15:58:32 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 15:38:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/10/2025 | 15:36:13 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 14:47:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 2/10/2025 | 14:46:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 2/10/2025 | 14:46:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 2/10/2025 | 14:46:57 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" |
| 2/10/2025 | 14:39:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-p-001.Full.Owner.RBAC" |
| 2/10/2025 | 14:39:04 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.USAStaffingLMS.Prod.User" |
| 2/10/2025 | 14:38:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usal-np-001.Full.Owner.RBAC" |
| 2/10/2025 | 14:26:39 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-usaj-p-001.Full.Owner.RBAC" |
| 2/10/2025 | 5:13:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:06:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:06:50 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:06:47 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:06:46 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:06:05 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:06:04 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:05:54 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:05:20 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 5:05:19 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 4:09:40 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 4:07:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 4:07:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/10/2025 | 4:07:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:13:08 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:11:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:08:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:08:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:07:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:07:39 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:05:22 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 22:02:22 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 20:50:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 2/11/2025 | 20:06:00 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.BMS.Admin.NP" |
| 2/11/2025 | 20:05:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.BMS.Admin.NP" |
| 2/11/2025 | 20:05:55 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.BMS.Admin.NP" |
| 2/11/2025 | 20:05:54 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.BMS.Admin.NP" |
| 2/11/2025 | 20:05:53 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.BMS.Admin.NP" |
| 2/11/2025 | 16:14:08 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "HRS – LAB – WIC Collaboration" |
| 2/11/2025 | 14:41:14 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "OCIO-STAMP-Users" |
| 2/11/2025 | 14:38:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 14:24:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Box.SFT.AppUsers" |
| 2/11/2025 | 14:24:07 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/11/2025 | 14:03:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.CLDCentral.Prod.User" |
| 2/11/2025 | 20:10:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/12/2025 | 20:08:13 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 20:07:56 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 20:07:50 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/12/2025 | 20:06:58 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/12/2025 | 20:05:15 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/12/2025 | 20:05:11 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:49:00 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:45:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:27:13 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:27:03 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:08:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:08:15 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:07:33 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 19:07:14 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 18:08:50 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 18:08:41 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" |
| 2/12/2025 | 18:07:50 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 18:07:34 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 18:06:59 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |
| 2/12/2025 | 18:06:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 18:05:27 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | [PII] | |
| 2/12/2025 | 16:56:22 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "DFS Development" |
| 2/12/2025 | 16:42:18 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "DFS Testing" |
| 2/12/2025 | 16:13:10 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opf-p-001.Reader.RBAC" |
| 2/12/2025 | 16:12:38 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "hrs-opf-np-001.Reader.RBAC" |
| 2/12/2025 | 16:07:11 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" |

OPM-000101

| Date (UTC) | Time | Service | Category | Activity | ActorDisplayName | Target1UserPrincipalName | Target1ModifiedProperty2NewValue | | |
|---|---|---|---|---|---|---|---|---|---|
| 2/12/2025 | 16:05:20 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 2/12/2025 | 15:57:42 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.CLDCentral.Dev.User" | | |
| 2/12/2025 | 15:56:56 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.CLDCentral.Prod.User" | | |
| 2/12/2025 | 15:56:06 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.CLDCentral.Test.User" | | |
| 2/12/2025 | 13:54:44 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "CIITAR Application Users" | | |
| 2/12/2025 | 11:48:36 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "Az.OPM.LearningConnection.Prod.User" | | |
| 2/12/2025 | 11:46:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.KnowBe4.User" | | |
| 2/12/2025 | 0:06:57 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | {OPM-2}@opm.gov | | | |
| 2/12/2025 | 0:06:53 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | {OPM-6}@opm.gov | | | |
| 2/12/2025 | 0:06:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | {OPM-6}@opm.gov | | | |
| 2/12/2025 | 0:06:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | Amanda.Scales@opm.gov | | | |
| 2/12/2025 | 0:06:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | {OPM-3}@opm.gov | | | |
| 2/12/2025 | 0:06:52 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | {OPM-5}@opm.gov | | | |
| 2/12/2025 | 0:06:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | {OPM-4}@opm.gov | | | |
| 2/12/2025 | 0:06:51 | Core Directory | GroupManagement | Remove member from group | Azure AD Identity Governance - Directory Management | {OPM-7}@opm.gov | | | |
| 2/13/2025 | 15:14:05 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-usas-footprints-apppxy-users" | | |
| 2/13/2025 | 15:14:03 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "eid-usas-footprints-apppxy-users" | | |
| 2/13/2025 | 13:34:23 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" | | |
| 2/13/2025 | 13:34:19 | Core Directory | GroupManagement | Add member to group | Azure AD Identity Governance - Directory Management | [PII] | "AZ.OPM.Apptio.Cloudability.User" | | |

OPM-000102

| Employee Name | System Name | Date Created | Date Removed | Admin Access (Yes/No?) | Login (Yes/No?) |
|---|---|---|---|---|---|
| Amanda Scales | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 2/3/2025 | | Yes | No |
| Amanda Scales | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | Yes | Yes Last Login 2025-02-28 |
| Amanda Scales | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | N/A | Yes | Yes |
| Amanda Scales | USA Performance - Office of the Director | 1/31/2025 | N/A | Yes | No |
| Amanda Scales | FEHB - Federal Employees Health Benefits | 2/3/2025 | | Yes | No |
| Amanda Scales | PSHB HBDP - Postal Service Health Benefits Data Platform | 2/3/2025 | | Yes | No |
| Charles Ezell | OPM Data : Connect Platform (Az.opm.entralD.PowerBIAdmin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | Yes | No |
| Greg Hogan | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | Yes | No |
| Greg Hogan | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | Yes | No |
| Greg Hogan | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | N/A | Yes | Yes |
| Greg Hogan | FEHB - Federal Employees Health Benefits | 1/28/2025 | | Yes | No |
| Greg Hogan | PSHB HBDP - Postal Service Health Benefits Data Platform | 1/30/2025 | | Yes | No |
| OPM-10 | USA Performance - Office of the Director | 2/7/2025 | N/A | Yes | No |
| OPM-11 | USA Performance - Office of the Director | 2/7/2025 | N/A | Yes | No |
| OPM-12 | USA Performance - Office of the Director | 2/7/2025 | N/A | Yes | No |
| OPM-13 | USA Performance - Office of the Director | 1/31/2025 | N/A | Yes | No |
| OPM-14 | USA Performance - Office of the Director | 2/7/2025 | N/A | Yes | No |
| OPM-15 | USA Performance - Office of the Director | 2/7/2025 | N/A | Yes | No |
| OPM-16 | USA Performance - Office of the Director | 1/31/2025 | N/A | Yes | No |
| OPM-17 | USA Performance - Office of the Director | 1/31/2025 | N/A | Yes | No |
| OPM-18 | USA Performance - Office of the Director | 1/24/2025 | N/A | Yes | No |
| OPM-2 | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | Yes | No |
| OPM-2 | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/28/2025 | | Yes | No |
| OPM-2 | OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD | 1/28/2025 | 2/6/2025 | No | No - never completed User registraion |
| OPM-2 | OPM Data : Enterprise Human Resources Integration (EHRI) - DEV/TST/QA/TRN/PRD | 1/28/2025 | 2/6/2025 | No | No - never completed User registraion |
| OPM-2 | FEHB - Federal Employees Health Benefits | 1/28/2025 | | Yes | No |
| OPM-2 | PSHB HBDP - Postal Service Health Benefits Data Platform | 1/28/2025 | | Yes | No |
| OPM-2h | USA Performance - U.S. Office of Personnel Management | 1/28/2025 | N/A | Yes | No |
| OPM-3 | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | Yes | No |
| OPM-3 | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | N/A | Yes | No |
| OPM-4 | USA Performance - U.S. Office of Personnel Management | 1/28/2025 | N/A | Yes | No |
| OPM-4 | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | Yes | No |
| OPM-4 | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/28/2025 | | Yes | No |
| OPM-4 | OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD | 1/28/2025 | 2/6/2025 | No | No - never completed User registraion |
| OPM-4 | OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD | 1/28/2025 | 2/6/2025 | No | No - never completed User registraion |
| OPM-4 | FEHB - Federal Employees Health Benefits | 1/28/2025 | | Yes | No |
| OPM-4 | PSHB HBDP - Postal Service Health Benefits Data Platform | 1/28/2025 | | Yes | No |
| OPM-5 | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | Yes | No |
| OPM-5 | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/20/2025 | | Yes | No |
| OPM-5 | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | N/A | Yes | No |
| OPM-5 | FEHB - Federal Employees Health Benefits | 1/28/2025 | | Yes | No |
| OPM-5 | PSHB HBDP - Postal Service Health Benefits Data Platform | 1/30/2025 | | Yes | No |
| OPM-6 | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 1/28/2025 | | Yes | Yes |
| OPM-6 | OPM Data : Connect Platform (Az.opm.entralD.efficiencyorg.admin + Az.cio.entralD.PowerBIAdmin) | 1/28/2025 | | Yes | No |
| OPM-6 | OPM Data : Electronic Official Personnel Folder (eOPF) - DEV/TST/QA/TRN/PRD | 1/28/2025 | 2/6/2025 | No | No - never completed User registraion |
| OPM-6 | OPM Data : Enterprise Human Resources Integration (EHRI) - Dev/TST/QA/PRD | 1/28/2025 | 2/6/2025 | No | No - never completed User registraion |
| OPM-6 | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/28/2025 | 2/24/2025 | Yes | Yes  Last Login 2025-2-24 |
| OPM-6 | USA Performance - U.S. Office of Personnel Management | 1/28/2025 | N/A | Yes | No |
| OPM-6 | FEHB - Federal Employees Health Benefits | 1/28/2025 | | Yes | No |
| OPM-6 | PSHB HBDP - Postal Service Health Benefits Data Platform | 1/28/2025 | | Yes | No |
| OPM-7 | USA Performance - U.S. Office of Personnel Management | 1/20/2025 | N/A | Yes | No |
| OPM-7 | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 1/20/2025 | | Yes | Yes Last Login 2024-11-07 |
| OPM-8 | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 2/3/2025 | | Yes | No |
| OPM-8 | USA Staffing Core + Admin Portal - DEV/TST/STG/TRN/PRD | 2/3/2025 | | Yes | Yes Last Login 2025-02-23 |
| OPM-8 | USA Performance - Office of the Director | 1/31/2025 | N/A | Yes | No |
| OPM-8 | FEHB - Federal Employees Health Benefits | 2/3/2025 | | Yes | No |
| OPM-8 | PSHB HBDP - Postal Service Health Benefits Data Platform | 2/3/2025 | | Yes | No |
| OPM-9 | OPM Data : Azure Databricks Admin + NP / PRD Azure Subscriptions [OPMData / USADATA] | 2/4/2025 | | Yes | No |
| OPM-9 | USA Performance - Office of the Director | 1/31/2025 | N/A | Yes | No |
| OPM-9 | FEHB - Federal Employees Health Benefits | 2/4/2025 | | Yes | No |
| OPM-9 | PSHB HBDP - Postal Service Health Benefits Data Platform | 2/3/2025 | | Yes | No |

OPM-000103

| | |
|---|---|
| **From:** | Quinn, Quadrina L. |
| **To:** | Scales, Amanda D.; **OPM-5** Hogan, Greg; **OPM-7** **OPM-3** Ezell, Charles E. |
| **Cc:** | Walicek, Wayne; Fordham, Marshall T.; Price, MC; Curtis, Teresa A. |
| **Subject:** | USAJOBS admin accounts |
| **Date:** | Monday, January 20, 2025 6:41:52 PM |
| **Attachments:** | image001.png |

Hi all,

We have created administrator accounts with super user permissions for the USAJOBS admin systems below. The Web Admin system utilizes OPM single-sign-on (EntraID) to automatically log you in. In Agency Talent Portal you can use PIV or login.gov to authenticate into the system. Please let me know if you have any questions or issues with accessing these sites!

USAJOBS Web Admin
https://webadmin.usajobs.gov (production)
https://webadmin.uat.usajobs.gov (user acceptance testing environment)
https://webadmin.test.usajobs.gov (test environment)
https://webadmin.dev.usajobs.gov (development environment)

USAJOBS Agency Talent Portal
https://agencyportal.usajobs.gov/ (production)
https://agencyportal.uat.usajobs.gov (user acceptance testing environment)
https://agencyportal.test.usajobs.gov (test environment)
https://agencyportal.dev.usajobs.gov (development environment)

Thanks,
**Quadrina Quinn**
Supervisory IT Specialist
U.S. Office of Personnel Management
Office of the Chief Information Officer
c: (202) ██████
██████@opm.gov
OPM.gov



Follow us on LinkedIn | Twitter | YouTube

JA601

OPM-000104

| | | | | |
|---|---|---|---|---|
| **From:** | Quinn, Quadrina L. | | | |
| **To:** | OPM-6 | OPM-2 | OPM-4 | |
| **Cc:** | Walicek, Wayne; Curtis, Teresa A.; Price, MC; Fordham, Marshall T.; Sarazine, Luke W.; Scales, Amanda | | | |
| **Subject:** | Access to USAJOBS | | | |
| **Date:** | Tuesday, January 28, 2025 4:29:25 PM | | | |
| **Attachments:** | image001.png | | | |

Hi all,

The requested access, permissions and documentation are below. Please let us know if you have any questions or issues!

- Code read and write permissions
  - Code read and write permissions will be granted via GitHub. The USAJOBS repositories can be located here. If you have any issues please contact Christopher Inman
- Deploy ability Octopus deploy
  - Deploy ability in Octopus Deploy – If you have any issues please contact Christopher Inman.
- Monitoring dashboards (e.g. displaying success rates, volume of traffic)
  - USAJ Production Azure Application Insights Dashboard
  - USAJ UAT Azure Application Insights
  - USAJ Test Azure Application Insights
  - USAJ DEV Azure Application Insights
- Documentation (e.g. test and deploy instructions, system diagrams)
  - USAJOBS code repository readme
  - USAJOBS infrastructure readme
  - USAJOBS system diagram
- The on-call rotation for the system
  - Tony Dalton - 202-███████ (Devops/system administration)
  - James Moon - 478-███████ (DBA)
- Names of all engineers deeply familiar with the system
  - Keith Lawrence – Systems Architect
  - Saleim Abushanab – Lead Developer
  - Jacob Riley – Lead Developer
  - Wayne Kaye – Lead Developer
  - Marshall Fordham – Supervisor
  - Quadrina Quinn – Supervisor
  - Luke Sarazine – Supervisor
- Ability to access the system as a regular user
  - USAJOBS.gov accounts will need to be self-registered.
- Ability to access the system as an admin user.
  - USAJOBS Web Admin accounts created with super user permissions. The Web Admin system utilizes OPM single-sign-on (EntraID) to automatically log you in
  - USAJOB Agency Talent Portal account invites sent. You can use PIV or login.gov to authenticate into the system.

Thanks,

OPM-000105

**Quadrina Quinn**
Supervisory IT Specialist
U.S. Office of Personnel Management
Office of the Chief Information Officer
c: (202) ██████
████████ @opm.gov
OPM.gov



Follow us on LinkedIn | Twitter | YouTube

OPM-000106

| | |
|---|---|
| **From:** | Curtis, Teresa A. |
| **To:** | Hurst, Corey D.; Price, MC |
| **Cc:** | Walicek, Wayne; Corum, Brice M.; DesCombes, Daniel; Parham, Lee; Sarazine, Luke W. |
| **Subject:** | Re: urgent request from political tech staff |
| **Date:** | Thursday, January 30, 2025 10:28:47 AM |
| **Attachments:** | Outlook-t4jdpy0h.png |

Yes -  The request was from the Acting Director to MC on Monday January 20th to add these people to the system as admins.


Teresa Curtis

Deputy Associate Chief Information Officer

U.S. Office of Personnel Management

Office of the Chief Information Officer, Federal Information Technology Business Solutions

c: (816) ███████

█████████ @opm.gov

OPM.gov

---

**From:** Hurst, Corey D. <████████@opm.gov>
**Sent:** Thursday, January 30, 2025 8:37 AM
**To:** Price, MC <█████████@opm.gov>; Curtis, Teresa A. <███████████@opm.gov>
**Cc:** Walicek, Wayne <████████@opm.gov>; Corum, Brice M. <████████@opm.gov>;
DesCombes, Daniel <██████████@opm.gov>; Parham, Lee <████████@opm.gov>;
Sarazine, Luke W. <█████████@opm.gov>
**Subject:** Re: urgent request from political tech staff

Good Morning MC/Teresa,

I can't seem to find the first request for the 6 individuals that we granted this access for. I'm thinking it was due to the 911-esque call we had that evening. Can you please confirm guidance/approval for the access for these folks from 1/20/25, for documentation purposes?

Individuals from the Political Team:

    amanda.scales@opm.gov

    **OPM-5** @opm.gov

    greg.hogan@opm.gov

    **OPM-7** @opm.gov

    **OPM-3** @opm.gov

    charles.ezell@opm.gov

Thank you,

**Corey Hurst**
Supervisory IT Specialist
U.S. Office of Personnel Management
OCIO – HR Solutions IT PMO – USA Staffing
Office (Teams): 202-936-2745
Cell: 478-██████
██████ @opm.gov
OPM.gov



Follow us on LinkedIn | Twitter | YouTube

---

**From:** Price, MC <██████ @opm.gov>
**Sent:** Tuesday, January 28, 2025 9:07 AM
**To:** Meck, Aaron R. ██████ @opm.gov>; Boles, Jason R ██████ @opm.gov>; Burke, Paul T. ██████ @opm.gov>; Corum, Brice M. ██████ @opm.gov>; Curtis, Teresa A. ██████ @opm.gov>; Davis, Leslie B. < ██████ @opm.gov>; Decker, DJ < ██████ @opm.gov>; DesCombes, Daniel < ██████ @opm.gov>; Eavenson, Keith W. < ██████ @opm.gov>; Ezell, Phillip A. < ██████ @opm.gov>; Fordham, Marshall T. < ██████ @opm.gov>; Foster, Ozie L. < ██████ @opm.gov>; Hurst, Corey D. < ██████ @opm.gov>; Inman, Christopher M. < ██████ @opm.gov>; Leski, David R. < ██████ @opm.gov>; Mathews, Brian C. ██████ @opm.gov>; Meck, Aaron R. < ██████ @opm.gov>; Micko, Robert J. < ██████ @opm.gov>; Parham, Lee < ██████ @opm.gov>; Price, MC < ██████ @opm.gov>; Quinn, Quadrina L. < ██████ @opm.gov>; Raval, Divya < ██████ @opm.gov>; Sarazine, Luke W. < ██████ @opm.gov>; Shelton, Angela K. ██████ @opm.gov>; Walicek, Wayne ██████ @opm.gov>; Williams, Melanie ██████ @opm.gov>; Williamson, Kim H. ██████ @opm.gov>; Papp, David ██████ @opm.gov>; Williams, Melanie ██████ @opm.gov>
**Subject:** urgent request from political tech staff

Quadrina, Brice, Corey, Daniel, Ozie, Dave, Luke, Paul, others as needed.

We have already given several of the political devs/engineers comprehensive access to USAJOBS and USA Staffing, and local admin, Enterprise Github licenses, etc.  Now we have 3 more individuals with the same requirement.  We'll start with USAJOBS, USA Staffing, and eOPF/EHRI.  USAP will be next, so might as well go ahead there. I will give them the leads to work with for these three and they will most likely reach out to discuss the bullets below (the how to's, along with the access).

The need to have access today, so please work through all the wickets, and Luke/Quadrina/Marshall, Brice/Daniel, Ozie, send them an intro message letting them know (please copy me).

OPM-6    @opm.gov
OPM-2    @opm.gov

OPM-000108

**OPM-4**        @opm.gov

- Code read and write permissions
- Deploy ability Octopus deploy
- Monitoring dashboards (e.g. displaying success rates, volume of traffic)
- Documentation (e.g. test and deploy instructions, system diagrams)
- The on-call rotation for the system
- Names of all engineers deeply familiar with the system
- Names of all product/project managers deeply familiar with the system
- Ability to access the system as a regular user (e.g. hiring manager and onboarding user for USA Staffing)
- Ability to access the system as an admin user

OPM-000109

| | |
|---|---|
| **From:** | Price, MC |
| **To:** | Hurst, Corey D.; Curtis, Teresa A. |
| **Cc:** | Walicek, Wayne; Corum, Brice M.; DesCombes, Daniel |
| **Subject:** | RE: USA Staffing Access Request - OPM-8 @opm.gov |
| **Date:** | Monday, February 3, 2025 5:40:30 PM |
| **Attachments:** | image001.png |
| | image002.png |

Approved.

**From:** Hurst, Corey D. <█████@opm.gov>
**Sent:** Monday, February 3, 2025 5:32 PM
**To:** Price, MC <█████@opm.gov>; Curtis, Teresa A. <█████@opm.gov>
**Cc:** Walicek, Wayne █████@opm.gov>; Corum, Brice M. <█████@opm.gov>; DesCombes, Daniel <█████@opm.gov>
**Subject:** USA Staffing Access Request - OPM-8 @opm.gov
**Importance:** High

MC,

Please see below for the access request from Amanda Scales:



Please let me know as soon as you can if this is approved or not. I will be ready to take action once approval is received.


**Corey Hurst**

**Supervisory IT Specialist**

**U.S. Office of Personnel Management**

**OCIO – HR Solutions IT PMO – USA Staffing**

**Office (Teams):** 202-936-2745

**Cell:** 478█████

█████@opm.gov>

OPM.gov

U.S. Office of
Personnel Management

Follow us on LinkedIn | Twitter | YouTube

OPM-000110

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| OPM-7 | | | 01/20/2025 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 171 | EXC APPT NTE    07/18/2025 |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| H2L | REG 304.103. |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | EXPERT<br>PD: 6A39743 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ED | 0301 | 00 | 00 | $0 | WC |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $0 | $0 | $0 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | OPM<br>OFC OF THE DIRECTOR<br><br>WASHINGTON DC |

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|
| 1 – None    3 – 10-Point/Disabils    5 – 10-Point/Other<br>2 – 5-Point    4 – 10-Point/Compensable    6 – 10-Point/Compensable/30%+ | 1 | 0 – None    2 – Conditional<br>1 – Permanent    3 – Indefinite :  0 | TG | YES  X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| A0 | 9    NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part–Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 4 | 01/20/2025 | F    FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 – Competitive Service    3 – SES General<br>2 – Excepted Service    4 – SES Career Reserved : 2 | E    E = Exempt<br>N = Nonexempt | 41AA0 | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON DISTRICT OF COLUMBIA  DC |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 00001 | | 0000 | 33.94 | CRITICAL-SENSITIVE (CS)/HIGH R |

**45. Remarks**
APPOINTMENT AFFIDAVIT EXECUTED 01-20-2025
REASON FOR TEMPORARY APPOINTMENT:    TO PROVIDE A HIGH LEVEL OF EXPERTISE RELATIVE TO ISSUES WHICH HAVE A
  SIGNIFICANT IMPACT ON THE FORMULATION OF AGENCY GOALS AND OBJECTIVES TO THE OPM DIRECTOR.
CREDITABLE MILITARY SERVICE: NONE
PREVIOUS RETIREMENT COVERAGE:  NEVER COVERED

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| OPM | ELECTRONICALLY SIGNED BY: |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | CARMEN GARCIA-WHITESIDE |
|---|---|---|---|
| OM00 | 1000 | 01/30/2025 | CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

Part 50–316                          2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

OPM-00011

UGA Legal Appeal: 25-1282    Doc: 39-2    Filed: 04/24/2025    Pg: 33 of 234

JA608

# APPOINTMENT AFFIDAVITS

Expert

**(Position to which Appointed)**

01/20/2025

*(Date Appointed)*

Office of Personnel Managemer    Office of the Director    Washington, D.C.

*(Department or Agency)*    *(Bureau or Division)*    *(Place of Employment)*

OPM-7

I, _____ , do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

OPM-7

Subscribed and sworn (or affirmed) before me this 20 day of _January_ , 20 25

at _Washington DC._

(City)    (State)

(SEAL)

_____
(Signature of Officer)

Commission expires_____
(If by a Notary Public, the date of his/her Commission should be shown)

_Acting Director_
(Title)

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

Standard Form 61
Revised August 2002
Previous editions not usable
OPM-000112

NSN 7540-00-634-4015

JA609

USCA4 Appeal: 25-1282    Doc: 39-2    Filed: 04/14/2025    Pg: 34 of 231

**Acceptance of Uncompensated Services**

I understand that I may be employed with the United States Office of Personnel Management

(OPM) under the authority of 5 U.S.C. § 3109.  Under certain circumstances, OPM may use this

authority to employ experts or consultants with or without pay, provided that such personnel

agree in advance in writing to waive any claims for compensation for those services.

I desire to offer my services to OPM.  Accordingly, I agree to being appointed as an

uncompensated employee of OPM; I understand that I will not receive any pay or any other form

of compensation from OPM, the federal Government, or any other source for the services I

render to OPM.

In addition, I hereby waive any and all claims I may have in the future against OPM and/or the

federal Government on account of the services I render to OPM.

OPM-7

Signed:

Printed Name of Appointee:         OPM-7        _____

Date: ____January 20, 2025_____

JA610

OPM-000113

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle)<br>OPM-8 | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date<br>01/20/2025 |
|---|---|---|---|---|

## FIRST ACTION

| 5-A. Code<br>146 | 5-B. Nature of Action<br>SES NONCAREER APPT |
|---|---|
| 5-C. Code<br>V4L | 5-D. Legal Authority<br>5 U.S.C. 3394(A). |
| 5-E. Code<br>AWM | 5-F. Legal Authority<br>OPM MEMO DTD 1-20-2025 |

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| 6-C. Code | 6-D. Legal Authority |
| 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number<br>SENIOR ADVISOR TO THE DIRECTOR<br>PD: 6A37370 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ES | 0301 | 00 | 00 | $195,200.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $195,200.00 | $0 | $195,200.00 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization<br>OPM<br>OFC OF THE DIRECTOR<br><br>WASHINGTON DC |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference<br>1 - None   3 - 10-Point/Disability   5 - 10-Point/Other<br>2 - 5 Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30%<br>**1** | | 24. Tenure<br>0 - None   2 - Conditional<br>1 - Permanent   3 - Indefinite<br>**0** | 25. Agency Use<br>MK | 26. Veterans Preference for RIF<br>YES   **X**   NO |
|---|---|---|---|---|
| 27. FEGLI<br>B0 | | 28. Annuitant Indicator<br>9   NOT APPLICABLE | | 29. Pay Rate Determinant<br>0 |
| 30. Retirement Plan<br>KF | 31. Service Comp. Date (Leave)<br>01/20/2025 | 32. Work Schedule<br>F   FULL TIME | | 33. Part-Time Hours Per<br>Biweekly<br>Pay Period |

## POSITION DATA

| 34. Position Occupied<br>1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved<br>**3** | 35. FLSA Category<br>E   E - Exempt<br>N - Nonexempt | 36. Appropriation Code<br>41AA0 | 37. Bargaining Unit Status<br>8888 |
|---|---|---|---|
| 38. Duty Station Code<br>11-0010-001 | 39. Duty Station (City - County - State or Overseas Location)<br>WASHINGTON DISTRICT OF COLUMBIA DC | | |

| 40. Agency Data<br>90001 | 41. | 42.<br>0000 | 43.<br>33.94 | 44.<br>CRITICAL-SENSITIVE (CS)/HIGH R |
|---|---|---|---|---|

### 45. Remarks

VETERAN PREFERENCE IS NOT APPLICABLE TO THE SENIOR EXECUTIVE SERVICE.
APPOINTMENT AFFIDAVIT EXECUTED 01-20-2025.
EMPLOYEE SUBJECT TO POST-EMPLOYMENT RESTRICTIONS UNDER 18 U.S.C. 207(C).
THE EMPLOYEE OCCUPIES A POSITION SUBJECT TO THE PAY FREEZE FOR CERTAIN SENIOR POLITICAL OFFICIALS.
NOTWITHSTANDING OTHERWISE APPLICABLE PAY STATUTES AND REGULATIONS, PAY MAY BE SET AND ADJUSTED ONLY IN
ACCORDANCE WITH APPLICABLE PROVISIONS OF THE PAY FREEZE STATUTE.
TENURE AS USED FOR 5 U.S.C. 3502 IS NOT APPLICABLE TO THE SENIOR EXECUTIVE SERVICE.
CREDITABLE MILITARY SERVICE: 0000
PREVIOUS RETIREMENT COVERAGE:  NEVER COVERED
EMPLOYEE IS AUTOMATICALLY COVERED UNDER FERS, FERS-RAE, OR FERS-FRAE.
UPON APPOINTMENT TO THIS POSITION, APPOINTEE RECEIVED AND SIGNED THE ETHICS PLEDGE.  MEMBER RECEIVED
FINANCIAL DISCLOSURE MEMORANDUM AND SF-278 WHICH IS TO BE COMPLETED AND RETURN WITHIN 30 DAYS OF
APPOINTMENT

| 46. Employing Department or Agency<br>OPM | 50. Signature/Authentication and Title of Approving Official<br>ELECTRONICALLY SIGNED BY:<br>CARMEN GARCIA-WHITESIDE |
|---|---|
| 47. Agency Code<br>OM00 | 48. Personnel Office ID<br>1000 | 49. Approval Date<br>01/27/2025 | CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

5-Part 50-316                  2 - OPF Copy - Long-Term Record - DO NOT DESTROY                  Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

OPM-0001.14

JA 611

USCA4 Appeal: 25-1282      Doc: 39-2      Filed: 04/17/2025      Pg: 36 of 231

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle)<br>OPM-8 | 2. Social Security Number | 3. Date of Birth | 4. Effective Date<br>01/20/2025 |
|---|---|---|---|

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code<br>146 | 5-B. Nature of Action<br>SES NONCAREER APPT | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code<br>V4L | 5-D. Legal Authority<br>5 U.S.C. 3394(A). | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code<br>AWM | 5-F. Legal Authority<br>OPM MEMO DTD 1-20-2025 | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number<br>SENIOR ADVISOR TO THE DIRECTOR<br>PD: 6A37370 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ES | 0301 | 00 | 00 | $195,200.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $195,200.00 | $0 | $195,200.00 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization<br><br>OPM<br>OFC OF THE DIRECTOR<br><br><br>WASHINGTON DC |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference<br>1 - None   3 - 10-Point/Disabilities   5 - 10-Point/Other<br>2 - 5 Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30%<br>**1** | 24. Tenure<br>0 - None   2 - Conditional<br>1 - Permanent   3 - Indefinite<br>**0** | 25. Agency Use<br>MK | 26. Veterans Preference for RIF<br>YES   X   NO |
|---|---|---|---|

| 27. FEGLI<br>B0 | 28. Annuitant Indicator<br>9   NOT APPLICABLE | 29. Pay Rate Determinant<br>0 |
|---|---|---|

| 30. Retirement Plan<br>KF | 31. Service Comp. Date (Leave)<br>01/20/2025 | 32. Work Schedule<br>F   FULL TIME | 33. Part-Time Hours Per<br>Biweekly<br>Pay Period |
|---|---|---|---|

## POSITION DATA

| 34. Position Occupied<br>1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved<br>**3** | 35. FLSA Category<br>E   E - Exempt<br>N - Nonexempt | 36. Appropriation Code<br>41AA0 | 37. Bargaining Unit Status<br>8888 |
|---|---|---|---|

| 38. Duty Station Code<br>11-0010-001 | 39. Duty Station (City - County - State or Overseas Location)<br>WASHINGTON   DISTRICT OF COLUMBIA   DC |
|---|---|

| 40. Agency Data<br>X0001 | 41. | 42.<br>0000 | 43.<br>33.94 | 44.<br>CRITICAL-SENSITIVE (CS)/HIGH R |
|---|---|---|---|---|

**45. Remarks**
VETERAN PREFERENCE IS NOT APPLICABLE TO THE SENIOR EXECUTIVE SERVICE.
APPOINTMENT AFFIDAVIT EXECUTED 01-20-2025.
EMPLOYEE SUBJECT TO POST-EMPLOYMENT RESTRICTIONS UNDER 18 U.S.C. 207(C).
THE EMPLOYEE OCCUPIES A POSITION SUBJECT TO THE PAY FREEZE FOR CERTAIN SENIOR POLITICAL OFFICIALS.
NOTWITHSTANDING OTHERWISE APPLICABLE PAY STATUTES AND REGULATIONS, PAY MAY BE SET AND ADJUSTED ONLY IN
ACCORDANCE WITH APPLICABLE PROVISIONS OF THE PAY FREEZE STATUTE.
TENURE AS USED FOR 5 U.S.C. 3502 IS NOT APPLICABLE TO THE SENIOR EXECUTIVE SERVICE.
CREDITABLE MILITARY SERVICE: 0000
PREVIOUS RETIREMENT COVERAGE:   NEVER COVERED
EMPLOYEE IS AUTOMATICALLY COVERED UNDER FERS, FERS-RAE, OR FERS-FRAE.
UPON APPOINTMENT TO THIS POSITION, APPOINTEE RECEIVED AND SIGNED THE ETHICS PLEDGE.   MEMBER RECEIVED
FINANCIAL DISCLOSURE MEMORANDUM AND SF-278 WHICH IS TO BE COMPLETED AND RETURN WITHIN 30 DAYS OF
APPOINTMENT

| 46. Employing Department or Agency<br>OPM | 50. Signature/Authentication and Title of Approving Official<br>ELECTRONICALLY SIGNED BY:<br>CARMEN GARCIA-WHITESIDE |
|---|---|
| 47. Agency Code<br>OM00 | 48. Personnel Office ID<br>1000 | 49. Approval Date<br>01/27/2025 | CHIEF HUMAN CAPITAL OFFICER AND DIRECTOR OF OPM HR |

5-Part 50-316       2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

USCA4 Appeal: 25-1282       Doc: 39-2       Pg: 37 of 231       Filed: 04/14/2025

JA612

OPM-0001-15

# APPOINTMENT AFFIDAVITS

| | | |
|---|---|---|
| Senior Advisor to the Director | | 01/20/2025 |
| (Position to which Appointed) | | (Date Appointed) |

| | | |
|---|---|---|
| Office of Personnel Management | Office of the Director | Washington, DC, United States |
| (Department or Agency) | (Bureau or Division) | (Place of Employment) |

OPM-8

I, _____ , do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

OPM-8

(Signature of Appointee)

Subscribed and sworn (or affirmed) before me this **20** day of _____**January**_____ , **2025**

at ____**Washington**____    ____**DC**____
(City)                (State)

(SEAL)                                      _____
                                               (Signature of Officer)

Commission expires _____        ____**Acting Director**____
(If by a Notary Public, the date of his/her Commission should be shown)        (Title)

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

EOD:OM00  JA613  osla=ng        NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable
OPM-000116

USCA4 Appeal: 25-1282    Doc: 39-2    Filed: 04/14/2025    Pg: 38 of 231



Privacy Impact Assessment for

# Government-Wide Email System (GWES)

February 28, 2025

**Contact Point**
Riccardo Biasini
Senior Advisor to the Director
Office of the Director

**Reviewing Official**
Greg Hogan
Chief Information Officer

JA614



# Legal Requirements for Privacy Impact Assessment

Longstanding Office of Management and Budget (OMB) and Office of Personnel Management (OPM) guidance explains that Privacy Impact Assessments (PIAs) are not required for IT systems or projects that collect, maintain, or disseminate information solely about federal government employees. For example, the OMB guidance states that "[n]o PIA is required . . . for government-run websites, IT systems or collections of information to the extent that they do not collect or maintain information in identifiable form about members of the general public." M-03-22, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, Attachment A(II)(B)(3) (Sept. 26, 2003); *see also id.* Attachment A(II)(B)(1) ("The E-Government Act requires agencies to conduct a PIA before: 1. developing or procuring IT systems or projects that collect, maintain or disseminate information in identifiable form from or about members of the public, or 2. initiating, consistent with the Paperwork Reduction Act, a new electronic collection of information in identifiable form for 10 or more persons (excluding agencies, instrumentalities or employees of the federal government)."); OPM Privacy Impact Assessment (PIA) Guide, at 2 (Apr. 22, 2010) (stating that a PIA is required for "an IT system or project that collects, maintains, or disseminates information in identifiable form from or about members of the public"); *id.* at 3.

The Government-Wide Email System (GWES) collects, maintains, and disseminates information about federal government employees. Therefore, no PIA is required. OPM has nevertheless chosen to conduct this PIA in its discretion.

# Abstract

OPM has a variety of personnel management functions, including executing, administering, and enforcing the civil service system. In order to carry out these duties, OPM internally developed the GWES to enable widespread,

OPM Form 5003
OPM-000118



**Privacy Impact Assessment**
Government-Wide Email System (GWES)
Page 2

rapid email communication with federal government employees. The GWES is designed to maintain the names and government email addresses of federal government employees, as well as emails sent from the system and responses to those emails.

## Overview

To execute its authorized role with respect to personnel matters and fulfill its duty to enforce the civil service laws, OPM has developed a system to send government-wide emails to federal government employees and receive responses. This system increases efficiency and transparency by allowing fast and widespread communication with the federal workforce OPM has been tasked with overseeing.

The GWES system operates entirely on government computers and in Microsoft applications procured in the normal course. OPM uses this system to communicate with federal employees, in a capacity within its statutory authority. The GWES is designed to collect, maintain, and use the (1) names of federal employees, (2) their government email addresses, and (3) email messages and responses, which may include additional information about the employee provided by that employee. The GWES blocks responses from emails that do not have government domains.

The information in the GWES is accessible by a limited number of individuals within OPM who have a need for the information in the performance of their duties, overseen by the Chief Information Officer.

The GWES is built largely upon employee email contact information found in the Enterprise Human Resources Integration (EHRI) and Official Personnel Folder (OPF) record systems. Additional email contact data is collected from the employing agencies of federal workers. OPM applies filters to these various sources to remove erroneous domains before emails are sent. The GWES is subject to existing and approved OPM security plans and the data is

OPM Form 5003
OPM-000119



**Privacy Impact Assessment**
Government-Wide Email System (GWES)
Page 3

stored in secure Microsoft applications and on government computers
requiring PIV access.

# Section 1.0. Authorities and Other Requirements

### 1.1. What specific legal authorities and/or agreements permit and define the collection of information by the project in question?

The President may delegate "authority for personnel management functions"
to the Director of OPM. 5 U.S.C. § 1104(a)(1). OPM has been delegated
authority to "exercise and provide leadership in personnel matters," among
other functions. Executive Order 9830 § 01.2(b). The Director also has the
duty to "execut[e], administer[], and enforce[e] … the civil service rules and
regulations of the President and the Office and the laws governing the civil
service." 5 U.S.C. § 1103(a)(5). Other relevant authorities include: 5 U.S.C.
§§ 301, 2951, 3301, 4302, 6504, 8347, and 8461. These authorities permit
OPM to maintain and request information regarding federal employees. The
President may also, from time to time, direct OPM to collect information or
communicate with the federal workforce on particular subject matters.

### 1.2. What Privacy Act System of Records Notice(s) (SORN(s)) apply to the information?

Email systems are not generally subject to the Privacy Act of 1974.
However, to the extent the GWES contain records subject to the Privacy Act,
or information stored on secure government computers, the information in
this system is covered by various OPM SORNs, including but not limited to
OPM GOVT-1, GOVT-2, Central-21, and Internal-21 SORNs.

### 1.3. Has a system security plan been completed for the information system(s) supporting the project?

The GWES is located within Microsoft applications and on secure government
computers. These Microsoft Applications have been granted an Authorization
to Operate (ATO) that includes an approved system security plan. The

OPM Form 5003
OPM-000120



government computers storing the data are subject to standard security requirements, including limited PIV access.

### 1.4. Does a records retention schedule approved by the National Archives and Records Administration (NARA) exist?

Depending on the nature and type of record within the GWES, various NARA-approved records schedules may apply. Item 040 (DAA-GRS-2017-0007-0004) covers any eOPF records and item 080 (DAA-GRS2017-0007-0012) covers other personnel contact information. Email records are governed by GRS 6.1, Capstone E-mail Retention.

### 1.5. If the information is covered by the Paperwork Reduction Act (PRA), provide the OMB Control number and the agency number for the collection.  If there are multiple forms, include a list in an appendix.

Information contained in the GWES is not subject to the PRA because it is not collected from the public.

# Section 2.0. Characterization of the Information

### 2.1. Identify the information the project collects, uses, disseminates, or maintains.

The GWES is designed to collect, maintain, and use the names and government email addresses of federal government employees. The GWES also maintains emails sent to those addresses, and collects and maintains responses to those emails. Specifically, the GWES contains the following:

- **Employee Contact Data:** The GWES is designed to collect, maintain, and use the names and government email addresses of federal government employees. Other identifying information is not used.

- **Employee Response Data:** After an email is sent using Employee Contact Data, the GWES stores that email and may collect and maintain responses. In some circumstances, responses may also be

OPM Form 5003
OPM-000121



sent directly to or redistributed to employing agencies or other agencies consistent with applicable restrictions on the particular data at issue and using authorized means of transmission.

## 2.2. What are the sources of the information and how is the information collected for the project?

The Employee Contact Data is compiled using the EHRI and OPF record systems. Additionally, some email contact data is collected from the employing agencies of federal workers. The system applies filters to remove erroneous domains before emails are sent.

The Employee Response Data is sent by federal government employees to OPM by email.

## 2.3. Does the project use information from commercial sources or publicly available data?  If so, explain why and how this information is used.

No, although many names and email addresses of federal government employees are publicly available.

## 2.4. Discuss how accuracy of the data is ensured.

The Employee Contact Data comes from the EHRI and OPF systems, which are subject to their own accuracy measures as outlined in their respective PIAs, as well as directly from the employing agencies.

The Employee Response Data comes directly from employees through their secure government email addresses. OPM anticipates that the responses will cover information within employees' personal knowledge or information provided to them in the course of their official duties.

## 2.5. Privacy Impact Analysis: Related to Characterization of the Information

**Privacy Risk**: There is a risk that erroneous email addresses have been collected.



**Privacy Impact Assessment**
Government-Wide Email System (GWES)
Page 6

**Mitigation**: This risk has been mitigated by compiling the Employee Contact Data through the EHRI and OPF systems, and directly from the employing agencies. The GWES uses email addresses with government domains and uses a filtering mechanism to remove contact data erroneously captured before emails are sent.

**Privacy Risk**: There is a risk that the Employee Response Data will be erroneous.

**Mitigation**: Because OPM uses the GWES to send emails to employees' official government email addresses, OPM has a high degree of confidence that the Employee Response Data will represent actual employee responses. Additionally, employees have the ability to correct any erroneous responses by working with the human capital officer or manager in their employing agency.

# Section 3.0. Uses of the Information

### 3.1. Describe how and why the project uses the information.

The GWES enables OPM to communicate directly and quickly with federal government employees and help OPM fulfill its statutory and delegated duties to lead and oversee personnel management functions in the federal workforce. OPM may also further communicate employee responses to employing agencies to facilitate those agencies' own personnel management, or other agencies as appropriate to facilitate government-wide workforce initiatives.

### 3.2. Does the project use technology to conduct electronic searches, queries, or analyses in an electronic database to discover or locate a predictive pattern or an anomaly? If so, state how OPM plans to use such results.

OPM employees programmatically evaluate responses to verify the quality of the system and analyze the substance of the Employee Response Data. OPM

OPM Form 5003
OPM-000123



anticipates enhancing and refining its response analyses over time. OPM may also query specific responses or emails to evaluate them as needed. Responses may be used to assist in making personnel decisions and to inform broader workplace initiatives.

### 3.3. Are there other programs or offices with assigned roles and responsibilities within the system?

No.

### 3.4. Privacy Impact Analysis: Related to the Uses of Information

**Privacy Risk**: There is a risk that the GWES information may be accessed by unauthorized users or by authorized users for an unauthorized purpose.

**Mitigation**: This risk is mitigated by restricting disclosure to a limited number of individuals who have a need to know the GWES information. The data is stored in secure Microsoft applications, and on secure government computers requiring a PIV card to access.

# Section 4.0. Notice

### 4.1. How does the project provide individuals notice prior to the collection of information? If notice is not provided, explain why not.

The names and government email addresses of federal government employees are already housed in OPM systems or provided by employing agencies and, in any event, do not contain substantive information about employees. As a result, there is no reason to provide advance notice for the collection of Employee Contact Data. Employees are provided notice of collection of the Employee Response Data in the emails disseminated using the GWES. Employees provide the data themselves in response to the email. This PIA also serves as a public resource explaining the purpose of the GWES, applicable SORNs, and other privacy-related information.



**4.2. What opportunities are available for individuals to consent to uses, decline to provide information, or opt out of the project?**

Individual federal government employees can decline to provide information by not responding to the email. The consequences for failure to provide the requested information will vary depending on the particular email at issue.

**4.3. Privacy Impact Analysis: Related to Notice**

**Privacy Risk**: There is a risk that individuals will not know their information is being collected, maintained, and distributed through the GWES.

**Mitigation**: This risk is mitigated by the publication of this PIA and through various statements provided to government employees explaining the information collection at issue.


# Section 5.0. Data Retention by the Project

## 5.1. Explain how long and for what reason the information is retained.

The records in the GWES are maintained according to the retention schedules identified in Section 1.4.

## 5.2. Privacy Impact Analysis: Related to Retention

**Privacy Risk**: There is a risk that the GWES information will be retained for longer than is necessary.

**Mitigation**: The risk is mitigated because OPM can delete all the GWES information, consistent with applicable retention schedules.



# Section 6.0. Information Sharing

### 6.1. Is information shared outside of OPM as part of the normal agency operations?  If so, identify the organization(s) and how the information is accessed and how it is to be used.

OPM anticipates regularly sharing GWES information relating to particular employees with their employing agency. In certain situations, data may also be shared with other agencies. Any data sharing will be undertaken consistent with applicable laws and policies, including pursuant to routine uses of applicable SORNs or employee consent. Data will be shared via authorized systems hosted either by OPM or the receiving agency.

### 6.2. Describe how the external sharing noted in 6.1 is compatible with the SORN noted in 1.2.

To the extent that GWES information is shared outside of OPM, it is shared consistent with applicable provisions of the Privacy Act, including through the routine uses of pertinent SORNs. The principal personnel SORN, GOVT-1, is owned by OPM but information may be accessed by employing agencies as needed.

### 6.3. Does the project place limitations on re-dissemination?

Government agencies that receive GWES information are generally subject to both the government-wide SORNs referenced in Section 1.2 as well as their own SORNs. Their use or disclosure of the information may occur only as consistent with applicable legal limitations.

### 6.4. Describe how the project maintains a record of any disclosures outside of OPM.

OPM keeps a record of distributions to the employing agencies in Microsoft applications. All actions taken by a user in Microsoft systems are logged, monitored, and accessed by those with a need to know for the performance of their official duties.

OPM Form 5003
OPM-000126



**Privacy Impact Assessment**
Government-Wide Email System (GWES)
Page 10

**6.5. Privacy Impact Analysis: Related to Information Sharing**

**Privacy Risk**: There is a risk that GWES information will be shared outside of OPM without authorization.

**Mitigation**: This risk is mitigated by limiting access to the GWES and disseminating GWES information only as consistent with relevant SORNs or as otherwise permitted by applicable law.

# Section 7.0. Redress

### 7.1. What are the procedures that allow individuals to access their information?

The federal government employees in the GWES have access to their own individual information. Employees will have a copy of any email that is sent, as well as their response. In addition, access procedures are outlined in each relevant SORN referenced in 1.2.

### 7.2. What procedures are in place to allow the subject individual to correct inaccurate or erroneous information?

If the Employee Response Data is erroneous, any federal government employee covered by the GWES may inform the human capital officer or a manager in their employing agency, who can work with the employee and OPM as necessary to correct the problem.

### 7.3. How does the project notify individuals about the procedures for correcting their information?

Emails sent through the GWES, or related guidance disseminated through agency human capital officers or managers, may inform individual federal employees of the procedures for correcting erroneous information through their employing agency. Also, employees may follow the publicly accessible access and amendment procedures outlined in the relevant SORNs referenced in 1.2.

OPM Form 5003
OPM-000127



## 7.4. Privacy Impact Analysis: Related to Redress

**Privacy Risk**: There is a risk that federal government employees will not have information regarding how to amend erroneous information.

**Mitigation**: Lodging the primary corrective mechanism in the human capital officer or manager at the employing agency gives each employee intuitive and easy access to the corrective mechanism. Also, each SORN has clear access and amendment procedures that employees may follow.


# Section 8.0. Auditing and Accountability

### 8.1. How does the project ensure that the information is used in accordance with stated practices in the PIA?

GWES information is captured by OPM's auditing tools and retained in an auditing archive. The Office of the Chief Information Security Officer reviews for suspicious or unusual activity and suspected violations, and appropriate action is taken as necessary.

### 8.2. Describe what privacy training is provided to users either generally or specifically relevant to the project.

OPM employees are required to take IT Security and Privacy Awareness training on an annual basis, and agree to OPM's Rules of Behavior before accessing the system.

### 8.3. What procedures are in place to determine which users may access the information and how does the project determine who has access?

Only a limited number of OPM employees with a need to know will have access to the full extent of the GWES data. No employee has access unless specifically authorized by the system owner and the authorizing official. Data sharing outside OPM is permitted only insofar as consistent with applicable law and as described above.



**Privacy Impact Assessment**
Government-Wide Email System (GWES)
Page 12

**8.4. How does the project review and approve information sharing agreements, MOUs, new uses of the information, and new access to the system by organizations within OPM and outside?**

Any changes in GWES access, uses, sharing agreements, or Memoranda of Understanding (MOUs) would need to be reviewed and approved by the system owner in coordination with the Office of the Chief Information Officer, as consistent with applicable law.

# Responsible Officials

Office of the Chief Information Officer

Office of the Director

# Approval Signature

*Signed copy on file with the Chief Information Officer*

Greg Hogan
Chief Information Officer

OPM Form 5003
OPM-000129

# Exhibit B

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE FOR RETIRED AMERICANS, *et al.*, <br><br>                 Plaintiffs, <br><br>       v. <br><br> SCOTT BESSENT, in his official capacity as the Secretary of the Treasury, *et al.*, <br><br>                 Defendants. | Civil Action No. 25-0313 (CKK) |

I, Daniel Katz, declare under penalty of perjury:

1. I am the Chief of Staff of the Department of the Treasury (Treasury), and I have served in this role since January 20, 2025. I am a non-career appointee, reporting directly to the Secretary. In this role, I am the primary aide to the Secretary responsible for exercising supervision over the Deputy Chiefs of Staff, Executive Secretary, Director of Scheduling, and other officials and offices within the Office of the Chief of Staff. I am also currently performing the delegable duties of the Deputy Secretary, which were delegated to me on February 6, 2025, pending the confirmation of the nominee for Deputy Secretary.

2. I am familiar with the claims asserted against Treasury in the above-captioned action regarding the granting of access to systems maintained by the Bureau of the Fiscal Service to employees implementing Executive Order 14,158. Based on personal knowledge and information provided to me in the course of my official duties, I provide this declaration in support of the Defendants' Response to Plaintiffs' Objections to the Designation of the Administrative Record.

3. Supplemental AR Tab 1, Supp_25-cv-00313_DDC_UST_0001 contains a true and correct copy of a January 8, 2025, email from Jonathan Greenstein, who led the Trump Administration's Treasury Department Agency Review Team, to Treasury officials and other members of the Treasury Agency Review Team requesting that Thomas Krause (Krause) be included on the "day 1 team, to lead on Fiscal Services modernization efforts."

4. The Preliminary Work Plan produced in Treasury's administrative record at 25-cv-00313-DDC_UST_0060 was drafted by Krause, with input from me, and sent to senior Treasury officials.

5. Supplemental AR Tab 2, Supp_25-cv-00313_DDC_UST_0002 contains true and correct copies of Incident Detail tickets that set forth various IT steps taken to grant PAM, SPS, and CARS database access to Marko Elez (Elez).

6. Supplemental AR Tab 3, Supp_25-cv-00313_DDC_UST_0014 reproduces a copy of the document included in Treasury's administrative record at 25-cv-00313-DDC_UST_0063 with certain redactions lifted.

7. I reviewed the PST file of the 12:15 PM email bates stamped 25-cv-00313-DDC_UST_0066. I have confirmed that Elez sent this email from his "@treasury.gov" email address to his "@fiscal.treasury.gov" email address.

8. I reviewed the plaintiffs' March 11, 2025 Objections to the Designation of the Administrative Record (Plaintiffs' Objections), as well as the Court's March 13, 2025 order (March 13 Order) in this case.

9. A news article cited in Plaintiffs' Objections, at pages 4-5, references a "risk assessment" document created by a subcontractor. I confirm that that "risk assessment" document was not

considered by Treasury as part of the decision to grant access to BFS systems and therefore is

not properly part of the administrative record.

10. I have specifically reviewed Plaintiffs' Objections at pages 5-6 (paragraph 2) and the related

portions of the March 13 Order, and I confirm that the administrative record is already

complete and that Treasury did not consider or rely on any other non-privileged materials

leading up to its decision to grant access systems maintained by the Bureau of the Fiscal

Service to employees implementing Executive Order 14,158.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 3/14 / 25                    Signed: _____

Daniel Katz
Chief of Staff
U.S. Department of the Treasury

3

# Supplemental AR Tab 1

| | |
|---|---|
| **From:** | Jonathan Greenstein (Volunteer) |
| **To:** | TreasuryExecutiveResources; Michael Friedman |
| **Cc:** | ██████████; Hampton, Ravin; ██████ |
| **Subject:** | RE: [EXTERNAL] White House Liaison - Meet and Greet |
| **Date:** | Thursday, January 9, 2025 1:21:43 PM |
| **Attachments:** | Tom_Krause.pdf |

** Caution: External email from: [**JonathanG.Volunteer@47transition.com**] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

CONFIDENTIAL / SUBJECT TO PRESIDENTIAL MOU

███████████████████████████████████████████████████████

**From:** Jonathan Greenstein (Volunteer)
**Sent:** Wednesday, January 8, 2025 10:42 PM
**To:** TreasuryExecutiveResources@treasury.gov; Michael Friedman <michaelf@47transition.com>; David Eisner (Volunteer) <DavidE.Volunteer@47transition.com>
**Cc:** ████████@treasury.gov; Ravin.Hampton@treasury.gov; ████████@treasury.gov
**Subject:** RE: [EXTERNAL] White House Liaison - Meet and Greet

CONFIDENTIAL / SUBJECT TO PRESIDENTIAL MOU

Sherri and Kim –

Please find attached and below the contact information of another member we would like to have on the day 1 team, to lead on Fiscal Services modernization efforts. Resume attached. Happy to discuss on the call tomorrow at 1pm ET.

- Tom Krause  ██████████████████

Jonathan

Supp_25-cv-00313_DDC_UST_0001

# Supplemental AR Tab 2

| | |
|---|---|
| **Report Title:** | Incident Details |
| **Run Date and Time:** | 2025-02-28 13:53:44 Eastern Standard Time |
| **Run by:** | ███████ |
| **Table name:** | incident |

## Incident

| | | | |
|---|---|---|---|
| Number: | INC0130757 | Channel: | Self-service |
| Caller: | ███████ | State: | Closed |
| Caller City: | Washington | On hold reason: | |
| Category: | Inquiry / Help | Impact: | 3 - Low |
| Affected User: | ███████ | Urgency: | 2 - Medium |
| Need help with: | Something else | Priority: | 4 - Low |
| Service: | CAIA (Common Approach to Identity Assurance) | Assignment group: | Identity Management |
| Configuration item: | SailPoint IdentityIQ | Assigned to: | ███████ |
| Route reason: | | Parent Incident: | |

| Short description: |
|---|
| Something else |

| Description: |
|---|
| Reroute CARS access request for Marko.Elez@treasury.gov for the following role: ███████ to ███████ as approver. |

## Notes

| | | | |
|---|---|---|---|
| Watch list: | | Work notes list: | |

| Additional comments: |
|---|
| |

| Work notes: |
|---|
| 2025-02-03 12:53:50 - ███████ (Work notes)<br>Transferring to IDM. |

## Related Records

| | | | |
|---|---|---|---|
| Problem: | | Change Request: | |
| Interaction: | | Caused by Change: | |

## Resolution Information

| | | | |
|---|---|---|---|
| Knowledge: | false | Service provided via: | |
| Resolution code: | Resolved - Permanent Fix Applied | Resolved by: | ███████ |
| | | Resolved: | 2025-02-03 12:56:56 |

| Resolution notes: |
|---|
| Request forwarded. |

## Major Incident

| Major incident state: |
|---|
| |

| Proposed by: | | Proposed: | |
|---|---|---|---|
| Promoted by: | | Promoted: | |
| Business impact: | | | |
| Probable cause: | | | |

## Post Incident Report

| Overview: |
|---|
| Findings: |
| Timeline: |

**Related List Title:**    Task SLA List
**Table name:**    task_sla
**Query Condition:**    Task = INC0130757
**Sort Order:**    None

1 Task SLAs

| Task | SLA definition | Type | Target | Stage | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|---|---|---|---|---|---|---|---|---|---|
| INC0130757 | Priority 4 Resolution | | | Completed | 4 Days 23 Hours 55 Minutes | 4 Minutes | 0.07 | 2025-02-03 12:52:09 | 2025-02-10 13:00:02 |

**Related List Title:**    Incident List
**Table name:**    incident
**Query Condition:**    Caller = █████████
**Sort Order:**    Number in descending order

24 Incidents

| ▼ Number | Action status | Active | Activity due | Additional assignee list | Agile story | Approval | Approval history |
|---|---|---|---|---|---|---|---|
| INC0131552 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0131550 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0130757 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0130583 | | false | UNKNOWN | | | Not Yet Requested | |

Run By : █████████    JA636    2025-02-28 13:53:44 Eastern Standard Time

| Number | Action status | Active | Activity due | Additional assignee list | Agile story | Approval | Approval history |
|---|---|---|---|---|---|---|---|
| INC0130227 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0130223 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0129558 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0115971 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0107847 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0079940 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0079585 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0079163 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0077531 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0077492 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0075643 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0073212 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0070455 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0069476 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0069352 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0062924 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0048620 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0047969 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0024436 | | false | UNKNOWN | | | Not Yet Requested | |
| INC0023254 | | false | UNKNOWN | | | Not Yet Requested | |

**Related List Title:**     CIs Affected List
**Table name:**     task_ci
**Query Condition:**     Task = INC0130757
**Sort Order:**     None

1 CIs Affected

| Configuration Item | Asset action | Swapped CI |
|---|---|---|
| SailPoint IdentityIQ | | |

**Related List Title:**     Impacted CIs List
**Table name:**     task_cmdb_ci_service
**Query Condition:**     Task = INC0130757
**Sort Order:**     None

1 Impacted CIs

| Configuration Item | Managed by | Owned by | Approval group | Location | Operational status | Manually added |
|---|---|---|---|---|---|---|
| CAIA (Common Approach to Identity Assurance) | | ▮▮▮▮ | | | Operational | true |

**Related List Title:**     Knowledge List
**Table name:**     kb_knowledge
**Query Condition:**     Sys ID in
**Sort Order:**     Number in descending order

None

**Related List Title:**     Security Incident List
**Table name:**     sn_si_incident
**Query Condition:**     Parent = INC0130757 AND Enforce restriction = false .or. Enforce restriction is empty OR Enforce restriction = true AND Allowed members CONTAINS ( ▮▮▮▮ ) .or. Allowed groups CONTAINS ( Fiscal Supervisor, BFS Employees, CAM System Owner ) AND Parent = INC0130757
**Sort Order:**     Number in ascending order

None

| | |
|---|---|
| **Related List Title:** | Security Incident List |
| **Table name:** | sn_si_incident |
| **Query Condition:** | Incident = INC0130757 AND Enforce restriction = false .or. Enforce restriction is empty OR Enforce restriction = true AND Allowed members CONTAINS ( ███████ ) .or. Allowed groups CONTAINS ( Fiscal Supervisor, BFS Employees, CAM System Owner ) AND Incident = INC0130757 |
| **Sort Order:** | Number in ascending order |

None

| Report Title: | Requested Item Details |
| Run Date and Time: | 2025-02-28 08:48:16 Eastern Standard Time |
| Run by: | ███████████ |
| Table name: | sc_req_item |

### Requested Item

| Number: | RITM0180112 | Opened: | 2025-01-29 15:34:25 |
| Item: | Top Secret (TSS) Mainframe Access Request | Opened by: | ███████████ |
| Request: | REQ0177917 | Stage: | Completed |
| Request Requested for: | ███████████ | State: | Closed Complete |
| Due date: | 2025-02-12 15:34:25 | Quantity: | 1 |
| Configuration item: | | Estimated delivery: | |
| Watch list: | | Delayed: | false |
| | | Order Guide: | |

| Additional comments: | |

2025-01-31 18:07:24 - ███████████ (Additional comments)
sorry read/write is needed

2025-01-31 18:07:10 - ███████████ (Additional comments)
again disregard, read/write

2025-01-30 09:12:59 - ███████████ (Additional comments)
Please disregard - go with read only at this time

2025-01-30 07:37:40 - ███████████ (Additional comments)
#AUDITRD , GLOBALPF, TSOALLPF are the new groups needed.

2025-01-29 18:02:58 - ███████████ (Additional comments)
Change #PAMDADM to a read/write access

2025-01-29 16:30:01 - ███████████ (Additional comments)
add readonly access to FROPK.*.SPR.*

| Related List Title: | Catalog Task List |
| Table name: | sc_task |
| Query Condition: | Request item = RITM0180112 |
| Sort Order: | Number in ascending order |

1 Catalog Tasks

Requested Item Details

| ▲ Number | State | Assignment group | Assigned to | Short description | Due date | Actual start | Actual end |
|----------|-------|------------------|-------------|-------------------|----------|--------------|------------|
| SCTASK0185700 | Closed Complete | MACB | ██████ | TSS Access Request Created Account for Marko Elez, CA86 | | 2025-01-31 18:08:05 | 2025-01-31 20:40:56 |

| Related List Title: | Approval List |
|---|---|
| Table name: | sysapproval_approver |
| Query Condition: | Approval for = RITM0180112 |
| Sort Order: | Created in descending order |

1 Approvals

| State | Approver | Comments | Approving | ▼ Created |
|-------|----------|----------|-----------|-----------|
| Approved | ██████ | | Requested Item: RITM0180112 | 2025-01-29 15:34:27 |

| Related List Title: | Task SLA List |
|---|---|
| Table name: | task_sla |
| Query Condition: | Task = RITM0180112 |
| Sort Order: | None |

1 Task SLAs

| Task | SLA definition | Type | Target | Stage | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|------|----------------|------|--------|-------|--------------------|-----------------------|-----------------------------|------------|-----------|
| RITM0180112 | Catalog Item SLA - 2 weeks | SLA | Resolution | Completed | 13 Days 21 Hours 27 Minutes | 2 Hours 32 Minutes | 0.76 | 2025-01-29 15:34:25 | 2025-01-31 20:40:57 |

| Related List Title: | Attachment List |
|---|---|
| Table name: | sys_attachment |
| Query Condition: | Table name in sc_request, sc_req_item, sc_task, ZZ_YYsc_req_item AND Table sys ID in 7089fc9b1b179e5011230f67624bcb8b, 7889fc9b1b179e5011230f67624bcb8b, 87df6f738753561003dd85550cbb35c9 |
| Sort Order: | Created in descending order |

2 Attachments

| File name | Content type | Table name | Table sys ID | ▼ Created | Size bytes |
|---|---|---|---|---|---|
| CA86.PNG | image/png | sc_task | 87df6f738753561003dd85550cbb35c9 | 2025-02-02 13:50:06 | 42337 |
| CA86 PAM Profile Removed.png | image/png | sc_task | 87df6f738753561003dd85550cbb35c9 | 2025-02-01 17:26:53 | 4836 |

| Report Title: | Catalog Task Details |
|---|---|
| Run Date and Time: | 2025-02-28 08:49:32 Eastern Standard Time |
| Run by: | ▨ |
| Table name: | sc_task |

## Catalog Task

| Number: | SCTASK0185700 | Priority: | 4 - Low |
|---|---|---|---|
| Assignment group: | MACB | State: | Closed Complete |
| Assigned to: | ▨ | Service provided via: | |
| Configuration item: | | Request item: | RITM0180112 |
| Contract: | | Request item Requested for: | ▨ |
| | | On Hold: | false |

**Short description:**

TSS Access Request Created Account for Marko Elez, CA86

**Description:**

TSS CREATE(CA86)TYPE(USER)DEPT(CONTACID)NAME('ELEZ, MARKO') -
PASSWORD(,,EXP)
TSS ADD(CA86)PROFILE(#AUDITRD,#PAMDADM,TSOALLPF,GLOBALPF)
TSS ADD(CA86)TSOLPROC($TSOUSER)
TSS ADD(CA86)TSOLSIZE(8192)
TSS ADD(CA86)TSOLSIZE(8192)
TSS ADD(CA86) MFACTOR(AZFCERT1) MFADATA(REGSTATE:OPEN) MFACTIVE(YES)
TSS ADD(CA86) MFPOLICY(POLICY1)
TSS PER(CA86)DATASET(FROPK.*.SPR.*)ACCESS(READ)

As per ISS chain of command this access was granted for DOGE personnel. Requested by ▨ , Approved by ▨ (AC/CIO).
Advised on risks associated with access.

**Work notes:**

2025-02-05 16:49:19 - ▨ (Work notes)
Access was walked through with user on 2/3/25 for PAM MF File system and PAM DB via pccom tool.  Access was READ ONLY.

2025-02-05 12:56:51 - ▨ (Work notes)
Updating work notes to reflect that Read Only was granted.

2025-02-02 13:47:11 - ▨ (Work notes)
Received text from ▨ to readd #PAMDADM and DB2AREAD.  See attachment for TEAMs screenshot.

TSS ADD(CA86)PROFILE(#PAMDADM,DB2AREAD)FIRST

2025-02-01 17:26:34 - ▨ (Work notes)
Requested by ▨ to remove WRITE access for PAM PROFILE #PAMDADM.

tss rem(ca86) profile(#PAMDADM)

See attached screen shot.

**Related List Title:**   Task SLA List

**Table name:**   task_sla

**Query Condition:**   Task = SCTASK0185700

**Sort Order:**   None

1 Task SLAs

| Task | SLA definition | Type | Target | Stage | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|------|---------------|------|--------|-------|--------------------|-----------------------|-----------------------------|-----------|-----------|
| SCTASK0185700 | Cask- Two weeks- with Approval | SLA | Resolution | Completed | 13 Days 21 Hours 27 Minutes | 2 Hours 32 Minutes | 0.76 | 2025-01-31 18:08:05 | 2025-01-31 20:40:56 |

**Related List Title:**   Attachment List

**Table name:**   sys_attachment

**Query Condition:**   Table name in sc_request, sc_req_item, sc_task, ZZ_YYsc_req_item AND Table sys ID in 7089fc9b1b179e5011230f67624bcb8b, 7889fc9b1b179e5011230f67624bcb8b, 87df6f738753561003dd85550cbb35c9

**Sort Order:**   Created in descending order

2 Attachments

| File name | Content type | Table name | Table sys ID | ▼ Created | Size bytes |
|-----------|-------------|------------|--------------|-----------|------------|
| CA86.PNG | image/png | sc_task | 87df6f738753561003dd85550cbb35c9 | 2025-02-02 13:50:06 | 42337 |
| CA86 PAM Profile Removed.png | image/png | sc_task | 87df6f738753561003dd85550cbb35c9 | 2025-02-01 17:26:53 | 4836 |

**Related List Title:**   Requested Item List

**Table name:**   sc_req_item

**Query Condition:**   Request = (empty)

**Sort Order:**   Number in ascending order

None

| Report Title: | Catalog Task Details |
|---|---|
| Run Date and Time: | 2025-02-28 08:51:51 Eastern Standard Time |
| Run by: | ▮▮▮▮▮▮ |
| Table name: | sc_task |

## Catalog Task

| Number: | SCTASK0185701 | Priority: | 4 - Low |
|---|---|---|---|
| Assignment group: | UNIX Operating Systems | State: | Closed Complete |
| Assigned to: | ▮▮▮▮▮ | Service provided via: | |
| Configuration item: | | Request item: | RITM0180120 |
| Contract: | | Request item Requested for: | ▮▮▮▮▮ |
| | | On Hold: | false |

**Short description:**

Fulfillment Task: On-Prem Linux Account

**Description:**

**Work notes:**

2025-02-06 09:30:41 - ▮▮▮▮▮▮ (Work notes)
Modified the melez001 account to have /bin/false for a login shell. This will prevent CLI access to the RHEL platform which is not needed for this account. This account was setup to allow direct DB2 access for tools like DBArtisan or other GUI database tools.

Modify the marko.elez SELinux context to user_u.

2025-02-05 16:50:08 - ▮▮▮▮▮▮ (Work notes)
Access was walked through with user on 2/5/25 for SPS DB - Access is READ ONLY

2025-02-05 14:49:19 - ▮▮▮▮▮▮ (Work notes)
Modified the group from dbrdwr to dbrdonly.

Created local account melez001 and added them to the dbrdonly group. This is for direct DB2 logins.
Added the account, marko.elez, to the dbrdonly groups and enabled that group to SSH into the server. This is for CLI access for DB2.

2025-02-05 12:57:47 - ▮▮▮▮▮▮ (Work notes)
Updating work notes to reflect that Read Only was granted.

2025-02-01 05:04:46 - ▮▮▮▮▮▮ (Work notes)
Created local account melez001 and added them to the dbrdwr group. This is for direct DB2 logins.
Added the account, marko.elez, to the dbrdwr groups and enabled that group to SSH into the server. This is for CLI access for DB2.

| Related List Title: | Task SLA List |
| Table name: | task_sla |
| Query Condition: | Task = SCTASK0185701 |
| Sort Order: | None |

1 Task SLAs

| Task | SLA definition | Type | Target | Stage | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|------|----------------|------|--------|-------|--------------------|-----------------------|-----------------------------|------------|-----------|
| SCTASK0185701 | Cask- Two weeks- with Approval | SLA | Resolution | Completed | 13 Days 13 Hours 5 Minutes | 10 Hours 54 Minutes | 3.24 | 2025-01-31 18:10:51 | 2025-02-01 05:04:52 |

| Related List Title: | Attachment List |
| Table name: | sys_attachment |
| Query Condition: | Table name in sc_request, sc_req_item, sc_task, ZZ_YYsc_req_item AND Table sys ID in 918005d31b979e5011230f67624bcb87, d98005d31b979e5011230f67624bcb87, 6370fbf38753561003dd85550cbb3573 |
| Sort Order: | Created in descending order |

None

| Related List Title: | Requested Item List |
| Table name: | sc_req_item |
| Query Condition: | Request = (empty) |
| Sort Order: | Number in ascending order |

None

# Supplemental AR Tab 3

| | |
|---|---|
| **From:** | Matthew.Garber2@treasury.gov |
| **To:** | Timothy E. Gribben |
| **Cc:** | Matthew J. Miller; Susan Robinson; Lillian Cheng; Joseph Gioeli III; Nathaniel Reboja |
| **Subject:** | Confirmation to Proceed |
| **Date:** | Sunday, January 26, 2025 5:42:08 PM |

---

> This message was sent securely using Zix®

Tim,

Please consider this note your approval/direction to move forward with the process outlined below.

Thanks to the DDM and ISS teams for actioning against the request over the weekend.

Matt

---

**From:** Katz, Daniel <Daniel.Katz@treasury.gov>
**Sent:** Sunday, January 26, 2025 6:34 PM
**To:** Garber, Matthew <Matthew.Garber2@treasury.gov>

Thanks Matt for actioning this so quickly. The below process looks good and appropriate to me.  Let me know if you need any help getting State working with this protocol - I'm happy to reach out to them again.

Appreciate the work over the weekend as well.

Dan Katz

███████████

---

**From:** Garber, Matthew <Matthew.Garber2@treasury.gov>
**Sent:** Sunday, January 26, 2025 4:31:02 PM
**To:** Katz, Daniel <Daniel.Katz@treasury.gov>

Dan,

We've successfully set up the technical and process adjustments at Fiscal to support this request within the appropriate bounds.  A reminder of the process we discussed and will execute against beginning Monday:

- **Fiscal will intercept USAID payments files prior to ingestion into our PAM/SPS systems** *(this is in place now and can begin immediately)*
  - We developed a process to intercept the file, and additional flags to ensure we catch all USAID payment requests through our systems
  - Fiscal will manually pull an unredacted and unmodified copy to share with State officials
  - Individual ITS payment requests will be flagged and shared for review as needed

- o <u>NOTE</u>: Fiscal will not provide any preliminary review or determination on the payments, and will not edit or modify the file at any point in this process
- **Fiscal will deliver the USAID payment file to the designated State officials for review**
  - o Fiscal has set up a secure portal where the designated officials will be able to access the files *(this will have encryption and MFA, and has completed third party pen testing)*
  - o We developed a user guide and instructions to support State officials in using the portal
    - We can provide additional technical support as needed
  - o We will deliver the file once-a-day according to the normal USAID payment schedule
- **State officials will review and provide a determination to Fiscal on whether or not to release the file into our normal payment processes**
  - o We will provide a template for State officials to provide the determination back to Fiscal
  - o Files that are determined by State as able to move forward will be released by Fiscal into PAM/SPS or ITS systems
  - o Files that are determined by State as unable to move forward will be returned to USAID for correction
    - *State will work directly with USAID to provide any necessary corrections prior to resubmission.*
- **Payment files that are cleared by State and released into our normal payment processes will continue to be certified by USAID certifying officers prior to payment**

While we will begin intercepting the USAID files prior to ingestion immediately on Monday, we will not transmit files to State until **we receive confirmation from the appropriate security officers (likely in the CIO office) that:**
- o the individuals at State accessing and reviewing the information have the appropriate clearances, etc
- o the necessary data security methods are in place at State and those standards have been communicated and agreed to by the individuals accessing the files
- o <u>NOTE:</u> We are still working to connect with the appropriate IT/Security/Technical individuals at State, which we believe will happen as soon as Monday morning.

<u>Additional note:</u>
- As mentioned, these files are mixed and contain a variety of payments.  We recommend State ensures they can review these files and provide a determination <u>same-day</u> to avoid any unintended downstream issues.

Please confirm we are still good to execute this plan beginning Monday.  Happy to hop on a call if needed.

Thanks,

Matt

# Exhibit 2

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| State of New York, *et al.* | |
| *Plaintiffs*, | |
| *v.* | Case No. 1:25-cv-1144-JAV |
| U.S. Department of the Treasury, *et. al.* | |
| *Defendants*. | |

I, David Ambrose, declare under penalty of perjury:

1. I currently serve as the Bureau of the Fiscal Service's (BFS or the Bureau) Chief Security Officer/Chief Privacy Officer/Acting Chief Information Security Officer. I report to Nathaniel Reboja (Reboja), Assistant Commissioner for Information and Security Services and Chief Information Officer for the Bureau. I am a career civil servant. I have been employed at the Bureau for over 19 years.

2. In my current role, I am one of the Bureau employees responsible for overseeing the security of the Bureau's technology infrastructure and the information contained therein. As Chief Security Officer, I am involved in protecting the security of, and access to, the Bureau's data, computer and payment systems, and equipment (collectively Systems and Equipment), and understand the security posture of these Systems and Equipment. I have extensive knowledge of the security strategies and measures that support the Bureau's enterprises, and am familiar with Bureau requirements around access to sensitive systems.

**Ryan Wunderly Bureau Access**

3.   I was informed that Ryan Wunderly (Wunderly) is an employee of the United States Department of the Treasury.

4.  I reviewed the executed declaration of Kari Mencl (Mencl), Chief of Personnel Security in the Office of Security Programs (OSP) in the Office of Intelligence and Analysis (OIA) for the U.S. Department of the Treasury. ECF No. 98-4.  Mencl's declaration states that in February 2025, OSP conducted a security clearance vetting for Wunderly, cleared him for onboarding at Treasury, and granted him a Top-Secret clearance. ECF No. 98-4 ¶ 13.

5.  I reviewed the executed declaration of Michael J. Wenzler (Wenzler), the Associate Chief Human Capital Officer for Executive and Human Capital Services at the Departmental Offices of the Department of the Treasury. ECF No. 98-3.  Wenzler's declaration states that Wunderly received and reviewed the Bureau's Rules of Behavior (Rules). ECF No. 98-3 ¶ 22.  The Rules define responsibilities and procedures for the secure use of Bureau data, equipment, payment systems, and facilities. By receiving and reading this document, Bureau System and Equipment users acknowledge their responsibility for complying with the Rules.

6.  On March 13, 2025, at the direction of Reboja, I briefed Wunderly, via Microsoft Teams video conferencing, on the Bureau's cybersecurity and Personally Identifiable Information (PII) practices and precautions. Specifically, I briefed Wunderly on the Bureau's (1) policies and rules associated with safeguarding information maintained in the Bureau's Systems and Equipment, including the Bureau's Email and Instant-Messaging Policy and the Rules; (2) policy that data and equipment could not leave his work station and be removed or sent outside the Bureau without formal approval; (3) policy on safeguarding sensitive information

2

JA652

received from outside sources or other agencies; and (4) policy that sensitive information should be stored on the Bureau's network drive(s), not locally on the laptop.

7. Reboja also instructed me that, moving forward, Bureau security personnel should ensure that, prior to granting access to Bureau Systems and Equipment to any member of the Treasury Department of Government Efficiency (DOGE) Team, such Treasury DOGE Team Member must receive the Rules and a briefing similar to the one I gave to Wunderly detailed above.

8. To my knowledge, Wunderly has not, as of the date of this declaration, accessed any BFS Systems and Equipment, and has not been issued any BFS computer equipment.

**Marko Elez Bureau Access**

9. As discussed in the declarations of Joe Gioeli III, Marko Elez (Elez) was a Treasury employee who received access to Bureau Systems and Equipment in late January and early February of 2025. *See generally* ECF No. 34; *see also* ECF No 98-2 ¶ 12.

10. Prior to accessing Bureau Systems and Equipment, I briefed Elez, via Microsoft Teams, on the same topics mentioned in Wunderly's briefing detailed above.

11. After Elez resigned in early February, Bureau security personnel performed a forensic analysis on Elez's email account and issued laptop. The forensic analysis consisted of a review of all emails Elez sent or received from his BFS email account, and all attachments to those emails. The laptop review included forensic disk imaging and memory capture. The forensic analysis revealed that Elez did not make any alterations or changes to Bureau payment systems.

12. The forensic analysis also revealed that Elez sent an email with a spreadsheet containing PII to two United States General Services Administration officials. The PII detailed a name (a

3

JA653

person or an entity), a transaction type, and an amount of money. The names in the spreadsheet are considered low risk PII because the names are not accompanied by more specific identifiers, such as social security numbers or birth dates. Elez's distribution of this spreadsheet was contrary to BFS policies, in that it was not sent encrypted, and he did not obtain prior approval of the transmission via a "Form 7005," describing what will be sent and what safeguards the sender will implement to protect the information. The briefing that I provided to Wunderly specifically addressed these issues. Briefings that will be provided to future DOGE Team Treasury members who have been trained and cleared in order to access the Bureau's Systems and Equipment will also address these issues.

**Marko Elez's Security Clearance**

13. OSP conducts security clearance vetting for Treasury employees; the Bureau does not conduct any additional vetting for non-Bureau Treasury employees seeking access to Bureau Systems and Equipment.  In order to access Bureau Systems and Equipment, an individual must complete various stages of the security vetting process, including a background investigation with a favorable adjudication. Treasury employees with an interim Secret clearance can be granted access to Bureau Systems and Equipment while the appropriate background investigation is being completed if there are favorable results from an initial screen of the security vetting paperwork (Standard Form 86), a verification of his U.S. citizenship, and preliminary fingerprint checks for any criminal record.

14. On January 22, 2025, OSP informed me that Elez was granted an interim Secret clearance, which meant that there were favorable results from an initial screen of the security vetting paperwork (Standard Form 86), a verification of his U.S. citizenship, and preliminary

fingerprint checks for any criminal record, and Elez was therefore eligible to access the

Bureau's Systems and Equipment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 3/14/25                          Signed:

David J. Ambrose
Chief Security Officer/Chief Privacy
Officer/Acting Chief Information Security
Officer
Bureau of the Fiscal Service
United States Department of the Treasury

5

JA655

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AMERICAN FEDERATION OF TEACHERS**, *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civ. No. DLB-25-0430** |
| | * | |
| **SCOTT BESSENT**, *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

## MEMORANDUM OPINION

On the first day of President Donald J. Trump's second term in office, he issued an Executive Order that created the Department of Government Efficiency ("DOGE") and renamed the United States Digital Service as the United States DOGE Service ("USDS"). Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 29, 2025) ("DOGE Executive Order"). The stated purpose of DOGE is "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." *Id.* at § 1. The DOGE Executive Order commands federal agency heads to "take all necessary steps . . . to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b). Almost immediately after the DOGE Executive Order was issued, federal government agencies hired or accepted as detailees individuals whose mission is to implement the DOGE Executive Order. Among those agencies were the U.S. Department of Education ("Education"), the U.S. Office of Personnel Management ("OPM"), and the U.S. Department of the Treasury ("Treasury"). Pursuant to the DOGE Executive Order, Education, OPM, and Treasury gave individuals affiliated with DOGE access to agency systems that hold records with the personally identifiable information ("PII") of millions of Americans.

This lawsuit is one of several filed by plaintiffs who seek to enjoin federal government agencies from disclosing records with their sensitive personal information to government personnel implementing the DOGE Executive Order. In this case, the plaintiffs are unions and membership organizations representing current and former federal employees and federal student aid recipients and six military veterans who have received federal benefits or student loans. In their amended complaint, filed on February 12, 2025, the plaintiffs assert claims under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA") against Education, OPM, and Treasury; Denise L. Carter, the Acting Secretary of Education; Charles Ezell, the Acting Director of OPM; and Scott Bessent, the Secretary of the Treasury (collectively, "the government" or "the agencies"). The plaintiffs allege that the agencies unlawfully granted access to records that contain their PII to DOGE representatives.

On February 24, 2025, the Court granted in part and denied in part the plaintiffs' motion for a temporary restraining order ("TRO"), enjoining Education and OPM from granting access to the plaintiffs' sensitive personal information to individuals who are implementing the President's DOGE agenda. *See* ECF 38. Since then, the government has produced the administrative records for each agency, and the plaintiffs have filed a motion for a preliminary injunction. Having considered the administrative records, the parties' TRO and preliminary injunction briefing, their exhibits, and oral argument by counsel, the Court grants the plaintiffs' motion for a preliminary injunction. They have shown a likelihood that they will succeed on their claim that the defendants violated the APA by not acting in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a; that they will suffer irreparable harm if the defendants are not enjoined; and that the balance of the equities and public interest weigh favor of preliminary injunctive relief.

I.    **Background**

A.  **DOGE Executive Order**

On January 20, 2025, President Donald J. Trump signed the DOGE Executive Order. It established the Department of Government Efficiency "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." DOGE Executive Order § 1. The order establishes "the U.S. DOGE Service Temporary Organization" to be "dedicated to advancing the President's 18-month DOGE agenda." *Id.* § 3(b). It directs each agency head to establish "a DOGE Team of at least four employees, which may include Special Government Employees, hired or assigned within thirty days of the date of this Order." *Id.* § 3(c). "Each DOGE Team will typically include one DOGE Team Lead, one engineer, one human resources specialist, and one attorney." *Id.* DOGE Team Leads will "coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.*

The DOGE Executive Order directs the USDS Administrator to "commence a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems," which includes "work[ing] with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." *Id.* § 4(a). The DOGE Executive Order commands agency heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b). It also directs that "USDS shall adhere to rigorous data protection standards." *Id.*

## B. Agency Defendants

The defendants include Education, OPM, Treasury, and the respective agency heads in their official capacities. Members of the DOGE team or "DOGE affiliates" are working at each of these agencies.[1]

### 1. Education

Education manages the federal student loan system. ECF 13, ¶ 94. Within this system, the Federal Student Aid Office maintains the National Student Loan Data System ("NSLDS"), the Common Origination and Disbursement System ("CODS"), the FUTURE Act System ("FAS"), and the Financial Management System ("FMS"). *See id.* ¶¶ 95, 98, 100, 102. These systems house records that contain the PII of individuals who receive federal student aid, such as Social Security numbers and taxpayer identification numbers, names, dates of birth, mailing and email addresses, driver's license information, income and asset information, federal tax information, demographic information including marital and citizenship status, and family members' personal and financial information. *See, e.g.*, *id.* ¶¶ 95–102; Privacy Act of 1974; System of Records, 89 Fed. Reg. 44652, 44656–57 (May 21, 2024) (listing categories of records in the NSLDS); Privacy Act of 1974; System of Records, 88 Fed. Reg. 41942, 41947–48 (June 28, 2023) (listing categories of records

---

[1] Unless otherwise noted, the Court uses the term "DOGE affiliates" throughout the opinion to refer to the personnel at Education, OPM, and Treasury whose principal role is to implement the DOGE agenda as described in the DOGE Executive Order and who were granted access to agency record systems for the principal purpose of implementing that agenda. The administrative records refer to these personnel as "employees implementing [the DOGE Executive Order]." *See* ECF 51-1, at 2; ECF 64-1, at 2; ECF 51-3, at 2; ECF 58, at 1; ECF 51-2, at 2. The government has redacted the names of DOGE affiliates at Education and OPM and refers to them by the agency initials and a number (*e.g.*, ED-1, OPM-1). Because the government produced three separate administrative records—one for each agency—citations to the administrative records also begin with the agency initials, followed by a four- or six-digit number (*e.g.*, ED-000001, OPM-000001, TR-0001).

in the CODS); Privacy Act of 1974; System of Records, 88 Fed. Reg. 42200, 42222 (June 29, 2023) (listing categories of records in the FAS); Privacy Act of 1974; System of Records—Financial Management System (FMS), 73 Fed. Reg. 177, 178 (Jan. 2, 2008) (listing categories of records in the FMS).

The government represents that there are six DOGE affiliates at Education.[2] ECF 62, at 7 (citing ECF 27-6, ¶¶ 4–6 (A. Ramada Suppl. Decl.)). Several of the DOGE affiliates at Education are detailed from other agencies. The administrative record shows that Education executed two memoranda of understanding with the DOGE affiliates' home agencies on February 12, 2025, "formaliz[ing] . . .prior oral agreement[s]." *See* ED-000005–07, ED-000013–16. One detailee, ED-1, is a Senior Advisor in the Office of the Secretary. ED-000005. Another detailee, ED-3, is a special government employee detailed from their position as a "Software Engineer (Consultant)" at the General Services Administration ("GSA") to the Office of the Secretary. ED-000013. Two other DOGE affiliates, ED-2 and ED-4, were appointed to Education on January 31, 2025 and February 4, 2025 as a Senior Advisor and a Consultant, respectively, in the Office of the Secretary. ED-000009–10, ED-000017.

In a February 5, 2025 memorandum, Thomas Flagg, the Chief Information Officer ("CIO") at Education, authorized IT system access to "USDS personnel onboarded to the Department of Education DOGE team":

President Trump signed an Executive Order (EO) "Establishing and Implementing the President's "Department of Government Efficiency"" to implement the

---

[2] The government has consistently represented to the Court that "[t]here are six employees at the Department of Education whose principal role is to help advance the goals of [the DOGE Executive Order]," and submitted declarations to that effect. *See* ECF 62, at 7; ECF 27, at 9; ECF 27-5, ¶¶ 4–7 (A. Ramada Decl.); ECF 27-6, ¶ 2 (A. Ramada Suppl. Decl.). However, the administrative record only identifies four DOGE affiliates—two detailees and two appointees. *See* ED-000005–7, ED-000009, ED-000013–19, ED-000021.

President's DOGE Agenda by modernizing Federal technology and software to maximize governmental efficiency and productivity. The EO also tasked Agencies to establish an internal DOGE team and allow full access to the DOGE Administrator to all unclassified agency records, software systems and IT systems. This is to support the USDS Administrator Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems. All ED Information System Owners (ISO) shall work with the USDS Administrator and internal DOGE Team members to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization.

This memorandum documents the need to know and authorizes USDS personnel onboarded to the Department of Education DOGE team full and prompt access to all unclassified IT systems and data. These new requirements support the implementation of the EO "Establishing and Implementing the President's [']Department of Government Efficiency[.']"

ED-000025.

One week later, Education and USDS executed "Terms and Conditions for Reimbursable Work" that "formalize[d] and supersede[d] [a] prior oral agreement, written interim assignment agreement, and supporting documentation between USDS and ED." ED-000001. These terms and conditions state that "ED will provide USDS detailees with access to all ED systems on USDS employees' EOP devices to the maximum extent allowable by law." ED-000002.

### 2. OPM

OPM acts as the "chief human resources agency and personnel policy manager for the Federal Government." ECF 13, ¶ 71 (quoting *About Us*, OPM, https://www.opm.gov/about-us [https://perma.cc/CQ7X-LLYA] (last visited Mar. 20, 2025)). OPM maintains a host of systems with information about federal government personnel. *See id.* ¶ 72. For example, OPM maintains the Electronic Official Personnel Folder ("eOPF"), which contains digital versions of federal employees' personnel files that cover their entire period of federal civilian service. *See* OPM, *Privacy Impact Assessment for Electronic Official Personnel Folder System (eOPF)* 1 (2020), https://www.opm.gov/information-management/privacy-policy/privacy-policy/eopf-pia.pdf

[https://perma.cc/T6KM-RGHU]. The eOPF contains current and former federal employees' PII such as Social Security numbers, bank account numbers, names and addresses, dates of birth, health and life insurance policy numbers, civil and criminal history information, and personnel actions such as promotions and suspensions. *Id.* at 5, 11–12. OPM also maintains the Enterprise Human Resources Integration Data Warehouse ("EHRI"), USA Performance, USA Staffing, and USAJOBS. ECF 13, ¶ 78. These systems also contain PII, including names, Social Security numbers, dates of birth, and citizenship status. *See* ECF 13, ¶¶ 78, 81–83; OPM, *Privacy Impact Assessment for Enterprise Human Resources Integration Data Warehouse (EHRI DW)* 3 (2019), https://www.opm.gov/information-management/privacy-policy/privacy-policy/ehridw.pdf [https://perma.cc/5UCS-N5V8]; OPM, *Privacy Impact Assessment for USA Staffing®* 6–7 (2021), https://www.fhfa.gov/sites/default/files/2023-12/OPM%20USA%20Staffing_pia.pdf [https://perma.cc/W3ER-CAWS]; OPM, *Privacy Impact Assessment for USA Performance (USAP)* 4 (2020), https://www.opm.gov/information-management/privacy-policy/privacy-policy/usap-pia.pdf [https://perma.cc/NR3C-WGMS].

At OPM, there are several DOGE affiliates.[3] *See* ECF 64-1, at 2; ECF 64, at 1; OPM-000103. The record contains employment documents for some of them. OPM-2, OPM-3, OPM-4, OPM-6, and OPM-7 are "Expert[s]" hired to work in the Office of the Director. OPM-000008, OPM-000010–11, OPM-000014, OPM-000021–22, OPM-000111–12. OPM-2 is also listed as a "Senior Advisor." OPM-000006. OPM-5 is a "Senior Advisor to the Director for Information Technology" in the Office of the Director, and OPM-8 is a "Senior Advisor to the Director." OPM-

---

[3] "DOGE affiliates" does not include OPM's CIO Greg Hogan, OPM Acting Director Charles Ezell, or OPM Chief of Staff Amanda Scales, because these individuals, by virtue of their positions at OPM, would otherwise have access to OPM systems and were not granted access for the principal purpose of implementing the President's DOGE agenda.

000016–17, OPM-000019, OPM-000114–15. All of these DOGE affiliates were appointed to OPM on either January 20, 2025 or January 24, 2025. OPM-000006, OPM-000010, OPM-000014, OPM-000016, OPM-000021, OPM-000112, OPM-000116. Most of them are developers, engineers, or "political tech staff." *See* OPM-000027–29, OPM-0000107–08.

On January 20, 2025, OPM Acting Director Ezell requested that several "[i]ndividuals from the [p]olitical [t]eam," including OPM-3, OPM-5, and OPM-7, be added to OPM systems as "admins." OPM-000107. That same day, these individuals were given "super user permissions" for USAJOBS administrative systems. OPM-000104. On January 27, 2025, Ezell sent an email with the subject line "Getting DoGE Engineers access." OPM-000028. The email told an OPM employee, MC Price, that "[w]e are rapidly ramping up some engineers here," and "[t]o accomplish this goal, these engineers"—OPM-2, OPM-3, OPM-4, OPM-5, and OPM-6—"need[ed] the following items urgently," including "a short list of all the systems OPM operates and manages" and a range of access permissions "for each computer system." OPM-000027–29. The access requested was "[c]ode read and write permissions," the "[a]bility to access the system as a regular user (e.g. hiring manager and onboarding user for USA Staffing)," and the "[a]bility to access the system as an admin user," with the instruction to "[p]rioritize USA Staffing, USAJOBS, and EHRI." OPM-000029. On January 28, 2025, Price stated in an email that "[w]e have already given several of the political devs/engineers comprehensive access to USAJOBS and USA Staffing" and that "[n]ow we have 3 more individuals with the same requirement," listing OPM-2, OPM-4, and OPM-6. OPM-000108–09. Price explained that this access would "start with USAJOBS, USA Staffing, and eOPF/EHRI," and "USAP will be next, so might as well go ahead there." OPM-000108. He noted that the individuals "need to have access today." *Id.* On February 3, 2025, Price was forwarded a request from OPM Chief of Staff Amanda Scales for OPM-8 to

have "account creation info" with "admin access" for USA Staffing, "[s]imilar to . . . [OPM-6]."
OPM-000110.

Other OPM DOGE affiliates were granted access to OPM systems, including USA
Performance, the Federal Employee Health Benefits system, and the Postal Service Health
Benefits Data Platform, between January 24, 2025 and February 7, 2025. OPM-000103.

### 3. Treasury

The Treasury Department's Bureau of the Fiscal Service ("Fiscal Service") maintains
systems for disbursement of payments for federal programs such as Social Security benefits,
federal income tax refunds, and veterans' pay. ECF 13, ¶¶ 46, 48. Fiscal Service payment systems
include the Payment Automation Manager ("PAM"), the Automated Standard Application for
Payments ("ASAP"), and the Secure Payment System ("SPS"). *See* ECF 27-3, ¶ 5 (J. Gioeli Decl.).
These payment systems contain PII including names, Social Security numbers, and bank
information. *See* Fiscal Service, *Privacy and Civil Liberties Impact Assessment: Payment
Automation Manager* 5 (2019), https://www.fiscal.treasury.gov/files/pia/pampclia.pdf
[https://perma.cc/5JW9-S42K]; Fiscal Service, *Privacy and Civil Liberties Impact Assessment
Secure Payment System (SPS)* 7 (2021), https://fiscal.treasury.gov/files/pia/spspclia.pdf
[https://perma.cc/U6HS-AJE5]; Fiscal Service, *Privacy and Civil Liberties Impact Assessment:
Automated Standard Application for Payments (ASAP)* 6–7 (2019),
https://fiscal.treasury.gov/files/pia/spspclia.pdf [https://perma.cc/XA33-TRXC].

There are two DOGE affiliates at Treasury: Thomas Krause and Ryan Wunderly. Krause
was appointed as the Senior Advisor for Technology and Modernization on January 23, 2025. *See*
TR-0024, TR-0007, TR-0015, TR-0024. On February 5, 2025, Krause was delegated the duties of
the Fiscal Assistant Secretary. *See* TR-0002–03. Wunderly took over a role previously held by

Marko Elez, who was hired by Treasury as a Special Advisor for Information Technology and Modernization on January 21, 2025 and resigned on February 6, 2025. TR-0004; *see* TR-0022–23; ECF 27-4, ¶ 8 (M. Wenzler Decl.); ECF 35-1, ¶ 2 (J. York Decl.).[4]

On January 24, 2025, Treasury Administrative Services set forth an "[e]ngagement [p]lan" for "supporting the USDS/DOGE team during their 4–6 week engagement to understand payment processes and opportunities to advance payment integrity and fraud reduction goals." TR-0057. The engagement plan describes how the Fiscal Service will grant system access to the DOGE team at Treasury. For the "technical team member," Elez, "USDS/DOGE confirmed . . . [he] require[d] access to Fiscal Service systems and data." *See* TR-0058, TR-0061–62. The plan states that Fiscal Service will issue the technical team member a Fiscal Service laptop by January 28, 2025, and that Treasury will "provide[] access to in scope payment systems source code" and "[d]evelopment access to the in scope payment systems." TR-0058–59. The engagement plan also notes that "USDS/DOGE requested to be granted 'over the shoulder' access to monitor Fiscal Service personnel conducting payment processing roles, which was approved by Fiscal Service on 1/23/25." TR-0059. According to a spreadsheet attached to a February 3, 2025 email from a Treasury executive point person for the engagement, as of February 1, Elez had access to Treasury systems including PAM, SPS, and ASAP, and it was recommended that his access to other Treasury systems be expanded. TR-0061–62; *see* TR-0057.

---

[4] In a February 21, 2025 letter, the government informed the Court that Treasury hired Ryan Wunderly "to perform the duties previously assigned to Marco Elez." *See* ECF 35, at 1. According to a declaration from John York, Counselor to the Treasury Secretary, Wunderly "will join Mr. Krause on the Treasury DOGE Team to fill the position at the Bureau of the Fiscal Service previously held by Mr. Elez," and "[h]is position description and job duties will be substantially the same as those of Mr. Elez." ECF 35-1, ¶¶ 3–4. There is no indication that Wunderly's access to the Treasury systems will be different from Elez's access.

### C. Plaintiffs

The organizational plaintiffs are: American Federation of Teachers ("AFT"), International Association of Machinists and Aerospace Workers ("IAM"), International Federation of Professional and Technical Engineers ("IFPTE"), National Active and Retired Federal Employees Association ("NARFE"), and National Federation of Federal Employees ("NFFE"). ECF 13, ¶¶ 18–21. AFT represents over 1.8 million people employed in the teaching and healthcare professions. ECF 14-9, ¶ 3 (S. Tammelleo Decl.). IAM and its affiliate organization NFFE represent more than 100,000 federal workers, as well as veterans and veterans' groups. ECF 14-10, ¶ 3 (B. Bryant Decl.). IFPTE represents approximately 34,000 federal employees, most of whom work for the Department of Defense. ECF 14-12, ¶ 2 (M. Biggs Decl.). IFPTE members include nuclear submarine engineers, NASA scientists and researchers, administrative law judges at the Social Security Administration, nuclear engineers at the Tennessee Valley Authority, and Environmental Protection Agency employees. *Id.* NARFE represents approximately 128,000 current and former federal employees and spousal annuitants. ECF 14-11, ¶ 2 (W. Shackelford Decl.).

The individual plaintiffs are Jason Cain, Kristofer Goldsmith, Clifford Grambo, Thomas Fant, Donald Martinez, and Christopher Purdy. *Id.* ¶¶ 22–27. Cain, a U.S. Army veteran, receives veterans' disability benefits and previously received GI bill benefits, student loans, and a VA home loan from the federal government. ECF 14-3, ¶¶ 3–5 (J. Cain Decl.). Cain also previously worked for the VA. *Id.* ¶ 6. Goldsmith, a U.S Army veteran, receives veterans' disability benefits and previously received federal student loans. ECF 14-5, ¶¶ 3–4 (K. Goldsmith Decl.). Grambo, a U.S. Navy veteran, receives veterans' disability benefits and a military pension. ECF 14-6, ¶¶ 3–4 (C. Grambo Decl.). Fant, a veteran of the U.S. Coast Guard, receives veterans' disability benefits. ECF

14-4, ¶¶ 3–4 (T. Fant Decl.). Martinez, a U.S. Army veteran, receives veterans' disability and combat-related special compensation, Social Security disability insurance, and a VA home loan, and previously received vocational rehabilitation and employment payments from the VA. ECF 14-7, ¶¶ 3–5. Martinez previously worked for the Federal Emergency Management Agency and received federal student loans. *Id.* ¶¶ 5–6. Purdy, a veteran of the Army National Guard, receives veterans' disability benefits and previously received federal student loans and a VA home loan. ECF 14-8, ¶¶ 3–5 (C. Purdy Decl.).

Because the members of the organizational plaintiffs and the individual plaintiffs have worked for the federal government, have federal student loans, and/or receive government benefits, their PII is housed in record systems maintained by Education, OPM, and/or Treasury. *See* ECF 13, ¶¶ 18–27; ECF 14-3, ¶¶7–8; ECF 14-4, ¶¶ 5–6; ECF 14-5, ¶¶ 6–7; ECF 14-6, ¶¶ 5–6; ECF 14-7, ¶¶ 7–8; ECF 14-8, ¶¶ 6–7; ECF 14-9, ¶¶ 6–7; ECF 14-10, ¶¶ 10–11; ECF 14-11, ¶¶ 5–6; ECF 14-12, ¶¶ 8–9.

The plaintiffs allege that Education, OPM, and Treasury have granted DOGE representatives sweeping access to systems that are typically accessed by only a small number of career employees at the respective agencies. *See* ECF 13, ¶¶ 49, 53, 56, 61, 74, 76–78, 103, 132. They cite to reports that DOGE representatives' access to systems with sensitive data caused significant concern among career agency employees and cyber security experts. *Id.* ¶¶ 103, 135. They also cite to an article that describes a Treasury analyst characterizing DOGE as an "insider threat." *Id.* ¶ 136. And they point to reports that DOGE representatives input sensitive data into artificial intelligence software. *Id.* ¶¶ 104, 110.

The plaintiffs allege that the "continued and ongoing disclosure of their records to DOGE representatives constitutes a violation of the Privacy Act, for which no exception applies." *Id.* ¶

87. They say that Education, OPM, and Treasury have given DOGE representatives unrestricted access to their PII, *id.* ¶¶ 61, 76–78, 84, 85, 103–04, 108; that none of the plaintiffs or the members of the plaintiffs' organizations requested disclosure or provided express written consent to the disclosure of their information to DOGE representatives, *id.* ¶¶ 62, 87, 109; and that none of the DOGE representatives needs to know the plaintiffs' personal information to perform their duties, *id.* ¶¶ 64, 89, 113–14. The purportedly unlawful disclosures to DOGE representatives have caused the plaintiffs "major distress and anxiety, as they do not know who their data has been or will be shared with, whether these disclosures have made them vulnerable to further privacy breaches, and how it may be weaponized against them." *Id.* ¶ 140.

The plaintiffs assert three violations of the APA. First, they allege that the agencies' actions violated the Privacy Act and that the agencies did not act in accordance with law. *Id.* ¶¶ 145–51. Second, they allege that the agencies acted arbitrarily and capriciously when they failed to consider the requirements of the Privacy Act and failed to engage in reasoned decision-making when they granted DOGE representatives broad access to their record systems containing sensitive and personal information. *Id.* ¶¶ 152–56. Finally, they allege that the agencies violated non-discretionary duties to protect records from unauthorized disclosure. *Id.* ¶¶ 157–59.

On February 12, 2025, the plaintiffs filed a motion for a TRO to enjoin Education, OPM, Treasury, and the respective agency heads from granting access to record systems with the plaintiffs' personal information. ECF 14. The Court granted in part and denied in part the plaintiffs' motion. ECF 38. On February 24, 2025 at 8:00 a.m., the Court issued a TRO that enjoined Education and OPM from disclosing the plaintiffs' PII to DOGE affiliates until March 10, 2025 at 8:00 a.m. *Id.* On February 26, the Court set a briefing schedule for a preliminary injunction motion. ECF 46. On March 7, the government produced the administrative records. ECF 51; *see also* ECF

58 (March 10 errata correcting parts of the Education and OPM administrative records). The next day, the plaintiffs moved for extra-record discovery, ECF 53, and the government opposed, ECF 54.[5] On March 10, the plaintiffs filed a motion for a preliminary injunction. ECF 59. The government opposed. ECF 62. The plaintiffs replied. ECF 63. After the plaintiffs filed a reply, the government supplemented the OPM administrative record. ECF 64-1. The Court held a hearing on the preliminary injunction motion on March 17.[6] For the reasons stated below, the Court grants the plaintiffs' motion for a preliminary injunction.

## II. Discussion

The plaintiffs assert three claims under the APA, including a claim that the defendants violated the Privacy Act, 5 U.S.C. § 552a, and therefore acted "not in accordance with law," *see* 5 U.S.C. § 706(2)(A). The Privacy Act restricts agencies from disclosing records that contain PII unless the subject requests or consents to disclosure or an exception to consent applies. *See* 5 U.S.C. § 552a(b). The plaintiffs have shown they are entitled to preliminary injunctive relief on their APA claim that the agencies did not act in accordance with the Privacy Act. Before explaining why, the Court confirms it has jurisdiction over this case.

### A. Standing

Article III of the Constitution extends the "judicial Power" of the federal courts only to "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1; *see TransUnion LLC v. Ramirez*, 594

---

[5] For reasons discussed in greater detail below, the Court confines its review of the merits of the plaintiffs' APA claims to the administrative records and a handful of judicially noticeable materials. The plaintiffs' motion for extra-record discovery is denied without prejudice.

[6] At the hearing, the Court extended the TRO for good cause, for reasons stated on the record, until March 24, 2025 at 8:00 a.m. or until the Court rules on the preliminary injunction motion. The TRO expires upon the issuance of this ruling.

U.S. 413, 423 (2021). There is a case or controversy only if the plaintiff has standing to assert their claim. *TransUnion*, 594 U.S. at 423. To establish standing, a plaintiff must show "(1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The "injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). When, as here, "a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Id.* (citing *Clapper*, 568 U.S. at 401).[7]

---

[7] Several plaintiffs are organizations. "An organization . . . can assert standing either in its own right or as a representative of its members." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). The organizational plaintiffs assert standing as representatives of their members. *See* ECF 14-9, ¶¶ 6–11; ECF 14-10, ¶¶ 10–15; ECF 14-11, ¶¶ 5–10; ECF 14-12, ¶¶ 8–13. An organization establishes "representational standing" by showing "that '(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit.'" *S. Walk at Broadlands*, 713 F.3d at 184 (quoting *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)). The organizational plaintiffs have established that they have germane interests. *See* ECF 14-9, ¶¶ 4–5; ECF 14-10, ¶¶ 6–9; ECF 14-11, ¶¶ 3–4; ECF 14-12, ¶ 4–7. And "the Court discerns no reason Plaintiffs' members must participate directly in this case rather than allow their associations to speak on their behalf." *All. for Retired Americans v. Bessent*, --- F. Supp. 3d. ----, No. 25-0313, 2025 WL 740401, at *13 (D.D.C. Mar. 7, 2025) (finding third prong of associational standing met for organizations with APA claims, including for alleged Privacy Act violations); *see also United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) ("'[I]ndividual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members"). Thus, the standing question in this case is the same for the organizational and individual plaintiffs: have they established an injury in fact. For convenience, the Court uses "plaintiffs" to refer to the individual plaintiffs and the members of the organizational plaintiffs.

The plaintiffs "must demonstrate standing 'with the manner and degree of evidence' required at the relevant 'stage[ ] of the litigation.'" *Fernandez*, 116 F.4th at 295 (alteration in original) (quoting *Lujan*, 504 U.S. at 561). At this stage, that means they "must make a 'clear showing' that [they are] 'likely' to establish each element of standing." *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Only the first element—injury in fact—is at issue here. The plaintiffs' injury is the ongoing access to their sensitive personal information by unauthorized government personnel. The Court finds that the plaintiffs have made a clear showing that they are likely to establish a concrete injury in fact.[8]

In *TransUnion LLC v. Ramirez*, the Supreme Court explained "[w]hat makes a harm concrete for purposes of Article III." 594 U.S. at 424. To determine whether the concrete-harm requirement has been met, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* The inquiry "does not require an exact duplicate in American history and tradition." *Id.* Traditional tangible harms include physical and monetary harms. *Id.* at 425. Intangible harms also can be concrete. *Id.* They include injuries such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*[9]

---

[8] The Court "assumes the merits of a dispute will be resolved in favor of the party invoking [its] jurisdiction in assessing standing." *See Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 99 (4th Cir. 2011).

[9] *TransUnion* reaffirmed what the Supreme Court held in *Spokeo*: "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341).

In the wake of *TransUnion*, the Fourth Circuit held that an injury resulting from a violation of a statute aimed at protecting a person's privacy bore a close relationship to a harm redressable at common law: invasion of privacy. In *Garey v. James S. Farrin, P.C.*, the plaintiffs were automobile drivers who had been involved in motor vehicle accidents. *See* 35 F.4th 917, 919–20 (4th Cir. 2022). They alleged that personal injury lawyers obtained accident reports from state law enforcement and private data brokers that contained their names and addresses and mailed them unsolicited advertisements. *Id.* at 920. The drivers alleged the personal injury lawyers violated the Driver's Privacy Protection Act ("DPPA"), which provides a cause of action against "'[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record,' for an impermissible purpose." *Id.* (quoting 18 U.S.C. § 2724(a)). The district court found the plaintiffs had standing to sue for damages.

On appeal, the Fourth Circuit's standing analysis began with *TransUnion*: "[P]laintiffs proceeding under a statutory cause of action can establish a cognizable injury by 'identif[ying] a close historical or common-law analogue for their asserted injury' for which courts have 'traditionally' provided a remedy." *Id.* at 921 (alteration in original) (quoting *TransUnion*, 594 U.S. at 424). "A plaintiff who does so has standing even if the precise injury would not, absent the statute, be sufficient for Article III standing purposes." *Id.*

"Consistent with *TransUnion*," the district court found that the drivers had alleged harms "closely related to the invasion of privacy, which has long provided a basis for recovery at common law." *Id.* (citation omitted). The Fourth Circuit agreed. *Id.* The court observed that it "recently rebuffed a nearly identical standing challenge in a case arising under the Telephone Consumer Protection Act ('TCPA'), another consumer privacy statute that, like the DPPA, provides a private right of action against offenders." *Id.* at 921–22 (citing *Krakauer v. Dish Network, LLC*, 925 F.3d

17
JA672

643, 652–54 (4th Cir. 2019)). The court's explanation of its *Krakauer* decision is worth recounting here:

> In *Krakauer*, we explained that by enacting the TCPA, "Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests." And we noted that injuries to personal privacy have long been "recognized in tort law and redressable through private litigation." . . . . [W]e concluded that our inquiry "focuse[s] on types of harms protected at common law, not the precise point at which those harms become actionable." Therefore, we held that the TCPA's "private right of action . . . plainly satisfies the demands of Article III."

*Id.* at 922 (third alteration in original) (citations omitted).

Applying its analysis in *Krakauer*, the court reached the same result in *Garey*. The drivers alleged in their complaint that they "sustained actual damages by having [their] privacy invaded by Defendants' knowingly obtaining [their] name[s] and address[es] from motor vehicle record[s] for an impermissible purpose in violation of law." *Id.* (citation omitted). These allegations stated a "legally cognizable privacy injury." *Id.* It did not matter that there were "some differences between the common law privacy torts and the DPPA" because the inquiry "'does not require an exact duplicate in American history and tradition.'" *Id.* (quoting *TransUnion*, 594 U.S. at 424). By pleading a violation of a statute "aimed squarely at 'the right of the plaintiff . . . to be let alone,'" the plaintiffs had standing. *See id.* (cleaned up) (quoting William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383, 389 (1960)).

*Garey* applies with full force here.[10] Just as the drivers in *Garey* alleged personal injury lawyers invaded their privacy by obtaining their personal information, the plaintiffs allege the DOGE affiliates have invaded their privacy by obtaining their personal information. The privacy

---

[10] The Court relied on *Garey* in its TRO ruling, *see* ECF 38, at 12, but the government did not address *Garey* at all in its opposition to the preliminary injunction motion, *see* ECF 62.

invasion here is far more severe than in *Garey*: The information the personal injury lawyers obtained—the drivers' names and addresses—pales in comparison to the information the DOGE affiliates have obtained. That information includes the plaintiffs' banking information; Social Security numbers; dates of birth; physical and email addresses; income and asset information; demographic information such as marital and citizenship status; employment records such as personnel actions; and information about family members, such as their financial status, demographic information, dates of birth, and addresses. If the drivers in *Garey* established a cognizable privacy injury by merely alleging their names and addresses were unlawfully obtained, the plaintiffs have established a privacy injury in spades.[11]

And just as the plaintiffs in *Garey* alleged a violation of the DPPA, a privacy statute, the plaintiffs have alleged a violation of the Privacy Act, another privacy statute. "[W]hile the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020). "Congress is empowered to 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law'. . . ." *Krakauer*, 925 F.3d at 654 (quoting *Spokeo*, 578 U.S. at 341). That is precisely what Congress did with the Privacy Act. The

---

[11] There is a factual difference between *Garey* and this case that, at first blush, might suggest *Garey* is materially distinguishable. In *Garey*, the personal injury lawyers not only obtained the drivers' names and addresses, but they also used the information to mail the drivers unwanted solicitations. 35 F.4th at 920. Here, by contrast, there is no allegation that the DOGE affiliates have used the plaintiffs' personal information to, for example, contact them. This difference does not matter for purposes of Article III standing. In *Garey*, the "cognizable privacy injury" was "having [the drivers'] privacy invaded by [the lawyers'] knowingly obtaining [their] name[s] and address[es] from motor vehicle record[s] for an impermissible purpose in violation of law." *Id.* at 922. That the lawyers then used the information they obtained to mail unsolicited advertisements was not a reason why the Court found a privacy injury. Here, the plaintiffs' cognizable privacy injury occurred when the DOGE affiliates obtained access to their personal information. Nothing more, under *Garey*, is required to establish concrete injury in fact.

Privacy Act is meant "to protect the privacy of individuals identified in information systems maintained by Federal agencies" by "regulat[ing] the collection, maintenance, use, and dissemination of information by such agencies." *Doe v. Chao* ("*Chao I*"), 540 U.S. 614, 618 (2004) (quoting Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896). The Privacy Act's purposes include "prevent[ing] the kind of illegal, unwise, overbroad, investigation and record surveillance of law abiding citizens produced in recent years from actions of some overzealous investigators, and the curiosity of some government administrators, or the wrongful disclosure and use, in some cases, of personal files held by Federal agencies." *Doe v.DiGenova*, 779 F.2d 74, 84 (D.C. Cir. 1985) (quoting S. Rep. No. 1183, 93d Cong., 2d Sess., *as reprinted in* 1974 U.S.C.C.A.N. 6916, 6916)). So just like the drivers in *Garey*, the plaintiffs have alleged a violation of a statute "aimed squarely at the right. . . to be let alone." *See Garey*, 35 F.4th at 922 (citation omitted). Their harm is closely related to an invasion of privacy. *See id.* at 921–22; *Pileggi v. Wash. Newspaper Publ. Co., LLC*, No. 23-345, 2024 WL 324121, at *5 (D.D.C. Jan. 29, 2024), *appeal pending*, (D.C. Cir.) (holding unlawful disclosure of consumer's information to third party in violation of Video Privacy Protection Act bears close relationship to intrusion upon seclusion, "which subjects [a person] to liability for invasion of privacy").[12]

To put a finer point on it, the plaintiffs' injuries closely resemble a specific type of invasion of privacy—the common law tort of intrusion upon seclusion. "The right of privacy is invaded by," among other things, "unreasonable intrusion upon the seclusion of another." Restatement

---

[12] In *Garey*, the Fourth Circuit found that the plaintiffs did not have standing to sue for *injunctive* relief—and could sue only for money damages—because they did not allege "an ongoing or imminent 'obtaining' . . . violation vis-à-vis their own personal information." *See* 35 F.4th at 922–24. Instead, "the obtaining of their personal information [wa]s a *fait accompli*." *Id.* at 923. Here, the plaintiffs allege ongoing access to their sensitive personal information. They have "establish[ed] a sufficient likelihood of future injury." *All. for Hippocratic Med.*, 602 U.S. at 381. Thus, they have alleged an injury-in-fact sufficient to sue for injunctive relief.

(Second) Torts § 652A. The Second Restatement of Torts defines "intrusion upon seclusion" as "intentional[] intru[sion], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Id.* § 652B.

According to the plaintiffs' allegations, declarations from government employees, and the administrative records, Education, OPM, and Treasury gave DOGE affiliates access to the plaintiffs' sensitive personal information—data that obviously concerns their "private affairs." The plaintiffs gave their private information to the government with the expectation that the government would not disclose it to anyone within the government who was not authorized to access it. *See* ECF 14-3, ¶¶ 7–10; ECF 14-4, ¶¶ 5–8; ECF 14-5, ¶¶ 6–9; ECF 14-6, ¶¶ 5–8; ECF 14-7, ¶¶ 7–10; ECF 14-8, ¶¶ 6–9; ECF 14-9, ¶¶ 6–9; ECF 14–10, ¶¶ 10–13; ECF 14-11, ¶¶ 5–8; ECF 14-12, ¶ 8–11. If the agencies' disclosures violated the Privacy Act, as the Court must assume for purposes of the standing analysis, then the plaintiffs have established that their trust has been breached, that government employees who should not have access to their information do, and that those employees have accessed records containing their PII. Access to those records by unauthorized government officials intrudes into their private lives. This intrusion is not speculative; it is actual. The plaintiffs allege that DOGE affiliates have accessed information in record systems at each of the agencies. *See* ECF 13, ¶¶ 12, 55, 80, 85, 103–04, 110, 139. And the government submitted declarations that strongly suggest DOGE affiliates at all three agencies have accessed record systems that contain the plaintiffs' PII. *See* ECF 27-1, ¶¶ 15–16 (T. Krause Decl.); ECF 27-7, ¶ 4 (T. Flagg Decl.); ECF 33-1, ¶¶ 11–12 (G. Hogan Suppl. Decl.). If no injunction were in place, the DOGE affiliates would continue to access records containing PII because, according to the government, the DOGE affiliates *need* to access these records to do their jobs.

*See, e.g.*, ECF 62, at 26 ("all of the relevant employees have a need for the records to which they have access in the performance of their duties"); *see also* ECF 27-1, ¶ 15; ECF 27-3, ¶ 11; ECF 27-5 (A. Ramada Decl.), ¶ 9; ECF 33-1, ¶¶ 11–12. This ongoing intrusion into the plaintiffs' private affairs is highly offensive to a reasonable person. *See, e.g.*, *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 710 (D.C. 2009) ("[C]onduct giving rise to unauthorized viewing of personal information such as a plaintiff's Social Security number and other identifying information can constitute an intrusion that is highly offensive to any reasonable person . . . ."). The plaintiffs' alleged harms are closely related to intrusion upon seclusion.

The government argues that "[m]ere access to data housed by a government agency by government employees—even if the *quantity* of data is potentially large—does not bear the 'close relationship to [the] traditional harm' of intrusion upon seclusion." ECF 62, at 14. This argument completely ignores the fact that the plaintiffs have a privacy interest in restricting access to their personal information *within* the government. They gave detailed sensitive personal information to the government for the purposes of obtaining federal employment, student loans, and government benefits with the expectation that only authorized government employees could access it. They now claim that, without their consent, the government has handed over their personal information to government employees who are not authorized to access it. To say that the plaintiffs suffer no intrusion upon their private affairs when their personal information is accessed by government employees who have no right to access it would nullify their cognizable interest in preventing unlawful government intrusion into their private affairs.[13]

---

[13] The government argues the plaintiffs must allege an unauthorized public disclosure—disclosure to someone outside of government—to establish concrete injury in fact. But the common law tort of intrusion upon seclusion does not require public disclosure of personal information. Intrusion upon seclusion, unlike the tort of public disclosure of private information, "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." Restatement (Second)

The government insists that the alleged intrusion here is dissimilar from the types of intrusions contemplated by the Restatement. In the government's view, intrusion upon seclusion "involve[s] more than mere access to records—[it] involve[s] an actual 'intrusion,' such as examination or review of sensitive material." ECF 62, at 15. This argument, too, fails for several reasons.

First, the intrusion here is similar to the types of intrusion contemplated by the Restatement. The Restatement explains that a person's privacy is invaded when there is "some . . . form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents." Restatement (Second) of Torts, § 652B, cmt. b. Here, the plaintiffs allege their privacy has been similarly invaded. Their PII is stored in government record systems—virtual filing cabinets with scores of information about their family, employment history, personal finances, and banking information, to name only a few. The plaintiffs trusted that the government would safeguard the keys to these virtual filing cabinets. Now, the plaintiffs allege that the agencies have handed the keys to government employees who are not authorized to open the cabinets but are doing so anyway. This alleged intrusion is just as, if not more, intrusive than an examination of a wallet or bank record.

Second, the Fourth Circuit in *Krakauer* rejected a similar argument that the alleged harm was not the same as an intrusion upon seclusion. In *Krakauer*, the intrusion was unwanted phone calls. There, the court explained that "Article III's injury-in-fact requirement" does not have to

---

Torts, § 652B, cmt. a. The disclosure to unauthorized government employees suffices. *See, e.g.*, *Hamberger v. Eastman*, 206 A.2d 239, 242 (N.H. 1964) ("The tort of intrusion on the plaintiffs' solitude or seclusion does not require publicity and communication to third persons").

rise "to a level that would support a common law cause of action." 925 F.3d at 653–54. "This sort of judicial grafting is not what *Spokeo* had in mind." *Id.* at 654. Instead, "[o]ur inquiry is focused on types of harms protected at common law, *not the precise point at which those harms become actionable*." *Id.* (emphasis added); *see also Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (holding that "a close relationship" between alleged privacy invasion and intrusion upon seclusion does "not require carbon copies").

As in *Krakauer*, the Court's inquiry is focused on the type of harm protected at common law. That harm—intrusion upon seclusion—is closely related to the harm alleged here. Even if the facts in this case do not perfectly match the Restatement's examples of intrusion, a perfect match is not necessary. The injury-in-fact inquiry "does not require an exact duplicate in American history and tradition." *Garey*, 35 F.4th at 922 (quoting *TransUnion*, 594 U.S. at 424).

Finally, the government argues that "mere access to records," without actual examination of the records, is not an intrusion upon seclusion. ECF 62, at 15. The government is incorrect. An unauthorized government employee's access to sensitive personal information protected by the Privacy Act is an intrusion into private affairs. Even if it were not, there is more than mere access here. On the government's account, the DOGE affiliates with "mere access to records" actually "have a *need* for the records to which they have access in the performance of their duties." *See id.* at 26 (emphasis added); *id.* at 27 (at Treasury, DOGE affiliates "have a need to access Privacy Act-protected records"; at OPM, they "need to access such records"; and at Education, they "need to access such records") (citations omitted)). If, by the government's own lights, the DOGE affiliates *need* access to the Privacy Act-protected records to perform their duties, then the DOGE affiliates must be putting that access to use. And the government has introduced evidence that says as much, including declarations that DOGE affiliates are accessing the agencies' systems and

records with sensitive personal information. *See* ECF 27-1, ¶¶ 15–16; ECF 27-3, ¶ 13, 18–19; ECF 27-5, ¶ 9; ECF 27-6, ¶ 7; ECF 27-7, ¶ 4; ECF 33-1, ¶¶ 11–13. This evidence aligns with the plaintiffs' allegations that DOGE affiliates are accessing and examining the records containing their personal information. *See* ECF 13, ¶¶ 12, 54–55, 80, 85, 103–04, 110, 139. So, the government's argument that "mere access to records" is insufficient to establish a concrete injury does not hold water. The plaintiffs have established an ongoing, concrete privacy injury.[14]

The government insists that the Court's finding of standing cannot be squared with the Fourth Circuit's decision in *O'Leary v. TrustedID, Inc.* Once again, the government is incorrect. In *O'Leary*, the Fourth Circuit held that an alleged violation of an identity theft statute did not closely relate to intrusion upon seclusion. 60 F.4th 240, 245 (4th Cir. 2023). The plaintiff, Brady O'Leary, input six digits of his Social Security number into a website to determine whether his data had been compromised in a data breach. *Id.* at 241. It had not. *Id.* Still, O'Leary filed suit against the website's owner for an alleged violation of South Carolina's Financial Identity Fraud and Identity Theft Protection Act, which prohibits "requir[ing] a consumer to use his social security number or a portion of it containing six digits or more to access an Internet web site, unless a password or unique personal identification number or other authentication device is also required to access the Internet web site." *Id.* (quoting S.C. Code Ann. § 37-20-180(A)(4)). When the Fourth Circuit addressed whether O'Leary had alleged a concrete injury in fact from this statutory violation, it observed that he had "pleaded that he chose to hand over his partial SSN '[i]n exchange for' finding out whether he was impacted by Equifax's data breach." *Id.* at 246

---

[14] *See also All. for Retired Ams.*, 2025 WL 740401, at *17 (finding concrete injury where "Plaintiffs' members disclosed their information to Treasury; individuals falsely purporting to have lawful access to that information demanded its disclosure; when Treasury acquiesced to that demand, the individuals invaded Plaintiffs' members' privacy").

(citation omitted). Those allegations, the Fourth Circuit held, were not "anything that closely relates" to "the unwanted intrusion into the home that marks intrusion upon seclusion." *Id.* The court concluded that O'Leary had not "adequately pled that he was injured by the alleged statutory violation at all—much less in a way that closely relates to a traditional analog for a federal lawsuit." *Id.* at 246.

This case is not *O'Leary*. O'Leary did not allege a violation of a statute that protected his right to privacy, as the plaintiffs have. O'Leary did not allege he entrusted troves of sensitive personal information to a party who breached his trust by unlawfully disclosing the information to others, as the plaintiffs have. O'Leary did not even allege that he expected the website not to disclose the last six digits of his Social Security number to anyone or that the website ever did disclose it. While the facts in *O'Leary* did not amount to an "unwanted intrusion into the home," they do here. What could be more "home" than one's Social Security number, banking information, income and asset information, and marital and citizenship status?

The ongoing unlawful access to the plaintiffs' sensitive personal information by DOGE affiliates who are not authorized to access it is a concrete injury in fact.[15] The plaintiffs have demonstrated that they have standing.

## B. Final Agency Action

The APA allows for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Whether there is a final agency action is a

---

[15] The plaintiffs have suggested they suffered another injury in fact: the risk of identity theft. To establish standing based on the risk of identity theft, the plaintiffs must show that "their contention of an enhanced risk of future identity theft" is more than "speculative." *See Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017). Because the Court finds that the unauthorized disclosure of sensitive personal information is a concrete injury, it need not decide whether the risk of identity theft also is a concrete injury.

jurisdictional question in the Fourth Circuit. *See, e.g.*, *Jake's Fireworks Inc. v. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) ("finality under the APA is a jurisdictional requirement").

"'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). "[T]he term is not so all-encompassing as to authorize [courts] to exercise 'judicial review [over] everything done by an administrative agency.'" *Indep. Equip. Dealers Ass'n v. EPA.*, 372 F.3d 420, 427 (D.C. Cir. 2004) (quoting *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)). Even so, "'agency action' undoubtedly has a broad sweep." *Id.* "[T]he word 'action[]' . . . is meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001); *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 238 n.7 (1980) ("According to the legislative history of the APA: 'The term "agency action" . . . assure[s] the complete coverage of every form of agency power, proceeding, action, or inaction.'" (quoting S. Doc. No. 248, 79th Cong., 2d Sess., 255 (1946))). The term "action" encompasses an agency's "policy or routine practice." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 164 (E.D.N.Y. 2018). And an agency policy is reviewable even when "the details of the . . . policy are still unclear." *See Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 929–30 (D.C. Cir. 2008). An agency action need not even be written down. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (concluding plaintiffs "attack[ed] *particularized* agency action" even though they did not "cite any statute, regulation, policy memoranda, or any other document memorializing the policy they challenge[d]"); *Grand Canyon Tr. v. Pub. Serv. Co.*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003) ("Unwritten agency actions have been subjected to judicial review under the

Administrative Procedure[] Act." (citation omitted) (citing *San Juan Audubon Soc'y v. Veneman*, 153 F. Supp. 2d 1, 5–6 (D.D.C. 2001)).

The administrative records reveal that, in the earliest days of the new presidential administration, Education, OPM, and Treasury granted DOGE affiliates access to agency systems that house records containing the plaintiffs' PII. They granted this access so that DOGE affiliates could implement the DOGE Executive Order.

At Education, CIO Thomas Flagg authorized "full and prompt access to all unclassified IT systems and data" to "USDS personnel onboarded to the Department of Education DOGE team" to "support the implementation of the [DOGE Executive Order]." ED-000025.

At OPM, declarations from the CIO describe "individuals with access to sensitive OPM records systems who are working to implement [the DOGE Executive Order]," ECF 27-8, ¶ 12 (G. Hogan Decl.), and "five key systems engineers, besides myself, implementing [the DOGE Executive Order ]," ECF 33-1, ¶ 13; *see also* ECF 51-1, at 2 (certification of OPM administrative record describing "the granting of access to data systems to employees implementing [the DOGE Executive Order ]"). In an email with the subject line "Getting DoGE Engineers access," Acting Director Ezell directed an OPM employee to grant OPM DOGE affiliates access to agency records because OPM was "rapidly ramping up [these] engineers." OPM-000028. Other emails confirm that OPM granted DOGE affiliates extensive access to OPM systems based on Acting Director Ezell's request to quickly give political staff system administrator access. *See* OPM-000104, OPM-000107 (email chain with subject line "Re: urgent request from political tech staff" describing process by which OPM granted "administrator accounts with super user permissions" to "Individuals from the Political Team" at "[t]he request . . . [of] the Acting Director to MC on Monday January 20th to add these people to the system as admins"); OPM 000108 ("We have

already given several of the political devs/engineers comprehensive access . . . . Now we have 3 more individuals with the same requirement."); OPM-000110 (February 3, 2025 email forwarding a request from OPM Chief of Staff Amanda Scales for OPM-8 to have "account creation info" with "admin access" for USA Staffing, "[s]imilar to" access granted to another DOGE affiliate pursuant to Acting Director Ezell's January 27, 2025 email).

At Treasury, the engagement plan between the agency and "USDS/DOGE" describes the "ongoing Payment Process Engagement" whereby the "Fiscal Service is supporting the USDS/DOGE team during their 4–6-week engagement to understand payment processes and opportunities to advance payment integrity and fraud reduction goals." TR-0057. The engagement plan sets forth how access to Fiscal Service systems will proceed, including how "USDS/DOGE confirmed" that the "designated technical team member[] requires access to Fiscal Service systems and data" and how "USDS/DOGE requested to be granted 'over the shoulder' access to monitor Fiscal Service personnel conducting payment processing roles, which was approved by Fiscal Service on 1/23/25." TR-0058–59.

As these memoranda, declarations, and emails show, it is the policy of Education, OPM, and Treasury to grant DOGE affiliates access to agency record systems so that they may implement the DOGE Executive Order. *See Amadei v. Nielsen*, 348 F. Supp. 3d at 165 (inferring "existence of an official policy" of U.S. Customs and Border Patrol to request identification documents at the end of domestic flights even though the complaint did not allege an official policy); *De La Mota v. U.S. Dep't of Educ.*, No. 02-CV-4276, 2003 WL 21919774, at *8 (S.D.N.Y. Aug. 12, 2003) ("[I]t is of no moment that the agency action here came in the form of an 'informal' email correspondence between a DOE employee and the law schools and plaintiffs."); *see also Venetian*, 530 F.3d at 931 (deeming "the decision of the Commission to adopt a policy of disclosing

confidential information without notice" an agency action even though the policy was only referenced in a compliance manual). Even if "the details of the . . . policy are still unclear," what is clear is that each agency has a policy of granting DOGE affiliates access to agency records systems, which include the plaintiffs' PII. *See Venetian*, 530 F.3d at 929. The plaintiffs have challenged an agency action.

The government insists that by finding a reviewable agency action in this case, the Court is sanctioning judicial review over "broad programmatic attacks," when judicial review should be limited to discrete agency actions. *See* ECF 62, at 18 (citing *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004) and *Lujan,* 497 U.S. at 891). The government is correct that "[c]ourts are well-suited to reviewing specific agency decisions" and are "woefully ill-suited . . . to adjudicate generalized grievances asking [the court] to improve an agency's performance or operations." *See City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019); *see also id.* at 432 ("[C]ourts [may] review only those acts that are specific enough to avoid entangling the judiciary in programmatic oversight, clear enough to avoid substituting judicial judgments for those of the executive branch, and substantial enough to prevent an incursion into internal agency management."). But the government is incorrect that the Court is reviewing an agency's "performance or operations." *Id.* Contrast the facts here with those in *Lujan* and *SUWA*. In *Lujan*, the National Wildlife Federation ("NWF") broadly challenged what it termed Bureau of Land Management's ("BLM") "land withdrawal review program," a term that encompassed "the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required by [statute]." 497 U.S. at 890. The Court concluded that the NWF did not challenge "an identifiable 'agency action'" because the term "land withdrawal review program" did "not refer to

a single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations." *Id.* In *SUWA*, organizations sought to compel agency action because they believed BLM had "fail[ed] to act to protect public lands in Utah from damage caused by ORV [off-road vehicle] use." 542 U.S. at 60. The organizations "claim[ed], that by permitting ORV use in certain WSAs [wilderness study areas], BLM violated its mandate to 'continue to manage [WSAs] . . . in a manner so as not to impair the suitability of such areas for preservation as wilderness.'" *Id.* at 65 (quoting 43 U.S.C. § 1782(c)). The Supreme Court observed that the challenged agency action had to be "discrete" for a remedy to exist under the APA and that "[t]he limitation to discrete agency action precludes the kind of broad programmatic attack [the Court] rejected in *Lujan*." *Id.* at 62, 64. On that basis, it rejected the organizations' request that the Court order BLM "to comply with the [statute's] nonimpairment mandate" because "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action." *Id.* at 66.

This case is not *Lujan* or *SUWA*. Here, the plaintiffs do not challenge the "continuing (and thus constantly changing) operations of" the agencies, *see Lujan*, 497 U.S. at 873, or any "[g]eneral deficiencies in compliance" by the agencies, *see SUWA*, 542 U.S. at 66. The plaintiffs challenge the discrete agency decisions to grant DOGE affiliates access to systems that contain records with their PII. They ask the Court to stop the agencies from taking a specific action that they believe is contrary to law.

Next, the government argues that the plaintiffs are asking the Court to review the agencies' "'workaday' dealings," which are beyond the scope of judicial review. ECF 62, at 17 (quoting *Indep. Equip. Dealers Ass'n*, 372 F.3d at 427). The government likens the agency decisions at issue here to setting up employee email accounts, staffing decisions, and managing government programs. *Id.* at 17, 18. Trivial decisions about day-to-day workplace operations and even

substantive decisions about program management are hardly comparable. Unlike the "workaday" decisions in the government's strained analogy, the agencies' decisions to grant DOGE affiliates access to records with the PII of millions of Americans impacts the privacy rights of the people whose PII is housed within these systems. These decisions are agency actions.

And they are final agency actions. An agency action is "final" when two conditions are met: (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (first quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); and then quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S. 62, 71 (1970)).

In *Venetian Casino Resort, L.L.C. v. EEOC*, the D.C. Circuit concluded that an agency's decision to permit its employees to disclose confidential information without notice was a final agency action. 530 F.3d at 930–31. There, a company operating a hotel and casino ("Venetian") filed suit against the EEOC. *Id.* Venetian asserted the EEOC violated the APA through a policy that allowed EEOC "employees to disclose an employer's confidential information to potential . . . plaintiffs without first notifying the employer that its information [would] be disclosed." *Id.* The EEOC argued that Venetian could not bring an APA claim because the challenged policy was referenced in its compliance manual, which was not a final agency action. *Id.* at 931. According to the D.C. Circuit, EEOC's "argument [was] misdirected" because the final agency action at issue was not the manual but rather "the decision of the Commission to adopt a policy of disclosing confidential information without notice." *Id.* "The Manual [wa]s relevant insofar as it illuminate[ed] the nature of the policy." *Id.* The court determined that "the agency took final action

by adopting the policy" and that this action was subject to judicial review. *Id.* Ultimately, the *Venetian* Court found that "[a]dopting a policy of permitting employees to disclose confidential information without notice is surely a 'consummation of the agency's decisionmaking process'" and "'one by which [the submitter's] rights [and the agency's] obligations have been determined.'" *Id.* (quoting *Bennett*, 520 U.S. at 178). The D.C. Circuit remanded the case for entry of "an injunction prohibiting the [EEOC] from disclosing Venetian's confidential information pursuant to its current disclosure policy." *Id.* at 927.

Here, as in *Venetian*, the decisions to grant DOGE affiliates access to agency record systems were final agency actions. Education, OPM, and Treasury granted DOGE affiliates access to systems that contain records with the plaintiffs' PII. The decisions to grant access were neither tentative nor interlocutory in nature. They were "the 'consummation' of the agenc[ies'] decisionmaking process." *See Bennett*, 520 U.S. at 177–78 (quoting *Chicago & S. Air Lines*, 333 U.S. at 113). There was nothing further for the agencies to do to formalize the decisions. And while the agencies can and have revoked DOGE affiliates' access to certain systems, that authority does not make their decisions tentative or interlocutory. The agencies decided that DOGE affiliates could access agency records containing PII and gave the affiliates such access. The agency actions marked the consummation of the agency's decisionmaking process.

And here, as in *Venetian*, Education, OPM, and Treasury "[a]dopt[ed] a policy of permitting . . . disclos[ure]" that determines the plaintiffs' legal rights and the agencies' legal obligations. *See Venetian*, 530 F.3d at 931. The Privacy Act prohibits disclosure of the records at issue "except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless the disclosure falls within an enumerated exception. *See* 5 U.S.C. § 552a(b). The agencies determined that, to comply with the Privacy Act, they did not need

the plaintiffs' consent to disclose their records to DOGE affiliates. Thus, the practical effect of the agencies' decisions was to determine the plaintiffs' rights and the agencies' obligations under the Privacy Act. *See De La Mota*, 2003 WL 21919774, at *8 ("The practical effect of the DOE's action, not the informal packaging in which it was presented, is the determining factor in evaluating whether the DOE's action was 'final.'").

The government argues the agencies' decisions had no "actual legal effect." ECF 62, at 19 (citing *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) and *Mashni v. U.S. Army Corps of Eng'rs*, 535 F. Supp. 3d 475, 482 (D.S.C. 2021)). Here, too, they are mistaken. "Whether an agency action has 'direct and appreciable legal consequences' under the second prong of *Bennett* is a 'pragmatic' inquiry." *Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020) (cleaned up) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598–99 (2016)). The agencies determined that disclosure of the plaintiffs' PII did not require their consent and that such disclosure fell within one of the Privacy Act's exceptions. Thus, the decisions of Education, OPM, and Treasury had a legal effect: They determined the plaintiffs' rights and the agencies' obligations under the Privacy Act.

This case is not, as the government argues, similar to *Sierra Club v. EPA*, 955 F.3d 56. In *Sierra Club*, the D.C. Circuit held that agency guidance concerning a state permitting process was not final agency action because "it d[id] not determine rights or obligations and d[id] not effectuate direct or appreciable legal consequences." *Id.* at 58. The guidance "impose[d] no obligations, prohibitions or restrictions on regulated entities, d[id] not subject them to new penalties or enforcement risks, preserve[d] the discretion of permitting authorities, require[d] any permitting decision relying on the Guidance be supported with a robust record, and d[id] not prevent challenges to individual permitting decisions." *Id.* at 63. The guidance was "*not necessary* for a

permitting decision," and "permitting authorities [we]re free to completely ignore it." *Id.* at 64. And the guidance "by itself d[id] not expose any regulated entity to the possibility of an enforcement action or to enhanced fines or penalties." *Id.* at 65.

*Sierra Club* is inapposite. It involved mere agency guidance that did not impose rights or obligations on regulated entities or interfere with the discretion of the state authorities making permitting decisions. In contrast, the agency actions challenged here did "determine rights or obligations" and did "effectuate direct or appreciable legal consequences." 955 F.3d at 58. The decision to grant DOGE affiliates access to agency systems with records containing PII had "direct or appreciable legal consequences" under the Privacy Act. *See id.* That statute—the "NorthStar" that "govern[s] the action at issue"—implicates the plaintiffs' rights to protect their sensitive personal information from unlawful disclosure and the agencies' obligations, with certain exceptions, to obtain their consent before disclosure. *See Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 631 (D.C. Cir. 2019) ("[C]ourts should take as their NorthStar the unique constellation of statutes and regulations that govern the action at issue.").[16]

The agency decisions to grant DOGE affiliates access to systems that house records with the plaintiffs' PII are final agency actions. *See New York v. Trump*, No. 25-CV-01144, 2025 WL 573771, at *19 (S.D.N.Y. Feb. 21, 2025) (finding Treasury's decision to grant DOGE affiliates access to PII reviewable under the APA because "the APA allows challenges to unwritten agency policies and practices where the requirements of finality are otherwise satisfied").

---

[16] *California Communities Against Toxics v. EPA*, another case the government relies on, also is factually distinct. There, the D.C. Circuit held that an EPA memo forecasting the agency's interpretation of a statute was not a final agency action because it "has no direct and appreciable legal consequences." 934 F.3d at 638–39.

## C. Preliminary Injunction

The party seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm if preliminary relief is not granted; (3) that the balance of equities favors them; and (4) that an injunction is in the public interest. *See Frazier v. Prince George's County*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter*, 555 U.S. at 20).

### 1. Likelihood of Success on the Merits

#### i. Administrative Procedure Act

"Congress enacted the APA to provide a general authorization for review of agency action in the district courts." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The APA "requires agencies to engage in 'reasoned decisionmaking'" and establishes procedures for judicial review and "accountab[ility] to the public." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (first quoting *Michigan* v. *EPA*, 576 U.S. 743, 750 (2015) (internal quotation marks omitted), and then quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)).

The APA directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A),(C). In determining whether agency action is "not in accordance with law," the court must "bear[] in mind that it is [the court's] duty under the APA to 'decide all relevant questions of law' and to 'interpret constitutional and statutory provisions.'" *Perez v. Cuccinelli*, 949 F.3d 865, 872 (4th Cir. 2020) (citing 5 U.S.C. § 706). "[W]here an agency's decision does not comport with governing statutes or regulations, that decision is 'not in accordance with law' and must be set aside." *J.E.C.M. ex rel. Saravia v. Lloyd*, 352 F. Supp. 3d

559, 583 (E.D. Va. 2018). An agency's "order may not stand if the agency has misconceived the law." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). When a court makes a final decision on the merits that an agency made an error of law, "the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) (citing *Chenery*, 318 U.S. at 94–95).

In its review, the court "must only consider the record made before the agency at the time the agency acted" because it "may not 'intrude upon the domain which Congress has exclusively entrusted to an administrative agency.'" *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467 (4th Cir. 2013) (quoting *Chenery*, 318 U.S. at 88). The record includes "the facts presented to the agency" and "the reasons given by the agency for taking the action." *Id.* The record generally does not include "facts and justifications for agency action provided to a reviewing court for the first time." *Id.* at 468. Put differently, the court "'may not accept [the agency] counsel's *post hoc* rationalizations for agency action'" because the "court may look only to the[] *contemporaneous* justifications in reviewing the agency action." *Id.* at 467–68 (emphasis in *Dow AgroSciences*) (quoting *Motor Vehicle Mfr. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). "During its evaluation of the agency action, 'the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.'" *Ergon-W. Va., Inc. v. EPA*, 980 F.3d 403, 410 (4th Cir. 2020) (quoting 5 U.S.C. § 706).

The court may, under narrow circumstances, look beyond the record. If the record utterly "fail[s] to explain administrative action" by not providing even a "curt" explanation and, as a result, "frustrate[s] effective judicial review," the court may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see Env't Def. Fund, Inc. v.*

*Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (noting that "[w]hen the record is inadequate," the court may seek "additional explanations," but "[t]he new materials should be merely explanatory of the original record and should contain no new rationalizations" (citing *Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1292 (9th Cir. 1977)). Further, a "court may go outside [the] record for explanation of highly technical matters." *J.H. Miles & Co., Inc. v. Brown*, 910 F. Supp. 1138, 1147 (E.D. Va. 1995) (citing *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1159–60 (9th Cir. 1980)); *Bunker Hill*, 572 F.2d at 1292 ("[C]ourts are not straightjacketed to the original record in trying to make sense of complex technical testimony, which is often presented in administrative proceedings without ultimate review by nonexpert judges in mind.").

To be clear, the court cannot accept a more fulsome explanation to supplant an explanation, albeit brief, in the record. If there is some explanation in the record, then the agency action must "stand or fall on the propriety of that [explanation], judged, of course, by the appropriate standard of review." *Camp*, 411 U.S. at 143. If the explanation "is not sustainable on the administrative record made, then the [agency's] decision must be vacated and the matter remanded . . . for further consideration." *Id.*

### ii.    Privacy Act

Congress passed the Privacy Act "in light of the government's 'increasing use of computers and sophisticated information technology,' which 'greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use, or dissemination of personal information.'" *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (quoting the Privacy Act of 1974 § 2(a)(2)).

The Privacy Act prohibits agencies from "disclos[ing] any record which is contained in a system of records by any means of communication to any person, or to another agency, except

pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). This restriction on disclosure extends to employees within the agency. Disclosure to the agency's employees is limited "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." *Id.* § 552a(b)(1).

The Privacy Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." *Id.* § 552a(a)(4). A "system of record" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5).

The Privacy Act does not define "disclosure," but agencies have interpreted the term to include granting access to records. *See* OMB Guidelines, 40 Fed. Reg. 28948, 28953 (July 9, 1975) ("A disclosure may be either the transfer of a record or the granting of access to a record."); 5 C.F.R. § 297.102 ("Disclosure means providing personal review of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative, parent, or legal guardian."). Likewise, courts have construed the term "liberally to include not only the physical disclosure of the records, but also the accessing of private records." *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010); *Tolbert-Smith v. Chu*, 714 F. Supp. 2d 37, 43 (D.D.C. 2010) (reading "disclosure" to include "plac[ing] records . . . on a server accessible by other federal employees and members of the public"); *cf. Wilborn v. Dep't of Health & Human Servs.*, 49 F.3d

39
JA694

597, 600–01 (9th Cir. 1995) ("[T]he Privacy Act, if it is to be given any force and effect, must be interpreted in a way that does not 'go[] against the spirit' of the Act" (quoting *MacPherson v. IRS*, 803 F.2d 479, 481 (9th Cir. 1986)), *abrogated on other grounds by Chao I*, 540 U.S. 614. Some courts have required "actual viewing or imminent viewing by another." *Wrocklage v. Dep't of Homeland Sec.*, 769 F.3d 1363, 1369 (Fed. Cir. 2014). But courts that have required more than mere transmission of records have suggested that disclosure occurs when "information has been exposed in a way that would facilitate easy, imminent access." *See, e.g.*, *In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 29 (D.D.C. 2014).

### iii.    The APA Claim

The plaintiffs assert that Education, OPM, and Treasury did not act "in accordance with law"—the Privacy Act—when they disclosed agency records containing the plaintiffs' PII to DOGE affiliates. 5 U.S.C. § 706(2)(A). To determine whether the plaintiffs have established a likelihood of success on the merits of this claim, the Court confines its review of the final agency actions to the administrative records and looks outside the records only "for explanation of highly technical matters." *J.H. Miles & Co.*, 910 F. Supp. at 1147 (citing *Asarco*, 616 F.2d at 1159–60). Upon review of the administrative records, the Court finds that the plaintiffs have shown a likelihood of success on the merits of their APA claim that Education, OPM, and Treasury took final agency actions "not in accordance with law." 5 U.S.C. § 706(2)(A).[17]

---

[17] At the TRO stage, the government argued that the plaintiffs have not stated an APA claim because they have an "adequate remedy" under the Privacy Act. *See* 5 U.S.C. § 704 ("[F]inal agency action[s] for which there is no other adequate remedy in a court are subject to judicial review."). The government reasserted this argument in its opposition to the motion for a preliminary injunction. As the Court explained in the TRO, ECF 38, at 18–19, the Privacy Act provides a cause of action for damages when an agency improperly discloses records, but it does not provide a cause of action for injunctive relief in these circumstances. *See Doe v. Chao* ("*Chao II*"), 435 F.3d 492, 504–05 & n.17 (4th Cir. 2006). The plaintiffs seek injunctive relief, not damages. Thus, they do not have an adequate remedy under the Privacy Act. Their only available

The government does not dispute that the agencies granted DOGE affiliates access to systems of records that contain sensitive personal information subject to the Privacy Act, that the plaintiffs did not request disclosure of their PII contained in these systems, or that the agencies did not obtain the plaintiffs' consent before they granted DOGE affiliates access to the information. Still, the government insists the disclosures complied with the Privacy Act because, under the statute, the agencies did not need to obtain the plaintiffs' consent.[18]

The Privacy Act lists thirteen exceptions to the general rule that disclosure of agency records requires consent. *See* 5 U.S.C. § 552a(b). Of relevance here, disclosure is permitted "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." *Id.* § 552a(b)(1). To fall within this exception, the disclosure must be within the agency that maintains the record, *see Britt v. Naval Investigative Serv.*, 886 F.2d 544, 547 (3d Cir. 1989), and the recipient must "examine[] the record in connection with the performance of duties assigned to him . . . in order to perform those duties properly,"

---

remedy is an APA action for injunctive relief. *See id.* at 504 n.17 (explaining that "[o]ften . . . injunctive relief for a Government's violation of the [Privacy Act]" is "appropriate and authorized by the APA," which "empower[s] courts to 'hold unlawful and set aside agency action . . . found to be . . . not in accordance with [] law'") (quoting 5 U.S.C. § 706(2)(A)). Thus, the plaintiffs challenge a "final agency action for which there is no other adequate remedy in a court." *See* 5 U.S.C. § 704. The APA allows for judicial review of their claim.

[18] The government also suggests that no "disclosure" has occurred because there is no evidence that the DOGE affiliate have actually viewed the plaintiffs' information. For this proposition, they cite *Wrocklage v. Dep't of Homeland Security*, 769 F.3d at 1368–69. But in *Wrocklage*, the Federal Circuit determined an email with an attachment that contained someone's Social Security number, address, date of birth, and license plate number did not constitute "disclosure" of a record under the Privacy Act because "[i]t is undisputed that the recipient deleted the email and it is therefore not imminently viewable." *Id.* at 1365–66, 1368–69. Here, absent injunctive relief, the plaintiffs' records at Education, OPM, and Treasury would be "imminently viewable" by DOGE affiliates, *id.* at 1369, and the government has asserted that the DOGE affiliates need to access this information to perform their job duties. The agencies have disclosed the plaintiffs' records for Privacy Act purposes. *See, e.g.*, *Tolbert-Smith*, 714 F. Supp. 2d at 43.

*Bigelow v. Dep't of Def.*, 217 F.3d 875, 877 (D.C. Cir. 2000). The government relies on the need-to-know exception to defend the disclosure of entire systems of records to DOGE affiliates at Education, OPM, and Treasury.

"[T]he need to know exception applies only to intra-agency disclosures." *Britt*, 886 F.2d at 547. The government insists that the disclosures are intra-agency disclosures because the DOGE affiliates are employees of Education, OPM, and Treasury. The plaintiffs assert that at least some of the DOGE affiliates at Education are not employees. This dispute does not impact the likelihood of success analysis, because even if the disclosures were intra-agency, the administrative records do not show that the DOGE affiliates had "a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). The Court assumes, without deciding, that the DOGE affiliates are employees of the agencies that granted them access to systems of records.

Courts have found that the Privacy Act's need-to-know exception applies when there is a valid explanation for why the employee needed access to the protected information to perform their job duties. *See, e.g.*, *Howard v. Marsh*, 785 F.2d 645, 648 (8th Cir. 1986) (attorney and personnel specialist gathering information about a discrimination complaint against the agency needed complainant's employment records to respond to the complaint); *Covert v. Harrington*, 876 F.2d 751, 752–54 (9th Cir. 1989) (Inspector General's agents needed employees' personnel files after receiving allegations that employees were falsifying their permanent residences to obtain a per diem); *Dinh Tran v. Dep't of Treasury*, 351 F. Supp. 3d 130, 137–39 (D.D.C. 2019) (employees evaluating a detail request needed to know information in the requestor's performance appraisal to evaluate her skillset and suitability for the detail), *aff'd per curiam* 798 F. App'x 649 (D.C. Cir. 2020).

For example, in *Bigelow v. Department of Defense*, Noyes, a U.S. Army colonel, reviewed the personnel file of Bigelow, whom Noyes supervised at the Pentagon. 217 F.3d at 876. Noyes reviewed Bigelow's personnel file after he "learned of allegations of misconduct concerning Bigelow," including "that he sometimes disappeared in foreign countries near sensitive international borders." *Id.* Bigelow sued the Department of Defense under the Privacy Act for the intra-agency disclosure of his personnel file. *See id.* The *Bigelow* Court's analysis focused on the need-to-know exception. The court explained that "[w]hat must be determined . . . is whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly." *Id.* at 877. As Bigelow's immediate supervisor, Noyes had a duty enumerated in Defense Department regulations to evaluate Bigelow's trustworthiness. *Id.* The court determined that because Noyes received information that "cast[] doubt" on Bigelow's trustworthiness, Noyes "had a need to examine the file in view of the doubts that had been raised in his mind about Bigelow and Bigelow's access to the country's top secrets." *Id.* The *Bigelow* Court assuaged the dissenting judge's concerns that the decision would "dramatically expand[] the number of people' within the military who may examine personnel files" by explaining that "[t]here may be many people in the military who have access to the nation's most important secrets, but we doubt that their supervisors regularly receive information casting doubt on their trustworthiness." *Id.* (quoting *id.* at 881–82 (Tatel, J., dissenting)). The court held that the need-to-know exception applied. *See id.* at 876, 878.

The Tenth Circuit reached the opposite conclusion in *Parks v. IRS*, 618 F.2d 677 (10th Cir. 1980). There, IRS employees sued the agency and the United States after other IRS employees used information from their personnel files to call them and solicit their purchase of U.S. Savings Bonds. *Id.* at 679. The government argued that "disclosure of savings bond information was

necessary to the performance of [the employees'] duties" because of an executive order signed by President Nixon. *Id.* at 681. The executive order "established an Interdepartmental Committee for the Voluntary Payroll Savings Plan for the Purchase of United States Savings Bonds." *See id.* The committee, "consist[ing] of the heads of all federal executive-branch agencies," was "charged . . . to formulate a plan of organization and sales promotion of the savings bond program." *Id.* The Tenth Circuit rejected the government's argument that the executive order justified the disclosure of the savings bond information from personnel files:

> Even though this may have been a worthy effort, it does not justify the use of information derived from the personnel files of employees, particularly in view of the subsequent passage of the Privacy Act. In short, the order, which was at odds with the stated legislative purpose of the Privacy Act, does not license the defendants to violate the Privacy Act . . . .

*Id.* The court held that the need-to-know exception did not apply. *See id.* at 681.

These cases establish the framework for the Court's analysis of the need-to-know exception. Factually, they are like other Privacy Act cases where the exception is invoked to defend the disclosure of a limited number of records. Here, the need-to-know exception has been invoked to defend the disclosure of millions of records. There appears to be no precedent with similar facts. However, even under existing precedent, the agencies' disclosures likely violate the Privacy Act. As discussed in detail below, the administrative records do not explain why the DOGE affiliates at Education, OPM, and Treasury need access to the plaintiffs' PII to do their jobs. "[P]ermitting agency-wide distribution under § 552a(b)(1) without any showing of why each employee needed to receive the information would allow the exception to swallow the rule." *Dick v. Holder*, 67 F. Supp. 3d 167, 178 (D.D.C. 2014).

### a. Education

DOGE affiliates have been granted seemingly unfettered access to Education's unclassified systems of record. In a February 5, 2025 memorandum, Education's CIO, Thomas Flagg, "document[ed] the need to know and authorize[d] USDS personnel onboarded to the Department of Education DOGE team full and prompt access to all unclassified IT systems and data." ED-000025. These unclassified systems at Education include systems of records that contain many of the plaintiffs' PII, including income and asset information, Social Security numbers, taxpayer identification numbers, dates of birth, demographic information (such as citizenship and marital statuses), and some similar information about family members. *See, e.g.*, Privacy Act of 1974; System of Records, 89 Fed. Reg. at 44656–57 (listing categories of records in the NSLDS); Privacy Act of 1974; System of Records, 88 Fed. Reg. at 41947–48 (listing categories of records in the CODS); Privacy Act of 1974; System of Records, 88 Fed. Reg. at 42222; Privacy Act of 1974; System of Records—Financial Management System (FMS), 73 Fed. Reg. at 178 (listing categories of records in the FMS); Privacy Act of 1974; System of Records, 88 Fed. Reg. at 42222 (listing categories of records in the FAS);[19] *see also* ECF 14-3, ¶¶ 7–8; ECF 14-5, ¶¶ 6–7; ECF 14-7, ¶¶ 5, 8; ECF 14-8, ¶¶ 6–7; ECF 14-9, ¶¶ 6–7; ECF 14-10, ¶¶ 10–11; ECF 14-11, ¶¶ 5–6; ECF 14-12, ¶¶ 8–9.[20]

The reasons *why* DOGE affiliates at Education need "full and prompt access to all unclassified IT systems and data" to perform their job duties are unclear. *See* ED-000025.

---

[19] The Court takes judicial notice of the Federal Register. *See* 44 U.S.C. § 1507.

[20] The government submitted an extra-record declaration from Steven Matteson, "an Executive Project Manager at the U.S. Department of Education, Federal Student Aid." ECF 62-1, ¶ 1 (S. Matteson Decl.). Matteson declares that he conducted a system access audit for NSLDS, COD, FAS, and FMS on March 7, 2025, and identified only one DOGE affiliate at Education—Adam Ramada—with a user account that "had access to, or had accessed, any of th[e]se four systems"—

According to the February 5 memorandum from Education's CIO, access was granted to "support the implementation of" the DOGE Executive Order. *Id.* The DOGE Executive Order states that DOGE is established "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." DOGE Executive Order § 1. In pursuit of that purpose, the Executive Order directs agency heads to establish "DOGE Teams," with "DOGE Team Leads" that "coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.* § 3(c). The Executive Order directs the USDS Administrator to "commence a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems," and to "work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." *Id.* § 4(a). The DOGE Executive Order does not explain why DOGE affiliates at Education (or any agency for that matter) need access to "all unclassified IT systems and data" to modernize technology and software. *See* ED-000025. And by merely citing to the DOGE Executive Order, the February 5 memorandum does not explain

---

the FMS. *Id.* ¶¶ 2–4. Matteson affirmed that Ramada's user account access was "substantially limited" as he "could not access any personally identifiable information." *Id.* ¶ 4. The Court will not consider Matteson's declaration to assess the merits of the plaintiffs' APA claim because it is not in the administrative record. In the record, there is no evidence that the sweeping access authorized by the February 5, 2025 memorandum has been curtailed. Even if the Court considered extra-record evidence, other government declarations contradict Matteson's statements. Ramada declared on February 13 that the DOGE affiliates at Education "require access to Department of Education information technology and data systems related to student loan programs in order to audit those programs for waste, fraud, and abuse." *See* ECF 27-5, ¶ 9. Education CIO Flagg declared on February 15 that DOGE affiliates "have accessed Department information technology and data systems." *See* ECF 27-7, ¶ 4. And the government has asserted that DOGE affiliates at Education "need access to [Privacy Act-protected] records in order to audit student loan programs for waste, fraud, and abuse." ECF 62, at 27. The government cannot, on the one hand, ask the Court to rely on one extra-record declaration that says DOGE affiliates are not accessing PII, and on the other, assert that DOGE affiliates need access to this information.

*why* full access to Education systems and data—which contain the sensitive personal information of millions of Americans, including many of the plaintiffs—is *necessary* for DOGE affiliates at Education to "support the implementation of" the DOGE Executive Order. *See id.*[21]

The DOGE affiliates may need some form of system access to modernize technology and software, but that does not mean that they need access to all of the records containing PII housed in those systems. At least one of Education's systems of records allows for masking PII with "dummy" data, but there is no indication in the administrative record that the DOGE affiliates' access is limited in this manner. *See* Education, *Privacy Impact Assessment (PIA) for the Financial Management System (FMS)* 21 (2024), https://www.ed.gov/sites/ed/files/notices/pia/fsa-financ-manag-syst.pdf [https://perma.cc/3JKT-K7WK].[22] By granting "full and prompt access" to all unclassified IT systems and data to DOGE affiliates, Education apparently did not contemplate limiting access to avoid the disclosure of PII. *See* ED-000025. An agency may not grant extensive access to records with PII "without any *showing* of why each employee needed to receive the information." *Dick*, 67 F. Supp. 3d at 178 (emphasis added); *see also Walker v. Gambrell*, 647 F. Supp. 2d 529, 538 n.4 (D. Md. 2009) (explaining disclosure did not fall within the need-to-know exception because "it is difficult to see how knowledge with such specificity was necessary"); *cf. Vargas v. Reno*, No. 99-2725, slip op. at 13 (W.D. Tenn. Mar. 30, 2000) (denying government's

---

[21] The DOGE Executive Order instructs agency heads to grant "full and prompt access to all unclassified records, software systems, and IT systems," but only "to the maximum extent consistent with law." DOGE Executive Order § 4(b). When agency heads implemented the DOGE Executive Order, they had to comply with the Privacy Act.

[22] The Court takes judicial notice of Privacy Impact Assessments and Privacy and Civil Liberties Impact Assessments retrieved from government websites. *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

summary judgment motion on Privacy Act claim of unlawful intra-agency disclosure to an investigator where "[d]efendants ha[d] not submitted evidence that Vargas had potentially violated any law or regulation or that Vargas's records were relevant or necessary to [the] investigation"). Neither the February 5 memorandum nor the DOGE Executive Order to which the memorandum refers explains why DOGE affiliates need to know the information in Education's records to perform their jobs.

Nothing else in the administrative record explains why either. At the preliminary injunction hearing, the government suggested the job descriptions of DOGE affiliates at Education explain why they have a need for the Privacy Act-protected records. But a review of the job descriptions in the record reveals they provide no such explanation.

A document titled "Terms and Conditions for Reimbursable Work" describes the "scope of work" for the USDS employees detailed to Education as follows:

> Providing software engineering, modern architecture and system design, project and team leadership, software delivery, security and site reliability engineering, data engineering, engineering management, and/or executive leadership expertise to champion and deliver modern technology[;] Performing a wide range of activities including debugging, software testing, and programming. USDS employees will quickly adapt and learn by problem-solving within legacy systems and organizational constraints while working collaboratively for rapid prototyping[;] . . . assess[ing] the state of current projects in agencies and plans and/or leads interventions where major corrections are required[;] Assisting on IT projects including infrastructure, implementing safeguards to prevent fraud, and ensuring the integrity and success of these efforts[;] Championing data strategies and building interoperability across other agencies as well as internal and external stakeholders.

*See* ED-000001. According to this document, USDS detailees at Education have job duties that cover a wide range of IT services, such as software engineering and programming, establishing protections to prevent fraud, and building interoperability. Other documentation in the record indicates that some Education DOGE affiliates perform research duties. ED-1 "conduct[s] research

to support EOP Department of Government Efficiency efforts." ED-000005. ED-3 is a software engineer detailed from GSA "conducting research and analysis to identify inefficiencies and areas for improvement in ED's administrative and programmatic functions." ED-000013. ED-3 is also responsible for "reviewing internal processes and operational procedures to identify areas for improvement." *Id.* Another DOGE affiliate, ED-4, is apparently tasked with duties that will lead to "[l]ess dollars . . . flow[ing]" from Education "to many non-profit and for profit institutions and companies." ED-000018. And there is a broader goal stated in several descriptions of DOGE affiliates' duties: "improvement of government efficiency." *See, e.g.*, ED-000003. None of these myriad job duties explain why the person performing them has a need for records with PII contained within Education's systems.

Apparently aware that the administrative record does not answer the need-to-know question, the government attempts to fill this gap after the fact with its own answers. The government asserts that "[a]ll six [DOGE affiliates] work to audit contract, grant and related programs for waste, fraud and abuse" and that they need access to records "in order to audit student loan programs for waste, fraud, and abuse." ECF 62, at 7, 27. This rationale appears to be created out of whole cloth. The DOGE Executive Order does not mention waste, fraud, and abuse, and it certainly does not mention auditing student loan programs. And the parts of the administrative record cited by the government for the proposition that DOGE affiliates were hired to audit Education programs do not describe any auditing tasks. *See id.* at 7 (citing ED-000001–19, ED-000021).

While the record does state that some DOGE affiliates are tasked with "improv[ing] government efficiency," *see, e.g.*, ED-000003, a vague reference to government efficiency cannot reasonably be interpreted to include auditing federal student loan programs for waste, fraud, and

abuse. It is more reasonable to interpret this "efficiency" goal in light of the DOGE Executive

Order, which established DOGE for the purpose of "implement[ing] the President's DOGE

Agenda, *by modernizing Federal technology and software to maximize governmental efficiency

and productivity*," DOGE Executive Order, § 1 (emphasis added). Other descriptions of DOGE

affiliates' job duties refer to similarly ill-defined "efficiency" roles. Consider ED-3. Recall that

this DOGE affiliate is tasked with "conducting research and analysis to identify inefficiencies and

areas for improvement in ED's administrative and programmatic functions and reviewing internal

processes and operational procedures to identify areas for improvement." ED-000013. But ED-3

is a software engineer detailed from GSA. *See id.* It is unclear how a software engineer's "research

and analysis" to "identify inefficiencies and areas for improvement" in either the programmatic or

administrative functions of the agency would encompass an audit of federal student loan programs.

Or consider ED-4—an unpaid consultant with "[s]ignificant experience in education [and]

technology" tasked with "[a]dvising the Department on change management" and "[p]erforming

cost reductions." ED-000018. ED-4's duties will purportedly lead to "[l]ess dollars . . . flow[ing]

from [the] Department of ED to many non-profit and for profit institutions and companies." *See*

ED-000018. It is not at all evident from these nebulous descriptions of ED-4's job duties that they

are auditing federal student loan programs.

    The administrative record does not support the government's assertion that Education

granted full access to its systems of records to DOGE affiliates because they need to audit federal

student loan programs. *See Boyd v. Snow*, 335 F. Supp. 2d 28, 38 (D.D.C. 2004) (denying the

government's argument that disclosure fell under the need-to-know exception because "[i]t [wa]s

far from clear" from the record that the government employee disclosed Privacy Act-protected information "for the reason offered by the IRS").[23]

The administrative record does not explain why the DOGE affiliates at Education need access to all of Education's unclassified systems and data—which include the plaintiffs' PII—in the performance of their job duties. On the contrary, the record suggests that Education likely shared this protected information with DOGE affiliates who had no need to know the vast amount of sensitive personal information to which they were granted access.

### b. OPM

OPM granted DOGE affiliates access to several OPM systems of record that contain the plaintiffs' PII. Those systems of record include eOPF, EHRI, USA Staffing, and USA Performance, among others. *See* OPM-000028–29, OPM-000103, OPM-000104–10; ECF 14-3, ¶¶ 7–8; ECF 14-7, ¶¶ 7–8; ECF 14-9, ¶¶ 6–7; ECF 14-10, ¶¶ 10–11; ECF 14-11, ¶¶ 5–6; ECF 14-12, ¶¶ 8–9. The PII in these systems includes Social Security numbers, names and addresses, dates of birth, citizenship statuses, salaries, criminal history information, and personnel actions such as

---

[23] The government also cites to declarations from one of the DOGE affiliates at Education who says they need "access to Department of Education information technology and data systems related to student loan programs in order to audit those programs for waste, fraud, and abuse." *See* ECF 27-5, ¶ 9; ECF 62, at 27. Yet at the same time, the government asserts that the Court need not look outside the administrative records because the records "contain the extant materials that informed or reflect each agency's decisionmaking as to systems access for DOGE affiliates, and those materials provide sufficient information for the Court to evaluate Defendants' decisions." ECF 54, at 7. Indeed, the "court may look only to the[] *contemporaneous* justifications in reviewing the agency action." *Dow AgroSciences*, 707 F.3d at 467–68 (citing *Chenery*, 318 U.S. at 87–88); *see also Environ. Def. Fund.*, 657 F.2d at 285 (noting that while "[w]hen the record is inadequate, a court may 'obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary,'" but this "new materials should be merely explanatory of the original record and *should contain no new rationalizations*" (emphasis added) (quoting *Camp*, 411 U.S. at 143)). So, as the government concedes, the Court may not consider extra-record evidence as justification for the agency's actions.

promotions and suspensions. *See, e.g.*, OPM, *Privacy Impact Assessment for Electronic Official Personnel Folder System (eOPF)* 5 (2020); OPM, *Privacy Impact Assessment for USA Staffing®* 6 (2021); OPM, *Privacy Impact Assessment for Enterprise Human Resources Integration Data Warehouse (EHRI DW)* 3; OPM, *Privacy Impact Assessment for USA Performance (USAP)* 4.

As with Education, nothing in the administrative record explains why DOGE affiliates at OPM need to know the PII in OPM's systems of records in the performance of their job duties. The OPM record includes several internal emails from late January that document the agency's decision to grant DOGE affiliates access to the OPM systems of records, but none of the emails explains the DOGE affiliates' need to access the records contained within these systems. In a January 27, 2025 email with the subject line "Getting DoGE Engineers access," Acting OPM Director Ezell instructed an OPM employee to grant access to OPM computer systems to "some engineers"—several DOGE affiliates at OPM. *See* OPM-000028–29. As Ezell explained, "We are rapidly ramping up" these engineers, and "[t]o accomplish this goal," the DOGE affiliates needed "a short list of all the systems OPM operates and manages" and, "for each computer system," a list of permissions and access. *See id.* This included access to the back end of these systems, such as code read and write permissions; the ability to access the system as a "regular user," like a hiring manager who accesses USA Staffing; and "admin user" access. OPM-000029. Another email with the subject line "urgent request from political tech staff" indicates that OPM "ha[d] already given several of the political devs/engineers comprehensive access to USAJOBS and USA Staffing" and that, pursuant to Ezell's request, "[OPM-2, OPM-4, and OPM-6 have] the same requirement." OPM-000108–09. The email describes granting access to USAJOBS, USA Staffing, eOPF, EHRI, and USA Performance. OPM-000108. A January 30 email reveals that DOGE affiliates OPM-3, OPM-5, and OPM-7—described as "Individuals from the Political Team"—gained access to OPM

systems as "admins" with "super user permissions for the USAJOBS admin systems" based on a January 20 Ezell directive. *See* OPM-000104, OPM-000107. Between January 24 and February 7, other DOGE affiliates at OPM gained access to various OPM systems with PII, including USA Performance, the Federal Employee Health Benefits system, and the Postal Service Health Benefits Data Platform. OPM-000103.

These emails do not explain *why* the DOGE affiliates at OPM must know the PII contained in OPM's systems to perform their job duties. In fact, the emails suggest some of them do not have a need to know. Ezell granted sweeping access to OPM systems to DOGE affiliates who are engineers even though "[they] [did not] have immediate plans to change anything" and OPM did not "have any immediate plans for new engineers to make direct changes to any of these systems." OPM-000028–29. Ezell apparently granted DOGE affiliates broad access to OPM's systems to be prepared if OPM "need[ed] to move quickly" at some point to make system changes. OPM-000029. Then, after Ezell authorized this access, the CIO of OPM rolled it back. The CIO said that the DOGE affiliates who were granted access pursuant to Ezell's January 27 email "have never needed access to E[HR]I/eOPF." *See* OPM-000026–29.

These emails all but confirm that OPM disclosed records with the plaintiffs' PII to DOGE affiliates who did not have a need to know the information. Ezell granted extensive access to OPM systems even though the DOGE affiliates "[did not] have immediate plans to change anything." And Hogan later confirmed that these DOGE affiliates never needed access to some of these systems after all. This shoot first, ask questions later method of disclosing Privacy Act-protected records undermines the government's position that the disclosures were made on a need-to-know basis.

Nothing else in the OPM administrative record answers the need-to-know question. The record does not contain any substantive job descriptions, scope of work details, or other information about the DOGE affiliates' responsibilities at OPM. All that can be ascertained from the emails are that many of these individuals are engineers, developers, or "tech staff." *See* OPM-000028–29, OPM-000107–09. The employment forms in the record provide only meager clues as to their roles at OPM. OPM-2, OPM-3, OPM-6, and OPM-7 are "Expert[s]" who will "provide a high level of expertise relative to issues which have a significant impact on the formulation of agency goals and objectives to the OPM director." OPM-000008, OPM-000011, OPM-000022, OPM-000111. OPM-2 is also listed as a "Senior Advisor" with no corresponding job duties. OPM-000006. OPM-4 is another "Expert," though no additional details about their role are provided. *See* OPM-000014. OPM-5 is a "Senior Advisor to the Director for Information Technology," and OPM-8 is a "Senior Advisor to the Director." OPM-000017, OPM-000115. The record contains no information about their job duties. And there is no information about the positions or job duties of other DOGE affiliates who gained access to OPM systems of records—let alone why those positions or duties required access to records containing PII.

With nothing in the administrative record to justify OPM's disclosure, the government argues the DOGE affiliates need access to OPM systems of records because of the DOGE Executive Order's directive to modernize technology. Once again, the government does not cite any record evidence that explains *why* a directive to modernize technology requires access to the extensive PII housed within OPM's systems. And what little record evidence there is indicates that certain DOGE affiliates at OPM did not actually need the broad access to that Ezell initially authorized. OPM-000026.

The government also suggests that DOGE affiliates need access to these records to implement "workplace reform." *See* ECF 62, at 27. Ostensibly, this refers to the Executive Order "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative," issued on February 11, 2025. Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 14, 2025) ("Workforce Executive Order").[24] Nothing in the record remotely suggests the DOGE affiliates gained access to OPM systems of record to implement the Workforce Executive Order. That is likely because the Workforce Executive Order was issued *after* all OPM DOGE affiliates were granted access to these systems. *See* OPM-000103. So even if OPM could rely on post-hoc rationalizations to explain the reason for its disclosure of Privacy Act-protected records to DOGE affiliates, the explanation makes no sense.

Upon a review of the administrative record, the Court finds that OPM likely disclosed records with the plaintiffs' PII to DOGE affiliates who did not have a need to know the information in the performance of their duties.

### c. Treasury

Treasury granted two DOGE affiliates access to several payment systems, including the SPS, PAM, and ASAP. *See* TR-0062; TR-0058. These systems contain payment records with PII such as Social Security numbers, names, addresses, and bank information. *See, e.g.*, Fiscal Service, *Privacy and Civil Liberties Impact Assessment: Payment Automation Manager* 5; Fiscal Service, *Privacy and Civil Liberties Impact Assessment Secure Payment System (SPS)* 7; Fiscal Service, *Privacy and Civil Liberties Impact Assessment: Automated Standard Application for Payments*

---

[24] The Workforce Executive Order "commences a critical transformation of the Federal bureaucracy." Workforce Executive Order § 1. It proclaims that the Trump "Administration will empower American families, workers, taxpayers, and our system of Government itself" by "eliminating waste, bloat, and insularity." *Id.*

(ASAP) 6–7. Treasury also provided "over the shoulder" access to watch Fiscal Service employees process payments. *See* TR-0059 ("USDS/DOGE requested to be granted 'over the shoulder' access to monitor Fiscal Service personnel conducting payment processing roles, which was approved by Fiscal Service on 1/23/25"). By granting Treasury DOGE affiliates access to these payment systems, Treasury has given them access to records with the plaintiffs' PII. *See* ECF 14-3, ¶¶ 7–8; ECF 14-4, ¶¶ 5–6; ECF 14-5, ¶¶ 6–7; ECF 14-6, ¶¶ 5–6; ECF 14-7, ¶¶ 7–8; ECF 14-8, ¶¶ 6–7; ECF 14-9, ¶¶ 6–7; ECF 14-10, ¶¶ 10–11; ECF 14-11, ¶¶ 5–6; ECF 14-12, ¶¶ 8–9.

The administrative record reveals that the DOGE affiliates at Treasury were granted access to the payment systems to modernize technology at the agency. What the record does not reveal is *why* the DOGE affiliates need access to the PII within those payment systems to modernize technology.

One of the two DOGE affiliates at Treasury is Thomas Krause. Krause is a Senior Advisor for Technology and Modernization ("Senior Advisor"). TR-0007, TR-0015, TR-0024.[25] In his role as a Senior Advisor, Krause's job duties center on technology modernization and innovation. His duties are manifold. He was hired to provide services such as "advancing the Treasury's technology infrastructure, financial management systems, and cybersecurity initiatives"; "lead[ing] IT modernization efforts"; "oversee[ing] modernization of legacy systems";

---

[25] In addition to being a Senior Advisor for Technology and Modernization, Krause also has been delegated the duties of the Fiscal Assistant Secretary. Those duties do not shed any light on why Krause might need to know PII within Treasury's payment systems because he was granted "over the shoulder" access to Treasury payment systems *before* he assumed the duties of Fiscal Assistant Secretary. *See* TR-0003 (delegation of Fiscal Assistant Secretary duties dated February 5, 2025); TR-0024 (appointment affidavit showing Krause's date of appointment as a Senior Advisor as January 23, 2025); TR-0056–59 (engagement plan describing how the "USDS/DOGE team" got "over the shoulder" access to "monitor Fiscal Service personnel conducting payment processing" on January 23, 2025). So, any duties Krause might have assumed *after* he was granted access to Treasury payment systems cannot justify the disclosure.

"integrating real-time analytics, automation, and enhanced data-sharing capabilities across agencies"; "strengthen[ing] cybersecurity protocols to protect critical financial systems and mitigate risks"; and "foster[ing] public-private partnerships . . . to drive innovation." TR-0007, TR-0015. He is expected to "provide critical recommendations that shape government technology and financial management strategies" and to develop "policy guidance, modernization efforts, and strategic partnerships." *Id.* He will work with various Treasury officials "to lead . . . the development, execution, and management of the information technology and technological modernization efforts" and "programs for the Department of the Treasury and the internal management of the Department and its bureaus . . . as it relates to technology." TR-0013, TR-0021.

As plentiful as the descriptions of Krause's job duties are, they do not suggest Krause needs to know the PII in Treasury's payment records to perform any of his duties. Krause was hired to modernize Treasury's technology systems, improve cybersecurity, advise on financial management strategy, and take the lead on Treasury "information technology and technological modernization efforts and programs" and "internal management of [Treasury]. . . *as it relates to technology*." *See, e.g*, TR-0021 (emphasis added). To perform these duties, Krause does not appear to require access to payees' Social Security numbers, names, addresses, or bank information. And both the record and a privacy and civil liberties impact assessment indicate that some of this personal information can be redacted. *See* TR-0063 (email describing "unredacted" files in PAM and SPS systems); *Privacy and Civil Liberties Impact Assessment Secure Payment System (SPS)* 7 ("Treasury is committed to eliminating unnecessary collection, use, and display of full Social Security numbers ('SSN') and redacting, truncating, and anonymizing SSNs in systems and

documents to limit their accessibility to individuals who do not have a need to access the full SSN in order to perform their official duties.").

The other DOGE affiliate at Treasury is Ryan Wunderly, who was hired to fill Marko Elez's role of Special Advisor for Information Technology and Modernization ("Special Advisor"). The Special Advisor was granted access to several Treasury systems containing PII as early as February 1, 2025. *See* TR-0062. Like Krause, Wunderly's role centers on technology modernization. The Special Advisor's "primary purpose" is "to serve in a close and confidential capacity to the Chief of Staff's Senior Advisor for Information Technology and Modernization" (*i.e.*, Krause). TR-0022. Like Krause, Wunderly's job description is lengthy. He "is responsible for advising [Krause] on engineering, software, hardware, systems, and other technology matters." *Id.* His responsibilities are to "[c]onduct[] special and confidential studies on a variety of strategies and issues related to Treasury's information technology"'; "[r]eview[] and furnish[] [Krause] with recommendations regarding Treasury's critical software infrastructure"; "[i]dentif[y], analyze[], and make[] recommendations to strengthen Treasury's hardware and software"; "work closely with the engineers in [the Fiscal Service] on Information Technology matters to execute Fiscal's mission of promoting the financial integrity and operational efficiency of the federal government through exceptional accounting, financing, collections, payments, and shared services"; and "assist on key issues for Fiscal, including but not limited to (1) Operational Resiliency; (2) Advancing Governmentwide Payment Integrity; (3) Critical Modernization Programs; (4) Improving the Payment Experience; and (5) TreasuryDirect User Credential Costs." TR-0022–23. The engagement plan describes how "USDS/DOGE confirmed" that the Special Advisor (the "designated technical team member") "requires access to Fiscal Service systems and data" and "will be provided access to in scope payment systems source code." TR-0058.

Like the job descriptions of the Senior Advisor, the descriptions of the Special Advisor's job do not reveal why Wunderly needs access to the PII within Treasury's payment records. His role is focused on "engineering, software, hardware, systems, and other technology matters." TR-0022. His job responsibilities center on technology. He recommends, assists, and collaborates on "Treasury's critical software infrastructure"; "Treasury's hardware and software"; and "Information Technology matters." TR-0023. Nothing in his job description—and nothing in the administrative record as a whole—suggests he requires access to the PII in Treasury's payment records.

The record indicates that the Special Advisor "will not be able to adequately perform his/her duties without being privy to the critical information technology hardware and software infrastructure of Treasury Department," "will be exposed to conversations, dialogues, and other kinds of sensitive information," and will "perform[] a variety of confidential assignments requiring analysis and evaluation of programs and activities of importance to [Krause]." TR-0022. But nothing in the records suggests this "sensitive information" includes PII or that "confidential assignments" require access to PII.

Finally, the engagement plan describes how DOGE affiliates will "outlin[e] recommendations for greater efficiencies and potential improvements to the existing payment processes and associated technology and policies in support of payment integrity and fraud prevention." TR-0057. This task, when viewed in the context of the entire engagement plan and the DOGE affiliates' job duties, is part of the efforts to improve Treasury's technology. *See id*. It is not a directive to look at the PII within payment records to ferret out fraud.[26]

---

[26] The administrative record contains a "Preliminary Work Plan for IT Access" that describes the need for "[s]ystem access as well as on-going discussions with subject matter experts" to "understand[] and verify[] how [Treasury] payment and accounting systems work." TR-0060. The

With nothing in the administrative record to support the DOGE affiliates' need to know, the government argues that they need access to Treasury payment systems to implement the DOGE Executive Order. But once again, the government does not explain why implementing the DOGE Executive Order—which focuses on technology modernization—requires access to PII within Treasury payment records.

The administrative record does not show that DOGE affiliates at Treasury need access to the PII in the payment record systems to modernize technology at the agency.

\* \* \*

The administrative records indicate that Education, OPM, and Treasury disclosed records with the plaintiffs' PII to DOGE affiliates. They also indicate that the DOGE affiliates do not need to know this information to perform their job duties. And on the record before the Court, no other Privacy Act exception applies to these disclosures.[27] Education, OPM, and Treasury likely violated the Privacy Act. In so doing, the agencies likely violated the APA by acting "not in accordance

---

document is not dated and its author is not identified. Regardless, it does not show that the author— or whichever DOGE affiliate is implicated by the document—needs access to PII to "understand[] and verify[]" how the systems work. *Id.*

[27] The government points to a provision of the Privacy Act that permits disclosure "for a routine use," defined as "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7), (b)(3); *see* ECF 62, at 27–28. When an agency discloses records under the "routine use" exception, it must retain an account of "the date, nature, and purpose of each disclosure of a record to any person or to another agency" and the "name and address of the person or agency to whom the disclosure is made." *See* 5 U.S.C. § 552a(c)(1). The government has not produced such an accounting. The OPM account creation audit does not show the purpose of the disclosure to the DOGE affiliates. *See* OPM-000089–103. Nor does the BFS System Access Request in the administrative record for Treasury. *See* TR-0062. There is no account of the access given to DOGE affiliates at Education. And there is nothing else in the administrative records that resembles a documentation of use or access. The gap in the records cannot be backfilled by the Statement of Record Notices from the Federal Register in the OPM and Treasury records. The government's invocation of the routine use exception appears to be an after-the-fact attempt to fit the disclosures into an exception.

with law." *See* 5 U.S.C. § 706(2)(A); *Doe v. Chao* ("*Chao II*"), 435 F.3d 492, 504 n.17 (4th Cir. 2006); *accord Doe v. Stephens*, 851 F.2d 1457, 1466 (D.C. Cir. 1988) (noting case involving unauthorized disclosure claims under the Veterans' Records Statute, which incorporates the Privacy Act, "clearly is a case of agency action 'not in accordance with law'" (quoting 5 U.S.C. § 706(2))). The plaintiffs have established a likelihood of success on the merits of their APA claim that Education, OPM, and Treasury acted "not in accordance with law."[28] *See* 5 U.S.C. § 706(2)(A).

### 2. Irreparable Harm

"To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent'" and that the harm "'cannot be fully rectified by the final judgment after trial.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (first quoting *Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991); and then quoting *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012)).

The plaintiffs have made a clear showing that they are likely to suffer actual and imminent harm without injunctive relief. Allegations that personal information is "currently" being "obtain[ed]" or will be obtained "imminently, unless they receive injunctive relief" are sufficient to show "an ongoing or imminent injury." *See Garey*, 35 F.4th at 923. Through their allegations and the record evidence, the plaintiffs have shown that DOGE affiliates have been granted access to systems of records that contain some of the plaintiffs' most sensitive data—such as Social

---

[28] The plaintiffs have raised two other APA claims against the government: that the agencies acted arbitrarily and capriciously and in excess of their statutory authority. Because the Court finds that the plaintiffs have shown a likelihood of success on the merits of one APA claim, it need not consider the plaintiffs' likelihood of success on the other APA claims.

Security numbers, dates of birth, home addresses, bank information, income and assets, and citizenship status—and that, without an injunction, the DOGE affiliates' access to this trove of personal information will continue. In fact, the government takes the position that the DOGE affiliates' access to records containing the plaintiffs' PII is not only lawful, but it is *necessary* for them to do their jobs. *See* ECF 62, at 27 (asserting the "relevant personnel . . . have a need to access Privacy Act-protected records"). If the agencies' disclosures are not enjoined, the DOGE affiliates—whose mission to implement the DOGE Executive Order is ongoing—will access records with the plaintiffs' personal information.[29] The plaintiffs have made a clear showing that they will suffer actual and imminent harm if the Court does not order injunctive relief.

They also have made a clear showing that their harm is irreparable. The Fourth Circuit has not decided whether the continuing unlawful disclosure of sensitive personal information is irreparable harm. Other courts presented with similar questions have. Many have found that ongoing unauthorized disclosure, and even the mere unauthorized retention, of sensitive personal

---

[29] The OPM administrative record shows that some DOGE affiliates at OPM had their access to two systems of record—eOPF and EHRI—revoked prior to the Court's issuance of a TRO. *See* OPM-000023–27. However, the administrative record also shows that many OPM DOGE affiliates still have access to other OPM systems of records that house records with the plaintiffs' PII. *See* OPM-000103. And a declaration submitted by the government suggests that some DOGE affiliates still have access to eOPF and may re-gain access to EHRI in the future. *See* ECF 33-1, ¶¶ 12–14. Thus, the partial and apparently temporary revocation of access to certain OPM systems of records does not render the harm any less actual or imminent. The same goes for Education. Matteson, an Executive Project Manager, says that only one of the DOGE affiliates' user accounts had access to one of the four Education systems of records identified in the plaintiffs' complaint and that this access was "substantially limited" as he "could not access any personally identifiable information." *See* ECF 62-1, ¶ 4. However, the Court cannot ignore the February 5 memorandum from Education's CIO that granted DOGE affiliates at Education "full and prompt access to all unclassified IT systems and data," ED-000025; Ramada's declaration that "[t]he relevant employees require access to Department of Education information technology and data systems related to student loan programs in order to audit those programs for waste, fraud, and abuse," ECF 27-5, ¶ 9, or the government's assertion that the DOGE affiliates at Education "need to access to [Privacy Act-protected] records in order to audit student loan programs for waste, fraud, and abuse," ECF 62, at 27—all of which suggest that the harm to the plaintiffs is ongoing.

information is irreparable harm that money damage cannot remedy. *See, e.g.*, *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1275 (9th Cir. 1998) (finding "the retention of [the plaintiffs'] undisputedly intimate medical information [without consent] . . . would constitute a continuing 'irreparable injury' for purposes of equitable relief"); *Roberts v. Austin*, 632 F.2d 1202, 1214 (5th Cir. 1980) (finding irreparable harm from state agency's unauthorized release of food stamp recipients' files to state's attorney because "the [Food Stamp] Act and accompanying regulations give recipients statutory protection from disclosure of confidential information" and "recipients possess a legitimate expectation that the information will be kept confidential"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 802 (N.D. Cal. 2022) ("The invasion of privacy triggered by the Pixel's allegedly ongoing disclosure of plaintiffs' medical information is precisely the kind of intangible injury that cannot be remedied by damages."); *Haw. Psychiatric Soc. v. Ariyoshi*, 481 F. Supp. 1028, 1052 (D. Haw. 1979) (finding irreparable injury because "[t]he disclosure of the highly personal information contained in a psychiatrist's files to government personnel is itself a harm that is both substantial and irreversible"); *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019) ("The disclosure of private, confidential information 'is the quintessential type of irreparable harm that cannot be compensated or undone by money damages.'" (quoting *Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000))).

In *Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019), *vacated and remanded on other grounds sub nom. Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020), the Second Circuit affirmed a holding that President Trump would suffer irreparable harm if his personal financial information were disclosed to two congressional committees. Although the district court denied the preliminary injunction because President Trump had not shown a likelihood of success on the merits, the court concluded he had shown an irreparable injury if his financial information were

disclosed. *See Trump v. Deutsche Bank AG*, No. 19 Civ. 3826 (ER), 2019 WL 2204898, at *1

(S.D.N.Y. May 22, 2019); Joint Appendix at 149, *Deutsche Bank AG*, 943 F.3d 627 (No. 19-1540).

The district court reasoned that the "plaintiffs have an interest in keeping their records private from

everyone, including congresspersons, and that interest necessarily will be impinged by the records'

disclosure to the committees." *See* Joint Appendix at 125–26, *Deutsche Bank AG*, 943 F.3d 627

(No. 19-1540). It acknowledged that "some courts outside of this circuit have questioned whether

the mere disclosure of information, absent evidence of misuse or unauthorized disclosure by the

receiving party automatically constitutes irreparable injury." *See id.* at 124–25 (citing *Baker DC,

LLC v. NLRB*, 102 F. Supp. 3d 194 (D.D.C. 2015)). The court did not find those cases persuasive.

Instead, the court concluded, "that plaintiffs possess strong privacy interests in their financial

information such that unwanted disclosure may properly constitute irreparable injury, without an

additional showing of likelihood of misuse or unauthorized disclosure by the recipient." *Id.* at

125.[30]

---

[30] The court referred to a case from the U.S. District Court for the District of Columbia. In that
jurisdiction, the mere disclosure of personal information, without more, is not automatically
irreparable harm if it is expected that the recipient will keep the information confidential. In
*Ashland Oil, Inc. v. FTC*, a district court held that disclosure of a company's trade secrets to a
congressional committee would not cause irreparable injury because they did not show that their
trade secret information would be disclosed to competitors or to the public. 409 F. Supp. 297, 308
(D.D.C. 1976), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976) (per curiam). The court "presume[ed] that the
committees of Congress w[ould] exercise their powers responsibly and with due regard for the
rights of affected parties." *Id.* The D.C. Circuit affirmed. 548 F.2d at 982. Similarly, in *Baker DC,
LLC v. NLRB*, a district court concluded that no irreparable harm resulted from an agency rule
compelling an employer to divulge its employees' "names, job locations, phone numbers, and
email addresses" to a union. 102 F. Supp. 3d 194, 203 (D.D.C. 2015). The court reasoned that the
rule "place[d] explicit limits on the purposes for which employee information can be used." *Id.*
And it concluded that any risk that the union would misuse the employees' private information or
disclose it to outside individuals was speculative. *Id.* Relying on *Ashland Oil* and *Baker DC*, two
judges in the District of Columbia have denied preliminary injunctive relief in similar cases against
Treasury and Education because the plaintiffs did not establish irreparable harm. *See Univ. of Cal.
Student Ass'n*, Civ. No. 25-354 (RDM), 2025 WL 542586, at *5 (D.D.C. Feb. 17, 2025); *All. for
Retired Ams. v. Bessent*, Civ. No. 25-0313 (CKK), 2025 WL 740401, at *21 n.7 (D.D.C. Mar. 7,

In line with courts in the Second, Fifth, and Ninth Circuits, this Court finds that the ongoing disclosure of the plaintiffs' PII to government employees not authorized to access it constitutes irreparable harm. The plaintiffs have a strong interest in keeping their PII private, they have not consented to its disclosure to DOGE affiliates, and they have shown it is likely that the DOGE affiliates will continue to have and use access to records with their sensitive personal information absent an injunction. This ongoing violation of the plaintiffs' privacy interests cannot be redressed by a final judgment of money damages or by permanent injunctive relief.

Without a preliminary injunction, the DOGE affiliates' access to the plaintiffs' private information will continue. This invasion of the plaintiffs' privacy and the intrusion upon their seclusion is neither speculative nor remote; it is actual and imminent. A final judgment of money damages or a permanent injunction will not make them whole. The plaintiffs have made a clear showing that they will experience irreparable harm without an injunction.

### 3. Balance of Equities and Public Interest

The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). To balance the equities, the Court considers "the relative harms to the [plaintiffs] and [defendants], as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers) (quoting *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers)). These factors weigh in favor of a preliminary injunction.

The plaintiffs have shown that Education, OPM, and Treasury likely violated the APA by granting DOGE affiliates sweeping access to their sensitive personal information in defiance of

---

2025). *Ashland Oil* and *Baker DC* are not binding on this Court, and the Court does not find them persuasive.

the Privacy Act. "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Although the Court should not "collapse[] the first *Winter* factor—likelihood of success on the merits—with the merged balance of equities and public interest factor," *USA Farm Lab., Inc. v. Micone*, No. 23-2108, 2025 WL 586339, at \*4 (4th Cir. Feb. 24, 2025), the factors overlap here. The likely unlawful agency action concerns the privacy rights of individuals who had to give their sensitive personal information to the federal government to obtain federal benefits, student loans, or employment. They trusted the federal government to safeguard their information. That public trust likely has been breached. Preventing the government's unauthorized disclosure of the plaintiffs' sensitive personal information is in the public interest. *See CACI, Inc. – Fed. v. U.S. Navy*, 674 F. Supp. 3d 257, 279 (E.D. Va. 2023) ("There is a strong public interest in curing the effects of the government's unlawful acts.").

The government argues that preliminary injunctive relief would harm the public interest because it would "limit[] the President's ability to effectuate the policy choices the American people elected him to pursue by limiting his advisors and other employees' ability to access information necessary to inform that policy." ECF 62, at 32. A preliminary injunction in this case does not prevent the President from effectuating the administration's policies. It prevents the likely unlawful disclosure of the plaintiffs' sensitive personal information to DOGE affiliates who, on the record before the Court, do not have a need to know the information to perform their duties.

The balance of the equities and the public interest favor preliminary injunctive relief.

The plaintiffs have established that they are entitled to a preliminary injunction.

### D.  Scope of the Injunction

"[I]njunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party," but "it should not go beyond the extent of the established violation." *Hayes v. N. State Law Enforcement Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993). "Whenever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends." *S.C. Dep't of Wildlife & Marine Res. v. Marsh*, 866 F.2d 97, 100 (4th Cir. 1989) (quoting *Consol. Coal Co. v. Disabled Miners*, 442 F.2d 1261, 1267 (4th Cir. 1971)).

Here, the injury is the unauthorized disclosure of the plaintiffs' PII to DOGE affiliates at Education, OPM, and Treasury. To prevent the injury pending the outcome of this case, the Court will limit the preliminary injunctive relief to the disclosure of the PII of the individual plaintiffs and the organizational plaintiffs' members.

### III.  Conclusion

On the first day of his second term in office, President Trump signed an Executive Order directing agencies to "take all necessary steps . . .  to the maximum extent consistent with law, to ensure" people implementing his DOGE agenda have "full and prompt access to all unclassified agency records, software systems, and IT systems." DOGE Executive Order § 4(b). Following this directive, Education, OPM, and Treasury granted expansive access to their systems of record—which house the plaintiffs' PII—to individuals charged with implementing the President's DOGE Executive Order. In doing so, the agencies likely violated the Privacy Act and the APA.

Enacted 50 years ago, the Privacy Act protects from unauthorized disclosure the massive amounts of personal information that the federal government collects from large swaths of the public. Congress's concern back then was that "every detail of our personal lives can be assembled

instantly for use by a single bureaucrat or institution" and that "a bureaucrat in Washington or Chicago or Los Angeles can use his organization's computer facilities to assemble a complete dossier of all known information about an individual." *See* Danielle Keats Citron, *A More Perfect Privacy*, 104 B.U. L. Rev. 1073, 1078 (2024) (first quoting 120 Cong. Rec. 36,917 (1974) (statement of Sen. Goldwater); and then quoting 120 Cong. Rec. 36,917 (statement of Sen. Percy)). Those concerns are just as salient today. No matter how important or urgent the President's DOGE agenda may be, federal agencies must execute it in accordance with the law. That likely did not happen in this case. The plaintiffs' motion for a preliminary injunction is granted. A separate order follows.

Date: March 24, 2025

Deborah L. Boardman
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## <u>FOR THE DISTRICT OF MARYLAND</u>

| | | |
|---|---|---|
| **AMERICAN FEDERATION OF TEACHERS,** *et al.,* | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civ. No. DLB-25-0430** |
| | * | |
| **SCOTT BESSENT,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |

## <u>ORDER</u>

For the reasons stated in the accompanying Memorandum Opinion issued today, it is this

24th day of March, 2025 hereby ORDERED:

1.  The plaintiffs' motion for a preliminary injunction, ECF 59, is GRANTED as
    follows:

    a.  The U.S. Department of Education ("Education"); Denise L. Carter, the
        Acting Secretary of Education; and their officers, agents, servants,
        employees, and attorneys are ENJOINED from disclosing the personally
        identifiable information of the plaintiffs and the members of the plaintiff
        organizations to any DOGE affiliates, defined as individuals whose
        principal role is to implement the DOGE agenda as described in Executive
        Order 14,158 and who were granted access to agency systems of records for
        the principal purpose of implementing that agenda;

    b.  The Office of Personnel Management ("OPM"); Charles Ezell, the Acting
        Director of OPM; and their officers, agents, servants, employees, and

attorneys are ENJOINED from disclosing the personally identifiable information of the plaintiffs and the members of the plaintiff organizations to any DOGE affiliates, defined as individuals whose principal role is to implement the DOGE agenda as described in Executive Order 14,158 and who were granted access to agency systems of records for the principal purpose of implementing that agenda (DOGE affiliates does not include OPM Acting Director Ezell, Chief Information Officer Greg Hogan, and Chief of Staff Amanda Scales); and

c.      The U.S. Department of the Treasury ("Treasury"); Scott Bessent, the Secretary of the Treasury; and their officers, agents, servants, employees, and attorneys are ENJOINED from disclosing the personally identifiable information of the plaintiffs and the members of the plaintiff organizations to DOGE affiliates, defined as individuals whose principal role is to implement the DOGE agenda as described in Executive Order 14,158 and who were granted access to agency systems of records for the principal purpose of implementing that agenda (DOGE affiliates includes Thomas Krause and Ryan Wunderly);

2.    The plaintiffs' motion for extra-record discovery, ECF 53, is DENIED without prejudice;

3.    The plaintiffs' security of $10,000, which was posted on March 3, 2025, must remain in the Court registry until further order of the Court; and

4.    The parties shall meet and confer to discuss whether the government intends to file

a notice of appeal or whether the Court should enter a scheduling order. The parties

shall file a joint status report on these matters by 5:00 p.m. on March 31, 2025.


_____

Deborah L. Boardman
United States District Judge

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

|  |  |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT BESSENT, *et al.*, <br><br> Defendants. | Case No. 8:25-cv-430-DLB |

## NOTICE OF APPEAL

Defendants in the above-captioned case, Scott Bessent, in his official capacity as Secretary of the Treasury; the United States Department of the Treasury; Charles Ezell, in his official capacity as Acting Director of the Office of Personnel Management; the United States Office of Personnel Management; Linda McMahon, in her official capacity as Secretary of Education;[1] and the United States Department of Education hereby give notice that they appeal to the United States Court of Appeals for the Fourth Circuit from all aspects of this Court's Preliminary Injunction and accompanying Memorandum Opinion entered on March 24, 2025.  *See* ECF Nos. 68, 69.

Dated:  March 24, 2025

Respectfully submitted

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division, Federal Programs Branch

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), former Acting Secretary Denise Carter is substituted for Secretary McMahon.

JA727

EMILY HALL
Counsel to the Assistant Attorney General
Civil Division

 */s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street NW. Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov
Kelly O. Hayes
Interim United States Attorney

Kelly O. Hayes
Interim United States Attorney

ARIANA WRIGHT ARNOLD
USDC Md Bar No. 23000
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
Telephone: (410) 209-4813 Ph
Facsimile: (410) 962-2310 Fax
Ariana.Arnold@usdoj.gov

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

 */s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                      SOUTHERN DIVISION
_____
                                )
AMERICAN FEDERATION OF          )
TEACHERS, et al.,               )
                                )
                Plaintiffs,     )
                                )
     v.                         )  Case No. 8:25-cv-00430-DLB
                                )
SCOTT BESSENT, in his official  )
capacity as Secretary of the    )
Treasury, et al.,               )
                                )
                Defendants.     )
_____ )

                                Greenbelt, Maryland
                                March 17, 2025
                                10:35 a.m.


               PRELIMINARY INJUNCTION HEARING
          BEFORE THE HONORABLE DEBORAH L. BOARDMAN
                United States District Judge


                    A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

     MUNGER, TOLLES & OLSON LLP
     601 Massachusetts Avenue, N.W., Suite 500 E
     Washington, D.C.  20001
     BY:  XIAONAN APRIL HU, ESQUIRE
          (202) 220-1123
          april.hu@mto.com

                      (Continued)



                    Patricia Klepp, RMR
                 Federal Official Court Reporter
                 6500 Cherrywood Lane, Suite 200
                   Greenbelt, Maryland  20770
                        (301) 344-3228
```

Produced by Stenographic Computer-Aided Transcription

```
 1              A P P E A R A N C E S (Cont'd)

 2   ON BEHALF OF THE PLAINTIFFS: (Continued)

 3         MUNGER, TOLLES & OLSON LLP
           560 Mission Street, 27th Floor
 4         San Francisco, California  94105
           BY:  CARSON J. SCOTT, ESQUIRE
 5              (415) 512-4000
                carson.scott@mto.com
 6
           MURPHY ANDERSON PLLC
 7         1401 K Street, N.W., Suite 300
           Washington, D.C.  20005
 8         BY:  DAVID J. RODWIN, ESQUIRE
                (202) 531-7767
 9              drodwin@murphy.pllc.com

10   ON BEHALF OF THE DEFENDANTS:

11         UNITED STATES DEPARTMENT OF JUSTICE
           Civil Division, Federal Programs Branch
12         1100 L Street, N.W.
           Washington, D.C.  20005
13         BY:  BRADLEY PHILIP HUMPHREYS, SENIOR TRIAL ATTORNEY
                (202) 305-0878
14              bradley.humphreys@usdoj.gov

15         UNITED STATES DEPARTMENT OF JUSTICE
           Civil Division, Federal Programs Branch
16         Poc Agostinho, Jean
           1100 L Street, N.W., Suite 8142
17         Washington, D.C.  20530
           BY:  ELIZABETH J. SHAPIRO, DEPUTY DIRECTOR
18              (202) 307-0340
                elizabeth.shapiro@usdoj.gov
19
           UNITED STATES ATTORNEY'S OFFICE
20         36 S. Charles Street, 4th Floor
           Baltimore, Maryland  21201
21         BY:  ARIANA WRIGHT ARNOLD, ASSISTANT U.S. ATTORNEY
                (410) 209-4813
22              ariana.arnold@usdoj.gov

23   ALSO PRESENT:

24         JONATHAN KRAVIS, ESQUIRE

25
```

<u>P R O C E E D I N G S</u>

1

2      (Call to order of the Court.)

3           THE COURTROOM DEPUTY:  All rise.  The United States

4   District Court for the District of Maryland is now in session,

5   the Honorable Deborah L. Boardman presiding.

6           THE COURT:  All right.  Good morning, everyone.

7   Please be seated.

8           THE COURTROOM DEPUTY:  Good morning, Your Honor.

9           The matter now pending before the Court is Civil

10  Action No. DLB 25-430, the American Federation of Teachers,

11  et al. v. Scott Bessent, et al.  The matter comes before this

12  Court for a preliminary injunction hearing.

13          Counsel, please identify yourselves for the record.

14          MS. HU:  Good morning, Your Honor.

15          Xiaonan April Hu from Munger, Tolles & Olson on behalf

16  of Plaintiffs.  I'm joined here at counsel table by my

17  colleagues, Carson Scott and Jonathan Kravis.  Mr. Kravis will

18  be entering a pro hac application later today.  And then I'm

19  also joined at counsel table today by Dave Rodwin from Murphy

20  Anderson.

21          THE COURT:  All right.  Good morning to all of you.

22          MR. HUMPHREYS:  Good morning, Your Honor.

23          Bradley Humphreys of the United States Department of

24  Justice on behalf of Defendants.  I have with me at counsel

25  table Elizabeth Shapiro of the Department of Justice in the

```
 1   Civil Division and Ariana Arnold of the United States Attorney's
 2   Office.
 3             THE COURT:  All right.  Make sure everyone speaks
 4   closely, and clearly, and slowly into the microphone.
 5             Where did your colleague go?  She was delightful.
 6             MR. HUMPHREYS:  She has other responsibilities,
 7   Your Honor.  I have taken over handling the case primarily.
 8             THE COURT:  She has other work to do?
 9             MR. HUMPHREYS:  Yes, Your Honor.
10             THE COURT:  All right, okay.
11             Okay.  All right.  I've read all of the briefing on
12   the preliminary injunction.  I've also read the parties'
13   motion -- or excuse me, the plaintiff's request for extra-record
14   evidence.  Obviously, we'll have no evidence today, there will
15   be no testimony.  I do want to start with that point and talk to
16   the government.
17             Mr. Humphreys, the way I read your submissions, you
18   basically state explicitly that my review or my consideration of
19   the likelihood of success on the merits is limited to the
20   administrative record -- records, I should say, that the
21   government has produced.  Is that accurate?
22             MR. HUMPHREYS:  Yes, Your Honor.  I would caveat
23   one -- one clarification, that I think some of the declarations
24   that are before --
25             THE COURT:  Make sure you -- move the microphone
```

1    closer to you, please.

2           MR. HUMPHREYS:  Yes, Your Honor.  Thank you.

3           Some of the declarations do provide explanatory

4    material that we think the Court can consider, but we think that

5    everything before the Court is --

6           THE COURT:  I don't think you can have it both ways,

7    okay?  We talked about this -- you weren't here last time, but

8    I think -- you can either -- your position can either be, it's

9    the administrative record, our case at this stage rises and

10   falls on that, which is how I read your response to the

11   plaintiffs' request for discovery.  That's how I read your

12   response.  Is that correct?

13          MR. HUMPHREYS:  That's correct, Your Honor.

14          THE COURT:  So if you're also telling me, no, you can

15   also consider these arguably self-serving affidavits of

16   individuals who have not presented themselves here, I don't

17   think that's fair, I don't think the government can do that.

18          If you want to rely on those affidavits to show the

19   plaintiffs have not proven likelihood of success on the merits,

20   we need to have them here in court.

21          So how would you like to proceed?

22          MR. HUMPHREYS:  On the record, Your Honor.

23          THE COURT:  Okay.

24          Let me pause and go to Plaintiffs' counsel.

25          Ms. Hu, right now, I will be determining whether or

JA734

```
 1   not you have established a likelihood of success on the merits
 2   of your APA claim based on the administrative records that had
 3   been produced.  They were produced in two productions, one on
 4   March 7th, one on March 15th.  Is that your understanding, and
 5   are you fine with that?
 6            MS. HU:  That is my understanding of the government's
 7   position.  I think, Your Honor, we have serious concerns with
 8   that, in part because the second tranche of records was produced
 9   after we had our reply due, so we had no opportunity to address
10   this in our briefing.
11            We think there are inconsistencies between the
12   supplemental record and the record that was produced a week ago,
13   and so we feel that the record is deficient.  I mean, I think we
14   are unfortunately left in this position because of what the
15   government has done, but I -- I think we would register that we
16   have serious concerns about the fairness to us.
17            THE COURT:  So what I'm hearing as your concern is
18   not, Judge, we need extra-record evidence; what I'm hearing is,
19   Judge, it was unfair that the government produced the
20   administrative record on March 7th and then supplemented so
21   late, and we haven't had an opportunity to address the
22   supplementation.  Is that what I'm hearing?
23            MS. HU:  No, Your Honor.  We believe that we are
24   entitled to extra-record discovery.  The problem is that we will
25   not be able to obtain that extra-record discovery before the TRO
```

1   expires.

2         THE COURT:  All right, okay.  I -- any request for

3   extra-record discovery for purposes of the PI motion is denied.

4   We will table any request for extra-record discovery after the

5   resolution of the PI, okay?

6         MS. HU:  Understood, Your Honor.

7         THE COURT:  All right.  So just for the record, I am

8   confining my analysis for purposes of the preliminary injunction

9   and, in particular, the likelihood of success on the merits to

10  the administrative record, okay?  All right.

11        Okay.  Ms. Hu, it's your motion.  I will hear from

12  you.  I will -- I don't need a rehash of the arguments in your

13  briefs, but I'm happy to hear from you.

14        I think, some of the things I'd like to hear from you

15  are on whether or not there's a final agency action and

16  addressing, of course, the need-to-know exception and whether or

17  not the administrative record supports your position that these

18  DOGE affiliates, as I defined that term in the TRO, whether

19  these DOGE affiliates at Treasury, OPM, and Education have a

20  need to know the information in the systems of records that

21  they've been granted access to, okay?  So I'll hear from you.

22        MS. HU:  Your Honor, since there is a significant

23  volume of paper, I have prepared a binder with some tabs to help

24  guide our discussion today that I may reference; permission to

25  approach with a copy of this binder -- opposing counsel has a

```
 1   copy as well; I handed it to them before the proceedings began.
 2            THE COURT:  All right.  I'm drowning in binders up
 3   here, but yes, you may approach and give me another binder, if
 4   it's helpful.  Thank you.
 5            Oh, nice green suit.  All right.  Happy
 6   St. Patrick's Day, everyone.  Nice tie.  All right.
 7            Okay.
 8            MS. HU:  Good morning, Your Honor.
 9            Three weeks ago, this Court issued a temporary
10   restraining order against Defendants, prohibiting
11   DOGE-affiliates from accessing Plaintiffs' personally
12   identifiable information.  The Court did so because Defendants
13   could not answer why these affiliates needed to know that
14   information, which the Privacy Act requires.
15            Nothing Defendants have produced since then has been
16   able to answer that question.  Not only that, it is clear from
17   the changing facts, stories, and documents that Defendants'
18   decisions to grant DOGE affiliates access was arbitrary and
19   capricious and should be additionally enjoined on that basis.
20            Your Honor, I know you've set aside a discussion of
21   extra-record discovery following the preliminary injunction
22   proceedings, so I will not address that right now.
23            THE COURT:  Thank you.
24            MS. HU:  But I do want to direct the Court's attention
25   to the administrative records produced by Defendants on
```

1  Saturday, which appear to show that OPM violated the temporary

2  restraining order.

3        So the access sheets filed after midnight on

4  Saturday -- and if Your Honor would like, this would be tab 1 of

5  your binder.  And for the court reporter, this would be ECF 64-1

6  at 18.

7        The access table, for the first highlighted entry,

8  reflects that Amanda Scales, whom Defendants have represented is

9  likely a DOGE affiliate within the meaning of the Court's order,

10 accessed one of those systems within OPM on February 28th, 2025.

11 That is four days after the Court's temporary restraining order.

12       This record also reflects that there is no date listed

13 for when access was removed.  The same is true -- namely, that

14 there is no date removed identified -- for a host of the

15 OPM employees, I believe 12 of whom are new and -- newly

16 revealed from the government's production on Saturday.

17       I would also note, Your Honor, that this access sheet

18 has irregularities.  So the second highlighted entry for OPM-7

19 reflects that the date created for access was January 20th,

20 2025, but the last date of access, the last login, is reflected

21 as November 7th, 2024.  Now, obviously, that is not possible.

22       So given the state of the access sheet that has been

23 provided, we have serious concerns, Plaintiffs have serious

24 concerns that Defendant OPM has not been adhering to the

25 restraining order conditions.  We just wanted to identify that

1   for Your Honor as an area that we would like to see addressed

2   today.

3          I'm happy to speak more to this, or I'm happy to move

4   on to the topics that Your Honor has identified.

5          THE COURT:  Let's move on.  Thank you.

6          MS. HU:  Okay.

7          I believe the first topic that Your Honor expressed an

8   interest in is final agency action.  We believe that the Court

9   correctly held at the temporary restraining order proceedings

10  that Defendants' decisions to disclose were final agency

11  actions, and we believe that the record, the administrative

12  record, confirms that is the case.

13         The record includes, for example, a memorandum for the

14  Department of Education that expressly authorizes all access to

15  IT systems for DOGE affiliates.  It purports to set out the need

16  to know by referencing the Executive Order.

17         The same thing is true for the Department of Treasury;

18  there is, again, documentation that expresses access should be

19  granted as part of an engagement or work plan, a four- to

20  six-week plan, a policy.  And I would note that this policy was

21  addressed by the SDNY Court separately and considered sufficient

22  to establish final agency action.

23         In OPM, we see that there is an email that authorizes,

24  again, access for a range of OPM DOGE affiliates.

25         In all of these cases, by the way, it appears that

1    access was granted before -- for at least some individuals or

2    DOGE affiliates before the documentation was written, or

3    authored, or created, and that, I think, again, gets at some of

4    the deficiencies of the record.

5             But on the record we have, we think it is quite clear

6    that these were final agency actions that concretely determined

7    Plaintiffs' rights and consummated the agency's decision-making

8    process.

9             And Your Honor, we address this in the brief, so I

10   will not belabor the point, but in many FOIA cases, for example,

11   that are brought under the APA, Courts are aligned in concluding

12   that the decision by the agency to disclose is a final agency

13   action that is reviewable.

14            And I would also point out, Your Honor, that many of

15   the cases Defendants cite in their brief for the notion that

16   this was not an agency action at all actually undermine their

17   position.  All of those cases made clear that agency action is

18   intended to sweep broadly, it is intended to be interpreted

19   broadly, and there is no indication here that agency action

20   could not mean what Defendants did as a matter of policy in

21   deciding to grant DOGE affiliates access.

22            THE COURT:  Okay.

23            MS. HU:  So I think, moving on, now, to the need to

24   know, we think Your Honor articulated the standard exactly

25   correctly at the temporary retraining order stage, and I think,

1    when we apply that standard and look at the records that have

2    been produced, the administrative records that have been

3    produced, it is clear that there has not been a need to know.

4            So I'm happy to start first with Education.  And

5    Your Honor --

6            THE COURT:  Let's go in alphabetical order.

7            MS. HU:  Yes.  This goes in alphabetical order; we go

8    Education, OPM, and then Treasury.

9            So Your Honor, if I could direct your attention to

10   tab 2.  This would be, for the court reporter's ease of

11   reference, ECF 51-3 at 29.

12           This is a copy of the February 5th memorandum that was

13   issued by Thomas Flagg, titled, Access to All ED IT Systems by

14   the United States DOGE Service.  This is a half-page memorandum,

15   and all it does is recite the Executive Order and rely on the

16   Executive Order for need to know.

17           This Court has already determined that that

18   Executive Order is insufficient basis to justify a need to know.

19   And we believe that the Court was correct then and remains

20   correct now, and Defendants have not identified any intervening

21   evidence that would undermine the soundness of that conclusion.

22           I would also point out that we think it is quite

23   telling, in the government's briefing of the need-to-know

24   argument, they did not cite even once to the administrative

25   record that they produced.  I think the half-page memorandum

1    from the Department of Education illustrates why that is so.

2           If Your Honor has no questions about that half-page

3    memorandum, I am happy to move on.

4           THE COURT:  No, I am familiar with the memorandum.

5           MS. HU:  So next up, we have ECF 51-1.  This is the

6    OPM email chain, ordering access.  It's a long email chain, we

7    have included the full record here for completeness' sake, but

8    the real page that I would be referencing here is the last two

9    pages.

10          On Monday, January 27th, Acting Director Ezell wrote,

11   Subject matter:  Getting DoGE Engineers access.  We are rapidly

12   ramping up some engineers here.  To accomplish this goal of

13   ramping up engineers, the engineers need the following items

14   urgently, and it orders sweeping access:  Code read and write

15   permissions, monitoring dashboards, documentation, so on and so

16   forth, ability to access the system as an admin user.

17          But critically, in this email, ordering that access be

18   granted, Acting Director Ezell states, We don't have immediate

19   plans to change anything.  If we need to, we might need to move

20   quickly.

21          That is not need to know, Your Honor.  That is, maybe

22   we will need this some day, and we might as well give all of the

23   DOGE affiliate access to our systems, admin, read-write,

24   everything, because maybe we'll need it one day.  That is not

25   need to know; that is the opposite of need to know.

```
1              THE COURT:  If I recall correctly, in the TRO, the
2    United States took the position that OPM DOGE affiliates needed
3    access to these systems to implement the President's Workforce
4    Optimization Initiative Executive Order.  That was dated
5    February 11th, but this email from Acting Director -- is it
6    Ezell, Ezell?
7              MS. HU:  I'm actually not sure, Your Honor; I
8    apologize.
9              THE COURT:  The government lawyers look like they
10   don't know either.  How do we pronounce this gentleman's name?
11             MR. HUMPHREYS:  Let's go with Ezell, Your Honor.
12             THE COURT:  Ezell?  Okay, all right.
13             But his email is January 7th.  That's two weeks before
14   the Executive Order on workforce optimization.  Okay.
15             MS. HU:  That is correct, Your Honor, that is
16   two weeks before January 27th, and I would note, actually, at
17   the bottom of this email, he notes that prior to him sending out
18   this email, two OPM DOGE affiliates had already been granted
19   access, and that is not explained in the record.
20             THE COURT:  Okay.
21             MS. HU:  If Your Honor has no questions on OPM, I will
22   turn now to Treasury.
23             So we flip to the next page.  This is ECF 51 --
24             THE COURT:  Well, let me back up to --
25             MS. HU:  Certainly.
```

```
1          THE COURT:  -- OPM.  Maybe you already said it, but
2    just maybe say it again.
3          So I understand what you are identifying as the basis
4    of the OPM policy granting access.  What is your position on
5    need to know with respect to the job duties that are identified
6    in the administrative record for OPM DOGE people?
7          MS. HU:  Your Honor, I don't think that the job duties
8    here do the job, in part, because I think more than half, now,
9    if you account for the 18 OPM employees that have been
10   identified as of Saturday past midnight, more than half of them
11   do not have any documentation in the administrative record about
12   what their duties are or what their job responsibilities are.
13   Those were not included.
14          I think we identified in our discovery brief that of
15   the original six, I think OPM-1 is technically Mr. Hogan, but of
16   the remaining five, I believe two or three of them also do not
17   have their HR forms within the administrative record that
18   identify what their job duties are, and the other two are
19   identified at a very high-level of generality.
20          So I do not believe that there is any basis to
21   conclude that they have a need to know the personally
22   identifiable information of Plaintiffs or any of the other
23   Americans whose information is stored within these systems.
24          THE COURT:  Okay.
25          MS. HU:  I think if we turn to the next page, after
```

1    the last page of the OPM email chain, that takes us to ECF 51-2,

2    at page 63.  This is the payment process engagement plan.  This

3    document is three pages long; I'm not going to go through this

4    page by page, but I think what is important to identify here is

5    that throughout -- the plan states that source code -- that

6    Mr. Ezelllez should be given access to the source code to

7    understand the payment systems and to modernize or suggest

8    efficiencies for the payment systems at Treasury.

9            It does not address anywhere in here why Mr. Elez

10   needs to know personally identifiable information.  It also does

11   not address why Treasury did not consider or did not propose

12   using what it typically does for its systems, such as the secure

13   payment system, applying redactions for full Social Security

14   numbers and other sensitive personally identifiable information.

15   There is no discussion in this plan whatsoever of Mr. Elez's

16   need to know the specific information at issue in this case.

17           THE COURT:  What about Mr. Krause?

18           MS. HU:  Mr. Krause?  I appreciate Your Honor's

19   question here.  I would like to turn next to the next page.

20   This is ECF 51-2 at 21.  It is the expert and consultant request

21   form for Mr. Krause.

22           Briefly, before I dive into this --

23           THE COURT:  Hold on, hold on.

24           MS. HU:  Yes.

25           THE COURT:  Let me make sure I know where we are.

1          Okay, I'm there.

2          MS. HU:  Okay.  Briefly, before I discuss this

3    document, I will note that Mr. Krause is mentioned in even less

4    detail in that engagement plan.  The engagement plan focuses on

5    the technical -- only one technical engineer from DOGE and talks

6    about the level of access required for that engineer.

7          It does not really discuss Mr. Krause's need to know

8    any of the personally identifiable information, and I think as

9    we point out in our briefing, it does not acknowledge that

10   Mr. Krause even requested or sought, much less needed

11   over-the-shoulder access; that's not explained anywhere in the

12   Treasury's administrative record.

13         THE COURT:  For Mr. Elez, my understanding is, he's

14   been -- he resigned.  I don't know if he was fired.  He's no

15   longer at Treasury.

16         MS. HU:  That's correct.

17         THE COURT:  I also -- I think I understand from

18   declarations or perhaps representations from the government in

19   their papers that there's a Ryan Wunderly who's been hired to

20   replace Mr. Elez; is that correct?

21         MS. HU:  That is correct.

22         THE COURT:  So what do I do about the fact that Elez

23   is gone, Wunderly is apparently waiting to see what happens in

24   this case and perhaps in the case in the Southern District of

25   New York?

1          MS. HU:  I think here, there is no basis to conclude

2    that Mr. Wunderly would have a need to know, because none of his

3    records are in the administrative record.

4          And so I think here, what we would say is, perhaps the

5    government might advance the argument that because Mr. Elez has

6    resigned, there is no longer any threat of imminent harm to

7    Plaintiffs.

8          We would point to the fact that they have lined up

9    Mr. Wunderly and apparently several other DOGE affiliates within

10   Treasury to take over the role of accessing these systems as a

11   clear example of how the harm is still imminent and the

12   government intends to restore access to DOGE affiliates or grant

13   access to new DOGE affiliates the moment this Court's temporary

14   restraining order -- I'm sorry, preliminary injunction order, to

15   the extent it's granted, or the Southern District of New York's

16   preliminary injunction order, to the extent it's lifted, the

17   moment these restrictions cease to exist, the government has

18   clearly indicated its intent to resume its activities, which we

19   view as unlawful and profoundly harmful to our clients.

20          THE COURT:  Okay.

21          MS. HU:  Apologize for the detour, Your Honor.

22          On 51-2, which sets forth Mr. Krause's

23   responsibilities, the highlighted language here responds to the

24   question, Explain in full the services to be performed, and it

25   states, This position leads IT modernization efforts by

1  implementing emerging technologies, such as AI, blockchain, and

2  cloud computing.

3          There is no explanation why implementing AI,

4  blockchain, or cloud computing services requires Mr. Krause to

5  know and access anyone's personally identifiable information

6  contained within these systems.  And again, there is no

7  indication in the record that Treasury ever considered what it

8  normally does, which is whether it can provide access to these

9  systems, redacting the personally identifiable information

10  contained within.

11          THE COURT:  Okay.

12          MS. HU:  I think, Your Honor, if there's interest, I

13  am happy to address arbitrary and capricious.

14          THE COURT:  Sure.

15          MS. HU:  Okay.

16          So Your Honor, I think, on arbitrary and capricious,

17  there are two ways that the government defendants here have

18  failed to consider relevant and important factors as part of the

19  decision to grant access.

20          The first, of course, as is reflected in these

21  documents, is that there was really no consideration given to

22  whether these employees or these DOGE affiliates needed to have

23  access to the records.  So there was no consideration of an

24  important statutory requirement that has been placed on

25  Defendants.

1        The second piece that we do not believe was fully

2  considered or considered at all, honestly, by Defendants is the

3  risk posed by granting access, the insider threat risk and the

4  informational security risks posed by granting DOGE affiliates

5  access.  In the documents that we just reviewed, there is no

6  mention about the IT security risks posed by granting sweeping

7  access to their systems.

8        And in fact, I think we have evidence here that the

9  security -- the lax security measures here worked significant

10  negative effects.  So Your Honor, if I could direct your

11  attention to tab 3 of your binder.

12        The first document is ECF 51-3, page 26.  This is a

13  waiver of a background investigation requirement for appointment

14  to a high-risk public trust position for ED-4, who had access --

15  at least so far as the administrative record tells us, had

16  access to Education's systems of record and the PII contained

17  within.

18        The next page, 51-2, at page 33, reflects that

19  Marko Elez, Mr. Elez, who received access to Treasury systems

20  and the PII contained within, was granted only interim approval

21  to enter on duty.  Final approval, it notes, is contingent on a

22  completed background investigation and a favorable adjudication.

23  There is no evidence in the record that Mr. Elez ever passed a

24  full background investigation before accessing PII contained in

25  Treasury systems.

1          Why does this matter?  I think this matters because if

2     we look at the next document, ECF 64-2 -- which I recognize is a

3     declaration; I'm not saying that the Court should look to it as

4     part of deciding arbitrary and capricious, but I think it is

5     just to identify an effect of the arbitrary and capricious

6     agency action here.

7          On page 27, paragraph 12, this declaration from

8     Mr. Ambrose notes, The forensic analysis revealed that Elez sent

9     an email with a spreadsheet containing PII to two United States

10    General Services Administration officials.  Elez's distribution

11    of this spreadsheet was contrary to BFS policies.  It was not

12    sent encrypted.  He did not obtain prior approval for the

13    transmission.

14         Your Honor, agencies safeguard data for a reason.

15    These are personally sensitive information belonging to millions

16    of Americans in the country, including our clients.  The

17    safeguards that were in place were not followed here.  The

18    agencies did not consider the security risks posed by their

19    decisions to grant sweeping access.  That is arbitrary and

20    capricious.  It was an important factor, and they should have

21    considered it.

22         And I would add, finally, to this, of course, there

23    has been public reporting about an insider threat report that

24    was prepared within the Bureau of financial services -- or

25    Fiscal services, that identified serious risks with giving

1  DOGE affiliates access to Treasury systems.  The government has

2  now affirmatively declared, they did not consider that; they did

3  not consider the risks identified in that report.

4       THE COURT:  So does this argument apply only to

5  Treasury or to OPM and Education?

6       MS. HU:  It applies to all three agencies, Your Honor.

7  And I believe the reason for this is because the records for OPM

8  and Education reflect no consideration of the informational

9  security risks, no discussion of insider threat risks, at all.

10  And in fact, in many instances, we are missing signed copies of

11  the training sheets that employees are supposed to fill, and

12  sign, and review before they have access to these systems.

13       THE COURT:  Is the standing analysis the same for the

14  arbitrary and capricious claim?

15       MS. HU:  Your Honor, I think so, because the effect

16  here of the agencies' arbitrary and capricious decision-making

17  was to disclose personally identifiable information.

18       I think there could be an additional element, which is

19  what the SDNY court acknowledged, which is the increased risk of

20  misuse and further dissemination of plaintiffs' PII, and we

21  think that that is certainly manifesting here.

22       THE COURT:  I think it's trickier than maybe we've

23  assumed all along, meaning, the standing question for the

24  arbitrary and capricious claim; I'm not sure it's been briefed

25  separately, but okay.

```
 1              MS. HU:  Your Honor, it's not been briefed separately,
 2    I would agree.
 3              THE COURT:  Okay.
 4              MS. HU:  If Your Honor has no further questions for
 5    me, I think we would stand on our briefs.
 6              THE COURT:  Let's talk about irreparable harm.
 7              MS. HU:  Sure.
 8              THE COURT:  Other judges in similar cases in Virginia
 9    and D.C. have found no irreparable harm.  I found that at least
10    at the TRO stage, there is irreparable harm, because this is
11    allegedly an ongoing invasion of privacy.  The access granted to
12    DOGE affiliates, which I found at least at the TRO stage, was in
13    violation of the Privacy Act, because they had not established a
14    need to know.  I found that that was an ongoing invasion of the
15    plaintiffs' privacy and personal information, and therefore, the
16    only thing that could remedy it is an injunction; money damages
17    could not.  Other judges have disagreed.  Tell me why, if I
18    continue in my position, the Fourth Circuit won't reverse me.
19              MS. HU:  Certainly, Your Honor.  I think, first and
20    foremost, two of those decisions came out of the District --
21    U.S. District Court for the District of Columbia, and there,
22    most recently, one of the judges identified that D.D.C. has a
23    line of cases, including from the D.C. Circuit, I believe, that
24    specifically note just nonpublic disclosure, so still
25    unauthorized disclosure of personal information, but it's -- not
```

1    to the general public is not irreparable harm.  So I think they
2    were forced to conclude under that line of cases that there was
3    not irreparable harm.
4         Those cases, obviously, are not binding here, and
5    Your Honor correctly identified at the temporary restraining
6    stage in the Court's order that actually, there are many cases
7    across the country that have concluded from other circuits, from
8    other district courts -- the Ninth and the Fifth Circuit are
9    examples -- where disclosure even to government employees or
10   government agents that is nonpublic disclosure is nonetheless
11   irreparable harm.  We think the Court got it exactly right on
12   those grounds, and we think that the D.D.C. cases are
13   distinguishable for that reason.
14        The Eastern District of Virginia case, which concluded
15   there was no irreparable harm, never confronted the question
16   that this Court did, which is whether the disclosure of
17   personal, highly sensitive information, the intrusion upon that
18   information by unauthorized government actors, qualified as
19   irreparable harm.  The Eastern District of Virginia addressed
20   only whether it was unduly speculative or too speculative that
21   there would be a risk of identity fraud or theft.  That is
22   obviously different; we do not think that that changes what the
23   Court decided.
24        We would also direct the Court's attention to a
25   decision from the Second Circuit, I believe, issued in 2019,

1    where President Trump made the argument that the disclosure of

2    his financial information subpoenaed by Congress from his banks

3    would cause irreparable harm, even though the disclosure would

4    not be public, it would be just to members of Congress, and the

5    District Court --

6            THE COURT:  Can you give me that --

7            MS. HU:  Yes, I will find you the cite.  This is

8    Trump v. Deutsche Bank AG, 943 F.3d 627.  The pin cite there is

9    637, and this is the Second Circuit, a 2019 decision.

10           THE COURT:  So what I heard you say is that

11   President Trump made that argument.  Did the Second Circuit buy

12   it?

13           MS. HU:  Correct, the District Court bought it, and

14   the Second Circuit did not revisit that determination on appeal.

15           THE COURT:  Okay.

16           MS. HU:  And so we think -- Your Honor, we think that

17   you got it exactly right the first time, and we do not believe

18   that Defendants have identified any intervening developments in

19   the law that would alter that conclusion.

20           THE COURT:  The nature of the injunctive relief here

21   would be to stop the unauthorized access.  What are other forms

22   of injunctive relief that a plaintiff could seek as a violation

23   of the Privacy Act or through an APA claim?  I'm trying to

24   figure out the world of the type of injunctive relief that's out

25   there other than the injunctive relief requested here.

1          MS. HU:  I think that perhaps what you could have at

2     the end state would be, to the extent any of these employees who

3     had unauthorized access made copies, held onto them, you could

4     have an injunction that orders the destruction of those copies,

5     or you could order Defendant agencies to retrieve copies of that

6     information.

7          THE COURT:  Which you had initially requested.

8          MS. HU:  Which I had initially requested, Your Honor,

9     but right now, the focus is on prohibiting additional access.

10         THE COURT:  I'm just trying to reconcile -- the

11    Fourth Circuit has allowed APA claims for injunctive relief for

12    violation of the Privacy Act.  How can I square that with the

13    defendants' position, which is, there is no irreparable harm

14    here, even though there's an alleged ongoing investigation of

15    privacy?

16         MS. HU:  I don't think that an injunction at the final

17    end of litigation proceedings that says, okay, you can --

18    there's been no irreparable harm, we'll just destroy these

19    copies that they've had is going to cut it.  In the entire

20    interim, however many months it may take for this case to be

21    resolved, the irreparable harm would be the continued access of

22    that information and the use and potential misuse of that

23    information.

24         The intrusion upon our plaintiffs' seclusion here is

25    ongoing.  The fact that at the very end, there may be a

1  permanent injunction that orders destruction of those copies is

2  not going to correct for the harms that have been happening

3  since the disclosure was authorized.

4        THE COURT:  Well, since you brought up intrusion upon

5  seclusion, the government claims a few things regarding

6  intrusion upon seclusion, and I look forward to talking to

7  Mr. Humphreys about this in a few minutes.

8        One of the government's arguments is that there's no

9  intrusion upon seclusion because the administrative record

10  doesn't indicate that the plaintiffs' PII, or, frankly, anyone's

11  PII has actually been viewed, in other words, that

12  DOGE affiliate eyes have set on a Social Security number, or a

13  date of birth, or banking information.

14        What do I make of that with respect to your position

15  on standing?

16        MS. HU:  Two points, Your Honor.

17        The first is that we have alleged in the complaint,

18  based on credible news reporting, that there has been some

19  disclosure of PII already to DOGE affiliates as part of their

20  work.

21        The second piece of this is that there is information

22  already here, including within Education, that access to all of

23  Education's systems are authorized.

24        And so I don't think there has been any indication in

25  the administrative record that somehow, the access will stop at

1  PII, that no one is going to view this.  I think we can actually

2  infer the opposite, because these agencies have the ability to

3  redact the PII and did not opt for that.  What would be the

4  purpose behind that, if not to enable these DOGE affiliates to

5  view that data?

6        And then the third point I would make, Your Honor, is

7  that the government has stonewalled any attempt Plaintiffs have

8  made to understand how that data is being accessed.  At the same

9  time, they have been putting in declarations that are

10 extra-record, that purport to describe, in favorable terms for

11 the government, how certain individuals may or may not have been

12 using their access.

13       I do not think the government has a leg to stand on

14 for this argument by arguing that we have not come forward with

15 sufficient evidence that our plaintiffs' personally identifiable

16 information is being viewed, both in light of the two points we

17 made earlier, but because the government has ensured that we

18 can't access this discovery up to this point.

19       THE COURT:  All right.  Let me see if I have any other

20 questions; give me one minute.

21       The briefing doesn't address, and understandably so,

22 the routine-use exception.  At this point, I think any analysis

23 on my part would assume, for purposes of the stage in litigation

24 that we're at, that the DOGE affiliates at all three agencies

25 were agency employees, and if that's the case, the government is

1  only invoking the need-to-know exception.  I just wanted to know

2  if you have anything to add on that and, in particular, whether

3  routine use is even relevant at this point.

4       MS. HU:  Your Honor, we think the administrative

5  record definitively demonstrates that the government cannot rely

6  on routine use.  As we discussed at the previous hearing, the

7  statute requires that agencies log when they invoke routine use

8  to authorize access.  There is no evidence that this happened in

9  this case.

10      So we briefed that in our opening brief, we mentioned

11 that again in our reply.  We do not think routine use applies

12 because there's no evidence in the administrative record that

13 would indicate the government relied on that in making their

14 decision to grant access.

15      Now, my friend on the other side may get up here and

16 argue that nonetheless, it's an available argument, but

17 of course, post hoc rationalizations offered by legal counsel do

18 not justify a decision that was made by the agency weeks ago.

19      I think, as for Your Honor's question about what to do

20 with the status of the DOGE affiliates should the Court just

21 assume that they are employees, we think that that is the

22 simpler way to go about it, but we would acknowledge that there

23 is, frankly, a lot of missing evidence from the administrative

24 record that could substantiate the government's claims these are

25 employees.  And there is some evidence, which we have identified

```
1    in our brief, that at least for some of the Education

2    DOGE affiliates, they may not be properly considered employees

3    of Education, in part of because of that Memorandum of

4    Understanding that identifies that the detailing agency would

5    still have supervisory responsibility over the employee.

6             THE COURT:  All right.  That's all I have for right

7    now; I might have a few questions for you after I speak with

8    Mr. Humphreys.  Thank you.

9             MS. HU:  Thank you, Your Honor.

10            THE COURT:  Okay.

11            UNIDENTIFIED SPEAKER:  Your Honor, I have a speaking

12   motion here that won't take more than 10 or 15 minutes.

13            THE COURT:  All right.  Sir -- sir --

14            Thank you -- thank you, Court Security Officer.

15            If you'd like to file anything --

16            UNIDENTIFIED SPEAKER:  I only have a --

17            THE COURT:  Sir, let me speak.  If you'd like to file

18   anything with the Court, you can go down -- sir, if you'd like

19   to file anything with the Court as a member of the public, you

20   may go downstairs to the Clerk's Office.  Thank you very much.

21            UNIDENTIFIED SPEAKER:  I have a speaking motion.

22            THE COURT:  Mr. Marshal, could you please --

23            UNIDENTIFIED SPEAKER:  I need to --

24            THE COURT:  Thank you.

25            COURT SECURITY OFFICER:  Sir --
```

```
1            UNIDENTIFIED SPEAKER:  I need to argue a consent

2    motion -- a consent judgment --

3            THE COURTROOM DEPUTY:  All right.  You're going to

4    have to follow me.

5            THE COURT:  Sir --

6            COURT SECURITY OFFICER:  You have to follow me out of

7    the courtroom.

8            UNIDENTIFIED SPEAKER:  No, I'm not going anywhere.

9            COURT SECURITY OFFICER:  All right, thank you, sir.

10           THE COURT:  All right.  Let's just -- everyone, just

11   take a deep breath.

12           Sir -- sir, I'm sorry, I cannot hear you right now; I

13   am in the middle of a hearing.  If you are a member of the

14   public and you have something to file --

15           UNIDENTIFIED SPEAKER:  I have a speedy motion embodied

16   in the complaint, and it won't take more than five minutes --

17           THE COURT:  Sir, I need you to leave the courtroom,

18   please.

19           UNIDENTIFIED SPEAKER:  -- I promise you.  It's a

20   credit card company, and it's being bought out by a bank, and --

21           COURT SECURITY OFFICER:  I need to ask you to leave.

22           THE COURT:  Sir --

23           UNIDENTIFIED SPEAKER:  -- I'm suing -- I'm suing the

24   bank.

25           THE COURTROOM DEPUTY:  Sir, I don't want to hurt you,
```

JA760

```
1    I don't want to hurt you.
2              UNIDENTIFIED SPEAKER:  I'm suing the bank --
3              THE COURT:  All right.
4              UNIDENTIFIED SPEAKER:  -- and I can't pay my medical
5    bills, and I can't buy food, and I can't even wash my clothes; I
6    can't buy soap to do it.
7              And I'm coming right back, Your Honor; I'm not leaving
8    the court.
9              No, I'm not.  I am not -- I'm coming right back.
10        (Unidentified speaker being escorted out of the courtroom.)
11             THE COURT:  Life is hard.
12             Mr. Humphreys.
13             MR. HUMPHREYS:  Thank you, Your Honor.
14             THE COURT:  All right.
15             MR. HUMPHREYS:  A few points to start.  I think it's
16   appropriate to first address -- so the contention that
17   Defendants may have violated the Court's order, here, we don't
18   believe that to be the case.
19             Ms. Scales is the Chief of Staff to the OPM Director.
20   I guess in some sense, everyone at OPM is responsible for
21   carrying out the President's initiatives, but just as the Court
22   found as to Mr. Hogan, who was the -- is the Chief Information
23   Officer there, we think that same reasoning applies to
24   Ms. Scales, the Chief of Staff.
25             It's certainly not our intention that there -- or not
```

```
 1   our belief that the Court meant for such a high-level person
 2   within OPM to be covered.  If we were incorrect, we apologize to
 3   the Court and will remedy that quickly.
 4           THE COURT:  So I did see the entry that the plaintiffs
 5   had pointed out in my review of the discovery, and it was going
 6   to prompt a question about OPM Chief of Staff Amanda Scales and
 7   Acting Director Ezell.  They're listed in the spreadsheet that
 8   you provided me, and it was my understanding from this
 9   spreadsheet, those were OPM DOGE affiliates who had access to
10   OPM systems; is that correct?
11           MR. HUMPHREYS:  Well, I think we were overinclusive on
12   purpose, Your Honor, to show who had access to relevant systems
13   within the organization.  So I don't necessarily think
14   DOGE affiliates is appropriate as to the Chief of Staff.  I
15   mean, the way we described it in our TRO opposition, it was for
16   a much more limited group of people.  Again, it was not our
17   intent to create any issues with the Court; if there are any, we
18   will obviously remediate them immediately.
19           THE COURT:  Okay, all right.
20           So Mr. Humphreys --
21           MR. HUMPHREYS:  Yes, ma'am -- Your Honor --
22           THE COURT:  -- where should we start?
23           MR. HUMPHREYS:  -- sorry.
24           THE COURT:  Why don't we start with standing.  If
25   there's no standing, there's no case, so let's start with
```

1  standing.

2          I found, at the TRO stage, that the plaintiffs had

3  alleged standing because the common law analogue of their

4  allegations is intrusion upon seclusion.  You disagree with

5  that.  Tell me why.

6          MR. HUMPHREYS:  Yes, Your Honor.

7      (Court reporter requesting clarification.)

8          MR. HUMPHREYS:  I'll do my best to speak up; thank you

9  very much.

10         Yes, Your Honor.

11         In our view, the case here, at bottom, is about

12  Plaintiffs' discomfort with certain -- you know, who within a

13  federal agency may get access to their data.  We don't think

14  that under the Supreme Court's decision in TransUnion that that

15  can possibly be standing.  In TransUnion, the Supreme Court

16  said, no concrete injury -- excuse me, no concrete harm, no

17  standing.  And we think that's true here, because there's been

18  no concrete injury nor outside disclosure, nothing that

19  Plaintiffs -- yes, Your Honor.

20         THE COURT:  So let's talk about outside disclosure.

21  Intrusion upon seclusion does not require public or outside

22  disclosure.  Do you agree?

23         MR. HUMPHREYS:  I agree that's true, Your Honor, as

24  described in the restatement.  I do think that if you look at

25  TransUnion, Your Honor, and the case cited, Gadelhak, there,

1  which was a case about unwanted text messages coming into the

2  home, that there is something very different, recognized by the

3  Supreme Court in citing that case, than what we have here, which

4  is a -- a discomfort with who within the agency may see data

5  already housed within the agency.  I think that is different in

6  kind, Your Honor.

7          THE COURT:  Mr. Humphreys, I have to disagree you, but

8  I want you to push back and tell me why I'm wrong.

9          In that case -- what's the case again; how do I

10  pronounce it?

11          MR. HUMPHREYS:  Gadelhak, Your Honor?

12          THE COURT:  Thank you.

13          In Gadelhak and in Krakauer -- and Krakauer is a

14  Fourth Circuit case -- in those cases, my understanding is, the

15  Courts found that an unwanted text message and an unwanted

16  telephone call, in violation of the Telephone Consumer

17  Protection Act, were cognizable injuries that resembled

18  intrusion upon seclusion.

19          Here, we have an alleged disclosure to DOGE affiliates

20  who, based on my reading in the TRO, do not have a need to know

21  their Social Security number, their date of birth, their marital

22  status, their routing number, their income.  How is that not

23  more of an intrusion upon someone's personal affairs than an

24  irritating phone call from someone you don't want or a

25  text message?

1          MR. HUMPHREYS:  I understand you may disagree,

2    Your Honor, but intrusion, I think, implies some reaching out,

3    and in the case -- and the Fourth Circuit, in O'Leary, described

4    intrusion as coming into the home.

5          Now, obviously, it's been expanded -- the tort --

6    beyond the home specifically, but I think -- on the cell phone,

7    for example, in Gadelhak or in Krakauer.

8          THE COURT:  What's more "home" than my date of birth,

9    my Social Security number, my income?  I mean, it's not the home

10   where I live, but it's my personal identifying information.  I

11   don't understand how that's not "home."

12         MR. HUMPHREYS:  Well, it's not your -- not to make it

13   personal, Your Honor, but it's not one's home, because it's

14   properly housed in a government agency.  This is information

15   that was already -- I mean, I don't want to conflate the merits

16   with standing, because I understand one has to assume the

17   plaintiffs will prevail on the merits for standing, but I think

18   there is something qualitatively different about information

19   that is housed properly within a government system and that that

20   is not same thing as affirmatively reaching out to one's home or

21   even to one's own bank account.

22         THE COURT:  So it may be properly housed in the

23   system, but is it properly protected?  In other words, I'm

24   analogizing this to, let's say, a good old-fashioned file

25   cabinet, right, those black ones we've seen, with the three

1    drawers, and I have my personal information in there, or the
2    plaintiffs have their personal information in this government
3    file cabinet, they've handed it over to the government,
4    entrusted it to them, and they've said, here, government agency,
5    here's a key, but it's my understanding, you won't be giving
6    that key to my information to anyone else at the government who
7    doesn't have a need to know.  That's essentially what the
8    Privacy Act says, at least in part.
9         The allegations here are that that key has been handed
10   over to someone else within the government, and they're not
11   allowed to have the key.
12        Why isn't that, one, a proper analogy, and, two, an
13   intrusion upon seclusion?
14        MR. HUMPHREYS:  Well, intrusion upon seclusion, again,
15   I -- it seems like "properly protected" is about the risk of
16   dissemination.  I mean, even cases in the Fourth Circuit, like
17   Beck, have shown even when there is a data breach, for example,
18   there still is not -- that is not the sufficient risk that makes
19   it imminent for the purpose of standing.  So I don't think that
20   that analogy is --
21        (Court reporter requesting clarification.)
22        MR. HUMPHREYS:  For the purposes of standing.  Thank
23   you.
24        THE COURT:  But you -- the government has represented
25   in its submissions and in the record that DOGE affiliates not

1  only have access to this information, they need access to this

2  information to do their job.

3      From that, you are telling me, they either have ac- --

4  are actually accessing it right now, or they certainly will soon

5  enough, or else why are they getting paid?

6      MR. HUMPHREYS:  Yes, Your Honor.  I mean, I think --

7  it may be more common than Plaintiffs appreciate that people

8  have access to administrative sys- -- administrative access,

9  for example, at OPM.  There are people who must -- thank you --

10 there are people who have to monitor those systems, auditors,

11 for example, who have to be able to keep them updated or

12 implement changes, and they get the same sort of administrative

13 access that Plaintiffs -- excuse me, that the employees at OPM

14 have here, or other agencies.  It varies slightly between the

15 different defendants.

16     And so I think finding standing here, Your Honor,

17 would mean that anytime any plaintiff who has data in the

18 system, which is essentially any American, could bring suit,

19 concrete injury -- required for TransUnion -- simply because

20 they disagreed with who within the agency has been given access,

21 maybe because they think the person is too young, or they

22 disagree with the political party.

23     I mean, there are new employees who come in, in any

24 administration, after an election, and I'm sure there are many

25 plaintiffs who are upset about that.  And I don't think that

```
1    Article III standing, certainly not under TransUnion, reaches so
2    far as to allow a plaintiff to sue for that; that's not a
3    concrete injury, I'd argue.
4            I mean, in TransUnion, Your Honor, the litigants there
5    had actually been designated as potential terrorists or drug
6    traffickers, but their information certainly hadn't been
7    disclosed by happenstance, and the Court still found no
8    standing, because there was no concrete harm.  I think it's hard
9    to imagine that Court looking at these facts and say there's a
10   similar concrete harm, Your Honor.
11           THE COURT:  At what point, in your view, would the
12   plaintiffs have concrete injury in fact?  What would they need
13   to allege or show?
14           MR. HUMPHREYS:  I think they would have to show some
15   outside disclosure of the agency that actually caused them
16   concrete injury.
17           THE COURT:  So by "outside disclosure of the agency,"
18   what do you mean; disclosure, for instance, from OPM to New York
19   Times?
20           MR. HUMPHREYS:  That would be one, Your Honor, a data
21   breach.  I mean, there are a lot of complaints about security,
22   whether or not the agencies adequately protected their
23   information.
24           Of course, if anything ever happens to Plaintiffs'
25   information, if there were actually any concrete harm for the
```

```
 1   purposes of standing, the Privacy Act allows for them to sue and
 2   recover money damages for that.  I mean, they could do so --
 3            THE COURT:  So --
 4            MR. HUMPHREYS:  -- individually or --I'm sorry,
 5   Your Honor.
 6            THE COURT:  -- what is the purpose of injunctive
 7   relief under the Privacy Act, then?
 8            MR. HUMPHREYS:  There still must be standing in order
 9   to have -- be entitled to injunctive relief.
10            THE COURT:  I understand.
11            MR. HUMPHREYS:  Right.
12            THE COURT:  How would someone have standing if they
13   are seeking solely injunctive relief; what is the factual
14   scenario?
15            MR. HUMPHREYS:  I think, in the cases that I can think
16   of, Your Honor, as in Doe v. Chao, there is something specific
17   about the plaintiffs' information that has been accessed or
18   viewed and some reason to believe that something is going to
19   happen to -- you know, something -- negative consequences in a
20   concrete way to the plaintiff, due to the access.
21            Here, these are potentially millions of members of
22   Plaintiffs who are -- again, don't trust these particular people
23   or don't like them and essentially don't want the government
24   looking at their data, these particular government employees
25   looking at their data.
```

1          I don't think under TransUnion, or O'Leary, or

2    you know, Gadelhak, anything like that, that that amounts to --

3    Clapper -- that doesn't amount to a concrete injury for

4    Plaintiffs in this case, Your Honor, under Article III.

5          THE COURT:  So it's almost as if the access is so

6    broad that -- the government is saying, it's so broad, the

7    plaintiffs can't particularize the harm.  Doesn't that seem

8    unfair?

9          MR. HUMPHREYS:  No, Your Honor, because I don't think

10   that they're concretely injured.  You know, if they are injured,

11   if someone can come to court and say, this happened to me, this

12   piece of information got out because you guys were sloppy, you

13   didn't -- you didn't put in the adequate safeguards.

14         There is a claim under (e)(10) of the Privacy Act to

15   suggest that the government was sloppy with their data, and had

16   they been harmed, they could come in and they could get

17   injunctive relief in that situation, that you need to do better,

18   federal agency.

19         THE COURT:  What about the Garey case?  You never

20   addressed that in your paper.  This is the Fourth Circuit case

21   that I believe I cited in the TRO opinion.  Let me pull it up.

22   Hold on, here.

23         Garey, G-A-R-E-Y, v. James S. Farrin, F-A-R-R-I-N,

24   35 F.4th 917 (4th Cir. 2022).  There, we are post TransUnion, we

25   have a published Fourth Circuit opinion, we have a plaintiff

1  who's alleged a violation of the Driver's Privacy Protection

2  Act.  That provides a cause of action against a person who

3  knowingly obtains, discloses or uses personal information from a

4  motor vehicle record.  And then we have the Fourth Circuit

5  saying, "Obtaining their names and addresses satisfied the

6  injury in fact requirement because such injuries had been

7  recognized in tort."

8        Why doesn't Garey control here?  Plaintiffs have

9  alleged a similar violation of their privacy pursuant to a

10  similar statute that's aimed squarely at their right to be left

11  alone.  It's very hard for me to see how Garey can just be

12  ignored -- I certainly can't ignore it or -- but how Garey

13  doesn't control here.  It may not be factually identical, but

14  the principles seem so similar to me.  Tell me why I'm wrong.

15        MR. HUMPHREYS:  Yeah.  Your Honor, I apologize, I

16  don't have -- I don't recall off the top of my head the analysis

17  in Garey or have it with me.  It sounds like there was an

18  outside disclosure of the information at issue.  I mean, I think

19  that's distinguishing.  It's also particularized, based on your

20  description of the case right now, to a specific individual.

21        So there's not that leap between, you know,

22  speculation on Plaintiffs' part that the government is going to

23  do something with my -- you know, with my individual data or

24  even, you know, look at it.  I mean, if there -- Garey is about,

25  it sounds like -- and I'm sorry I don't recall -- a particular

 1   person's data that was disclosed out of a system, and we think

 2   that's very different.

 3        Here -- I mean, I -- Your Honor, I understand your

 4   fairness point, but I do think it's very distinguishing.  Just

 5   mere access, that the government could, if someone had an

 6   interest in a particular person, go look for it I don't think is

 7   enough for a concrete injury to any particular person.

 8        Yes, if someone were to do something with that

 9   information, use it improperly, obviously, there would be

10   standing at that point, and then, the person could bring suit

11   under the Privacy Act and potentially get a lot of money.

12        THE COURT:  So the plaintiffs, under your view of the

13   law, and maybe perhaps under the law, would need to just wait

14   for something bad to happen, because of either a data breach or

15   perhaps their information was put into an unsecure AI system.

16   So they would just have to wait and just hope and pray that

17   nothing happens to their PII.

18        MR. HUMPHREYS:  I think that is exactly why the

19   Privacy Act -- why Congress created the Privacy Act, to allow

20   for monetary recovery if something happens.

21        THE COURT:  All right.  So the Act also allows for

22   injunctive relief.  What is the purpose of injunctive relief

23   under the Privacy Act if it's not for this instance?

24        MR. HUMPHREYS:  Sure.  Well, I think the standing

25   problem is the barrier.  If one could show that an actual

1  concrete harm as to an individual data -- or it could be

2  class actions, could be, you know, a group of people whose

3  information were disclosed or were put at an imminent risk of

4  harm, not just speculation.

5          If you could overcome the Article III standing

6  issue -- and I mentioned, you know, there are other types of

7  injunctive relief under the Privacy Act, but I mentioned the

8  (e)(10) Safeguards act.  That would be a situation in which

9  prospective relief under the APA would be appropriate or -- you

10 know, depending on the merits of the claims, but could be

11 appropriate.

12         THE COURT:  Okay.  Well, the Supreme Court certainly

13 loves standing these days, so it's a very interesting issue,

14 very interesting.

15         Okay.  Let's move on from standing, unless you have

16 anything else on standing.

17         MR. HUMPHREYS:  No, Your Honor.

18         I would just mention briefly that Plaintiffs do -- I

19 don't think the Court addressed it, but the increased risk, we

20 don't think that that's available under the Fourth Circuit's

21 decision in Beck as a viable standing theory.

22         But beyond that, we can move on.

23         THE COURT:  All right.  Thank you.

24         Let's talk about final agency action.

25         MR. HUMPHREYS:  Yes, Your Honor.

1    I think, under Plaintiff's theory of final agency
2  action, that you know, the agency would need to create a memo or
3  a decision document whenever onboarding a new employee to give
4  access to a data system, and you know, Plaintiffs complain about
5  the short -- you know, the brief memos that we do have in the
6  record, but I don't think it is surprising or it should be
7  surprising that the administrative record is what it is, because
8  these are everyday personnel decisions.

9    As I mentioned, you know, a lot of new people come on
10 board when there's a presidential transition, and the fact that
11 people are given access by virtue of their position within the
12 agency is reflected in the record.  I think Plaintiffs looked
13 at, for example, for OPM, the Acting Director's email that says,
14 you know, these people are going to need access, you know, we
15 may be doing something here.  These are their jobs, give them
16 access.

17    That is how I think federal data access is given on a
18 routine basis throughout the government, there are no decision
19 memos, and Plaintiffs' theory that there's final agency action,
20 again, whenever they don't like a particular person who gets
21 access or for a group of people for, you know, whatever reason,
22 the Court should then become the HR czars or chief information
23 officers for federal agencies, I think is unviable and would
24 create, again, an opportunity for APA review, which is supposed
25 to be programmatic, but APA review, whenever Plaintiffs are

1   simply uncomfortable with new personnel within an agency.

2           Again, that's not to say that there's no, you know,

3   remedy ever if an agency mishandles the data.  If the agency did

4   make a decision and chose poorly in hiring someone and there

5   were injuries, there are monetary -- there is monetary relief

6   available under the Privacy Act.

7           THE COURT:  So for Education -- let's start in

8   alphabetical order --

9           MR. HUMPHREYS:  Yes, Your Honor --

10          THE COURT:  -- like we did with Ms. Hu.

11          MR. HUMPHREYS:  -- let's start --

12          THE COURT:  Yeah.  Let's assume that there are only

13  four DOGE affiliates right now at Education, which is what

14  the -- I think the administrative record suggests.

15          Where in the administrative record can you point me to

16  show me, one, what their job duties are and, two, why they have

17  a need to know the plaintiffs' PII.

18          MR. HUMPHREYS:  Yes, Your Honor.  One moment, please.

19          So I'm very aware Your Honor disagrees about the

20  Executive Order being -- providing a basis for a need to know,

21  although we believe that it can.

22          THE COURT:  Hold on.  Which one?  There are two.

23          There's the first one, which was issued on

24  Inauguration Day, establishing and implementing the President's

25  Department of Government Efficiency, and the second one, issued

JA775

1    on February 11th, implementing the President's Department of

2    Government Efficiency Workforce Optimization Initiative.  So

3    which one are you referring to?

4              MR. HUMPHREYS:  I was speaking in a general manner,

5    that an EO could give -- I think the Court's analysis was that

6    the EO alone cannot provide a need to know.

7              THE COURT:  Well, I don't know that I said it can

8    never; I was -- I focused on what your prior cocounsel pointed

9    me to, portions of the Executive Orders.  So again, where in the

10   administrative record --

11             MR. HUMPHREYS:  Sure.

12             THE COURT:  -- does it support your position that the

13   DOGE affiliates at Education have a need to know?

14             MR. HUMPHREYS:  Okay.  In the administrative record,

15   Your Honor, for two of those DOGE affiliates, I would point

16   Your Honor to the ECF document No. 58-1 at pages 2 through 4,

17   which is the terms and conditions for reimbursable work, and it

18   provides the scope of work at the bottom of the first page,

19   explaining what these engineers will be doing, including

20   providing software engineering, modern architecture and system

21   design, et cetera.

22             THE COURT:  Okay.

23             MR. HUMPHREYS:  In addition -- I realize these are,

24   you know, fairly high-level descriptions, but I would also point

25   Your Honor to ECF No. 58-1 at page 6, Duties:  The detailee will

```
 1    conduct research to support EOP Department of Government

 2    Efficiency efforts.

 3              THE COURT:  Okay.

 4              MR. HUMPHREYS:  That is also similar at page 10.

 5              THE COURT:  All right.  Connect the dots.  Those are

 6    the duties, or responsibilities.  How do those people need to

 7    know the plaintiffs' PII to perform those duties?

 8              MR. HUMPHREYS:  Right.  In order to perform, as any

 9    sort of IT person would within -- within a department who needs

10    access to a system, to monitor it and to improve it, these

11    people need access to be able to actually go in and see if they

12    are able to modernize it.

13              Part of the Executive Order is also to reduce fraud

14    and waste, and so as looking in -- as part of that presidential

15    directive, then, those individuals need access to the system in

16    order to be able to determine if there is fraud, waste, and

17    abuse.  So potential improper or fraudulent payments,

18    Your Honor.

19              And I will not go outside of the record, but those are

20    my record citations.

21              THE COURT:  All right, okay.

22              I think at some point in your submission, you say the

23    Education DOGE affiliates will be auditing federal student loan

24    programs.  Where in the record is there support for that?

25              MR. HUMPHREYS:  I don't believe that's in the record,
```

1    Your Honor.

2          THE COURT:  All right.  Let's go to OPM.

3          MR. HUMPHREYS:  Yes, Your Honor.  I could --

4          THE COURT:  All right.  Make sure you're speaking into

5    the microphone.

6          MR. HUMPHREYS:  Yes, I --

7          THE COURT:  Thank you.

8          MR. HUMPHREYS:  -- keep doing that; I apologize.

9          THE COURT:  That's all right.

10         MR. HUMPHREYS:  For OPM, I would point Your Honor to

11   51-1 at 12.  This is the SF 50 of the person identified as

12   OPM-2, which describes the job duties as to provide a high level

13   of expertise relative to issues which have a significant impact

14   on the formulation of agency goals and objectives to the

15   OPM Director.

16         And so I think we can repeat this sort of for all of

17   the OPM people --

18         THE COURT:  Okay.

19         MR. HUMPHREYS:  -- that they are housed within the

20   Office of the Director and report to the Director, and it is

21   commonplace and, I would say, you know, it should be

22   uncontroversial that the director of the agency or one's boss

23   can direct you to do tasks, you know, as required, you know,

24   within that office, I mean, sort of just as I, as a federal

25   employee, sometimes get access to records.  It's not as if

1    there's a memo, it's that my boss says, you go do this, and now,

2    you know, your work requires that, so then, I think, under

3    (b)(1), I have a need to know, and that's what happens here.

4            THE COURT:  Okay.  Where in the record, the

5    OPM record, does it say, these -- does it support the position

6    that they have a need to know?

7            MR. HUMPHREYS:  I think, by the job descriptions,

8    Your Honor, is what we would point to.

9            THE COURT:  All right.

10           One of the reasons why -- well, there are many reasons

11   why this case is interesting and difficult, but the

12   administrative record and even the extra-record evidence you've

13   provided me doesn't explain to me how these systems work and how

14   access actually happens.  I'm aware, from matters I can take

15   judicial notice of, that some systems can be redacted to prevent

16   disclosure of PII; it's just, this record doesn't help me answer

17   some of those questions.

18           MR. HUMPHREYS:  Yes, Your Honor, let me -- things in

19   the record I can point you to.  I would look at the -- the sheet

20   that we provided, that we discussed, at the top, that --

21   obviously, this does explain in detail the technical aspects of

22   these systems, but I can -- it says here -- there's a column for

23   Administrative Access, and so that is access granted to system

24   administrators.  And so I think anyone who has that access can

25   go in and assign duties or take them away.

1          So it may not give -- give, by its terms,

2    substantively, access to any particular piece of information,

3    but by virtue of having administrative access, the person can

4    assign him- or herself other access within the system.

5          Does that kind of make sense?

6          THE COURT:  Yeah, thank you.  Okay.

7          With respect to OPM, I notice that in the record,

8    there's a privacy impact assessment for the government-wide

9    email system.  It was published on February 28th, so after this

10   suit was filed, I think even after my TRO -- yes.

11         Why is that in the record?

12         MR. HUMPHREYS:  I believe, Your Honor, it is because

13   it was relevant to the other embedded spreadsheet within the

14   audit creation spreadsheet, that some of those accesses include

15   just government email systems that people were given access to

16   and just for completeness included that also.

17         THE COURT:  Okay, all right.

18         So the recent production, or I guess the recent

19   supplementation of the administrative records on Saturday,

20   identified maybe 14 or 15 -- 13 or so other OPM DOGE affiliates.

21         MR. HUMPHREYS:  Yes, Your Honor.  Well --

22         THE COURT:  Is that the world of OPM DOGE affiliates,

23   to your knowledge?

24         MR. HUMPHREYS:  Yes, to my knowledge, Your Honor.  And

25   I would note that many of those people included -- who are

1   OPM-10 through -18, the only access to systems that they've been

2   given is USA Performance, Office of the Director.  So that is

3   not a system that provides other access except performance

4   information within that small office of the OPM director.

5           THE COURT:  Okay.

6           All right, let's talk about Treasury.

7           MR. HUMPHREYS:  Yes, Your Honor.

8           The Treasury record is -- there are more, I think --

9   more explanation than the other two.  As to ... excuse me one

10  moment, here.

11          As to Mr. Krause specifically, I'd point Your Honor to

12  page -- or ECF No. 51-2, starting at 27.

13          THE COURT:  Okay, just give me one minute.

14          Okay.

15          MR. HUMPHREYS:  Describing, the Senior Advisor will

16  work closely with the Office of Fiscal Assistant Secretary and

17  Fiscal Service --

18      (Court reporter requesting clarification.)

19          MR. HUMPHREYS:  -- of Fiscal Assistant Secretary and

20  Fiscal Service, in particular, the Office of the Commissioner,

21  to execute Fiscal's mission of promoting financial integrity and

22  operational efficiency of the federal government through

23  exceptional accounting, financing, collections, payments, and

24  shared services.

25          I'd also point Your Honor to the broader purpose of

1    the Executive Order, the one on January 20th, directing agencies

2    to identify ways to eliminate waste, fraud, and abuse, and that

3    if one is looking at waste, fraud, and abuse, or trying to

4    identify it within government systems, it follows, in our view,

5    that one would have a need to know to look at the underlying

6    data, to be able to determine if there is such improper or

7    fraudulent payments.

8        THE COURT:  I've got the Executive Order that you just

9    referred to from January 20th.  I don't believe it refers or

10   includes the words "waste, fraud, and abuse."  It says, the

11   purpose is to establish the DOGE, "implement the President's

12   DOGE agenda, by modernizing Federal technology and software to

13   maximize government efficiency and productivity."

14       I mean, that seems to be a running theme in the

15   submissions, the administrative record.  We've got the

16   Executive Order that refers to "modernizing technology and

17   software to maximize governmental efficiency and productivity,"

18   and from that, I'm hearing, we are auditing federal

19   student loans, we are combating waste, fraud, and abuse.  There

20   just seems to be a disconnect between what the Executive Order

21   says DOGE's purpose was and what is actually happening boots on

22   the ground.

23       MR. HUMPHREYS:  Well, I think the Executive Order,

24   Your Honor, explains why these particular people -- why there

25   was a DOGE team established; part of the modernization efforts.

1          And then, within the government itself -- excuse me,

2    within the agency itself, I mean, there is always an interest

3    and a need in determining whether or not waste, fraud, and abuse

4    exists.  I think, again -- I think it's probably not as uncommon

5    that broad access to such systems exists.  I mean, auditors,

6    IGs, IT professionals, you know, are -- it varies a little bit

7    by agency, but are -- you know, have similar access to this

8    information.

9          And I admit -- we're talking about Treasury, so I want

10   to be clear.  It is a little different, and Treasury took a

11   different approach here, but I don't think it can be said that

12   they didn't recognize what they were doing and adopt safeguards

13   to prevent that.

14         We have, you know, a decision memo, essentially, or an

15   email adopting a decision plan, which is reflected in the

16   spreadsheet on ECF 51-2 at 68, showing that Dan Katz, who is the

17   Chief of Staff at Treasury, looked at recommendations from the

18   Bureau of Fiscal Services, and in approving the -- I think by

19   implication, approved sort of the plan, which is at 68.

20         I mean, there's a clear --

21         THE COURT:  So help me understand this chart.

22         MR. HUMPHREYS:  Yes, Your Honor.

23         THE COURT:  So this is a chart that's attached to an

24   email from Matthew Garber at Treasury.  The email is

25   February 3rd, 2025.  "Attached is the spreadsheet we reviewed

1  with the access levels updated based on our conversation."

2      So what does this spreadsheet tell me?

3      MR. HUMPHREYS:  It tells you, Your Honor, that because

4  of the access being granted specifically to Mr. Elez --

5  although, of course, he's no longer with the agency, replaced by

6  Mr. Wunderly -- that BFS considered specific access limitations

7  that he would have going forward in the database as reflected in

8  the column titled, "Recommended Change(s) to Current (Feb 1)

9  Access Levels," and you know, it goes through, on a

10  system-by-system basis and, for particular aspects of it, what

11  restrictions should be in place.  And so the comparison is

12  between access granted as of February 1 and recommended changes

13  to current February 1 access levels.

14      THE COURT:  And this chart relates to Mr. Elez's

15  access, correct?

16      MR. HUMPHREYS:  Yes, at the time; he's been replaced,

17  as I mentioned.  And if there were ever an injunction lifted,

18  Mr. Wunderly would go forward with those duties.

19      THE COURT:  So this does not concern Mr. Krause.

20      MR. HUMPHREYS:  That is true; he did not have specific

21  access granted to the system.  He was able to be briefed on it,

22  as one would expect in a senior role in the Fiscal Service, as a

23  person who is carrying out the duties of the Fiscal Service

24  Assistant Secretary, but no, those do not apply to him, although

25  since he would be getting his information from Mr. Elez, I

```
 1   think, in a sense, derivatively, those restrictions would apply
 2   to Mr. Krause.
 3          THE COURT:  So where in the record do I look to find
 4   the access that Mr. Krause has?  Is that in the engagement memo?
 5          MR. HUMPHREYS:  No, Your Honor.  I could only point
 6   you to extra-record evidence of that.
 7          THE COURT:  Mm-hmm.
 8          So has he been granted access to PII within Treasury
 9   systems?
10          MR. HUMPHREYS:  Well, he has no access now,
11   Your Honor, to be clear, but --
12          THE COURT:  Understood, because of the injunction in
13   New York, but was he granted access to Treasury systems with
14   Americans' PII?
15          MR. HUMPHREYS:  We would not say that he was granted
16   access in the sense -- as a systems term, as that is usually
17   used, which I think requires a login or an ability to go into
18   the system, but to be clear, he has seen, or he did see, before
19   the injunctions, information that Mr. Elez provided him, or at
20   least had the ability to see, so he could brief him on --
21   Mr. Elez could brief Mr. Krause on information, as needed, that
22   is -- that Mr. Krause viewed as part of his access.  And
23   that's -- that complicated sentence is what we would refer to as
24   over-the-shoulder access, Your Honor.
25          THE COURT:  All right, okay.
```

1          Is the fact that Mr. Krause has over-the-shoulder

2     access in the administrative record?

3          MR. HUMPHREYS:  Not in the documents certified to be

4     part of the administrative record, no, Your Honor.

5          THE COURT:  So what do I do about the fact that this

6     appears to be an undisputed fact:  The plaintiffs allege

7     Mr. Krause has access, but there's nothing in the administrative

8     record telling me whether he has access and the nature and scope

9     of his access.  I mean, there certainly doesn't have to be

10    something in writing, as we've seen from the cases, to be

11    considered an adminis- -- final agency action.  You're telling

12    me that this access has been granted.

13         MR. HUMPHREYS:  We would strongly dispute that that is

14    final agency action, Your Honor, of course.  As to what you do

15    with it, I mean, I think by virtue of his job description, which

16    is contained in the record, and the fact that he occupies the

17    role of Fiscal Assistant Secretary, I think that provides a need

18    to know.

19          Again, I think properly considered, and taking final

20    agency action into account, I don't think that the agency is

21    required to paper any -- anytime the supervisor discusses

22    information with their subordinate; I think the need to know is

23    given through his role, Your Honor.

24         THE COURT:  All right.

25          Mr. Humphreys, you don't really lean on the

1    routine-use exception; is that correct?

2            MR. HUMPHREYS:  That's correct, Your Honor, because it

3    would be fact-dependent and I think goes to show why these -- I

4    refer in here -- why these claims should be brought up in

5    individual cases through the Privacy Act and individual

6    plaintiffs, not the APA.

7            If one could point to a disclosure and harm from it,

8    you would then get to the more granular, what data was

9    disclosed, when, and for what purpose, which I think you would

10   need to know, in order to carry a routine use.

11           THE COURT:  All right.  I didn't see any documentation

12   in the administrative record about any disclosure or the purpose

13   of a disclosure for routine use, so -- you agree with that,

14   right?

15           MR. HUMPHREYS:  Yes, Your Honor.

16           THE COURT:  All right, okay.

17           Okay.  Let's talk about irreparable harm.  Your brief

18   largely just refers to the other judges in the District of

19   Columbia and Eastern District of Virginia, and now -- yeah, the

20   most recent one is out of D.C.

21           Those courts have found no irreparable harm.  Tell me

22   why they're right.

23           MR. HUMPHREYS:  A couple of reasons, Your Honor.

24           I think we would, of course, as we've discussed, find

25   that there's no -- or we would -- we're not able to find -- we

1    would argue there is no standing here and then sort of --

2         THE COURT:  All right.  If there's no standing --

3         MR. HUMPHREYS:  Right, if there's no standing, there's

4    clearly no irreparable harm, that's right, Your Honor.

5         THE COURT:  Okay.  Then let me ask you this.

6         MR. HUMPHREYS:  Yes.

7         THE COURT:  If I find standing based on the same

8    theory I found standing at the TRO stage, is there irreparable

9    harm?  In your view, do they rise and fall with each other?

10        MR. HUMPHREYS:  No, Your Honor.  I think that for

11   irreparable harm, there's case law, including in the

12   Fourth Circuit, suggesting that -- or holding that if money

13   damages can -- the same argument applies in both standing and

14   irreparable harm, but it's, I think, conceptually distinct, that

15   if you can be remedied at a later point by money damages, as one

16   could be through the Privacy Act, that that is not irreparable

17   harm.

18        THE COURT:  How can these plaintiffs, if they have

19   standing, be rem- -- their damage be remedied or their harm

20   remedied through money damages?

21        MR. HUMPHREYS:  That is the --

22        THE COURT:  I mean, you would say, there has to be,

23   you know, identity theft or some public disclosure that hurt

24   their reputation.

25        MR. HUMPHREYS:  Something like that, Your Honor, and

1  that could be remedied, yes.

2          THE COURT:  All right.  But one of the judges in D.C.

3  found standing based on intrusion upon seclusion but no

4  irreparable harm.

5          MR. HUMPHREYS:  That's correct, Your Honor,

6  Judge Kollar-Kotelly in the --

7          THE COURT:  Right.  So how do you reconcile that with

8  what you just said?

9          MR. HUMPHREYS:  Because I think, for the extraordinary

10  remedy of a preliminary injunction, that irreparable harm

11  requires a clear imminent showing even more than Article III

12  standing and that that can't be remedied at a later date, and

13  because the injuries here can be remedied at a later date

14  through money damages, that there is a delta between standing

15  and irreparable harm, with irreparable harm being the more

16  burdensome showing for Plaintiffs.

17          THE COURT:  Is it still the government's position that

18  the DOGE affiliates at all three agencies have a need to know

19  the PII in the systems that they have access to?

20          MR. HUMPHREYS:  Yes, Your Honor, by virtue of their

21  job duties, yes.

22          THE COURT:  Okay, all right.

23          All right.  Is there anything else, Mr. Humphreys?

24          MR. HUMPHREYS:  I would say, Your Honor, if the Court

25  is inclined to grant a preliminary injunction, that there should

 1  be some guidance as to what the government can do to bring

 2  itself within compliance, I mean, if it's that the government

 3  needs to write a memo for each specific person, or background

 4  checks, or whatever it is.

 5          I don't think that this sort of theory of Plaintiffs

 6  that there is final agency action here is workable if it

 7  effectively shuts down agency operations for any agency employee

 8  with whom Plaintiffs disagree who are carrying out the policy

 9  goals of the agency; I think there has to be, eventually, some

10  route for the policymakers within an agency to get their chosen

11  people within data systems, access to.

12          And I think, you know, in SDNY, Judge Vargas has set

13  out a process to show that certain, you know, trainings have

14  been accomplished.  We don't think that's necessary or

15  appropriate, but we would ask for some guidance as to how the

16  Court -- or how the agencies can bring themselves into

17  compliance to be able to do the work of the agency.

18          THE COURT:  Doesn't that assume that they have a need

19  to know?  I mean, we're just -- we're talking in circles, here.

20  If they don't have a need to know, then they're not entitled to

21  it.  So if you were able -- so there's that problem.

22          MR. HUMPHREYS:  Yes, Your Honor.

23          THE COURT:  The other issue is, I've seen nothing in

24  the record indicating whether or not PII can be redacted or has

25  even been contemplated.  I understand from certain documents in

1    the record and also from privacy impact statements and publicly

2    available documents that redactions in at least some of the

3    systems is possible, but I haven't seen any of that in the

4    record or in the government's briefing.

5            If you need some water, take your time.

6            MR. HUMPHREYS:  No, thank you.  Excuse me, Your Honor.

7            THE COURT:  All right.

8            MR. HUMPHREYS:  Yes, as discussed, we can't point you

9    to anything specifically in the record to that.

10           THE COURT:  Yeah.  Okay, all right.  Thank you.

11           MR. HUMPHREYS:  Thank you, Your Honor.

12           THE COURT:  Actually, Mr. Humphreys, if I were to

13   grant the PI as to one or more of the agencies in some fashion,

14   is the government going to appeal?

15           MR. HUMPHREYS:  That's ultimately a decision for the

16   Solicitor General, Your Honor.  I can't comment on that; I just

17   don't know.

18           THE COURT:  All right.  Because I've got the

19   plaintiffs asking for expedited discovery and an expedited

20   briefing schedule if I were to grant a PI.  Of course, all of

21   that would be unnecessary if there's notice of appeal to the

22   Fourth Circuit, so ...

23           MR. HUMPHREYS:  As I said, it's the Solicitor

24   General's decision.  I think there's a fair chance, Your Honor.

25           THE COURT:  All right.  Let's take it step by step.

63

1          MR. HUMPHREYS:  Thank you, Judge.

2          THE COURT:  All right.

3          Ms. Hu, let's start where Mr. Humphreys left off.  The

4    government is asking, if I do enter a preliminary injunction,

5    for some guidance as to how they could get into compliance with

6    the law.  What is your response to that?  I think Judge Vargas

7    was doing something -- something like that in New York.

8          MS. HU:  Your Honor, our response there is that we

9    think the government -- sorry, not the government; the Court's

10   description of DOGE affiliates, which adopted the government's

11   suggestion last time, was appropriate and that what the

12   government should have done here for Ms. Scales and for any

13   other employees, where they are not sure if the individual falls

14   within the scope of the Court's order, is to do as they did in

15   the SDNY action, which is to submit a filing to the Court

16   seeking clarification as to whether this individual falls within

17   the scope of the order.

18          Clearly, they are able to identify the relevant

19   universe of people, as they have done here, and to the extent

20   they believe some exception applies, I think I heard that their

21   argument there was, Ms. Scales is Chief of Staff.  That may well

22   be, but it is not for the government to decide, unilaterally,

23   whether, by dint of someone's position, somehow they have a need

24   to know.  They can seek permission from the Court to disclose

25   information if they believe that the standards have been

1    satisfied under the Privacy Act.

2         THE COURT:  So your position is, I don't tell them how

3    to remedy it; they come back and say, this person does not meet

4    that definition, or this particular person does have a need to

5    know.  Is that what you're suggesting the government should do?

6         MS. HU:  I think that is one possibility, Your Honor.

7         I think to the extent you wish to provide additional

8    guidance, it may be possible, through the administrative record,

9    here, to identify people such as ED-4 or people such as OPM-2 or

10   -5, who have received notices of appointment or some other job

11   description that required them or that states that they should

12   be given access, or it should be whomever these memos -- right,

13   these memos use the term "DOGE" persons, like the memo from

14   Education I think says -- specifically invokes DOGE access.

15        So whomever the agency contemplated that these memos

16   applied to, that is one way to also guide the decision-making

17   here or the clarifying guidance that the government has

18   requested.

19        THE COURT:  Okay.  Let's talk about Garey, the

20   Fourth Circuit case that I discussed with Mr. Humphreys.  Now,

21   Mr. Humphreys, you know, I think appropriately, and much to his

22   great credit, admitted he didn't quite remember the facts, but

23   when I summarized some of them for him, he suggested the case

24   was different because the information was disclosed -- I don't

25   know if he knows this, but to a lawyer or a lawyer obtained it;

1    I'm not sure it was -- I'm not sure how the lawyer got it, and

2    that that lawyer would be akin, in this case, to someone outside

3    the government.

4            What is your position on Garey and that interpretation

5    of it?

6            MS. HU:  Your Honor, I don't think that the

7    distinction between unauthorized access to someone within the

8    government versus to a lawyer is a distinction recognized in the

9    tort for intrusion upon seclusion or is a distinction that was

10   even identified within Garey.  I think Garey's principles were

11   quite clear, and I think they do apply with full force here.

12           And I would actually note that Your Honor's analogy to

13   the "home," to your data being housed in like a file cabinet

14   that the government maintains, is on all fours, actually, with

15   an example given in the restatement for torts, where they

16   identify one of the examples of intrusion upon seclusion is, if

17   a person brings a fake court subpoena to a bank and demands

18   information about an individual's finances, the bank holds that

19   information for a person, and if they disclose that information,

20   that is obviously an intrusion upon seclusion.

21           And I think that that is what we have here.  The

22   government is the safeguard agent for these records, these

23   highly sensitive records about individual people, including

24   Plaintiffs, and their decision to open the vault doors, so to

25   speak, to DOGE affiliates is intrusion upon seclusion.

1         And so I think that Your Honor has it exactly right;

2    I think the principles from Garey apply with full force here,

3    and I think the analogy itself works because of what the

4    restatement of torts says.

5         THE COURT:  All right.  Anything else from your

6    perspective?

7         MS. HU:  I think, Your Honor, just two points very

8    briefly.

9         At varying points during today's argument, the

10   government has suggested that Plaintiffs are motivated by

11   politics or because Plaintiffs don't like the people within

12   DOGE, and that is why we have brought this suit.

13        I want to make the record very clear; that is not why

14   Plaintiffs brought this suit.  Plaintiffs brought this suit

15   because they are deeply concerned about the amount of

16   information that has been disclosed, without any apparent need

17   to know and in violation of the Privacy Act.

18        I think that that is -- it is a great disservice to

19   characterize this as a political act; it was not.  It is an act

20   brought by concerned citizens, by everyday Americans who believe

21   and trust in the government when they hand over their

22   information, entrusting the government to keep and safeguard

23   that information.  That is not what happened here, and that is

24   why they brought their suit.  So I want to set the record clear

25   on that.

1          And I think the second point I would just make is,

2    Your Honor had an exhaustive back-and-forth exchange with the

3    government about the need to know, and I think my friend on the

4    other side was not able to identify any need to know in the

5    administrative record.

6          And I would just point out a couple brief responses.

7    I think he directed Your Honor to some documents in Education.

8    Those documents purportedly setting forth the scope of work were

9    dated February 12th.  That is one full week after Education

10   issued the memorandum authorizing access to all DOGE affiliates.

11   And so even if you were to consider the February 12th memo as

12   somehow post hoc establishing the scope of duties, they would

13   not be sufficient, but in this particular case, because they

14   postdate the decision to grant access, it cannot have been that

15   that need to know existed at the time, February 5th.

16          On OPM --

17          THE COURT:  Well, it could have existed; it just

18   wasn't documented yet.

19          MS. HU:  I don't think there is a basis to conclude

20   that it existed on this record, yes.

21          For OPM, I would say that my friend on the other side

22   said we can simply repeat the notice of personnel action form

23   language for all of the OPM employees.

24       (Reporter requesting clarification.)

25          MS. HU:  My friend on the other side said that we can

1   simply repeat the generic language of some of the OPM DOGE

2   affiliates' duties and apply them across the board to all of the

3   OPM DOGE affiliates.  I don't think that works, for two reasons.

4        The first and most obvious is that this Notice of

5   Personnel Action Form is missing for all but three OPM

6   DOGE affiliates.  So there is no basis to conclude that those

7   were the other 15 DOGE affiliates' duties.

8        The second is that as I think my friend on the other

9   side read out loud, the description itself is so generic that it

10  could encompass virtually anything; it does not articulate a

11  specific need to know the personally identifiable information

12  contained within OPM systems.

13       And then, finally, Your Honor, on Treasury, I would

14  say that there is nothing in the record about Krause being

15  granted access.  The only information that exists in the record

16  is on page 65, ECF stamped page 65 of 51-2.  At the top of that

17  page, it says, "USDS/DOGE requested to be granted 'over the

18  shoulder' access to monitor Fiscal Service personnel, conducting

19  payment processing roles, which was approved by Fiscal Service

20  on January 23rd, 2025."

21       It does not identify Krause as the person who received

22  that approval, and it does not -- the record does not include

23  any documentation regarding either the request for this

24  over-the-shoulder access or the decision to grant that access on

25  January 23rd, 2025.

1          And then, finally, Your Honor, on the point about

2    monetary damages, I will simply direct the Court's attention to

3    a case called Calvillo Manriquez v. DeVos.  This is at

4    345 F. Supp. 3d 1077, pin cite 1106, and that Court found there

5    was irreparable harm for the violation of the Privacy Act,

6    notwithstanding the existence of monetary damages, because the

7    emotional distress suffered by Plaintiffs from the unauthorized

8    disclosure of their information was not something that could be

9    remedied by monetary damages.  So that provides an additional

10   basis for concluding that a monetary damages action under the

11   Privacy Act is not an adequate remedy.

12          THE COURT:  Did you just research and find that case

13   in court?

14          MS. HU:  No, Your Honor, I have known of this case's

15   existence for quite some time, but the government I don't

16   believe has leaned as heavily into the monetary damages argument

17   as they did today, so I thought it was appropriate to identify

18   it for you.

19          THE COURT:  All right.  Okay.

20          Anything else?

21          MS. HU:  No, Your Honor.

22          THE COURT:  All right.  Anything else from the

23   government?

24          MR. HUMPHREYS:  No, Your Honor.  Thank you.

25          THE COURT:  All right, just give me one moment.

```
 1              Maybe I can't to this alone.
 2              So Mr. Humphreys, let me just clarify the
 3   OPM employees.  We've got Acting Director Ezell and Chief of
 4   Staff Scales, who according to the administrative record, have
 5   access to the systems and are also DOGE affiliates.  Would those
 6   two have access to OPM's systems --
 7              MR. HUMPHREYS:  I'm sorry, Your Honor.
 8              THE COURT:  No problem.
 9              Would Ezell and Scales have access to OPM's systems
10   without the DOGE agenda or the DOGE Executive Order?
11              MR. HUMPHREYS:  Yes, absolutely, Your Honor, as would
12   the other employees, too, people who were hired on -- within the
13   Office of the Director.
14              THE COURT:  So the other employ- -- but you've
15   identified those OPM people as DOGE affiliates, so people who
16   are accessing the information for the purpose of achieving the
17   DOGE mission.
18              MR. HUMPHREYS:  I mean, in a sense, Your Honor, the
19   DOGE mission is somewhat pervasive, and it's hard for us to
20   clearly define.
21              THE COURT:  Thank you for admitting that.
22              MR. HUMPHREYS:  Well, I mean -- well, it's -- OPM acts
23   at the direction of the President, and various pre- -- you know,
24   Executive Orders, and through -- direction through the Director,
25   or the Acting Director, and so to say that Mr. --
```

1    Acting Director Ezell or the Chief of Staff -- you know, to go

2    and represent that they're doing nothing related to DOGE is just

3    not something we can do.

4            They're certainly not the people we identified in our

5    declarations in opposition to the motion for a temporary

6    retraining order as the people who are in the systems

7    implementing what we understood Plaintiffs to mean by, you know,

8    Executive Order and DOGE, but I don't think one can completely

9    separate out DOGE from other work that the Office of the

10   Director may be doing.

11           THE COURT:  All right.  It's not your fault, but it's

12   clear as mud to me.  All right.

13           MR. HUMPHREYS:  Thank you, Your Honor.

14           THE COURT:  Okay.  I will not be ruling from the

15   bench; I need additional time to consider both the record that

16   came in on Saturday afternoon and additional time to write an

17   opinion.

18           So I am further extending the TRO another seven days.

19   That will make it expire 28 days after I issued it, which is the

20   longest that it can go.  It will expire on Monday, March 24th,

21   at 8:00 a.m. or, if I issue a written opinion, sooner.

22           As I stated, the good cause is the production of an

23   administrative record just two days ago -- the final production

24   of the administrative record two days ago.  This PI motion just

25   became ripe on Friday.  I need additional time to consider the

72

1    arguments presented today and to draft an opinion that states

2    all my reasons for my ruling.

3            So for those reasons, I'll extend the TRO until

4    Monday, March 24th, at 8:00 a.m., which is exactly 28 days from

5    the date that I issued it, or until I rule on the PI, whichever

6    is sooner.

7            After I enter my ruling, I will likely ask the parties

8    to meet and confer about next steps, and then we can have a

9    phone call.

10           Anything else from the plaintiffs' perspective?

11           MS. HU:  Nothing further, Your Honor.

12           THE COURT:  Mr. Humphreys.

13           MR. HUMPHREYS:  Nothing further, Your Honor,

14    thank you.

15           THE COURT:  All right.

16           Thank you all very much.

17           THE COURTROOM DEPUTY:  All rise.  This Honorable Court

18    now stands adjourned.

19        (The proceedings were adjourned at 12:28 p.m.)

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2        I, Patricia Klepp, Registered Merit Reporter, in and for

 3   the United States District Court for the District of Maryland,

 4   do hereby certify, pursuant to 28 U.S.C. § 753, that the

 5   foregoing is a true and correct transcript of the

 6   stenographically-reported proceedings held in the above-entitled

 7   matter and the transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9                         Dated this 23rd day of March, 2025.

10

11

12   _____/s/_____
                     PATRICIA KLEPP, RMR
13                   Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```

JA802

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AMERICAN FEDERATION OF TEACHERS,** *et al.*, | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| **v.** | *       Civ. No. DLB-25-0430 |
| | * |
| **SCOTT BESSENT,** *et al.*, | * |
| | * |
| **Defendants.** | * |

## <u>ORDER</u>

On March 24, 2025, the Court granted a preliminary injunction enjoining the U.S. Department of Education ("Education"); Denise L. Carter, the Acting Secretary of Education; the Office of Personnel Management ("OPM"); Charles Ezell, the Acting Director of OPM; the U.S. Department of the Treasury ("Treasury"); Scott Bessent, the Secretary of the Treasury; and their officers, agents, servants, employees, and attorneys from disclosing the personally identifiable information of the plaintiffs and the members of the plaintiff organizations to any "DOGE" affiliates."[1] ECF 69. Within hours of the ruling, the defendants filed a notice of appeal of the preliminary injunction order to the United States Court of Appeals for the Fourth Circuit, ECF 70, and moved to stay the preliminary injunction pending appeal, ECF 72. The plaintiffs opposed the motion to stay. ECF 75. The motion to stay pending appeal is denied.

---

[1] The Department of Government Efficiency ("DOGE") was established on January 20, 2025 by Executive Order 14,158. 90 Fed. Reg. 8441 (Jan. 29, 2025). The Court's March 24 Order defines "DOGE affiliates" as "individuals whose principal role is to implement the DOGE agenda as described in Executive Order 14,158 and who were granted access to agency systems of records for the principal purpose of implementing that agenda." ECF 69, ¶ 1. "DOGE affiliates" includes Thomas Krause and Ryan Wunderly but does not include OPM Acting Director Ezell, OPM Chief Information Officer Greg Hogan, or OPM Chief of Staff Amanda Scales. *Id.*

Courts consider four factors when determining whether to stay an order pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Of these factors, "[t]he first two . . . are the most critical." *Id.* The party seeking the stay bears the burden of showing that the circumstances justify an exercise of judicial discretion. *Id.* at 433–34. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433 (quoting *Virginian Ry. v. United States,* 272 U.S. 658, 672 (1926)).

The defendants argue that they will likely succeed on appeal because the plaintiffs do not have standing, have not challenged a final agency action reviewable under the Administrative Procedure Act, and are not likely to succeed on the merits of their claims. The defendants made these same arguments twice before—once during the temporary restraining order briefing and then again during the preliminary injunction briefing. And twice, the Court rejected them. *See* ECF 38, at 10–29; ECF 68, at 14–61. These stale arguments are not grounds for a stay pending appeal.

The remaining factors—irreparable harm to the defendants, prejudice to the plaintiffs, and the public interest—do not weigh in favor of a stay. The Court has found—and stands by its finding—that the plaintiffs will suffer irreparable harm without an injunction. *See* ECF 68, at 61–65. As for harm to the defendants, the government argues that the injunction "impinges on the President's broad authority over and responsibility for directing employees in important work to modernize federal government systems and identify fraud, waste, and abuse throughout the federal government." ECF 72, at 5. If the injunction "impinges on the President's broad authority," that is a direct consequence of the likely unlawful actions of the agency defendants. The President's

2

JA804

power to direct federal agencies to implement his agenda does not authorize the agencies to disregard the law. By entering a preliminary injunction, the Court is upholding the law, not, as the government says, "curtail[ing] the Executive Branch's core duty to manage the day-to-day operations of its agencies." ECF 72, at 5. If an injunction curtails the management of the daily operations of the federal agencies, that, too, is a direct consequence of the likely unlawful agency actions. The public interest lies in protecting the privacy rights of individuals who gave sensitive personal information to the federal government with the understanding that the government would protect this information from unlawful disclosure. The likely unauthorized disclosure of their information to DOGE affiliates breaches the public's trust and is an unlawful government intrusion into these individuals' private lives. The public interest does not favor a stay of the preliminary injunction.

The defendants' motion to stay the preliminary injunction, ECF 72, is DENIED.

Date: March 28, 2025

Deborah L. Boardman
United States District Judge

3

JA805

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, I electronically filed the foregoing joint appendix with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*

Jack Starcher