**No. 25-1282**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

AMERICAN FEDERATION OF TEACHERS, et al.,

Plaintiffs-Appellees,

v.

SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY,
et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Maryland

**REPLY BRIEF FOR APPELLANTS**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
GERARD SINZDAK
JACK STARCHER
JACOB CHRISTENSEN
SIMON G. JEROME
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1673*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................1

I.     Plaintiffs Have No Likelihood of Success on the Merits ........................2

     A.     Plaintiffs have failed to establish a cognizable Article III injury ........................................................................2

     B.     Plaintiffs fail to identify a final agency action reviewable under the APA ............................................................12

     C.     Plaintiffs' APA claims are foreclosed by the Privacy Act ..........16

     D.     Plaintiffs' Privacy Act claim fails on the merits..........................17

II.     Plaintiffs Also Failed to Establish the Remaining Preliminary Injunction Factors ..........................................................25

CONCLUSION ........................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Amati v. City of Woodstock*,
    829 F. Supp. 998 (N.D. Ill. 1993)..........................................................8

*Bohnak v. Marsh & McLennan Cos.*,
    79 F.4th 276 (2d Cir. 2023)..................................................................9

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ...........................................................................13

*City of New York v. U.S. Dep't of Def.*,
    913 F.3d 423 (4th Cir. 2019)..............................................................15

*Doe v. Stephens*,
    851 F.2d 1457 (D.C. Cir. 1988) .................................................... 13, 14

*Garey v. James S. Farrin, P.C.*,
    35 F.4th 917 (4th Cir. 2022) ........................................................ 3, 4, 5

*Geraci v. Conte*,
    No. 72440, 1998 WL 323564 (Ohio Ct. App. June 18, 1998) ..........................8

*Hearst Radio, Inc. v. FCC*,
    167 F.2d 225 (D.C. Cir. 1948) ............................................................12

*Horizon Healthcare Servs. Inc. Data Breach Litig., In re*,
    846 F.3d 625 (3d Cir. 2017)..................................................................9

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    48 F.4th 1236 (11th Cir. 2022) .............................................................9

*Independent Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004) ............................................................12

*Kohler v. City of Wapakoneta*,
   381 F. Supp. 2d 692 (N.D. Ohio 2005) ................................................8

*Krakauer v. Dish Network, LLC*,
   925 F.3d 643 (4th Cir. 2019)................................................................4

*Miller v. Motorola, Inc.*,
   560 N.E.2d 900 (Ill. App. Ct. 1990) ..................................................11

*Nayab v. Capital One Bank (USA), N.A.*,
   942 F.3d 480 (9th Cir. 2019)................................................................8

*New York v. Trump*,
   --- F. Supp. 3d --- , 2025 WL 1095147 (S.D.N.Y. Apr. 11, 2025) ..................23

*O'Leary v. TrustedID, Inc.*,
   60 F.4th 240 (4th Cir. 2023) ................................................................6

*Persinger v. Southwest Credit Sys., L.P.*,
   20 F.4th 1184 (7th Cir. 2021) ..............................................................9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..............................................................................2

*Trans Union Corp., Privacy Litig., In re*,
   326 F. Supp. 2d 893 (N.D. Ill. 2004) ..................................................11

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ..........................................................................2, 12

*Tureen v. Equifax, Inc.*,
   571 F.2d 411 (8th Cir. 1978)..............................................................10

*Venetian Casino Resort, LLC v. EEOC*,
   530 F.3d 925 (D.C. Cir. 2008) ....................................................... 15, 16

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...............................................................2

**Statutes:**

5 U.S.C. § 551(13) ...................................................... 12, 13

5 U.S.C. § 552a(a)(4) ......................................................19

5 U.S.C. § 552a(b)(1) ............................................ 17, 18, 25

5 U.S.C. § 552a(g)(4) ......................................................16

5 U.S.C. § 704...............................................................16

**Regulation:**

Exec. Order No. 14,158,
    90 Fed. Reg. 8441 (Jan. 29, 2025) ...................................21
        § 1.......................................................................21
        § 3(b).................................................................. 21
        § 4(a)...................................................................21
        § 4(b)................................................................. 21

**Other Authorities:**

Eli A. Meltz, Note, *No Harm, No Foul? "Attempted" Invasion of Privacy and
    the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431 (2015)...........8

Restatement (Second) of Torts (Am. Law Inst. 1977) ......................................10

**INTRODUCTION**

A motions panel of this Court has already held that the government is likely to succeed on the merits of this appeal. That panel not only held that plaintiffs likely lack standing to bring their claims, but also expressed significant skepticism of plaintiffs' ability to succeed for numerous additional, independent reasons. The majority of this Court declined to grant en banc review, refusing to disturb the panel's decision. Although the Court's stay decision is not binding on this panel, it is entitled to deference for its persuasive authority.

Plaintiffs, however, all but disregard the Court's prior analyses, plowing ahead with the same arguments that this Court has already found deficient, while making no attempt to address the stay panel's reasoning and analysis. For the reasons given by the stay panel—left undisturbed by a majority of this Court—and explained in the government's opening brief, the district court's preliminary injunction must be vacated.

**ARGUMENT**

As the motions panel noted, the preliminary injunction cannot stand if plaintiffs are not likely to prevail on any one of the numerous independent issues raised in defendants' opening brief. Because plaintiffs

cannot establish that they are likely to prevail on any of the threshold or

merits issues presented—let alone all of them—they fall far short of making

a "clear showing" that they are likely to succeed on the merits of their case.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). And, as the

motions panel also found, the remaining injunction factors weigh in the

government's favor, not plaintiffs'. Plaintiffs' response provides no reason

to disturb the motions panel's conclusions.

## I.     Plaintiffs Have No Likelihood of Success on the Merits

### A.     Plaintiffs have failed to establish a cognizable Article III injury

Plaintiffs fail to establish standing because they have not identified a

concrete injury under the standards the Supreme Court set out in

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Plaintiffs agree (at 22-23)

that the only harm they have alleged is an intangible harm to their privacy

interests, and that those kinds of harms are only sufficiently concrete for

purposes of standing if "the asserted harm has a 'close relationship' to a

harm traditionally recognized as providing a basis for a lawsuit in

American courts." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo, Inc. v.

Robins*, 578 U.S. 330, 341 (2016)). And plaintiffs do not dispute that the

district court found standing based solely on its conclusion that plaintiffs'
intangible privacy harms are sufficiently analogous to the kind of harm
underlying the traditional tort of intrusion upon seclusion.  For all the
reasons given in the stay panel's decision and defendants' opening brief,
*see* Br. 23-35, the harm plaintiffs allege bears no relationship, let alone a
close one, to the kind of harm underlying that common law claim.

    1.    Repeating the same errors as the district court, plaintiffs
principally argue that this Court's decision in *Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022), resolves the standing question in their favor.
Resp. Br. 22-25. That argument is wrong several times over.  First, the stay
panel correctly concluded that, not only is *Garey* not dispositive in
plaintiffs' favor, but it in fact confirms that plaintiffs have not alleged a
concrete injury.  Plaintiffs do not grapple at all with the fact that the stay
panel squarely rejected their proposed reading of *Garey*, and that a majority
of this Court refused to disturb that decision.  Plaintiffs simply retort that
defendants' standing argument is "brazen," despite its adoption by the
stay panel, making plaintiffs' position all the more difficult to comprehend.
Resp. Br. 3.

3

Second, when plaintiffs do (indirectly) respond to the stay panel's analysis of *Garey*, Resp. Br. 25, they entirely miss the point. The Court in *Garey* described the basis for the plaintiff's standing there as "nearly identical" to that of the plaintiff in *Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019). *See Garey*, 35 F.4th at 921. As Judge Agee noted, that observation must be read to mean what it says. Stay Order 4-5 (Agee, J., concurring). In *Krakauer*, this Court found the plaintiff had suffered a concrete injury because the defendant had intruded on the plaintiff's private space by calling plaintiff at home on several occasions. *See Krakauer*, 925 F.3d at 652-53. Thus, when the Court in *Garey* described the basis for the plaintiffs' standing there as "nearly identical" to that of the plaintiff in *Krakauer*, 35 F.4th at 921, it necessarily means that it mattered in *Garey* that the defendants there not only accessed private data but also—like the defendants in *Krakauer*—used it to carry out a concrete intrusion into the plaintiffs' private space.

Plaintiffs dismiss all this as "extrapolat[ion]." Resp. Br. 25. But it is plaintiffs' reading of *Garey* that unreasonably "extrapolate[s]" from the decision. Focusing on the fact that the Court in *Garey* did not restate the plaintiffs' allegations in the conclusion of its standing analysis, they take a

4

blinkered view of a single paragraph and insist that it must be read in isolation from the rest of the opinion.  Resp. Br. 22-24.  Even playing at that game, plaintiffs are wrong:  In the very paragraph plaintiffs rely on, *Garey* makes clear that the core of intrusion upon seclusion is the "right of the plaintiff . . . 'to be let alone.'"  35 F.4th at 922.  That reference—like the opinion's earlier statement that the theory of standing in *Garey* was "nearly identical" to that in *Krakauer*—only makes sense if the Court in *Garey* took into account the fact that the plaintiffs alleged that they received unsolicited advertising materials at their home that interfered with their right to be left alone.

But more to the point, decisions cannot be read in the cabined, piecemeal manner plaintiffs suggest—particularly when trying to identify their holdings.  As the stay panel held, plaintiffs' reading of *Garey*—like the district court's—"improperly excise[s] one sentence from the necessary specific context for considering the injury that had been alleged—the use of the plaintiffs' 'names and addresses on [accident] reports to mail unsolicited attorney advertising materials to the drivers involved in those crashes.'" Stay Order 5 (Agee, J., concurring) (second alteration in original) (quoting *Garey*, 35 F.4th at 920).  Put another way, given the facts the

plaintiffs alleged in *Garey*, the Court there would have had no reason to consider whether mere access to records stored in an agency-maintained system by agency employees—without any intrusion into a private space (virtual or otherwise)—would alone suffice to establish a concrete injury. That question simply was not presented in *Garey*, and plaintiffs badly err in claiming the decision nevertheless definitively answered that question in a precedential manner.

Finally, even if *Garey* itself is somehow unclear, the decision must also be read in light of this Court's subsequent decision in *O'Leary v. TrustedID, Inc.*, 60 F.4th 240 (4th Cir. 2023).  There, this Court clearly stated that it is "the unwanted intrusion into the home that marks intrusion upon seclusion."  *Id.* at 246.  Defendants do not contest that, under the Restatement and the traditional understanding of the tort of intrusion upon seclusion, those intrusions can be nonphysical and can be actionable even when they involve private spaces that are not the home.  But *O'Leary* nevertheless makes clear that the *kind* of intrusion contemplated by the tort of intrusion upon seclusion must be something like an intrusion into the home, *i.e.*, it must be (1) a serious and objectionable intrusion, tantamount to entering or peering into a personal space, and (2) into a private space in

6

which the plaintiff has a substantial and reasonable expectation of privacy and seclusion. Agency employees viewing records lawfully obtained and maintained by the agency, for purposes plaintiffs understood their records would be used when they voluntarily provided their information, bears no relation to that kind of offensive intrusion. And plaintiffs' interpretation of *Garey* is totally incompatible with this Court's analysis in *O'Leary*.

2. Plaintiffs alternatively claim that their position is supported by various out-of-circuit precedents. *See* Resp. Br. 26-28. But there, too, plaintiffs fail to identify any case finding standing based on the kind of injury plaintiffs allege here.

First, plaintiffs argue that courts have held that "intrusion upon seclusion merely requires access to a private 'space'" and does not "require . . . anything else [to] be gleaned as a result of that access." Resp. Br. 27. But that misses the point—an agency records system containing personal information lawfully obtained and maintained by the government is not tantamount to a "private 'space,'" at least not with respect to employees of the agency tasked with maintaining that system. Indeed, the cases cited in the student note that plaintiffs rely on only confirm how far afield the allegations in this case are from the core of intrusion upon

7

seclusion. *Id.* (citing Eli A. Meltz, Note, *No Harm, No Foul? "Attempted" Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431 (2015)). Those cases involve things like unlawfully tapping the plaintiffs' private phone, *Amati v. City of Woodstock*, 829 F. Supp. 998 (N.D. Ill. 1993), the installation of a one-way peephole in a high school changing room, *Geraci v. Conte*, No. 72440, 1998 WL 323564 (Ohio Ct. App. June 18, 1998), and the installation of a tape recorder in a women's restroom, *Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692 (N.D. Ohio 2005). Needless to say, what plaintiffs allege here is different in kind to the private spaces at issue, the expectations of privacy in those spaces, the nature of the intrusion alleged, and the offensiveness of the intrusion.

Second, plaintiffs attempt to analogize to various out-of-circuit cases where courts found standing when the plaintiffs alleged that third parties gained unauthorized or unlawful access to their personal information. Resp. Br. 24 n.3. But those cases make clear that unauthorized *third-party* disclosure is critical to establishing a sufficiently objectionable, offensive intrusion into a plaintiff's private information. *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 492 (9th Cir. 2019) ("When a third party [unlawfully] obtains the consumer's credit report … the consumer is

8

harmed"); *Persinger v. Southwest Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th

Cir. 2021) (similar); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846

F.3d 625, 638 (3d Cir. 2017) (finding analogue to prohibition against public

"dissemination of private information").  Indeed, one of the cases plaintiffs

cite discusses a different common-law analogue entirely:  *public* disclosure

of private facts.  *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285 (2d Cir.

2023).  And as plaintiffs recognize, Resp. Br. 25 n.4, one other court of

appeal has held that limited third-party disclosures of private information

are insufficient to establish standing.  *See Hunstein v. Preferred Collection &*

*Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240, 1245-50 (11th Cir. 2022) (en banc)

(sending private information to third-party mail vendor insufficient to

establish the level of public disclosure necessary for standing).

 Plaintiffs notably cite no cases finding a cognizable injury where the

plaintiff alleged only internal review of records by defendants, for

legitimate business purposes, containing information that is lawfully

obtained and maintained by the defendant.  That is not surprising, because

the Restatement explicitly states that—consistent with common sense—that

kind of internal review is not the kind of highly offensive intrusion

contemplated by the common law tort.  The notes to the Restatement make

clear that "[l]ocating and supplying information for one's own files is not an intrusion."  Restatement (Second) of Torts § 652B, Reporter's Note (Am. Law Inst. 1977).

In support of that point, the Restatement cites the Eighth Circuit's decision in *Tureen v. Equifax, Inc.*, 571 F.2d 411, 416 (8th Cir. 1978), which presented the same fact pattern alleged here.  The plaintiff there alleged that Equifax had unlawfully prepared a report about the plaintiff's claim history based on information maintained in Equifax's own records.  *Id.* at 413-14.  In rejecting plaintiffs' theory of intrusion upon seclusion, the Eighth Circuit explained that it was critical that the defendant "obtained the information about which plaintiff complains merely by means of searching defendant's own files containing a summary of defendant's own prior reports on plaintiff."  *Id.* at 416.  That was "hardly an act which intruded in any manner upon plaintiff."  *Id.*  Because there, as here, plaintiffs had no basis to challenge the collection and retention of their information, there was no violation of any recognized privacy interest.  *Id.* Other courts confronting the same facts have consistently followed the Restatement's admonition and concluded that those kinds of internal reviews are not the kind of highly objectionable intrusion contemplated by

10

the tort of intrusion upon seclusion. *See, e.g.*, *In re Trans Union Corp., Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004) ("Trans Union's accessing its own lawfully obtained files cannot be considered an unlawful intrusion."); *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 904 (Ill. App. Ct. 1990) (accessing information voluntarily provided to defendant does not amount to unauthorized intrusion).

As the government explained in its opening brief, plaintiffs provided their information to the government on the understanding that it would be regularly used by agency employees and others to perform the very tasks that DOGE team members intend to perform. *See* Br. 30-32. Tellingly, plaintiffs do not dispute that they did so. Nor do they dispute that other agency employees regularly access the relevant databases for those purposes. Those concessions are alone fatal to their claim of concrete injury. It cannot be highly offensive for agency employees to access records for the very purposes that plaintiffs agreed they could be used.

3.      Without a common-law analogue to the kind of injury they allege in this case, plaintiffs are left to make policy arguments in support of their position, relying heavily on legislative history of the Privacy Act and asserting that "[t]he Congress that passed the Act" in 1974 would be

11

"shocked" by the kind of standing analysis required by the Supreme Court's decision in *TransUnion*. Resp. Br. 39; *see also, e.g.*, Resp. Br. 1-3. But, of course, that is the whole point of *TransUnion*: Congress can create "a statutory prohibition or obligation and a cause of action" but may not override Article III's injury requirement. 594 U.S. at 426. Whatever Congress might have intended is irrelevant to the question whether plaintiffs have established the requisite constitutional standing. For the reasons discussed, they have not.

### B. Plaintiffs fail to identify a final agency action reviewable under the APA

1. To qualify as "agency action," the action must be an "agency rule, order, license, sanction, relief, or the equivalent." 5 U.S.C. § 551(13). While that definition is construed expansively, courts have long recognized that this definition of agency action "is not so all-encompassing as to authorize us to exercise 'judicial review [over] everything done by an administrative agency.'" *Independent Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (alteration in original) (quoting *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)). Agency decisions to grant employees access to internal agency systems are not a "rule, order, license,

sanction, … or the equivalent."  5 U.S.C. § 551(13).  And plaintiffs identify no case where a court has concluded that anything remotely like the agency activity at issue here is reviewable.  Finding no support in the text of the APA or case law, plaintiffs' arguments should be rejected.  At the very least, this Court should hold that the district court erred in concluding that plaintiffs are likely to succeed on their novel theory of agency action for the purpose of obtaining a preliminary injunction.  *See* Stay Order 13 (Richardson, J., concurring) (expressing "doubt[ that] the district court could so definitively find final agency action here").

Just as with their standing arguments, plaintiffs attempt to analogize this case to ones involving external disclosures of private information (Resp. Br. 31-33) that look nothing like the actions involved in this case.  Final agency decisions to *grant* a third party's request to view government records under the Freedom of Information Act, *see Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), or the Privacy Act, *see Doe v. Stephens*, 851 F.2d 1457 (D.C. Cir. 1988), bear no relationship to the facts of this case.  In those cases, the agency actions at issue were tantamount to "orders" or "relief" granting third parties' requests to access agency records pursuant to some claimed entitlement.  *See Chrysler*, 441 U.S. at 287-88 (responding to FOIA

13

request); *Doe*, 851 F.2d at 1459 (response to grant jury subpoena).  Agency decisions to allow their own employees access to data systems in order to perform their jobs are nothing like the facts presented in the cases plaintiffs rely on.

Nor do plaintiffs meaningfully respond to defendants' argument that the district court's expansive understanding of agency action would subject virtually every aspect of agencies' day-to-day management of internal operations to APA review.  *See* Br. 36-37.  Plaintiffs assert that there is some relevant distinction between an agency's decision to create an employee email account and an agency's decision to create an employee account for an internal data system.  Resp. Br. 33.  But plaintiffs offer no principled reason why that would be so.  They say only that they think this agency action is unlawful, while the creation of an email account would not be.  Resp. Br. 33-34.  Here, plaintiffs' argument again misses the mark: reviewability under the APA does not turn on whether the action is ultimately found to be lawful.  Indeed, in every APA case, the plaintiff bringing the action necessarily thinks the action they have identified is unlawful in some way.  So plaintiffs' proffered limitation is not a limitation at all.

14

Just as importantly, if internal decisions to grant, modify, stop, or expand agency employee access to data systems are reviewable "agency actions," "courts would be forced either to enter a disfavored 'obey the law' injunction or to engage in day-to-day oversight of the executive's administrative practices." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019). That is exactly what this Court has cautioned against. That kind of review is "foreclosed by the APA, and rightly so." *Id.*

2. As for whether the action plaintiffs identify is final, plaintiffs—like the district court—identify a single out-of-circuit precedent (*Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008)) and rest their entire argument on the assertion that this case is analogous to that one. Resp. Br. 34-35. As noted in the government's opening brief, that assertion is incorrect for numerous reasons. Br. 40. That case involved a "disclosure policy" that the agency had formally memorialized in several versions of an agency compliance manual over many years. *Venetian*, 530 F.3d at 928. The policy authorized agency employees to disclose confidential information to third parties in certain circumstances. *Id.* Those disclosures to third parties, once accomplished, had immediate material consequences for the plaintiff. *Id.* And the agency there did not seriously dispute that it

15

had adopted such a policy; it argued only that the agency's internal compliance manual was not itself final agency action because it was "merely a guidance document that does not affect its own or the public's legal obligations." *Id.* at 931. This case has none of those features, and *Venetian* is therefore entirely distinguishable.

But even if it were not, *Venetian* is an out-of-circuit precedent that is not binding on this court and valuable only to the extent it is persuasive. For all the reasons given in defendants' opening brief, *Venetian*'s reasoning is not persuasive here. The action plaintiffs identify here is not final because it does not regulate plaintiffs' conduct or result in any direct legal consequences for plaintiffs. Br. 39-40. That kind of agency action is not reviewable under the APA.

### C.    Plaintiffs' APA claims are foreclosed by the Privacy Act

As the government explained, Br. 41-43, Congress provided an adequate alternate remedy for alleged violations of § 552a(b) in the Privacy Act itself, thereby foreclosing APA review. *See* 5 U.S.C. § 704. Specifically, Congress permitted plaintiffs to sue for monetary damages for violations. *See id.* § 552a(g)(4). Moreover, Congress expressly allowed plaintiffs to obtain injunctive relief for other violations of the Act, indicating that its

16

decision not to permit suit for injunctive relief for violations of § 552a(b) was a deliberate one. *See* Br. 41-43. Despite plaintiffs' assertion that the "Congress that passed the Act would be shocked" at the notion that injunctive relief is unavailable, that was precisely the outcome Congress devised. And cases like this one may explain why. Rather than hamstring government operations by permitting suits for injunctive relief, Congress allowed plaintiffs to sue for damages in the event that an agency improperly discloses a plaintiff's information in violation of § 552a(b).

**D.    Plaintiffs' Privacy Act claim fails on the merits**

Even were this case justiciable, plaintiffs' would fail on the merits because they are not likely to succeed on their Privacy Act claim.

1.    Plaintiffs accept, as they must, that the statute expressly authorizes disclosure of covered records to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). And plaintiffs, like the district court, do not dispute that the Department of Government Efficiency (DOGE) team members at each agency qualify as employees of that agency for purposes of that exception. *See* JA697. Instead, plaintiffs focus their arguments entirely on whether defendants have produced

17

sufficient evidence to establish that those employees "require[d] access to

… [personally identifiable information (PII)] to perform their job duties."

Resp. Br. 40.

But plaintiffs, like the district court, err in how they define the

relevant inquiry:  Plaintiffs entire argument assumes—with no citation to

precedent or the text of the statute—that the "need to know" exception

requires some kind of particularized evidence showing a specific need to

look at PII contained in the record, rather than the record itself.  Resp. Br.

40-44.  As explained in the government's opening brief, that understanding

of the exception has no precedent in any case law, and plaintiffs are unable

to point to any case adopting anything like that understanding of the

statute.  Br. 49-52.  That no court has ever applied this kind of searching,

need-for-particular-PII review over the fifty-year life of the Privacy Act is

enough reason to be suspect about plaintiffs' (and the district court's)

approach.

But there is a more important reason to reject the district court's

approach:  Plaintiffs' understanding of the Privacy Act runs headlong into

the text of the statute itself.  As noted, the statute allows employees to

access a "record" if they have "a need for the record in the performance of

18

their duties." 5 U.S.C. § 552a(b)(1). The relevant unit of analysis, then—under the plain text of the exception—is whether the employee needs access to "the record." "Record," in turn, is defined as "any item, collection, or grouping of information about an individual … that contains his name" or other personally identifiable information. *Id.* § 552a(a)(4). So, if an employee needs to access a "collection, or grouping of information about an individual," *id.*, that is all that the plain text of the statue requires.

The district court, like plaintiffs, focused its analysis on whether the relevant employees demonstrated that, beyond needing to access the records contained in the relevant systems, they also needed to access the personal information contained in those records. But because the statute defines "record" as a grouping, item, or collection of information that *contains* PII, not the PII itself, nothing in the text of the statute authorizes the additional layer of "need" review that plaintiffs and the district court engage in.

That conclusion is further bolstered by common sense. Under the district court's view, it is difficult to imagine how an employee would ever be authorized to look at an agency record that contains personally identifiable information. Suppose a form lists a person's name, age, height,

19

and weight, in addition to other information.  Under the district court's approach, unless an employee can demonstrate a particularized "need" to know the person's height and weight, they would be prohibited from accessing the record without first undergoing some form of burdensome redaction review.  That kind of supervision of internal agency redaction and anonymization processes has no basis in the text of the statute and would result in an unworkable system under which employees performing all kinds of basic tasks would be prohibited from doing so, or only authorized to do so after engaging in a protracted process to determine which fields within the record would need to be subject to piecemeal redactions.  Plaintiffs' novel, contrary interpretation of the Privacy Act's exception for disclosure to "employees of the agency which maintains the record," should be rejected.  And without their novel interpretation of the "need to know" exception, plaintiffs' entire argument about the merits of their Privacy Act claim falls apart.

2.      Even putting aside the fundamental flaws in plaintiffs' understanding of the "need to know" exception, their critiques of the agencies' justifications here are not well taken.

20

Plaintiffs complain that defendants do not cite the administrative record to justify the disclosure, Resp. Br. 4, and that those records do not "show[] why DOGE affiliates require access to the PII in agency systems for their jobs," *id.* 41. There are at least two obvious problems with those complaints. First, as noted in defendants' opening brief (Br. 45-47), the "need" that justifies intra-agency disclosure here is uncommonly clear and direct: An Executive Order from the President directs these specific employees to modernize these data systems and ensure they are operating efficiently. Exec. Order No. 14,158 §§ 1, 3(b), 4(a), 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025). The Executive Order further directs agency heads to grant those employees access to these systems "to the maximum extent consistent with law" in order to achieve those objectives. *Id.* § 4(b). As Judge Richardson noted at the motions stage, "it does not stretch the imagination to think that modernizing an agency's software and IT systems would require administrator-level access to those systems, including any internal databases." Stay Order 14 (Richardson, J., concurring). It is unclear what else plaintiffs think is required. The fact that the "need" here can be explained by reference to an Executive Order instead of emails and other onboarding materials contained in the administrative record is only

21

proof that the need here is straightforward.  It certainly does not suggest plaintiffs are likely to succeed on their Privacy Act claims.

Second, it is unsurprising that the administrative record here is not particularly illuminating on this question given that the "agency actions" at issue here are routine, internal personnel decisions.  For the reasons already given, *supra* pp. 12-16, those internal agency human resources and staffing decisions are not subject to APA review.  The contents of the administrative records reflect that fact.  *See* Resp. Br. 41-44 (criticizing lack of explanation in internal "emails," "employment forms," and the like).

Relatedly, plaintiffs complain that defendants do not provide citations to the administrative record in support of the unremarkable assertion that non-DOGE employees have been given access to these systems for years without plaintiffs (or anyone else) expressing any concern about that access, and without any judicial oversight of those decisions.  Resp. 47-48.  But again, that is a reflection of the novel nature of plaintiffs' claims and their failure to identify a final agency action.  *See supra* pp. 12-16.  More fundamentally, plaintiffs' complaint is a red herring. Plaintiffs do not (and cannot) seriously dispute that the proposition is true. Some agency employees must have access to government systems that are

22

maintained and operated by the agency in order to maintain and operate them. Indeed, the district court itself recognized that certain OPM employees had a need to access the relevant systems. *See* JA662 n.3. And as explained in defendants' opening brief (Br. 48-50), plaintiffs give no reason—other than apparent policy disagreements with the underlying mission of DOGE—why these employees should be treated differently from any others for purposes of the Privacy Act.

If there were any doubt on the question whether DOGE employees are similarly situated to other employees at these agencies, a recent decision from the Southern District of New York partially dissolving a preliminary injunction against Treasury is instructive. *See New York v. Trump*, --- F. Supp. 3d --- , 2025 WL 1095147 (S.D.N.Y. Apr. 11, 2025). In that case, after considering detailed declarations submitted in support of the motion to dissolve, the court concluded that the DOGE employee at issue had been treated just like any other Treasury employee in every relevant way. He received the same training as other employees, *id.* at *8-9, went through the same vetting process, *id.* at *9-10, answered to the same chain of command, *id.* at *10, and was subject to the same mitigation procedures to ensure data is not misused, *id.* at *11. The district court

therefore dissolved the preliminary injunction to allow the employee access to Treasury systems.  *Id.*

3.     For the reasons given in defendants' opening brief, the data access that plaintiffs challenge is separately justified because DOGE employees need access to the relevant systems to address fraud, waste, and abuse.  Plaintiffs again complain that defendants do not provide citations to the administrative record to support the claim that DOGE employees are, as part of their duties, working to root out fraud, waste, and abuse. *But see* JA396.  If plaintiffs mean to challenge whether the President's directive to improve the efficiency of government systems includes that kind of work, that challenge is easily disposed of.  Ensuring systems are efficient necessarily includes ensuring that they do not promote waste, and abuse.  It also necessarily includes ensuring those systems are accurate and free from fraud.  In any event, to the extent there were any doubt on this score, the President has since issued an executive order—cited in defendants' opening brief—specifically directing all agencies to root out fraud, waste, and abuse.  This is far from a scenario where the government is saying that an exception applies based on the government's "say so." *Contra* Resp. Br. 4.

While defendants maintain that this justification would also qualify as a routine use, *see* Br. 52-53, this court need not address that basis to rule in defendants' favor on the Privacy Act issue. As noted, neither plaintiffs nor the district court disputes that the DOGE team members at issue in this case are all employees of the agencies that maintain the underlying systems. *See supra* p. 17. Thus, the "routine use" and "need to know" exceptions collapse together in this case, because the routine use identified—the need to redress fraud, waste, and abuse—also plainly demonstrates that the employees "have a need" to access the records "in the performance of their duties." 5 U.S.C. § 552a(b)(1). Thus, plaintiffs' arguments about whether defendants satisfy the various recordkeeping requirements associated with the routine use exception (Resp. Br. 48-49) are beside the point.

## II.    Plaintiffs Also Failed to Establish the Remaining Preliminary Injunction Factors

The remaining factors—irreparable harm, the balance of harms, and the public interest—likewise favor the government and fail to support the district court's injunction. Unsurprisingly, plaintiffs' arguments on each of those factors merely restate their arguments on the merits. *See* Resp. 50-56.

And plaintiffs do not seriously contest that, if they are not likely to succeed on the merits of their claims for any reason, they also cannot satisfy the remaining requirements for an injunction.

And even if plaintiffs were likely to prevail on the merits (which they are not), the remaining factors would not support a preliminary injunction. The district court's injunction thwarts the government's implementation of a vital Presidential initiative.  Conversely, plaintiffs experience no harm, let alone irreparable harm, from the mere fact that DOGE team members, like other agency employees, can access databases containing plaintiffs' personal information.  The balance of the equities and the public interest thus strongly favor allowing the important work of the DOGE team employees to proceed.

## CONCLUSION

For the foregoing reasons, this Court should vacate the preliminary injunction.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
GERARD SINZDAK

*s/ Simon G. Jerome*
JACK STARCHER
JACOB CHRISTENSEN
SIMON G. JEROME
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1673*
  *simon.g.jerome@usdoj.gov*

April 2025

27

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,364 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*s/ Simon G. Jerome*
Simon G. Jerome

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2025, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Service will be accomplished by the appellate CM/ECF system.

*s/ Simon G. Jerome*
Simon G. Jerome