No. 25-1282

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————————————

AMERICAN FEDERATION OF TEACHERS, ET AL.,

*Plaintiffs-Appellees,*

vs.

SCOTT BESSENT, ET AL.,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court for the District of
Maryland, Case No. 8:25-cv-00430-DLB
The Hon. Deborah L. Boardman

———————————————

## PETITION FOR REHEARING EN BANC

———————————————

Carson J. Scott
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000


Mark Hanna
David Rodwin
MURPHY ANDERSON PLLC
1401 K Street NW
Suite 300
Washington, D.C. 20005
Telephone: (202) 223-2620

John L. Schwab
Wendy Q. Xiao
Liam Gennari
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100


Xiaonan April Hu
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
Telephone: (202) 220-1100

*Counsel for Plaintiffs-Appellees*
*(additional counsel on inside cover)*

Kristy Parker
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW
Suite 163
Washington, D.C. 20006
Telephone: (202) 843-3092

Jessica A. Marsden
PROTECT DEMOCRACY PROJECT
510 Meadowmount Village Circle, No. 328
Chapel Hill, North Carolina 27517
Telephone: (202) 579-4582

**TABLE OF CONTENTS**

Page

GROUNDS FOR REHEARING EN BANC ............................................................. 1

INTRODUCTION ............................................................................................... 2

BACKGROUND ................................................................................................. 3

ARGUMENT ...................................................................................................... 6

I.    The Panel's "Multiplicative Problem" Analysis Is Contrary To
      Precedent And Misunderstands Basic Mathematics ....................................... 6

II.   The Panel's Standing Analysis Is Contrary To Precedent ........................... 12

CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Al-Adahi v. Obama*,
  613 F.3d 1102 (D.C. Cir. 2010) .................................................................. 10, 11

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA*,
  No. 25-1411 (4th Cir. 2025) .................................................................. 5

*Branion v. Gramly*,
  855 F.2d 1256 (7th Cir. 1988) .................................................................. 11

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) .................................................................. 7

*Dataphase Sys., Inc. v. CL Sys., Inc.*,
  640 F.2d 109 (8th Cir.1981) (en banc) .................................................................. 8

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) .................................................................. 7

*Di Biase v. SPX Corp.*,
  872 F.3d 224 (4th Cir. 2017) .................................................................. 8

*Doe v. Chao*,
  435 F.3d 492 (4th Cir. 2006) .................................................................. 9

*Doe v. Chao*,
  540 U.S. 614 (2004) .................................................................. 9

*FAA v. Cooper*,
  566 U.S. 284 (2012) .................................................................. 3, 13, 16

*Garey v. James S. Farrin, P.C.*,
  35 F.4th 917 (4th Cir. 2022) .................................................................. 1, 2, 12, 13, 14, 15

*Heglund v. Aitkin County*,
  871 F.3d 572 (8th Cir. 2017) .................................................................. 16

ii

# TABLE OF AUTHORITIES

**Page(s)**

*Hilton v. Braunskill,*
    481 U.S. 770 (1987)........................................................................6

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.,*
    846 F.3d 625 (3d Cir. 2017) ...................................................16

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,*
    48 F.4th 1236 (11th Cir. 2022) (en banc) ..........................12

*Krakauer v. Dish Network, LLC,*
    925 F.3d 643 (4th Cir. 2019) ...................................................15

*Mock v. Garland,*
    75 F.4th 563 (5th Cir. 2023) .....................................................7

*Nayab v. Cap. One Bank (USA), N.A.,*
    942 F.3d 480 (9th Cir. 2019) ...................................................16

*In re Nickelodeon Consumer Priv. Litig.,*
    827 F.3d 262 (3d Cir. 2016) .....................................................16

*Ohio v. EPA,*
    603 U.S. 279 (2024)..............................................................6, 7

*Perez-Denison v. Kaiser Found. Health Plan of the Nw.,*
    868 F. Supp. 2d 1065 (D. Or. 2012) ..................................15

*Perry v. Cable News Network, Inc.,*
    854 F.3d 1336 (11th Cir. 2017) ...........................................16

*Persinger v. Sw. Credit Sys., L.P.,*
    20 F.4th 1184 (7th Cir. 2021) ...............................................16

*Ramirez v. Collier,*
    595 U.S. 411 (2022).....................................................................7

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,*
    102 F.3d 12 (1st Cir. 1996).......................................................8

**Page(s)**

*Salazar v. Paramount Glob.*,
    133 F.4th 642 (6th Cir. 2025) ..................................................16

*Socha v. City of Joliet*,
    107 F.4th 700 (7th Cir. 2024) ...............................................15, 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..............................................................15

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) ................................................8

*Texas v. Seatrain Int'l, S.A.*,
    518 F.2d 175 (5th Cir. 1975) ..................................................7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)............................................................1, 15

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
    32 F.4th 852 (9th Cir. 2022) ..................................................7

STATE CASES

*People v. Collins*,
    68 Cal. 2d 319 (1968) ............................................................11

FEDERAL STATUTES

5 U.S.C. § 552a ..........................................................................3

5 U.S.C. § 706 ............................................................................3

Pub. L. No. 93-579, 88 Stat. 1896 § 2(b)......................................3

FEDERAL REGULATIONS

Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025)....................4

OTHER AUTHORITIES

83 Reference Guide on Statistics, 2004 WL 48151, at *49 (2d ed.) .......................11

iv

# TABLE OF AUTHORITIES

Brief of Respondent Elaine L. Chao, Secretary of Labor, *Doe v. Chao*, No. 02-1377, 2003 WL 22489257, at *38 & n.13 (U.S. Oct. 29, 2003) ..............................................................................................9

Chris Edwards, *A Recent Fourth Circuit Opinion Signals a Potential Shift in Preliminary Injunction Analysis*, JDSupra, 2025 WLNR 20544025 (Aug. 14, 2025)....................................................................9

Comm. on Gov't Operations, U.S. Senate, Legislative History of the Privacy Act of 1974, S. 3418 (Public Law 93-579), Source Book on Privacy 803 (Sept. 1976), available at https://www.justice.gov/d9/privacy_source_book.pdf......................................13

D. H. Kaye, *Statistics for Lawyers and Law for Statistics*, 89 Mich. L. Rev. 1520, 1543 (1991) .....................................................................10

John Allen Paulos, *Beyond Numeracy: Ruminations of a Numbers Man* 189 (1991)................................................................................10

John Allen Paulos, *Innumeracy: Mathematical Illiteracy and Its Consequences* 63 (1988)...................................................................10

## GROUNDS FOR REHEARING EN BANC

Counsel expresses a belief, based on a reasoned and studied professional judgment, that:

1.     The panel's decision creates a new preliminary injunction standard that conflicts with precedents of the Supreme Court, this Circuit, and every other Circuit, and fundamentally misunderstands probabilities.  En banc review is necessary to secure and maintain uniformity of decisions in this Court and avoid a circuit conflict. Review is also warranted because the panel's test would work a sea change in the law of preliminary relief in this Circuit and incentivize litigants to waste judicial resources.  It therefore presents a question of exceptional importance.

2.     The panel's decision on standing conflicts with this Court's decision in *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022), and the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), as well as decisions of at least seven Circuits.  Review is necessary to secure and maintain uniformity of decisions in this Court, and to avoid a circuit conflict.

**INTRODUCTION**

In defiance of the precedents of the Supreme Court, this Court, and every other Court of Appeals, the panel majority announced a new standard that purports to transform the traditional test for preliminary relief into a flawed mathematical formula. Under this new standard, it *does not matter* if plaintiffs are likely (or even very likely) to prevail on every dispositive issue—the mere presence of multiple issues "crater[s]" a plaintiff's ability to obtain preliminary relief. Op. at 9. The panel decision replaces the Supreme Court's "likelihood of success" standard with a demand that plaintiffs establish almost an absolute certainty that they will prevail on the merits.

Left uncorrected, the panel decision will mean judges no longer evaluate the law and facts on each issue in order to decide whether Plaintiffs are likely to prevail; they will determine only that there are multiple "potentially dispositive" issues, shrug their shoulders, and deny relief. And Defendants will be incentivized to raise as many issues as possible—no matter how tenuous—to game the probabilities. That is not how judicial review works. En banc review is needed for this reason, alone.

En banc review is also necessary to correct the panel's standing analysis, which disregarded binding precedent and the guidance of the Supreme Court. The panel's decision is directly contrary to *Garey v. James S. Farrin, P.C.*, 35 F.4th 917

(4th Cir. 2022), and flatly ignores what the *Garey* court actually said in favor of a hypothesis about what it might have secretly thought.

No previous court has suggested that judging is a mere mathematical exercise, or that precedent is found not in this Court's written words, but in speculation about its unwritten reasoning. The panel's sharp departure from established precedents and fundamental pillars of judicial review requires rehearing en banc.

## BACKGROUND

The Privacy Act "provide[s] certain safeguards for an individual against an invasion of personal privacy" by the federal government. *FAA v. Cooper*, 566 U.S. 284, 295 (2012) (quoting Pub. L. No. 93-579, 88 Stat. 1896 § 2(b)). Under the Act, subject to enumerated exceptions, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except . . . with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b).

Plaintiffs sued Defendants under the Administrative Procedure Act ("APA") for disclosing their personally identifiable information ("PII") without their consent to more than two dozen DOGE affiliates in violation of the Privacy Act. *See* 5 U.S.C. § 706 (courts may redress agency action "not in accordance with law"). Plaintiffs—teachers, nurses, scientists, engineers, veterans, and federal workers— entrusted their confidential records to Defendants and "expected that the government

3

would zealously safeguard access to [their] information," and use their data "only for legally authorized purposes." JA80.

Defendants claim that their violations of the Privacy Act were permissible because (1) DOGE affiliates needed access to carry out the Executive Order establishing DOGE and directing it to "moderniz[e] Federal technology and software to maximize governmental efficiency and productivity," Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025); and, (2) alternatively, to "root out fraud, waste, and abuse," Reply.Br.24. But the administrative records contain no evidence explaining why DOGE affiliates would need access to millions of Americans' unredacted PII to accomplish either task.

After an exhaustive review of the administrative records, the district court issued a "thorough and cogent Opinion," Op. at 26 (King, J., dissenting), that preliminarily enjoined Defendants from disclosing Plaintiffs' PII to DOGE affiliates. A divided panel stayed the injunction pending appeal.[1] The same divided panel then relied on a new standard it dubbed the "multiplicative problem" to vacate the district court's preliminary injunction. *Id.* at 9. The majority decided that "the[] likelihood of success overall is the product of [Plaintiffs'] probability of success on each of the independent, dispositive issues." *Id.* Thus, "[e]ven if a plaintiff has good odds to win any one issue"—or even all of them—"as [the] probabilities are

---

[1] The Court denied initial hearing en banc on the stay motion by an 8-7 vote.

4

multiplied, their product shrinks rapidly" and the plaintiff's "overall odds crater." *Id.*

Because the majority identified four issues—(1) standing; (2) final agency action; (3) existence of a cause of action under the APA; and (4) the applicability of the Privacy Act's need-to-know exception—it held that Plaintiffs were required to "show an extremely high likelihood of success on each individual issue." *Id.* In direct contravention of this Court's decision in *Garey*, the panel held that Plaintiffs were unlikely to have standing because the alleged Privacy Act violations were not sufficiently analogous to any harm recognizable at common law. *Id.* at 12–17. Without reaching a conclusion on the other issues, the panel held that under its newly announced standard the "statistically surer conclusion" was that "Plaintiffs have failed . . . to show that they will likely prevail on *all* of these issues combined." *Id.* at 23.[2]

Judge King dissented on multiple grounds, including that the panel majority had "conjure[d]" an impermissibly "heightened standard" for preliminary injunctions. *Id.* at 25.

---

[2] Concurrently pending before the Court is a separate case involving the same issues. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA*, No. 25-1411 (4th Cir. 2025). That case is scheduled to be heard, en banc, on September 11, 2025.

## ARGUMENT

## I.     The Panel's "Multiplicative Problem" Analysis Is Contrary To Precedent And Misunderstands Basic Mathematics

The panel opinion announces a flawed new standard for evaluating preliminary injunctions that purports to quantify the likelihood of a plaintiff prevailing on each "issue" identified by the Court, then multiplies those probabilities together to determine a plaintiff's overall likelihood of success on the merits.  It demands that in the many cases involving multiple "potentially dispositive" merits issues, a plaintiff seeking a preliminary injunction must "show an extremely high likelihood of success on each individual issue."  Op. at 8.  This approach conflicts with decisions of the Supreme Court and of every other Circuit, incentivizes litigants to raise meritless arguments, and misapplies mathematics.

1.     The panel's formulaic approach cannot be reconciled with Supreme Court precedent.  The Supreme Court has cautioned that "the traditional stay factors," which mirror the preliminary injunction test, "cannot be reduced to a set of rigid rules," *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) (Rehnquist, C.J.), and it has never evaluated likelihood of success by relying strictly on probability.

To take a recent example, the government raised multiple challenges to Ohio's APA claim in *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 295–98 (2024).  Each argument would have been dispositive.  *See id.*; *see also id.* at 322 (Barrett, J., dissenting) (concluding applicants were "unlikely to succeed" where

6

they "must run the table" by "surmounting *all* of these significant obstacles"). Under the panel's new theory, Ohio would have had no chance to prevail. In reality, the Court—without any mention of the panel's "multiplicative problem"—determined that Ohio was "*likely* to prevail" and granted the stay application. *Id.* at 292 (emphasis added); *see also, e.g.*, *Ramirez v. Collier*, 595 U.S. 411, 421–28, 436 (2022) (granting injunction despite presence of multiple, dispositive issues).

2. The panel's approach puts this Circuit at odds with its sister Circuits, nearly all of which have *expressly* rejected attempts to reduce the preliminary injunction factors to a strict formula. *See, e.g.*, *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024) ("Given the background of the rules of equity, we should not treat the four-factor test as a mechanical algorithm."); *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) ("For preliminary injunctions, 'none of the . . . prerequisites has a fixed quantitative value.'" (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (alteration in original))); *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 863 (9th Cir. 2022) (district court may not "forgo legal analysis just because it has not identified precedent that places the question beyond debate"); *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 36 (2d Cir. 2010) ("The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability

test . . . . Thus, an effort to apply the probability language to all cases with mathematical precision is misplaced." (quoting *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc))); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996) ("[T]he trial court, at the preliminary injunction stage, need not predict the eventual outcome on the merits with absolute assurance."); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) ("[L]ikelihood of success in the appeal is not a rigid concept.").

Prior to the panel's decision, the law in this Circuit was in accord: "A plaintiff need not establish a '*certainty* of success,' but must make a clear showing that he is likely to succeed at trial." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (emphasis added) (citation omitted). The panel opinion cannot be squared with any of these cases. By elevating mathematical probabilities above all else, the opinion reduces the preliminary injunction test to a wooden formula *and* requires plaintiffs to establish near-certainty of success in cases presenting multiple issues.

3.  The majority's holding incentivizes litigants to waste judicial resources with weak or frivolous arguments. The panel itself explained why: Because "[t]he mere existence of multiple issues disfavors plaintiffs," and the addition of new issues "crater[s]" a plaintiff's "overall odds" of success, a defendant can all but guarantee the motion will be defeated by raising enough issues and playing a numbers game. Op. at 9 & n.4. Consider: If there are just two "potentially dispositive" issues, a

70% chance of plaintiff prevailing on each issue would be insufficient, because under the panel's theory the combined likelihood of success would be just 49%. Where four issues are identified, as here, the court must find that the plaintiff has an overwhelming (85%) likelihood of winning on every issue.

Litigants have taken note; one practitioner has already advised that parties opposing an injunction in the Fourth Circuit should "exploit the [panel's] framework" by "highlight[ing] every independent issue to lower the aggregate chance of plaintiff success." Chris Edwards, *A Recent Fourth Circuit Opinion Signals a Potential Shift in Preliminary Injunction Analysis*, JDSupra, 2025 WLNR 20544025 (Aug. 14, 2025).

This case illustrates how the panel majority's new test invites defendants to raise meritless issues. One of the panel's "potentially dispositive" issues was that the Privacy Act does not allow for a cause of action under the APA. But as the panel recognized, both the Fourth Circuit and the Supreme Court have already stated that the APA *does* provide a cause of action for a Privacy Act violation. Op. at 20 (citing *Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004); *Doe v. Chao*, 435 F.3d 492, 504 n.17 (4th Cir. 2006)). Indeed, the Supreme Court did so *at the government's urging*. *See* Brief of Respondent Elaine L. Chao, Secretary of Labor, *Doe v. Chao*, No. 02-1377, 2003 WL 22489257, at *38 & n.13 (U.S. Oct. 29, 2003) (arguing a litigant may "pursu[e] injunctive relief under the [APA] to halt any ongoing agency violation of

the Privacy Act"). Yet the panel refused to decide this straightforward legal issue—or even to predict its likely resolution—and instead counted it as another "obstacle[]" in the "asymmetric gauntlet" facing plaintiffs, Op. at 8, 11, thus rewarding Defendants for raising a foreclosed argument.

4. The panel's approach also ignores basic mathematics. Most prominently,[3] the panel ignores the concept of conditional probability in announcing that Plaintiffs must show an "extremely high likelihood of success" on each issue. Op. at 9. "Many mundane mistakes in reasoning can be traced to a shaky grasp of the notion of conditional probability." *Al-Adahi v. Obama*, 613 F.3d 1102, 1105 (D.C. Cir. 2010) (quoting John Allen Paulos, *Innumeracy: Mathematical Illiteracy and Its Consequences* 63 (1988)). While "some events are independent (coin flips, for example), other events are dependent: 'the occurrence of one of them makes the occurrence of the other more or less likely.'" *Id.* (quoting John Allen Paulos, *Beyond Numeracy: Ruminations of a Numbers Man* 189 (1991)).

The holistic approach to a merits case involving multiple issues—the approach that has been faithfully applied for decades—*accounts for the interplay between the issues* when assessing a plaintiffs' overall likelihood of success. Indeed,

_____

[3] The majority opinion contains multiple misapplications of mathematics. Requiring district courts to apply its new standard will likely result in the same because "when a lawyer acts as his own statistician, the performance is about what you would expect from a statistician who acts as his own lawyer." D. H. Kaye, *Statistics for Lawyers and Law for Statistics*, 89 Mich. L. Rev. 1520, 1543 (1991) (cleaned up).

courts that "do not take into account conditional probability are prone to making mistakes in judging evidence." *Id.* The panel's formulaic approach, by contrast, ignores conditional probability and simply assumes, without analysis, that a plaintiff's likelihood of prevailing on any one issue is wholly independent. Such "casual assumptions about independence should be questioned," 83 Reference Guide on Statistics, 2004 WL 48151, at *49 (2d ed.), because they lead to obvious errors, *e.g.*, *People v. Collins*, 68 Cal. 2d 319, 328 (1968) (overturning conviction due to "glaring defect" in probability analysis: "[n]o proof was presented that the characteristics selected were mutually independent."). "In order to avoid the errors produced by mindless multiplication, the statistician" must first determine that the events at issue are, in fact, independent. *Branion v. Gramly*, 855 F.2d 1256, 1264–65 (7th Cir. 1988) (Easterbrook, J.) (rejecting approach that "simply multiplied two small numbers to get a smaller one, without describing why these were plausible numbers or why we ought to multiply them"). The panel did not even attempt to do so.

Even cursory consideration of the panel's four "potentially dispositive" issues shows they cannot be assumed to be independent. Consider, for example, the questions of standing and final agency action. Defendants argued that Plaintiffs did not suffer a concrete harm because the disclosures were made not to third parties, but to government employees. Op.Br.27–32. And they contended that the

disclosures were not final agency action for the same reason, citing a standing case to argue that the harm from "internal disclosures" was insufficient to constitute "direct and immediate consequences." Op.Br.40–41 (citing *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240, 1245–50 (11th Cir. 2022) (en banc)). If a judge rejects the first argument, she is more likely to reject the second, and vice versa. The issues are not independent and the panel therefore erred in simply multiplying the probabilities of success on each issue.

## II. The Panel's Standing Analysis Is Contrary To Precedent

The panel's suggestion that Plaintiffs likely cannot establish Article III standing flouts this Court's decision in *Garey*, violates Supreme Court precedent, and splits from at least half of the Court's sister Circuits.

1. The panel's decision directly conflicts with *Garey*, which held that plaintiffs have Article III standing when they allege that defendants "obtain[ed]" their personal information "for an impermissible purpose in violation of [the] law." 35 F.4th at 922. The panel holds that Plaintiffs "seemingly lack standing" even though they have alleged an *indistinguishable harm*—the disclosure of their information to DOGE affiliates for purposes unauthorized by the Privacy Act. Op. at 12. The two decisions are irreconcilable and require en banc review.

In *Garey*, plaintiffs sued under the Driver's Privacy Protection Act ("DPPA") after personal injury lawyers obtained vehicular accident reports containing their

names and addresses. 35 F.4th at 920. This Court held that plaintiffs suffered a concrete injury when "their privacy [was] invaded by Defendants' knowingly obtaining [their] name and address from a motor vehicle record for an impermissible purpose in violation of law." *Id.* at 922. Because "the DPPA is aimed squarely at 'the right of the plaintiff . . . to be let alone,'" the plaintiffs in that case had alleged an injury sufficiently analogous to common law privacy torts. *Id.* (citation omitted).

No principled basis exists to distinguish *Garey* from the facts of this case. Just as in *Garey*, Plaintiffs have alleged a violation of their privacy rights based on Defendants' unauthorized disclosure of their PII. And just as in *Garey*, it is indisputable that the violated statute "serves interests similar to those protected by . . . privacy torts," *Cooper*, 566 U.S. at 294, including the right "to be let alone," Comm. on Gov't Operations, U.S. Senate, Legislative History of the Privacy Act of 1974, S. 3418 (Public Law 93-579), Source Book on Privacy 803 (Sept. 1976) ("Source Book").[4]

In concluding otherwise, the panel majority mischaracterizes *Garey* as holding that the plaintiffs had established injury-in-fact because the defendant lawyers had obtained *and used* the plaintiffs' information to send mailings to their homes. Op. at 15. That is indisputably not what *Garey* held. There were two sets of plaintiffs in *Garey*, one of which alleged only that the lawyers had unlawfully

---

[4] Available at https://www.justice.gov/d9/privacy_source_book.pdf.

obtained their personal information. 35 F.4th at 923. This group of plaintiffs affirmatively "eschew[ed] a 'use' or 'disclosure' theory." *Id.* The *Garey* court therefore limited its analysis of standing to the plaintiffs' allegations that their personal information had been obtained—but not used or further disclosed—by the personal injury lawyers. *Id. Garey* held those allegations were sufficient to establish standing.

Rather than accept *Garey*'s plain language, the panel hypothesizes that even though the *Garey* plaintiffs' "complaint only asserted that the attorneys violated the [DPPA] by 'obtaining' their information," "they were permitted to *establish their concrete injury*" under the "use" theory—"by alleging that they were sent unwanted ads in the mail." Op. at 16–17 (emphasis added). Nothing in *Garey* actually says that. It says the opposite: "Having amended their complaint to jettison a 'use' theory of DPPA liability and bring only an 'obtaining' claim, the *Garey* Plaintiffs *cannot now seek standing based on the 'use' of their personal information*." 35 F.4th at 923 (emphasis added). Because *Garey* concluded that plaintiffs establish standing when their information is disclosed to—but not used by—unauthorized persons, and the panel opinion concluded the opposite, the decisions are irreconcilable and require en banc review.

2.     The panel decision also contravenes Supreme Court precedent. The panel held that Plaintiffs likely lack a "concrete injury" because the clear invasion

of privacy that they are suffering does not perfectly map onto a common-law tort.[5] Op. 12–13. But the Supreme Court has repeatedly held that Article III does not require "an exact duplicate in American history and tradition." *TransUnion*, 594 U.S. at 425; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Even if a claim "differ[s]" in some way from common law torts, courts are not required to "import the elements of common law torts, piece by piece." *Garey*, 35 F.4th at 922 (quoting *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 653 (4th Cir. 2019)).

The panel ignored that guidance by flyspecking the elements of intrusion upon seclusion. The panel questioned, for example, whether Plaintiffs were subjected to the precise "feeling of unease" required by the common law tort, Op. at 12, and posited that the sheer volume of sensitive data improperly accessed by Defendants somehow set Plaintiffs' claims apart, *id.* at 13. In effect, the panel required Plaintiffs to show that they *actually satisfied* the elements of the tort.

The proper test, however, is whether the statute at issue guards against the same "types of harms" as a common law tort, *Krakauer*, 925 F.3d at 654, and the Supreme Court has already recognized the Privacy Act "serves interests similar to those protected by [the] privacy torts, [and] there is good reason to infer that

---

[5] The panel erred on this point, too. Courts regularly conclude that the unauthorized access of personal information supports a claim for intrusion upon seclusion. *See, e.g.*, *Socha v. City of Joliet*, 107 F.4th 700, 711–12 (7th Cir. 2024); *Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F. Supp. 2d 1065, 1089–90 (D. Or. 2012); *see also* Ans.Br.27–30.

Congress relied upon those torts in drafting the Act," *Cooper*, 566 U.S. at 295. That is all *TransUnion* and *Spokeo* require, and the panel's contrary decision provides an additional basis for en banc consideration.

3.    The panel's holding is also contrary to the decisions of multiple other Circuits, which recognize that deprivation of "the right to keep private the sensitive information about his or her person" constitutes a concrete harm without regard for how, if at all, that information is then used.[6] *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 492–93 (9th Cir. 2019); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638–41 (3d Cir. 2017) ("unauthorized dissemination of personal information" constitutes a concrete injury); *Salazar v. Paramount Glob.*, 133 F.4th 642, 646–48 (6th Cir. 2025) (similar); *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021) (similar); *Heglund v. Aitkin County*, 871 F.3d 572, 577 (8th Cir. 2017) (similar); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340–41 (11th Cir. 2017) (similar).[7]

---

[6]  In holding that plaintiffs have standing to challenge the unlawful disclosure of their personal data, these Circuits sometimes have analogized to the Privacy Act's safeguards. *E.g., In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016).

[7] The panel suggests that the intrusion into Plaintiffs' privacy is "different in kind" from the harms that establish intrusion upon seclusion because the information is viewed only by those within the government, Op. at 13–14, but it offers no support for this proposition. The caselaw is to the contrary. *See, e.g.*, *Socha*, 107 F.4th at 711 (holding plaintiff properly alleged intrusion upon seclusion based on a police officer's unauthorized review of police records and rejecting argument that because

## CONCLUSION

The Court should grant rehearing en banc.

DATED: September 8, 2025          MUNGER, TOLLES & OLSON LLP


By: _____/s/John L. Schwab_____

| | |
|---|---|
| Carson Scott | John L. Schwab |
| MUNGER, TOLLES & OLSON LLP | Wendy Q. Xiao |
| 560 Mission St., 27th Floor | Liam Gennari |
| San Francisco, CA 94105 | MUNGER, TOLLES & OLSON LLP |
| Telephone: (415) 512-4000 | 350 South Grand Avenue, 50th Floor |
| | Los Angeles, California 90071 |
| | Telephone: (213) 683-9100 |
| | |
| Mark Hanna | |
| David Rodwin | Xiaonan April Hu |
| MURPHY ANDERSON PLLC | MUNGER, TOLLES & OLSON LLP |
| 1401 K Street NW | 601 Massachusetts Avenue NW, |
| Suite 300 | Suite 500 E |
| Washington, D.C. 20005 | Washington, D.C. 20001 |
| Telephone: (202) 223-2620 | Telephone: (202) 220-1100 |
| | |
| Kristy Parker | Jessica A. Marsden |
| PROTECT DEMOCRACY PROJECT | PROTECT DEMOCRACY PROJECT |
| 2020 Pennsylvania Ave. NW, | 510 Meadowmount Village Circle |
| Suite 163 | No. 328 |
| Washington, DC 20006 | Chapel Hill, NC 27517 |
| Telephone: (202) 843-3092 | Telephone: (202) 579-4582 |

*Counsel for Plaintiffs-Appellees*

---

the City "as an entity, was authorized" to view the records, the police officer's intrusion was "just an organization viewing its own records").

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 3,898 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced 14-point Times New Roman font using Microsoft Word.

DATED: September 8, 2025          MUNGER, TOLLES & OLSON LLP


By:     */s/John L. Schwab*

          *Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED: September 8, 2025      MUNGER, TOLLES & OLSON LLP


By:     _/s/John L. Schwab_

*Counsel for Plaintiffs-Appellees*