No. 25-1282

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

AMERICAN FEDERATION OF TEACHERS, et al.,

Plaintiffs-Appellees,

v.

SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY,
et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Maryland

———————————

**RESPONSE IN OPPOSITION TO PETITION FOR REHEARING EN
BANC**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
JACK STARCHER
SIMON JEROME
JACOB CHRISTENSEN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-8877*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

BACKGROUND ..................................................................................3

ARGUMENT .......................................................................................5

I.      The Panel Decision Did Not Create a Heightened Standard for
        Preliminary Relief. ....................................................................6

II.     The Panel's Standing Analysis Is Consistent with the Precedent
        of This Court, the Supreme Court, and Every Other Circuit. ..............13

CONCLUSION .................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

*American Fed'n of Teachers v. Bessent*,
    152 F.4th 162 (4th Cir. 2025) .................................. 1, 2, 4, 5, 7, 9, 13, 14, 16, 17

*Cruz-Medina v. Noem*,
    No. 25-CV-1768-ABA, 2025 WL 2841488 (D. Md. Oct. 7, 2025) .................11

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) .................................................................6

*Frazier v. Prince George's County*,
    86 F.4th 537 (4th Cir. 2023) ................................................................7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. TOC, Inc.*,
    528 U.S. 167 (2000) ...........................................................................14

*Garey v. James S. Farrin, P.C.*,
    35 F.4th 917 (4th Cir. 2022) ............................................. 2, 13, 14, 15

*Guille v. Eldridge*,
    No. 7:24-CV-00786, 2025 WL 2807046 (W.D. Va. Sep. 26, 2025) ................11

*John Doe v. Board of Regents of Univ. Syst. of Md.*,
    No. 25-CV-03239, 2025 WL 2897343 (D. Md. Oct. 10, 2025) .......................11

*Krakauer v. Dish Network, LLC*,
    925 F.3d 643 (4th Cir. 2019) ...............................................................15

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) .............................................................................6

*Moon Dot, Inc. v. Q Shack Corp.*,
    No. 3:25-CV-00396-KDB-SCR, 2025 WL 2420990
    (W.D.N.C. Aug. 21, 2025) ...................................................................11

*Munaf v. Geren*,
   553 U.S. 674 (2008) ...................................................................... 7, 8

*National Ass'n for the Advancement of Colored People v. United States*,
   No. 8:25-CV-00965-JRR, 2025 WL 2402191 (D. Md. Aug. 19, 2025)...... 10-11

*Pittson Co. v. United States*,
   199 F.3d 694 (4th Cir. 1999) ...................................................................... 10

*PSEG Renewable Transmission LLC v. Alvi Props., LLC*,
   No. 25-CV-2296-ABA, 2025 WL 2684868 (D. Md. Sep. 2, 2025) ........... 11-12

*Socha v. City of Joliet*,
   107 F.4th 700 (7th Cir. 2024) ...................................................................... 18, 19

*Thomas v. Fuentes*,
   No. 9:25-CV-10843-RMG-MGB, 2025 WL 2697663
   (D.S.C. Aug. 22, 2025), *report and recommendation adopted*,
   No. 9:25-CV-10843-RMG, 2025 WL 2695251
   (D.S.C. Sep. 22, 2025) ...................................................................... 11

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...................................................................... 16, 17

*Tureen v. Equifax, Inc.*,
   571 F.2d 411 (8th Cir. 1978) ...................................................................... 18

*Winter v. NRDC*,
   555 U.S. 7 (2008) ...................................................................... 6

**Rules:**

Fed. R. App. P. 40(b) ...................................................................... 5

Fed. R. App. P. 40(c)...................................................................... 5

**Other Authorities:**

Restatement (Second) of Torts § 652B, Reporter's Note (1977) ......................18

11A *Wright & Miller's Federal Practice & Procedure* § 2948 (2d ed. 1995)..........6

## INTRODUCTION

This is not the first time this Court has considered whether to take this case *en banc*. This Court declined to take this case *en banc* at the motions stage. And while this Court set the merits of a similar appeal challenging data systems access at a different agency for initial hearing *en banc*, it did not do so here. Plaintiffs' petition gives no reason to consider this case *en banc* now.

Contrary to plaintiffs' suggestion, the panel majority made clear that it did not apply a "heightened standard" for preliminary injunctive relief, explaining that "the district court was required to find that Plaintiffs here were 'likely to succeed on the merits,' just as it would for any other preliminary injunction." *American Fed'n of Teachers v. Bessent*, 152 F.4th 162, 170 (4th Cir. 2025). The panel's decision simply explained an obvious point that plaintiffs do not seriously contest: It is harder for a party to carry its heavy burden to show that it is clearly likely to succeed on the merits where, as here, the party's theory of success on the merits requires succeeding on multiple independent issues, failure on any of which would preclude relief.

Plaintiffs nevertheless attempt to read an illustrative "example" given in a footnote, *Bessent*, 152 F.4th at 170 & n.4, as "transform[ing] the traditional test for preliminary relief into a flawed mathematical formula." Pet. 1. But the panel majority did not perform any mathematical calculations in holding that plaintiffs lose. It did not need to, because it concluded that plaintiffs failed to show that they were likely to establish standing, which was itself dispositive, and moreover had not shown they were likely to succeed on any of the other dispositive legal issues raised on appeal. The panel therefore had no reason to consider the sorts of hypotheticals that plaintiffs present in their petition—where the moving party is substantially favored on each issue presented—and it could not have ruled on those questions. If there were any doubt on that score, at least seven district court decisions have cited the panel opinion since it issued. None of those lower courts has understood the decision to require anything like the sort of "flawed mathematical formula" that plaintiffs suggest the panel opinion compels.

Plaintiffs are also deeply wrong to suggest that the decision here conflicts with this Court's decision in *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022). The panel majority addressed *Garey* at length,

explaining that the facts in *Garey* are different from plaintiffs' allegations here in almost every possible respect and that *Garey* makes clear those factual differences matter. Plaintiffs give no coherent response to the panel decision's analysis, nor do they acknowledge the glaring differences between this case and *Garey*.

Plaintiffs are just as wrong to claim that the panel's decision diverges from decisions of other circuits. To the contrary, it is plaintiffs' standing theory that is inconsistent with Supreme Court precedent, the law of other courts, and black letter law as expressed in the Restatement of Torts. Despite multiple rounds of briefing this issue, plaintiffs have never identified any case where standing was found on facts remotely like what plaintiffs alleged.

## BACKGROUND

Plaintiffs brought this action challenging internal data systems access decisions at three different federal agencies. In district court, plaintiffs obtained a preliminary injunction. In granting that injunction, the district court concluded that plaintiffs were likely to succeed on the merits of their claims based on several novel and unprecedented theories, including (1) that plaintiffs have standing based solely on discomfort they experience

3

from certain federal government employees having general access to systems containing their personal information; (2) that internal agency decisions about how to onboard employees are final reviewable agency action under the Administrative Procedure Act (APA); and (3) that the Privacy Act authorizes federal courts to second guess whether certain agency employees need access to government systems in order to modernize them.

The government appealed. This Court granted a stay of the district court's decision, and this Court refused to reconsider that stay decision *en banc*. After full briefing and argument, a panel of this Court vacated the district court's preliminary injunction because plaintiffs are not likely to succeed on the merits. That was so because plaintiffs likely do not have standing, which alone was fatal to the preliminary injunction. *American Fed'n of Teachers v. Bessent*, 152 F.4th 162, 171-74 (4th Cir. 2025). The panel went on to conclude that plaintiffs had also failed to show that they were likely to succeed in establishing that the actions they challenge are reviewable under the APA or that their allegations make out a violation of the Privacy Act. *Id.* at 174-77.

Judge King dissented.  The dissent did not engage with the panel's lengthy legal analysis on the numerous defects with plaintiffs' theory of success on the merits.  Instead, the dissent simply stated that it agreed with the district court's analysis and characterized the panel majority as having applied a "heightened standard" in evaluating the preliminary injunction. *Bessent*, 152 F.4th at 177-79 (King, J., dissenting).

Meanwhile, in a separate case, another district court issued a preliminary injunction based on the same theories.  *See American Fed'n of State, Cnty. & Mun. Emps. v. SSA*, No. 25-1411 (4th Cir.).  After this Court refused to stay that decision, the government went to the Supreme Court, which agreed with the government and granted a stay.  This Court decided to set that case for initial hearing *en banc*, and oral argument was held on September 11, 2025.

## ARGUMENT

"Rehearing *en banc* is not favored and ordinarily will" not be allowed unless it is necessary to secure or maintain uniformity of the court's decisions or "the proceeding involves one or more questions of exceptional importance."  Fed. R. App. P. 40(b), (c).  This case does not satisfy those requirements, and the petition should be denied.

5

## I.    The Panel Decision Did Not Create a Heightened Standard for Preliminary Relief.

Plaintiffs primarily argue that the panel decision warrants *en banc* review because it creates a new standard for obtaining preliminary relief. Pet. 6-12.  That argument rests on a caricature of the panel majority's decision that depends almost entirely on a single footnote in which the majority drew a parallel with principles of probability.  But a fair reading of the panel majority's opinion illustrates that it merely restates well-settled principles about the standard for obtaining preliminary injunctive relief.

1.    The Supreme Court has explained that a preliminary injunction "is an extraordinary remedy never awarded as of right," *Winter v. NRDC*, 555 U.S. 7, 24 (2008), and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A *Wright & Miller's Federal Practice & Procedure* § 2948 (2d ed. 1995)).  This Court has likewise observed that, while a "plaintiff need not establish a 'certainty of success,' [he] must make a clear showing that he is likely to succeed at trial."  *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).  The standard is necessarily asymmetrical: "[A] preliminary injunction can be granted only if every factor is met," but

6

"*denying* a preliminary injunction only takes the rejection of a single factor." *Frazier v. Prince George's County*, 86 F.4th 537, 544 (4th Cir. 2023). As a result, granting a preliminary injunction should be "the exception," not "the rule." *Munaf v. Geren*, 553 U.S. 674, 690 (2008).

In short, a party moving for a preliminary injunction must make a "clear showing" that they have satisfied *all* of the preliminary injunction requirements, including that they are likely to succeed on the merits. Against that backdrop, the panel's observation that the preliminary injunction standard is an "asymmetrical" one that puts the movant at a disadvantage is neither new nor surprising.

Similarly, the panel majority's observation that it will be harder to carry that burden—and in particular to show likelihood of success on the merits—where the moving party's theory of success on the merits faces numerous independent hurdles is obviously correct. *See American Fed'n of Teachers v. Bessent*, 152 F.4th 162, 170 (4th Cir. 2025) (describing "multiplicative problem"); *id.* at 170 n.4 ("The mere existence of multiple issues disfavors plaintiffs."). A plaintiff that faces serious challenges to both their standing and their merits theory will necessarily have a harder row to hoe than a different plaintiff raising the same merits theory that

clearly has standing. The Supreme Court has recognized that basic point as well, explaining that at the preliminary injunction stage "[a] difficult question as to jurisdiction" serves only to make success "more *unlikely* due to potential impediments to even reaching the merits." *Munaf*, 553 U.S. at 690.

2.    Plaintiffs do not seriously dispute any of those commonsense points, nor could they. Plaintiffs instead cherry-pick language from the panel decision to craft what they assert is a new, heightened standard for preliminary injunctive relief, recasting an illustrative "example" given in a footnote as "transform[ing] the traditional test for preliminary relief into a flawed mathematical formula." Pet. 1. According to plaintiffs, that footnote creates a new standard that requires district courts in this Circuit to "elevat[e] mathematical probabilities above all else," calculate a probabilistic likelihood of success for each issue raised, and then multiply those probabilities together to determine if the product is greater than 50%. Pet. 8.

But plaintiffs' reading of the panel decision runs headlong into what the panel decision actually says. The decision preemptively addresses exactly the misreading that plaintiffs press, explaining that its holding

8

"does not result from the application of a 'heightened standard'" and that "[t]he district court was required to find that Plaintiffs here were 'likely to succeed on the merits,' just as it would for any other preliminary injunction." *Bessent*, 152 F.4th at 170.

Moreover, the panel majority itself did not engage in the sort of mathematical analysis plaintiffs posit. As the panel made clear, "likelihood of success on the merits" was not a close call in this case. The panel held that plaintiffs "do not appear to have standing at the end of the day," which "[o]n its own" means they cannot show they are likely to succeed on the merits. *Bessent*, 152 F.4th at 174. As discussed below, that dispositive holding does not itself warrant *en banc* review. *See infra* section II. And in reaching that conclusion, the panel did not apply some mathematical formula or estimate; it simply observed that binding Supreme Court and circuit precedent made plaintiffs unlikely to succeed.

The panel went on to review three additional barriers to plaintiffs' theory of relief, concluding that plaintiffs failed to clearly show they are likely to succeed on *any* of those issues, let alone all of them. *Bessent*, 152 F.4th at 174 (plaintiffs' ability to succeed on those issues "uncertain at best"). There, too, the panel nowhere sought to "quantify" the likelihood

9

of success on each issue or "multipl[y] those probabilities together" to produce some dispositive figure.  Pet. 6.

Thus, the panel was not confronted with, and therefore could not have decided, what result should follow in a case where a plaintiff is substantially likely to succeed on each dispositive issue raised by the parties.  *Contra* Pet. 8-9 (imagining cases where moving party is 70% or 85% likely to succeed on each issue).  And it would be surprising to learn that an illustrative mathematical example in a footnote — which "could have been deleted without seriously impairing the analytical foundations of the holding," *Pittson Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999) — is anything other than dicta.

Moreover, district courts have not applied the panel's decision in a manner remotely resembling plaintiffs' misreading.  Already, at least seven district court decisions have cited the panel majority's discussion of the preliminary injunction standard, and not one has applied it in the manner plaintiffs suggest.  Six of those courts have cited it in the same breath as existing Supreme Court and Circuit precedent without noting any change in the standard.  *See National Ass'n for the Advancement of Colored People v. United States*, No. 8:25-CV-00965-JRR, 2025 WL 2402191, at *18 (D. Md.

10

Aug. 19, 2025) (citing panel decision in holding the plaintiffs were unlikely to succeed because they were likely to lose for numerous, independent reasons); *Moon Dot, Inc. v. Q Shack Corp.*, No. 3:25-CV-00396-KDB-SCR, 2025 WL 2420990, at *1 (W.D.N.C. Aug. 21, 2025) (citing panel opinion as merely "describ[ing] the familiar four-factor test for granting a preliminary injunction"); *Thomas v. Fuentes*, No. 9:25-CV-10843-RMG-MGB, 2025 WL 2697663, at *6 (D.S.C. Aug. 22, 2025), (citing panel decision for proposition that preliminary injunction is "an extraordinary remedy"), *report and recommendation adopted*, No. 9:25-CV-10843-RMG, 2025 WL 2695251 (D.S.C. Sep. 22, 2025); *Guille v. Eldridge*, No. 7:24-CV-00786, 2025 WL 2807046, at *2 (W.D. Va. Sep. 26, 2025) (citing panel decision for proposition that "failure to establish one factor … warrants the denial of relief," making standard "inherently uneven"); *Cruz-Medina v. Noem*, No. 25-CV-1768-ABA, 2025 WL 2841488, at *2 (D. Md. Oct. 7, 2025) (citing panel decision for *Winter* factors); *John Doe v. Board of Regents of Univ. Syst. of Md.*, No. 25-CV-03239, 2025 WL 2897343, at *6 (D. Md. Oct. 10, 2025) (citing panel decision for proposition that court must consider "both merits and jurisdictional issues" in assessing likelihood of success).  Only one district court has suggested in passing that the panel decision "arguably heightened" the standard for

11

showing a likelihood of success on the merits, but it did so in a brief order holding any "arguabl[e]" change in the standard made no difference because the plaintiff had carried its burden under any standard. *PSEG Renewable Transmission LLC v. Alvi Props., LLC*, No. 25-CV-2296-ABA, 2025 WL 2684868, at *1 (D. Md. Sep. 2, 2025).

Not one district court decision in the last few months has understood the panel decision to create a higher standard, much less to impose the kind of reflexive, mathematical calculations that plaintiffs say the panel decision compels. And that should not be news to plaintiffs: Many of these decisions issued *before* plaintiffs filed their petition for rehearing on September 8.

* * *

In short, the panel decision explicitly stated that it was not modifying the standard for evaluating entitlement to a preliminary injunction, it had no need to do so given that plaintiffs failed to show they were likely to succeed on *any* of the four dispositive issues presented, and lower courts applying the panel decision in the past two months have understood that it

12

did not create a new standard.  Plaintiffs fail to show that *en banc* review of this aspect of the panel's decision is warranted.

## II. The Panel's Standing Analysis Is Consistent with the Precedent of This Court, the Supreme Court, and Every Other Circuit.

The panel majority held that plaintiffs likely do not have standing because the intangible discomfort they allege—arising from certain employees having general access to government data systems—bears no close relationship to the harm underlying the common-law tort of intrusion upon seclusion.  *Bessent*, 152 F.4th at 171-74.  That defect "[o]n its own … means Plaintiffs cannot show they are ultimately likely to succeed on the merits."  *Id.* at 174.  The panel's holding is consistent with Supreme Court precedent and the law of this Circuit, and it provides no basis to grant rehearing *en banc*.  And in any event, the same theory of standing is already under consideration before this Court *en banc* in *American Federation of State, County & Municipal Employees v. SSA*, No. 25-1411 (4th Cir.), making *en banc* review of it here especially unwarranted.

1.     In holding that plaintiffs likely do not have standing, the panel analyzed at length this Court's prior decision in *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022).  Plaintiffs' assertion that the panel's

13

holding is nevertheless inconsistent with *Garey* is wrong for several reasons. First, plaintiffs ignore that *Garey* held that the plaintiffs there *did not* have standing to seek injunctive relief. *Id.* at 922-24. Because plaintiffs here seek only injunctive relief, *Garey* is against plaintiffs on the only question presented in this case. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. TOC, Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").

Second, as the panel explained, the allegations in *Garey* were far more concrete than the allegations here. In *Garey*, the plaintiffs alleged that the defendants actually accessed records containing their personal information. *Garey*, 35 F.4th at 920. Here, plaintiffs allege only that certain employees were given access to systems that contain some of their members' information but "do not allege in their complaint that any particular row of information belonging to any particular Plaintiff has been examined at all." *Bessent*, 152 F.4th at 172. In *Garey*, the defendants gained access to the plaintiffs' private information—which plaintiffs provided to law enforcement, not the defendants—by gathering it from government sources or private data brokers. *See Garey*, 35 F.4th at 920. Here, defendants accessed government-maintained systems that contain records that

14

plaintiffs willingly provided to the government and that the government lawfully retained in those systems. In *Garey*, the plaintiffs knew their information had been accessed because the defendants used that information to send "unsolicited attorney advertising materials" to the plaintiffs' homes. *Id.* Here, plaintiffs experience only a generalized discomfort from knowing that government defendants have the ability to look at information contained in government systems. *Garey* simply had no basis to consider whether the materially different facts that plaintiffs allege would be sufficient to establish standing.

Third, as the panel explained, *Garey*'s reliance on this Court's decision in *Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019), confirms those factual differences mattered to the *Garey* court. *Garey* characterized the *Garey* plaintiffs' theory of standing as "nearly identical" to that of the plaintiff in *Krakauer*. In *Krakauer*, this Court held the plaintiff had suffered a concrete injury because the defendant had intruded on the plaintiff's private space by calling him at home. *See id.* at 652-53. Thus, when the Court in *Garey* described the plaintiffs' standing theory there as "nearly identical" to that of the plaintiff in *Krakauer*, it means that it mattered in *Garey* that the defendants there not only accessed private data

15

but also—like the defendants in *Krakauer*—used it to impose a concrete

intrusion into the plaintiffs' private space.  As the panel majority

concluded, that observation must be read to mean what it says.  *Bessent*,

152 F.4th at 173.

2.    Plaintiffs largely ignore the panel's analysis and instead assert

the harm they allege is "indistinguishable" from that in *Garey* because, at

an extremely high level of generality, the harms in both cases are privacy

harms arising out of discomfort associated with defendants' accessing of

plaintiffs' private information.  *See* Pet. 12-13.  As already noted, plaintiffs

are wrong even at that level of generality: Plaintiffs have not alleged that

any of the government employees they identify have looked at the personal

information of any of their members, only that those employees have been

given general access to government systems that contain their members'

information (along with the information of millions of others).

In any event, as the panel majority recognized, the Supreme Court in

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), made clear that the

standing inquiry cannot operate at the level of generality plaintiffs propose.

Plaintiffs must allege an injury with a "close relationship to harms

traditionally recognized as providing a basis for lawsuits in American

16

courts." *Id.* at 425. "This requires a comparison between the *factual* harm alleged by Plaintiffs and another harm redressable at common law." *Bessent*, 152 F.4th at 171. It is therefore not enough that this case, like *Garey*, involves allegations of discomfort associated with the exposure of plaintiffs' private information. Were it otherwise, *TransUnion* would have come out the other way: The plaintiffs held not to have standing in *TransUnion* alleged discomfort associated with the knowledge that the defendant's records falsely suggested they were serious criminals. *See TransUnion*, 594 U.S. at 420-21. At some level of generality, that is the same kind of discomfort that underlies common law slander and libel. But the Supreme Court held that was insufficient because the plaintiffs' allegations were too dissimilar from the kinds of facts that support the common-law torts. *Id.* at 432-35.

3.   Plaintiffs are equally wrong to suggest that the panel decision is inconsistent with the law of other circuits. Pet. 16. Plaintiffs cite cases from other circuits where private information about the plaintiffs was distributed to third-parties without their consent. *Id.* As already noted, plaintiffs here have not alleged that *anyone* actually looked at their private

17

information.  Plaintiffs cite no case where mere fear of possible access or distribution in the future was deemed sufficient to establish standing.

Nor do plaintiffs cite any case where internal review of information lawfully obtained and retained in an entity's own systems was found to be actionable under the common law tort, let alone a case where, as here, the employees reviewing that information are subject to legal, ethical, and professional obligations to safeguard that information.  Indeed, the Restatement of Torts explicitly provides that "locating and supplying information for one's own files" is not an actionable intrusion.  Restatement (Second) of Torts § 652B, Reporter's Note (1977).  To hold otherwise would conflict with the Restatement and the only other Circuit that appears to have squarely considered this issue.  *See Tureen v. Equifax, Inc.*, 571 F.2d 411, 416 (8th Cir. 1978).[1]

---

[1] The sole case plaintiffs cite in suggesting otherwise—*Socha v. City of Joliet*, 107 F.4th 700 (7th Cir. 2024)—is not to the contrary.  There, the plaintiff alleged that a police officer intentionally viewed an explicit photograph of her that was obtained via a search warrant and contained in a police database, despite knowing that he was not authorized to view the photograph.  *Id.* at 711-14.  In reversing a grant of summary judgment under Illinois law, the Seventh Circuit expressly contrasted cases, like this one, in which "the intruded-on party voluntarily gave up the information to the intruder, and the intruder is merely accessing its own records," *id.* at

*Continued on next page.*

## CONCLUSION

For the foregoing reasons, this Court should deny the petition for rehearing *en banc*.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

BRAD HINSHELWOOD

*s/ Jack Starcher*

JACK STARCHER
SIMON JEROME
JACOB CHRISTENSEN
*Attorneys, Appellate Staff*
*Civil Division, Room 7515*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8877*
*john.e.starcher@usdoj.gov*

October 2025

---

711, and focused on the allegations that the officer intentionally accessed records despite knowing he was not authorized to do so, *see id.* at 712-13. Plaintiffs list *Socha* in an "*e.g.*" citation, Pet. 16 n.7, but have never identified any other case that they claim to be inconsistent with the rule announced in the Restatement and *Tureen*.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of

Appellate Procedure 40(d)(3)(A) because it contains 3,769 words. This brief

also complies with the typeface and type-style requirements of Federal

Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using

Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally

spaced typeface.

*s/ Jack Starcher*
Jack Starcher

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*

Jack Starcher